

**F I L E D**
CLERK, U.S. DISTRICT COURT

5/23/23

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ pk _____ DEPUTY

# United States District Court

## CENTRAL DISTRICT OF CALIFORNIA

---

In re: JAMIE LYNN GALLIAN,

Debtor
_____

HOUSER BROS. CO.,
A California Limited Partnership DBA
RANCHO DEL REY MOBILEHOME
ESTATES

Appellant

v.

JAMIE LYNN GALLIAN,

Appellee.

District Court Case Number
8:23-cv-00001-DSF

Bankruptcy Court Case Number
8:21-bk-11710-SC

Chapter 7

---

### APPELLEE'S  EXCERPTS OF RECORD (Volume 1 of 3

JAMIE LYNN GALLIAN
16222 Monterey Lane Unit 376
Huntington Beach, CA 92649 Telephone:
(714) 321-3449

Attorney for Appellee, IN PRO SE

Case Name: Houser Bros. Co., et al., vs. Jamie Lynn Gallian
USDC Case No. 8:23-cv-00001-DSF
USBC Case No.  8:21-bk-11710-SC

| No. | Date | Docket Entry No. | Document | Pg. No. |
|---|---|---|---|---|
| 1. | 07/26/22 | 157 | Debtor's Notice of And Motion For Reconsideration Of 7.21.22 Order Sustaining Houser Bros Co. Objection To Debtor's Claimed Homestead Exemptiom | ER 000007 -000339 |
| 2. | 08/04/22 | 170 | Response to Debtor's Notice of and Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co. dba Rancho Del Rey Mobile Home Estate's Objection to Debtor's Claimed Homestead Exemption | ER 000340- 000398 |
|  |  |  |  |  |
|  |  |  |  |  |

2

APPELLEE'S EXCERPTS OF RECORD

| No. | Date | Docket Entry No. | Document | Pg. No. |
|---|---|---|---|---|
| | | | | |
| 3. | 08/05/22 | 177 | Order Granting Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates's Motion Objecting to Debtor's Claimed Homestead Exemption in 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649 | ER 000399-000411 |
| 4 | 08/11/22 | 185 | Reply to Houser Bros Opposition to Debtor's Motion for Reconsideration of 7.21.2022 Order Sustaining Houser Bros Co Objection to Debtor's Claimed Homestead Exemption. | ER 000412-000656 |
| 5. | 09/07/22 | 224 | Order Continuing Hearing on Debtor's  Motion For Reconsideration Of 7.21.22 Order Sustaining Houser Bros. Co. Objection to Debtor's Claimed Homestead Exemption. | ER 000657-000659 |
| 6. | 01/24/23 Certified Reporter's Transcript | 306 | CONT'D HEARING RE: DEBTOR'S MOTION FOR RECONSIDERATION OF 7.21.22 ORDER SUSTAINING HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION AND JOINDER PARTIES HUNTINGTON BEACH GABLES HOA; JANINE JASSO | ER 000660-000682 |

APPELLEE'S EXCERPTS OF RECORD

3

| No. | Date | Docket Entry No. | Document | Pg. No. |
|---|---|---|---|---|
| 7. | 09/30/22 | 242 | Notice of Recent Decision re: Debtor's Motion for Reconsideration of 07.21.22 Order Sustaining Objection To Debtor's Claimed Homestead Exemption | ER 000683-000708 |
| 8. | 12/16/22 | 273 | Memorandum of Decision regarding Debtor's Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining Objection to Debtor's Homestead Exemption | ER 000709-000721 |
| 9. | 12/16/22 | 274 | Order Granting Debtor's Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining Objection to Debtor's Homestead Exemption | ER 000722-000725 |

DATED: May  23, 2023

*Jamie Lynn Gallian*

JAMIE LYNN GALLIAN
Appellee, IN PRO SE

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this District Court proceeding. My business address is: 5801 Skylab Road Huntington Beach, CA 92647.

A true and correct copy of the foregoing document entitled: **APPELLEE'S EXCERPTS OF RECORD** will be served or was served **(a)** on the judge in chambers in the form and manner required by L.R. 5-4 in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and L.R 5-3.3, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 23, 2023**, I checked the CM/ECF docket for this case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

&boxtimes;   Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On                I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

&boxtimes;   Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 (d)(3) and/or controlling L.R. 5-4, on **May 23, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

&boxtimes;   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 23, 2023 | Robert McLelland | _Robert McLelland_ |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
   - Bradford Nathan Barnhardt bbarnhardt@marshackhays.com
   - D Edward Hays ehays@marshackhays.com, kfrederick@ecf.courtdrive.com, cmendoza@marshackhays.com, cmendoza@ecf.courtdrive.com, ehays@ecf.courtdrive.com
   - Laila Masud lmasud@marshackhays.com, kfrederick@ecf.courtdrive.com, lbuchanan@marshackhays.com, lmasud@ecf.courtdrive.com

2. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: CONTINUED:

   **VIA PERSONAL DELIVERY:**
   **MANDATORY CHAMBERS COPY**
   HONORABLE DALE S. FISCHER, DISTRICT JUDGE
   FIRST STREET COURTHOUSE
   350 WEST 1ST STREET, COURTROOM 7D
   LOS ANGELES, CA 90012

# EXHIBIT 1

1  JAMIE LYNN GALLIAN
   16222 Monterey Lane Unit 376
2  Huntington Beach, CA 92649
   (714) 321-3449
3  jamiegallian@gmail.com

4  In PRO PER

5

6            **UNITED STATES BANKRUPTCY COURT**

7        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

8                                    Case No. 8:21-bk-11710-ES

9                                    Chapter 7

10

11  In re:                          **DEBTORS NOTICE OF AND MOTION
                                    FOR RECONSIDERATION OF 7.21.22**
12  JAMIE LYNN GALLIAN,             **ORDER SUSTAINING   HOUSER BROS.
                                    CO. DBA RANCHO DEL REY MOBILE**
13                                  **HOME ESTATES OBJECTION TO
                                    DEBTOR'S CLAIMED HOMESTEAD**
14             Debtor.             **EXEMPTION AND
                                    JOINDER PARTIES HUNTINGTON**
15                                  **BEACH GABLES HOA; JANINE JASSO.**

16
                                    Hearing Date: August 18, 2022
17                                  Time:        10:30 a.m.
                                    Courtroom:   5A
18

19

20      TO THE HONORABLE ERITHE A. SMITH, ALL PARTIES AND TO THEIR

21  ATTORNEY'S OF RECORD: Please take notice of Debtors Motion for Reconsideration

22  Debtor respectfully requests reconsideration of the Courts Order July 21, 2022 sustaining

23  Houser Bros Co objection to Debtors Claimed Homestead with

24  additionalJoinder's The Huntington Beach Gables Homeowners Association and Janine B. Jasso,

25  Esq.

26  The purpose of bankruptcy is to give debtors a fresh start by shedding debts that they owed but

27  cannot pay.  Part of the fresh start includes lien avoidance on exempt assets. ***See Richardson,***

28  ***224 B.R. at 808.***  Debtor wants to maximize the amount of property she gets to keep to avoid

    any creditor collection efforts, especially efforts to collect their personal residence.

                                    ‡

California law is instructive regarding property interests that debtors may possess at filing which are included in the bankruptcy estate as defined in § 541 of the Bankruptcy Code. To avoid a lien, it must impair an interest a debtor has in an exempt asset. Cited California law and cases affirm that a homestead right is an interest in real property. *See* California Const., Art. 12, §§ 1 & 2.

As the U.S. Supreme Court defines it, property of the estate consists of "all the interests in property, legal and equitable, possessed by the debtor at the time of filing ..." *Owen v. Owen,* 500 U.S. 305, 308 (1991).  This definition is extremely broad.

Debtor has continuously lived in her personal residence Unit376, in Huntington Beach, CA Par2,TR 10542, Lot 1 & Lot 2, Unit 1, 2, 3, 4, the location of 459 Manufactured Home units, first in Unit 53, currently Unit 376 respectively.

There are two subject residence(s) debtor makes request to this Honorable Court to take Judicial Notice of:

**1.   4476 Alderport Drive, Unit 53 Huntington Beach, Ca 92649 A.P.N. 937-630-53.**

Debtor was the tenant from November 23, 2009 through March 22, 2017; Debtor was gifted the property from her step-mother and debtor's predecessor Sandra L. Bradley on March 23, 2017, Instrument No, 2017-0116715.  On October 31, 2018, debtor sold Unit 53 to Randall Nickel, a bona fide purchaser for value of $379,000.00.  A.P.N. 937-630-53. On November 1, 2018, debtor purchased Unit 376 with the reinvested proceeds from the sale of Unit 53, under the same Unexpired 80 year Leasehold burdening Parcel 1 & Parcel 2, APN 178-011-16, Tract 10542, Unit 1, 2, 3, 4

**<u>Statement of Financial Affairs, DOC 1, Part 7, No. 18,  page(s) 46-60,</u>**

Debtor disclosed the sale of her previous residence, Unit 53 in her Chapter 7 petition filed July 9, 2021.  Subsequently, debtor read the petition question more closely and the

2

question asks "Within the last 2 years before you filed for bankruptcy, did you sell, trade or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?" Debtor disclosed No. 18, Previous residence sold on 10/31/2018, 4476 Alderport Dr. #53, ….Paid in exchange amount as $379,000.00. Debtor Purchased Unit 376 on November 1, 2018 with reinvested funds from sale of Unit 53 under the same unexpired 80 year Ground Leasehold recorded Orange County Clerk Recorder, against Parcel 2, Tract 10542 APN 178-011-16, Instru. No 32442 and 32443, December 5, 1979. **EXHIBIT ___**

**2.      16222 Monterey Ln, Unit 376, is Debtor's Primary residence November 1, 2018 to the present day.  Debtor has continuously resided in her home since Nov. 2018.**

Petitioner, Houser Bros Co. and the two joinders, Huntington Beach Gables Homeowners Association; Janine Jasso, Esq. make no allegations that debtor has lived anywhere else or claimed any other property as her homestead exemption from sale date of Unit 53 on October 31, 2018, and the purchase of Unit 376 November 1, 2018, to the present day.  Debtor designated and occupied the property as her homestead. *See* 4 Collier on Bankruptcy P 522.10 (16th 2020).  As previously stated, the only requirement for claiming a homestead exemption under CCP §541 homestead claimed be "principal residence of such person."on the date of filing,

Record title to the homestead is not re- quired at all times to claim a homestead exemption in her primary residence and property.

Debtors' Chapter 7 Petition and Schedules July 9, 2021, DOC 1, Schedule A/B required debtor to "list any ownership interest or legal or equitable interest in any residence, building, land, or similar property." Debtor answered "Yes" on Schedule A/B, DOC 1, page 12 of 60, to indicate and disclose that she owned a legal or equitable interest in the Residence located at 16222 MontereyLane, Unit 376, with a $235,000.00 value, Fee simple.

"Personal Residence of Debtor since 11/1/2018, 2014 Skyline Custom Villa Manufactured

Home Decal No. LBM1081.   Debtor disclosed under penalty of perjury on July 9, 2021, "J

-Sandcastle Co LLC executed Release of Title, signed and notarized by Jamie Lynn

Gallian, its Member, on February 25, 2021. Debtor inquired with and disclosed to the

Trustee's Assistant Lor Werner the contents of a August 11, 2021 she received further asking

about how to amend a bankruptcy petition if leave was needed.  Debtor was told she could file

as many amendments to correct until the Trustee concluded the last 341 meeting. On August 18,

2021, first 341 Meeting of Creditors, debtor was asked whether her Chapter 7

schedules were correct under penalty of perjury.  Debtor explained **No the schedules were**

**not correct and an amendment was forthcoming,** to Jeffrey Golden, the Trustee and the

Creditors Huntington Beach Gables, Janine Jasso, and Houser Bros Co. Debtor described

receipt of an email on August 11, 2021 at 3:54p.m, from Sarina Ramirez, Riverside

Housing and Community Development 3737 Main Street Suite 400, Riverside, Ca 92501,

Program Technician, Registration and Titling, with a copy of August 11, 2021 Title Search Doc

printed by Housing and Community Development reflecting HCD processed Jamie Lynn

Gallian as the registered owner of the 2014 Skyline Manufactured Home LBM1081

effective change updated in HCD records on  2/25/21. On  11/16/18 Gallian surrendered

COT registered the home J-Sandcastle Co. HCD processed January 19, 2019. The Housing and

Community Development. Government Offices closure during Covid 19 pandemic including

the closure of the local HCD Riverside Offices, Gallian was unable to submit any Release of

Certificate of Title changes until  February 25, 2021 NOTICE OF SALE OR TRANSFER.

After the 3-year Pinon Drive lease was amicably terminated by Landlord Henry Newton

Dec 2019, Jamie Gallian lived in Unit 376 continuously under an unexpired 80 leasehold

and tendered rent every month to Houser Bros Park Office.   Gallian did not have to rent

4

1  the 2014 home to a third party for income until she was out from under the 3 yr lease, It

2  terminated successfully by the parties.

3  Debtor disclosed 1/14/2019, UCC-1 Manufatured Home Transaction

4

5  and UCC-AD filed on 1/14/2019, File No. 19-7691916827, after debtor realized she listed

6  herself as the Debtor on File No. 19-7691905279. Debtor further disclosed she filed with

7  H CD a Statement to Encumber in favor of Ron Pierpont, J-Pad, LLC, (debtors ex-husband

8  since 2015), for funds Ms. Pierpont advanced Debtor for an unrelated expense and was

9  reimbursed.

10

11      Concealment of assets by a bankrupt is a fraud upon her creditors, can only be established

12  by clear and convincing proof. There is no proof of any literal transfer or concealment of any

13  property; no falsification of any financial statement to secure credit; there is no scheme to execute

14  any such intent.

15      In this case, the petitioners "proof" consists solely of a date HCD reflected on a

16  Registration Card or the date a Certificate of Title was printed by the Sacramento Office of

17  Housing and Community Development mailed to the applicable parties.

18

19  Moving party's own documents establish that ownership of Unit 376 was released by J-Sandcastle

20  Co LLC, signed and notarized by its Member Jamie Lynn Gallian on February 25, 2021. To the

21  extent petitioners are arguing that HCD's Certificate of Title Documents and/or the print date on a

22  Registration Card Document are conclusive evidence on this issue, then why aren't they stuck with

23   the conclusion that HCD's transfer date is binding as well.

24

25      Additionally, petitioner's failed to cite any legal authority in the motion that ownership does

26   not change until HCD processes after opening thousands of envelopes sent to various HCD locations

27   hroughout California; processes the enclosed documents, and then and only then when the

28   documents are received in Sacramento, (Sacramento is the only location that prints Certificate of

Title Documents) changes to Certificate of Title and Registration Cards are sent through US Mail.

5

1        Individuals can own things of a personal nature as in the case at bar,

2 such as cars, boats, planes, manufactured homes, without the Certificate of Title reflecting their

3 name at all times. This is a very fact specific situation  The important fact that

4 petitioners are missing is "Possession of the Certificate of Title and Section "B" on the back side

5 Certificate of Title indicates by a Releasing Signature of J-Sandcastle Co,

6 Registered Owner, and the Date of Release back to Jamie Lynn Gallian after Government

7 Offices slowly reopened and HCD resumed processing Certificate of Title changes one again.

8       Whether or not such proof is sufficient to require a forfeiture of the bankrupt's right to make

9 her own selection of her exemptions depends upon her ability reasonably to explain

10 HCDs processing of claims during a global pandemic,

11  If her explanation is reasonable and exonerates her from fraud, no restriction

12 on her right to select her exemptions may be imposed.

13 Federal law provides no authority for bankruptcy courts to deny an exemption on a ground

14 not specified in the Bankruptcy Code, abrogating *Latman v. Burdette*, 366 F.3d 774, *In re Yonikus*

15 , 996 F.2d 866, *In re Doan*, 672 F.2d 831, and *Stewart v. Ganey*, 116 F.2d 1010.

16

17       The uncontradicted proof establishes the following facts: The Debtor sold unencumbered real

18 property with a Homestead Exemption noted on the 2018-2019 Secured Tax Assessors Roll of the

19 A.P.N. 937-630-53, commonly described as 4476 Alderport Drive, Unit 53, Huntington Beach, CA

20 92649, on October 31, 2018, as disclosed on DOC 1.  Debtor moved from the Alderport Drive

21 home on or about September 11, 2018, to Pinon Drive under a 3 year lease agreement, with

22 Landlord Henry Newton. after she was battered by a HOA Board Members husband criminally

23 charged in June 2019 19WM09951 She moved out of the home she lived in since 2009 out of fear.

24 Debtor listed Unit 53 4476 Alderport for sale.  The first buyers the Ginestras cancelled the day

25 after the September 11, 2018, 3-year Pinon Drive Lease was entered into by debtor  and Henry Newton.

26 Debtor received her July 2018 escrow check deposited with Five Star for Unit 108. The  deposit check efund

27 was processed by Express Escrow through the resident agent Thanya Hanson of 5 STARES.

28 r

1    after Debtors home on Alderport fell out of escrow. The seller of Rancho Del Rey, Unit 108,

2    would not accept debtors contingency offer, and backed out of the deal to sell Unit 108 in Rancho

3    Del REy Mobilehome Estates to debtor.    Gallian signed a 3-year lease with Henry Newton

4    , paid over $6000 in deposit fees  and resigned herself that she, until Alderport property, sold, she could

5    not afford and did not qualify to secure financing without a significant down payment. Housing

6    prices were beginning to rise in Orange County as well a rents.

7

8            On or about October 28 or 29, 2018, debtor dropped the price on the Alderport home listed

9    for sale on Zillow.com. The very next morning debtor received a message through Zillow with a

10   phone number that an interested person would like to view the Alderport property.

11   Rules & Regulations, all disclosures and were provided to the potential purchaser of Unit 53

12   Debtor sent the HOA management company, Elite Management, by overnight mail about a week

13   earlier, a "Demand Letter" with a request for HOA Minutes, Financial Disclosures, 12 Months of

14   Board Meeting Minutes, Copy of Insurance Disclosure, Unit 53 Monthly Dues Statement, etc.  Ga

15   bles HOA refused to cooperate and provide any demand.  Debtor met with the buyer Randall

16   Nickel and sold the property unencumbered.  The Assignment was recorded with the Orange

17   County Clerk Recorder, County of Orange on October 31, 2018 and the Assessors Office was

18   notified of the new buyer.

19   There were no encumbrances

20   on Unit 53 4476 Alderport Drive. 937-63-053.

21   Debtor paid all HOA monthly fees to Gables HOA management company.

22

23

24

25

26

27

28

7

1   **HOUSER BROS AND THEIR ATTORNEY CAME INTO THIS COURT WITH**

2   **UNCLEAN HANDS WITH A FALSE DOCUMENT FROM THE INTERNET AND**

3
4   **PASSED IT AS TRUTH.  GALLIAN PROPERLY CLAIMED HER HOMESTEAD**

5   **EXEMPTION AND IS RECORDED AT THE CO OF ORANGE TAX ASSESSOR. It**

6   **is quite clear why Houser Bros Co has refused to countersign a sub-condominmiun**

7   **leasehold with Gallian under the existing unexpired 80 year LandLeasehold with**

8   **Robert P. Warmington, Co assigned to BS Investors and the Barry Brief Trust in**

9   **1986.** Houser Bros Co has a Unlawful Detainer Action pending since 1/2/2019

10      **OCSC 30-2019-01041423 filed while a protective order was in place.**

11   **Houser Bros Co v Jamie Gallian. Houser did not bring the 1/2/19 Unlawful Detainer**

12   **action in the name of the alleged owner of the home J-Sandcastle Co LLC. Houser**

13   **Bros Co whole argument in this objection is based upon Houser Bros Co claims the**

14   **"REAL OWNER" of the 2014 manufactured home is J-Sandcastle Co in this**

15   **convoluted motion brought by Interested Party Houser Bros. designed to throw as**

16   **much mud against the wall and see if the courts buys in.  Houser Bros has not named**

17   **J-Sandcastle Co in their Adversary Complaint 8:21-ap-01097, filed on October 18,**

18   **2021 in this Chapter 7. Houser Bros Co does not even admit that the 11/2018**

19
20   **Residency Application  was submitted by J-Sandcastle Co.  The 5 Day Demand Letter**

21   **to Surrender the "ground" under a 1600 sq. ft home was served on Jamie Gallian, not**

22   **J-Sandcasle Co the alleged homeowners claimed throughout this entire objection.**

23   **Subsequently, it is Houser Bros who suddenly ran out of excuses why they refuse to**

24
25   **enter into a lease agreement with the Gallian for almost 5 years in violation of CCP**

26   **§§798.74,**

27

28

TABLE OF AUTHORITIES

CASES

*In re Bassin*, 637 F.2d 668, 670 (9th Cir. 1980)………………………………………………

*In re Carter,* 182 F.3d 1027, 1029 n. 3 (9th Cir.1999)…………………………………….

*In re Diaz*, 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016)…………………………………….

*In re Greene*, 583F.3d 614, 618 (9th Cir. 2009)………………………………………….

In re Kelley, 300 B.R. 11, 16 (9th Cir. B.A.P. 2003)…………………………………….

*In re Pass*, 553 B.R. 749, 757 (B.A.P. 9th Cir. 2016)…………………………………….

*In re Sewell,* 180 F.3d 707, 710 (5th Cir. 1999)………………………………………….

*Gravel, Shea & Wright, Ltd. v. Bank of New England (In re New England Carpet Co.)*,
744 F.2d 16, 17 (2d Cir. 1984)………………………………………………………….

*Haskins v. Certified Escrow & Mortg. Co.*, (1950) 96 Cal. App. 2d 688, 691…………..

*Kono v. Meeker,* 196 Cal. App. 4th 81, 86 (2011)……………………………………….

*Matter of Southmark Corp.*, 62 F.3d 104, 106 (5th Cir. 1995)………………………….

*Mehrtash v. Mehrtash* (2001) 93 CA4th 75, 81, 112 CR2d 802, 806……………………

*Nadel v. Mayer* (*In re Mayer*), 167 B.R. 186 (9th Cir.BAP1994)……………………….

*Oppenheim v. Goodley* (1957) 148 Cal.App.2d 325, 328)………………………………

*Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 20–21 (2000)………………………..

*Tassone v. Tovar* (1994) 28 Cal.App.4th 765, 768 ……………………………………..

*United States ex rel Farmers Home Admin. v. Arnold & Baker Farms,*

177 B.R. 648, 654 (9th Cir. BAP 1994)…………………………………………………….

*United Savs. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365 (1988)…………….

9

11 U.S.C. § 522(p) ............................................................................. 15, 16

11 U.S.C. § 522(p)(1). ............................................................................. 15

11 U.S.C. § 704.730 ............................................................................. 16

11 U.S.C. § 704.740(a) ............................................................................. 10

11 U.S.C. § 704.740(b) ............................................................................10

Cal. Code Civ. P. § 703.130............................................................................. 16

Cal. Code Civ. P. § 704.710(c) ............................................................................. 11

Cal. Code Civ. P. § 704.720(a) ............................................................................. 10

Cal. Code Civ. Proc. § 704.710(a)(2) ............................................................................. 11

CCP § 704.210............................................................................

CCP § 704.730 ............................................................................9, 11 15

CCP § 704.780(a)............................................................................12

CCP § 704.780(a)(1) ............................................................................. 11

CCP §§ 704.710-704.850 ............................................................................. 9

CCP §§ 704.910-704.995 ............................................................................. 9

CCP 704.730(a) ............................................................................. 10

STATUTES

**11 U.S.C. § 522(P)(2)(B)** ............................................................................. 9

**11 U.S.C. § 541**

11 U.S.C. § 522(b) ............................................................................. 3, 9

11 U.S.C. § 522(b)(1)..............................................................................

11 U.S.C. § 522(b)(3)(A) ............................................................................. 15

11 U.S.C. § 522(c) ............................................................................. 3, 9

11 U.S.C. § 522(g) ............................................................................3

10

11 U.S.C. § 522(o) .......................................................................................... 15, 16

11 U.S.C. § 522(o)(1-4). ......................................................................................15

11 U.S.C. § 704.730 ........................................................................................... 16

11 U.S.C. § 704.740(a) ....................................................................................... 10

11 U.S.C. § 704.740(b) ....................................................................................... 10

Cal. Code Civ. P. § 703.130........................................................................... 16

CCP §§ 703.580(b)………………………………………………………..

Cal. Code Civ. P. § 704.710(c) ....................................................................... 11

Cal. Code Civ. P. § 704.720(a) ....................................................................... 10

Cal. Code Civ. Proc. § 704.710(a)(2) ...............................................................11

CCP § 704.730 ........................................................................................ 9, 11, 15

CCP § 704.780(a)............................................................................................ 12

CCP § 704.780(a)(1) ........................................................................................ 11

CCP §§ 704.710-704.850 ................................................................................. 9

CCP §§ 704.910-704.995 ................................................................................. 9

CCP 704.730(a)................................................................................................ 10

## OTHER AUTHORITIES

FED.RULE OF EVIDENCE R. 301……………………………………………….

4 COLLIER ON BANKRUPTCY P 522.10 (16th 2020)

PRELAWSUIT CONSIDERATIONS, Cal. Prac. Guide Enf. J. & Debt
(Rutter Group 2020) Ch. 3-C, 3:318.1…………………………………….

REQUIEMENT OF INJURY TO CREDITOR 8 Witkin, Cal. Proc. 5th
Enf Judgm § 497 (2020)…………………………………………………...

16A Cal. Jur. 3d CREDITORS RIGHTS AND REMEDIES § 406…………………………

11

RULES

Rule 1009……………………………………………………………………………12

Rule 4003(c)........................................................................................................12

STANDARD

"preponderance of the evidence"  In re Kelley, 300 B.R. 11, 16 (9th Cir. B.A.P. 2003).

12

## Memorandum of Points and Authorities

1.  At the time a petition for bankruptcy is filed, "all legal or equitable interests of the debtor in property" become available to satisfy creditors' claims and costs of the proceedings **unless the assets are '"exempted' from use** in satisfying claims of creditors and other authorized charges." *In re Sewell,* 180 F.3d 707, 710 (5th Cir. 1999); FRBP § 541(a)(1).

Bankruptcy exemptions are determined by the applicable state law on the date of the filing of the original bankruptcy petition. ***In re Bassin****,* 637 F.2d 668, 670 (9th Cir. 1980).

California has, per FRBP § 522(b)(1), has "opted out" of the federal exemption scheme and therefore California debtors may claim only those exemptions allowable under California law.

### Debtor Followed the California Statute by Filing a Declared Homestead

Debtor's complied with filing a Declared Homestead on July 9, 2021, Official Records of Clerk Recorder.  California homestead exemption statute entitles her to claim that exemption for bankruptcy purposes.

### A Debtor's Claimed Exemptions Are Presumptively Valid

Generally, claimed exemptions are "presumptively valid" and the objecting party thus bears the burden of proving that the exemption is improper. *In re Carter,* 182 F.3d 1027, 1029 n. 3 (9th Cir.1999); FRBP §4003(c).

However, the Supreme Court in *Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 20–21 (2000), held that because burden of proof is substantive, in the absence of a federal interest requiring a different result, the state law allocation of the burden should apply in bankruptcy objection to claims.

13

**BURDEN OF PROOF IS PROPONDERANCE OF THE EVIDENCE**

Although the burden of proof lies with the party claiming the exemption, exemption statutes are generally construed in favor of the debtor. *Kono v. Meeker,* 196 Cal. App. 4th 81, 86 (2011).

Pursuant to Cal. Civ. Proc. Code § 704.780(a), the burden to show a debtor's entitlement to a homestead exemption rests with the debtor, **[unless]** a declared homestead has been recorded. Cal. Civ. Proc. Code § 704.780(a) as is the case in this Chapter 7. **EXHIBIT** Debtor also includes for reconsideration a Certified Letter from the Orange County Tax Assessor Office regarding the status of her homeowners exemption.

14

000021

### a. Creditor has failed to shift the burden to Debtor

Creditor has failed to state any recognized objection to the California homestead exemption.  "The exemption protects a 'homestead,' defined as a dwelling in which the debtor or the debtor's spouse resided on the date the judgment creditor's lien attached (in bankruptcy, the petition date) and has resided continuously until the court's determination that the dwelling is a homestead." *In re Pass*, 553 B.R. 749, 757 (B.A.P. 9th Cir. 2016) (citing Cal. Civ. Proc. Code §704.710(c)). "Thus, this protection is available in bankruptcy if the debtor was living in the home on the petition date. The exemption is 'automatic' in the sense that it requires no affirmative act by the debtor to make it effective; rather, it applies automatically to any dwelling that meets the definition." In re Pass, 553 B.R. at 757.

Interested party Houser Bros, Co or the joinders objection makes no allegation that the Property was not the principal dwelling in which Debtor resided on the date the bankruptcy petition was filed.

Second, the Debtor has resided in the Property since the Property was acquired on November 1, 2018, with the unencumbered proceeds from the sale of her previous home, October 31, 2018.

Third, Debtor claimed the $600,000 homestead exemption in her Schedule C § 704.730(a)(1) which provides for the $600,000 exemption. Debtor's automatic exemption was effective on the date of the petition.

15

**b. Declared Homestead**

The date for the determination of the homestead exemption amount is the date on which debtors file a bankruptcy petition. *In re Pass*, 553 B.R.749, 760 (B.A.P. 9th Cir. 2016) (citing *Moffat v. Habber* (In re Moffat), 119 B.R. 201, 204 n. 3 (9th Cir. BAP 1990)).

**The BAP has also found that:**

Under California law, two species of homestead protection are available to judgment debtors, the "automatic" (or Article 4) homestead exemption and the "declared" (or Article 5) homestead protection, respectively.

These protections are available under different circumstances, they serve different purposes, and they confer different rights on debtors. "[T]here is no overlap between these rights." Id.

At 756 (emphasis added). Depending on the circumstances, a given debtor may be entitled to one or the other, or to both, or to neither. Id.

*In re Pass,* 553 B.R. 749, 756–57 (B.A.P. 9th Cir. 2016) (citing *In re Anderson*, 824 F.2d 754, 756 (9th Cir. 1987)). As a result, Debtor's declared homestead declaration does not prevent Debtor from the benefit or use of the automatic homestead exemption (Schedule C) and Creditor as provided no case law or statute indicating otherwise. Katz v. Pike (In re Pike), 243 B.R. 66,

h

16

69-71 (9th Cir. BAP 1999); See also Avetoom v. Fridman (In re Fridman), Nos. CC-21-1101-LSF, 8:21-bk-10513-ES, 2022 Bankr. LEXIS 358, at *13 (B.A.P. 9th Cir. Feb. 11, 2022).

"[W]hen a debtor claims an exemption created under state law, the scope of the exemption is determined under state law which may provide that certain types of debtor misconduct warrant denial of the exemption.'" In re Gray, 523 B.R. 170, 175 (B.A.P. 9th Cir. 2014) (quoting Law v. Siegel, 134 S. Ct. 1188, 1196-97 (2014).

Courts in the Ninth Circuit have determined if or what kinds of equitable doctrines can be used by bankruptcy courts to disallow exemptions. "Without reaching the bankruptcy court's power to disallow exemptions or the relevance of California public policy concerning homestead exemptions, the Court agrees with the bankruptcy court that Creditors' California law theories would not preclude Debtor's homestead exemption in this case."

*In re Gilman,* No. 1:11-BK-11603-VK, 2020 WL 7087703, at *5 (C.D. Cal. Oct. 28, 2020).

In light of California public policy favoring liberal application of the homestead exemption, debtor respectfully requests this Court find Interested party Houser Bros Co and the joinders arguments in effective towards Debtor's homestead exemption.

17

000024

1    "[A] valid claim of equitable estoppel consists of the following elements:

2    (a) a representation or concealment of material facts

3    (b) made with knowledge actual or virtual, of the facts

4    (c) to a party ignorant, actually and permissibly, of the truth

5    (d) with the intention, actual or virtual, that the ignorant party act on it, and (e) that party was

6    induced to act on it." *In re Gilman*, No. 1:11-BK-11603-VK, 2020 WL 7087703, at *5 (C.D. Cal.

7    Oct. 28, 2020) (quoting *Behnke v. State Farm Gen. Ins. Co*., 196 Cal. App. 4th 1443,

8    1465 (2011)).

9

10       Debtor entered into a contract (the "Contract") with Creditor Houser Bros Co Attorney

11   Vivienne Alston on or about August 7 or 8, 2019, whereby Creditor agreed to dismiss her

12   Unlawful Detainer Case 30-2019-01041423, against Houser Bros for advancing their "Self Help"

13   against debtor; Gallian would dismiss her Wrongful Eviction Case against Houser Bros Co.

14       Gallian complied and dismissed the wrongful eviction.  Attorney Alston applied exparte

15   to the UD Court insisting the attorney mis-calendared, therefore failing to attend a status

16   conference hearing on or about August 7, 2019.  The Unlawful Detainer case was dismissed on

17   the courts own motion for failure to prosecute.  Thereafter, J-Sandcastle Co LLC, tendered a

18   cashier's check in the amount of $10,860.00 to the park manager Kathryne Houser-Curtiss and

19   Park Manager(s) Willie Maskulnski and Rick Maskulnski to obtain a signed Lot 376 agreement

20   with J-Sandcastle Co LLC.

21       Ms. Curtiss, the park Manager accepted the check from J-Sandcastle Co.'s Member

22   Jamie Gallian, proceeded to hand the check to bookkeeper Willie Maskulnski for processing on

23   the books.  Ms. Curtiss commented to Ms. Gallian that "she appreciated the check being for the

24   tenancy date beginning November 1, 2018 through August 31, 2019", instead of November 16,

25   2018 when Ms. Gallian delivered the application and tax clearance to HCD Office in Riverside

26   after attending a hearing at CJC Honorable James L. Crandall with the Association.

27

28

18

1        Assume for a moment the November 16, 2018, Security Agreement and Promissory

2    Note are invalid, Creditor did not provide any evidence that Debtor intended to file bankruptcy in

3    July 2021. Additionally, the alleged November 16, 2018, Security Agreement and Promissory

4    Note doesn't contain any representations about Lender Gallian not filing for bankruptcy.

5    Lastly, California has a public policy favoring liberal application of the homestead exemption.

6    Therefore, Creditor has failed to meet their burden.

7        Creditor has failed to provide evidence showing that the Debtor had already anticipated

8    filing bankruptcy. California has a public policy favoring liberal application of the homestead

9    exemption.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

## Declaration of Jamie Lynn Gallian

1.  On October 31, 2018, Jamie Lynn Gallian ("Debtor") sold her unencumbered primary residence located at 4476 Alderport Drive Huntington Beach, CA 92649, A.P.N. 937-630-53, Tract 10542 Lot 1, Unit 53, to a bona fide purchaser, Randall Nickel for $379,000.00, Instrument No. 2018000396579, recorded Official Records of Clerk Recorder, County of Orange.

Ms. Gallian received the market value, far greater than any unit in the Gables subdivision sold for in the calendar year 2018.  Gallian deposited the funds into her personal Chase Private Client Savings Account.  Gallian's home in the Gables, Unit 53, A.P.N. 937-630-53 listed on the 2018-2019 Secured Property Tax Roll with the Orange County Treasurer – Tax Collector included a Homeowners Exemption of $-7000. Gallian Decl.

3.  On November 1, 2018, purchased the 2014 Skyline Manufactured Home from seller Lisa Ryan,  In turn Gallian received posession of the Certificate of Title LBM 1081. Seller Lisa Ryan executed the release and surrendered Original Certificate of Title to Jamie Gallian LBM1081, a 2014 Skyline Custom Villa Manufactured Home. The home was sold in place on Lot 376 within Tract 10542, Unit 4. Ms. Gallian paid the Orange County Assessor Ryan's two years of over due property taxes to the Orange County Tax Assessor on the home LPT 891-569-62, which included a deposit for the next years taxes with her personal Alliant Credit Union checking account.XXXX-6018

4.  Ms. Gallian resides in the home as her primary residence located at 16222 Monterey Lane Unit 376, Huntington Beach, CA 92649, and always anticipated it being her primary residence since November 2018.

5.  Debtor purchased a 2014 Skyline Custom Villa manufactured home LBM 1081, with exempt funds from the sale of her unencumbered home on October 31, 2018, AP.N. 937-630-53 in the Gables subdivision.

6.  Debtor personally delivered to the HCD Riverside office, the Ryan surrendered Certificate of Title Card, released on November 1, 2018, to Jamie Lynn Gallian with a signed

1  NOTICE OF SALE OR TRANSFER, EXECUTED BY THE SELLER LISA RYAN ON

2  NOVEMBER 1, 2018.

3      7.  Under Section III, NOTICE OF SALE OR TRANSFER of the **State of California**

4  **Housing and Community Development Registration and Titling Form** contained the name of

5  JAMIE LYNN GALLIAN as the NAME OF PURCHASER/NEW OWNER on November 1,

6  2018, whited out and replaced with J-Sandcastle Co LLC on the form  to the right side on or

7  about November 15, 2018.

8      8.  On November 1, 2018, debtor is informed and believe Lisa Ryan, the Seller of

9

10  LBM1081, gave NOTICE OF SALE OR TRANSFER to Park Management and to Houser Bros

11  Co dba Rancho Del Rey Mobilehome Estates.

12      9.  On November 14, 2018, Houser Bros Co attorney Vivienne Alston, unlawfully filed

13  and obtained a WRIT of EXECUTION IN THE NAME OF LISA RYAN AND CONTINUED

14  TO HARASS AND TORMENT DEBTOR AND HER FAMILY BY USING THE SHERIFF

15  DEPARTMENT TO EXECUTE THE WRIT WITH THE KNOWLEDGE THAT LISA RYAN

16  SOLD THE 2014 SKYLINE CUSTOM VILLA AS ANTICIPATED BY THE PARTIES

17  STIPULATED JUDGMENT DATED OCTOBER 18, 2O18 OCSC 30-2018-01013582.

18

19      10.  JAMIE GALLAIN, registered the personal property manufactured home with

20  Housing and Community Development on November 16, 2018, has claimed as exempt.11 U.S.C.

21  § 522(b) (providing that "an individual debtor may exempt from property of the estate…")

22  **(o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of**

23  **an interest in--**

24  (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;

25  (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a

26  residence;

27  (3) a burial plot for the debtor or a dependent of the debtor; or

28

(4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;

## **Federal Rule of Bankruptcy Procedure 1009** provides that:

"A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." As recognized by the Ninth Circuit Bankruptcy Appellate Panel in In re Goswami, 304 B.R. 386 (9th Cir. BAP 2003), the Ninth Circuit has a liberal policy of "allowing debtors to amend their exemptions schedules so as to enhance their fresh start." Id. at 394, citing, In re Michael, 163 F.3d 526, 529 (9th Cir. 1998). As the Bankruptcy Appellate Panel further noted in Goswami, "The liberal rule governing amendments reflects the Ninth Circuit's 'preference for resolution on the merits, as against strict adherence to formalities.' " Id., citing and quoting, In re Anderson–Walker Indus., Inc., 798 F.2d 1285, 1287 (9th Cir. 1986). In light of the policy of liberality of amendment of bankruptcy petition documents, expressly including bankruptcy schedules, as stated in Rule 1009 and as recognized in the case law, there does not appear to be any legal authority to allow this court to bar any further amendments by the Debtor of his schedules.

## **RECITALS OF FACTS**

A.       GALLIAN held a Grant Deed and Condominium Sublease for a specific lot within a Planned Unit Community as defined in Civil Code §4175, located at 4476 Alderport Drive Unit 53 Huntington Beach, CA 92649 ("UNIT") as of March 23, 2017. ("Unit 53")

        a.       GALLIAN became record owner of the Grant Deed and Condominium Sub-leasehold on March 23, 2017, by way of an Assignment recorded in the Official Records of the County of Orange as Document Number 2017-000116815, which was "Gifted" to GALLIAN by Gallians predecessor and co-defendant, her step-mother, Sandra L Bradley ("BRADLEY").

22

b.   GALLIAN sold her interests in her separate property, Unit 53, to Randall L. Nickel on October 31, 2018, by way of a Grant Deed and Assignment of Condominium Sublease recorded in the Official Clerk Records of the County of Orange as Document Number 2018-000395579.

B.     By virtue of GALLIAN'S Ground leasehold and Sub-Condominium Leasehold GALLIAN was an owner of separate interest coupled with an undivided percentage interest in common with all owners of separate interest and a Membership in the ASSOCIATION, as defined by Civil Code section 4160, subject to the Governing Documents of the ASSOCIATION, as defined by Civil Code section 4150, including but not limited to:

a.   **Declaration of Covenants, Conditions and Restrictions** for Huntington Beach Gables ("CC&Rs") recorded on May 28, 1980, as Document No. 1980-28926, Official Records of Clerk Recorder, County of Orange;

b.   **First Amendment to Declaration of Covenants, Conditions and Restrictions** for Huntington Beach Gables recorded on August 5, 1980, as Document No. 1980-5002, Official Records of  Clerk Recorder, County of Orange.

c.   **Condominium Plan** recorded on October 18, 1979, as Document No. 79-28814, Official Records of Clerk Recorder, County of Orange.

**ADDITIONAL DOCUMENTS RECORDED**

**Official Records of Clerk Recorder, County of Orange.**

**A.   COVENANT RUNNING WITH THE LAND** recorded on November 6, 1979, Book 13383, Pg(s) 1868-1870, in the Orange County Recorder's Office

a.   **Partial Cancellation of Master Lease** recorded on November 7, 1980, Book 13424, Pg(s) 1253-1255, Instrument No. 8691, in the Orange County Recorder's Office;

23

b.  **Partial Cancellation of Sublease** recorded on November 7, 1980, Book 13424, Pg(s) 1256-1258, Instrument No. 8692, in the Orange County Recorder's Office;

c.  All right, title and interest as Tenant, in and under that certain **Master Lease/Ground Lease,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1259-1273, Instrument No. 8693, in the Orange County Recorder's Office;

d.  All right, title and interest as Tenant, in and under that certain **Condominium Sublease,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1274-1290, Instrument No. 8694, in the Orange County Recorder's Office; As amended by the First Amendment to the Condominium Sublease effective January 1, 2003, recorded in the Office of the Orange County Clerk Recorder as Document No. 2003-001044770 o August 28, 2003:

e.  All right, title and interest as Tenant, in and under that certain **Conveyance of Remainder Interest,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1291-1293, Instrument No. 8695, in the Orange County Recorder's Office;

f.  All right, title and interest as Tenant, in and under that **certain Condominium Sublease (Short Form – Memorandum and Grant Deed,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1294-1298, Instrument No. 8696, in the Orange County Recorder's Office:

24

g. The **Articles of Incorporation** of the Huntington Beach Gables Homeowners Association, recorded with the California Secretary of State May 23, 1980;

h. **The Bylaws of the Huntington Beach Gables** ("Bylaws"); executed May 23, 1980;

Debtor resides in a manufactured home which she filed a Declared Homestead Exemption and believes she purchased her current residence with exempt funds, claimed as exempt.

Debtor has been the subject of continued mistruths regarding Fee Interest and Air-Space, and has been paying property taxes for over 10 years on land that she also pays ground lease payments on.

Debtor registered the Certificate of Title to the 2014 Skyline Custom Villa manufactured home in her name on February 25, 2021 after a mandatory settlement conference with Houser Bros Co the management company for Rancho Del Rey.

Debtor admits that she personally delivered the surrendered documents to HCD in Riverside, in fact the petitioners documents are stamped November 16, 2018, which included the surrendered Certificate of Title and Release of Title dated November 1, 2018, executed under penalty of perjury, by the seller, Lisa Ryan to debtor on November 1, 2018, of a 2014 Skyline Custom Villa manufactured home.

**The Stipulated Judgment between Houser Bros Co and Lisa Ryan 30-2018-01013582,** contemplated that Lisa Ryan had 6 months, or until February 3, 2019, to sell her home in place. Ryan was moving out of her home and a new owner would purchase the home and complete the required residency requirements.  Ryan sold her home 14 days after the Stipulated Judgment was

25

agreed to by the parties and became an Order of the Court on October 18, 2018. OCSC 30-2018-01013582.

Lisa Ryan, Seller, signed and executed State of California, Department of Housing and Community Development NOTICE OF SALE OR TRANSFER, gave notice to Rancho Del Rey that she sold the 2014 Skyline Custom Villa manufactured home on November 1, 2018, located and installed pursuant to Health & Safety 18551, on Lot 376, Unit 4, in TRACT 10542, under a recorded **Condominium Sublease and Grant Deed Short Form Memorandum,** recorded in the Official Records of the Clerk Recorder for the County of Orange against A.P.N. 178-011-16; under a **Condominium Plan** recorded October 18, 1979, in Book 13358, page 1193, of Official Records and **Covenants Running With The Land**, executed on October 19, 1979, recorded November 18, 1979, in Book 13383, page 1868-1870, of Official Records of the Clerk Recorder for the County of Orange against A.P.N. 178-011-16.

On November 11, 2018, almost two weeks after Jamie Gallian purchased the 2014 Skyline Custom Villa home from Lisa Ryan, and after Lisa Ryan gave Notice of Sale on November 1, 2018, Houser Bros Co attorney Vivienne Alston filed a Writ of Execution in the name of Lisa Ryan, dated 11/14/2018, without application to the Court or Notice and delivered it to the Orange County Sheriff on or about November 19, 2018.

On November 16, 2018 over 2 weeks after the manufactured home was purchased by Jamie Gallian on November 1, 2018, Jamie Lynn Gallian drove to Riverside HCD and registered the 2014 manufactured home in the name of her sole member LLC J-Sandcastle Co LLC until the earliest of several things happened:

1. Jamie Gallian would be allowed to terminate the three-year residential lease she entered into for the property at 5782 Pinon Drive Huntington Beach, CA on September 11, 2018:

2. Jamie Gallian would be allowed to intervene into the civil action Houser Bros Co. v Lisa Ryan 30-2018-01013582, and have the WRIT recalled and terminated by Court Order.

26

3. Request sanctions against the Houser Bros Co attorney for interfering with the terms of the purchase of the sale of the unencumbered Ryan Failure 2014 Manufactured Home;

4. Requests sanctions against the Houser Bros Co for violating the Davis Stirling Act and the Subdivision Map Act;

5. Figure out why a Tract Map and Condominium Plan were recorded August 1979 and October 1979, against TRACT 10542, Unit 1, 2, 3, 4, Lot 1 & Lot 2, and the First Amendment to the CC&Rs recorded 1 day before the tentative map was to expire on 8-6-1980, and recorded unlawfully after Cal Bre issued the "White Report" was in mid July 1980 for "TRACT 10542";

6. More importantly determine the legality of "Air-Space Condominiums" on leased land in violation of Article 935 and Huntington Beach Subdivision Map Ordinances;

7. Request the Tax Assessor refund approximately 8 years of overpayment of taxes for the "Land" and in addition to paying the property taxes, payments made for "Air-Space subcondominium on leased land, also payments made against a ground lease bill for 8 years.

Because property of the estate includes only the debtor's interest in the LLC - and not the manufactured home owned by the LLC - Debtor's claim of exemption is authorized under the law because it is debtor's primary residence and has been since debtor purchased the home on November 1, 2018, with the funds of her previous homestead disclosed on her initial chapter 7 petition, DOC 1.

Further, there is a 2018 Security Agreement and Promissory Note against the manufactured home perfected 1/14/2019, on the face of the Certificate of Title to the 2014 manufactured home held by J-Pad, LLC.

Registering title to the manufactured home to one LLC and subjecting its value to a perfected lien held by another LLC does not prevent debtor from claiming a homestead exemption in her personal residence.

27

## 2.    Factual Background

## A.    Procedural Background

On July 9, 2021 ("Petition Date"), Jamie Lynn Gallian ("Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. On the same date, Ms. Gallian filed her initial Schedules and Statements ("Original Schedules"). A true and correct copy of the Original Schedules is attached to the Declaration of Jamie Lynn Gallian ("Gallian Declaration")

At the instant of the commencement of a bankruptcy case, an automatic stay comes into effect as a matter of law. 11 U.S.C. § 362(a). The initial 341 meeting of creditors was held August 18, 2021, continued approximately 9 nine times.

At the August 18, 2021, 341 Meeting of Creditors, Debtor informed the Trustee Jeffrey Golden and the Interested Parties present, namely Houser Bros Co and Janine Jasso, Esq. and Huntington Beach Gables Homeowners Association that Debtor believed her petition was inaccurate and she would be amending her petition concerning several areas one that the Registered Owner of the 2014 Manufactured Home as of the date the Petition was filed and that debtor received from HCD a Title Search dated July 27, 2021, which reflected Jamie Lynn Gallian as the Registered Owner perfected 2/25/2021, however J-Pad, LLC 1/14/2019 perfected Certificate of Title was mistakenly removed when it was only requested Mr. Pierpont 8/20/20, Encumbrance be removed.

HCD Riverside Manager, Ms. Sylvia Cruz spoke to debtor instructed debtor when she received the Original Certificate of Title from Sacramento in the US Mail, which debtor did receive approximately August 5, 2021, to take the form that was printed August 3, 2021, to HCD in Riverside to correct and re-add J-Pad, LLC1/14/2019 as the Legal Owner back to the Certificate of Title.

28

1   Debtor was informed at the Riverside office she would have to pay a second fee of

2   approximately $118.00 to HCD Riverside to correct the error which was made by the

3   Sacramento Registration and Titling Department at the beginning of July 2021.  Debtor paid

4   $118.00 by an assigned DTN number approximately July 14, 2021, and again on or about August

5   6, 2021, at HCD Riverside using an ATM card to make the correction on August 6, 2021

6   reflected on the Title Search dated August 11, 2021 provided by email to debtor by HCD

7   Riverside Technician Sarina provided to the Trustee.

8   On the petition date July 9, 2021, the registered title owner of the manufactured home

9   located at 16222 Monterey Lane, Unit #376, Huntington Beach, CA 92649 ("Property") was

10   Jamie Lynn Gallian as of February 25, 2021, the date J-Sandcastle Co LLC signed and dated to

11   release the Certificate of Title to Jamie Lynn Gallian, notarized the same date.

12   J-Sandcastle Co, LLC ("J-Sandcastle LLC") was subject to perfected UCC-1 filing

13   1/14/2019, supported by a Security Instrument and Promissory Note dated November 16, 2018,

14   executed at Central Justice Center between J-Sandcastle Co LLC, Jamie Lynn Gallian, Member

15   and Jamie Lynn Gallian, Lender and J-Pad, LLC, it's Manager and the holder of the Note with

16   all legal owners, J-Pad, LLC perfected under Certificate of Title ("COTA") under the laws of the

17   State of California.

18   Debtor's Schedules further reflect that she the sole owner of J-Sandcastle LLC. Because

19   the LLC was listed as the registered owner of the manufactured home on the Petition Date, the

20   debtor disclosed the name of the LLC on the debtor's petition and disclosed on Schedule AB she

21   had an interest in the property.

22   Debtor resides in the home and it is debtors home and property of debtor's Estate. Debtor

23   is entitled to a homestead exemption.

29

**Transferring Exempt Property May Not be a Fraudulent Transfer Under California Law**

Debtor wants to maximize the amount of property she gets to keep, to avoid, any creditor collection efforts, especially efforts to collect her personal residence.

California laws create a specific, statutory exclusion from fraudulent transfer claims for property that has no equity beyond an <u>exemption</u>, including transferring a personal residence subject to <u>California's homestead exemption</u>. Such transfers may be entirely exempt from an attack as a <u>fraudulent transfer in California court</u>, also known as fraudulent conveyance, or voidable transaction.

**The Language of California's Uniform Voidable Transactions Act Excludes Exempt Property, Including a Personal Residence Subject to a Homestead** *Exemption*

Under the California Uniform Voidable Transactions Act (UVTA), creditors can attack as an actually fraudulent transfer a "**transfer**" made "With actual intent to hinder, delay, or defraud any creditor of the debtor" or "Without receiving a reasonably equivalent value in exchange for the transfer or obligation…." California Civil Code § 3439.04. Creditors can also seek to avoid as a constructively fraudulent transfer any "**transfer**" made "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." <u>California Civil Code § 3439.05</u>.

In turn, the definitions under the California Uniform Voidable Transactions Act provides that "'**Transfer**' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." California Civil Code § 3439.01(m).

30

Definitions under the California Uniform Voidable Transactions Act also provide that: "'Asset' means **property** of a debtor, but the term **does not include** the following:

(1) Property to the extent it is encumbered by a valid lien.

(2) Property to the extent it is generally exempt under nonbankruptcy law**."** California Civil Code, § 3439.01(a).

**Debtor's previous property residence was sold on October 31, 2018, was exempted under California's exemption laws** and is excluded from the definition of an asset that can be subject to a claim that of being a fraudulent transfer.  This exemption has been explained by one California court in 2019, "the [California] UVTA defines an asset as the 'property of a debtor,' excluding property 'to the extent it is encumbered by a valid lien[,]' and 'to the extent it is generally exempt under nonbankruptcy law.' ([California Civil Code] § 3439.01, subd. (a).) As noted by the Legislative Committee Comments, the definition of asset 'requires a determination that the property is subject to enforcement of a money judgment.

Under **Section 704.210 of the Code of Civil Procedure**, property **that [is not]** subject to enforcement of a money judgment is exempt.' (Legis. Com. com., 12A pt. 2 West's Ann. Civ. Code (2016 ed.) foll. § 3439.01, p. 253.)" Potter v. Alliance United Ins. Co. (2019) 37 Cal.App.5th 894, 906.

The decision follows a 1994 California court of appeal opinion: "It has long been the rule that a gift, sale, or pledge of any part of a homestead cannot, under any circumstances, be with intent to defraud a creditor not having a lien upon the premises, for a creditor is not entitled to complain of the transfer by the debtor of an asset which he could not have reached, had the debtor retained it.  If the homestead is valid, no attempted disposition or conveyance of the property, however fraudulent, injures the creditor. For such act, leaves the creditor in the same position in which he would have been before it was done.

31

A Debtor's attempt to defeat her creditors is not commendable, such conduct neither enlarges plaintiff's rights, nor gives him benefits as punishment of debtor. In such circumstances the defendant's motives are immaterial." _Tassone v. Tovar_ (1994) 28 Cal.App.4th 765, 768 (quoting _Oppenheim v. Goodley_ (1957) 148 Cal.App.2d 325, 328).

"_Mehrtash_ [_v. Mehrtash_ (2001) 93 Cal.App.4th 75, 80] rightly affirmed the longstanding principle that injury-in-fact is an essential element of a claim under the UFTA [Uniform Fraudulent Transfer Act] , and we follow that principle in the present case. A creditor has not been injured unless the transfer puts beyond reach property the creditor **_could subject to payment of his or her debt._**" _Fidelity National Title Ins. Co. v. Schroeder_ (2009) 179 Cal.App.4th 834, 845.

The _Fidelity_ court continued that: "Rather, we reiterate and adopt the following language of the _Mehrtash_ opinion: 'Even assuming the allegedly fraudulent conveyance were set aside and the property were hypothetically available to enforce the plaintiff's money judgment, it could not be sold without a court order because it is the [debtor's dwelling], and could not be sold without a minimum bid equal to [all] encumbrances and senior liens [plus] the homestead exemption. The plaintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside.' (_Mehrtash_, _supra_, 93 Cal.App.4th at p. 81) The evidence at trial showed that _Fidelity_ could not have obtained any net recovery if the transfer were set aside and a forced sale of the property was sought." _Fidelity National Title Ins. Co. v. Schroeder_ (2009) 179 Cal.App.4th 834, 847.

A number of secondary sources have also discussed this requirement of an of an "injury" to creditor required to attack a transfer as fraudulent under California law. _See Requirement of Injury to Creditor._, 8 Witkin, Cal. Proc. 5th Enf Judgm § 497 (2020); 16A Cal. Jur. 3d Creditors' Rights and Remedies § 406 ("A creditor [has not] been injured unless the transfer puts beyond

32

the creditor's reach property that he or she otherwise would be able to subject to the payment of his or her or her debt"); Prelawsuit Considerations, Cal. Prac. Guide Enf. J. & Debt (Rutter Group 2020) Ch. 3-C, 3:318.1 ("*Mehrtash v. Mehrtash* (2001) 93 CA4th 75, 81, 112 CR2d 802, 806—real property conveyance not fraudulent where plaintiff not injured (no evidence that value of property could support net recovery with mortgages, senior liens and homestead exemption)").

**Transferring a Home with No Equity May be Excluded from California's Fraudulent Transfer Laws**

The law is that: "A transfer in fraud of creditors may be attacked only by one who is injured by the transfer. A creditor [does not] sustain injury unless the transfer puts beyond his reach property which he otherwise would be able to subject to the payment of his debt." *Haskins v. Certified Escrow & Mortg. Co.*, (1950) 96 Cal. App. 2d 688, 691.

Since Houser Bros Co, Huntington Beach Gables Homeowners Association or Janine Jasso, [would not] have benefited from collecting on a debtor's property with no equity, transferring such property should generally not be considered a fraudulent conveyance.

Priority claims are paid ahead of general unsecured creditors but may not be paid out of encumbered assets absent secured creditor consent or application of § 506(c). *See Gravel, Shea & Wright, Ltd. v. Bank of New England (In re New England Carpet Co.)*, 744 F.2d 16, 17 (2d Cir. 1984); *General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76 (2d Cir. 1984); *In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir. 1982); *In re American Resources Management Corp.*, 51 B. R. 713, 721 (Bankr. D. Utah 1985).

For all of the above reasons, Debtor respectfully requests this Court deny the Motion by Houser Bros Co., Huntington Beach Gables Homeowners Association and Janine Jasso, Esq. all interested parties objecting to debtors claimed homestead exemption.

33

1        I declare under penalty of perjury of the laws of the State of California the foregoing to

2    be true and correct to the best of my ability, information and belief.

3    Signed  July 26th  2022, at Huntington Beach. CA County of Orange

4

5            Respectfully Submitted,

6    Dated:  July 26, 2022

7           By: *Jamie Lynn Gallian*

8           JAMIE LYNN GALLIAN
       Debtor,  IN PRO PER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34

500 S. Main Street, First Floor, Suite 103
Orange, CA 92868-4512
or
P. O. Box 628
Santa Ana, CA 92702-0628

**CLAUDE PARRISH**
COUNTY ASSESSOR
Telephone: (714) 834-3821
FAX: (714) 834-2565
www.ocassessor.gov

ESTABLISHED 1889

OFFICE OF THE ASSESSOR

July 21, 2022

891-569-62   HX

GALLIAN, JAMIE LYNN
16222 MONTEREY LN, SPC 376
HUNTINGTON BEACH, CA 92649

SUBJECT: Assessor Parcel Number: 891-569-62

Property Address: 16222 MONTEREY LN, UNIT 376, HUNTINGTON BEACH

The Homeowners' Exemption on the above property has been active in Orange County as of **02-25-2021**

Claimant Name: GALLIAN, JAMIE LYNN

If you have any questions, please call our office at (714) 834-3821.

Sincerely,

CLAUDE PARRISH
County Assessor

By
Exemptions Division

I HEREBY CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF A PERMANENT
RECORD OF THE ASSESSOR'S OFFICE.
ORANGE COUNTY, CALIFORNIA

CLAUDE PARRISH
COUNTY ASSESSOR
BY Neil Sal

2022 JUL 21 PM 2: 22

CLAUDE PARRISH
ORANGE COUNTY ASSESSOR

A002-994 (R 09/19)

**2022-23  Secured Assessment Roll**     **CLAUDE PARRISH, ORANGE COUNTY ASSESSOR**

Full Parcel Report: Page 1 of 1                                            As of January 1st, 2022

| Parcel No: 891-569-62 | Tax Rate Area: 04-902 | Property Type: MOBILE HOME |
|---|---|---|

### Owner / Mailing Address

**Assessee:** GALLIAN, JAMIE LYNN

**Address:** 16222 MONTEREY LN, SPC, 376

**City, State:** HUNTINGTON BEACH, CA

**Zip:** 92649

### Description

| Assessed Value | | Exemptions | Dates | |
|---|---|---|---|---|
| **Land:** | 0 | **Exe Type:** HOMEOWNER | **Land BaseYear:** | 2021 |
| **Improvement:** | 0 | | **Improvement Base Year:** | 2021 |
| **Personal Property:** | 86,339 | | **Tax Lien Status:** | |
| **Other:** | 0 | | | |
| **Gross:** | 86,339 | | | |
| **Less Exemption:** | 7,000 | | | |
| **Net:** | 79,339 | | | |

### Sale History

**Reference Number:** M2085154

### Additional Information

**Legal Description:** T MHP RANDRE MSP 376


I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF A PERMANENT RECORD OF THE ASSESSOR'S OFFICE. ORANGE COUNTY, CALIFORNIA

CLAUDE PARRISH
COUNTY ASSESSOR
BY

2022 JUL 21 PH 2: 18

CLAUDE PARRISH
ORANGE COUNTY ASSESSOR

1











Units 1, 2, 3 and 4 of Lot 2 of the following:

All that certain land situated in the State of California, County
of Orange, City of Huntington Beach, described as follows:

Proposed Tract No. 10542, being a subdivision of the following:

A portion of the northeast one quarter (1/4) of the northwest
one quarter (1/4) of Section 20, Township 5 south, Range 11 west,
in the Rancho Las Bolsa Chica, as shown on a map recorded in book
51, page 13 of Miscellaneous Maps, records of said Orange County,
being described as follows:

Parcel 1 of a map filed in book 108, page 48 of Parcel Maps.

NOTICE OF COMPLIANCE WITH CONDITIONS ON TRACT

AUTHORIZATION FOR RELEASE FOR RECORDING

TO:      City Clerk                     Date A _____ 7, 1971

FROM:    PLANNING DEPARTMENT
         James W. Palin

TRACT NO. _____

RECREATION & PARKS FEES PAID _____ 512.00 _____

Other: _____

                              _____
                                  (Signature)

10d 47

SHEET 1 OF 2 SHEETS
T.P.M. 77-7
2 PARCELS
58.362 ACRES

T.P.M. 77-7
R.S.T. 8931

# PARCEL MAP

### IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA.

BEING A PORTION OF THE  E 1/2 OF THE NW 1/4 OF SECTION 20, T.5 S., R.11 W.
IN THE RANCHO LA  BOLSA CHICA, AS SHOWN ON A MAP RECORDED IN BOOK
51, PAGE 13 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

DEC 20 1977    27127

108 47

VALLEY CONSULTANTS, INC.
SAM F. KNISS, R.C.E. NO. 17377

DATE OF SURVEY: JAN. 9, 1977

## OWNERSHIP CERTIFICATE

WE, THE UNDERSIGNED, BEING ALL PARTIES HAVING ANY RECORD TITLE
INTEREST IN THE LAND COVERED BY THIS MAP, DO HEREBY CONSENT TO
THE PREPARATION AND RECORDATION OF SAID MAP AS SHOWN WITHIN
THE COLORED BORDER LINE, AND WE HEREBY DEDICATE TO THE PUBLIC FOR
STREET PURPOSES: EDINGER AVENUE AND SAYBROOK LANE. WE ALSO
HEREBY DEDICATE TO THE CITY OF HUNTINGTON BEACH THE 10 FOOT WATER
LINE EASEMENT IN MONTEREY STREET AS SHOWN ON THIS MAP.

HOUSER BROS. CO.,
A LIMITED PARTNERSHIP.

VERNON E. HOUSER
GENERAL PARTNER

CLIFFORD C. HOUSER
GENERAL PARTNER

STATE OF CALIFORNIA }
COUNTY OF ORANGE } ss.
ON THIS 5th DAY OF OCTOBER, 1977, BEFORE ME, LISA STRAIT
A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED
VERNON E. HOUSER AND CLIFFORD C. HOUSER, KNOWN TO ME
TO BE THE PARTNERS OF HOUSER BROS. CO., A LIMITED PARTNER-
SHIP, THE PARTNERSHIP THAT EXECUTED THE WITHIN INSTRUMENT,
AND THEY ACKNOWLEDGED TO ME THAT SUCH PARTNERSHIP EXECUTED
THE SAME.

MY COMMISSION EXPIRES May 10, 1981

WITNESS MY HAND AND OFFICIAL SEAL:

NOTARY PUBLIC IN AND FOR SAID STATE

## ENGINEER'S CERTIFICATE

THIS MAP WAS PREPARED ... UNDER MY DIRECTION AND IS
BASED ON A FIELD SURVEY ... IN CONFORMANCE WITH THE REQUIRE-
MENTS OF THE SUBDIVISION MAP ACT ... AT THE REQUEST OF HOUSER
BROS., ON JANUARY 9, 1977 ... I HEREBY STATE THAT THIS PARCEL
MAP PROCEDURES OF THE LAND ... COMPLIED WITH ... AND THAT THIS PARCEL MAP ... CORRECTLY ... TENTATIVE
MAP AND THE CONDITIONS OF ... WHICH WERE RE-
QUIRED TO BE FULFILLED PRIOR TO THE FILING OF THE PARCEL MAP.

SIGNED: SAM F. KNISS    R.C.E. NO. 17377

## CITY ENGINEER'S CERTIFICATE

THIS MAP CONFORMS WITH THE REQUIREMENTS OF THE SUBDIVISION
MAP ACT AND LOCAL ORDINANCES AND THE MAP IS TECHNICALLY
CORRECT IN ALL RESPECTS NOT CERTIFIED BY THE COUNTY
SURVEYOR.

DATED THIS 21st DAY OF

MICHAEL ZAMBORY
CITY ENGINEER OF

## CITY CLERK'S CERTIFICATE

STATE OF CALIFORNIA }
COUNTY OF ORANGE } ss.
CITY OF HUNTINGTON BEACH }

I, ALICIA M. WENTWORTH, CITY CLERK OF THE CITY OF HUNTINGTON
BEACH, ORANGE COUNTY, ... DO HEREBY CERTIFY ... AT A
REGULAR MEETING THEREOF ... DAY OF
PASSED AND ENTERED, APPROVED SAID MAP AND DID ACCEPT ON
BEHALF OF THE PUBLIC THE DEDICATION OF EDINGER AVENUE AND
SAYBROOK LANE FOR STREET PURPOSES, AND DID ALSO ACCEPT
ON BEHALF OF THE CITY OF HUNTINGTON BEACH THE WATER LINE
EASEMENT IN MONTEREY STREET AS DEDICATED ...

ALICIA M. WENTWORTH
CITY CLERK
DEPUTY

## COUNTY SURVEYOR'S CERTIFICATE

THIS MAP CONFORMS WITH THE MAPPING PROVISIONS OF THE SUBDIVISION
MAP ACT AND I AM SATISFIED SAID MAP IS TECHNICALLY CORRECT
RELATIVE TO THE PARCEL MAP BOUNDARY.

DATED THIS 16th DAY OF Dec. 1977.

C. R. NELSON
COUNTY SURVEYOR    BY: Robert W. Wise    DEPUTY

IMPERIAL CORP. OF AMERICA, SUBSTITUTED TRUSTEE UNDER
LIDO INSURANCE AGENCY, INC., A CALIFORNIA CORPORATION, AS
TRUSTEE UNDER A DEED OF TRUST RECORDED IN BOOK 7877, PAGE 951
AND IN BOOK 8583, PAGE 41, BOTH OF OFFICIAL RECORDS.

CLAUDIA MAE MILLER
VICE PRESIDENT

ASST SECRETARY

STATE OF CALIFORNIA }
COUNTY OF ORANGE } ss.
ON THIS 11th DAY OF October, 1977, BEFORE ME, JOY C. KNOWLES
A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED
CLAUDIA MAE MILLER ... KNOWN TO ME TO BE THE VICE PRESIDENT,
AND ... KNOWN TO ME TO BE THE ASST SECRETARY
OF IMPERIAL CORP. OF AMERICA, INC., A CALIFORNIA CORPORATION, THE
CORPORATION THAT EXECUTED THE WITHIN INSTRUMENT, AND KNOWN
TO ME TO BE THE PERSONS WHO EXECUTED THE WITHIN INSTRUMENT ON
BEHALF OF SAID CORPORATION AND ACKNOWLEDGED TO ME THAT SUCH
CORPORATION EXECUTED THE SAME.

WITNESS MY HAND AND OFFICIAL SEAL:

JOY C. KNOWLES
NOTARY PUBLIC IN AND FOR SAID STATE
MY COMMISSION EXPIRES

CALIFORNIA - SANSOME CORPORATION, A CALIFORNIA CORPORA-
TION, AS TRUSTEE UNDER A DEED OF TRUST RECORDED IN BOOK 8959,
PAGE 173 OF OFFICIAL RECORDS.

DANIEL J. BURECH
VICE PRESIDENT

THOMAS R. AHERN
ASST SECRETARY

STATE OF CALIFORNIA }
COUNTY OF ORANGE } ss.
ON THIS 6th DAY OF October, 1977, BEFORE ME, SHARON M. KITTO,
A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED
DANIEL J. BURECH ... KNOWN TO ME TO BE THE VICE PRESIDENT,
AND THOMAS R. AHERN, KNOWN TO ME TO BE THE ASST SECRETARY,
OF CALIFORNIA - SANSOME CORPORATION, A CALIFORNIA CORPORA-
TION, THE CORPORATION THAT EXECUTED THE WITHIN INSTRUMENT,
AND KNOWN TO ME TO BE THE PERSONS WHO EXECUTED THE WITHIN
INSTRUMENT ON BEHALF OF SAID CORPORATION AND ACKNOWLEDGED
TO ME THAT SAID CORPORATION EXECUTED THE SAME.

WITNESS MY HAND AND OFFICIAL SEAL:

SHARON M. KITTO
NOTARY PUBLIC IN AND FOR SAID STATE
MY COMMISSION EXPIRES Nov. 9, 1979

MASLEN CORPORATION, A CALIFORNIA CORPORATION, AS TRUSTEE
UNDER A DEED OF TRUST RECORDED IN BOOK 9201, PAGE 433 OF
OFFICIAL RECORDS MARKED 14th WORDS JUNIOR TO CALIFORNIA

VICE PRESIDENT
Wm. A. Graham

CLAIR M. WARDEN
ASST SECRETARY
ELISE M. WARDEN

COUNTY OF ORANGE }
ON THIS 5th DAY OF October, 1977, BEFORE ME, Susan E. Daley
A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED
Wm. A. Graham, AND Clair M. Warden ... KNOWN TO ME TO BE THE VICE
PRESIDENT & ASST SECRETARY, RESPECTIVELY, OF MASLEN CORPORA-
TION, THE CALIFORNIA CORPORATION THAT EXECUTED THE WITHIN ...

## SIGNATURE OMISSIONS

IN ACCORDANCE WITH THE PROVISIONS OF SECTION 66436(c)
OF THE SUBDIVISION MAP ACT, THE FOLLOWING SIGNATURES
HAVE BEEN OMITTED:

1. SOUTHERN CALIFORNIA ... CO., A CORPORATION, HOLDER
OF AN EASEMENT PER BOOK 782, O.R. &

2. GENERAL TELEPHONE CO., ... HOLDER OF AN EASE-
MENT PER BOOK 4373, PAGE 282, AND IN
BOOK 4373, PAGE 292, AND ... MENT PER BOOK 997,
PAGE 299, O.R.

4. CITY OF HUNTINGTON BEACH, HOLDER OF EASEMENT PER BOOK
8217, PAGE 482, O.R.

5. STEARNS RANCHO COMPANY, HOLDER OF EASEMENT PER
BOOK 191, PAGE 50 & BOOK 91, PAGE 106, BOTH OF DEEDS.

6. SO. CAL. ED. CO. ALSO HOLDS EASEMENTS PER BOOK 8366,
PAGE 30, O.R. & BOOK 9300, PAGE 334, O.R.

## IMPROVEMENT NOTICE

PURSUANT TO THE PROVISIONS OF SECTION 66411.1 OF THE SUBDIVISION MAP
ACT NOTICE IS HEREBY THAT EDINGER AVENUE AND SAYBROOK LANE SHALL BE
IMPROVED IN ACCORDANCE WITH THE CITY OF HUNTINGTON BEACH STANDARDS
AT THE TIME PARCEL NO. 2 IS DEVELOPED.











## Title Chain & Lien Report

**16222 Monterey Ln, Huntington Beach, CA 92649-6214**
APN: 178-011-16

Orange County Data as of: 08/03/2020

| Search Start Date: | 01/01/1967 | Start Date: | 01/01/1967 |
|---|---|---|---|
| Search End Date: | 08/19/2020 | End Date: | 08/19/2020 |

| Date | Type | Grantor | Grantee | Document # | Doc Ref. |
|---|---|---|---|---|---|
| 10/22/1979 | Lease | Warmington Robert | Robert P Warmington | 13362.317 | |
| 10/22/1979 | Lease | Houser Bros | Warmington Robert | 13362.320 | |
| 11/06/1979 | Cancellation | Houser Bros | | 13383.1868 | |
| 12/06/1979 | Lease | Houser Bros | Warmington Robert | 13424.499 | |
| 12/06/1979 | Lease | Warmington Robert | Robert P Warmington | 13424.504 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1096 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1130 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1166 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1202 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1232 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1268 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1304 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1340 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1099 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1133 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1169 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1205 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1235 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1271 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1307 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1343 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.192 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.272 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.195 | |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.

PAGE 1 OF 3

| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.275 | |
| 09/26/1980 | Plat, County Miscellaneous Plat | | | 13760.957 | |
| 10/03/1980 | Release | | | 13773.4 | |
| 10/03/1980 | Release | | | 13773.7 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1726 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1779 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1729 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1782 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1775 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1828 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1778 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1831 | |
| 10/17/1980 | Plat, County Miscellaneous Plat | | | 13793.949 | |
| 10/17/1980 | Plat, County Miscellaneous Plat | | | 13793.952 | |
| 07/06/1990 | Deed | Houser Bros | Houser Bros | 1990.357100 | |
| 07/06/1990 | Deed Of Trust | Houser Bros | Union Bank | 1990.357101 | 342851 |
| ⌃ 07/21/1997 | Amendment | Houser Bros | | 1997.342851 | |
| 10/06/1993 | Deed | Malmborg Jack N & | Malmborg Jack N & | 1993.678726 | |
| 10/08/1993 | Declaration Of Homestead | Sullivan John L | | 1993.686386 | |
| 01/27/1994 | Declaration Of Homestead | Gibbons Robert L | | 1994.66495 | |
| 07/13/1994 | Declaration Of Homestead | Hunn Nancy C | | 1994.451177 | |
| 01/28/1997 | Declaration Of Homestead | Rounds Royal E | | 1997.40615 | |
| 07/31/1998 | Reconveyance | | | 1998.499256 | |
| 06/19/2000 | Declaration Of Homestead | Newton Carol A | | 2000.321481 | |
| 08/23/2007 | Declaration Of Homestead | Moomau Linda Charl | | 2007.523219 | |
| 09/15/2014 | Declaration Of Homestead | Radzinski Linda M | | 2014.372099 | |
| 05/22/2017 | Declaration Of Homestead | Vanzyl Yvonne H | | 2017.208348 | |

## Liens, Filings & Judgments

16222 Monterey Ln, Huntington Beach, CA 92649-6214

| Search Start Date: | 01/01/1967 | Name(s) Searched: | Houser Bros Co, Houser Bros Co Trust |
| Search End Date: | 08/19/2020 | Match: | Exact |

| Date | Type | Subject Name | Document # | Doc Ref. |
| --- | --- | --- | --- | --- |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.

PAGE 2 OF 3

| 06/10/1971 | Certificate Of Partnership | Houser | 9672.175 | |
| 07/31/1972 | Certificate Of Partnership | Houser Bros | 10251.992 | |
| 08/17/1976 | Amendment | Houser | 11854.900 | |
| 09/23/1980 | Plat, County Miscellaneous Plat | Houser Bros | 13754.281 | |
| 09/23/1980 | Plat, County Miscellaneous Plat | Houser Bros | 13754.291 | |
| 11/04/1983 | Lien | Houser Bros | 1983.499211 | 282543 |
| ⌃ 07/31/1985 | Release | Houser Bros | 1985.282543 | |
| 05/02/1989 | Amendment | Houser | 1989.232116 | |
| 07/06/1990 | Deed Of Trust | Houser Bros | 1990.357101 | 342851 |
| ⌃ 07/21/1997 | Amendment | | 1997.342851 | |
| 07/09/1990 | Certificate Of Partnership | Houser Bros | 1990.361236 | |
| 07/31/1998 | Reconveyance | | 1998.499256 | |
| 11/09/2004 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros CX | 2004.1008431 | |
| 11/09/2004 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros CX | 2004.1008432 | |
| 04/03/2006 | State Tax Lien | Houser Brothers | 2006.219506 | 409646 |
| ⌃ 07/30/2009 | Release | Houser Brothers | 2009.409646 | |
| 12/03/2008 | State Tax Lien | Houser Brothers | 2008.557266 | 409647 |
| ⌃ 07/30/2009 | Release | Houser Brothers | 2009.409647 | |
| 07/01/2009 | Release | Houser Brothers | 2009.347624 | |
| 12/03/2010 | State Tax Lien | Houser Brothers | 2010.652383 | 157636 |
| ⌃ 03/28/2011 | Release | Houser Brothers | 2011.157636 | |
| 06/14/2011 | Release | Houser | 2011.290442 | |
| 12/06/2011 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros | 2011.636007 | |
| 12/06/2011 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros | 2011.636008 | |
| 11/07/2014 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2014.469087 | |
| 11/07/2014 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2014.469088 | |
| 11/08/2016 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2016.564698 | |
| 11/19/2019 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2019.480966 | 8699 |
| ⌃ 01/08/2020 | Release | Houser Bros Co | 2020.8699 | |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.        PAGE 3 OF 3

Tax Map - myFirstAm                                    https://www.myfirstam.com/Polygon/MapSearch



 **Tax Map**                    **4476 Alderport Dr #53, Huntington Beach, CA 92649**



Tax Map - myFirstAm                                                        https://www.myfirstam.com/Polygon/MapSearch



PROJECT 937-63
LOCATED ON A.P. 178-771-03





GROUND LEASE

THIS GROUND LEASE (herein termed the "Lease"), is made as of this 19th day of October, 199 , by and between HOUSER BROS. CO., a limited partnership organized and existing under the laws of the State of California in which Clifford C. Houser and Vernon F. Houser constitute the sole general partners, ("herein termed the "Landlord"), whose address is Suite 204, 610 East Seventeenth Street, Santa Ana, California 92701 and ROBERT P. WARMINGTON, a married man (herein termed the "Tenant"), whose address is 16592 Hale Avenue, Irvine, California 92714 upon the following terms and conditions:

ARTICLE I
THE LEASED LAND

For and in consideration of the payment of the rentals, taxes and other charges covenanted to be paid by Tenant and of the performance of all the covenants and conditions hereinafter covenanted and provided to be observed and performed by Tenant, the Landlord hereby leases to Tenant and Tenant hereby hires from Landlord that certain parcel of real property (herein termed the "leased land"; the term "leased land" and "leased premises" may be used interchangeably), situated in the County of Orange, State of California, described on Exhibit A attached hereto and by this reference made a part hereof for the term, at the rental, for the uses and purposes, and upon and subject to the covenants, conditions and restrictions hereinafter set forth. The demise of the leased land is made subject to taxes and assessments for the current fiscal year, not yet delinquent and subject to covenants, conditions, reservations, restrictions, easements, rights and rights-of-way of record.

ARTICLE II
TERM

The term of this Lease shall be for a period of eighty (80) years commencing on the date first above written and continuing until the anniversary of the eightieth (80th) year thereafter, unless sooner terminated, as hereinafter provided. Tenant shall have no option to extend the term of this Lease. This Lease shall terminate as to any portion of the leased land which is Sold and Conveyed as hereinafter provided. As hereinafter provided, this Lease shall terminate as to any portion of the leased land which is Sold and Conveyed unless Tenant elects to enter into an Affiliate Sublease or a Consumer Sublease.

ARTICLE III
USE AND DEVELOPMENT

3.01  Use.

At all times during the term of this Lease, Tenant shall be entitled to use the leased land, buildings and

HOU 000746

other improvements constructed thereon for single family residential use and for other purposes incidental thereto, including, without limitation, recreational facilities and sales offices, and Tenant may subdivide the leased land in connection with such single family residential use and development. Tenant covenants and agrees that it will not use or suffer or permit the leased land, buildings and other improvements constructed thereon to be used in a manner which would constitute waste or which would constitute a public or private nuisance. It is expressly understood and agreed that Tenant's construction activities upon the leased land shall not be deemed to constitute waste. As used in the foregoing, "single family residential use" includes condominiums, planned unit developments and other multiple unit developments of a similar nature.

3.02  Compliance with Laws.

Tenant covenants that during the lease term, Tenant will comply, at no cost or expense to Landlord, with all laws, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments and appropriate departments, commissions, boards and officers thereof, which may be applicable to the leased land, buildings and other improvements constructed thereon, or the use or manner of use of the leased land. Tenant accepts the leased land in the actual condition of the same as of the date of this Lease.

3.03  Contest.

Tenant shall have the right, after notice to Landlord, to contest by appropriate legal proceedings, without cost or expense to Landlord, the validity of any law, ordinance, order, rule, regulation or requirement of the nature herein referred to and to postpone compliance with the same, provided such contest shall be promptly and diligently prosecuted by and at the expense of Tenant and so long as Landlord shall not thereby suffer any civil, or be subject to any criminal penalties or sanctions, and Tenant shall properly protect and save harmless Landlord against any liability and claims for any such noncompliance or postponement of compliance.

3.04  Development of the Leased Land; Dedications.

3.04.01  Lessor's Cooperation; Power of Attorney.

(a)  Landlord and Tenant (at no expense to Landlord other than Landlord's time) shall take such actions and shall execute such instruments, documents, applications and/or certificates as Tenant may deem reasonably necessary or desirable to obtain requisite governmental approvals for the proposed development of the leased land or any portion thereof and/or to facilitate use and development of all or any portion of the leased land for the use permitted in Section 3.01 above, including, but not limited to, execution and delivery of the following:

-2-

HOU 000747

(i)  Instruments of dedication conforming with the provisions of this Section 3.04;

(ii)  Public utility conveyances;

(iii)  Applications to federal, state and local governmental agencies, together with all other instruments and documents reasonably necessary in order to obtain permits, reports, public reports, zoning, conditional use permits, variances and similar type items necessary for the proposed use and development; and

(iv)  Certificates to be affixed to subdivision maps, parcel maps, condominium plans and plans pertaining to the residential development.

(b)  Without limiting the foregoing, Landlord agrees to cooperate with Tenant in the development of the leased land in the manner of development set forth in Section 3.01 above, including, without limitation, attending a reasonable number of meetings with Tenant and/or jurisdictional government agencies.

(c)  In furtherance of paragraph (a) above, Landlord will, within three (3) days of a request from Tenant, execute, by one of its general partners who are named as signatories to this Lease, all of the documents or instruments described in paragraph (a).  If one of said named individuals has not executed such documents on behalf of Landlord within said period of time because of their unavailability or otherwise, Landlord, as provided in the Ground Lease (Short Form - Memorandum) executed by the parties concurrently herewith, hereby appoints Tenant as Landlord's attorney-in-fact to sign any and all of such documents.  Notwithstanding the execution of any of such documents by Tenant as Landlord's attorney-in-fact, Landlord agrees to execute any and all of such documents upon request therefor by Tenant.  In any event, Tenant shall promptly supply Landlord with copies of any document signed by Tenant as Landlord's attorney-in-fact.

3.04.02  Dedications.  In connection with the subdivision and development of the leased land, Tenant may cause subdivision tract maps to be filed of record which will show streets within the subdivision intended for use of the "Buyers of Lots", as such terms are defined herein, and their licensees, invitees, tenants, and servants; and, with respect to such streets, and all utility easements and rights-of-way, Tenant may, at its option, offer for dedication for public use thereof only its respective leasehold interest therein, in which event Landlord shall be required to offer for dedication for public use its respective leasehold interest therein; provided, however, that the reversionary interest of Landlord in the fee simple estate of the real property comprising the leased land therein will not be offered for dedication for public use upon the recording of any such subdivision tract maps or public

-3-

HOU 000748

utility conveyances unless required by the utility or the
City of Huntington Beach; or, provided further, Landlord
shall complete the dedications of the property of Landlord
pursuant to proceedings for Tentative Parcel Map No. 77-7
dated June 8, 1977 (subject to the undertakings of Tenant,
at no cost to Landlord to improve such areas within Edinger
Avenue required pursuant to the proceedings for Tentative
Parcel Map 77-7).

3.05  Construction.

Except as to offsite improvements which Tenant shall
construct pursuant to the proceedings under Tentative Parcel
Map No. 77-7, during the term of this Lease Tenant shall
have the right, but not the duty, to construct buildings and
improvements upon the leased land.  All buildings and
improvements now or hereafter constructed or located on the
leased premises by Tenant shall be the property of Tenant.

Landlord shall have the right to approve, for architec-
tural treatment, color and external appearance of materials
and the elevation design of the improvements which Tenant
intends to construct on the leased land prior to the com-
mencement of the construction of such improvements.  Land-
lord shall not unreasonably withhold such approval and
Landlord's sole consideration for granting or withholding
such approval shall be the preservation of the esthetics of
the leased land in reasonable harmony with the improvements
to Landlord's adjoining mobile home park.  Within thirty
(30) days of delivery to Landlord of plans showing the
foregoing, Landlord shall either approve such plans in
writing or give written notice to Tenant of Landlord's
disapproval, specifying the reasons therefor.  Failure to so
disapprove such plans within such time period shall be
deemed approval thereof.  In the event of such disapproval,
Tenant shall submit revised plans for Landlord's approval as
aforesaid, except that Landlord's time for approving or
disapproving said plans shall be shortened to ten (10)
days.  If Landlord disapproves the revised plans, all rental
payments hereunder shall abate until the revised plans are
either approved or deemed approved pursuant to the aforesaid
procedure for revised plans.  If such plans are not approved
or deemed approved within ninety (90) days of their original
submission to Landlord, Tenant may, at its option, terminate
this Lease by written notice to Landlord.  After such plans
are approved or deemed approved as aforesaid, Tenant shall
have the right, without the necessity of obtaining Land-
lord's consent, to make minor changes to such plans which
do not substantially affect the esthetic harmony of the
improvements to be built on the leased land with Landlord's
adjacent mobile home park.  However, Tenant shall promptly
deliver to Landlord copies of all such changes as they are
made.

Construction of improvements to the leased premises
shall be made in all cases subject to the following condi-
tions which Tenant covenants and agrees to observe and
perform:  (a) no construction shall be undertaken until
Tenant shall have procured and paid for, so far as the same

-4-

HOU 000749

may be required from time to time, all municipal and other
governmental permits and any authorizations of the various
municipal departments and government subdivisions having
jurisdiction, and the Landlord agrees to join, at the
expense of the Tenant, in the application for any such
permits or authorizations whenever such action is necessary;
and (b) all work done in connection with such construction
shall be done promptly using quality materials and in a
good and workmanlike manner at no cost or expense to Land-
lord and in compliance with the applicable municipal build-
ing and zoning laws and with all other laws, ordinances,
orders, rules, regulations and requirements of federal,
state and municipal governments and appropriate departments,
commissions, boards and officers thereof; the cost of all
construction shall be paid in cash or its equivalent, so
that the leased land shall at all times be free of liens for
labor and materials supplied to the leased land.

Tenant agrees to (i) indemnify Landlord against and
to hold Landlord harmless from any and all damages of any
nature suffered by owners of adjacent property (including
Landlord) by reason of the acts or negligence of Tenant
on the leased land; and (ii) protect the land and improve-
ments of adjoining owners (including Landlord) against
damage caused by said construction and improvements of the
leased land as required by law.

Landlord shall have the right at any time and from time
to time to post and maintain on the leased land such
notices as may be necessary to protect the leased land
and Landlord from mechanic's liens, materialmen's liens or
liens of a similar nature. On or before ten (10) days
prior to the commencement of any work of improvement by
Tenant on the leased land, Tenant shall give notice thereof
to Landlord and with the date expected by Tenant for the
commencement of such construction.

Tenant may at any time alter, improve or remodel any
building, structure or other improvement constructed or
placed by Tenant on the leased land.

3.06  Residential Leases.

    3.06.01  Definitions.

        (a)  The term "Placed under Development" for
purposes of this Lease shall mean all those portions of the
leased land which shall, subsequent to the date hereof, be
made the subject of a recorded subdivision map or parcel map
(including all streets, easements and rights-of-way within
the areas covered by any such subdivision map or parcel
map), together with those portions of the leased land
hereafter conveyed or dedicated by Tenant for public utility
purposes.

        (b)  The term "Lot" shall mean any lot into
which the leased land or any portion thereof has been
subdivided, and as used herein, shall include, without
limitation, any condominium into which the leased land or

-5-

HOU 000750

any portion thereof has been divided pursuant to the provisions of Section 1350, et seq., of the California Civil Code.

(c)   The term "Buyer" is defined to mean any person, firm or corporation who is a purchaser of any structure located or to be located upon any Lot and who executes a Residential Lease or a Consumer Sublease as lessee.

(d)   The term "Sold and Conveyed", as used herein, is defined to mean the execution and delivery of a Residential Lease or a Consumer Sublease, the term of which shall (i) commence concurrently with delivery; (ii) in the case of a Residential Lease be equivalent with the then remaining term of this Lease; and (iii) in the case of a Consumer Sublease be equivalent to the then remaining term of this Lease less one (1) day.

(e)   The term "Residential Lease", as used herein, shall mean a lease between Landlord and any Buyer (and the homeowners association in the case of common facilities with appropriate modifications) in the form attached hereto as Exhibit "B", and by this reference incorporated herein and made a part hereof as if set forth in full herein, with appropriate modification if the improvements are sold as condominiums.

(f)   The term "Consumer Sublease" shall be defined in Section 3.08(b) below.

3.06.02    Execution of Residential Leases.

(a)   After Tenant shall have first obtained the appropriate governmental approvals, Tenant may offer the Lots be Sold and Conveyed to the general public together with, at the election of Tenant, an appurtenant membership in any homeowners association organized and incorporated to be the lessee of a Residential Lease of the common facilities, hereafter provided and/or to administer subdivision servitudes.   It is the intention of the parties that Tenant shall sell the building and other improvements it constructs on the Lots to Buyers.   All amounts received by Tenant upon the sale of improvements shall be the sole property of Tenant, and the Landlord shall not be entitled to any portion thereof.

(b)   When each Lot is Sold and Conveyed Landlord will execute, within fifteen (15) days following the request of Tenant, individual Residential Leases with the Buyers.   Each Residential Lease shall be subject to no monetary encumbrances other than current taxes; however each Lot shall, at the election of Tenant, be subject to subdivision servitudes (if such be the case, such servitudes shall be mutually approved in writing by Landlord, who agrees not to unreasonably withhold its consent, and by Tenant) and each Buyer's estate shall be subject to appropriate assessments for upkeep and replacement of common

-6-

HOU 000751

facilities. This Lease shall, upon the commencement of
the lease term of each Residential Lease, terminate as to
the real property covered by the Residential Lease. The
improvements on any Lot shall remain the sole property of
the Buyer. This Lease shall also terminate upon the con-
veyance or dedication of any portion of the leased land to a
public entity or public utility.

(c)  At all times the total of the basic
rental remaining payable under this Lease and the basic
rental payable under the aggregate of the Residential Leases
shall be equal to the rental payable under Article IV of
this Lease as if no Lots had been Sold and Conveyed. For
the purposes of the foregoing, each Residential Lease, which
may be terminated by Landlord, as lessor, by reason of an
event of default by the Buyer under a Residential Lease,
shall nevertheless for the purposes of this provision be
deemed to still be in effect and the rental which would have
been paid thereunder shall be accounted for with respect to
the foregoing determinations. It is anticipated by the
parties that the basic rental as provided for herein shall
be uniformly divided among the Lots. Tenant shall be
discharged and exonerated under this Lease as to each
Lot Sold and Conveyed; however, Tenant shall nevertheless
remain obligated with respect to all covenants made by
Tenant with Buyers and for all warranties and representa-
tions, express or implied, in favor of the Buyers; Tenant
shall indemnify and hold Landlord free and harmless from all
liability with respect to such covenants, warranties and
representations in favor of Buyer whether or not disclosed
to Landlord.

3.07  Common Facilities.

Tenant may choose to construct within portions of the
leased land Placed under Development recreational or other
common facilities (which shall include streets) for the use
and enjoyment of Buyers and convey such facilities to an
association organized and incorporated to acquire the same.
Upon such conveyance and upon request of Tenant, Landlord
shall execute a Residential Lease or Consumer Sublease, as
lessor, with such association, as lessee, for a term equiva-
lent to the unexpired period of this Lease, at basic rental
of ONE ($1) DOLLAR per year. The land area of such recrea-
tional or common facilities (exclusive of streets) shall not
exceed twenty-six thousand eight hundred (26,800) square
feet without Landlord's prior written approval if a multi-
phase development is elected. No Lot or Lots of the common
facilities shall be Sold and Conveyed unless and until the
following conditions shall have occurred:

(a)  Tenant shall have first obtained the govern-
mental approvals necessary to permit all Lots (or in the
case of a multi-phase development, the Lots within the
initial phase) benefited by such common facilities to be
Sold and Conveyed to Buyers.

(b)  No less than forty (40%) percent of all
buildings and other improvements to the Lots (or in the case

-7-

HQU 000752

of a multi-phase development, no less than forty (40%) percent of the lots within the initial phase) benefited by such common facilities shall have been substantially completed, or, in the event a condominium development is elected, completion assured by surety arrangements approved by the California Department of Real Estate).

(c)   The mortgagee, as that term is hereafter defined, shall have executed and delivered a reconveyance of any lien on the Lot or Lots of the common facilities so conveyed to such association.

(d)   The construction of the common facilities shall have been fully completed or completion assured by surety arrangements approved by the California Department of Real Estate.

### 3.08   Tenant's Right to New Leases; Consumer Subleases.

(a)   Tenant, at any time and from time to time may at its election designate certain parcels of the leased land to be subject to separate leases between Tenant and Landlord.   Without limiting the generality of the foregoing, Tenant may obtain hereunder separate leases for some or all of the Lots into which the leased land is divided.   These parcels shall comply with all requirements of the Subdivision Map Act and all other applicable laws.   Upon written request by Tenant, Landlord shall execute new leases to parcels of the leased land as designated by Tenant and shall amend this Lease to reflect that such parcels are no longer subject to this Lease.   The terms and conditions of the new leases and this Lease, as amended, shall be the same as the terms and conditions of this Lease with the exception that the annual rent shall be divided among the leases based on the proportion which the square footage of the parcel governed by any such lease bears to the total square footage of the leased land.   Notwithstanding the foregoing, in the event that Tenant designates a Lot for a separate lease hereunder, the annual rent payable under the lease for such Lot shall be equal to the annual rent payable under this Lease multiplied by a fraction, the numerator of which is one and the denominator of which is the total number of Lots into which the leased land is divided.

(b)   As to such Lots for which Tenant has obtained separate leases, and notwithstanding any other provision of this Article III, Tenant may elect to enter into a sublease with the Buyer of any such Lot in the form attached hereto as Exhibit D with appropriate amendments if the Lots are Sold and Conveyed as condominiums (referred to in this Lease as a "Consumer Sublease") instead of causing such Lot to be Sold and Conveyed pursuant to a Residential Lease.   This Lease shall not terminate when any such Lot is Sold and Conveyed pursuant to a Consumer Sublease.   Tenant, or its permitted development sublessee, as provided in Section 6.01.03 below, may offer Lots to be Sold and Conveyed to the public as provided in Section 3.06.02(a), but reading "Consumer Sublease" for "Residential Lease" therein.   Tenant may sublease common facilities Lots to a homeowners associa-

-8-

HOU 000753

May-01-02 04:17pm   From-RUTAN & TUCKER LLP,                714-546-9035           T-234  P.10/28  F-670

tion formed from among Buyers under Consumer Subleases as
appropriately modified, but subject to the restrictions of
Section 3.07 above. The use of Consumer Subleases shall not
affect, among other things, Landlord's obligation under
Section 3.04.02 or Tenant's ability to impose subdivision
servitudes providing for assessments against Buyers as
provided in Section 3.06.02(b).

    (c)  Tenant shall be solely liable with respect to
all covenants made by Tenant with Buyers and for all warran-
ties and representations, express or implied, in favor of
the Buyers under the Consumer Subleases.  Tenant shall
indemnify and hold Landlord free and harmless from all
liability with respect to such covenants, warranties and
representations in favor of Buyer whether or not disclosed
to Landlord.

    (d)  Landlord hereby agrees with Tenant for the
benefit of all Buyers under Consumer Subleases that:

    (i)  So long as such Buyer is not in default
in the payment of rental or other charges due under the
Consumer Sublease or in the performance of any of the
other terms, covenants or conditions of the Consumer
Sublease on such Buyer's part to be performed, such
Buyer's possession of the Lot subject to such Consumer
Sublease and such Buyer's other rights and privileges
under the Consumer Sublease shall not be interfered
with by the Landlord, its successors or assigns.

    (ii)  Should this Lease be terminated prior
to the expiration of the term hereof or any extensions
of said term for any reason whatsoever, including
without limitation, as a result of Tenant's breach
thereof or default thereunder, the Consumer Sublease
shall continue in full force and effect as a direct
lease between Landlord and the Buyer under the Consumer
Sublease, upon and subject to all of the terms, cove-
nants and conditions of the Consumer Sublease for the
balance of the term thereof remaining, provided that
such Buyer attorns to Landlord in writing.  Notwith-
standing the foregoing, Landlord shall not be bound by
any act or omission of Tenant as the prior sublessor
under the Consumer Sublease.  Landlord shall not be
bound by any prepayment of rent (other than through
the Payment Agreement referred to in subparagraph
3.08(d)(iv)) or other charges which such Buyer might
have paid for more than three (3) months in advance to
Tenant as the prior sublessor, and Landlord shall not
be bound by any amendment to or modification of any
Consumer Sublease or by any waiver or forbearance on
the part of Tenant as the prior sublessor thereunder
made or given without the written consent of Landlord.

    (iii)  If, the provisions of the foregoing
notwithstanding, a Consumer Sublease is terminated by
reason of any termination of this Lease, it is hereby
agreed that the Buyer under such Consumer Sublease and

-9-

HOU 000754

May-01-02 04:18pm From-ROTAN & TUCKER LLP, 714-546-9035 T-234 P.11/28 F-670

Landlord shall enter into a new lease upon the terms and conditions of the Consumer Sublease for the then remaining balance of the term of the Consumer Sublease.

(iv)  In the event that such Consumer Sub-leases shall call for the payment of rent less fre-quently than quarter annually, the provisions of subparagraph 3.08(d)(ii) shall only be applicable if Landlord and Tenant enter into a Payment Agreement under the terms of which all rental to be paid by Buyers under the terms of the Consumer Sublease will be paid to a neutral depository, such as a bank, savings and loan, trust company or escrow company.  Such neutral depository shall be instructed to remit to lessor from such sum collected the amount due under this Lease attributable to the Lot subject to the Consumer Sublease and to remit the balance to the Tenant.

## ARTICLE IV
### RENTAL

4.01   Basic Rental.

Tenant agrees to pay to Landlord as basic rental for the use and occupancy of the leased land, an annual sum of SEVENTY-TWO THOUSAND TWO HUNDRED TWENTY ($72,220.00) DOLLARS calculated at TEN THOUSAND ($10,000.00) DOLLARS per acre, multiplied by 7.222 acres, being the number of acres within Parcel 1 of Parcel Map recorded in Book 108, pages 47 and 48, inclusive, Official Records of Orange County, Cali-fornia, subject to adjustment as provided in Section 4.03 below.  Basic rental shall be payable in twelve (12) equal monthly installments of SIX THOUSAND EIGHTEEN DOLLARS AND THIRTY-THREE CENTS ($6,018.33) each, due and payable in advance on the first day of each calendar month during the term hereof, without deduction or offset, in lawful money of the United States of America at such place as Landlord from time to time shall direct in writing to Tenant.

4.02   Commencement of Rentals.

Rental payments shall commence on the first day of the calendar month next following the date first above written if such date be a date other than the first day of a calendar month.  In addition to the first full month's rent, Tenant shall pay at such time an additional pro rata rent representing the period between the term commencement date and the first day of the next succeeding calendar month, based on a thirty (30) day month and a three hundred sixty (360) day year.

4.03   Adjusted Rental.

(a)   When a Residential Lease, but not a Consumer Sublease, is Sold and Conveyed, the basic rental payable by Tenant shall be reduced by the amount of rental payable to Landlord under such Residential Lease.

-10-

HOU 000755

May-01-02  04:18pm  From-RUTAN & TUCKER LLP,                714-546-9035           T-234  P.12/28  F-670

(b)   Upon the expiration of the twentieth (20th), fortieth (40th) and sixtieth (60th) year of the term of this Lease, the rental payable hereunder shall be adjusted to a sum equal to eight (8%) percent of the unimproved fair market value of the leased land, or any portion then remaining subject to this Lease, at the end of said twentieth (20th), fortieth (40th) or sixtieth (60th) year, as the case may be.  After any such adjustment of rental, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner provided in Section 4.01 above; provided, however, in no event shall the rental as so adjusted be less than an annual rental at least equal to TEN THOUSAND ($10,000.00) DOLLARS per acre for the portion of the leased land then subject to this Lease (calculated to exclude the area of the reserved easement described in Exhibit A).   If, upon the expiration of the twentieth (20th), fortieth (40th) or sixtieth (60th) year, as the case may be, the parties hereto shall have failed to agree upon such adjusted rental, the fair market value of the leased land (or portion thereof then subject to this Lease), as unimproved, and the adjusted rental, shall be determined by arbitration pursuant to subparagraph (c) of this Section.

(c)   Within ten (10) days of the expiration of the twentieth (20th), fortieth (40th) or sixtieth (60th) year of the term of this Lease, as the case may be, each of the parties hereto shall appoint in writing an arbitrator and give written notice thereof to the other party; or, in case of the failure of either party so to do, the other party may apply to the Superior Court of Orange County, California, to appoint an arbitrator to represent the defaulting party in the manner prescribed in the then existing statutes of the State of California, applicable to arbitration, the provisions of which statutes shall apply to and govern the arbitration herein provided for with the same effect as though incorporated herein.  Within ten (10) days after the appointment of said two (2) arbitrators (in either manner), they shall appoint, in writing, a third arbitrator and give written notice thereto to Landlord and Tenant and, if they shall fail to do so, then either party hereto may make application to said Superior Court to appoint such third arbitrator in the manner prescribed in said arbitration statutes.

The three (3) arbitrators so appointed (in either manner) shall promptly fix a convenient time and place in the County of Orange for hearing the matter to be arbitrated and shall give reasonable written notice thereof to each of the parties hereto and with reasonable diligence shall hear and determine the matter in accordance with the provisions hereof and of said arbitration statutes, and shall execute and acknowledge their award thereon in writing and cause a copy thereof to be delivered to each of the parties hereto, and the award of a majority of said arbitrators shall determine the question arbitrated, and a judgment may be rendered by said Superior Court confirming said award, or the same may be vacated, modified or corrected by said Court

-11-

HOU 000756

May-01-02  04:19pm  From-RUTAN & TUCKER LLP,                  714-546-8035        T-234  P.13/28  F-870

at the instance of either of the parties hereto, in accor-
dance with said arbitration statutes, and said judgment
shall have the force and effect as provided in said
statutes.

Each of the parties hereto shall pay for the services
of its appointee, attorneys and witnesses and one-half (1/2)
of all other proper costs of arbitration. Pending the final
decision of such adjusted rental, Tenant shall pay to
Landlord the amount of rent previously payable under Section
4.01 above as adjusted pursuant to Section 4.03(a) above.
If such adjusted rental, as finally determined, shall exceed
the amount of the previous rental, the excess amount ac-
cruing during the interim period shall be paid by Tenant to
Landlord within thirty (30) days after the final determina-
tion of said adjusted rental.  If such adjusted rental, as
finally determined, shall be less than such previous rental,
the amount of any excess paid by Tenant during said interim
period shall be credited against the first rentals there-
after payable hereunder.

## ARTICLE V
## TAXES AND ASSESSMENTS

### 5.01   Tenant to Pay Taxes and Assessments.

In addition to the basic rental, Tenant shall
pay and discharge all taxes and general and special assess-
ments which may be levied upon or assessed against the
leased land (or the portion thereof being subject to this
Lease at the time such taxes become payable), and all
interest therein and all improvements and other property
thereon, and upon all rentals payable on this Lease (in the
event that county secured real property taxes be assessed in
whole or in part either on an _ad valorem_ basis upon the
leased land or upon rentals payable under the terms of the
Lease thereof) as such taxes and assessments become due and
payable during the term of this Lease.  Taxes and assess-
ments for the current fiscal year shall be prorated between
Landlord and Tenant to the term commencement date.  Tenant
shall pay each installment of said taxes and assessments not
later than the delinquency date thereof.  Notwithstanding
the foregoing, if Tenant shall, in good faith, contest the
validity of said taxes and assessments, then Tenant, upon
furnishing a sufficient surety bond to Landlord, may with-
hold payment pending settlement of its claim or may pay the
same under protest and, in either case and at Tenant's
expense, shall defend itself and Landlord against the same
and shall pay and satisfy any adverse judgment that may be
rendered thereon before the enforcement thereof against
Landlord or the leased land.  Landlord shall remain re-
sponsible for its income tax payable on revenue derived from
this Lease and all estate, inheritance, gift taxes and taxes
of a similar nature.

### 5.02   Tenant's Indemnity Re Taxes and Assessments.

Tenant agrees to protect and hold harmless Landlord
and the leased land and all improvements in, on and about

-12-

HOU 000757

the leased land from all liability for any taxes and as-
sessments for which Tenant is obligated pursuant to Section
5.01 above, together with any interest, penalties or other
charges imposed and from any sale or other proceeding to
enforce payment thereof.

#### 5.03  Lack of Separate Assessment.

Tenant's obligations pursuant to Section 5.01 presume
that the county tax assessor will separately assess the
leased land and will send the tax bill therefor directly to
Tenant.  If the assessor sends the tax bill to Landlord,
Tenant agrees to make the payments required under Section
5.01 within ten (10) days after Tenant's receipt from
Landlord of a copy of any tax bill received by Landlord.

#### 5.04  Tenant Entitled to Refund.

It is agreed that any refund made in any taxes or as-
sessments paid by Tenant pursuant to this Article shall be
the sole property of Tenant, and if any such refund is mis-
takenly paid to Landlord, Landlord agrees to immediately,
and in no event later than three (3) days, pay the same
over to Tenant.

#### 5.05  Installment Election for Assessments.

Notwithstanding any other provision of this Article,
Tenant may elect, as to any assessment levied against the
leased land during the term of this Lease, to take advan-
tage of the ability to cause such assessments to be payable
in installments instead of in a lump sum.  In such event,
Tenant shall only be responsible to pay the installments
which come due and payable during the term hereof.

### ARTICLE VI
### ASSIGNMENT AND ENCUMBRANCE

#### 6.01  When Landlord's Consent Required.

6.01.01  Landlord's Consent Required.  Except as
provided in Article III and in this Article VI, Tenant shall
not encumber, assign or otherwise transfer this Lease, or
sublet the whole or any part of the leased land without the
prior written consent and approval of Landlord, which
consent shall not be unreasonably withheld.  Except as
otherwise so permitted in this Lease, no assignment or other
transfer, whether voluntary or involuntary, by operation of
law, under legal process, by receivership, in bankruptcy, or
otherwise, shall be valid or effective without the express
prior written consent and approval of Landlord.

6.01.02  Assignments For Which Landlord's Consent
Not Required.

(a)(1)  If the Tenant be Robert P. Warming-
ton, Tenant shall have the right, without obtaining Land-

-13-

HOU 000758

May-01-02  04:18pm   From-RUTAN & TUCKER LLP                 9147546-9835                I-234  P.15/28  F-870

lord's consent, to assign its interest under this Lease
to The Robert P. Warmington Co., a California corporation
(as used herein The Robert P. Warmington Co. includes any
corporation which succeeds to the assets of such corporation
by merger, consolidation or purchase), to any other corpora-
tion in which Tenant (or The Robert P. Warmington Co.) has
greater than a fifty (50%) percent proprietary interest, to
any partnership or joint venture in which Tenant (or The
Robert P. Warmington Co.) or any such other corporation or
entity is the managing partner and to the heirs, devisees
and personal representatives of Optionee.

(a)(2)   If the Tenant be The Robert P.
Warmington Co., a California corporation (or successor as
provided in subsection (a)(1) above), Tenant shall have the
right, without obtaining Landlord's consent, to assign its
interest under this Lease to Robert P. Warmington, an
individual, to any corporation in which Tenant or said
individual has greater than a fifty (50%) percent propri-
tary interest, to any partnership or joint venture in which
Tenant or said individual or any such corporation or
entity is the managing partner, and to any corporation
or other entity which succeeds to Tenant's interest by
merger, consolidation or by sale of all or substantially all
of Tenant's assets.

(b)   Tenant shall further have the right to
assign its interest under this Lease to any individual,
corporation or entity which, at the time of the assignment,
has a net worth of not less than THREE MILLION ($3,000,000)
DOLLARS and has experience substantially equal to that of
Tenant in building and marketing single-family residences of
the type to be built on the leased land.  Robert P. Warming-
ton and The Robert P. Warmington Co. shall each be consider-
ed as having identical experience.

(c)   In the event of any assignment which
complies with the foregoing, the assignor shall be released
of any and all liability arising under this Lease from and
after the effective date of the assignment.

(d)   Notwithstanding the foregoing, within ten
(10) days of a request therefor, Landlord shall execute an
instrument in recordable form consenting to any assignment
or other transfer made without its consent pursuant hereto.

6.02 Hypothecation.

Landlord agrees and consents that Tenant may, without
Landlord's prior consent, at any time and from time to time,
mortgage, encumber, assign and hypothecate by mortgage
or deed of trust (either of which is herein termed a "mort-
gage") all right, title and interest of Tenant in the
leasehold estate created by this Lease to a lender (herein
called "mortgagee").  Notwithstanding the foregoing, within
ten (10) days of a request therefor from Tenant, Landlord
agrees to execute an instrument in recordable form consent-
ing to any such mortgage, encumbrance, assignment or hypo-

-14-

HOU 000759

May-01-02  04:20pm   From-RUTAN & TUCKER LLP,                    714-546-9035          T-234  P.16/28  F-670

thecation.  If, notwithstanding the foregoing, Tenant's
leasehold interest hereunder terminates under such fore-
closure, assignment in lieu of foreclosure, the mortgagee
shall be entitled to a new lease upon the same terms as this
Lease and subject only to those things caused, created or
consented to by Landlord to which Tenant's leasehold estate
hereunder is subject as of the date of the recordation of
the mortgage.

Except as hereinafter otherwise provided, the mortgage
and all rights thereunder shall be subject to each and every
of the covenants, conditions and restrictions of this Lease,
and the same shall be subject to all rights and interest of
Landlord, none of which shall be deemed waived by the
foregoing consent.  Tenant agrees to furnish to Landlord
copies of all instruments, indentures or agreements executed
by Tenant, and to be recorded, to perfect the hypothecation
of the leasehold estate to a mortgagee.

Any mortgagee shall have the right at any time during
the term hereof while this Lease is in full force and
effect:

(a)  To do any act required of Tenant hereunder,
and all such acts done or performed shall be effective
to prevent a forfeiture of Tenant's rights hereunder as
if the same had been done or performed by Tenant; and

(b)  To rely on the security afforded by the
leasehold estate and to acquire and to succeed to the
interest of Tenant hereunder by foreclosure, whether by
judicial sale, by power of sale contained in any security
instrument, or by assignment given in lieu of foreclosure,
and thereafter convey or assign title to the leasehold
estate so acquired to any other person, firm or corporation
without the consent of Landlord as to the such initial
transfer.

Landlord shall give written notice to mort-
gagee of any default by Tenant.  Landlord shall not termi-
nate this Lease by reason of such default of Tenant if the
mortgagee shall:

(1)  Cure such default within sixty (60)
days after service on mortgagee of written notice
from Landlord of Landlord's intention to terminate
this Lease, except, however, (if the same cannot
be cured by payment of rent, taxes, assessments
and insurance premiums and other cash charges payable
by Tenant hereunder within sixty (60) days) mortgagee
shall have a reasonable time after sixty (60) days
within which to cure such default so long as mortgagee
is proceeding to cure such default with reasonable
diligence, or

(11)  Undertake on or before the expiration of
said sixty (60) days or said reasonable time, in
writing to perform all covenants of this Lease capable

-15-

HOU 000760

May-01-02  04:20pm   From-RUTAN & TUCKER LLP,                    714-549-8035              1-234   P.17/28   F-670

of performance by mortgagee. In the event of such undertaking, or in the event such default is not susceptible of being cured by mortgagee, such default shall be deemed cured if mortgagee shall proceed in a timely and diligent manner to accomplish the foreclosure of Tenant's interest; provided, however, that if said foreclosure proceedings shall be subject to leave of any court (as in the case of a bankruptcy proceeding) and such leave shall have been applied for but not obtained by mortgagee, such default shall be deemed cured nevertheless, if mortgagee shall have attempted to obtain such leave in a timely and diligent manner. The obligation of mortgagee for the performance of the terms of this Lease shall terminate upon the sale, transfer or assignment of the right, title and interest of mortgagee in the leasehold estate to any other person, firm or corporation.

Any provisions contained in this Lease to the contrary notwithstanding, any mortgagee or its assignee may enforce such mortgage and acquire title to the leasehold estate in any lawful manner and, pending foreclosure of any such mortgage, may take possession of and rent the leased land and upon foreclosure of such mortgage may, without further consent of Landlord, sell, transfer or assign the leasehold estate or sublet the leased land. Any purchase money, mortgage or deed of trust delivered in connection with any such assignment or transfer shall be entitled to the benefit of all of the provisions of this Lease regarding the rights of a mortgagee. Any person acquiring the leasehold estate from mortgagee shall, as a condition precedent to the enjoyment of the leasehold estate, assume in writing the liability for the performance of the obligations imposed upon Tenant by the terms of this Lease. Mortgagee shall furnish Landlord with an executed copy of the instrument of assignment or transfer and a copy of the undertaking made in accordance with the foregoing provisions. Upon said assumption the assignor shall be released from all obligations for performance of the terms of this Lease.

The foregoing provisions do not give any person the right to mortgage, hypothecate or otherwise encumber or to cause any liens to be placed upon the freehold estate of Landlord, nor shall the foregoing provisions in any event be construed as resulting in a subordination in whole or in part of the freehold estate of Landlord to any indebtedness of Tenant.

Notwithstanding the foregoing provisions, until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this Lease, consent to any modification hereof or consent to the assignment hereof, or of any part or portion, of the term created thereby or of any interest therein; provided, however, at the time a Lot is Sold and Conveyed by a Residential Lease, there shall be recorded a reconveyance of the lien of the mortgage covering such Lot Sold and Conveyed by a Residential Lease.

-16-

HOU 000761

May-01-02  04:21pm   From-RUTAN & TUCKER LLP,            714-046-0035      T-234   P.18/28   F-670

6.03  Subleases For Which Landlord's Consent Not Required.

(a)   Landlord's consent shall not be required for any Consumer Subleases or for any subsequent transfer of the subleasehold estate thereunder.

(b)   Tenant shall have the right, without Land-lord's prior consent, to sublease its leasehold estate hereunder to any person or entity described in Section 6.01.02(a)(1).   Said sublease is herein referred to as an "Affiliate Sublease".

## ARTICLE VII
## LIENS

Tenant shall not suffer or permit to be enforced against the leased land, or any part thereof, any mechanics', laborers', materialmen's, contractors', subcon-tractors', or any other liens arising from or any claim for damages growing out of any work of construction or improve-ment, or any other claim or demand howsoever the same may arise; but Tenant shall pay or cause to be paid all of said liens, claims and demands before any action is brought to enforce the same against the leased land, and Tenant hereby indemnifies and agrees to hold Landlord and the leased land free and harmless from all liability for any and all such liens, claims and demands, together with all costs and expenses, including, but not limited to, attorneys' fees and court costs incurred by Landlord in connection therewith, and Landlord shall have the right, at any time and from time to time, to post and maintain on the leased land, or any part thereof, such notices of nonresponsibility as desired by Landlord or as may be provided by law.   Notwithstanding anything to the contrary contained in this paragraph, if Tenant shall, in good faith, contest the validity of any such lien, claim or demand, then Tenant shall, at its expense, defend itself and Landlord against the same and shall pay and satisfy any adverse judgment that may be rendered thereon before the enforcement thereof against Landlord or the leased land, and if Landlord shall require, Tenant shall furnish to Landlord a surety bond satisfactory to Landlord in an amount equal to such contested lien, claim or demand indemnifying Landlord against liability for same; or, if Landlord shall request, Tenant shall procure and record the bond provided for in the Civil Code of the State of California, or any comparable statute hereafter enacted providing for a bond freeing the leased land from the effect of such lien or claim or action thereon.

## ARTICLE VIII
## INDEMNIFICATION AND INSURANCE

8.01  Indemnity.

Landlord shall not be liable for any loss, damage, injury or claim of any kind or character to any person (including a Buyer) or property arising from or caused by

-17-

HOU 000762

May-01-02  04:21pm  From-RUTAN & TUCKER LLP,                714-546-8035           T-234   P.18/28   F-670

the use or development of the leased land and the construc-
tion of improvements thereon, including, without limitation,
any such loss, damage, injury or claim arising from or
caused by (i) any use of the leased land, or any part
thereof; (ii) any defect in the design, construction of or
material in any structure or other improvement upon the
leased land or in any other facility therein; (iii) any
defect in soils or in the preparation of soils or in the
design and accomplishment of grading; (iv) any act or
omission of Tenant or any of its agents, employees,
licensees, invitees or contractors; (v) any accident on the
leased land or other casualty thereon; (vi) any represen-
tations by Tenant or any of its agents or employees; (vii) a
violation or alleged violation by Tenant, its employees or
agents, of any law now or hereafter enacted; (viii) any
other cause whatsoever in connection with Tenant's use of
the leased land; or (ix) the application of the principles
of strict liability with respect to any act or omission
during the term of this Lease of Tenant or its agents,
employees, licensees, invitees or contractors in connection
with the leased land, and Tenant, as a material part of the
consideration of this Lease, except to the extent occasioned
by the sole act or negligence or willful misconduct of
Landlord or its employees, hereby waives on its behalf all
claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby indemnifies and
agrees to hold Landlord entirely free and harmless from all
liability for any such loss, damage, injury or claim with
respect to any person or property made by other persons, and
with respect to any such violations or charges arising
therefrom, including, without limitation, attorneys' fees
and court costs incurred by Landlord in connection there-
with.

8.02  Insurance.

     Tenant shall maintain at all times during the term
of the Lease, at its expense and in companies acceptable to
Landlord:

     (a)  Workmen's compensation insurance and employ-
er's liability insurance.

     (b)  Comprehensive liability insurance, with limits
of not less than FIVE HUNDRED THOUSAND ($500,000) DOLLARS
for any one person; ONE MILLION ($1,000,000) DOLLARS for any
one occurrence as to bodily injury or death; and ONE HUNDRED
THOUSAND ($100,000) DOLLARS per occurrence as to property
damage.

     Each policy of insurance shall be issued by insurers of
recognized responsibility, qualified to do business in
California, acceptable to Landlord and which has, at the
execution hereof, a rating at least equal to AXV by Best's
Insurance Guide (or other equivalent rating if such Guide be
discontinued) and shall name Landlord as an additional
insured.  Prior to the time of commencement of this Lease,
Tenant shall deliver certificates of insurance carriers of

                         -18-          HOU 000763

May-01-02  04:21pm  From-RUTAN & TUCKER LLP,                              714-546-9035          T-234  P.20/28  F-670

each policy of insurance as evidence of compliance with the
above requirements and stating that not less than ten (10)
days' written notice will be given to Landlord prior to
cancellation or reduction in coverage or amount.

### 8.03  Landlord's Indemnity.

The parties agree that Tenant shall have no liability
by reason of the fact that a portion of Monterey Lane lies
within an easement on the leased land as described on
Exhibit A.  Landlord hereby agrees to indemnify and hold
Tenant and any community association formed by Tenant to
service the residents of the leased land absolutely free and
harmless from any loss, damage, injury, claim or cause of
action of any kind arising out of the use, improvement or
maintenance of said Monterey Lane, including, without
limitation, attorneys' fees and court costs.

## ARTICLE IX
### REMOVAL

Upon the expiration of the term of this Lease, Tenant
shall quit and surrender possession of the leased land to
Landlord.  Upon the expiration of the term of this Lease,
Tenant shall have the right to remove from the leased land
any improvements erected on the leased land by Tenant and
which, at the time of such expiration, remain the property
of Tenant.  Tenant shall promptly repair any damage to the
leased land caused by such removal.  If Tenant has not
completed such removal within sixty (60) days of the
expiration of the term hereof, all of such improvements
shall automatically become the property of Landlord without
the payment of any consideration therefor.  In addition,
before surrendering possession of the leased land as afore-
said, Tenant shall, without expense to Landlord, remove or
cause to be removed from said leased land all movable signs,
furnishings, equipment, trade fixtures, merchandise and
other movable personal property installed or placed therein,
and all debris and rubbish, and Tenant shall repair all
damage to the leased land resulting from such removal.  Upon
such expiration, and if requested by Landlord, Tenant shall,
within five (5) days of a request therefor, execute, ac-
knowledge and deliver to Landlord an instrument in writing
releasing and quitclaiming to Landlord all right, title and
interest of Tenant in and to said leased land by reason of
this Lease or otherwise.  If Tenant fails to remove any of
its signs, furnishings, equipment, trade fixtures, mer-
chandise or other personal property within thirty (30) days
after the expiration or earlier termination of this Lease,
then Landlord may, at its sole option, (i) deem any or all
of such items abandoned as the sole property of Land-
lord; or (ii) remove any or all of such items and dispose of
same in any manner or store same for Tenant, in which event
the expense of such disposition or storage shall be borne by
Tenant and shall be immediately due and payable.

-19-

HOU 000764

## ARTICLE X
### CONDEMNATION

The words "condemnation" or "condemned", as used
in this paragraph, shall mean the exercise of, or intent to
exercise, the power of eminent domain expressed in writing,
as well as the filing of any action or proceeding for such
purpose, by any person, entity, body, agency or authority
having the right or power of eminent domain (the "condemning
authority" herein), and shall include a voluntary sale to
any such condemning authority, either under the threat of
condemnation or while condemnation proceedings are pending,
and the condemnation shall be deemed to occur in point of
time upon the actual physical taking of possession pursuant
to the exercise of said power of eminent domain.  All award
or compensation paid upon condemnation shall be allocated as
follows:  (1) Prior to the time the leased land or any
portion is Placed under Development, the entire award shall
be allocated, paid to and be the sole property of Landlord,
except for Tenant's hard costs which shall be paid out of
said award to Tenant, and (2) after the time the leased land
or any portion thereof has been Placed under Development the
entire award shall be allocated as follows:  (a) to Tenant,
a sum equal to the total of (i) the then fair market value
of the buildings and other improvements constructed or
installed by Tenant on the leased land; and (ii) the then
fair market value of Tenant's leasehold interest in the
leased land representing the present value of the aggre-
gate of the difference, if any, between (a) the economic
rental and (b) the basic rental, for the unexpired period
prior to a basic rental adjustment as provided in Article
IV; and (b) to Landlord, the remainder.  Landlord may,
with Tenant's written consent, agree to sell and/or convey
the leased land or portion thereof to the condemning author-
ity without first requiring that action or proceeding shall
be instituted or, if any such action or proceeding shall be
instituted, without requiring any trial or hearing thereof.
All amounts paid by the condemning authority upon such
voluntary sale or conveyance shall be allocated as provided
above.

In determining the portion of a condemnation award
or a payment for voluntary sale or conveyance under threat
of condemnation, any appraisal performed by the condemning
authority in connection with such award or conveyance shall
be controlling.  In the absence of such appraisal or agree-
ment between Landlord and Tenant as to such amounts, each
shall appoint an appraiser and the two shall select a third
appraiser, and all three shall appraise the property for the
purpose of such allocation of compensation for a condem-
nation with the average of the two appraisals which are the
closest controlling.

If only a portion of the leased land is condemned, this
Lease shall terminate if the mortgagee shall consent thereto
in writing and if Tenant shall notify Landlord, within sixty
(60) days of the condemnation, that the portion of the
leased land remaining after the condemnation cannot be
developed in the manner chosen by Tenant.  If Tenant fails

-20-

HOU 000765

to timely give such notice, this Lease shall remain in full force and effect as to the remaining portion of the leased land, except that (a) the basic rental payable by Tenant shall be reduced in the proportion that the area of the portion taken bears to the area of the entire leased land, and (b) Tenant shall be entitled to use the award payable on such partial condemnation to repair any damage to the remaining portion of the leased land and improvements thereon.

As used in the foregoing, "Tenant's hard costs" shall mean all of Tenant's direct out-of-pocket expenses incurred with regard to the development or intended development of the leased land and shall include, without limitation, the following but shall not include any charge for overhead or other administrative expenses: engineering, architectural, environmental, legal, accounting and other consultants, development fees paid to governmental authorities, the cost of preparing and/or reproducing plans and specifications for such development, and the contract cost of improving the leased land (or Tenant's direct costs if such improvement is done by Tenant's employees).

## ARTICLE XI
## DEFAULT AND REMEDIES IN EVENT OF DEFAULT

### 11.01  Events of Default.

Tenant shall be deemed in default under the terms of this Lease should Tenant:

(a)  Use the leased land or suffer the same to be used for any purpose other than as authorized in this Lease for more than thirty (30) days after notice from Landlord specifying the unauthorized use; provided, however, if such unauthorized use is not capable of being cured within said thirty (30) day period, Tenant shall not be deemed in default hereunder so long as it commences to cure such unauthorized use within said period and thereafter diligently and continuously prosecutes the same to completion; or

(b)  Default in the payment of any basic rental payment and such default shall continue for ten (10) days after notice thereof is given to Tenant; or

(c)  Fail to pay or cause to be paid any tax, assessment, insurance premium, lien, claim, demand, judgment or other charge provided in this Lease to be paid or caused to be paid by Tenant at the times and in the manner hereinabove provided and such breach or default shall continue for thirty (30) days after notice thereof is given to Tenant; provided, however, the foregoing shall not prejudice Tenant's right to contest any claim or lien pursuant to Article VII above; or

(d)  File a voluntary petition in bankruptcy or be adjudicated a bankrupt or insolvent or shall file

-21-                    HOU 000766

May-01-02  04:22pm   From-RUTAN & TUCKER LLP,                714-546-9035              T-234  P.23/28  F-670

any petition or answer seeking or acquiescing in any reorganization, dissolution or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or shall seek or consent to or acquiesce on the appointment of any trustee, receiver or liquidator or shall make a general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due; or

(e)  A court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against Tenant seeking any reorganization, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, and such order, judgment or decree shall remain unvacated and unstayed for an aggregate of ninety (90) days (whether or not consecutive) from the first day of entry thereof; or any trustee, receiver, or liquidator of Tenant shall be appointed without the consent or acquiescence of Tenant and if such appointment shall remain unvacated and unstayed for an aggregate of ninety (90) days (whether or not consecutive); or

(f)  Default in the performance of or breach of any other covenant, undertaking, duty, condition or restriction provided in this Lease to be kept and performed by Tenant thirty (30) days after written notice from Landlord specifying the nature of such default or breach; provided, however, if the nature of such default or breach is such that it is incapable of being cured within said thirty (30) day period, then Tenant shall not be deemed in default under this Lease if Tenant commences to cure the same within said thirty (30) day period and thereafter diligently and continuously (taking into account the nature of the default or breach) prosecutes such cure to completion.

11.02  Remedies.

In the event of Tenant's default, Landlord may, at Landlord's option:

(a)  Continue this Lease in effect without terminating Tenant's right to possession, even though Tenant has breached this Lease and abandoned the leased land; and to enforce all of Landlord's rights and remedies under this Lease, including the right to recover, by suit or otherwise, all sums and installments required to be paid in accordance with the provisions of Article IV above, or other monetary performance as it becomes due hereunder, or to enforce, by suit or otherwise, any other term or provision hereof on the part of Tenant required to be performed, it being specifically agreed that the aggregate unpaid installment indebtedness shall bear simple interest at the rate of ten (10%) percent per annum from the date thereof until paid, provided, however, that Landlord may, at any time thereafter, elect to terminate this Lease for such previous breach by notifying Tenant in writing that Tenant's right to possession of the leased land has been terminated; or

-22-

HOU 000767

May-01-02  04:23pm   From-RUTAN & TUCKER LLP,                    714-546-9035        T-234  P.24/28  F-670

(b)  By written notice to Tenant, Landlord may
declare this Lease at an end, re-enter the leased land
by process of the law, eject all parties in possession
thereof therefrom and repossess said leased land, in
which event, Landlord shall have the right to recover
from Tenant:

(i)  The worth at the time of award of the
unpaid rent which has been earned at the time of
termination;

(ii)  The worth at the time of award of the
amount by which the unpaid rent which would have been
earned after termination until the time of award
exceeds the amount of such rental loss that the Tenant
proves could have been reasonably avoided;

(iii)  The worth at the time of award of the
amount by which the unpaid rent for the balance of the
term after the time of award exceeds the amount of such
rental loss for the same period that the Tenant proves
could be reasonably avoided;

(iv)  All other amounts necessary to compen-
sate Landlord for all the detriment proximately caused
by Tenant's failure to perform its obligations here-
under or which in the ordinary course of things are
likely to result therefrom; and

(v)  In computing "worth at the time of
award" Landlord shall be allowed interest at the rate
of ten (10%) percent per annum.

The remedies of Landlord, as hereinabove
provided, are cumulative and in addition to and not exclu-
sive of any other remedy of Landlord herein given or which
may be permitted by law.  The remedies of Landlord are
subject to the provisions of Section 6.02.

<u>11.03  Termination on Default</u>.

Upon such termination, Tenant, if required by Landlord
so to do by written notice to Tenant, shall within sixty
(60) days, cause all improvements, structures and appur-
tenances thereto belonging to Tenant or those claiming under
Tenant, to be removed from the leased land (or the portion
of the leased land being then the subject of this Lease)
and Tenant shall cause any excavations to be filled and all
foundations, debris and other parts to be removed and the
premises thereof surrendered in a clean and orderly condi-
tion.  In the event any such improvements shall not be
removed within the time period as provided in this Section
11.03, the same shall, at the option of the Landlord, become
the property of Landlord, without any requirement for the
payment of consideration therefor; provided, however, that
any such termination of this Lease shall not relieve the
Tenant or its successors and assigns, if any, from liability
for damages which Landlord may incur by reason of Tenant's

-23-

HOU 000763

default in failing to remove all structures, improvements and appurtenances (excluding the aforementioned type of improvements and installations) and to remove all debris within said time period.

11.04  Quitclaim.

Upon such termination of this Lease, Tenant, following Landlord's request, shall execute, acknowledge and deliver to Landlord a quitclaim deed quitclaiming all right, title and interest of Tenant in and to the leased land.

ARTICLE XII
MISCELLANEOUS

12.01   Short Form.

This Lease shall not be recorded, but the Ground Lease (Short Form-Memorandum), in the form attached hereto as Exhibit C and by this reference made a part hereof, shall be executed and recorded by the parties hereto upon the execution of this Lease.

12.02   Landlord's Cooperation.

Landlord agrees to cooperate with Tenant in developing the leased land in the manner chosen by Tenant, including, without limitation, attending a reasonable number of meetings with Tenant and/or jurisdictional government agencies.

12.03   Construction of Lease.

The language in all parts of this Lease shall, in all cases, be construed as a whole and in accordance with its fair meaning and not restricted for or against either Landlord or Tenant.  The captions of the paragraphs and subparagraphs of this Lease are for convenience only and shall not be considered or referred to in resolving questions or construction.

12.04   Severability.

If any provision of this Lease shall be adjudged to be invalid, void or illegal, it shall in no way affect, impair or invalidate any other provision hereof, the parties hereby agreeing that they would have entered into the remaining portion of this Lease notwithstanding the omission of the portion or portions adjudged invalid, void or illegal.

12.05   Relationship of the Parties.

The relationship of the parties hereto is that of Landlord and Tenant, and it is expressly understood and agreed that Landlord does not in any way nor for any purpose become a partner of Tenant or a joint venturer with Tenant in the conduct of Tenant's business or otherwise, and that

-24-

HOU 000769

May-01-02  04:24pm   From-RUTAN & TUCKER LLP,                          714-546-9035         T-234   P.26/28   F-670

the provisions of any agreement between Landlord and Tenant
relating to rent are made solely for the purpose of pro-
viding a method whereby rental and purchase payments
are to be measured and ascertained.

### 12.06  Notices.

Any notice to be given or other document to be deliver-
ed by either party, or all payments of rental, may be
delivered in person to either party or may be deposited in
the United States mail in the State of California, duly
certified, return receipt requested, with postage prepaid,
and addressed to the party for whom intended at the address
appearing at the head of this Lease.  In the event that
Landlord has received notice of the hypothecation by Tenant
of his leasehold estate with a mortgage, all notices to be
sent by Landlord to Tenant hereunder shall be effective only
if a copy thereof is sent to the Mortgagee at the address
supplied to Landlord by Tenant or such Mortgagee.

Either party hereto may from time to time by written
notice to the other party designate a different address
which shall be substituted for the one above specified.  If
any notice or other document is sent by registered or
certified mail, as aforesaid, the same shall be deemed
served or delivered forty-eight (48) hours after the mailing
in the County of Orange, as above provided.

### 12.07  Attorneys' Fees.

In the event of any dispute between the parties hereto
involving the covenants or conditions contained in this
Lease or arising out of the subject matter of this Lease,
the prevailing party shall be entitled to recover reasonable
expenses, attorneys' fees and costs.

In the event Landlord is made a party to litigation
arising out of acts or negligence by Tenant regarding
the subject matter of this Lease, Landlord shall be entitled
to recover from Tenant its reasonable expenses, attorneys'
fees and costs incurred in such litigation.  Tenant hereby
indemnifies and agrees to hold Landlord harmless of and
from all liabilities, costs and expenses arising from any
such litigation.

### 12.08  Waiver.

No delay or omission by either party hereto in exercis-
ing any right or power accruing upon the noncompliance or
failure to perform by the other party hereto under the
provisions of this Lease shall impair any such right or
power or be construed to be a waiver thereof.  A waiver by
either party hereto of any of the covenants, conditions or
agreements hereof to be performed by the other party shall
not be construed as a waiver of any succeeding breach of
the same or other covenants, agreements, restrictions and
conditions hereof.

-25-

HOU 000770

May-01-02  04:24pm   From-RUTAN & TUCKER LLP,                714-546-8035                  T-234  P.27/28  F-670

### 12.09  Inspection.

Landlord reserves the right for Landlord and Land-
lord's agents and representatives to enter upon the leased
land at any reasonable time following reasonable notice for
the purpose of attending to Landlord's interest hereunder,
and to inspect the leased premises.

### 12.10  Covenants and Conditions.

Each of the covenants in this Lease shall be deemed
and construed as conditions and each and every covenant
shall be deemed covenants running with the land.

### 12.11  Entire Agreement.

This Lease contains the entire agreement of the parties
hereto with respect to the matters covered hereby, and
no other previous agreement, statement or promise made by
any party hereto which is not contained herein shall be
binding or valid.

### 12.12  Non-disturbance.

No mortgage or deed of trust placed on the leased land
by Landlord shall be superior to the interest of Tenant
herein, unless Landlord and Tenant execute an agreement in
recordable form satisfactory to the Tenant that in the event
of judicial or private foreclosure, or deed in lieu of
foreclosure, or any other action taken by such mortgagee or
beneficiary, this Lease and the rights of Tenant hereunder
shall not be disturbed by reason of any such foreclosure or
other action, but shall continue in full force and effect so
long as this Lease shall remain in full force and effect
and that in the event of any conflict between the terms of
this Lease and any such mortgage or deed of trust with
regard to insurance or condemnation proceeds or any other
provisions of the Lease or the mortgage or the deed of
trust, the terms and provisions of this Lease shall prevail.

### 12.13  Estoppel Certificates.

Landlord and Tenant shall at any time and from time
to time, upon not less than ten (10) days prior written
request by the other party or parties to this Lease, exe-
cute, acknowledge and deliver to such party or parties a
statement in writing certifying that this Lease is un-
modified and in full force and effect (or if there has been
any modification thereof that the same is in full force and
effect as modified and stating the modification or modi-
fications) and that there are no defaults existing (or if
there is any claimed default stating the nature and extent
thereof); and stating the dates to which the rent and other
charges have been paid in advance. It is expressly under-
stood and agreed that any such statement delivered pursuant
to this section may be relied upon by any prospective
assignee or sublessee of the leasehold estate, or estates

—26—                    HOU 000771

May-01-02  04:24pm   From-RUTAN & TUCKER LLP,                   714-546-9035           T-234  P.28/28  F-670

of Tenant, or any prospective purchaser of the estate of
Landlord, or any lender or prospective assignee of any
lender on the security of the leased land or the fee estate
or any part thereof, or upon the leasehold estate of Tenant
or any part thereof, and any third person.

### 12.14  Signs.

Tenant shall be entitled to place on the leased land
such advertising signs as it deems necessary or proper for
the development and marketing of the leased land.

### 12.15  Merger.

There shall be no merger of this Lease or the lease-
hold estate hereunder with the fee estate in the leased land
by reason of the fact that the Lease or any interest here-
under may be held for the account of a person or entity who
is the owner of the fee estate in the leased land or any
portion thereof, unless a written instrument effectuating
such merger is recorded.


IN WITNESS WHEREOF, each of the parties hereto has
caused this Lease to be executed as of the day and year
first above written.

                              HOUSER BROS. CO.
                              A California Limited Partnership


                              By _____
                                 CLIFFORD C. HOUSER,
                                 General Partner

                              By _____
                                 VERNON F. HOUSER,
                                 General Partner

                                          "Landlord"



                              _____
                                 ROBERT P. WARMINGTON

                                          "Tenant"




                    -27-              HOU 000772

Branch :AT4,User :2004                                    Comment:                                    Station Id :M3Y7

BK 13362 PG 317

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:                    32442

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California 92714          $5.00

RECORDED AT REQUEST OB
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:01 A.M. OCT 22 1979
LEE A. BRANCH, County Recorder

_____Space Above This Line for Recorder's Use Only_____

GROUND SUBLEASE
(SHORT FORM—MEMORANDUM)

THIS GROUND SUBLEASE (SHORT FORM—MEMORANDUM) is made this
19th day of ___October___, 1979, by and between ROBERT P.
WARMINGTON (hereinafter "Landlord") and THE ROBERT P. WARMINGTON CO.,
a California Corporation (hereinafter "Tenant"), upon the following
terms and conditions:

W I T N E S S E T H:

1.  Landlord leases to Tenant that certain real property
(the "leased land") located in the City of Huntington Beach, County of
Orange, State of California, which leased land is described on
Exhibit "A" attached hereto and made a part hereof, at the rental and
upon all of the terms and conditions set forth in that certain unrecorded
Ground Sublease of even date between Landlord and Tenant which is
incorporated herein by this reference.

2.  The Property is leased for a term of eighty (80) years,
commencing as of ___October 19___, 19 79 and ending
October 18___, 2059.  The aforementioned incorporated Ground Sublease
provides, among other things, that it shall terminate as to the real
property covered by a Consumer Sublease (as defined in said incorporated
Ground Sublease) upon the commencement of the term of such Consumer
Sublease.

3.  The aforementioned incorporated Ground Sublease provides,
among other things, that the Tenant shall pay all taxes, general and
special assessments and other charges which, during the term of this
lease, may be levied upon or assessed against the leased land and all
interests therein.

4.  The aforementioned incorporated Ground Sublease also
provides, among other things, that Tenant shall not encumber, assign or
otherwise transfer said Sublease, or sublet the whole or any part of
the leased land without the prior written consent and approval of
Landlord, except as otherwise expressly permitted in said incorporated
Ground Sublease.

5.  Landlord hereby irrevocably makes, constitutes and
appoints Tenant as Landlord's true and lawful attorney for him and
in his name, place and stead and for his use and benefit to exercise
any or all of the following powers as to the leased land, any interest
therein and/or any building or other improvement thereon: To undertake
any and all construction activities on or in connection with the leased
land and to execute on behalf of Landlord if Landlord has not executed
the same, as provided and within the time period set forth in said
incorporated Ground Sublease, any map, permit, application, survey,
report, approval, easement deed or other documents as are necessary or
convenient to obtain the required approvals, permits or other action of
the City of Huntington Beach, the County of Orange, California, and

BK 13362 PG 318

other governmental and quasi governmental authorities, including public utilities, for the development of the leased land in the manner contemplated by said incorporated Ground Sublease, giving and granting unto his said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as he might or could do if personally present, hereby ratifying all that his said attorney shall lawfully do or cause to be done by virtue of these presents. It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6. Should there be any inconsistency between the terms of this instrument and the Ground Sublease incorporated herein, the terms of said incorporated Ground Sublease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form-Memorandum of Ground Sublease to be duly executed as of the day and year first above written.

LANDLORD:

Robert P. Warmington

TENANT:

The Robert P. Warmington Co., a California Corporation

By Roger D. Darnell
Vice President

STATE OF CALIFORNIA ) ss:
COUNTY OF ORANGE )
On October 19 , 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared ROBERT P. WARMINGTON known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same.
WITNESS my hand and official seal.

Pearl L. Hunt

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

STATE OF CALIFORNIA ) ss:
COUNTY OF ORANGE )
On October 19 , 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared ROGER D. DARNELL known to me to be the Vice President of the Corporation that executed the within instrument, and known to me to be the person who executed the within instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.
WITNESS my hand and official seal.

Pearl L. Hunt

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

-2-

Branch :AT4,User :2004                    Comment:                                    Station Id :M3Y7



BK 13362 PG 319

EXHIBIT "A"

PARCEL A:        Parcel 1 as per Parcel Map recorded in
                 Book 108, Pages 47 and 48, inclusive,
                 Official Records of Orange County,
                 California.

                 EXCEPTING and reserving a non-exclusive
                 easement for ingress and egress within
                 and upon the Westerly 30.00 feet there-
                 of appurtenant to Parcel 2 as Per Map
                 recorded in Book 108, Pages 47 and 48,
                 inclusive, Official Records of Orange
                 County, California within the private
                 street known as "Monterey Lane".

PARCEL B:        A non-exclusive easement for ingress
                 and egress within and upon an area 30.00
                 feet in width within the private street
                 known as "Monterey Lane", within Parcel
                 2 as per Map recorded in Book 108, Pages
                 47 and 48, inclusive, Official Records of
                 Orange County, California the Easterly
                 boundary of which shall be Co-Terminus
                 with the Westerly boundary of said Parcel
                 1.

EXHIBIT "A"

RECORDED D

ORANGE,CA                           Page 3 of 3
Document: LS 13362.317

000090



RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

The Robert P. Warmington Co.   32443
1659 Hale Avenue
Irvine, California   92714   $6.00
Attention: Roger D. Darnell

BK 13362 PG. 320

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:01 A.M. OCT 22 1979

LEE A. BRANCH, County Recorder

(Space above line for Recorder's use only)

GROUND LEASE

(SHORT FORM – MEMORANDUM)

THIS GROUND LEASE (SHORT FORM — MEMORANDUM) is made
this 19th day of   October   , 1979, by and between
HOUSER BROS. CO., a limited partnership, organized and
existing under the laws of the State of California (herein-
after "Landlord"), and ROBERT P. WARMINGTON, a married man
(hereinafter "Tenant"), upon the following terms and con-
ditions:

W I T N E S S E T H:

1.   Landlord leases to Tenant that certain real prop-
erty (the "leased land") located in the City of Huntington
Beach, County of Orange, State of California, which leased
land is described in Exhibit A attached hereto and made a
part hereof, at the rental and upon all the terms and condi-
tions set forth in that certain unrecorded ground lease of
even date between Landlord and Tenant which is incorporated
herein by this reference.

2.   The property is leased for a term of eighty (80)
years, commencing as of the date first above written and
continuing until the anniversary of the eightieth (80th)
year thereafter.   The aforementioned incorporated ground
lease provides, among other things, that it shall terminate
as to the real property covered by a Residential Lease (as
defined in said incorporated ground lease) upon the com-
mencement of the term of such Residential Lease, but not as
to the real property covered by a Consumer Sublease or
Affiliate Sublease (as defined in said incorporated ground
lease).

3.   The aforementioned incorporated ground lease pro-
vides, among other things, that the Tenant shall pay all
taxes, general and special assessments and other charges
which, during the term of this lease, may be levied upon or
assessed against the leased land and all interests therein.

4.   The aforementioned incorporated ground lease al-
so provides, among other things, that Tenant shall not en-
cumber, assign or otherwise transfer said lease, or sublet
the whole or any part of the leased land without the prior
written consent and approval of Landlord, except as other-
wise expressly permitted in said incorporated ground lease.

-1-

Branch :AT4,User :2004                                           Comment:                                           Station Id :M3Y7

BK 13362 PG 321

5.    Landlord hereby irrevocably makes, constitutes and appoints Tenant as Landlord's true and lawful attorney for it and in its name, place and stead and for its use and benefit to exercise any/or all of the following powers as to the leased land, any interest therein and/or any building or other improvement thereon: To undertake any and all construction activities on or line connection with, the leased land and to execute on behalf of Landlord if Landlord has not executed the same, as provided and within the time period set forth in said incorporated ground lease, any map, permit, application, survey, report, approval, easement deed or other documents as are necessary or convenient to obtain the required approvals, permits or other action of the City of Huntington Beach, the County of Orange, California, and other governmental and quasi governmental authorities, including public utilities, for the development of the leased land in the manner contemplated by said incorporated ground lease, giving and granting unto its said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as it might or could do if personally present, hereby ratifying all that its said attorney shall lawfully do or cause to be done by virtue of these presents.  It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6.    Should there be any inconsistency between the terms of this instrument and the ground lease incorporated herein, the terms of said incorporated ground lease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form – Memorandum of Lease to be duly executed as of the day and year first above written.

HOUSER BROS. CO., a California limited partnership by its general partners

By _____
Clifford E. Houser,
General Partner

By _____
Vernon F. Houser,
General Partner

"Landlord"

_____
Robert P. Warmington

"Tenant"

-2-

000092

Branch :AT4,User :2004                                         Comment:                                                   Station Id :M3Y7



BK 13362 PG 322

EXHIBIT "A"

PARCEL A:     Parcel 1 as per Parcel Map recorded in
              Book 108, Pages 47 and 48, inclusive,
              Official Records of Orange County,
              California.

              EXCEPTING and reserving a non-exclusive
              easement for ingress and egress within
              and upon the Westerly 30.00 feet there-
              of appurtenant to Parcel 2 as Per Map
              recorded in Book 108, Pages 47 and 48,
              inclusive, Official Records of Orange
              County, California within the private
              street known as Monterey Lane.

PARCEL B:     A non-exclusive easement for ingress
              and egress within and upon an area 30.00
              feet in width within the private street
              known as "Monterey Lane", within Parcel
              2 as per Map recorded in Book 108, Pages
              47 and 48, inclusive, Official Records of
              Orange County, California the Easterly
              boundary of which shall be Co-Terminus
              with the Westerly boundary of said Parcel
              1.

EXHIBIT "A"

ORANGE,CA                        Page 3 of 4                    Printed on 10/31/2019 3:21:23 PM
Document: LS 13362.320

000093



# EXHIBIT B

# EXHIBIT B

# EXHIBIT B

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

BK 13383 PG 1868

ROBERT P. WARMINGTON
16592 Hale Avenue
Irvine, California 92714

$5.00

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:01 A.M.   NOV 6 1979

LEE A. BRANCH, County Recorder

_____
(Space above line for Recorder's use only)

## COVENANT RUNNING WITH THE LAND

THIS INSTRUMENT is made this _19th_ day of _October_, 19_79_, by HOUSER BROS. CO., a California limited partnership ("Houser") whose sole general partners are Clifford C. Houser and Vernon F. Houser.

## RECITALS

A.   Houser is the owner of certain real property in the City of Huntington Beach, County of Orange, State of California, described as Parcels 1 and 2 as shown on a Parcel Map recorded in Book 108, Pages 47 and 48, inclusive, of Parcel Maps in the Office of the County Recorder of said County (hereinafter "Parcel 1" and "Parcel 2" respectively).

B.   Concurrently herewith, Houser is leasing Parcel 1 to ROBERT P. WARMINGTON, a married man ("Warmington") by a Ground Lease of even date herewith (the "Ground Lease"), a memorandum of which is being recorded concurrently with or substantially concurrently with this instrument.

C.   Pursuant to the Ground Lease, Warmington may use Parcel 1 to develop thereon single-family residences or condominiums.  The Ground Lease further provides that access to Parcel 1 from Edinger Avenue (the abutting public street) is to be had over a portion of Monterey Lane, a private street located on right-of-way easements on either side of the southerly boundary of Parcel 1 with Parcel 2.  The maintenance of the portion of Monterey Lane as to which Warmington (and the residents of homes or condominiums to be built by Warmington on Parcel 1) has easement rights is the responsibility of Houser as Landlord under the Ground Lease as provided therein.

D.   It is the intention of Houser and Warmington that Houser's obligations under the Ground Lease also run with and bind a portion of Parcel 2 and the successive owners thereof as described in this instrument.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt of which is hereby acknowledged, including without limitation, Warmington's execution of the Ground Lease, Houser hereby covenants, declares and agrees that Houser's obligations as

-1-

BK 13383 PG 1869

Landlord concerning Monterey Lane as set forth in Section 7.9 of the unrecorded Option Agreement between Landlord and Tenant, as optionor and optionee respectively, which preceded the execution of the Ground Lease, hereby incorporated herein by reference, are also covenants running with the portion of Parcel 2 described by extending the southerly boundary of Parcel 1 parallel to Edinger Avenue to the westerly boundary of Parcel 2, and every portion of the area so described (the "Covenant Area"), and shall bind the Covenant Area, Houser and Houser's heirs, assigns, representatives and successors in interest for the benefit of Warmington and the leasehold estate in Parcel 1 under the Ground Lease and any portions into which it may be divided, by Residential Leases (as defined in the Ground Lease) or otherwise. In the event of a breach of the foregoing covenants, or any of them, Warmington may seek any remedy available at law or in equity, including without limitation an action seeking damages, to seek specific enforcement thereof, or to enjoin the breach or continued breach thereof. It is specifically understood that any of the foregoing remedies may be employed at the option of Warmington, and the failure to do so upon any one or more of any such breach shall not be a waiver of the right to employ any of such remedies upon the continuance of such breach or any subsequent breach. As used in the foregoing, "Warmington" shall include any of Warmington's heirs, successors or representatives as well as any assignee or sublessee of Warmington's leasehold estate under the Ground Lease in Parcel 1 or any portion into which it may be divided and any leasee under a Residential Lease, Consumer Sublease or Affiliate Sublease (as defined in the Ground Lease); provided, however, lessees under such Residential Leases and sublessees under such Consumer Subleases shall not have the right to enforce such covenant except on the majority vote of the association of such lessees or sublessees formed by Warmington to manage Parcel 1. If Warmington or such lessees under such Residential Leases acquire the fee interest in all or a portion of Parcel 1, the benefit of the covenant described above shall run in favor of such fee interests and their successors therein, but subject to the same restriction concerning enforceability by residents of Parcel 1 set forth above. Nothing herein shall relieve Warmington or lessees under such Residential Leases or sublessees under such Consumer Subleases from their obligations to pay for a share in the maintenance of the portion of Monterey Lane used to gain access to Parcel 1.

IN WITNESS WHEREOF, Houser has executed this instrument on the day and year first above written.

HOUSER BROS. CO., a California
limited partnership by its
general partners

By _Clifford C. Houser_
Clifford C. Houser

By _Vernon F. Houser_
Vernon F. Houser

Branch :AT4,User :2004                         Comment:                         Station Id :M3Y7

BK 13383 PG 1870

STATE OF CALIFORNIA   )
                      )  ss.
COUNTY OF ORANGE      )

On this _19th_ day of _October_____, 1979,
before me, a Notary Public, personally appeared Clifford C.
Houser and Vernon F. Houser, known to me to be the general
partners of the partnership that executed the within instru-
ment, and acknowledged to me that such partnership executed
the same.

WITNESS my hand and official seal.

**OFFICIAL SEAL**
CHRISTINE A. BELMONTE
Notary Public-California
ORANGE COUNTY
My Commission Expires March 14, 1981

_Christine A. Belmonte_
Notary Public in and for said
County and State

- 3 -

# EXHIBIT C

# EXHIBIT C

# EXHIBIT C

Branch :AT4,User :2004                        Comment:                      Station Id :M3Y7



RECORDING REQUESTED BY      8346
AND WHEN RECORDED MAIL TO:                    BK 13362 PG 320

The Robert P. Warmington Co.   32443
1692 Hale Avenue
Irvine, California 92714       $6.00          BK 13424 PG 498
Attention: Roger D. Darnell.

                               $7.00          RECORDED AT REQUEST OF
                               C1             FIRST AMER TITLE INS. CO.
                                              IN OFFICIAL RECORDS OF
                                              ORANGE COUNTY, CALIFORNIA
                                              8.01 A.M. OCT 22 1979

                                              LEE A. BRANCH, County Recorder

        (Space above line for Recorder's use only)

                                              RECORDING REQUESTED BY
                                              FIRST AMERICAN TITLE INS. CO.

              GROUND LEASE                    RECORDED IN OFFICIAL RECORDS
                                              OF ORANGE COUNTY CALIFORNIA

        (SHORT FORM — MEMORANDUM)             3 25 PM DEC 6 1979

                                              LEE A. BRANCH, County Recorder

        THIS GROUND LEASE (SHORT FORM — MEMORANDUM) is made
this 19th day of   October   , 1979, by and between
HOUSER BROS. CO., a limited partnership, organized and
existing under the laws of the State of California (herein-
after "Landlord"), and ROBERT P. WARMINGTON, a married man
(hereinafter "Tenant"), upon the following terms and con-
ditions:

                  W I T N E S S E T H:

        1.   Landlord leases to Tenant that certain real prop-
erty (the "leased land") located in the City of Huntington
Beach, County of Orange, State of California, which leased
land is described in Exhibit A attached hereto and made a
part hereof, at the rental and upon all the terms and condi-
tions set forth in that certain unrecorded ground lease of
even date between Landlord and Tenant which is incorporated
herein by this reference.

        2.   The property is leased for a term of eighty (80)
years, commencing as of the date first above written and
continuing until the anniversary of the eightieth (80th)
year thereafter.   The aforementioned incorporated ground
lease provides, among other things, that it shall terminate,
as to the real property covered by a Residential Lease (as
defined in said incorporated ground lease) upon the com-
mencement of the term of such Residential Lease, but not as
to the real property covered by a Consumer Sublease or
Affiliate Sublease (as defined in said incorporated ground
lease).

        3.   The aforementioned incorporated ground lease pro-
vides, among other things, that the Tenant shall pay all
taxes, general and special assessments and other charges
which, during the term of this lease, may be levied upon or
assessed against the leased land and all interests therein.

        4.   The aforementioned incorporated ground lease al-
so provides, among other things, that Tenant shall not en-
cumber, assign or otherwise transfer said lease, or sublet
the whole or any part of the leased land without the prior
written consent and approval of Landlord, except as other-
wise expressly permitted in said incorporated ground lease.

                        -1-

BK 13362 PG 321
BK 13424 PG 500

5.   Landlord hereby irrevocably makes, constitutes
and appoints Tenant as Landlord's true and lawful attorney
for it and in its name, place and stead and for its use and
benefit to exercise any or all of the following powers as
to the leased land, any interest therein and/or any building
or other improvement thereon:  To undertake any and all con-
struction activities on or in connection with the leased
land and to execute on behalf of Landlord if Landlord has
not executed the same, as provided and within the time
period set forth in said incorporated ground lease, any map,
permit, application, survey, report, approval, easement deed
or other documents as are necessary or convenient to obtain
the required approvals, permits or other action of the City
of Huntington Beach, the County of Orange, California, and
other governmental and quasi governmental authorities, in-
cluding public utilities; for the development of the leased
land in the manner contemplated by said incorporated ground
lease, giving and granting unto its said attorney full power
and authority to do and perform all and every act and thing
whatsoever requisite, necessary or appropriate to be done in
and about the leased land as fully to all intents and pur-
poses as it might or could do if personally present, hereby
ratifying all that its said attorney shall lawfully do or
cause to be done by virtue of these presents.  It is ex-
pressly agreed and understood that the foregoing power of
attorney is coupled with an interest.

6.   Should there be any inconsistency between the
terms of this instrument and the ground lease incorporated
herein, the terms of said incorporated ground lease shall
prevail.

IN WITNESS WHEREOF, each of the parties hereto has
caused this Short Form - Memorandum of Lease to be duly ex-
ecuted as of the day and year first above written.

HOUSER BROS. CO., a California
limited partnership by its
general partners

By _____
Clifford C. Houser,
General Partner

By _____
Vernon F. Houser,
General Partner

"Landlord"

_____
Robert P. Warmington

"Tenant"

-2-

Branch :AT4,User :2004                                    Comment:                                    Station Id :M3Y7



BK 13362 PG 322
BK 13424 PG 501

EXHIBIT "A"

PARCEL A:    Tract No. 10542, as shown on a Map recorded
in book 456, pages 49 and 50 of Miscellaneous
Maps, records of Orange County, California.

EXCEPTING and reserving a non-exclusive
easement for ingress and egress within
and upon the Westerly 30.00 feet there-
of appurtenant to Parcel 2 as per Map
recorded in Book 108, Pages 47 and 48,
inclusive, Official Records of Orange
County, California within the private
street known as "Monterey Lane".

PARCEL B:    A non-exclusive easement for ingress
and egress within and upon an area 30.00
feet in width within the private street
known as "Monterey Lane", within Parcel
2 as per Map recorded in Book 108, Pages
47 and 48, inclusive, Official Records of
Orange County, California the Easterly
boundary of which shall be Co-Terminus
with the Westerly boundary of said Parcel
1.

**THIS DOCUMENT IS RE-RECORDED TO CORRECT THE LEGAL DESCRIPTION
OF PARCEL A.

EXHIBIT "A"

ORANGE,CA                              Page 3 of 5
Document: LS 13424.499

000102

Branch :AT4,User :2004                                        Comment:                                        Station Id :M3Y7



BK 13362 PG  323
BK 13424 PG  502

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF ORANGE     )

On this 19th day of OCTOBER _____, 1979,
before me, a Notary Public, personally appeared Clifford C.
Houser and Vernon P. Houser, known to be to be the general
partners of the partnership that executed the within instru-
ment, and acknowledged to me that such partnership executed
the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
CHRISTINE A. BELMONTE
Notary Public-California
ORANGE COUNTY
My Commission Expires March 14, 1981

Christine Anne Belmonte
Notary Public in and for said
County and State

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF  ORANGE    )

On this 19th day of  October  , 1979, before me, the
undersigned, a Notary Public in and for said State, person-
ally appeared  Robert P. Warmington, known to me to be the
person whose name is subscribed to the within instrument,
and acknowledged to me that he executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 23, 1983

Pearl L. Hunt
Notary Public in and for said
County and State

-3-

Branch :AT4,User :2004                                                    Comment:                                                    Station Id :M3Y7

STATE OF CALIFORNIA
COUNTY OF **Orange**                                          BK 13424 PG 503

On _____ before me, the undersigned, a Notary Public in and for
said State, personally appeared

**Clifford C. Houser and Vernon F. Houser,**

known to me to be **all of** the partners of the partnership
that executed the within instrument and acknowledged to me that
such partnership executed the same.

WITNESS my hand and official seal.

Signature *Kerry K. Hoffman*

*Kerry K. Hoffman*
Name (Typed or Printed)

OFFICIAL SEAL
KERRY K. HOFFMAN
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Exp. Oct. 25, 1985

(This area for official notarial seal)

---

STATE OF CALIFORNIA
COUNTY OF **Orange**

On **December 6, 1979** before me, the undersigned, a Notary Public in and for
said State, personally appeared

**Robert P. Warmington**

known to me to be the person whose name **is**
subscribed to the within instrument, and acknowledged to me
that **he** executed the same.

WITNESS my hand and official seal.

Signature *Pearl L. Hunt*

*PEARL L. HUNT*
Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires May 25, 1982

(This area for official notarial seal)





BK 13362 PG 314
BK 13424 PG 505

other governmental and quasi governmental authorities, including public utilities, for the development of the leased land in the manner contemplated by said incorporated Ground Sublease, giving and granting unto his said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as he might or could do if personally present, hereby ratifying all that his said attorney shall lawfully do or cause to be done by virtue of these presents. It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6.  Should there be any inconsistency between the terms of this instrument and the Ground Sublease incorporated herein, the terms of said incorporated Ground Sublease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form Memorandum of Ground Sublease to be duly executed as of the day and year first above written.

LANDLORD:

Robert P. Warmington

TENANT:

The Robert P. Warmington Co., a California Corporation

By
Roger D. Darnell
Vice President

STATE OF CALIFORNIA)
COUNTY OF ORANGE  ) ss:
On   October 19   , 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared ROBERT P. WARMINGTON known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same.
WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

Pearl L. Hunt

STATE OF CALIFORNIA )
COUNTY OF ORANGE    ) ss:
On   October 19   , 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared  ROGER D. DARNELL  known to me to be the Vice President of the Corporation that executed the within instrument, and known to me to be the person who executed the within instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.
WITNESS my hand and official seal.

Pearl L. Hunt

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

-2-

Branch :AT4,User :2004                    Comment:                    Station Id :M3Y7

BK 13424 PG 506

STATE OF CALIFORNIA
COUNTY OF **Orange**

On **December 6, 1979** before me, the undersigned, a Notary Public in and for said State, personally appeared

**Robert P. Warmington**

known to me to be the person_____ whose name_____ **is**
subscribed to the within instrument and acknowledged to me
that _____ **he** _____ executed the same.

WITNESS my hand and official seal.

Signature *Pearl L. Hunt*

PEARL L. HUNT
Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

---

STATE OF CALIFORNIA
COUNTY OF **Orange**

On **December 6, 1979** before me, the undersigned, a Notary Public in and for said State, personally appeared **Roger D. Darnell**
known to me to be the **Vice** President, **XX**
_____ of the corporation that executed the within instrument,
and known to me to be the persons who executed the within
instrument on behalf of the corporation therein named, and ac-
knowledged to me that such corporation executed the within
instrument pursuant to its by-laws or a resolution of its board of
directors.

WITNESS my hand and official seal.

Signature *Pearl L. Hunt*

PEARL L. HUNT
Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

ORANGE,CA
Document: LS 13424.504

Page 3 of 4

Branch :AT4,User :2004                                          Comment:                                          Station Id :M3Y7



BK 13424 PG 507

BK 13362 PG 319

EXHIBIT "A"

PARCEL A:   Tract No. 10542, as shown on a Map recorded
in book 456, pages 49 and 50 of Miscellaneous
Maps, records of Orange County, California.

EXCEPTING and reserving a non-exclusive
easement for ingress and egress within
and upon the Westerly 30.00 feet there-
of appurtenant to Parcel 2 as per Map
recorded in Book 108, Pages 47 and 48,
inclusive, Official Records of Orange
County, California within the private
street known as "Monterey Lane".

PARCEL B:   A non-exclusive easement for ingress
and egress within and upon an area 30.00
feet in width within the private street
known as "Monterey Lane", within Parcel
2 as per Map recorded in Book 108, Pages
47 and 48, inclusive, Official Records of
Orange County, California the Easterly
boundary of which shall be Co-Terminus
with the Westerly boundary of said Parcel
1.

**THIS DOCUMENT IS RE-RECORDED TO CORRECT THE LEGAL DESCRIPTION
OF PARCEL A.

EXHIBIT "A"

# EXHIBIT D

# EXHIBIT D

# EXHIBIT D

# TRACT NO. 10542

IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA.

BEING A SUBDIVISION OF PARCEL 1 AS SHOWN ON A MAP RECORDED

IN BOOK 102, PAGE 47, 48 OF PARCEL MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

MADOLE & ASSOCIATES, INC.
J.M. MADOLE R.C.E. 14614
NOVEMBER 1978



36466                    BK 13803 PG   640

Recorded at the Request of and   $ ⚊
When Recorded Mail To:

Robert P. Warmington
16592 Hale Avenue
Irvine, CA  92714

RECORDED AT REQUEST ON
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. OCT 24 1980
LEE A. BRANCH, County Recorder

AP-178-011-01

No Consideration
Lease Is For a Definite Term

## GROUND LEASE

THIS GROUND LEASE is made this 1st day of August, 1980, by
and between HOUSER BROS. CO., a limited partnership
organized and existing under the laws of the State of
California in which Clifford C. Houser and Vernon F.
Houser constitute the sole general partners whose address
is Suite 204, 610 East Seventeenth Street, Santa Ana,
California 92701 (herein termed the "Landlord"), and
Robert P. Warmington whose address is 16592 Hale Avenue,
Irvine, CA 92714.

### W I T N E S S E T H:

1.  PROPERTY LEASED.  For and in consideration of the
payment of the rents and taxes and other charges and for
the performance of all of the covenants and conditions of
this Lease by Tenant, Landlord hereby leases to Tenant
those portions of Lots 1 and 2 of Tract 10542 in the City
of Huntington Beach, County of Orange, State of
California, as shown on a map recorded in Book 456, Pages
49 and 50 of Miscellaneous Maps, in the Office of the
County Recorder of Orange County, California, described as
follows:

Parcel 1

Unit  67 , as shown and defined on a Condominium
Plan (the "Condominium Plan") recorded in Book 13358,
Pages 1193, et seq., Official Records of Orange
County, California, excepting that portion consisting
of buildings and other improvements.

Parcel 2

An undivided one-eightieth (1/80) interest in the
Common Area as shown and defined on the Condominium
Plan, excepting that portion consisting of buildings
and other improvements.

Parcel 3

An easement for the exclusive use and occupancy
of those portions of the Restricted Common Area as
defined on said Condominium Plan for entry and
staircases and attic space relating to said Unit,
excepting that portion consisting of buildings and
other improvements.

WPN: 4077A

BK 13803 PG   641

Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements,

(hereinafter referred to as the "leased land").

SUBJECT TO:

(a)  Current taxes and assessments.

(b)  Covenants, conditions, restrictions, reservations, rights, rights-of-way and easements of record.

2.   TERM OF LEASE.   The leased land is leased for a basic term commencing on the date this Ground Lease is recorded in the Office of the County Recorder of Orange County, California and ending on December 31, 2059, subject, however, to earlier termination as hereinafter provided.

3.   RENTAL.   Tenant agrees to pay to Landlord, as rental for the use and occupancy of said leased land during the term of this lease, the annual sum of Nine Hundred DOLLARS ($900) in monthly installments of $75.00 each, in advance, on the first day of calendar month of said term; provided, however, if said term commences on other than the first day of a calendar month the first installment shall be paid on such commencement date in an appropriately reduced amount.   Said rent is subject to adjustment at the time and in the manner as herein provided for in Article 21 entitled "Rental Adjustment".   All rentals hereunder and charges with respect thereto shall be paid in lawful money of the United States of America.

4.   TAXES AND ASSESSMENTS.   In addition to the rents above provided, Tenant shall pay, prior to the delinquency date thereof, all taxes and general and special assessments of every description which, during the term of this Lease, may be levied upon or assessed against the leased land and all interest therein and improvements and other property thereon, whether belonging to Landlord or Tenant, and Tenant agrees to protect and hold harmless the Landlord and the leased land and all interest therein and improvements thereon from any and all such taxes and assessments, including any interest, penalties and other expenses which may be thereby imposed and from any lien therefor or sale or other proceedings to enforce payment thereof.

5.   USE OF LEASED LAND.   Tenant shall use the leased land for any purposes permitted under the zoning and other land use laws and regulations applicable thereto.   Tenant shall not use or permit any person to so use the leased land and the improvements thereon, or any portion thereof, as to disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto.

WPN: 4077A                              2

BK 13803PG 642

6. **IMPROVEMENTS.** When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of landlord whatsoever.

7. **MAINTENANCE OF LEASED LAND.** Landlord shall not be obligated to make any repairs, alterations, additions or improvements in or to or upon or adjoining the leased land or any structure of other improvement that may be constructed or installed thereon, but Tenant shall, at all times during the full term of this Lease and at its sole cost and expense, keep and maintain all buildings, structures and other improvements on the leased land, if any, in good order and repair, and the whole of the leased land and all improvements thereto free of weeds and rubbish and in a clean, sanitary and neat condition, and Tenant shall construct, maintain and repair all facilities and other improvements which may be required at any time by law upon or adjoining or in connection with or for the use of the leased land or any part thereof, and Tenant shall make any and all additions to or alterations in any buildings and structures on said premises which may be required and shall otherwise observe and comply with any and all public laws, ordinances and regulations for the time being, applicable to the leased land, and Tenant agrees to indemnify and save harmless the Landlord against all actions, claims and damages by reason of Tenant's failure to keep and maintain said premises and any buildings and improvements thereon as hereinabove provided, or by reason of its nonobservance or nonperformance of any law, ordinance and regulation applicable thereto.

8. **RESTORATION OF IMPROVEMENTS.** If, during the term hereof, the dwelling, structures or other improvements, if any, constructed by or for Tenant on the leased land, or any part thereof, shall be damaged or destroyed by fire or other casualty, Tenant may, at its cost and expense, either (a) repair or restore said dwelling and improvements; or (b) subject to the consent of any encumbrancer, if any, tear down and remove the same from the leased land.

9. **LIENS AND CLAIMS.** Tenant shall not suffer or permit to be enforced against Landlord's title to the leased land, or any part thereof, any lien, claim or demand arising from any work of construction, repair, restoration, maintenance or removal as herein provided or otherwise arising, except liens, claims or demands suffered by or arising from the actions of Landlord, and Tenant shall pay all such liens, claims and demands before any action is brought to enforce the same against said land. Tenant agrees to hold Landlord and the leased land free and harmless from all liability for any and all such liens, claims or demands, together with all costs and expenses, including, but not limited to, reasonable attorneys' fees and court costs incurred by Landlord in connection therewith. Landlord shall have the right at

WPN: 4077A                    3

BK 13303PG 643

any time to post and maintain on the leased land such
notices as may be necessary to protect landlord against
liability for all such liens or otherwise.
Notwithstanding anything to the contrary contained in this
Article, if Tenant shall, in good faith, contest the
validity of any such lien, claim or demand, the Tenant
shall, at its expense, defend itself and landlord against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against Landlord or the leased land, and if
Landlord shall require, Tenant shall furnish to Landlord a
surety bond satisfactory to Landlord in an amount equal to
such contested lien, claim or demand, indemnifying
Landlord against liability for same, or if Landlord shall
request, Tenant shall procure and record the bond provided
for in Section 3143 of the California Code of Civil
Procedure, or any comparable statute hereafter enacted
providing for a bond freeing the leased land from the
effect of such lien or claim or action thereon.

10.  __LIABILITIES.__  Landlord shall not be liable for any
loss, damage or injury of any kind whatsoever to the
person or property of Tenant, or any of Tenant's
employees, guests or invitees or of any other person
whomsoever, caused by any use of the leased land or by any
defect in any building, structure or other improvement
constructed thereon, or arising from any accident on the
leased land or any fire or other casualty thereon, or
occasioned by the failure on the part of Tenant to
maintain said premises in safe condition, or by any
nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11.  __LANDLORD PAYING CLAIMS.__  Should Tenant fail or refuse
to pay any tax, assessment or other charge upon the leased
land when due and payable as provided herein, or any lien
or claim arising out of the construction, repair,
restoration, maintenance and use of the leased land and
the buildings and improvements thereon, or any other
claim, charge or demand which Tenant has agreed to pay
under the covenants of this Lease, and if after thirty
(30) days written notice from landlord to Tenant and to
its authorized encumbrancer, if any, Tenant or its said
encumbrancer shall fail or refuse to pay and discharge the
same, then Landlord may, at its option, pay such tax,
assessment, lien, claim, charge or demand, or settle or
discharge any action therefor or judgment thereon, and all
costs, expenses and other sums incurred or paid by
Landlord in connection therewith shall be repaid to
Landlord by Tenant upon written demand, together with
interest thereon at the rate of ten (10%) percent per
annum from the date of payment until repaid, and any

WPN: 4077A                    4

BK 13803PG 644

default in such repayment shall constitute a breach of the covenants and conditions of this Lease. Notwithstanding the forgoing, if Tenant shall in good faith contest the validity of any tax or assessment levied against the leased land, then Tenant may withhold payment thereof pending settlement of its claim or pay the same under protest; and, in either case, at Tenant's expense, shall defend itself and landlord against the same and shall pay and satisfy any adverse judgment that may be rendered thereon before the enforcement thereof against Landlord or the leased land.

12.  ASSIGNMENT.  Tenant shall have the right to assign, sublet or otherwise transfer its interest under this Lease without the prior written consent of Landlord. Notwithstanding the foregoing, this Lease or any right hereunder shall in no case be assigned separate and apart from the Tenants interest in the improvements located on the leased land.  Also notwithstanding the foregoing, Landlord shall accept Tenant's assignee in writing following a request therefor.

13.  ENCUMBRANCES.  Tenant shall have the right to assign Tenant's interest in this Lease and the leased land to a trustee under a deed of trust (herein called "trust deed", for the benefit of a lender (herein called "encumbrancer") upon and subject to the following covenants and conditions.  Landlord's consent shall not be required for such assignment, but Landlord shall execute its written consent to such assignment by trust deed following a request therefor from Tenant:

A.  Said trust deed and said assignment and all rights acquired thereunder shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interests of the Landlord hereunder; and, in the event of any conflict between the provisions of this Lease and the provisions of any such trust deed or assignment, the provisions of this Lease shall control.

B.  Any encumbrancer as a transferee under the provisions of this Article shall be liable to perform the obligations of the Tenant under this Lease only so long as such encumbrancer holds title to the leasehold.

C.  Upon and immediately after the recording of the trust deed covering the leased land, Tenant, at Tenant's expense, shall cause to be recorded in the office of the Recorder of Orange County, California, a written request for a copy, to the Landlord, of any notice of default and of any notice of sale under the trust deed as provided by the statutes of the State of California relating thereto. Tenant shall furnish to landlord a complete copy of the trust deed and note secured thereby, together with the name and address of the holder thereof.

D.  Landlord agrees that it will not terminate this Lease because of any default or breach hereunder on the part of the Tenant if the encumbrancer or the trustee under such deed of trust, within ninety (90) days after service of written notice on the encumbrancer by Landlord

WPN: 4077A                    5

BK 13803PG  645

of its intention to terminate this Lease for such default
or breach, shall:

      (a)  Cure such default or breach if the same can
be cured by the payment or expenditure of money
provided to be paid under the terms of this Lease, or
if such default or breach is not so curable, cause the
trustee under the trust deed to commence and
thereafter to diligently pursue to completion steps
and proceedings for the foreclosure by sale or by
exercise of a power of sale under and pursuant to the
trust deed in the manner provided by law; and

      (b)  Keep and perform all of the covenants and
conditions of this Lease requiring the payment or
expenditure of money by Tenant until such time as said
leasehold shall be sold upon foreclosure, or by
exercise of a power of sale, pursuant to the trust
deed or shall be released or reconveyed thereunder;
provided, however, that if the beneficiary under such
trust deed shall fail or refuse to comply with any and
all of the conditions of this Article with respect to
a breach or default as to which notice of intention to
terminate this Lease has been given to the
encumbrancer, then and thereupon Landlord shall be
released from the covenants of forebearance herein
contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this
Article may be given concurrently with or after Landlord's
notice of default to Tenant as herein provided for in the
Article entitled "Termination".

14.  TERMINATION.  Should Tenant fail to pay any
installment of rent or any other sum provided in this
Lease to be paid by Tenant at the times herein specified
and should such default continue uncured for a period of
thirty (30) days after written notice from Landlord, or
should Tenant default in the performance of or breach any
other covenant, condition or restriction of this Lease
herein provided to be kept or performed by Tenant, and
should such default or breach continue uncured for a
period of sixty (60) days from and after written notice
thereof by Landlord to Tenant, then and in any such event,
Landlord may declare this Lease to be in default and
Landlord shall have all of the remedies available at law
or stated in the Article entitled "Remedies" or elsewhere
provided in this Lease.

15.  REMOVAL.  Upon the expiration of the term of this
Lease, and on condition that Tenant shall not then be in
default under any of the covenants and conditions hereof,
and not otherwise, Tenant shall have the right during the
last ninety (90) days of said term, at its sole expense,
to remove from the leased land all buildings and other
improvements thereon, and Tenant shall fill all
excavations and remove all parts of said buildings
remaining after the same are removed and surrender
possession of the leased land to Landlord in a clean and
orderly condition.  In the event any of said buildings and
other improvements shall not be removed from the leased

WPN: 4077A                          6

BK 13803PG 646

land within the time hereinabove provided, the same shall
become and thereafter remain a part of the leased land and
shall belong to Landlord without the payment of any
consideration therefor. Upon the expiration of the term
hereof, or any sooner termination of this Lease, Tenant
shall execute, acknowledge and deliver to Landlord a
proper instrument in writing releasing and quitclaiming to
Landlord all right, title and interest of Tenant in and to
the leased land and any and all improvements thereon, if
not removed by virtue of this Lease or otherwise.

16.  PLACE OF PAYMENTS AND NOTICES.  All rents and other
sums payable by Tenant to Landlord hereunder shall be paid
to the Landlord at the address set forth after Landlord's
name above.  Whenever either party hereto desires to give
written notice to the other respecting this Lease, such
notice, if not personally delivered to Landlord or to
Tenant, shall be sent by certified or registered mail,
with postage prepaid, and directed to either party at the
address hereinabove specified, or at such other address as
either party may hereafter designate in writing.  The
service of any such written notice shall be deemed
complete at the time of such personal delivery or within
two (2) days after the mailing thereof in Orange County,
California, as herein provided.  Should Landlord or Tenant
consist of more than one person, the personal delivery or
mailing of such notice to any one of such persons shall
constitute complete service upon all such persons.  Any
notice provided in the Article hereof entitled
"Encumbrances" to be given by Landlord to any encumbrancer
of Tenant shall be served in the same manner as herein
provided in this Article and shall be delivered to the
encumbrancer or directed to its address as last shown on
the records of Landlord.

17.  REMEDIES.  Should Tenant at any time be in default
hereunder pursuant to the provisions of the Article hereof
entitled "Termination", then notwithstanding Tenant's
breach of this Lease and abandonment of the leased land,
this Lease shall continue in effect so long as Landlord
does not terminate Tenant's right to possession and
Landlord may enforce all of its rights and remedies
hereunder, including, at the option of Landlord:

    A.  The right to declare the term hereof ended and
with process of law to reenter the leased land and take
possession thereof and remove all persons therefrom, and
Tenant shall have no further claim thereon or hereunder; or

    B.  The right to collect rent and other charges as the
same may from time to time become due and to bring actions
for such collections without terminating this Lease, and
to thereafter at any time elect to terminate this Lease
and all of the rights of Tenant in or to the leased land.

Should Landlord elect to terminate the Lease, Landlord
shall be entitled to recover the worth at the time of the
award of the amount by which the unpaid rent for the
balance of the term, after the time of the award, exceeds
the amount of the rental loss for the same period that
Tenant proves could be reasonably avoided, together with

WPI : 4077A                           7

BK 13803 PG 647

the rent then unpaid, if any, together with any other
remedy permitted under California Civil Code Section 1951.2
or any other similar statute hereafter enacted.

If Landlord shall elect to reenter the leased land under
the provisions of A or B above, Landlord shall not be
liable for damages by reason of such reentry.

Notwithstanding any other provision of this Lease,
Landlord agrees that if the default complained of, other
than for the payment of monies, is of such nature that the
same cannot be cured within the period specified above,
then such default shall be deemed to be cured if Tenant,
within such period, shall have commenced the curing
thereof and shall continue thereafter with all due
diligence to cause such curing and does so complete the
same with the use of such diligence.

Each of the terms, covenants, conditions and provisions of
Tenant under this Lease is a material consideration for
this Lease, the breach of which shall be deemed a default
hereunder.  All rights, options and remedies of Landlord
contained in this Lease shall be construed and held to be
cumulative, and no one of them shall be exclusive of the
other, and Landlord shall have the right to pursue any one
or all of such remedies or any other remedy or relief
which may be provided by law, whether or not stated in
this Lease.  No waiver by Landlord of a breach of any of
the terms, covenants or conditions of this Lease by Tenant
shall be construed or held to be a waiver of any
succeeding or preceding breach of the same or any other
term, covenant or condition herein contained.  No waiver
of any default of Tenant hereunder shall be implied from
any omission by Landlord to take any action on account of
such default if such default persists or is repeated, and
no express waiver shall affect default other than as
specified in said waiver.  The consent or approval by
Landlord to or of any act by Tenant requiring Landlord's
consent or approval shall not be deemed to waive or render
unnecessary Landlord's consent or approval to or of any
subsequent similar acts by Tenant.

In the event any action shall be instituted between
Landlord and Tenant in connection with this Lease, the
party prevailing in such action shall be entitled to
recover from the other party all of its costs, including
reasonable attorneys' fees, as fixed by the court therein.

18.  REPRESENTATIONS.  Tenant covenants and agrees that it
has examined the leased land and that the same is
delivered to it in good order and condition and that no
representations as to said land have been made by Landlord
or by any person or agent acting for Landlord, and it is
agreed that this document contains the entire agreement
between the parties hereto and that there are no verbal
agreements, representations, warranties or other
understandings affecting the same.

19.  HOLDING OVER.  This Lease shall terminate and become
null and void without further notice upon the expiration
of said term.  Any holding over shall not constitute a

WPN: 4077A                         8

BK 13803PG 648

renewal hereof, but the tenancy shall thereafter be on a
month-to-month basis and otherwise on the same terms and
conditions as herein set forth.

20. **EMINENT DOMAIN**.

A. **Definition of Terms**. The term "total taking", as
used in this Article, means the taking of the entire
leased land under the power of eminent domain or the
taking of so much of said land as to prevent or
substantially impair the use thereof by Tenant for the
uses and purposes hereinabove provided.

The term "partial taking" means the taking of a
portion only of the leased land which does not constitute
a total taking as defined above.

The term "taking" shall include a voluntary conveyance
by Landlord to an agency, authority or public utility
under threat of a taking under the power of eminent domain
in lieu of formal proceedings.

The term "date of taking" shall be the date upon which
title to the leased land or portion thereof passes to and
vests in the condemnor.

The term "leased land" means the real property
belonging to Landlord, together with any and all
improvements placed thereon by Landlord or to which
Landlord has gained title.

B. **Effect of Taking**. If, during the term hereof,
there shall be a total taking or partial taking under the
power of eminent domain, then the leasehold estate of
Tenant in and to the leased land or the portion thereof
taken shall cease and terminate as of the date of taking
of the said land. If this Lease is so terminated, in
whole or in part, all rentals and other charges payable by
Tenant to Landlord hereunder and attributable to the
leased land or portion thereof taken shall be paid by
Tenant up to the date of taking by the condemnor and the
parties shall thereupon be released from all further
liaility in relation thereto.

C. **Allocation of Award - Total Taking**. All
compensation and damages awarded for the total taking of
the leased land and Tenant's leasehold interest therein
shall be allocated as follows:

(a) Tenant shall be entitled to an amount equal
to the sum of the following:

(i) The then fair market value of all of
the improvements located on the leased land; and

(ii) The then fair market value of the
Tenant's leasehold interest in the leased land.

(b) Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

WPN: 4077A                        9

BK 13803PG 649

D.  **Allocation of Award - Partial Taking.**  All compensation and damages awarded for the taking of a portion of the leased land shall be allocated and divided as follows:

(a)  Tenant shall be entitled to an amount equal to the sum of the following:

(i)  The proportionate reduction of the fair market value of the improvements located on the leased land; and

(ii)  The proportionate reduction of the fair market value of Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount remaining of the total award after deducting therefrom the sums to be paid to Tenant as hereinabove provided.

E.  **Reduction of Rent on Partial Taking.**  In the event of a partial taking, the rent payable by Tenant hereunder shall be adjusted from the date of taking to the next rental adjustment date or to the date of the expiration of the term of this Lease, whichever date is sooner.  Such rental adjustment will be made by reducing the basic rental payable by the Tenant in the ratio that the fair market value of the leased land at the date of taking bears to the fair market value of the leased and immediately thereafter.

F.  **Determination of Fair Market Value.**  Whenever fair market value must be determined for the purposes of this Article, and the parties fail to agree in writing on such fair market value within ten (10) days of a request for such agreement from either party, then fair market value shall be determined by the arbitration procedure set forth in the Article entitled "Rental Adjustment".

21.  **RENTAL ADJUSTMENT.**  Effective January 1, 2000, January 1, 2020 and January 1, 2040, the annual rental payer hereunder shall be adjusted to a sum equal to 8% of the unimproved fair market value of the Leased Land. After any such adjustment of rent, Tenant shall pay to Landlord such rent 1 as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the rental, as so adjusted, be less than the initial rental in the Article of this Lease entitled "Rental".

If, by January 1, 2000, January 1, 2020 or January 1, 2040 (as the case may be), the parties hereto shall have failed to agree upon such adjusted rental, then and thereupon the fair market value of the leased land and the amount of rental to be adjusted in relation thereto, as hereinafter provided, shall be determined by arbitration as follows: within ten (10) days after the date set for determining fair market value, each of the parties hereto shall appoint in writing an arbitrator and give written

WPN: 4077A                    10

BK 13803 PG  650

notice thereof to the other party; or, in case of the
failure of either party so to do, the other party may
apply to the Superior Court of Orange County, California,
to appoint an arbitrator to represent the defaulting party
in the manner prescribed in the then existing statutes of
the State of California applicable to arbitration, the
provisions of which statutes shall apply to and govern the
arbitration herein provided for with the same effect as
though incorporated herein.  Within ten (10) days after
the appointment of said two (2) arbitrators (in either
manner) they shall appoint in writing a third arbitrator
and give written notice thereof to Landlord and Tenant,
and if they shall fail to do so, then either party hereto
may make application to said Superior Court to appoint
such third arbitrator in the manner prescribed in said
arbitration statutes.  The three (3) arbitrators so
appointed (in either manner) shall promptly fix a
convenient time and place in the County of Orange for
hearing the matter to be arbitrated and shall give
reasonable written notice thereof to each of the parties
hereto and with reasonable diligence shall hear and
determine the matter in accordance with the provisions
hereof and of said arbitration statutes, and shall execute
and acknowledge their award thereon in writing and cause a
copy thereof to be delivered to each of the parties hereto
and the award of a majority of said arbitrators shall
determine the questions arbitrated, and a judgment may be
rendered by said Superior Court confirming said award or
the same may be vacated, modified or corrected by said
Court at the instance of either of the parties hereto in
accordance with said arbitration statutes, and said
judgment shall have the force and effect as provided in
said statutes.

Each of the parties hereto shall pay for the services of
its appointee, attorneys and witnesses and one-half (1/2)
of all other proper costs of arbitration.  Pending the
final decision of such adjusted rental, Tenant shall pay
to Landlord the amount of rent previously payable under
the Article of this Lease entitled "Rental".  If such
adjusted rental, as finally determined, shall exceed the
amount of the previous rental, the excess amount accruing
during the interim period shall be paid by Tenant to
Landlord within thirty (30) days after the final
determination of said adjusted rental.  If such adjusted
rental, as finally determined, shall be less than such
previous rental, the amount of any excess paid by Tenant
during said interim period shall be credited against the
first rentals thereafter payable hereunder.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage
of water from the leased land and improvements thereon to
drain or flow into adjacent streets and not upon adjoining
property, and Tenant shall so maintain all slopes or
terraces on the leased land as to prevent any erosion
thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on
the leased land, the wall or walls of which adjoin the
wall or walls of a dwelling constructed on a contiguous
lot, any such wall shall be considered to adjoin and abut
the wall of the contiguous lot against the surface from
the bottom of the foundation over the full length and

WPN: 4077A                    11

BK 13503PG 651

height of any building so erected for residential purposes. Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so erected. Such rights of use shall be as not to interfere with the use and enjoyment of the lessees of adjoining lots; and, in the event that any such party wall or fence is damaged or injured from any cause other than the act or negligence of one of the lessees, the same shall be repaired or rebuilt at their joint expense.

24.    CONSTRUCTION AND EFFECT.  Time is of the essence of this Lease.  The article headings herein are used only for the purpose of convenience and shall not be deemed to limit the subject to the articles hereof or to be considered in the construction thereof.  Each and all of the obligations, covenants, conditions and restrictions of this Lease shall be deemed as running with the land and shall inure to the benefit of and be binding upon and enforceable against, as the case may require, the successors and assigns of Landlord and the heirs, executors, legal representatives, encumbrancers, assignees, successors and subtenants of Tenant.  If Tenant consists of more than one person, the covenants and obligations of Tenant hereunder shall be the joint and several covenants and obligations of such persons.  In this Lease, the masculine gender includes the feminine and the neuter, and the singular number includes the plural, whenever the context so requires.

25.    NON-DISTURBANCE.  No mortgage or deed of trust placed on the leased land by Landlord shall be superior to the interest of Tenant herein, unless Landlord and Tenant execute an agreement in recordable form satisfactory to the Tenant that in the event of judicial or private foreclosure, or deed in lieu of foreclosure, or any other action taken by such mortgagee or beneficiary, this Lease and the rights of Tenant hereunder shall not be disturbed by reason of any such foreclosure or other action but shall continue in full force and effect so long as this Lease shall remain in full force and effect and that in the event of any conflict between the terms of this Lease and any such mortgage or deed of trust with regard to insurance or condemnation proceeds or any other provisions of the Lease or the mortgage or the deed of trust, the terms and provisions of this Lease shall prevail.

WPN: 4077A                    12

BK 13803PG  652

26.  ESTOPPEL CERTIFICATES.  Landlord and Tenant shall at
any time and from time to time, upon not less than ten
(10) days prior written request by the other party or
parties to this Lease, execute, acknowledge and deliver to
such party or parties a statement in writing certifying
that this Lease is unmodified and in full force and effect
(or if there has been any modification thereof that the
same is in full force and effect as modified and stating
the modification or modifications) and that there are no
defaults existing (or if there is any claimed default
stating the nature and extent thereof)); and stating the
dates to which the rent and other charges have been paid
in advance.  It is expressly understood and agreed that
any such statement delivered pursuant to this section may
be relied upon by any prospective assignee or sublessee of
the leasehold estate, or estates of Tenant, or any
prospective purchaser of the estate of Landlord, or any
lender or prospective assignee of any lender on the
security of the leased land or the fee estate or any part
thereof, or upon the leasehold estate of Tenant or any
part thereof, and any third person.

27.  CONDOMINIUM SUBLEASE.

(a)  Landlord hereby agrees with Tenant for the
benefit of the Condominium Owner/Subtenant under
any Condominium Subleases that:

(i)  So long as such Condominium
Owner/Subtenant is not in default in the payment
of rental or other charges due under the
Condominium Sublease or in the performance of any
of the other terms, covenants or conditions of
the Condominium Sublease on such Condominium
Owner/Subtenant's part to be performed, such
Condominium Owner/Subtenant's possession of the
Lot subject to such Condominium Sublease and
Condominium Owner/Subtenant's other rights and
privileges under the Condominium Sublease shall
not be interfered with by the Landlord, its
successors or assigns.

(ii)  Should this Lease be terminated prior
to the expiration of the term hereof or any
extensions of said term for any reason
whatsoever, including without limitation, as a
result of Tenant's breach thereof or default
thereunder, the Condominium Sublease shall
continue in full force and effect as a direct
lease between Landlord and the Condominium
Owner/Subtenant under the Condominium Sublease,
upon and subject to all of the terms, covenants
and conditions of the Condominium Sublease for
the balance of the term thereof remaining,
provided that such Condominium Owner/Subtenant
attorns to Landlord in writing.  Notwithstanding
the foregoing, Landlord shall not be bound by any
act or omission of Tenant as the prior sublessor
under the Condominium Sublease.  Landlord shall
not be bound by any prepayment of rent (other
than through the Payment Agreement referred to in
subparagraph 27(c) hereof or other charges which
such Condominium Owner/Subtenant might have paid

WPN: 4077A                    17

BK 13803PG 653

for more than three (3) months in advance to Tenant as the prior sublessor, and Landlord shall not be bound by any amendment to or modification of any Condominium Sublease or by any waiver or forbearance on the part of Tenant as the prior sublessor thereunder made or given without the written consent of Landlord.

(b)  If, the provisions of the foregoing notwithstanding, a Condominium Sublease is terminated by reason of any termination of this Lease, it is hereby agreed that the Condominium Owner/Subtenant under such Condominium Sublease and Landlord shall enter into a new lease upon the terms and conditions of the Condominium Sublease for the then remaining balance of the term of the Condominium Sublease.

(c)  In the event that such Condominium Subleases shall call for the payment of rent less frequently than quarter annually, the provisions of subparagraph 27(a) shall only be applicable if Landlord and Tenant enter into a Payment Agreement under the terms of which all rental to be paid by Condominium Owner/Subtenant under the terms of the Condominium Sublease will be paid to a neutral depository, such as a bank, savings and loan, trust company or escrow company.  Such neutral depository shall be instructed to remit to lessor from such sum collected the amount due under this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day and year first above written.

HOUSER BROS. CO., a limited partnership

By _____
General Partner

By _____
General Partner

"Landlord"

_____
Robert P. Wermington

"Tenant"

WPN: 4077A                        14

BK 13803PG 654

STATE OF ___CALIFORNIA___ )
                                       ) ss.
COUNTY OF ___ORANGE___ )

On ___August 13___, 1980, before me the undersigned, a Notary Public in and for said State, personally appeared Vernon and Clifford Houser, known to me to be _____ two _____ of the partners of the partnership that executed the within Instrument, and acknowledged to me that such partnership executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public

[Seal]


STATE OF ___CALIFORNIA___ )
                                       ) ss.
COUNTY OF ___ORANGE___ )

On ___August 1___, 1980, before me the undersigned, a Notary Public in and for said State, personally appeared _____ ROBERT P. WARMINGTON _____, known to me to be the person whose name is subscribed to the within Instrument, and acknowledged to me that __he__ executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires May 25, 1983

_Pearl L. Hunt_
Notary Public

[Seal]

F Nr 4977A                    15

RECORDED IN

000126

Property Profile - myFirstAm                                    https://www.myfirstam.com/Polygon/MapSearch



**my FirstAm®   Property Profile**                                                            , , CA

## Property Information

| | | | |
|---|---|---|---|
| Owner(s): | Hold , Parcel | Mailing Address: | , , |
| Owner Phone: | Unknown | Property Address: | , , CA |
| Vesting Type: | N/A | Alt. APN: | |
| County: | Orange | APN: | 178-771-03 |
| Map Coord: | | Census Tract: | |
| Lot#: | | Block: | |
| Subdivision: | | Tract: | 10542 |
| Legal: | N Tr 10542 Blk Lot 2 Un Hold | | |

## Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Use: | | Year Built / Eff. : | / | Sq. Ft. : | |
| Zoning: | | Lot Size Ac / Sq Ft: | / | # of Units: | |
| Stories: | | Improvements: | | Parking / #: | / |
| Gross Area: | | Garage Area : | | Basement Area: | |

## Sale and Loan Information

| | | | | | |
|---|---|---|---|---|---|
| Sale / Rec Date: | | *$/Sq. Ft.: | | 2nd Mtg.: | |
| Sale Price: | | 1st Loan: | | Prior Sale Amt: | |
| Doc No.: | | Loan Type: | | Prior Sale Date: | |
| Doc Type: | | Transfer Date: | | Prior Doc No.: | |
| Seller: | | Lender: | | Prior Doc Type: | |

*$/Sq. Ft. is a calculation of Sale Price divided by Sq. Feet.

## Tax Information

| | | | |
|---|---|---|---|
| Imp Value: | | Exemption Type: | |
| Land Value: | | Tax Year / Area: | 2019 / 04-007 |
| Total Value: | | Tax Value: | |
| Total Tax Amt: | | Improved: | |

**Property Profile**                     , , CA                                    **11/15/2019**

All information contained herein is subject to the Limitation of Liability for Informational Report set forth on the last page hereof.

This report is only for the myFirstAm user who applied for it. No one else can rely on it. As a myFirstAm user, you already agreed to our disclaimer regarding third party property information accuracy. You can view it here: www.myfirstam.com/Security/ShowEULA. ©2005-2019 First American Financial Corporation and/or its affiliates. All rights reserved.

**RECORDING REQUESTED BY:**

**Mr. Randy Nickel**
**4476 Alderport Drive**
**Huntington Beach, CA 92649**

**MAIL TAX STATEMENTS TO:**

**Mr. Randy Nickel**
**4476 Alderport Drive.**
**Huntington Beach, CA 92649**

Lease from Present to 2059

**TITLE OF DOCUMENT:**    **ASSIGNMENT OF CONDOMINIUM SUBLEASE**

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

96.00

* S R 0 0 1 0 4 4 6 0 2 6 $ *

2018000395579 2:35 pm 10/31/18

227 415 A34   5

0.00 0.00 0.00 0.00 12.00 0.00 0.000.0075.00 3.00

WHEN RECORDED MAIL TO:
(Assignee's Name & Address)
MR. RANDALL L. NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

Mail tax statements to:
MR. RANDALL L NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

_____

(Space Above this Line for Recorder's Use)

## ASSIGNMENT OF GROUND LEASE & CONDOMINIUM SUBLEASE

No Consideration.  Term of Lease Less Than 99 years.

WHEREAS
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant**, entered into that certain **GROUND LEASE** also known as the **MASTER LEASE dated October 19, 1979**, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 499 inclusive.

WHEREAS
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant**, entered into a **PARTIAL CANCELLATION OF MASTER LEASE dated November 7, 1980** for that certain **MASTER LEASE dated October 19, 1979**; recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Pg(s) 1253-1255, **Instrument No. 8691**.

WHEREAS
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant**, entered into that certain **SUBLEASE dated October 19, 1979**, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 504, inclusive, with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California as shown on Miscellaneous Map(s) recorded in Book 456, Page(s) 49 and 50, in the Office of the Orange County, California Clerk Recorder.

WHEREAS
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant**, entered into a **PARTIAL CANCELLATION OF SUBLEASE dated October 19, 1979**; for that certain SUBLEASE dated November 7, 1980, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1256-1258, with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Maps, in the Office of the Orange County, California Clerk Recorder, **Instrument No. 8692;**

WHEREAS
For valuable consideration, receipt of which is hereby acknowledged, the undersigned **JAMIEL GALLIAN**, hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property** all right, title and interest of the undersigned, as Tenant, in and under that certain **MASTER LEASE/ Ground Lease, dated November 7, 1980**, recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1259-1273, **Instrument No. 8693;**

1

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property,** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE, dated August 1, 1980,** by and between ROBERT P. WARMINGTON, as Landlord, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANT, recorded on November 7, 1980, Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1274-1290, **\*\*Instrument No. 8694;**

As amended by the **FIRST AMENDMENT TO CONDOMINIUM SUBLEASE** effective January 1, 2003, recorded in the Office of the Orange County, California Clerk Recorder as Document No. 2003-001044770 on August 28, 2003.

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONVEYANCE OF REMAINDER INTEREST, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1291-1293, **\*\*Instrument No. 8695;**

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property,** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE (SHORT FORM – MEMORANDUM AND GRANT DEED, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1294-1298, **\*\*Instrument No. 8696.**

DATED: _10/31/18_

ASSIGNOR JAMIE L GALLIAN

STATE OF CALIFORNIA          )
                                                 ) ss.
COUNTY OF ORANGE

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _10/31/2018_ , before me, _Paul Dyer, Notary Public_

Personally appeared _Jamie L Gallian_ ,

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

PAUL DYER
Notary Public - California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021

Signature of Notary Public

(This space for Notary Seal)

2

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

### ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment hereby Accepts said Assignment and hereby agrees with for the benefit of the Master Lessor, Sublessor/Landlord, Tenant and under the Original Condominium Sublease commonly referred to throughout this document as "Condominium Sublease", described in said Assignment, to keep, perform and be bound by all the terms, covenants and conditions contained in said Condominium Sublease and as amended by the First Amendment to Condominium Sublease on the part of the Master Lessor, Sublessor/Landlord and Condominium Sublease Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the Original Condominium Sublease Tenant there under.

Assignee agrees to pay Sublessor/Landlord a late fee equal to 6% of any rent or other payment due under the Condominium Sublease, which is not received by Sublessor/Landlord within ten (10) days of its due date.  Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease.  The undersigned Assignee agrees to pay attorneys fees and costs incurred by Landlord to collect rent or other payment under the Condominium Sublease or to otherwise enforce Sublessor/Landlord rights under the Condominium Sublease.

DATED: _10·31·18_     _____
                      ASSIGNEE RANDALL L NICKEL

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF ORANGE
A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _10/31/2018_ before me, _Paul Dyer, Notary Public_,
Personally appeared _Randall L Nickel_,
Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____          (This space for Notary Seal)
Signature of Notary Public

PAUL DYER
Notary Public – California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021

3

# EXHIBIT A (LEGAL)

The estate or interest in the land described:

A Ground leasehold and Condominium Sublease hold estate as to Parcels 1 and 2, said estate being more particularly described as the Lessees' interest under that certain Ground Lease set forth in subparagraph (A) herein below:

    (A)    That certain Ground Lease dated August 1, 1980, executed by Houser Bros. Co, A Limited Partnership organized under the Laws of the State of California, in which Clifford C. Houser and Vernon F. Houser constitute the sole General Partners, as Landlord, and by Robert P. Warmington, as Tenant, for the term ending December 31, 2059. Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County:   **Book 13824 Page 1259-1273**
       **APN: 937-63-053, Unit 53.**

    (B)    That certain Condominium Sublease dated August 1, 1980, executed by Robert P. Warmington, as Sub-lessor and John F. Turner and Virginia H. Turner (Original Sublessee) for the term ending December 31, 2059. Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County: **Book 13824 Page 1274-1290**
       **APN: 937-63-053, Unit 53.**

All that certain land interest situated in the State of California, County of Orange and is described as follows:

Parcel   1:
Unit 53 as shown and defined on a Condominium Plan (the **"Condominium Plan"**) recorded in Book 13358 Page(s) 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements;

Parcel   2:
An undivided one-eightieth (1/80th) interest as Tenants in Common in the Common Area of Lots 1 and 2 Tract No. 10542, in the City of Huntington Beach, County of Orange, State of California as shown on a map recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Map, records of Orange County, California, as shown on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

Except there from all minerals, oil, gas and other hydrocarbon substances lying below a depth of 500 feet below the surface of said Land without the right of surface entry above the depth of 500 feet from the surface, as reserved in deeds of record.

Parcel   3:
Those portions of Unit 53, building 14, inclusive, as shown and defined on the Condominium Plan, Consisting of buildings and other improvements.

Parcel   4:
An undivided one-eightieth (1/80th) interest as Tenants in Common, in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings or other improvements.

Parcel   5:
An easement for the exclusive use and occupancy of those portions of the restricted Common Area, as defined on said Condominium Plan for ground level entry, courtyard entry, staircases, garages, and attic space relating to said units.

Parcel   6:
A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the restricted Common Area(s).

4



my FirstAm®   **Recorded Document**

---

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1253 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION OF THE CONDITION OF TITLE TO REAL PROPERTY. IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY. THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON. THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S PRIOR WRITTEN CONSENT. FIRST AMERICAN DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS. AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT. RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

---

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

8691          BK 13824 PG 1253

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

Houser Bros. Co.
17610 Beach Boulevard
Suite 32
Huntington Beach, California

> RECORDED AT REQUEST OF
> FIRST AMER. TITLE INS. CO.
> IN OFFICIAL RECORDS OF
> ORANGE COUNTY, CALIFORNIA
>
> 8:00 A.M. NOV 7 1980
>
> LEE A. BRANCH, County Recorder

## PARTIAL CANCELLATION OF MASTER LEASE

HOUSER BROS. CO., a limited partnership, as Landlord, and ROBERT P. WARMINGTON, as Tenant, hereby cancel, effective when this instrument is recorded in the Office of the County Recorder of Orange County, California, that certain Ground Lease dated October 19, 1979, a Short Form-Memorandum of which was recorded in Book 13424, Page 499, Official Records of Orange County, California, with respect to those portions of Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a Map recorded in Book 456, Pages 49 and 50 of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California, described on Exhibit A attached hereto.

IN WITNESS WHEREOF, HOUSER BROS. CO. and ROBERT P. WARMINGTON have executed this instrument as of August 1, 1980.

HOUSER BROS. CO.

By _____

By _____

_____
ROBERT P. WARMINGTON

BK 13824 PG 1254

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF ORANGE     )

On _____Aug 12_____, 1980, before me, the undersigned,

a Notary Public in and for said County and State, personally

appeared _____VERNON F. HOUSER_____ and

_____CLIFFORD C. HOUSER_____, known to me to be

_____two_____ of the partners of the limited

partnership that executed the within instrument, and

acknowledged to me that such limited partnership executed

the same.

OFFICIAL SEAL
PEARL L HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_____
Notary Public in and for
said County

[SEAL]


STATE OF CALIFONRIA  )
                     ) ss.
COUNTY OF ORANGE     )

On _August 1_____, 1980, before me, the undersigned, a

Notary Public in and for said County and State, personally

appeared ROBERT P. WARMINGTON, known to me to be the person

whose name is subscribed to the within instrument and

acknowledged that he executed the same.

OFFICIAL SEAL
PEARL L HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_____
Notary Public in and for
said County

[SEAL]

2

BK 13824 PG 1255

## EXHIBIT A

**Parcel 1**

Unit 53, as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

**Parcel 2**

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

**Parcel 3**

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

**Parcel 4**

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

RECORDED D



_my_FirstAm®     **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

|  |  |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1256 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

8692

$5.00

BK 13824 PG 1256

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California   92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

## PARTIAL CANCELLATION OF SUBLEASE

ROBERT P. WARMINGTON, as Landlord, and THE ROBERT P.
WARMINGTON CO., a California corporation, as Tenant, hereby
cancel, effective when this instrument is recorded in the
Office of the County Recorder of Orange County, California,
that certain Sublease dated October 19, 1979, a Short Form
Memorandum of which was recorded in Book 13424, Page 504,
Official Records of Orange County, California, with respect
to those portions of Lots 1 and 2 of Tract 10542, in the City
of Huntington Beach, County of Orange, State of California,
as shown on a map recorded in Book 456, Pages 49 and 50 of
Miscellaneous Maps, in the Office of the County Recorder of
Orange County, California, described on Exhibit A attached
hereto.

IN WITNESS WHEREOF, ROBERT P. WARMINGTON and THE
ROBERT P. WARMINGTON CO. have executed this instrument as
of August 1, 1980.

Robert P. Warmington

THE ROBERT P. WARMINGTON CO.

By

By

BK 13824 PG 1257

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On ___August 1___ , 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.



Notary Public in and for
said County

[SEAL]


STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On ___August 1___ , 1960, before me, the undersigned, a
Notary Public in and for said State, personally appeared
_____OLIVER N. CRARY_____ , known to me to be
the ___Vice President___ , and ___WILLIAM J. PITTMAN___ ,
known to me to be the ___Secretary___ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.



Notary Public in and for said
County

[SEAL]

2

BK 13824 PG 1258

## EXHIBIT A

### Parcel 1

Unit 63 , as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

### Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

### Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

RECORDED IN

000140



*my*FirstAm®   **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1259 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION  OF TITLE TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.



8693

$ 17.00

BK 13824 PG 1259

Recorded at the Request of and
When Recorded Mail To:

Robert P. Warmington
16592 Hale Avenue
Irvine, CA 92714

RECORDED AT REQUEST OB
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:00 A.M. NOV 7 1980

LEE A. BRANCH, County Recorder

No Consideration
Lease Is For a Definite Term

AP 178-011-01

## GROUND LEASE

THIS GROUND LEASE is made this 1st day of August, 1980, by
and between HOUSER BROS. CO., a limited partnership
organized and existing under the laws of the State of
California in which Clifford C. Houser and Vernon F.
Houser constitute the sole general partners whose address
is Suite 204, 610 East Seventeenth Street, Santa Ana,
California 92701 (herein termed the "Landlord"), and
Robert P. Warmington whose address is 16592 Hale Avenue,
Irvine, CA 92714.

## W I T N E S S E T H:

1. PROPERTY LEASED. For and in consideration of the
payment of the rents and taxes and other charges and for
the performance of all of the covenants and conditions of
this Lease by Tenant, Landlord hereby leases to Tenant
those portions of Lots 1 and 2 of Tract 10542 in the City
of Huntington Beach, County of Orange, State of
Californ , as shown on a map recorded in Book 456, Pages
49 and 50 of Miscellaneous Maps, in the Office of the
County Recorder of Orange County, California, described as
follows:

Parcel 1

Unit 53 , as shown and defined on a Condominium
Plan (the "Condominium Plan") recorded in Book 13358,
Pages 1193, et seq., Official Records of Orange
County, California, excepting that portion consisting
of buildings and other improvements.

Parcel 2

An undivided one-eightieth (1/80) interest in the
Common Area as shown and defined on the Condominium
Plan, excepting that portion consisting of buildings
and other improvements.

Parcel 3

An easement for the exclusive use and occupancy
of those portions of the Restricted Common Area as
defined on said Condominium Plan for entry and
staircases and attic space relating to said Unit,
excepting that portion consisting of buildings and
other improvements.

WPN:4077A

BK 13824 PG 1260

Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements,

(hereinafter referred to as the "leased land").

SUBJECT TO:

(a)  Current taxes and assessments.

(b)  Covenants, conditions, restrictions, reservations, rights, rights-of-way and easements of record.

2.  TERM OF LEASE.  The leased land is leased for a basic term commencing on the date this Ground Lease is recorded in the Office of the County Recorder of Orange County, California and ending on December 31, 2059, subject, however, to earlier termination as hereinafter provided.

3.  RENTAL.  Tenant agrees to pay to Landlord, as rental for the use and occupancy of said leased land during the term of this lease, the annual sum of Nine Hundred DOLLARS ($900) in monthly installments of $75.00 each, in advance, on the first day of calendar month of said term; provided, however, if said term commences on other than the first day of a calendar month the first installment shall be paid on such commencement date in an appropriately reduced amount.  Said rent is subject to adjustment at the time and in the manner as herein provided for in Article 21 entitled "Rental Adjustment".  All rentals hereunder and charges with respect thereto shall be paid in lawful money of the United States of America.

4.  TAXES AND ASSESSMENTS.  In addition to the rents above provided, Tenant shall pay, prior to the delinquency date thereof, all taxes and general and special assessments of every description which, during the term of this Lease, may be levied upon or assessed against the leased land and all interest therein and improvements and other property thereon, whether belonging to Landlord or Tenant, and Tenant agrees to protect and hold harmless the Landlord and the leased land and all interest therein and improvements thereon from any and all such taxes and assessments, including any interest, penalties and other expenses which may be thereby imposed and from any lien therefor or sale or other proceedings to enforce payment thereof.

5.  USE OF LEASED LAND.  Tenant shall use the leased land for any purposes permitted under the zoning and other land use laws and regulations applicable thereto.  Tenant shall not use or permit any person to so use the leased land and the improvements thereon, or any portion thereof, as to disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto.

WPN: 4077A                    2

BK 13824 PG 1261

6.  **IMPROVEMENTS.** When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of landlord whatsoever.

7.  **MAINTENANCE OF LEASED LAND.** Landlord shall not be obligated to make any repairs, alterations, additions or improvements in or to or upon or adjoining the leased land or any structure of other improvement that may be constructed or installed thereon, but Tenant shall, at all times during the full term of this Lease and at its sole cost and expense, keep and maintain all buildings, structures and other improvements on the leased land, if any, in good order and repair, and the whole of the leased land and all improvements thereto free of weeds and rubbish and in a clean, sanitary and neat condition, and Tenant shall construct, maintain and repair all facilities and other improvements which may be required at any time by law upon or adjoining or in connection with or for the use of the leased land or any part thereof, and Tenant shall make any and all additions to or alterations in any buildings and structures on said premises which may be required and shall otherwise observe and comply with any and all public laws, ordinances and regulations for the time being, applicable to the leased land, and Tenant agrees to indemnify and save harmless the Landlord against all actions, claims and damages by reason of Tenant's failure to keep and maintain said premises and any buildings and improvements thereon as hereinabove provided, or by reason of its nonobservance or nonperformance of any law, ordinance and regulation applicable thereto.

8.  **RESTORATION OF IMPROVEMENTS.** If, during the term hereof, the dwelling, structures or other improvements, if any, constructed by or for Tenant on the leased land, or any part thereof, shall be damaged or destroyed by fire or other casualty, Tenant may, at its cost and expense, either (a) repair or restore said dwelling and improvements; or (b) subject to the consent of any encumbrancer, if any, tear down and remove the same from the leased land.

9.  **LIENS AND CLAIMS.** Tenant shall not suffer or permit to be enforced against Landlord's title to the leased land, or any part thereof, any lien, claim or demand arising from any work of construction, repair, restoration, maintenance or removal as herein provided or otherwise arising, except liens, claims or demands suffered by or arising from the actions of Landlord, and Tenant shall pay all such liens, claims and demands before any action is brought to enforce the same against said land.  Tenant agrees to hold Landlord and the leased land free and harmless from all liability for any and all such liens, claims or demands, together with all costs and expenses, including, but not limited to, reasonable attorneys' fees and court costs incurred by Landlord in connection therewith.  Landlord shall have the right at

WPN: 4077A                     3

000145

BK 13824 PG 1262

any time to post and maintain on the leased land such notices as may be necessary to protect landlord against liability for all such liens or otherwise. Notwithstanding anything to the contrary contained in this Article, if Tenant shall, in good faith, contest the validity of any such lien, claim or demand, the Tenant shall, at its expense, defend itself and landlord against the same and shall pay and satisfy any adverse judgment that may be rendered thereon before the enforcement thereof against Landlord or the leased land, and if Landlord shall require, Tenant shall furnish to Landlord a surety bond satisfactory to Landlord in an amount equal to such contested lien, claim or demand, indemnifying Landlord aainst liability for same, or if Landlord shall request, Tenant shall procure and record the bond provided for in Section 3143 of the California Code of Civil Procedure, or any comparable statute hereafter enacted providing for a bond freeing the leased land from the effect of such lien or claim or action thereon.

10.   LIABILITIES.  Landlord shall not be liable for any loss, damage or injury of any kind whatsoever to the person or property of Tenant, or any of Tenant's employees, guests or invitees or of any other person whomsoever, caused by any use of the leased land or by any defect in any building, structure or other improvement constructed thereon, or arising from any accident on the leased land or any fire on other casualty thereon, or occasioned by the failure on the part of Tenant to maintain said premises in safe condition, or by any nuisance made or suffered on the leased land, or any improvements thereto, or by any act or omission of Tenant, or of any member of Tenant's family or of Tenant's employees, guests or invitees, or arising from any other cause whatsoever, and Tenant hereby waives on its behalf all claims and demands against Landlord for any such loss, damage or injury of Tenant, and hereby agrees to indemnify and save Landlord free and harmless from liability for any such loss, damage or injury of other persons, and from all costs, expenses and other charges arising therefrom and in connection therewith.

11.   LANDLORD PAYING CLAIMS.  Should Tenant fail or refuse to pay any tax, assessment or other charge upon the leased land when due and payable as provided herein, or any lien or claim arising out of the construction, repair, restoration, maintenance and use of the leased land and the buildings and improvements thereon, or any other claim, charge or demand which Tenant has agreed to pay under the covenants of this Lease, and if after thirty (30) days written notice from landlord to Tenant and to its authorized encumbrancer, if any, Tenant or its said encumbrancer shall fail or refuse to pay and discharge the same, then Landlord may, at its option, pay such tax, assessment, lien, claim, charge or demand, or settle or discharge any action therefor or judgment thereon, and all costs, expenses and other sums incurred or paid by Landlord in connection therewith shall be repaid to Landlord by Tenant upon written demand, together with interest thereon at the rate of ten (10%) percent per annum from the date of payment until repaid, and any

WPN: 4077A                    4

BK 13824 PG 1263

default in such repayment shall constitute a breach of the covenants and conditions of this Lease. Notwithstanding the forgoing, if Tenant shall in good faith contest the validity of any tax or assessment levied against the leased land, then Tenant may withhold payment thereof pending settlement of its claim or pay the same under protest; and, in either case, at Tenant's expense, shall defend itself and landlord against the same and shall pay and satisfy any adverse judgment that may be rendered thereon before the enforcement thereof against Landlord or the leased land.

12. ASSIGNMENT. Tenant shall have the right to assign, sublet or otherwise transfer its interest under this Lease without the prior written consent of Landlord. Notwithstanding the foregoing, this Lease or any right hereunder shall in no case be assigned separate and apart from the Tenants interest in the improvements located on the leased land. Also notwithstanding the foregoing, Landlord shall accept Tenant's assignee in writing following a request therefor.

13. ENCUMBRANCES. Tenant shall have the right to assign Tenant's interest in this Lease and the leased land to a trustee under a deed of trust (herein called "trust deed"), for the benefit of a lender (herein called "encumbrancer") upon and subject to the following covenants and conditions. Landlord's consent shall not be required for such assignment, but Landlord shall execute its written consent to such assignment by trust deed following a request therefor from Tenant:

A. Said trust deed and said assignment and all rights acquired thereunder shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interests of the Landlord hereunder; and, in the event of any conflict between the provisions of this Lease and the provisions of any such trust deed or assignment, the provisions of this Lease shall control.

B. Any encumbrancer as a transferee under the provisions of this Article shall be liable to perform the obligations of the Tenant under this Lease only so long as such encumbrancer holds title to the leasehold.

C. Upon and immediately after the recording of the trust deed covering the leased land, Tenant, at Tenant's expense, shall cause to be recorded in the office of the Recorder of Orange County, California, a written request for a copy, to the Landlord, of any notice of default and of any notice of sale under the trust deed as provided by the statutes of the State of California relating thereto. Tenant shall furnish to landlord a complete copy of the trust deed and note secured thereby, together with the name and address of the holder thereof.

D. Landlord agrees that it will not terminate this Lease because of any default or breach hereunder on the part of the Tenant if the encumbrancer or the trustee under such deed of trust, within ninety (90) days after service of written notice on the encumbrancer by Landlord

WPN: 4077A                    5

BK 13824 PG 1264

of its intention to terminate this Lease for such default
or breach, shall:

(a)  Cure such default or breach if the same can
be cured by the payment or expenditure of money
provided to be paid under the terms of this Lease, or
if such default or breach is not so curable, cause the
trustee under the trust deed to commence and
thereafter to diligently pursue to completion steps
and proceedings for the foreclosure by sale or by
exercise of a power of sale under and pursuant to the
trust deed in the manner provided by law; and

(b)  Keep and perform all of the covenants and
conditions of this Lease requiring the payment or
expenditure of money by Tenant until such time as said
leasehold shall be sold upon foreclosure, or by
exercise of a power of sale, pursuant to the trust
deed or shall be released or reconveyed thereunder;
provided, however, that if the beneficiary under such
trust deed shall fail or refuse to comply with any and
all of the conditions of this Article with respect to
a breach or default as to which notice of intention to
terminate this Lease has been given to the
encumbrancer, then and thereupon Landlord shall be
released from the covenants of forebearance herein
contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this
Article may be given concurrently with or after Landlord's
notice of default to Tenant as herein provided for in the
Article entitled "Termination".

14.  TERMINATION.  Should Tenant fail to pay any
installment of rent or any other sum provided in this
Lease to be paid by Tenant at the times herein specified
and should such default continue uncured for a period of
thirty (30) days after written notice from Landlord, or
should Tenant default in the performance of or breach any
other covenant, condition or restriction of this Lease
herein provided to be kept or performed by Tenant, and
should such default or breach continue uncured for a
period of sixty (60) days from and after written notice
thereof by Landlord to Tenant, then and in any such event,
Landlord may declare this Lease to be in default and
Landlord shall have all of the remedies available at law
or stated in the Article entitled "Remedies" or elsewhere
provided in this Lease.

15.  REMOVAL.  Upon the expiration of the term of this
Lease, and on condition that Tenant shall not then be in
default under any of the covenants and conditions hereof,
and not otherwise, Tenant shall have the right during the
last ninety (90) days of said term, at its sole expense,
to remove from the leased land all buildings and other
improvements thereon, and Tenant shall fill all
excavations and remove all parts of said buildings
remaining after the same are removed and surrender
possession of the leased land to Landlord in a clean and
orderly condition.  In the event any of said buildings and
other improvements shall not be removed from the leased

WPN: 4077A                         6




000148

BK 1⸱ ⸱ ⸱ ⸱ 1265

land within the time hereinabove provided, the same shall
become and thereafter remain a part of the leased land and
shall belong to Landlord without the payment of any
consideration therefor.  Upon the expiration of the term
hereof, or any sooner termination of this Lease, Tenant
shall execute, acknowledge and deliver to Landlord a
proper instrument in writing releasing and quitclaiming to
Landlord all right, title and interest of Tenant in and to
the leased land and any and all improvements thereon, if
not removed by virtue of this Lease or otherwise.

16.   PLACE OF PAYMENTS AND NOTICES.  All rents and other
sums payable by Tenant to Landlord hereunder shall be paid
to the Landlord at the address set forth after Landlord's
name above.  Whenever either party hereto desires to give
written notice to the other respecting this Lease, such
notice, if not personally delivered to Landlord or to
Tenant, shall be sent by certified or registered mail,
with postage prepaid, and directed to either party at the
address hereinabove specified, or at such other address as
either party may hereafter designate in writing.  The
service of any such written notice shall be deemed
complete at the time of such personal delivery or within
two (2) days after the mailing thereof in Orange County,
California, as herein provided.  Should Landlord or Tenant
consist of more than one person, the personal delivery or
mailing of such notice to any one of such persons shall
constitute complete service upon all such persons.  Any
notice provided in the Article hereof entitled
"Encumbrances" to be given by Landlord to any encumbrancer
of Tenant shall be served in the same manner as herein
provided in this Article and shall be delivered to the
encumbrancer or directed to its address as last shown on
the records of Landlord.

17.   REMEDIES.  Should Tenant at any time be in default
hereunder pursuant to the provisions of the Article hereof
entitled "Termination", then notwithstanding Tenant's
breach of this Lease and abandonment of the leased land,
this Lease shall continue in effect so long as Landlord
does not terminate Tenant's right to possession and
Landlord may enforce all of its rights and remedies
hereunder, including, at the option of Landlord:

     A.  The right to declare the term hereof ended and
with process of law to reenter the leased land and take
possession thereof and remove all persons therefrom, and
Tenant shall have no further claim thereon or hereunder; or

     B.  The right to collect rent and other charges as the
same may from time to time become due and to bring actions
for such collections without terminating this Lease, and
to thereafter at any time elect to terminate this Lease
and all of the rights of Tenant in or to the leased land.

Should Landlord elect to terminate the Lease, Landlord
shall be entitled to recover the worth at the time of the
award of the amount by which the unpaid rent for the
balance of the term, after the time of the award, exceeds
the amount of the rental loss for the same period that
Tenant proves could be reasonably avoided, together with

WPi: 4077A                    7

BK 13824 PG 1268

the rent then unpaid, if any, together with any other
remedy permitted under Califonia Civil Code Section 1951.2
or any other similar statute hereafter enacted.

If Landlord shall elect to reenter the leased land under
the provisions of A or B above, Landlord shall not be
liable for damages by reason of such reentry.

Notwithstanding any other provision of this Lease,
Landlord agrees that if the default complained of, other
than for the payment of monies, is of such nature that the
same cannot be cured within the period specified above,
then such default shall be deemed to be cured if Tenant,
within such period, shall have commenced the curing
thereof and shall continue thereafter with all due
diligence to cause such curing and does so complete the
same with the use of such diligence.

Each of the terms, covenants, conditions and provisions of
Tenant under this Lease is a material consideration for
this Lease, the breach of which shall be deemed a default
hereunder.  All rights, options and remedies of Landlord
contained in this Lease shall be construed and held to be
cumulative, and no one of them shall be exclusive of the
other, and Landlord shall have the right to pursue any one
or all of such remedies or any other remedy or relief
which may be provided by law, whether or not stated in
this Lease.  No waiver by Landlord of a breach of any of
the terms, covenants or conditions of this Lease by Tenant
shall be construed or held to be a waiver of any
succeeding or preceding breach of the same or any other
term, covenant or condition herein contained.  No waiver
of any default of Tenant hereunder shall be implied from
any omission by Landlord to take any action on account of
such default if such default persists or is repeated, and
no express waiver shall affect default other than as
specified in said waiver.  The consent or approval by
Landlord to or of any act by Tenant requiring Landlord's
consent or approval shall not be deemed to waive or render
unnecessary Landlord's consent or approval to or of any
subsequent similar acts by Tenant.

In the event any action shall be instituted between
Landlord and Tenant in connection with this Lease, the
party prevailing in such action shall be entitled to
recover from the other party all of its costs, including
reasonable attorneys' fees, as fixed by the court therein.

18.  REPRESENTATIONS.  Tenant covenants and agrees that it
has examined the leased land and that the same is
delivered to it in good order and condition and that no
representations as to said land have been made by Landlord
or by any person or agent acting for Landlord, and it is
agreed that this document contains the entire agreement
between the parties hereto and that there are no verbal
agreements, representations, warranties or other
understandings affecting the same.

19.  HOLDING OVER.  This Lease shall terminate and become
null and void without further notice upon the expiration
of said term.  Any holding over shall not constitute a

WPN: 4077A                    8

BK 13824 PG 1267

renewal hereof, but the tenancy shall thereafter be on a
month-to-month basis and otherwise on the same terms and
conditions as herein set forth.

26.  **EMINENT DOMAIN.**

A.  **Definition of Terms.**  The term "total taking", as
used in this Article, means the taking of the entire
leased land under the power of eminent domain or the
taking of so much of said land as to prevent or
substantially impair the use thereof by Tenant for the
uses and purposes hereinabove provided.

The term "partial taking" means the taking of a
portion only of the leased land which does not constitute
a total taking as defined above.

The term "taking" shall include a voluntary conveyance
by Landlord to an agency, authority or public utility
under threat of a taking under the power of eminent domain
in lieu of formal proceedings.

The term "date of taking" shall be the date upon which
title to the leased land or portion thereof passes to and
vests in the condemnor.

The term "leased land" means the real property
belonging to Landlord, together with any and all
improvements placed thereon by Landlord or to which
Landlord has gained title.

B.  **Effect of Taking.**  If, during the term hereof,
there shall be a total taking or partial taking under the
power of eminent domain, then the leasehold estate of
Tenant in and to the leased land or the portion thereof
taken shall cease and terminate as of the date of taking
of the said land.  If this Lease is so terminated, in
whole or in part, all rentals and other charges payable by
Tenant to Landlord hereunder and attributable to the
leased land or portion thereof taken shall be paid by
Tenant up to the date of taking by the condemnor and the
parties shall thereupon be released from all further
liaility in relation thereto.

C.  **Allocation of Award - Total Taking.**  All
compensation and damages awarded for the total taking of
the leased land and Tenant's leasehold interest therein
shall be allocated a follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The then fair market value of all of
the improvements located on the leased land; and

(ii)  The then fair market value of the
Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

WPN: 4077A                    9

BK 13824 PG 1268

D.  Allocation of Award - Partial Taking.  All compensation and damages awarded for the taking of a portion of the leased land shall be allocated and divided as follows:

(a)  Tenant shall be entitled to an amount equal to the sum of the following:

(i)  The proportionate reduction of the fair market value of the improvements located on the leased land; and

(ii)  The proportionate reduction of the fair market value of Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount remaining of the total award after deducting therefrom the sums to be paid to Tenant as hereinabove provided.

E.  Reduction of Rent on Partial Taking.  In the event of a partial taking, the rent payable by Tenant hereunder shall be adjusted from the date of taking to the next rental adjustment date or to the date of the expiration of the term of this Lease, whichever date is sooner.  Such rental adjustment will be made by reducing the basic rental payable by the Tenant in the ratio that the fair market value of the leased land at the date of taking bears to the fair market value of the leased and immediately thereafter.

F.  Determination of Fair Market Value.  Whenever fair market value must be determined for the purposes of this Article, and the parties fail to agree in writing on such fair market value within ten (10) days of a request for such agreement from either party, then fair market value shall be determined by the arbitration procedure set forth in the Article entitled "Rental Adjustment".

21.  RENTAL ADJUSTMENT.  Effective January 1, 2000, January 1, 2020 and January 1, 2040, the annual rental payer hereunder shall be adjusted to a sum equal to 8% of the unimproved fair market value of the Leased Land.  After any such adjustment of rent, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the rental, as so adjusted, be less than the initial rental in the Article of this Lease entitled "Rental".

If, by January 1, 2000, January 1, 2020 or January 1, 2040 (as the case may be), the parties hereto shall have failed to agree upon such adjusted rental, then and thereupon the fair market value of the leased land and the amount of rental to be adjusted in relation thereto, as hereinafter provided, shall be determined by arbitration as follows: within ten (10) days after the date set for determining fair market value, each of the parties hereto shall appoint in writing an arbitrator and give written

WFN: 4077A                    10

BK 13024 PG 1269

notice thereof to the other party; or, in case of the
failure of either party so to do, the other party may
apply to the Superior Court of Orange County, California,
to appoint an arbitrator to represent the defaulting party
in the manner prescribed in the then existing statutes of
the State of California applicable to arbitration, the
provisions of which statutes shall apply to and govern the
arbitration herein provided for with the same effect as
though incorporated herein.  Within ten (10) days after
the appointment of said two (2) arbitrators (in either
manner) they shall appoint in writing a third arbitrator
and give written notice thereof to Landlord and Tenant,
and if they shall fail to do so, then either party hereto
may make application to said Superior Court to appoint
such third arbitrator in the manner prescribed in said
arbitration statutes.  The three (3) arbitrators so
appointed (in either manner) shall promptly fix a
convenient time and place in the County of Orange for
hearing the matter to be arbitrated and shall give
reasonable written notice thereof to each of the parties
hereto and with reasonable diligence shall hear and
determine the matter in accordance with the provisions
hereof and of said arbitration statutes, and shall execute
and acknowledge their award thereon in writing and cause a
copy thereof to be delivered to each of the parties hereto
and the award of a majority of said arbitrators shall
determine the questions arbitrated, and a judgment may be
rendered by said Superior Court confirming said award or
the same may be vacated, modified or corrected by said
Court at the instance of either of the parties hereto in
accordance with said arbitration statutes, and said
judgment shall have the force and effect as provided in
said statutes.

Each of the parties hereto shall pay for the services of
its appointee, attorneys and witnesses and one-half (1/2)
of all other proper costs of arbitration.  Pending the
final decision of such adjusted rental, Tenant shall pay
to Landlord the amount of rent previously payable under
the Article of this Lease entitled "Rental".  If such
adjusted rental, as finally determined, shall exceed the
amount of the previous rental, the excess amount accruing
during the interim period shall be paid by Tenant to
Landlord within thirty (30) days after the final
determination of said adjusted rental.  If such adjusted
rental, as finally determined, shall be less than such
previous rental, the amount of any excess paid by Tenant
during said interim period shall be credited against the
first rentals thereafter payable hereunder.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage
of water from the leased land and improvements thereon to
drain or flow into adjacent streets and not upon adjoining
property, and Tenant shall so maintain all slopes or
terraces on the leased land as to prevent any erosion
thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on
the leased land, the wall or walls of which adjoin the
wall or walls of a dwelling constructed on a contiguous
lot, any such wall shall be considered to adjoin and abut
the wall of the contiguous lot against the surface from
the bottom of the foundation over the full length and

WPN: 4077A                11

BK 13824 PG 1270

height of any building so erected for residential purposes. Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots fo. the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so erected. Such rights of use shall be as not to interfere with the use and enjoyment of the lessees of adjoining lots; and, in the event that any such party wall or fence is damaged or injured from any cause other than the act or negligence of one of the lessees, the same shall be repaired or rebuilt at their joint expense.

24. CONSTRUCTION AND EFFECT. Time is of the essence of this Lease. The article headings herein are used only for the purpose of convenience and shall not be deemed to limit the subject to the articles hereof or to be considered in the construction thereof. Each and all of the obligations, covenants, conditions and restrictions of this Lease shall be deemed as running with the land and shall inure to the benefit of and be binding upon and enforceable against, as the case may require, the successors and assigns of Landlord and the heirs, executors, legal representatives, encumbrancers, assignees, successors and subtenants of Tenant. If Tenant consists of more than one person, the covenants and obligations of Tenant hereunder shall be the joint and several covenants and obligations of such persons. In this Lease, the masculine gender includes the feminine and the neuter, and the singular number includes the plural, whenever the context so requires.

25. NON-DISTURBANCE. No mortgage or deed of trust placed on the leased land by Landlord shall be superior to the interest of Tenant herein, unless Landlord and Tenant execute an agreement in recordable form satisfactory to the Tenant that in the event of judicial or private foreclosure, or deed in lieu of foreclosure, or any other action taken by such mortgagee or beneficiary, this Lease and the rights of Tenant hereunder shall not be disturbed by reason of any such foreclosure or other action but shall continue in full force and effect so long as this Lease shall remain in full force and effect and that in the event of any conflict between the terms of this Lease and any such mortgage or deed of trust with regard to insurance or condemnation proceeds or any other provisions of the Lease or the mortgage or the deed of trust, the terms and provisions of this Lease shall prevail.

WPN: 4077A                    12

BK 13824 PG 1271

26.  ESTOPPEL CERTIFICATES.  Landlord and Tenant shall at
any time and from time to time, upon not less than ten
(10) days prior written request by the other party or
parties to this Lease, execute, acknowledge and deliver to
such party or parties a statement in writing certifying
that this Lease is unmodified and in full force and effect
(or if there has been any modification thereof that the
same is in full force and effect as modified and stating
the modification or modifications) and that there are no
defaults existing (or if there is any claimed default
stating the nature and extent thereof); and stating the
dates to which the rent and other charges have been paid
in advance.  It is expressly understood and agreed that
any such statement delivered pursuant to this section may
be relied upon by any prospective assignee or sublessee of
the leasehold estate, or estates of Tenant, or any
prospective purchaser of the estate of Landlord, or any
lender or prospective assignee of any lender on the
security of the leased land or the fee estate or any part
thereof, or upon the leasehold estate of Tenant or any
part thereof, and any third person.

27.  CONDOMINIUM SUBLEASE.

    (a)  Landlord hereby agrees with Tenant for the
    benefit of the Condominium Owner/Subtenant under
    any Condominium Subleases that:

        (i)  So long as such Condominium
    Owner/Subtenant is not in default in the payment
    of rental or other charges due under the
    Condominium Sublease or in the performance of any
    of the other terms, covenants or conditions of
    the Condominium Sublease on such Condominium
    Owner/Subtenant's part to be performed, such
    Condominium Owner/Subtenant's possession of the
    lot subject to such Condominium Sublease and
    Condominium Owner/Subtenant's other rights and
    privileges under the Condominium Sublease shall
    not be interfered with by the Landlord, its
    successors or assigns.

        (ii)  Should this Lease be terminated prior
    to the expiration of the term hereof or any
    extensions of said term for any reason
    whatsoever, including without limitation, as a
    result of Tenant's breach thereof or default
    thereunder, the Condominium Sublease shall
    continue in full force and effect as a direct
    lease between Landlord and the Condominium
    Owner/Subtenant under the Condominium Sublease,
    upon and subject to all of the terms, covenants
    and conditions of the Condominium Sublease for
    the balance of the term thereof remaining,
    provided that such Condominium Owner/Subtenant
    attorns to Landlord in writing.  Notwithstanding
    the foregoing, Landlord shall not be bound by any
    act or omission of Tenant as the prior sublessor
    under the Condominium Sublease.  Landlord shall
    not be bound by any prepayment of rent (other
    than through the Payment Agreement referred to in
    subparagraph 27(c) hereof or other charges which
    such Condominium Owner/Subtenant might have paid

WPN: 4077A                        11

BK 13824 PG 1272

for more than three (3) months in advance to Tenant as the prior sublessor, and Landlord shall not be bound by any amendment to or modification of any Condominium Sublease or by any waiver or forbearance on the part of Tenant as the prior sublessor thereunder made or given without the written consent of Landlord.

(b) If, the provisions of the foregoing notwithstanding, a Condominium Sublease is terminated by reason of any termination of this Lease, it is hereby agreed that the Condominium Owner/Subtenant under such Condominium Sublease and Landlord shall enter into a new lease upon the terms and conditions of the Condominium Sublease for the then remaining balance of the term of the Condominium Sublease.

(c) In the event that such Condominium Subleases shall call for the payment of rent less frequently than quarter annually, the provisions of subparagraph 27(a) shall only be applicable if Landlord and Tenant enter into a Payment Agreement under the terms of which all rental to be paid by Condominium Owner/Subtenant under the terms of the Condominium Sublease will be paid to a neutral depository, such as a bank, savings and loan, trust company or escrow company. Such neutral depository shall be instructed to remit to lessor from such sum collected the amount due under this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day and year first above written.

HOUSER BROS. CO., a limited partnership

By _____
General Partner

By _____
General Partner

"Landlord"

_____
Robert P. Warmington

"Tenant"

WPN: 4077A                    14

000156

BK 13824 PG 1273

STATE OF   CALIFORNIA      )
                          ) ss.
COUNTY OF  ORANGE          )

On  Aug. 13 , 19 80 before me the
undersigned, a Notary Public in and for said State,
personally appeared Vernon F. & Clifford C. Houser , known
to me to be    two              of the partners
of the partnership that executed the within Instrument,
and acknowledged to me that such partnership executed the
same.

WITNESS my hand and official seal.

```
OFFICIAL SEAL
PEARL L HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983
```
[Seal]                          _Pearl L. Hunt_
                                 Notary Public

STATE OF   CALIFORNIA      )
                          ) ss.
COUNTY OF  ORANGE          )

On  August 1 , 19 80, before me the
undersigned, a Notary Public in and for said State,
personally appeared   ROBERT P. WARMINGTON          ,
known to me to be the person whose name is subscribed to
the within Instrument, and acknowledged to me that   HE
executed the same.

WITNESS my hand and official seal.

```
OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983
```
[Seal]                          _Pearl L. Hunt_
                                 Notary Public

WPN: 4077A                    15

RECORDED L



my FirstAm®   **Recorded Document**

---

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1274 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

---

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

8694                    BK 13824 PG 1274

$ 19.00

Recorded at the Request of
and When Recorded Return To:

Robert P. Warmington
16592 Hale Avenue
Irvine, California   92714

```
RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M  NOV  7  1980
LEE A. BRANCH, County Recorder
```

AP 178-04-01

## CONDOMINIUM SUBLEASE

THIS SUBLEASE (hereinafter "lease") is made
this 1st day of ___August___, 1980, by and between
ROBERT P. WARMINGTON, an individual whose address is 16592
Hale Avenue, Irvine, California 92714 (herein termed the
"Landlord"), and _____
___JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants____

whose address is
4476 Airport, Huntington Beach, Ca. 92647
(herein termed the "Tenant").

### W I T N E S S E T H:

That whereas Tenant is concurrently acquiring
certain interest in Condominium Unit __53__ on Lots 1 and 2
of Tract 10542 as shown on a map recorded in Book 456
Pages 49 and 50 Official Records of Orange County
California consisting of buildings and other improvements
located on Lots 1 and 2 of Tract 10542, which buildings
and other improvements are and shall remain real property.

1.   PROPERTY LEASED. For and in consideration
of the payment of the rents and taxes and other charges
and for the performance of all of the covenants and
conditions of this lease by Tenant, Landlord hereby
subleases to Tenant

(i) Unit __53__, (the "Unit") as shown and
defined on that certain Condominium Plan
recorded in Book 13358 Pages 1193 et seq.,
Official Records of Orange County,
California (the "Condominium Plan"),
excepting therefrom all buildings and other
improvements;

(ii) An undivided one-eightieth (1/80)
interest in the Common Areas (as defined in
the Condominium Plan, excepting therefrom
all buildings and other improvements;

(iii) An easement for the exclusive use and
occupancy of those portions of the
Restricted Common Area (as defined on said
Condominium Plan) for entry and staircases
and attic space relating to said Unit,
excepting therefrom all buildings and other
improvements;

WPN:2004A

BK 13824 PG 1275

(iv)  A non-exclusive easement and right to
use the Common Area (as defined on said
Condominium Plan), except the Restricted
Common Area, excepting therefrom all
buildings and other improvements.

It is understood that "Houser Bros. Co., a California
limited partnership (hereinafter the ". ster Lessor") and
Landlord have entered into a Ground Lease dated as of
August 1, 1980 which is being recorded concurrently
herewith (the "Master Lease") as lessor and lessee,
respectively.  This lease shall be subject and subordinate
to the Master Lease, provided that, pursuant to the Master
Lease, Master Lessor has agreed not to disturb the
subleasehold estate of Tenant in the event of a default
under the Master Lease.  Tenant acknowledges receipt of a
copy of the Master Lease prior to Tenant's execution of
this lease.  The Unit is one unit in a Condominium Project
(the "Project") constructed on the leased land and
governed by a Declaration of Covenants, Conditions and
Restrictions (the "Declaration") recorded in Book 13618,
Page 982, Official Records of Orange County, California as
amended.

SUBJECT TO:

(a)  Current taxes and assessments.

(b)  Covenants, conditions, restrictions,
reservations, rights, rights-of-way and easements of
record.

2.  TERM OF LEASE.  The leased land is leased for
a basic term commencing on the date this Condominium Sublease
is recorded in the Office of the County Recorder of Orange County,
California and ending on December 31, 2059, subject, however,
to earlier termination as hereinafter provided.

3.  RENTAL.  Tenant agrees to pay to Landlord,
as rental for the use and occupancy of said leased land
during the term of this lease, the sum of One Thousand
Five Hundred DOLLARS ($1,500) per year. in quarterly
installments of $375 each in advance, on the first day of
the quarter of each calendar year of said term (Provided,
however, if the term of this lease commences on a date
other than the first day of a calendar quarter, Tenant
shall pay an appropriately pro rated amount of such
quarterly installments upon the commencement of such
term); subject, however, to adjustment at the time and in
the manner as herein provided for in Article 21 entitled
"Rental Adjustment".  All rentals hereunder and charges
with respect thereto shall be paid in lawful money of the
United States of America.

4.  TAXES AND ASSESSMENTS.  In addition to the
rents above provided, Tenant shall pay and discharge all
taxes and general and special assessments of every
description which may be levied upon or assessed against
the leased land and all interest therein and improvements
and other property thereon, (including its Unit) and upon
all rentals payable with respect to the leased land,
whether belonging to Landlord, Tenant or the Master

WPN:2004A                          2

BK 13324 0 1276

Lessor, as such taxes and assessments become due and
payable during the term of this lease.  Tenant agrees to
protect and hold harmless the Landlord, the Master Lessor
and the leased land and all interest therein and
improvements thereon from any and all such taxes and
assessments, including any interest, penalties and other
charges which may be thereby imposed and from any lien
therefor or sale or other proceedings to enforce payment
thereof.

5.   USE OF LEASED LAND.  Tenant shall use the
leased land and its Unit for single family residential use
and purpos s incidental thereto.  Tenant shall not use or
permit any person to so use the leased land and the
improvements thereon, or any portion thereof, or its Unit
as to disturb the neighborhood or occupants of adjoining
property, or to constitute a nuisance, or to violate any
public law, ordinance or regulation from time to time
applicable thereto.

6.   IMPROVEMENTS.  When any construction is
commenced on the leased land, the same shall be prosecuted
with reasonable diligence until completed and shall
conform to all public laws, ordinances and regulations
applicable thereto and shall be constructed and completed
at the sole cost and expense of Tenant and without any
cost, expense or liability of Landlord whatsoever.
Further, Tenant shall comply with all of the terms,
covenants and conditions of the Master Lease pertaining to
such construction, including, without limitation, the
obligation to obtain the approval of the Master Lessor
when, and to the extent required by the Master Lease.

7.   MAINTENANCE.  Landlord shall not be
obligated to make any repairs, alterations, additions or
improvements in, to, upon, or adjoining the leased land or
any improvements that may be constructed or installed on
the leased land.  As part of the consideration for
Landlord entering this Lease, Tenant shall, at all times
during the full term of this lease and at his sole cost
and expense, keep, repair and maintain its Unit and those
other portions of the leased land and buildings and
improvements therein which are the responsibility of
Tenant to maintain and repair under the provisions of the
Declaration, in clean and sanitary condition and in good
order and repair.  Tenant shall pay for all water, gas,
heat, light, power, telephone and all other utilities and
services furnished to its Unit.  Tenant shall make payment
directly to the utility involved for all separately
metered services and shall pay to the management body for
the Project the proportionate share of all centrally
metered utilities, such proportion to be determined by
said management body.

Tenant shall at all times fully comply with and
abide by the terms, covenants, restrictions, provisions
and conditions of the Declaration and any amendments
thereof, and any rules, regulations, agreements, decisions
and determinations duly made by the management body for
the Project established pursuant to the Declaration
respecting the maintenance, use and occupation of its Unit

WPN:2004A                    3

BK 13824PG 1277

and the leased land and any building or improvements
constructed thereon and the payment of all assessments and
charges of every type levied by the management body of the
Project in connection therewith.  In addition to the
foregoing, Tenant hereby covenants and agrees to promptly
pay at all times during the term hereof, before the same
shall become delinquent, Tenant's share of the common
expenses of the Project and any and all assessments,
charges, and duties of every description, levied under the
provisions of the Declaration, without cost, expense or
liability to Landlord.  Tenant shall further, during the
whole term of this Lease, by paying his proportionate
share of the common expenses of the Project make, build,
maintain and repair all fences, sewers, drains, curbs,
roads, sidewalks, parking areas, and other improvements
which may be required by law to be made, built, maintained
and repaired upon or adjoining or in connection with or
for the use of the leased land.

8.   RESTORATION OF IMPROVEMENTS.  If, during the
term hereof, the dwelling, structures or other
improvements, if any, constructed by or for Tenant on the
leased land, or any part thereof, shall be damaged or
destroyed by fire or other casualty, Tenant may, at its
cost and expense, either (a) repair or restore said
dwelling and improvements; or (b) subject to the consent
of any encumbrancer, if any, tear down and remove the same
from the leased land.

9.   LIENS AND CLAIMS.  Tenant shall not suffer
or permit to be enforced against the leased land or its
Unit, or any part thereof, any mechanics', laborers',
materialmen's, contractors', subcontractors', or any other
liens arising from or any claim for damages growing out of
any work of construction or improvement, or any other
claim or demand howsoever the same may arise, but Tenant
shall pay or cause to be paid all of said liens, claims
and demands before any action is brought to enforce the
same against the leased land and its Unit, and Tenant
hereby indemnifies and agrees to hold Landlord, and its
Unit free and harmless from all liability for any and all
such liens, claims and demands, together with all costs
and expenses, including, but not limited to, attorneys'
fees and court costs incurred by Landlord or Master Lessor
in connection therewith, and Landlord and Master Lessor
shall have the right, at any time and from time to time,
to post and maintain on the leased land, or any part
thereof, such notices of nonresponsibility as desired by
Landlord or as may be provided by law.  Notwithstanding
anything to the contrary contained in this paragraph, if
Tenant shall, in good faith, contest the validity of any
such lien, claim or demand, then Tenant shall, at its
expense, defend itself, Landlord and Master Lessor against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against landlord the leased land or its Unit, and
if Landlord shall require, Tenant shall furnish to
Landlord a surety bond satisfactory to Landlord in an
amount equal to such contested lien, claim or demand
indemnifying Landlord and Master Lessor against liability
for same; or, if Landlord shall request, Tenant shall

WPN:2004A                    4

BK 13824 PG 1278

procure and record the bond provided for in the Civil Code
of the State of California, or any comparable statute
hereafter enacted providing for a bond freeing the leased
land and the Unit from the effect of such lien or claim or
action thereon.

10.  LIABILITIES.  Landlord shall not be liable
for any loss, damage, injury or claim of any kind
whatsoever to any person or property of Tenant, or any of
Tenant's employees, guests or invitees or of any other
person whomsoever, caused by any use of the leased land or
by any defect in any building, structure or other
improvement constructed thereon, or arising from any
accident on the leased land or any fire or other casualty
thereon, or occasioned by the failure on the part of
Tenant to maintain said premises in safe condition, or by
any nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11.  LANDLORD PAYING CLAIMS.  Neither Landlord
nor the Master Lessor shall be liable for any loss,
damage, injury or claim of any kind or character to any
person or property arising from or caused by the use of
development of the leased land and the construction of
improvements thereon, including, without limitation, any
such loss, damage, injury or claim arising from or caused
by (i) any use of the leased land, or any part thereof;
(ii) any defect in the design, construction of or material
in any structure or improvement upon the leased land
or in any other therein; (iii) any defect in
soils or in the soils or in the design and
accompli     r    ; (iv) any act or omission of
Tenant            nts, employees, licensees,
invitee    cont      ts; (v) any accident on the leased
land or other casualty thereon; (vi) any representations
by Tenant or any of its agents or employees; (vii) a
violation or alleged violation by Tenant, its employees or
agent, of any law now or hereafter enacted; (viii) any
other cause whatsoever in connection with Tenant's use of
the leased land; or (ix) the application of the principles
of strict liability with respect to any act or omission
during the term of this Lease of Tenant or its agents,
employees, licensees, invitees or contractors in
connection with the leased land; and Tenant, as a material
part of the consideration of this Lease, hereby waives on
its behalf all claims and demands against Landlord or the
Master Lessor for any such loss, damage or injury of
Tenant, and hereby indemnifies and agrees to hold Landlord
and the Master Lessor entirely free and harmless from all
liability for any such loss, damage, injury or claim with
respect to any person or property made by other persons,
and with respect to any such violations or charges arising

WPN:2004A                          5

BK 13824 PG 1279

therefrom, including, without limitation, attorneys' fees and court costs incurred by Landlord and the Master Lessor in connection therewith.

Tenant either individually, or in conjunction with the Tenants of the remaining undivided interests in the leased land or through the management body for Project shall maintain at all times during the term of the Lease, at its expense and in companies aceptable to Landlord:

(a)  Worker's compensation insurance and employer's liability insurance.

(b)  Comprehensive liability insurance, with limits of not less than FIVE HUNDRED THOUSAND ($500,000) DOLLARS for any one person; ONE MILLION ($1,000,000) DOLLARS for any one occurrence as to bodily injury or death; and ONE HUNDRED THOUSAND ($100,000) DOLLARS per occurrence as to property damage.

Each policy of insurance shall be issued by insurers of recognized responsibility, qualified to do business in California, acceptable to Landlord and the Master Lessor and which has, at the execution hereof, a rating at least equal to AXV by Best's Insurance Guide (or other equivalent rating if such Guide be discontinued) and shall name Landlord and the Master Lessor as an additional insured.  Prior to the time of commencement of this Lease, Tenant shall deliver certificates of insurance carriers of each policy of insurance as evidence of compliance with the above requirements and stating that not less than ten (10) days' written notice will be given to Landlord and the Master Lessor prior to cancellation or reduction in coverage or amount.

12.  ASSIGNMENT.  Tenant shall have the right to assign, sublet or otherwise transfer its interest under this lease without the prior written consent of Landlord. Notwithstanding the foregoing, this lease or any right hereunder shall in no case be assigned separate and apart from Tenant's Unit located on the leased land.  Also notwithstanding the foregoing, Landlord shall accept Tenant's assignee in writing following a request therefor.

13.  ENCUMBRANCES.  Tenant shall have the right to assign Tenant's interest in this Lease and the leased land to a trustee under a deed of trust (herein called "trust deed"), for the benefit of a lender (herein called "encumbrancer") upon and subject to the following covenants and conditions.  Landlord's consent shall not be required for such assignment, but Landlord shall execute its written consent to such assignment by trust deed following a request therefor from Tenant:

A.  Said trust deed and said assignment and all rights acquired thereunder shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interests of the Landlord hereunder; and, in the event of any conflict between the provisions of this Lease and the provisions of

WPN:2004A

BK 13824 PG 1280

any such trust deed or assignment, the provisions of this
Lease shall control.

B.    Any encumbrancer as a transferee under the
provisions of this Article shall be liable to perform the
obligations of the Tenant under this Lease only so long as
such encumbrancer holds title to the leasehold.

C.    Upon and immediately after the recording of
the trust deed covering the leased land, Tenant, at
Tenant's expense, shall cause to be recorded in the office
of the Recorder of Orange County, California, a written
request for a copy, to the Landlord, of any notice of
default and of any notice of sale under the trust deed as
provided by the statutes of the State of California
relating thereto.    Tenant shall furnish to landlord a
complete copy of the trust deed and note secured thereby,
together with the name and address of the holder thereof.

D.    Landlord agrees that it will not terminate
this Lease because of any default or breach hereunder on
the part of the Tenant if the encumbrancer or the trustee
under such deed of trust, within sixty (60) days after
service of written notice on the encumbrancer by Landlord
of its intention to terminate this Lease for such default
or breach, shall:

(a)  Cure such default or breach if the same can
be cured by the payment or expenditure of money
provided to be paid under the terms of this Lease, or
if such default or breach is not so curable, cause the
trustee under the trust    to commence and
thereafter to diligently pursue to completion steps
and proceedings for the foreclosure by sale or by
exercise of a power of sale under and pursuant to the
trust deed in the manner provided by law; and

(b)  Keep and perform all of the covenants and
conditions of this Lease requiring the payment or
expenditure of money by Tenant until such time as said
leasehold shall be sold upon foreclosure, or by
exercise of a power of sale, pursuant to the trust
deed or shall be released or reconveyed thereunder;
provided, however, that if the beneficiary under such
trust deed shall fail or refuse to comply with any and
all of the conditions of this Article with respect to
a breach or default as to which notice of intention to
terminate this Lease has been given to the
encumbrancer, then and thereupon Landlord shall be
released from the covenants of forebearance herein
contained with respect to such breach or default.

Any notice to the encumbrancer provided for in
this Article may be given concurrently with or after
Landlord's notice of default to Tenant as herein provided
for in the Article entitled "Default."

Any mortgagee shall have the right at any time
during the term hereof while this lease is in full force
and effect:

WPN:2004A                    7

000165

BK 13824 PG 1281

(a)   To do any act required of Tenant hereunder, and all such acts done or performed shall be effective to prevent a forfeiture of Tenant's rights hereunder as if the same had been done or performed by Tenant; and

(b)   To rely on the security afforded by the leasehold estate and to acquire and to succeed to the interest of Tenant hereunder by foreclosure, whether by judicial sale, by power of sale contained in any security instrument, or by assignment given in lieu of foreclosure, and thereafter convey or assign title to the leasehold estate so acquired to any other person firm or corporation without the consent of Landlord as to such initial transfer, and such obligations shall not commence as to any obligation which cannot be satisfied by the payment of money prior to mortgagee's acquisition of the leasehold estate hereunder by reason of the exercise of its rights as aforesaid.

Until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this lease, consent to any modification hereof or consent to the assignment hereof, or of any part or portion, of the term created thereby or of any interest therein.

14.  DEFAULT.  Should Tenant fail to pay any installment of rent or any other sum provided in this lease to be paid by Tenant at the times herein specified and should such default continue uncured for a period of ten (10) days after written notice from Landlord, or should Tenant default in the performance of or breach any other covenant, condition or restriction of this lease herein provided to be kept or performed by Tenant, and should such default or breach continue uncured for a period of thirty (30) days from and after written notice thereof by Landlord to Tenant, then and in any such event, Landlord may declare this lease to be in default and Landlord shall have all of the remedies available at law or stated in the Article entitled "Remedies" or elsewhere provided in this lease.

15.  REMOVAL.  Upon the expiration of the term of this Lease, and on condition that Tenant shall not then be in default under any of the covenants and conditions hereof, and not otherwise, Tenant shall have the right during the last ninety (90) days of said term, at its sole expense, to remove from the leased land all buildings and other improvements thereon, and Tenant shall fill all excavations and remove all parts of said buildings remaining after the same are removed and surrender possession of the leased land to Landlord in a clean and orderly condition.  In the event any of said buildings and other improvements shall not be removed from the leased land within the time hereinabove provided, the same shall become and thereafter remain a part of the leased land and shall belong to Landlord without the payment of any consideration therefor.  Upon the expiration of the term hereof, or any sooner termination of this Lease, Tenant

WPN:2004A                    8

BK 13824 PG 1282

shall execute, acknowledge and deliver to Landlord a proper instrument in writing releasing and quitclaiming to Landlord all right, title and interest of Tenant in and to the leased land and any and all improvements thereon, if not removed by virtue of this Lease or otherwise.

16.   PLACE OF PAYMENTS AND NOTICES.   All rents and other sums payable by Tenant to Landlord hereunder shall be paid to the Landlord at the address set forth after Landlord's name above.   Whenever either party hereto desires to give written notice to the other respecting this Lease, such notice, if not personally delivered to Landlord or to Tenant, shall be sent by certified or registered mail, with postage prepaid, and directed to either party at the address hereinabove specified, or at such other address as either party may hereafter designate in writing.   The service of any such written notice shall be deemed complete at the time of such personal delivery or within two (2) days after the mailing thereof in Orange County, California, as herein provided.   Should Landlord or Tenant consist of more than one person, the personal delivery or mailing of such notice to any one of such persons shall constitute complete service upon all such persons.   Any notice provided in the Article hereof entitled "Encumbrances" to be given by Landlord to any encumbrancer of Tenant shall be served in the same manner as herein provided in this Article and shall be delivered to the encumbrancer or directed to its address as last shown on the records of Landlord.

17.   REMEDIES.   Should Tenant at any time be in default hereunder pursuant to the provisions of the Article hereof entitled "Default", then notwithstanding Tenant's breach of this lease and abandonment of the leased land, this lease shall continue in effect so long as Landlord does not terminate Tenant's right to possession and Landlord may enforce all of its rights and remedies hereunder, including, at the option of Landlord:

A.   Continue this Lease in effect without terminating Tenant's right to possession, even though Tenant has breached this Lease and abandoned the leased land; and to enforce all of Landlord's rights and remedies under this Lease, including the right to recover, by suit or otherwise, all sums and installments required to be paid in accordance with the provisions of Article 3 above, or other monetary performance as it becomes due hereunder, or to enforce, by suit or otherwise, any other term or provision hereof on the part of Tenant required to be performed, it being specifically agreed that the aggregate unpaid installment indebtedness shall bear simple interest at the rate of ten percent (10%) per annum from the date thereof until paid, provided, however, that Landlord may, at any time thereafter, elect to terminate this Lease for such previous breach by notifying Tenant in writing that Tenant's right to possession of the leased land has been terminated; or

B.   By written notice to Tenant, Landlord may declare this Lease at an end, re-enter the leased land by process of the law, eject all parties in possession

WPN:2004A

9

BK 13824 PG 1283

thereof therefrom and repossess said leased land, in which
event, Landlord shall have the right to recover from
Tenant:

(i)   The worth at the time of award of the
unpaid rent which has been earned at the time of
termination;

(ii)  The worth at the time of award of the
amount by which the unpaid rent which would have been
earned after termination until the time of award
exceeds the amount of such rental loss that the Tenant
proves could have been reasonably avoided;

(iii) The worth at the time of award of the
amount by which the unpaid rent for the balance of the
term after the time of award exceeds the amount of
such rental loss for the same period that the Tenant
proves could be reasonably avoided;

(iv)  All other amounts necessary to compensate
Landlord for all the detriment proximately caused by
Tenant's failure to perform its obligations hereunder
or which in the ordinary course of things are likely
to result therefrom; and

(v)   In computing "worth at the time of award"
Landlord shall be allowed interest at the rate of ten
percent (10%) per annum.

Each of the terms, covenants, conditions and
provisions of Tenant under this lease is a material
consideration for this lease, the breach of which shall be
deemed a default hereunder.  All rights, options and
remedies of Landlord contained in this lease shall be
construed and held to be cumulative, and no one of them
shall be exclusive of the other, and Landlord shall have
the right to pursue any one or all of such remedies or any
other remedy or relief which may be provided by law,
whether or not stated in this lease.  No waiver by
Landlord of a breach of any of the terms, covenants or
conditions of this lease by Tenant shall be construed or
held to be a waiver of any succeeding or preceding breach
of the same or any other term, covenant or condition
herein contained.  No waiver of any default of Tenant
hereunder shall be implied from any omission by Landlord
to take any action on account of such default if such
default persists or is repeated, and no express waiver
shall affect default other than as specified in said
waiver.  The consent or approval by Landlord to or of any
act by Tenant requiring Landlord's consent or approval
shall not be deemed to waive or render unnecessary
Landlord's consent or approval to or of any subsequent
similar acts by Tenant.

In the event any action shall be instituted
between Landlord and Tenant in connection with this lease,
the party prevailing in such action shall be entitled to
recover from the other party all of its costs, including
reasonable attorneys' fees, as fixed by the court therein.

WPN:2004A                    10

BK 13824 PG 1284

18.  REPRESENTATIONS.  Tenant covenants and agrees that it has examined the leased land and that the same is delivered to it in good order and condition and that no representations as to said land have been made by Landlord or by any person or agent acting for Landlord, and it is agreed that this document contains the entire agreement between the parties hereto and that there are no verbal agreements, representations, warranties or other understandings affecting the same.

19.  HOLDING OVER.  This lease shall terminate and become null and void without further notice upon the expiration of said term.  Any holding over shall not constitute a renewal hereof, but the tenancy shall thereafter be on a month-to-month basis and otherwise on the same terms and conditions as herein set forth.

20.  EMINENT DOMAIN.

A.  Definition of Terms.  The term "total taking", as used in this Article, means the taking of the entire leased land under the power of eminent domain or the taking of so much of said land as to prevent or substantially impair the use thereof by Tenant for the uses and purposes hereinabove provided.

The term "partial taking" means the taking of a portion only of the leased land which does not constitute a total taking as defined above.

The term "taking" shall include a voluntary conveyance by Landlord to an agency, authority or public utility under threat of a taking under the power of eminent domain in lieu of formal proceedings.

The term "date of taking" shall be the date upon which title to the leased land or portion thereof passes to and vests in the condemnor.

The term "leased land" means the real property belonging to Landlord, together with any and all improvements placed thereon by Landlord or to which Landlord has gained title.

B.  Effect of Taking.  If, during the term hereof, there shall be a total taking or partial taking under the power of eminent domain, then the leasehold estate of Tenant in and to the leased land or the portion thereof taken shall cease and terminate as of the date of taking of the said land.  If this lease is so terminated, in whole or in part, all rentals and other charges payable by Tenant to Landlord hereunder and attributable to the leased land or portion thereof taken shall be paid by Tenant up to the date of taking by the condemnor and the parties shall thereupon be released from all further liability in relation thereto.

C.  Allocation of Award - Total Taking.  All compensation and damages awarded for the total taking of

WPN:2004A                    11

BK 13824 PG 1285

the leased land allocated to Landlord under the terms of
the Master Lease shall be allocated as follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The fair market value of all of the
improvements located on the leased land; and

(ii)  The then fair market value of the
Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

D.    Allocation of Award - Partial Taking.    All
compensation and damages awarded for the taking of a
portion of the leased land allocated to Landlord under the
terms of the Master Lease shall be allocated and divided
as follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The proportionate reduction of the
fair market value of the improvements located on
the leased land; and

(ii)  The proportionate reduction of the
fair market value of Tenant's leasehold interest
in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

E.    Reduction of Rent on Partial Taking.    In the
event of a partial taking, the rent payable by Tenant
hereunder shall be adjusted from the date of taking to the
next rental adjustment date or to the date of the
expiration of the term of this lease, whichever date is
sooner.  Such rental adjustment will be made by reducing
the basic rental payable by the Tenant in the ratio that
the fair market value of the leased land at the date of
taking bears to the fair market value of the leased land
immediately thereafter.

F.    Determination of Fair Market Value.
Whenever fair market value must be determined for the
purposes of this Article, and the parties fail to agree in
writing on such fair market value within ten (10) days of
a request for such agreement from either party, then fair
market value shall be determined by appraisers appointed
pursuant to the Article in the Master Lease entitled
"Condemnation" or if no such appraiser have been or are to
be appointed, by agreement of Landlord and Tenant or, in
the absence of such an agreement by appraisers appointed
by Landlord and Tenant in the same manner as set forth in
such Article.

WPN:2004A                     12

BK 13824 PG 1286

21.  RENTAL ADJUSTMENT.

A.   Effective January 1, 2000, January 1, 2020, and January 1, 2010, the annual rental payable hereunder shall be adjusted to a sum equal to ten percent (10%) of the unimproved fair market value of the leased land, or any portion then remaining subject to this Lease, as of such dates.  The said "unimproved fair market value" of the leased land shall be such value as determined by the Master Lessor and the Landlord in accordance with the terms and provisions of Article 21 of the Master Lease. After any such adjustment of rent, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the annual rental, as so adjusted, be less than the annual rental in the immediately preceding period.

Pending the final determination of such adjusted rental, Tenant shall pay to Landlord the amount of rent previously payable under the Article of this lease entitled "Rental".  If such adjusted rental, as finally determined, shall exceed the amount of the previous rental, the excess amount accruing during the interim period shall be paid by Tenant to Landlord within thirty (30) days after the final determination of said adjusted rental.

B.   Effective January 1, 1990, January 1, 2010, January 1, 2030, and January 1, 2050, the annual rental shall be adjusted upwards as follows:  As promptly as practical after such dates, Landlord shall compute the increase, if any, in the cost of living during the period just ended, based upon the Consumers Price Index - Los Angeles/Long Beach/Anaheim Metropolitan Area (1967=100), "All items of goods and services purchased by urban wage and clerical worker families" (hereinafter called the "Index"), published by the Bureau of Labor Statistics of the United States Department of Labor.  The Index Number for the latest month prior to commencement of the term of this Lease, with respect to which such a Number is published, shall be the "Base Index Number" and the corresponding Index Number for the month which immediately preceeds the effective date of the adjustment shall be the "Current Index Number".

The annual rent shall be adjusted by multiplying the rental payable during the immediately preceding year of the term of this lease by a fraction, the numerator of which is the Current Index Number and the denominator of which is the Base Index Number; provided, however, that the annual rent shall never be reduced below the rental payable in the immediately preceding twelve-month period.

Tenant shall continue payment of rent installments in effect for the expiring rental period until notified by Landlord of the new rent.  Such notification shall include a memorandum showing the calculations used by Landlord in determining the new rent.  Immediately upon receipt of such notice, Tenant

WPN:2004A                       13

BK 13824 PG 1287

shall commence payment of the adjusted rent, and shall also pay to Landlord with respect to any period already expired within thirty (30) days after receipt of such notice, the excess of the new annual rent over the rent actually paid by Tenant.

If publication of the Index shall be discontinued, the most comparable Index when published by any branch or department of the United States Government shall be substituted, or if there is none, the parties shall agree on another source of information, and such adjustments in the method of computation shall be made as may be necessary to carry out the intent of this cost-of-living provision.  Appropriate adjustments shall also be made in the event that the base period, or other aspects of the Index are changed.  If the parties are unable to agree on a source of information, such source of information shall be determined by arbitration, pursuant to the provisions of the California Code of Civil Procedure.

Notwithstanding the foregoing, the annual rental shall not be adjusted pursuant to the above higher than a sum equal to one hundred seventy percent (170%) of the rent payable in the immediately preceding twelve-month period.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage of water from the leased land and improvements thereon to drain or flow into adjacent streets and not upon adjoining property, and Tenant shall so maintain all slopes or terraces on the leased land  to prevent any erosion thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on the leased land, the wall or walls of which adjoin the wall or walls of a dwelling constructed on a contiguous lot, any such wall shall be considered to adjoin and abut the wall of the contiguous lot against the surface from the bottom of the foundation over the full length and height of any building so erected for residential purposes.  Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so

WPN:2004A                        14

BK 13824 PG 1288

erected.  Such rights of use shall be as not to interfere
with the use and enjoyment of the lessees of adjoining
lots; and, in the event that any such party wall or fence
is damaged or injured from any cause other than the act or
negligence of one of the lessees, the same shall be
repaired or rebuilt at their joint expense.

24.  COMPLIANCE WITH LAWS.  Tenant covenants that
during the lease term, Tenant will comply, at no cost or
expense to Landlord, with all laws, ordinances, orders,
rules, regulations and requirements of all federal, state
and municipal governments and appropriate departments,
commissions, boards and officers thereof, which may be
applicable to the leased land or its Unit, buildings and
other improvements constructed thereon, or the use or
manner of use of the leased land or its Unit.  Tenant
accepts the leased land and its Unit in the actual
condition of the same as of the date of this lease.

25.  ACCEPTANCE OF PERFORMANCE BY OTHERS.
Landlord agrees to accept performance of any of the
covenants or agreements of Tenant contained herein from
(a) any group of ten or more tenants holding subleases of
individual interests in the leased land or (b) the
management body for the Project.

26.  CONSTRUCTION AND EFFECT.  Time is of the
essence of this lease.  The article headings herein are
used only for the purpose of convenience and shall not be
deemed to limit the subject to the articles hereof or to
be considered in the construction thereof.  Each and all
of the obligations, covenants, conditions and restrictions
of this lease shall be deemed as running with the land and
shall inure to the benefit of and be binding upon and
enforceable against, as the case may require, the
successors and assigns of Landlord and the heirs,
executors, legal representatives, encumbrancers,
assignees, successors and subtenants of Tenant.  If Tenant
consists of more than one person, the covenants and
obligations of Tenant hereunder shall be the joint and
several covenants and obligations of such persons.  In
this lease, the masculine gender includes the feminine and
the neuter, and the singular number includes the plural,
whenever the context so requires.

27.  NON-DISTURBANCE.  No mortgage or deed of
trust placed on the leased land . Landlord shall be
superior to the interest of Tenant herein unless the
mortgagee or beneficiary thereunder executes an agreement
in recordable form covenanting in a form satisfactory to
the Tenant that in the event of judicial or private
foreclosure, or deed in lieu of foreclosure, or any other
action taken by such mortgagee or beneficiary this Lease
and the rights of Tenant hereunder shall not be disturbed
by reason of any such foreclosure or other action but
shall continue in full force and effect so long as this
Lease shall remain in full force and effect.

28.  ESTOPPEL CERTIFICATES.  Landlord and Tenant
shall at any time and from time to time, upon not less
than ten (10) days prior written request by the other

WPN:2004A                    15

000173

BK 13824 PG 1289

party or parties to this lease, execute, acknowledge and
deliver to such party or parties a statement in writing
certifying that this lease is unmodified and in full force
and effect (or if there has been any modification thereof
that the same is in full force and effect as modified and
stating the modification or modifications) and that there
are no defaults existing (or if there is any claimed
default stating the nature and extent thereof); and
stating the dates to which the rent and other charges have
been paid in advance.  It is expressly understood and
agreed that any such statement delivered pursuant to this
section may be relied upon by any prospective assignee or
sublessee of the leasehold estate, or estates of Tenant,
or any prospective purchaser of the estate of Landlord, or
any lender or prospective assignee of any lender on the
security of the leased land or the fee estate or any part
thereof, or upon the leasehold estate of Tenant or any
part thereof, and any third person.

IN WITNESS WHEREOF, the parties hereto have
executed this Sublease as of the day and year first above
written.

By _____
Robert P. Warmington
"Landlord"

By _____
"Tenant"

By _____
"Tenant"

WPN:2004A                    16

BK 13824 PG 1290

STATE OF    CALIFORNIA        )
                             ) ss.
COUNTY OF   ORANGE           )

On    August 1   , 19 80, before me the
undersigned, a Notary Public in and for said State,
personally appeared Robert P. Warmington, known to me to
be the person whose name is subscribed to the within
Instrument, and acknowledged to me that he executed the
same.

WITNESS my hand and official seal.

Notary Public

[Seal]

[Attach acknowledgment form for Tenant]

STATE OF CALIFORNIA
COUNTY OF _____ Orange _____ } ss.

On _____ November 5, 1980 _____, before me, the undersigned, a Notary Public in and for
said State, personally appeared __ John F. Turner and Virginia H. Turner __

known to me to be the person S whose name  are
subscribed to the within instrument and acknowledged to me
that _____ they _____ executed the same
WITNESS my hand and official seal.

Signature

Bonnie Quenneville
    Name (Typed or Printed)



OFFICIAL SEAL
BONNIE QUENNEVILLE
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Jan. 13, 1984

(This area for official notarial seal)

WPN:2004A                         17

RECORDED

000175



myFirstAm®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1291 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION OF THE CONDITION OF TITLE TO REAL PROPERTY. IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY. THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON. THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S PRIOR WRITTEN CONSENT. FIRST AMERICAN DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS. AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT. RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

---

**Recorded Document**                                                                                                     **08/18/2021**

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

8695                    BK 13824 PG 1291

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California    92714

> RECORDED AT REQUEST OF
> FIRST AMER. TITLE INS. CO.
> IN OFFICIAL RECORDS OF
> ORANGE COUNTY, CALIFORNIA
> 8:00 A.M. NOV 7 1988
> LEE A. BRANCH, County Recorder

Conveyance connected with leaseholder
interest not to exceed 99 years.

A P  178-011-01                                                    13/4

### CONVEYANCE OF REMAINDER INTEREST

FOR VALUABLE CONSIDERATION, receipt of which is hereby
acknowledged, THE ROBERT P. WARMINGTON CO., a California
corporation, hereby grants to ROBERT P. WARMINGTON, an
individual, the remainder interest in that portion of Lots 1
and 2 of Tract 10542 in the City of Huntington Beach, County
of Orange, State of California, as shown on a Map recorded in
Book 456, Pages 49 and 50 of Miscellaenous Maps, in the
Office of the County Recorder of Orange County, California,
described on Exhibit I attached hereto, after the term of
years expiring upon expiration or early termination of that
certain Condominium Sublease of even date herewith, made
by Robert P. Warmington, an individual, to _____

_____ John F. Turner and Virginia H. Turner, husband and wife, as Joint Tenants

_____

_____

_____,

a short form of which is being recorded concurrently herewith,
subject, however, to all matters whether or not of record.

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By _Oliver N Gray_____

By _William F Bitt_____

000177

BK 13824 PG 1292

STATE OF CALIFORNIA   )
                      )  ss.
COUNTY OF ORANGE      )

On ____August 1_____, 1980, before me, the undersigned,
a Notary Public in and for said State, personally appeared
_____OLIVER N. CRARY_____, known to me to be the
_____Vice President_____, and _____WILLIAM J. PITTMAN_____,
known to me to be the _____Secretary_____ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

OFFICIAL SEAL
GAIL L. KING
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires Nov 3, 1982

Notary Public in and for
said County

[SEAL]

2

BK 13824 PG 1293

EXHIBIT I

**Parcel 1**

Those portions of Unit _53_, as shown and
defined on a Condominium Plan ("the Condominium
Plan"), recorded in Book 13358, Page 1193, et seq.,
consisting of buildings and other improvements.

**Parcel 2**

An undivided one-eightieth (1/80) interest
in and to those portions of the Common Area as
shown and defined on the Condominium Plan, con-
sisting of buildings and other improvements.

**Parcel 3**

An exclusive easement for the use and
occupancy of those portions of Restricted
Common Area as defined on the Condominium Plan
for entry and staircases and attic space relating
to said Unit, consisting of buildings and other
improvements.

**Parcel 4**

Non-exclusive easement and right to use
those portions of the Common Area as defined on
the Condominium Plan, except Restricted Common
Area, consisting of buildings and other improve-
ments.

SUBJECT TO:

(a)  general and special taxes and assessments
     for the current fiscal year;

(b)  the Declaration of Restrictions recorded
     in Book 13618, Page 982, Official Records
     of Orange County, California, as amended,
     (the "Declaration");

(c)  all other covenants, conditions, restric-
     tions, rights, reservation of rights of way
     and easements whether or not of record.

RECORDED



**Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

|  |  |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1294 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION  OF  TITLE  TO  REAL  PROPERTY.   IT  IS  NOT  AN  ABSTRACT,  LEGAL  OPINION,  OPINION  OF  TITLE,  TITLE  INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

000180

8696          BK 13824 PG 1294

RECORDING AT THE REQUEST OF:

WHEN RECORDED MAIL TO:
Mr. and Mrs. John F. Turner
4476 Alderport
Huntington Beach, Ca. 92647

$10.00
C3

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

PAID
DOC TRANSFER TAX
LEE A BRANCH
ORANGE CO. RECORDER

Mail Tax Statements to
Address Shown Above

The undersigned Grantor Declares The
Documentary Transfer Tax is $126.50
Computed On Full Value of Property
Conveyed in Huntington Beach, Ca.

CONDOMINIUM SUBLEASE
(SHORT FORM-MEMORANDUM)
AND GRANT DEED

For the purpose of establishing and vesting in
JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants

_____

_____

_____

(the "Condominium Owner"), a Condominium as defined in the
Condominium Plan (the "Condominium Plan"), recorded in Book
13358, Pages 1193, et seq., Official Records of Orange County,
California, located on Lots 1 and 2 of Tract 10542 in the
City of Huntington Beach, County of Orange, State of
California, as shown on a Map recorded in Book 456, Pages 49
and 50 of Miscellaneous Maps, in the Office of the County
Recorded or Orange County, California:

I.   DEMISING CLAUSE:

     ROBERT P. WARMINGTON, an individual, ("Sublessor"), who
is the lessee under that certain Ground Lease dated as of
August 1, 1980, from HOUSER BROS. CO., a limited partnership,
as lessor, which Ground Lease is being recorded concurrently
herewith, hereby subleases to Condominium Owner, the follow-
ing real property:

     Parcel 1
          Unit  53  , as shown and defined on the
     Condominium Plan, excepting that portion con-
     sisting of buildings and other improvements.

MAIL TAX STATEMENTS AS DIRECTED ABOVE



BK 13824 PG 1295

Parcel 2

    An undivided one-eightieth (1/80) interest
in the Common Area as shown and defined on the
Condominium Plan, excepting that portion con-
sisting of buildings and other improvements.

Parcel 3

    An easement for the exclusive use and
occupancy of those portions of the Restricted
Common Area as defined on said Condominium
Plan for entry and staircases and attic space
relating to said Unit, excepting that portion
consisting of buildings and other improvements.

Parcel 4

    A non-exclusive easement and right to use
the Common Area as defined on said Condominium
Plan, except the Restricted Common Area, except-
ing that portion consisting of buildings and
other improvements,

for a term commencing on the date this instrument is recorded
in the Office of the County Recorder of Orange County,
California, and ending December 31, 2059, and for the rental
and upon all the terms and conditions contained in that
certain Condominium Sublease (the "Sublease") of even date
herewith and recorded concurrently herewith, between
Robert P. Warmington and the Condominium Owner.

II.   GRANTING CLAUSE:

    THE ROBERT P. WARMINGTON CO., a California corporation
("Grantor"), hereby grants to the Condominium Owner for a
term expiring upon expiration or an earlier termination of
the Sublease the following real property:

2

BK 13824 PG 1296

Parcel 1

Those portions of Unit 53, as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

Parcel 2

An undivided one-eightieth (1/80) interest in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

Parcel 3

An exclusive easement for the use and occupancy of those portions of Restricted Common Area as defined on the Condominium Plan for entry and staircases and attic space relating to said Unit, consisting of buildings and other improvements.

Parcel 4

Non-exclusive easement and right to use those portions of the Common Area as defined on the Condominium Plan, except Restricted Common Area, consisting of buildings and other improvements.

SUBJECT TO:

(a)   general and special taxes and assessments for the current fiscal year;

(b)   the Declaration of Restrictions recorded in Book 13618, Page 982, Official Records of Orange County, California, as amended, (the "Declaration");

3

BK 13824PG 1237

(c)  all other covenants, conditions, restric-

tions, rights, reservation of rights of way

and easements whether or not of record.

The buildings and other improvements referred to above

are the buildings and other improvements located on Lots 1

and 2 of Tract 10542, which are and shall remain real property,

as more specifically set forth in the Declaration.  The real

property demised and granted hereby which together constitute

a condominium must at all times be held by the same person

and may not be separately conveyed, assigned, transfered,

encumbered or otherwise alienated, voluntarily, involuntarily

or by operation of Law.

Dated:  ___August 1,___ , 1980.

SUBLESSOR:

Robert P. Warmington

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By _____

By _____

4

BK 13824 PG 1298

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On ___August 1___, 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public in and for
said County

[SEAL]

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On ___August 1___, 1980, before me, the undersigned, a
Notary Public in and for said State, personally appeared
___OLIVER N. CRARY___, known to me to be
the ___Vice President___, and ___WILLIAM J. PITTMAN___,
known to me to be the ___Secretary___ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public in and for said
County

[SEAL]

5

RECORDED

000185



**Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1986 |
| DocID: | 456266 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY. THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.



86-456266

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

IRELL & MANELLA
840 Newport Center Drive, Suite 500
Newport Beach, California 92660
Attention: Patrick J. Evans, Esq.

MAIL TAX STATEMENTS TO:

G/HB INVESTORS,
c/o AP Development Company
17911 Mitchell Avenue
Irvine, California 92714
Attn:  Hugh Saddington

*1444086 MT*

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INS. CO.

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

•8 15 PM   SEP 30 '86

Lee A. Branch   COUNTY RECORDER

(Space Above for Recorder's Use)

The undersigned grantor declares:
The real property conveyed hereunder
is located in the City of Huntington
Beach, County of Orange.  The
Documentary Transfer Tax is
$ 247.50  based on full value of
the real property conveyed here-
under, but not on the leasehold
conveyed hereunder, which leasehold
is for a term less than ninety-nine
(99) years.

ASSIGNMENT AND ASSUMPTION
OF
GROUND LEASES
AND
CONDOMINIUM SUBLEASES
AND
GRANT DEED

THIS ASSIGNMENT AND ASSUMPTION OF GROUND LEASES AND
CONDOMINIUM SUBLEASES AND GRANT DEED ("Assignment") is made
and entered into this 30th day of September, 1986 by and
between Robert P. Warmington, a married man, as assignor and
grantor ("Assignor") and G/HB Investors, a California limited
partnership as assignee and grantee ("Assignee").

-1-

2PE01SL

86-456266

R E C I T A L S

A.   Houser Bros. Co., a limited partnership ("Houser") is the fee owner of that certain real property (the "Houser Property") located in the City of Huntington Beach and more particularly described in Exhibit "A" attached hereto;

B.   Located on the Houser Property is a condominium project (the "Condominium Project") created by that certain Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et. seq., official Records of Orange County, California;

C.   The Condominium Plan shows and defines and there are eighty (80) condominiums (the "Condominiums") in the Condominium Project;

D.   Houser leased the Condominiums, except for the Condominium Project buildings and improvements, to Assignor under those certain Ground Leases (the "Ground Leases") dated August 1, 1980 and described in Exhibit "B" attached hereto;

E.   Assignor subleased the Condominiums, except for the Condominium Project buildings and improvements, to individual condominium tenants (the "Tenants" or a "Tenant") under those certain Condominium Subleases, (the "Subleases") dated August

-2-

2PE01SL

86-456266

1, 1980 more particularly described in Exhibit "B" attached hereto;

F.   The property leased under the Ground Leases and the Subleases is more particularly described as Parcels 1, 2, 5 and 6 of Exhibit "B" attached hereto;

G.   The Robert P. Warmington Company ("Company") owned the Condominium Project buildings and improvements and conveyed the Condominium Project buildings and improvements to the Tenants, for a term, with respect to each Tenant, ending on the expiration or earlier termination of the Tenant's Sublease, thereby retaining a remainder interest in a determinable fee estate with respect to the Condominium Project buildings and improvements (the "Remainder Interest"), which Remainder Interest is more particularly described as parcels 3 and 4 of Exhibit "B" attached hereto;

H.   Company conveyed the Remainder Interest to Assignor; and

I.   Assignor now desires to assign, transfer and convey all of his right, title and interest in and to the Ground Leases and Subleases (collectively the "Leases") and the Remainder Interest to Assignee and Assignee desires to assume all of Assignor's obligations under the Leases.

-3-

2PE01SL

86-455266

NOW, THEREFORE, for valuable consideration, receipt of which is hereby acknowledged, Assignor and Assignee agree as follows:

## A G R E E M E N T

1. **Assignment**.  Assignor hereby assigns, transfers, conveys and sets over to Assignee all of his right, title and interest in and to the Leases.

2. **Grant of Remainder Interest**.  Assignor hereby grants, assigns, transfers and sets over to Assignee all of its right, title and interest in and to the Remainder Interest.

3. **Quitclaim Grant**.  Assignor hereby remises, releases and forever quitclaims to Assignee all of his right, title and interest in and to the Houser Property, the Condominium Project, and any property or other rights defined in the Condominium Plan.

4. **Assumption**.  Assignee hereby assumes and agrees to keep and perform all of Assignor's obligations under the Leases.

2PE01SL                              -4-

86-456266

5.   Indemnification.  Assignor agrees to indemnify and hold Assignee harmless from all claims, damages, lawsuits, and liabilities which arise out of or relate to Assignor's obligations under the Leases.

6.   Effective Date.  This Assignment shall be effective on the date it is recorded.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment on the date first written above.

"ASSIGNOR"

_____
Robert P. Warmington

I am the spouse of Robert P. Warmington.  I hereby consent and agree to the terms of the foregoing Assignment.

_____
Loring P. Warmington

"ASSIGNEE"

G/HB Investors,
   a California limited partnership

By:   AP Development Company,
      a California corporation,
      general partner

   By:_____
      John E. Wertin, Chairman

-5-

DC-456266

**E X H I B I T  "A"**

**The Houser Property**

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach,
County of Orange, State of California, as shown on a map
recorded in Book 456, Pages 49 to 50 of Maps, in the office of
the County Recorder of Said County.

86-456266

E X H I B I T   "B", Page 1

The Leases, the property leased pursuant to the Leases, and the
property comprising the Remainder Interest are described as
follows:

GROUND LEASEHOLD AND SUBLEASEHOLD ESTATES  AS TO PARCELS 1  AND
2, SAID ESTATES  BEING  MORE  PARTICULARLY  DESCRIBED  AS  THE
LESSEES' INTERESTS UNDER THOSE CERTAIN GROUND LEASES SET  FORTH
IN SUB-PARAGRAPH (A)  HEREIN BELOW,  AND SUBLESSORS'  INTERESTS
UNDER THOSE CERTAIN  SUBLEASES SET FORTH  IN SUB-PARAGRAPH  (B)
BELOW;

A REMAINDER INTEREST IN A DETERMINABLE FEE ESTATE AS TO PARCELS
3 AND 4;

AN EASEMENT AS TO PARCELS 5 AND 6;

(A)   THOSE  CERTAIN  GROUND  LEASES,  DATED  AUGUST  1,  1980,
EXECUTED BY HOUSER BROS.   CO., A LIMITED PARTNERSHIP  ORGANIZED
UNDER THE LAWS OF THE STATE OF CALIFORNIA, IN WHICH CLIFFORD C.
HOUSER AND VERNON P. HOUSER CONSTITUTE THE SOLE GENERAL

(continued)



B6-456266

EXHIBIT "B" Page 2

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

PARTNERS, AS LANDLORD, AND BY ROBERT P. WARMINGTON, AS TENANT, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT |
|------|------|------|------------|
| 1 | 13754 | 263 | |
| 2 | 14091 | 1031 | |
| 3 | 14045 | 118 | |
| 4 | 13733 | 199 | |
| 5 | 13760 | 942 | |
| 6 | 13982 | 417 | |
| 7 | 13754 | 297 | |
| 8 | 13726 | 1238 | |
| 9 | 13822 | 1546 | |
| 10 | 13773 | 10 | |
| 11 | | | 82-128057 |
| 12 | 13807 | 1569 | |
| 13 | 13780 | 354 | |
| 14 | 13797 | 1088 | |
| 15 | 13780 | 462 | |
| 16 | 13726 | 1310 | |
| 17 | 13763 | 259 | |
| 18 | 13915 | 190 | |
| 19 | 13997 | 346 | |
| 20 | 13807 | 1669 | |
| 21 | 13733 | 278 | |
| 22 | 13775 | 235 | |
| 23 | 13803 | 587 | |
| 24 | 14038 | 692 | |
| 25 | 13793 | 955 | |
| 26 | 13814 | 607 | |
| 27 | 13789 | 1600 | |
| 28 | 13787 | 1834 | |
| 29 | 13778 | 173 | |
| 30 | 13896 | 1090 | |
| 31 | 14091 | 1139 | |
| 32 | 13726 | 1346 | |
| 33 | 14005 | 1903 | |
| 34 | 14048 | 1460 | |
| 35 | 13861 | 723 | |
| 36 | 13814 | 666 | |
| 37 | 13768 | 1032 | |
| 38 | 13793 | 1179 | |
| 39 | 13810 | 1665 | |
| 40 | 13783 | 875 | |

PAGE 3

Case 8:23-cv-00001-DSF   Document 13   Filed 05/23/23   Page 195 of 216   Page ID #:1876
Case 8:23-cv-00001-DSF   Document 157-1   Filed 07/18/23   Page 195 of 216   Page ID #:... Doc
Part 2   Page



86=456266

EXHIBIT "B" Page 3

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444084
AMENDMENT NO. 1

| 41 | 13824 | 1312 |
| 42 | 13867 | 798 |
| 43 | 13726 | 1102 |
| 44 | 14072 | 1910 |
| 45 | 13789 | 1547 |
| 46 | 14066 | 756 |
| 47 | 14038 | 637 |
| 48 | 13933 | 1529 |
| 49 | 13825 | 1973 |
| 50 | 13783 | 1732 |
| 51 | 13916 | 1672 |
| 52 | 14074 | 1929 |
| 53 | 13824 | 1259 |
| 54 | 13780 | 407 |
| 55 | 13780 | 514 |
| 56 | 14094 | 1874 |
| 57 | 13726 | 1208 |
| 58 | 14091 | 1084 |
| 59 | 13787 | 1781 |
| 60 | 13795 | 966 |
| 61 | 13803 | 335 |
| 62 | 13831 | 117 |
| 63 | 14258 | 1197 |
| 64 | 14191 | 1652 |
| 65 | 13726 | 1136 |
| 66 | 13765 | 1665 |
| 67 | 13803 | 640 |
| 68 | 14031 | 1108 |
| 69 | 13797 | 1038 |
| 70 | 14091 | 977 |
| 71 | 14034 | 1806 |
| 72 | 14130 | 1508 |
| 73 | 13785 | 1959 |
| 74 | 13977 | 569 |
| 75 | 14091 | 923 |
| 76 | 14064 | 1068 |
| 77 | 13726 | 1274 |
| 78 | 13726 | 1172 |
| 79 | 14091 | 869 |
| 80 | 13780 | 599 |

(B)  THOSE CERTAIN SUBLEASES DATED AUGUST 1, 1980, EXECUTED BY
ROBERT P. WARMINGTON, AS SUBLESSOR, AND BY VARIOUS PARTIES, AS
SUBLESSEES, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE
TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED
AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT | ORIGINAL |

PAGE 4



EXHIBIT "B" Page 4

B6-456266

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

SUBLESSEE

| | | |
|---|---|---|
| 1 | 13754 | 243 |
| 2 | 14091 | 1066 |
| 3 | 14045 | 133 |
| 4 | 13733 | 216 AND |
| | 13754 | 52 |
| 5 | 13760 | 917 |
| 6 | 13982 | 432 |
| 7 | 13754 | 312 |
| 8 | 13726 | 1256 AND |
| | 13754 | 69 |
| 9 | 13822 | 1561 |
| 10 | 13773 | 25 |
| 11 | | 82-128058 |
| 12 | 13807 | 1584 |
| 13 | 13780 | 369 |
| 14 | 13797 | 1103 |
| 15 | 13780 | 477 |
| 16 | 13726 | 1328 AND |
| | 13754 | 86 |
| 17 | 13763 | 234 |
| 18 | 13915 | 205 |
| 19 | 13997 | 361 |
| 20 | 13807 | 1684 |
| 21 | 13733 | 296 |
| 22 | 13775 | 250 |
| 23 | 13803 | 602 |
| 24 | 14038 | 707 |
| 25 | 13793 | 970 |
| 26 | 13814 | 622 |
| 27 | 13789 | 1615 |
| 28 | 13787 | 1849 |
| 29 | 13778 | 188 |
| 30 | 13896 | 1125 |
| 31 | 14091 | 1154 |
| 32 | 13726 | 1364 AND |
| | 13754 | 120 |
| 33 | 14005 | 1919 |
| 34 | 14048 | 1475 |
| 35 | 13861 | 738 |
| 36 | 13814 | 681 |
| 37 | 13766 | 1047 |
| 38 | 13793 | 1194 |
| 39 | 13818 | 1680 |
| 40 | 13783 | 1800 |
| 41 | 13824 | 1327 |
| 42 | 13867 | 813 |

PAGE 5



EXHIBIT "B" Page 5

B6-456266

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444084
AMENDMENT NO. 1

| | | |
|---|---|---|
| 43 | 13726 | 1120 |
| 44 | 14072 | 1925 |
| 45 | 13789 | 1562 |
| 46 | 14066 | 771 |
| 47 | 14038 | 652 |
| 48 | 13933 | 1544 |
| 49 | 13826 | 1 |
| 50 | 13783 | 1747 |
| 51 | 13916 | 1687 |
| 52 | 14094 | 1944 |
| 53 | 13824 | 1274 |
| 54 | 13780 | 422 |
| 55 | 13780 | 529 |
| 56 | 14094 | 1889 |
| 57 | 13726 | 1226 |
| 58 | 14091 | 1099 |
| 59 | 13787 | 1796 |
| 60 | 13795 | 981 |
| 61 | 13803 | 350 |
| 62 | 13831 | 132 |
| 63 | 14250 | 1212 |
| 64 | 14191 | 1667 |
| 65 | 13726 | 1154 |
| 66 | 13765 | 1660 |
| 67 | 13803 | 655 |
| 68 | 14031 | 1123 |
| 69 | 13797 | 1053 |
| 70 | 14091 | 992 |
| 71 | 14034 | 1821 |
| 72 | 14180 | 1523 |
| 73 | 13785 | 1974 |
| 74 | 13977 | 584 |
| 75 | 14091 | 938 |
| 76 | 14064 | 1083 |
| 77 | 13726 | 1292 |
| 78 | 13726 | 1190 |
| 79 | 14091 | 884 |
| 80 | 13780 | 614 |

4.   THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, CITY OF HUNTINGTON BEACH, DESCRIBED AS FOLLOWS:

PARCEL 1:

PAGE 6



EXHIBIT "B" Page 6

86=456266

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON A CONDOMINIUM PLAN (THE "CONDOMINIUM PLAN") RECORDED IN BOOK 13358, PAGES 1193 AND FOLLOWING OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 2:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 3:

THOSE PORTIONS OF UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 4:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN AND TO THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 5:

AN EASEMENT FOR THE EXCLUSIVE USE AND OCCUPANCY OF THOSE PORTIONS OF THE RESTRICTED COMMON AREA, AS DEFINED ON SAID CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNITS.

PARCEL 6:

A NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THE COMMON AREA AS DEFINED ON SAID CONDOMINIUM PLAN, EXCEPT THE RESTRICTED COMMON AREA.

PAGE 7



86-456266

STATE OF CALIFORNIA          )
                             ) SS.
COUNTY OF ORANGE             )


    On this _24th_ day of September, in the year 1986, before
me, the undersigned, a Notary Public in and for said State,
personally appeared Robert P. Warmington, personally known to
me or proved to me on the basis of satisfactory evidence) to be
the person whose name is subscribed to the within instrument,
and acknowledged to me that he executed it.

WITNESS my hand and official seal.



*Pearl L. Hunt*

STATE OF CALIFORNIA          )
                             ) SS.
COUNTY OF ORANGE             )


    On this _24th_ day of September, in the year 1986, before
me, the undersigned, a Notary Public in and for said State,
personally appeared Loring P. Warmington, personally known to
me or proved to me on the basis of satisfactory evidence) to be
the person whose name is subscribed to the within instrument,
and acknowledged to me that she executed it.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC — CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires March 30, 1987

*Pearl L. Hunt*

2PE01SL

B62456266

STATE OF CALIFORNIA        )
                          ) ss.
COUNTY OF ORANGE           )

   On September 23, 1986, before me, the undersigned, a
Notary Public in and for said State, personally appeared John
E. Wertin, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person who executed the
within instrument as the Chairman on behalf of AP Development
Company, the corporation therein named, and acknowledged to me
that said corporation executed the within instrument pursuant
to its bylaws or a resolution of its board of directors, said
corporation being known to me to be the general partner of G/HB
Investors, the limited partnership that executed the within
instrument, and acknowledged to me that such corporation
executed the same as such partner and that such partnership
executed the same.

WITNESS my hand and official seal.



OFFICIAL SEAL
SHIRLEY A. GERBASI
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Exp. Apr. 23, 1990

2PE01SL

000200

**PREPARED BY AND
RECORDING REQUESTED BY:**
Mical Mortgage, Inc.

**and when recorded  MAIL to:**
**MICAL MORTGAGE, INC.**
**PO BOX 81427**
**San Diego, CA 92138-9891**
LN #928362

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder
6.00
19980020299 11:26am 01/14/98
005 28006503 28 49
A32 1 6.00 0.00 0.00 0.00 0.00 0.00

space above this line for recorder's use

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED,  the undersigned hereby grants, assigns and transfers to
**COUNTRYWIDE HOME LOANS, INC., and/or its assigns**
**155 NO. LAKE AVE., PASADENA, CA 91101**

all beneficial interest under that certain Deed of Trust dated     NOVEMBER 20,     1997
executed by  TERRI K. LAMBERTH, AN UNMARRIED WOMAN

Trustor(s);

to  UNITED TITLE COMPANY,
A CALIFORNIA CORPORATION                                    Trustee;
and recorded as Instrument No. 97-610303 on NOV. 26,     1997 in Book        Page
of Official Records in the County Recorder's office of     ORANGE          County, State of
**CALIFORNIA** , **describing land therein as per recorded Deed of Trust referred to herein.**

TOGETHER with the note or notes therein described  or referred to, the money due and to become thereon with
interest, and all rights accrued under said Deed of Trust.
DATED this 11 **day of**   DEC.     1997

**MICAL MORTGAGE INC.**
**A CALIFORNIA CORPORATION**

**ELIZABETH BORGMEIER, VICE PRESIDENT**

(ACKNOWLEDGMENT FOR CORPORATION)
STATE OF **CALIFORNIA**          County  of **San Diego**
On this  11   **day of**     DEC.     1997 , before me,  **FRAN KIMBER,** Notary Public, personally
appeared  **ELIZABETH BORGMEIER**,  personally known to me to be the person whose name is subscribed to
the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by
her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the
instrument.
WITNESS my hand and official seal

**FRAN KIMBER**   (com. exp. 2 Oct. 1999)

FRAN KIMBER
COMM. #1072157
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
OCTOBER 2, 1969



**Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644004 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

SMITH, SILBAR, PARKER
& WOFFINDEN, LLP
19100 Von Karman
Suite 400
IRVINE CA 92612
Attn: LISA SILBAR

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

9820299-AS

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder



12.00

19980644004 4:03pm 09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California

## Bill Jones

### Secretary of State

SACRAMENTO

I, BILL JONES, Secretary of State of California, hereby certify:

That the annexed transcript of _____|_____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California

AUG 26 1998

*Bill Jones*

Secretary of State

SEC STATE FORM LP 222A  (Rev. 8/96)



# State of California
## Secretary of State

Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read Instructions on back before completing this form.**
This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) | 2. NAME OF LIMITED PARTNERSHIP |
|---|---|
| 8622400032 | G/HB Investors, a California limited partnership |

1. THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUB-SECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY.

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE: | E. GENERAL PARTNER NAME CHANGE |
|---|---|
| ADDRESS: | OLD NAME: |
| CITY:        STATE:        ZIP CODE: | NEW NAME: |

| C. CALIFORNIA OFFICE ADDRESS CHANGE: | F. GENERAL PARTNER(S) WITHDRAWN: |
|---|---|
| ADDRESS: | NAME: Barbara D. Wertin Separate Property Trust Established pursuant to Trust Instrument |
| CITY:        STATE: CA        ZIP CODE: | NAME: dated April 21, 1995 |

| D. GENERAL PARTNER ADDRESS CHANGE: | G. GENERAL PARTNER ADDED: |
|---|---|
| NAME: | NAME: LPL Asset Management Corporation, a California corporation |
| ADDRESS: | ADDRESS: 19100 Von Karman Avenue, Suite 370 |
| CITY:        STATE:        ZIP CODE: | Irvine        CA        92612 CITY:        STATE:        ZIP CODE: |

| H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP: | I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO: |
|---|---|
| NAME: | NAME: |
| ADDRESS: | ADDRESS: |
| CITY:        STATE:        ZIP CODE: | CITY:        STATE:        ZIP CODE: |

| J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO: ☐ (PLEASE INDICATE NUMBER ONLY) | K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S). NUMBER OF PAGES ATTACHED: ☐ |
|---|---|

L. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

*Barbara D Wertin*
SIGNATURE Barbara D. Wertin as
Trustee of the Barbara D. Wertin
Separate Property Trust
Established pursuant to Trust
Instrument dated April 21, 1995

                                    8/12/98
POSITION OR TITLE                   DATE

LPL Asset Management Corporation
a California Corporation
By:
   Hugh M. Saddington        8/12/98
POSITION OR TITLE  President        DATE

SIGNATURE

POSITION OR TITLE        DATE

THIS SPACE FOR FILING OFFICER USE

86 22 400 032

**FILED**
In the office of the Secretary of State
of the State of California

AUG 18 1998

*Bill Jones*
BILL JONES, Secretary of State

2. RETURN ACKNOWLEDGEMENT TO:

NAME    SMITH, SILBAR, PARKER & WOFFINDEN, LLP
ADDRESS  19100 Von Karman Avenue, Suite 400
CITY    Irvine, California 92612
STATE
ZIP CODE

SEC/STATE REV. 1/96

FORM LP-2 – FILING FEE: $30.00
Approved by Secretary of State

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

FORM; PARTNERSHIP; FORM

PLACE OF EXECUTION:  SANTA ANA, CA

DATED:  September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY: _____



**my FirstAm®**    **Recorded Document**

---

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644005 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

---

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

SMITH, SILBAR, PARKER
& WOFFINDEN, LLP
19100 Von Karman
Suite 400
Irvine CA 92612
Attn: Lisa Silber

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

9820299-AS

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

12.00

19980644005  4:03pm 09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California

## Bill Jones

### Secretary of State
SACRAMENTO



I, BILL JONES, Secretary of State of California, hereby certify:

That the annexed transcript of _____|_____ page(s) was prepared by
and in this office from the record on file, of which it purports to be a copy,
and that it is full, true and correct.

IN WITNESS WHEREOF, I execute
this certificate and affix the Great
Seal of the State of California

AUG 2 6 1998

*Bill Jones*

Secretary of State



SEC STATE FORM LP 222A  (Rev. 8/96)



# State of California
## Secretary of State

Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read instructions on back before completing this form.**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) 8622400032 | 2. NAME OF LIMITED PARTNERSHIP G/HB Investors, a California limited partnership |
|---|---|

3. THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUB-SECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY.

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| | |
|---|---|
| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE: <br> ADDRESS: <br> CITY:   STATE:   ZIP CODE: | E. GENERAL PARTNER NAME CHANGE <br> OLD NAME: <br> NEW NAME: |
| C. CALIFORNIA OFFICE ADDRESS CHANGE: <br> ADDRESS: <br> CITY:   STATE: **CA**   ZIP CODE: | F. GENERAL PARTNER(S) WITHDRAWN: <br> NAME: Barbara Wertin <br> NAME: |
| D. GENERAL PARTNER ADDRESS CHANGE: <br> NAME: <br> ADDRESS: <br> CITY:   STATE:   ZIP CODE: | G. GENERAL PARTNER ADDED: Barbara D. Wertin Separate <br> NAME: Property Trust Established Pursuant to Trust Instrument dated April 21, 1995 <br> ADDRESS: 1048 Irvine Avenue, Suite 485 <br> CITY: Irvine   STATE: CA   ZIP CODE: 92660 |
| H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP: <br> NAME: <br> ADDRESS: <br> CITY:   STATE:   ZIP CODE: | I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO: <br> NAME: <br> ADDRESS: <br> CITY:   STATE:   ZIP CODE: |
| J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO: <br> ☐ (PLEASE INDICATE NUMBER ONLY) | K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S). <br> NUMBER OF PAGES ATTACHED: ☐ |

L. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

| | |
|---|---|
| _Barbara Wertin_ <br> SIGNATURE <br> Barbara Wertin   4/21/95 <br> POSITION OR TITLE   DATE <br><br> SIGNATURE <br> POSITION OR TITLE   DATE | _Barbara D. Wertin_ <br> SIGNATURE Barbara D. Wertin Trustee <br> of the Barbara D. Wertin Separate <br> POSITION OR TITLE   DATE <br> Property Trust Established <br> Pursuant to Trust Instrument dated <br> SIGNATURE   April 21, 1995 <br> POSITION OR TITLE   DATE <br> 4/21/95 |

THIS SPACE FOR FILING OFFICER USE

86 22400032

**FILED**
In the office of the Secretary of State
of the State of California

AUG 18 1998

_Bill Jones_

BILL JONES, Secretary of State

3. RETURN ACKNOWLEDGEMENT TO:

| | |
|---|---|
| NAME <br> ADDRESS <br> CITY <br> STATE <br> ZIP CODE | SMITH, SILBAR, PARKER & WOFFINDEN, LLP <br> 19100 Von Karman Avenue, Suite 400 <br> Irvine, California 92612 |

SEC/STATE REV. 1/96     FORM LP-2 – FILING FEE: $30.00     Approved by Secretary of State

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

PARTNERSHIP; COMPLETING THIS FORM; CODE.

PLACE OF EXECUTION:  SANTA ANA, CA

DATED:  September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY: _____



**myFirstAm®**   **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644006 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION OF THE CONDITION OF TITLE TO REAL PROPERTY. IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY. THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON. THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S PRIOR WRITTEN CONSENT. FIRST AMERICAN DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS. AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT. RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Smith, Silbar, Parker
& Woffinden, LLP
19100 Von Karman
Suite 400
Irvine CA 92612
Attn: Lisa Silbar

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

9820299-AS

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

**12.00**

19980644006  4:03pm 09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE



# State of California

## Bill Jones

### Secretary of State

SACRAMENTO

*I, BILL JONES, Secretary of State of California, hereby certify:*

*That the annexed transcript of _____|_____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.*

*IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California*

AUG 2 6 1998

*Bill Jones*

Secretary of State



SEC STATE FORM LP 222A  (Rev. 8/96)



# State of California
## Secretary of State

OFFICE OF THE
Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read instructions on back before completing this form**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) 8622400032 | 2. NAME OF LIMITED PARTNERSHIP G/HB Investors, a California limited partnership |
|---|---|

3. THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUBSECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY.
   A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE:<br><br>ADDRESS:<br><br>CITY:         STATE:         ZIP CODE: | E. GENERAL PARTNER NAME CHANGE:<br><br>OLD NAME:<br><br>NEW NAME: |
|---|---|
| C. CALIFORNIA OFFICE ADDRESS CHANGE:<br><br>ADDRESS:<br><br>CITY:         STATE: CA        ZIP CODE: | F. GENERAL PARTNER(S) WITHDRAWN:<br>NAME: J and B Wertin Revocable Trust Established<br>NAME: pursuant to Trust Instrument dated<br>NAME: October 30, 1989 |
| D. GENERAL PARTNER ADDRESS CHANGE:<br><br>NAME:<br><br>ADDRESS:<br><br>CITY:         STATE:         ZIP CODE: | G. GENERAL PARTNER ADDED:<br>NAME:  Barbara Wertin<br>ADDRESS: 1048 Irvine Avenue, Suite 485<br>CITY:  Newport Beach STATE: CA  ZIP CODE: 92660 |
| H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP:<br><br>NAME:<br><br>ADDRESS:<br><br>CITY:         STATE:         ZIP CODE: | I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:<br><br>NAME:<br><br>ADDRESS:<br><br>CITY:         STATE:         ZIP CODE: |
| J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO:<br><br>(PLEASE INDICATE NUMBER ONLY) | K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).<br><br>NUMBER OF PAGES ATTACHED: |

4. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

SIGNATURE John E. Wertin Trustee
of the J and B Wertin Revocable
POSITION OR TITLE             DATE
Trust Established pursuant to
Trust Instrument dated
SIGNATURE October 30, 1989
POSITION OR TITLE        6/28/93   DATE

SIGNATURE Barbara Wertin
Barbara Wertin        6/28/93
POSITION OR TITLE             DATE

SIGNATURE
POSITION OR TITLE             DATE

THIS SPACE FOR FILING OFFICER USE

8622400032

**FILED**
In the office of the Secretary of State
of the State of California

**AUG 1 8 1998**

BILL JONES, Secretary of State

5. RETURN ACKNOWLEDGEMENT TO:

NAME  SMITH, SILBAR, PARKER & WOFFINDEN, LLP
ADDRESS  19100 Von Karman Avenue, Suite 400
CITY  Irvine, California 92612
STATE
ZIP CODE

SEC/STATE REV. 1/96        FORM LP-2 — FILING FEE: $30.00
                          Approved by Secretary of State

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

PARTNERSHIP; COMPLETING THIS FORM; CODE.

PLACE OF EXECUTION:  SANTA ANA, CA

DATED:  September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY: _____



**Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644007 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE.  FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

---

**Recorded Document**                                                                 **10/04/2021**

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

SMITH, SILBAR, PARKER
& WOFFINDEN, LLP
19100 Von Karman
Suite 400
IRVINE, CA 92612
Attn: LISA SILBAR

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

9820299-AJ

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

12.00

19980644007 4:03pm 09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California

## Bill Jones

### Secretary of State

SACRAMENTO



I, BILL JONES, Secretary of State of California, hereby certify:

That the annexed transcript of _____|_____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.

IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California

AUG 2 6 1998

Bill Jones

Secretary of State



SEC STATE FORM LP 222A (Rev. 8/96)



## State of California
### Secretary of State

Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read instructions on back before completing this form.**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) 8622400032 | 2. NAME OF LIMITED PARTNERSHIP G/HB Investors, a California limited partnership |
|---|---|

THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUBSECTION(S) CONTINUE ON SECOND PAGE IF NECESSARY.

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE:
ADDRESS:
CITY:        STATE:        ZIP CODE:

E. GENERAL PARTNER NAME CHANGE
OLD NAME:
NEW NAME:

C. CALIFORNIA OFFICE ADDRESS CHANGE:
ADDRESS:
CITY:        STATE: CA        ZIP CODE:

F. GENERAL PARTNER(S) WITHDRAWN:
NAME: M.V. Villas Associates, a California
NAME: limited partnership

D. GENERAL PARTNER ADDRESS CHANGE:
NAME:
ADDRESS:
CITY:        STATE:        ZIP CODE:

G. GENERAL PARTNER ADDED:
NAME: J and B Wertin Revocable Trust Established
ADDRESS: pursuant to Trust Instrument dated 10/30/8
1048 Irvine Avenue, Suite 485
CITY: Newport Beach STATE: CA ZIP CODE: 92660

H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP:
NAME:
ADDRESS:
CITY:        STATE:        ZIP CODE:

I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:
NAME:
ADDRESS:
CITY:        STATE:        ZIP CODE:

J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO:
(PLEASE INDICATE NUMBER ONLY)

K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).
NUMBER OF PAGES ATTACHED:

L. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

M.V. Villas Associates, a California limited partnership
SIGNATURE
By: M.V. Villas, Inc., a California corporation
POSITION OR TITLE        DATE
By:
SIGNATURE John E. Wertin
President        6/28/93
POSITION OR TITLE        DATE

SIGNATURE John E. Wertin Trustee
of the J and B Wertin Revocable
Trust,
POSITION OR TITLE        DATE
Established pursuant to
Trust Instrument Dated 10/30/89
SIGNATURE
POSITION OR TITLE        6/28/93
DATE

THIS SPACE FOR FILING OFFICER USE
8622400032

**FILED**
In the office of the Secretary of State
of the State of California

AUG 1 8 1998

BILL JONES, Secretary of State

RETURN ACKNOWLEDGEMENT TO:
NAME: SMITH, SILBAR, PARKER & WOFFINDEN, LLP
ADDRESS: 19100 Von Karman Avenue, Suite 400
CITY: Irvine, California 92612
STATE:
ZIP CODE:

SEC/STATE REV. 1/96        FORM LP-2 – FILING FEE: $30.00
Approved by Secretary of State