**EXHIBIT 1**

1    JAMIE LYNN GALLIAN
2    16222 Monterey Lane Unit 376
    Huntington Beach, CA 92649
    (714) 321-3449
3    jamiegallian@gmail.com

4    In PRO PER

5

6               **UNITED STATES BANKRUPTCY COURT**

7        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

8                        Case No. 8:21-bk-11710-ES

9                        Chapter 7

10

11    In re:                   **DEBTORS NOTICE OF AND MOTION FOR RECONSIDERATION OF 7.21.22**

12    JAMIE LYNN GALLIAN,      **ORDER SUSTAINING  HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE**

13                        **HOME ESTATES OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD**

14          Debtor.         **EXEMPTION AND JOINDER PARTIES HUNTINGTON**

15                        **BEACH GABLES HOA; JANINE JASSO.**

16

17                        Hearing Date: August 18, 2022
                          Time:       10:30 a.m.

18                        Courtroom:    5A

19

20      TO THE HONORABLE ERITHE A. SMITH, ALL PARTIES AND TO THEIR

21    ATTORNEY'S OF RECORD: Please take notice of Debtors Motion for Reconsideration

22    Debtor respectfully requests reconsideration of the Courts Order July 21, 2022 sustaining

23    Houser Bros Co objection to Debtors Claimed Homestead with

24    additionalJoinder's The Huntington Beach Gables Homeowners Association and Janine B. Jasso,

25    Esq.

26    The purpose of bankruptcy is to give debtors a fresh start by shedding debts that they owed but

27    cannot pay.  Part of the fresh start includes lien avoidance on exempt assets. *See Richardson*,

28    **224 B.R. at 808.**  Debtor wants to maximize the amount of property she gets to keep to avoid

     any creditor collection efforts, especially efforts to collect their personal residence.

California law is instructive regarding property interests that debtors may possess at filing which are included in the bankruptcy estate as defined in § 541 of the Bankruptcy Code. To avoid a lien, it must impair an interest a debtor has in an exempt asset. Cited California law and cases affirm that a homestead right is an interest in real property. *See* California Const., Art. 12, §§ 1 & 2.

As the U.S. Supreme Court defines it, property of the estate consists of "all the interests in property, legal and equitable, possessed by the debtor at the time of filing ..." *Owen v. Owen,* 500 U.S. 305, 308 (1991).  This definition is extremely broad.

Debtor has continuously lived in her personal residence Unit376, in Huntington Beach, CA Par2,TR 10542, Lot 1 & Lot 2, Unit 1, 2, 3, 4, the location of 459 Manufactured Home units, first in Unit 53, currently Unit 376 respectively.

There are two subject residence(s) debtor makes request to this Honorable Court to take Judicial Notice of:

**1.   4476 Alderport Drive, Unit 53 Huntington Beach, Ca 92649 A.P.N. 937-630-53.**

Debtor was the tenant from November 23, 2009 through March 22, 2017; Debtor was gifted the property from her step-mother and debtor's predecessor Sandra L. Bradley on March 23, 2017, Instrument No, 2017-0116715.  On October 31, 2018, debtor sold Unit 53 to Randall Nickel, a bona fide purchaser for value of $379,000.00.  A.P.N. 937-630-53. On November 1, 2018, debtor purchased Unit 376 with the reinvested proceeds from the sale of Unit 53, under the same Unexpired 80 year Leasehold burdening Parcel 1 & Parcel 2, APN 178-011-16, Tract 10542, Unit 1, 2, 3, 4

**Statement of Financial Affairs, DOC 1, Part 7, No. 18,  page(s) 46-60,**

Debtor disclosed the sale of her previous residence, Unit 53 in her Chapter 7 petition filed July 9, 2021.  Subsequently, debtor read the petition question more closely and the

2

question asks "Within the last 2 years before you filed for bankruptcy, did you sell, trade or

otherwise transfer any property to anyone, other than property transferred in the ordinary

course of your business or financial affairs?"  Debtor disclosed No. 18, Previous residence

sold on 10/31/2018, 4476 Alderport Dr. #53, ….Paid in exchange amount as

$379,000.00. Debtor Purchased Unit 376 on November 1, 2018 with reinvested funds from

sale of Unit 53 under the same unexpired 80 year Ground Leasehold recorded Orange

County Clerk Recorder, against Parcel 2, Tract 10542 APN 178-011-16, Instru. No 32442

and 32443, December 5, 1979. **EXHIBIT ___**

**2.      16222 Monterey Ln, Unit 376, is Debtor's Primary residence November 1, 2018**

**to the present day.  Debtor has continuously resided in her home since Nov. 2018.**

Petitioner, Houser Bros Co. and the two joinders, Huntington Beach Gables

Homeowners Association; Janine Jasso, Esq. make no allegations that debtor has lived

anywhere else or claimed any other property as her homestead exemption from sale date of

Unit 53 on October 31, 2018, and the purchase of Unit 376 November 1, 2018, to the present

day.  Debtor designated and occupied the property as her homestead. *See* 4 Collier on

Bankruptcy P 522.10 (16th 2020).  As previously stated, the only requirement for claiming a

homestead exemption under CCP §541 homestead

claimed be "principal residence of such person."on the date of filing,

Record title to the homestead is not re- quired at all times to claim a homestead exemption

 in her primary residence and property.

Debtors' Chapter 7 Petition and Schedules July 9, 2021, DOC 1, Schedule A/B

required debtor to "list any ownership interest or legal or equitable interest in any residence,

building, land, or similar property."  Debtor answered "Yes" on Schedule A/B, DOC 1, page

12 of 60, to indicate and disclose that she owned a legal or equitable interest in the Residence

located at 16222 MontereyLane, Unit 376, with a $235,000.00 value, Fee simple.

"Personal Residence of Debtor since 11/1/2018, 2014 Skyline Custom Villa Manufactured

Home Decal No. LBM1081.   Debtor disclosed under penalty of perjury on July 9, 2021, "J

-Sandcastle Co LLC executed Release of Title, signed and notarized by Jamie Lynn

Gallian, its Member, on February 25, 2021. Debtor inquired with and disclosed to the

Trustee's Assistant Lor Werner the contents of a August 11, 2021 she received further asking

about how to amend a bankruptcy petition if leave was needed.  Debtor was told she could file

as many amendments to correct until the Trustee concluded the last 341 meeting. On August 18,

2021, first 341 Meeting of Creditors, debtor was asked whether her Chapter 7

schedules were correct under penalty of perjury.  Debtor explained **"No the schedules were**

**not correct and an amendment was forthcoming,** to Jeffrey Golden, the Trustee and the

Creditors Huntington Beach Gables, Janine Jasso, and Houser Bros Co. Debtor described

receipt of an email on August 11, 2021 at 3:54p.m, from Sarina Ramirez, Riverside

Housing and Community Development 3737 Main Street Suite 400, Riverside, Ca 92501,

Program Technician, Registration and Titling, with a copy of August 11, 2021 Title Search Doc

printed by Housing and Community Development reflecting HCD processed Jamie Lynn

Gallian as the registered owner of the 2014 Skyline Manufactured Home LBM1081

effective change updated in HCD records on  2/25/21. On  11/16/18 Gallian surrendered

COT registered the home J-Sandcastle Co. HCD processed January 19, 2019. The Housing and

Community Development. Government Offices closure during Covid 19 pandemic including

the closure of the local HCD Riverside Offices, Gallian was unable to submit any Release of

Certificate of Title changes until  February 25, 2021 NOTICEOF SALE OR TRANSFER.

 After the 3-year Pinon Drive lease was amicably terminated by Landlord Henry Newton

Dec 2019, Jamie Gallian lived in Unit 376 continuously under an unexpired 80 leasehold

and tendered rent every month to Houser Bros Park Office.   Gallian did not have to rent

4

1   the 2014 home to a third party for income until she was out from under the 3 yr lease,  It

2   terminated successfully by the parties.

3   Debtor disclosed  1/14/2019, UCC-1 Manufatured Home Transaction

4   and UCC-AD filed on 1/14/2019, File No. 19-7691916827, after debtor realized she listed

5

6   herself as the Debtor on File No. 19-7691905279.  Debtor further disclosed she filed with

7   H CD a Statement to Encumber in favor of Ron  Pierpont, J-Pad, LLC, (debtors  ex-husband

8   since  2015),  for funds  Ms.  Pierpont advanced Debtor for an unrelated expense and was

9   reimbursed.

10

11          Concealment of assets by a bankrupt is a fraud upon her creditors,    can only be established

12   by clear and convincing proof. There is no proof of any literal transfer or concealment of any

13   property; no falsification of any financial statement to secure credit; there is no scheme to execute

14   any such intent.

15          In this case, the petitioners "proof" consists solely of a date HCD reflected  on a

16   Registration  Card  or  the date a Certificate  of  Title  was printed by  the  Sacramento  Office  of

17   Housing  and  Community Development mailed to the applicable parties.

18

19   Moving party's own documents establish that ownership of Unit 376 was released by J-Sandcastle

20   Co LLC, signed and notarized by its Member Jamie Lynn Gallian on February 25, 2021.   To the

21   extent petitioners are arguing that HCD's Certificate of Title Documents and/or the print date on a

22   Registration Card Document are conclusive evidence on this issue, then why aren't they stuck with

23    the conclusion that HCD's transfer date is binding as well.

24          Additionally, petitioner's failed to cite any legal authority in the motion that ownership does

25    not change until HCD processes after opening thousands of envelopes sent to various HCD locations

26

27    hroughout California;  processes  the  enclosed  documents,  and  then  and  only  then  when  the

28    documents  are received in Sacramento, (Sacramento is the only location that prints Certificate of

   Title Documents) changes to Certificate of Title and Registration Cards are sent through US Mail.

<div align="center">5</div>

1        Individuals can own things of a personal nature as in the case at bar,

2   such as cars, boats, planes, manufactured homes, without the Certificate of Title reflecting their

3   name at all times. This is a very fact specific situation  The important fact that

4   petitioners are missing is "Possession of the Certificate of Title and Section "B" on the back side

5   Certificate of Title indicates by a Releasing Signature of J-Sandcastle Co,

6   Registered Owner, and the Date of  Release back to Jamie Lynn Gallian after Government

7   Offices slowly reopened and HCD resumed processing Certificate of Title changes one again.

8        Whether or not such proof is sufficient to require a forfeiture of the bankrupt's right to make

9   her own selection of her exemptions depends upon her ability reasonably to explain

10   HCDs processing of claims during a global pandemic,

11    If her explanation is reasonable and exonerates her from fraud, no restriction

12   on her right to select her exemptions may be imposed.

13   Federal law provides no authority for bankruptcy courts to deny an exemption on a ground

14   not specified in the Bankruptcy Code, abrogating *Latman v. Burdette*, 366 F.3d 774, *In re Yonikus*

15   , 996 F.2d 866, *In re Doan*, 672 F.2d 831, and *Stewart v. Ganey*, 116 F.2d 1010.

16        The uncontradicted proof establishes the following facts: The Debtor sold unencumbered real

17   property with a Homestead Exemption noted on the 2018-2019 Secured Tax Assessors Roll of the

18   A.P.N. 937-630-53, commonly described as 4476 Alderport Drive, Unit 53, Huntington Beach, CA

19   92649, on October 31, 2018, as disclosed on DOC 1.  Debtor moved from the Alderport Drive

20   home on or about September 11, 2018, to Pinon Drive under a 3 year lease agreement, with

21   Landlord Henry Newton. after she was battered by a HOA Board Members husband criminally

22   charged in June 2019 19WM09951 She moved out of the home she lived in since 2009 out of fear.

23   Debtor listed Unit 53 4476 Alderport for sale.  The first buyers the Ginestras cancelled the day

24   after the September 11, 2018, 3-year Pinon Drive Lease was entered into by debtor  and Henry Newton.

25   Debtor received her July 2018 escrow check deposited with Five Star for Unit 108. The  deposit check efund

26   was processed by Express Escrow through the resident agent Thanya Hanson of 5 STARES.

r

6

1   after Debtors home on Alderport fell out of escrow. The seller of Rancho Del Rey, Unit 108,

2   would not accept debtors contingency offer, and backed out of the deal to sell Unit 108 in Rancho

3   Del REy Mobilehome Estates to debtor.    Gallian signed a 3-year lease with Henry Newton

4   , paid over $6000 in deposit fees  and resigned herself that she, until  Alderport property, sold, she could

5   not afford and did not qualify to secure financing without a significant down payment. Housing

6   prices were beginning to rise in Orange County as well a rents.

7

8         On or about October 28 or 29, 2018, debtor dropped the price on the Alderport home listed

9   for sale on Zillow.com. The very next morning debtor received a message through Zillow with a

10  phone number that an interested person would like to view the Alderport property.

11  Rules & Regulations, all disclosures and were provided to the potential purchaser of Unit 53

12  Debtor sent the HOA management company, Elite Management, by overnight mail about a week

13  earlier, a "Demand Letter" with a request for HOA Minutes, Financial Disclosures, 12 Months of

14  Board Meeting Minutes, Copy of Insurance Disclosure, Unit 53 Monthly Dues Statement, etc.  Ga

15  bles HOA refused to cooperate and provide any demand.  Debtor met with the buyer Randall

16  Nickel and sold the property unencumbered.  The Assignment was recorded with the Orange

17  County Clerk Recorder, County of Orange on October 31, 2018 and the Assessors Office was

18  notified of the new buyer.

19  There were no encumbrances

20  on Unit 53 4476 Alderport Drive. 937-63-053.

21  Debtor paid all HOA monthly fees to Gables HOA management company.

7

000014

1  HOUSER BROS AND THEIR ATTORNEY CAME INTO THIS COURT WITH

2  UNCLEAN HANDS WITH A FALSE DOCUMENT FROM THE INTERNET AND

3  PASSED IT AS TRUTH.  GALLIAN PROPERLY CLAIMED HER HOMESTEAD

4  EXEMPTION AND IS RECORDED AT THE CO OF ORANGE TAX ASSESSOR. It

5  is quite clear why Houser Bros Co has refused to countersign a sub-condominmiun

6  leasehold with Gallian under the existing unexpired 80 year LandLeasehold with

7  Robert P. Warmington, Co assigned to BS Investors and the Barry Brief Trust in

8  1986.

9       Houser Bros Co has a Unlawful Detainer Action pending since 1/2/2019

10      OCSC 30-2019-01041423 filed while a protective order was in place.

11   Houser Bros Co v Jamie Gallian. Houser did not bring the 1/2/19 Unlawful Detainer

12  action in the name of the alleged owner of the home J-Sandcastle Co LLC. Houser

13  Bros Co whole argument in this objection is based upon Houser Bros Co claims the

14  "REAL OWNER" of the 2014 manufactured home is J-Sandcastle Co in this

15  convoluted motion brought by Interested Party Houser Bros. designed to throw as

16  much mud against the wall and see if the courts buys in.  Houser Bros has not named

17  J-Sandcastle Co in their Adversary Complaint 8:21-ap-01097, filed on October 18,

18  2021 in this Chapter 7. Houser Bros Co does not even admit that the 11/2018

19  Residency Application  was submitted by J-Sandcastle Co.  The 5 Day Demand Letter

20  to Surrender the "ground" under a 1600 sq. ft home was served on Jamie Gallian, not

21  J-Sandcasle Co the alleged homeowners claimed throughout this entire objection.

22  Subsequently, it is Houser Bros who suddenly ran out of excuses why they refuse to

23  enter into a lease agreement with the Gallian for almost 5 years in violation of CCP

24  §§798.74,

25

26

27

28

# TABLE OF AUTHORITIES

CASES

*In re Bassin*, 637 F.2d 668, 670 (9th Cir. 1980)……………………………………………

*In re Carter*, 182 F.3d 1027, 1029 n. 3 (9th Cir.1999)…………………………………

*In re Diaz*, 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016)…………………………………

*In re Greene*, 583F.3d 614, 618 (9th Cir. 2009)………………………………………

In re Kelley, 300 B.R. 11, 16 (9th Cir. B.A.P. 2003)……………………………………..

*In re Pass*, 553 B.R. 749, 757 (B.A.P. 9th Cir. 2016)…………………………………

*In re Sewell,* 180 F.3d 707, 710 (5th Cir. 1999)…………………………………………..

*Gravel, Shea & Wright, Ltd. v. Bank of New England (In re New England Carpet Co.),*
744 F.2d 16, 17 (2d Cir. 1984)………………………………………………………...

*Haskins v. Certified Escrow & Mortg. Co.*, (1950) 96 Cal. App. 2d 688, 691…………..

*Kono v. Meeker,* 196 Cal. App. 4th 81, 86 (2011)………………………………………..

*Matter of Southmark Corp.*, 62 F.3d 104, 106 (5th Cir. 1995)…………………………..

*Mehrtash v. Mehrtash* (2001) 93 CA4th 75, 81, 112 CR2d 802, 806……………………

*Nadel v. Mayer* (*In re Mayer*), 167 B.R. 186 (9th Cir.BAP1994)………………………

*Oppenheim v. Goodley* (1957) 148 Cal.App.2d 325, 328)……………………………….

*Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 20–21 (2000)………………………...

*Tassone v. Tovar* (1994) 28 Cal.App.4th 765, 768 ……………………………………..

*United States ex rel Farmers Home Admin. v. Arnold & Baker Farms,*

177 B.R. 648, 654 (9th Cir. BAP 1994)……………………………………………….

*United Savs. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365 (1988)……………

9

11 U.S.C. § 522(p) ............................................................................................ 15, 16

11 U.S.C. § 522(p)(1). ........................................................................................ 15

11 U.S.C. § 704.730 ........................................................................................... 16

11 U.S.C. § 704.740(a) ..................................................................................... . 10

11 U.S.C. § 704.740(b) ......................................................................................10

Cal. Code Civ. P. § 703.130............................................................................... 16

Cal. Code Civ. P. § 704.710(c) ......................................................................... 11

Cal. Code Civ. P. § 704.720(a) ......................................................................... 10

Cal. Code Civ. Proc. § 704.710(a)(2) ............................................................... 11

CCP § 704.210.…………………………………………………………………

CCP § 704.730 ........................................................................................9, 11 15

CCP § 704.780(a).............................................................................................12

CCP § 704.780(a)(1) ........................................................................................ 11

CCP §§ 704.710-704.850 ................................................................................ 9

CCP §§ 704.910-704.995 ................................................................................ 9

CCP 704.730(a) ............................................................................................... 10

STATEMENTS

**<u>11 U.S.C. § 522(P)(2)(B)</u>** ...........................................................................  9

**11 U.S.C. § 541**

11 U.S.C. § 522(b) ............................................................................................ 3, 9

11 U.S.C. § 522(b)(1).………………………………………………………..

11 U.S.C. § 522(b)(3)(A) .................................................................................. 15

11 U.S.C. § 522(c) ............................................................................................ 3, 9

11 U.S.C. § 522(g) .............................................................................................3

11 U.S.C. § 522(o) ............................................................................. 15, 16

11 U.S.C. § 522(o)(1-4). ...........................................................................15

11 U.S.C. § 704.730 ............................................................................. 16

11 U.S.C. § 704.740(a) ........................................................................... 10

11 U.S.C. § 704.740(b) ........................................................................... 10

Cal. Code Civ. P. § 703.130............................................................... 16

CCP §§ 703.580(b)…………………………………………………..

Cal. Code Civ. P. § 704.710(c) ........................................................ 11

Cal. Code Civ. P. § 704.720(a) ........................................................ 10

Cal. Code Civ. Proc. § 704.710(a)(2) .................................................11

CCP § 704.730 ................................................................... 9, 11, 15

CCP § 704.780(a)................................................................................ 12

CCP § 704.780(a)(1) .......................................................................... 11

CCP §§ 704.710-704.850 ................................................................. 9

CCP §§ 704.910-704.995 ................................................................. 9

CCP 704.730(a) .................................................................................. 10

## **OTHER AUTHORITIES**

FED.RULE OF EVIDENCE R. 301………………………………………….

4 COLLIER ON BANKRUPTCY P 522.10 (16th 2020)

PRELAWSUIT CONSIDERATIONS, Cal. Prac. Guide Enf. J. & Debt
(Rutter Group 2020) Ch. 3-C, 3:318.1………………………………….

REQUIEMENT OF INJURY TO CREDITOR 8 Witkin, Cal. Proc. 5th
Enf Judgm § 497 (2020)……………………………………………………...

16A Cal. Jur. 3d CREDITORS RIGHTS AND REMEDIES § 406…………………………

11

000018

1

2   <u>RULES</u>

3   Rule 1009………………………………………………………………………12

4   Rule 4003(c)………………………………………………………………………12

5   <u>STANDARD</u>

6   "preponderance of the evidence"  In re Kelley, 300 B.R. 11, 16 (9th Cir. B.A.P. 2003).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Memorandum of Points and Authorities**

1.  At the time a petition for bankruptcy is filed, "all legal or equitable interests of the debtor in property" become available to satisfy creditors' claims and costs of the proceedings **unless the assets are '"exempted' from use** in satisfying claims of creditors and other authorized charges." *In re Sewell,* 180 F.3d 707, 710 (5th Cir. 1999); FRBP § 541(a)(1).

Bankruptcy exemptions are determined by the applicable state law on the date of the filing of the original bankruptcy petition. ***In re Bassin***, 637 F.2d 668, 670 (9th Cir. 1980).

California has, per FRBP § 522(b)(1), has "opted out" of the federal exemption scheme and therefore California debtors may claim only those exemptions allowable under California law.

### **Debtor Followed the California Statute by Filing a Declared Homestead**

Debtor's complied with filing a Declared Homestead on July 9, 2021, Official Records of Clerk Recorder.  California homestead exemption statute entitles her to claim that exemption for bankruptcy purposes.

### **A Debtor's Claimed Exemptions Are Presumptively Valid**

Generally, claimed exemptions are "presumptively valid" and the objecting party thus bears the burden of proving that the exemption is improper. *In re Carter,* 182 F.3d 1027, 1029 n. 3 (9th Cir.1999); FRBP §4003(c).

However, the Supreme Court in *Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 20–21 (2000), held that because burden of proof is substantive, in the absence of a federal interest requiring a different result, the state law allocation of the burden should apply in bankruptcy objection to claims.

13

**BURDEN OF PROOF IS PROPONDERANCE OF THE EVIDENCE**

    Although the burden of proof lies with the party claiming the exemption, exemption statutes are generally construed in favor of the debtor. *Kono v. Meeker,* 196 Cal. App. 4th 81, 86 (2011).

    Pursuant to Cal. Civ. Proc. Code § 704.780(a), the burden to show a debtor's entitlement to a homestead exemption rests with the debtor, **[unless]** a declared homestead has been recorded. Cal. Civ. Proc. Code § 704.780(a) as is the case in this Chapter 7.  **EXHIBIT** Debtor also includes for reconsideration a Certified Letter from the Orange County Tax Assessor Office regarding the status of her homeowners exemption.

14

## a. Creditor has failed to shift the burden to Debtor

Creditor has failed to state any recognized objection to the California homestead exemption.  "The exemption protects a 'homestead,' defined as a dwelling in which the debtor or the debtor's spouse resided on the date the judgment creditor's lien attached (in bankruptcy, the petition date) and has resided continuously until the court's determination that the dwelling is a homestead." *In re Pass*, 553 B.R. 749, 757 (B.A.P. 9th Cir. 2016) (citing Cal. Civ. Proc. Code §704.710(c)). "Thus, this protection is available in bankruptcy if the debtor was living in the home on the petition date. The exemption is 'automatic' in the sense that it requires no affirmative act by the debtor to make it effective; rather, it applies automatically to any dwelling that meets the definition." In re Pass, 553 B.R. at 757.

Interested party Houser Bros, Co or the joinders objection makes no allegation that the Property was not the principal dwelling in which Debtor resided on the date the bankruptcy petition was filed.

Second, the Debtor has resided in the Property since the Property was acquired on November 1, 2018, with the unencumbered proceeds from the sale of her previous home, October 31, 2018.

Third, Debtor claimed the $600,000 homestead exemption in her Schedule C § 704.730(a)(1) which provides for the $600,000 exemption. Debtor's automatic exemption was effective on the date of the petition.

15

### b. Declared Homestead

The date for the determination of the homestead exemption amount is the date on which debtors file a bankruptcy petition. *In re Pass*, 553 B.R.749, 760 (B.A.P. 9th Cir. 2016) (citing *Moffat v. Habber* (In re Moffat), 119 B.R. 201, 204 n. 3 (9th Cir. BAP 1990)).

**The BAP has also found that:**

Under California law, two species of homestead protection are available to judgment debtors, the "automatic" (or Article 4) homestead exemption and the "declared" (or Article 5) homestead protection, respectively.

These protections are available under different circumstances, they serve different purposes, and they confer different rights on debtors. "[T]here is no overlap between these rights." Id .

At 756 (emphasis added). Depending on the circumstances, a given debtor may be entitled to one or the other, or to both, or to neither. Id.

*In re Pass,* 553 B.R. 749, 756–57 (B.A.P. 9th Cir. 2016) (citing *In re Anderson*, 824 F.2d 754, 756 (9th Cir. 1987)). As a result, Debtor's declared homestead declaration does not prevent Debtor from the benefit or use of the automatic homestead exemption (Schedule C) and Creditor as provided no case law or statute indicating otherwise. Katz v. Pike (In re Pike), 243 B.R. 66,

h

16

1    69-71 (9th Cir. BAP 1999); See also Avetoom v. Fridman (In re Fridman), Nos. CC-21-1101-
2    LSF, 8:21-bk-10513-ES, 2022 Bankr. LEXIS 358, at *13 (B.A.P. 9th Cir. Feb. 11, 2022).

3        "[W]hen a debtor claims an exemption created under state law, the scope of the
4    exemption is determined under state law which may provide that certain types of debtor
5    misconduct warrant denial of the exemption.'" In re Gray, 523 B.R. 170, 175 (B.A.P. 9th Cir.
6    2014) (quoting Law v. Siegel, 134 S. Ct. 1188, 1196-97 (2014).

7        Courts in the Ninth Circuit have determined if or what kinds of equitable doctrines can be
8    used by bankruptcy courts to disallow exemptions. "Without reaching the bankruptcy court's
9    power to disallow exemptions or the relevance of California public policy concerning homestead
10   exemptions, the Court agrees with the bankruptcy court that Creditors' California law theories
11   would not preclude Debtor's homestead exemption in this case."
12
13   In re Gilman, No. 1:11-BK-11603-VK, 2020 WL 7087703, at *5 (C.D. Cal. Oct. 28, 2020).

14       In light of California public policy favoring liberal application of the homestead
15   exemption, debtor respectfully requests this Court find Interested party Houser Bros Co and the
16   joinders arguments in effective towards Debtor's homestead exemption.
17

18

19

20

21

22

23

24

25

26

27

28

1    "[A] valid claim of equitable estoppel consists of the following elements:

2    (a) a representation or concealment of material facts

3    (b) made with knowledge actual or virtual, of the facts

4    (c) to a party ignorant, actually and permissibly, of the truth

5    (d) with the intention, actual or virtual, that the ignorant party act on it, and (e) that party was

6    induced to act on it." *In re Gilman*, No. 1:11-BK-11603-VK, 2020 WL 7087703, at *5 (C.D. Cal.

7
8    Oct. 28, 2020) (quoting *Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443,

9    1465 (2011)).

10       Debtor entered into a contract (the "Contract") with Creditor Houser Bros Co Attorney

11   Vivienne Alston on or about August 7 or 8, 2019, whereby Creditor agreed to dismiss her

12   Unlawful Detainer Case 30-2019-01041423, against Houser Bros for advancing their "Self Help"

13   against debtor; Gallian would dismiss her Wrongful Eviction Case against Houser Bros Co.

14       Gallian complied and dismissed the wrongful eviction.  Attorney Alston applied exparte

15   to the UD Court insisting the attorney mis-calendared, therefore failing to attend a status

16
17   conference hearing on or about August 7, 2019.  The Unlawful Detainer case was dismissed on

18   the courts own motion for failure to prosecute.  Thereafter, J-Sandcastle Co LLC, tendered a

19   cashier's check in the amount of $10,860.00 to the park manager Kathryne Houser-Curtiss and

20   Park Manager(s) Willie Maskulnski and Rick Maskulnski to obtain a signed Lot 376 agreement

21   with J-Sandcastle Co LLC.

22       Ms. Curtiss, the park Manager accepted the check from J-Sandcastle Co.'s Member

23
24   Jamie Gallian, proceeded to hand the check to bookkeeper Willie Maskulnski for processing on

25   the books.  Ms. Curtiss commented to Ms. Gallian that "she appreciated the check being for the

26   tenancy date beginning November 1, 2018 through August 31, 2019", instead of November 16,

27   2018 when Ms. Gallian delivered the application and tax clearance to HCD Office in Riverside

28   after attending a hearing at CJC Honorable James L. Crandall with the Association.

18

000025

Assume for a moment the November 16, 2018, Security Agreement and Promissory Note are invalid, Creditor did not provide any evidence that Debtor intended to file bankruptcy in July 2021. Additionally, the alleged November 16, 2018, Security Agreement and Promissory Note doesn't contain any representations about Lender Gallian not filing for bankruptcy. Lastly, California has a public policy favoring liberal application of the homestead exemption. Therefore, Creditor has failed to meet their burden.

Creditor has failed to provide evidence showing that the Debtor had already anticipated filing bankruptcy. California has a public policy favoring liberal application of the homestead exemption.

19

## Declaration of Jamie Lynn Gallian

1. On October 31, 2018, Jamie Lynn Gallian ("Debtor") sold her unencumbered primary residence located at 4476 Alderport Drive Huntington Beach, CA 92649, A.P.N. 937-630-53, Tract 10542 Lot 1, Unit 53, to a bona fide purchaser, Randall Nickel for $379,000.00, Instrument No. 2018000396579, recorded Official Records of Clerk Recorder, County of Orange.

Ms. Gallian received the market value, far greater than any unit in the Gables subdivision sold for in the calendar year 2018.  Gallian deposited the funds into her personal Chase Private Client Savings Account.  Gallian's home in the Gables, Unit 53, A.P.N. 937-630-53 listed on the 2018-2019 Secured Property Tax Roll with the Orange County Treasurer – Tax Collector included a Homeowners Exemption of $-7000. Gallian Decl.

3. On November 1, 2018, purchased the 2014 Skyline Manufactured Home from seller Lisa Ryan,  In turn Gallian received posession of the Certificate of Title LBM 1081. Seller Lisa Ryan executed the release and surrendered Original Certificate of Title to Jamie Gallian LBM1081, a 2014 Skyline Custom Villa Manufactured Home. The home was sold in place on Lot 376 within Tract 10542, Unit 4. Ms. Gallian paid the Orange County Assessor Ryan's two years of over due property taxes to the Orange County Tax Assessor on the home LPT 891-569-62, which included a deposit for the next years taxes with her personal Alliant Credit Union checking account.XXXX-6018

4. Ms. Gallian resides in the home as her primary residence located at 16222 Monterey Lane Unit 376, Huntington Beach, CA 92649, and always anticipated it being her primary residence since November 2018.

5. Debtor purchased a 2014 Skyline Custom Villa manufactured home LBM 1081, with exempt funds from the sale of her unencumbered home on October 31, 2018, AP.N. 937-630-53 in the Gables subdivision.

6. Debtor personally delivered to the HCD Riverside office, the Ryan surrendered Certificate of Title Card, released on November 1, 2018, to Jamie Lynn Gallian with a signed

20

000027

1   NOTICE OF SALE OR TRANSFER, EXECUTED BY THE SELLER LISA RYAN ON

2   NOVEMBER 1, 2018.

3        7.  Under Section III, NOTICE OF SALE OR TRANSFER of the **State of California**

4   **Housing and Community Development Registration and Titling Form** contained the name of

5   JAMIE LYNN GALLIAN as the NAME OF PURCHASER/NEW OWNER on November 1,

6   2018, whited out and replaced with J-Sandcastle Co LLC on the form  to the right side on or

7   about November 15, 2018.

8        8.  On November 1, 2018, debtor is informed and believe Lisa Ryan, the Seller of

9   LBM1081, gave NOTICE OF SALE OR TRANSFER to Park Management and to Houser Bros

10  Co dba Rancho Del Rey Mobilehome Estates.

11       9.  On November 14, 2018, Houser Bros Co attorney Vivienne Alston, unlawfully filed

12  and obtained a WRIT of EXECUTION IN THE NAME OF LISA RYAN AND CONTINUED

13  TO HARASS AND TORMENT DEBTOR AND HER FAMILY BY USING THE SHERIFF

14  DEPARTMENT TO EXECUTE THE WRIT WITH THE KNOWLEDGE THAT LISA RYAN

15  SOLD THE 2014 SKYLINE CUSTOM VILLA AS ANTICIPATED BY THE PARTIES

16  STIPULATED JUDGMENT DATED OCTOBER 18, 2O18 OCSC 30-2018-01013582.

17       10.  JAMIE GALLAIN, registered the personal property manufactured home with

18  Housing and Community Development on November 16, 2018, has claimed as exempt.11 U.S.C.

19  § 522(b) (providing that "an individual debtor may exempt from property of the estate…")

20  **(o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of**

21  **an interest in--**

22  (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;

23  (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a

24  residence;

25  (3) a burial plot for the debtor or a dependent of the debtor; or

21

(4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;

## **Federal Rule of Bankruptcy Procedure 1009** provides that:

"A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." As recognized by the Ninth Circuit Bankruptcy Appellate Panel in In re Goswami, 304 B.R. 386 (9th Cir. BAP 2003), the Ninth Circuit has a liberal policy of "allowing debtors to amend their exemptions schedules so as to enhance their fresh start." Id. at 394, citing, In re Michael, 163 F.3d 526, 529 (9th Cir. 1998). As the Bankruptcy Appellate Panel further noted in Goswami, "The liberal rule governing amendments reflects the Ninth Circuit's 'preference for resolution on the merits, as against strict adherence to formalities.' " Id., citing and quoting, In re Anderson–Walker Indus., Inc., 798 F.2d 1285, 1287 (9th Cir. 1986). In light of the policy of liberality of amendment of bankruptcy petition documents, expressly including bankruptcy schedules, as stated in Rule 1009 and as recognized in the case law, there does not appear to be any legal authority to allow this court to bar any further amendments by the Debtor of his schedules.

## **RECITALS OF FACTS**

A.    GALLIAN held a Grant Deed and Condominium Sublease for a specific lot within a Planned Unit Community as defined in Civil Code §4175, located at 4476 Alderport Drive Unit 53 Huntington Beach, CA 92649 ("UNIT") as of March 23, 2017. ("Unit 53")

             a.    GALLIAN became record owner of the Grant Deed and Condominium Sub-leasehold on March 23, 2017, by way of an Assignment recorded in the Official Records of the County of Orange as Document Number 2017-000116815, which was "Gifted" to GALLIAN by Gallians predecessor and co-defendant, her step-mother, Sandra L Bradley ("BRADLEY").

22

b.   GALLIAN sold her interests in her separate property, Unit 53, to Randall L. Nickel on October 31, 2018, by way of a Grant Deed and Assignment of Condominium Sublease recorded in the Official Clerk Records of the County of Orange as Document Number 2018-000395579.

B.    By virtue of GALLIAN'S Ground leasehold and Sub-Condominium Leasehold GALLIAN was an owner of separate interest coupled with an undivided percentage interest in common with all owners of separate interest and a Membership in the ASSOCIATION, as defined by Civil Code section 4160, subject to the Governing Documents of the ASSOCIATION, as defined by Civil Code section 4150, including but not limited to:

a.   **Declaration of Covenants, Conditions and Restrictions** for Huntington Beach Gables ("CC&Rs") recorded on May 28, 1980, as Document No. 1980-28926, Official Records of Clerk Recorder, County of Orange;

b.   **First Amendment to Declaration of Covenants, Conditions and Restrictions** for Huntington Beach Gables recorded on August 5, 1980, as Document No. 1980-5002, Official Records of  Clerk Recorder, County of Orange.

c.   **Condominium Plan** recorded on October 18, 1979, as Document No. 79-28814, Official Records of Clerk Recorder, County of Orange.

**ADDITIONAL DOCUMENTS RECORDED**

**Official Records of Clerk Recorder, County of Orange.**

A.  **COVENANT RUNNING WITH THE LAND** recorded on November 6, 1979, Book 13383, Pg(s) 1868-1870, in the Orange County Recorder's Office

a.   **Partial Cancellation of Master Lease** recorded on November 7, 1980, Book 13424, Pg(s) 1253-1255, Instrument No. 8691, in the Orange County Recorder's Office;

23

b. **Partial Cancellation of Sublease** recorded on November 7, 1980, Book 13424, Pg(s) 1256-1258, Instrument No. 8692, in the Orange County Recorder's Office;

c. All right, title and interest as Tenant, in and under that certain **Master Lease/Ground Lease,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1259-1273, Instrument No. 8693, in the Orange County Recorder's Office;

d. All right, title and interest as Tenant, in and under that certain **Condominium Sublease,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1274-1290, Instrument No. 8694, in the Orange County Recorder's Office; As amended by the First Amendment to the Condominium Sublease effective January 1, 2003, recorded in the Office of the Orange County Clerk Recorder as Document No. 2003-001044770 o August 28, 2003:

e. All right, title and interest as Tenant, in and under that certain **Conveyance of Remainder Interest,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1291-1293, Instrument No. 8695, in the Orange County Recorder's Office;

f. All right, title and interest as Tenant, in and under that **certain Condominium Sublease (Short Form – Memorandum and Grant Deed,** dated November 7, 1980, recorded in the Orange County Recorder's Office; Bk13424, Pg(s) 1294-1298, Instrument No. 8696, in the Orange County Recorder's Office:

24

g. The **Articles of Incorporation** of the Huntington Beach Gables Homeowners Association, recorded with the California Secretary of State May 23, 1980;

h. **The Bylaws of the Huntington Beach Gables** ("Bylaws"); executed May 23, 1980;

Debtor resides in a manufactured home which she filed a Declared Homestead Exemption and believes she purchased her current residence with exempt funds, claimed as exempt.

Debtor has been the subject of continued mistruths regarding Fee Interest and Air-Space, and has been paying property taxes for over 10 years on land that she also pays ground lease payments on.

Debtor registered the Certificate of Title to the 2014 Skyline Custom Villa manufactured home in her name on February 25, 2021 after a mandatory settlement conference with Houser Bros Co the management company for Rancho Del Rey.

Debtor admits that she personally delivered the surrendered documents to HCD in Riverside, in fact the petitioners documents are stamped November 16, 2018, which included the surrendered Certificate of Title and Release of Title dated November 1, 2018, executed under penalty of perjury, by the seller, Lisa Ryan to debtor on November 1, 2018, of a 2014 Skyline Custom Villa manufactured home.

**The Stipulated Judgment between Houser Bros Co and Lisa Ryan 30-2018-01013582,** contemplated that Lisa Ryan had 6 months, or until February 3, 2019, to sell her home in place. Ryan was moving out of her home and a new owner would purchase the home and complete the required residency requirements. Ryan sold her home 14 days after the Stipulated Judgment was

25

agreed to by the parties and became an Order of the Court on October 18, 2018. OCSC 30-2018-01013582.

Lisa Ryan, Seller, signed and executed State of California, Department of Housing and Community Development NOTICE OF SALE OR TRANSFER, gave notice to Rancho Del Rey that she sold the 2014 Skyline Custom Villa manufactured home on November 1, 2018, located and installed pursuant to Health & Safety 18551, on Lot 376, Unit 4, in TRACT 10542, under a recorded **Condominium Sublease and Grant Deed Short Form Memorandum,** recorded in the Official Records of the Clerk Recorder for the County of Orange against A.P.N. 178-011-16; under a **Condominium Plan** recorded October 18, 1979, in Book 13358, page 1193, of Official Records and **Covenants Running With The Land**, executed on October 19, 1979, recorded November 18, 1979, in Book 13383, page 1868-1870, of Official Records of the Clerk Recorder for the County of Orange against A.P.N. 178-011-16.

On November 11, 2018, almost two weeks after Jamie Gallian purchased the 2014 Skyline Custom Villa home from Lisa Ryan, and after Lisa Ryan gave Notice of Sale on November 1, 2018, Houser Bros Co attorney Vivienne Alston filed a Writ of Execution in the name of Lisa Ryan, dated 11/14/2018, without application to the Court or Notice and delivered it to the Orange County Sheriff on or about November 19, 2018.

On November 16, 2018 over 2 weeks after the manufactured home was purchased by Jamie Gallian on November 1, 2018, Jamie Lynn Gallian drove to Riverside HCD and registered the 2014 manufactured home in the name of her sole member LLC J-Sandcastle Co LLC until the earliest of several things happened:

1. Jamie Gallian would be allowed to terminate the three-year residential lease she entered into for the property at 5782 Pinon Drive Huntington Beach, CA on September 11, 2018:

2. Jamie Gallian would be allowed to intervene into the civil action Houser Bros Co. v Lisa Ryan 30-2018-01013582, and have the WRIT recalled and terminated by Court Order.

26

3. Request sanctions against the Houser Bros Co attorney for interfering with the terms of the purchase of the sale of the unencumbered Ryan Failure 2014 Manufactured Home;

4. Requests sanctions against the Houser Bros Co for violating the Davis Stirling Act and the Subdivision Map Act;

5. Figure out why a Tract Map and Condominium Plan were recorded August 1979 and October 1979, against TRACT 10542, Unit 1, 2, 3, 4, Lot 1 & Lot 2, and the First Amendment to the CC&Rs recorded 1 day before the tentative map was to expire on 8-6-1980, and recorded unlawfully after Cal Bre issued the "White Report" was in mid July 1980 for "TRACT 10542";

6. More importantly determine the legality of "Air-Space Condominiums" on leased land in violation of Article 935 and Huntington Beach Subdivision Map Ordinances;

7. Request the Tax Assessor refund approximately 8 years of overpayment of taxes for the "Land" and in addition to paying the property taxes, payments made for "Air-Space subcondominium on leased land, also payments made against a ground lease bill for 8 years.

Because property of the estate includes only the debtor's interest in the LLC - and not the manufactured home owned by the LLC - Debtor's claim of exemption is authorized under the law because it is debtor's primary residence and has been since debtor purchased the home on November 1, 2018, with the funds of her previous homestead disclosed on her initial chapter 7 petition, DOC 1.

Further, there is a 2018 Security Agreement and Promissory Note against the manufactured home perfected 1/14/2019, on the face of the Certificate of Title to the 2014 manufactured home held by J-Pad, LLC.

Registering title to the manufactured home to one LLC and subjecting its value to a perfected lien held by another LLC does not prevent debtor from claiming a homestead exemption in her personal residence.

27

**2.    Factual Background**

**A.    Procedural Background**

On July 9, 2021 ("Petition Date"), Jamie Lynn Gallian ("Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. On the same date, Ms. Gallian filed her initial Schedules and Statements ("Original Schedules"). A true and correct copy of the Original Schedules is attached to the Declaration of Jamie Lynn Gallian ("Gallian Declaration")

At the instant of the commencement of a bankruptcy case, an automatic stay comes into effect as a matter of law. 11 U.S.C. § 362(a). The initial 341 meeting of creditors was held August 18, 2021, continued approximately 9 nine times.

At the August 18, 2021, 341 Meeting of Creditors, Debtor informed the Trustee Jeffrey Golden and the Interested Parties present, namely Houser Bros Co and Janine Jasso, Esq. and Huntington Beach Gables Homeowners Association that Debtor believed her petition was inaccurate and she would be amending her petition concerning several areas one that the Registered Owner of the 2014 Manufactured Home as of the date the Petition was filed and that debtor received from HCD a Title Search dated July 27, 2021, which reflected Jamie Lynn Gallian as the Registered Owner perfected 2/25/2021, however J-Pad, LLC 1/14/2019 perfected Certificate of Title was mistakenly removed when it was only requested Mr. Pierpont 8/20/20, Encumbrance be removed.

HCD Riverside Manager, Ms. Sylvia Cruz spoke to debtor instructed debtor when she received the Original Certificate of Title from Sacramento in the US Mail, which debtor did receive approximately August 5, 2021, to take the form that was printed August 3, 2021, to HCD in Riverside to correct and re-add J-Pad, LLC1/14/2019 as the Legal Owner back to the Certificate of Title.

28

1          Debtor was informed at the Riverside office she would have to pay a second fee of

2   approximately $118.00 to HCD Riverside to correct the error which was made by the

3   Sacramento Registration and Titling Department at the beginning of July 2021.  Debtor paid

4   $118.00 by an assigned DTN number approximately July 14, 2021, and again on or about August

5   6, 2021, at HCD Riverside using an ATM card to make the correction on August 6, 2021

6   reflected on the Title Search dated August 11, 2021 provided by email to debtor by HCD

7   Riverside Technician Sarina provided to the Trustee.

8

9          On the petition date July 9, 2021, the registered title owner of the manufactured home

10  located at 16222 Monterey Lane, Unit #376, Huntington Beach, CA 92649 ("Property") was

11  Jamie Lynn Gallian as of February 25, 2021, the date J-Sandcastle Co LLC signed and dated to

12  release the Certificate of Title to Jamie Lynn Gallian, notarized the same date.

13          J-Sandcastle Co, LLC ("J-Sandcastle LLC") was subject to perfected UCC-1 filing

14  1/14/2019, supported by a Security Instrument and Promissory Note dated November 16, 2018,

15  executed at Central Justice Center between J-Sandcastle Co LLC, Jamie Lynn Gallian, Member

16  and Jamie Lynn Gallian, Lender and J-Pad, LLC, it's Manager and the holder of the Note with

17  all legal owners, J-Pad, LLC perfected under Certificate of Title ("COTA") under the laws of the

18  State of California.

19

20          Debtor's Schedules further reflect that she the sole owner of J-Sandcastle LLC. Because

21  the LLC was listed as the registered owner of the manufactured home on the Petition Date, the

22  debtor disclosed the name of the LLC on the debtor's petition and disclosed on Schedule AB she

23  had an interest in the property.

24

25          Debtor resides in the home and it is debtors home and property of debtor's Estate. Debtor

26  is entitled to a homestead exemption.

27

28

<div align="center">29</div>

**Transferring Exempt Property May Not be a Fraudulent Transfer Under California Law**

Debtor wants to maximize the amount of property she gets to keep, to avoid, any creditor collection efforts, especially efforts to collect her personal residence.

California laws create a specific, statutory exclusion from fraudulent transfer claims for property that has no equity beyond an exemption, including transferring a personal residence subject to California's homestead exemption. Such transfers may be entirely exempt from an attack as a fraudulent transfer in California court, also known as fraudulent conveyance, or voidable transaction.

**The Language of California's Uniform Voidable Transactions Act Excludes Exempt Property, Including a Personal Residence Subject to a Homestead *Exemption***

Under the California Uniform Voidable Transactions Act (UVTA), creditors can attack as an actually fraudulent transfer a "**transfer**" made "With actual intent to hinder, delay, or defraud any creditor of the debtor" or "Without receiving a reasonably equivalent value in exchange for the transfer or obligation…." California Civil Code § 3439.04. Creditors can also seek to avoid as a constructively fraudulent transfer any "**transfer**" made "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." California Civil Code § 3439.05.

In turn, the definitions under the California Uniform Voidable Transactions Act provides that "'**Transfer**' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." California Civil Code § 3439.01(m).

30

Definitions under the California Uniform Voidable Transactions Act also provide that: "'Asset' means **property** of a debtor, but the term **does not include** the following:

(1) Property to the extent it is encumbered by a valid lien.

(2) Property to the extent it is generally exempt under nonbankruptcy law**.**" <u>California Civil Code, § 3439.01(a)</u>.

**<u>Debtor's previous property residence was sold on October 31, 2018, was exempted under California's exemption laws</u>** and is excluded from the definition of an asset that can be subject to a claim that of being a fraudulent transfer.  This exemption has been explained by one California court in 2019, "the [California] UVTA defines an asset as the 'property of a debtor,' excluding property 'to the extent it is encumbered by a valid lien[,]' and 'to the extent it is generally exempt under nonbankruptcy law.' ([California Civil Code] § 3439.01, subd. (a).) As noted by the Legislative Committee Comments, the definition of asset 'requires a determination that the property is subject to enforcement of a money judgment.

Under **<u>Section 704.210 of the Code of Civil Procedure</u>**, property **that [is not]** subject to enforcement of a money judgment is exempt.' (Legis. Com. com., 12A pt. 2 West's Ann. Civ. Code (2016 ed.) foll. § 3439.01, p. 253.)" <u>Potter v. Alliance United Ins. Co.</u> (2019) 37 Cal.App.5th 894, 906.

The decision follows a 1994 California court of appeal opinion: "It has long been the rule that a gift, sale, or pledge of any part of a homestead cannot, under any circumstances, be with intent to defraud a creditor not having a lien upon the premises, for a creditor is not entitled to complain of the transfer by the debtor of an asset which he could not have reached, had the debtor retained it.  If the homestead is valid, no attempted disposition or conveyance of the property, however fraudulent, injures the creditor. For such act, leaves the creditor in the same position in which he would have been before it was done.

A Debtor's attempt to defeat her creditors is not commendable, such conduct neither enlarges plaintiff's rights, nor gives him benefits as punishment of debtor. In such circumstances the defendant's motives are immaterial." *Tassone v. Tovar* (1994) 28 Cal.App.4th 765, 768 (quoting *Oppenheim v. Goodley* (1957) 148 Cal.App.2d 325, 328).

"*Mehrtash* [*v. Mehrtash* (2001) 93 Cal.App.4th 75, 80] rightly affirmed the longstanding principle that injury-in-fact is an essential element of a claim under the UFTA [Uniform Fraudulent Transfer Act] , and we follow that principle in the present case. A creditor has not been injured unless the transfer puts beyond reach property the creditor ***could subject to payment of his or her debt.*** *Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 845.

The *Fidelity* court continued that: "Rather, we reiterate and adopt the following language of the *Mehrtash* opinion: 'Even assuming the allegedly fraudulent conveyance were set aside and the property were hypothetically available to enforce the plaintiff's money judgment, it could not be sold without a court order because it is the [debtor's dwelling], and could not be sold without a minimum bid equal to [all] encumbrances and senior liens [plus] the homestead exemption. The plaintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside.' (*Mehrtash*, *supra*, 93 Cal.App.4th at p. 81) The evidence at trial showed that *Fidelity* could not have obtained any net recovery if the transfer were set aside and a forced sale of the property was sought." *Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 847.

A number of secondary sources have also discussed this requirement of an of an "injury" to creditor required to attack a transfer as fraudulent under California law. *See Requirement of Injury to Creditor.*, 8 Witkin, Cal. Proc. 5th Enf Judgm § 497 (2020); 16A Cal. Jur. 3d Creditors' Rights and Remedies § 406 ("A creditor [has not] been injured unless the transfer puts beyond

32

000039

1   the creditor's reach property that he or she otherwise would be able to subject to the payment of

2   his or her or her debt"); Prelawsuit Considerations, Cal. Prac. Guide Enf. J. & Debt (Rutter

3   Group 2020) Ch. 3-C, 3:318.1 ("*Mehrtash v. Mehrtash* (2001) 93 CA4th 75, 81, 112 CR2d 802,

4   806—real property conveyance not fraudulent where plaintiff not injured (no evidence that value

5   of property could support net recovery with mortgages, senior liens and homestead exemption)").

6

7   **Transferring a Home with No Equity May be Excluded from California's Fraudulent**
    **Transfer Laws**

8   The law is that: "A transfer in fraud of creditors may be attacked only by one who is

9

10  injured by the transfer. A creditor [does not] sustain injury unless the transfer puts beyond his

11  reach property which he otherwise would be able to subject to the payment of his debt." *Haskins*

12  *v. Certified Escrow & Mortg. Co.*, (1950) 96 Cal. App. 2d 688, 691.

13  Since Houser Bros Co, Huntington Beach Gables Homeowners Association or Janine

14  Jasso, [would not] have benefited from collecting on a debtor's property with no equity,

15  transferring such property should generally not be considered a fraudulent conveyance.

16

17  Priority claims are paid ahead of general unsecured creditors but may not be paid out of

18  encumbered assets absent secured creditor consent or application of § 506(c). *See Gravel, Shea*

19  *& Wright, Ltd. v. Bank of New England (In re New England Carpet Co.)*, 744 F.2d 16, 17 (2d

20  Cir. 1984); *General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice*

21  *Corp.)*, 739 F.2d 73, 76 (2d Cir. 1984); *In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir. 1982); *In*

22  *re American Resources Management Corp.*, 51 B. R. 713, 721 (Bankr. D. Utah 1985).

23

24  For all of the above reasons, Debtor respectfully requests this Court deny the Motion by

25  Houser Bros Co., Huntington Beach Gables Homeowners Association and Janine Jasso, Esq. all

26  interested parties objecting to debtors claimed homestead exemption.

27

28

33

1
    I declare under penalty of perjury of the laws of the State of California the foregoing to

2
be true and correct to the best of my ability, information and belief.

3

Signed  July 26th  2022, at Huntington Beach. CA County of Orange

4

5
                Respectfully Submitted,

6
Dated:  July 26, 2022

7
             By: *Jamie Lynn Gallian*

8
             JAMIE LYNN GALLIAN
             Debtor,  IN PRO PER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34

500 S. Main Street, First Floor, Suite 103
Orange, CA 92868-4512
or
P. O. Box 628
Santa Ana, CA 92702-0628

**CLAUDE PARRISH**
COUNTY ASSESSOR
Telephone: (714) 834-3821
FAX: (714) 834-2565
www.ocassessor.gov

ESTABLISHED 1889

OFFICE OF THE ASSESSOR

July 21, 2022

891-569-62   HX

GALLIAN, JAMIE LYNN
16222 MONTEREY LN, SPC 376
HUNTINGTON BEACH, CA 92649

SUBJECT: Assessor Parcel Number: 891-569-62

Property Address: 16222 MONTEREY LN, UNIT 376, HUNTINGTON BEACH

The Homeowners' Exemption on the above property has been active in Orange County as of 02-25-2021

Claimant Name: GALLIAN, JAMIE LYNN

If you have any questions, please call our office at (714) 834-3821.

Sincerely,

CLAUDE PARRISH
County Assessor

By
    Exemptions Division

I HEREBY CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF A PERMANENT
RECORD OF THE ASSESSOR'S OFFICE.
ORANGE COUNTY, CALIFORNIA

CLAUDE PARRISH
COUNTY ASSESSOR
BY

2022 JUL 21 PM 2: 22
CLAUDE PARRISH
ORANGE COUNTY ASSESSOR

A002-994 (R 09/19)

**2022-23  Secured Assessment Roll**                **CLAUDE PARRISH, ORANGE COUNTY ASSESSOR**

Full Parcel Report: Page 1 of 1                                    As of January 1st, 2022

| Parcel No: 891-569-62 | Tax Rate Area: 04-902 | Property Type: MOBILE HOME |
|---|---|---|

### Owner / Mailing Address

**Assessee:** GALLIAN, JAMIE LYNN
**Address:** 16222 MONTEREY LN, SPC, 376
**City, State:** HUNTINGTON BEACH, CA
**Zip:** 92649

### Description

| Assessed Value | | Exemptions | Dates | |
|---|---|---|---|---|
| Land: | 0 | Exe Type: HOMEOWNER | Land BaseYear: | 2021 |
| Improvement: | 0 | | Improvement Base Year: | 2021 |
| Personal Property: | 86,339 | | Tax Lien Status: | |
| Other: | 0 | | | |
| Gross: | 86,339 | | | |
| Less Exemption: | 7,000 | | | |
| Net: | 79,339 | | | |

### Sale History

Reference Number: M2085154

### Additional Information

Legal Description: T MHP RANDRE MSP 376

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF A PERMANENT RECORD OF THE ASSESSOR'S OFFICE. ORANGE COUNTY, CALIFORNIA

CLAUDE PARRISH COUNTY ASSESSOR BY

2022 JUL 21  PH 2:18
ORANGE COUNTY ASSESSOR
CLAUDE PARRISH

1

000043











Units 1, 2, 3 and 4 of Lot 2 of the following:

All that certain land situated in the State of California, County of Orange, City of Huntington Beach, described as follows:

Proposed Tract No. 10542, being a subdivision of the following:

A portion of the northeast one quarter (1/4) of the northwest one quarter (1/4) of Section 20, Township 5 south, Range 11 west, in the Rancho Las Bolsa Chica, as shown on a map recorded in book 51, page 13 of Miscellaneous Maps, records of said Orange County, being described as follows:

Parcel 1 of a map filed in book 108, page 48 of Parcel Maps.

## NOTICE OF COMPLIANCE WITH CONDITIONS ON TRACT

### AUTHORIZATION FOR RELEASE FOR RECORDING

TO:       City Clerk                    Date A____ 7, 1971

FROM:     PLANNING DEPARTMENT
          James W. Palin

TRACT NO. _____

RECREATION & PARKS FEES PAID ___512.00_____

Other: _____

_____
(Signature)

000048

10d 47

SHEET 1 OF 2 SHEETS
T.P.M. 77-7
2 PARCELS
58.362 ACRES

T.P.M. 77-7
R.S.T. 8531

# PARCEL MAP

### IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA.

BEING A PORTION OF THE  E 1/2 OF THE NW 1/4 OF SECTION 20, T.5 S, R.11W.
IN THE RANCHO LA  BOLSA CHICA, AS SHOWN ON A MAP RECORDED IN BOOK
51, PAGE 13 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

DEC 22 1977    27127
108   47

## VALLEY CONSULTANTS, INC.
SAM F. KNISS, R.C.E. NO. 17377

DATE OF SURVEY: JAN. 9, 1977

### OWNERSHIP CERTIFICATE

WW, THE UNDERSIGNED, BEING ALL PARTIES HAVING ANY RECORD TITLE
INTEREST IN THE LAND COVERED BY THIS MAP, DO HEREBY CONSENT TO
THE PREPARATION AND RECORDATION OF SAID MAP AS SHOWN WITHIN
THE COLORED BORDER LINE, AND WE HEREBY DEDICATE TO THE PUBLIC FOR
STREET PURPOSES: EDINGER AVENUE AND SAYBROOK. WE ALSO
HEREBY DEDICATE TO THE CITY OF HUNTINGTON BEACH THE 10 FOOT WATER
LINE EASEMENT IN MONTEREY STREET AS SHOWN ON THIS MAP.

HOUSER BROS. CO.,
A LIMITED PARTNERSHIP.

VERNON E. HOUSER
GENERAL PARTNER

CLIFFORD C. HOUSER
GENERAL PARTNER

STATE OF CALIFORNIA }  S.S.
COUNTY OF ORANGE }
ON THIS 5th DAY OF OCTOBER, 1977, BEFORE ME, LISA STRAIT
A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED
VERNON E. HOUSER AND CLIFFORD C. HOUSER, KNOWN TO ME
TO BE THE PARTNERS OF HOUSER BROS. CO., A LIMITED PARTNER-
SHIP, THE PARTNERSHIP THAT EXECUTED THE WITHIN INSTRUMENT,
AND THEY ACKNOWLEDGED TO ME THAT SUCH PARTNERSHIP EXECUTED
THE SAME.

MY COMMISSION EXPIRES May 10, 1991

WITNESS MY HAND AND OFFICIAL SEAL:

NOTARY PUBLIC IN AND FOR SAID STATE

IMPERIAL CORP. OF AMERICA, SUBSTITUTED TRUSTEE OF
LIDO INSURANCE AGENCY, INC., A CALIFORNIA CORPORATION, AS
TRUSTEE UNDER A DEED OF TRUST RECORDED IN BOOK 7877, PAGE 951
AND IN BOOK 8383, PAGE 41, BOTH OF OFFICIAL RECORDS.

VICE PRESIDENT

ASST. SECRETARY

STATE OF CALIFORNIA }  SS.
COUNTY OF ORANGE }
ON THIS 11th DAY OF OCTOBER, 1977, BEFORE ME, JOY C. KNOWLES
A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED
AND , KNOWN TO ME TO BE THE VICE PRESIDENT, AND
 KNOWN TO ME TO BE THE ASST. SECRETARY
OF IMPERIAL CORP. OF AMERICA, INC., A CALIFORNIA CORPORATION, THE
CORPORATION THAT EXECUTED THE WITHIN INSTRUMENT, AND KNOWN
TO ME TO BE THE PERSONS WHO EXECUTED THE WITHIN INSTRUMENT ON
BEHALF OF SAID CORPORATION AND ACKNOWLEDGED TO ME THAT SUCH
CORPORATION EXECUTED THE SAME.

WITNESS MY HAND AND OFFICIAL SEAL:

NOTARY PUBLIC IN AND FOR SAID STATE
MY COMMISSION EXPIRES

CALIFORNIA - SANSOME CORPORATION, A CALIFORNIA CORPORA-
TION, AS TRUSTEE UNDER A DEED OF TRUST RECORDED IN BOOK 8359,
PAGE 173 OF OFFICIAL RECORDS.

VICE PRESIDENT

ASST. SECRETARY

STATE OF CALIFORNIA }  SS.
COUNTY OF ORANGE }
ON THIS 6th DAY OF October, 1977, BEFORE ME, SHARON M. KITTO
A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED
DANIEL J. BURICH, , KNOWN TO ME TO BE THE VICE PRESIDENT,
AND THOMAS R. AHERN, KNOWN TO ME TO BE THE ASST. SECRETARY, RESPECTIVELY,
OF CALIFORNIA - SANSOME CORPORATION, A CALIFORNIA CORPORA-
TION, THE CORPORATION THAT EXECUTED THE WITHIN INSTRUMENT,
AND KNOWN TO ME TO BE THE PERSONS WHO EXECUTED THE WITHIN
INSTRUMENT ON BEHALF OF SAID CORPORATION AND ACKNOWLEDGED
TO ME THAT SUCH CORPORATION EXECUTED THE SAME.

WITNESS MY HAND AND OFFICIAL SEAL:

NOTARY PUBLIC IN AND FOR SAID STATE
MY COMMISSION EXPIRES Nov. 9, 1979

MASLEN CORPORATION, A CALIFORNIA CORPORATION, AS TRUSTEE
UNDER A DEED OF TRUST RECORDED IN BOOK 9291, PAGE 433 OF
OFFICIAL RECORDS MARKED

VICE PRESIDENT

ASST. SECRETARY
ELISE M. WARDEN

COUNTY OF ORANGE }
ON THIS 5th DAY OF October, 1977, BEFORE ME, Susan C. Daley
A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED
AND Elise M. Warden, KNOWN TO ME TO BE THE VICE
PRESIDENT & ASST. SECRETARY, RESPECTIVELY OF MASLEN CORPORA-
TION, THE CALIFORNIA CORPORATION THAT EXECUTED THE WITHIN

### ENGINEER'S CERTIFICATE

THIS MAP WAS PREPARED
BASED ON A FIELD SURVEY
MENTS OF THE SUBDIVISION
PARCEL, ON JANUARY 9, 1977
MAP PROCEDURES OF THE LOCAL
AND THAT THIS PARCEL MAP
TENTATIVE MAP AND THE CONDITIONS OF
QUIRED TO BE FULFILLED PRIOR TO THE FILING OF THE PARCEL MAP.

SIGNED: SAM F. KNISS    R.C.E. NO. 17377

### CITY ENGINEER'S CERTIFICATE

THIS MAP CONFORMS WITH THE REQUIREMENTS OF THE SUBDIVISION
MAP ACT AND LOCAL ORDINANCES AND THE MAP IS TECHNICALLY
CORRECT IN ALL RESPECTS NOT CERTIFIED BY THE COUNTY
SURVEYOR.

DATED THIS 21st DAY OF

MICHAEL ZAMBORY
CITY ENGINEER

### CITY CLERK

STATE OF CALIFORNIA }  SS.
COUNTY OF ORANGE }
CITY OF HUNTINGTON BEACH }

I, ALICIA M. WENTWORTH, CITY CLERK OF THE CITY OF HUNTINGTON
BEACH, ORANGE COUNTY, DO HEREBY CERTIFY THAT
 MEETING THEREOF
1977, AND THAT THEREUPON
PASSED AND ENTERED, APPROVE    SAID MAP AND DID ACCEPT ON
BEHALF OF THE PUBLIC THE DEDICATION OF EDINGER AVENUE AND
SAYBROOK LANE FOR STREET PURPOSES AND DID ALSO ACCEPT
ON BEHALF OF THE CITY OF HUNTINGTON BEACH THE WATER LINE
EASEMENT IN MONTEREY STREET AS DEDICATED

ALICIA M. WENTWORTH
CITY CLERK
Dated: November 8, 1977
DEPUTY

### COUNTY SURVEYOR'S CERTIFICATE

THIS MAP CONFORMS WITH THE MAPPING PROVISIONS OF THE SUBDIVISION
MAP ACT AND I AM SATISFIED SAID MAP IS TECHNICALLY CORRECT
RELATIVE TO THE PARCEL MAP BOUNDARY.

DATED THIS 16th DAY OF Dec 1977.

C. R. NELSON
COUNTY SURVEYOR

BY: Robert Willis DEPUTY

### SIGNATURE OMISSIONS

IN ACCORDANCE WITH THE PROVISIONS OF SECTION 66436(c)
OF THE SUBDIVISION MAP ACT, THE FOLLOWING SIGNATURES
HAVE BEEN OMITTED:

1. SOUTHERN CALIFORNIA  CO., A CORPORATION, HOLDER
OF AN EASEMENT PER BOOK   , PER    , O.R.

2. GENERAL TELEPHONE CO.  , HOLDER OF AN EASE-
MENT PER BOOK 4375, PAGE   , O.R.
   BOOK 4373, PAGE   , O.R. PAGE 7263, PAGE 292, AND IN

3. CITY OF HUNTINGTON BEACH, HOLDER OF EASEMENT PER
BOOK 8317, PAGE 482, O.R.

4. STEARNS RANCHOS COMPANY, HOLDER OF EASEMENT PER
BOOK 191, PAGE 106 &  BOOK 91, PAGE 106, BOTH OF DEEDS.

5. SO. CAL. ED. CO. ALSO HOLDS EASEMENTS PER BOOK 8366,
PAGE 20, O.R. &  BOOK 9300, PAGE 334, O.R.

### IMPROVEMENT NOTICE

PURSUANT TO SECTION 66411.1 OF THE SUBDIVISION
ACT NOTICE IS HEREBY GIVEN THAT EDINGER AVENUE AND SAYBROOK LANE SHALL BE
IMPROVED IN ACCORDANCE WITH THE CITY OF HUNTINGTON BEACH STANDARDS
AT THE TIME PARCEL NO. 2 IS DEVELOPED.





10/19/2020







## Title Chain & Lien Report

**16222 Monterey Ln, Huntington Beach, CA 92649-6214**
APN: 178-011-16

Orange County Data as of: 08/03/2020

| Search Start Date: | 01/01/1967 | Start Date: | 01/01/1967 |
| Search End Date: | 08/19/2020 | End Date: | 08/19/2020 |

| Date | Type | Grantor | Grantee | Document # | Doc Ref. |
|------|------|---------|---------|------------|----------|
| 10/22/1979 | Lease | Warmington Robert | Robert P Warmington | 13362.317 | |
| 10/22/1979 | Lease | Houser Bros | Warmington Robert | 13362.320 | |
| 11/06/1979 | Cancellation | Houser Bros | | 13383.1868 | |
| 12/06/1979 | Lease | Houser Bros | Warmington Robert | 13424.499 | |
| 12/06/1979 | Lease | Warmington Robert | Robert P Warmington | 13424.504 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1096 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1130 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1166 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1202 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1232 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1268 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1304 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1340 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1099 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1133 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1169 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1205 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1235 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1271 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1307 | |
| 09/02/1980 | Plat, County Miscellaneous Plat | | | 13726.1343 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.192 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.272 | |
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.195 | |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.

PAGE 1 OF 3

| Date | Type | Subject Name | | Document # | Doc Ref. |
|---|---|---|---|---|---|
| 09/08/1980 | Plat, County Miscellaneous Plat | | | 13733.275 | |
| 09/26/1980 | Plat, County Miscellaneous Plat | | | 13760.957 | |
| 10/03/1980 | Release | | | 13773.4 | |
| 10/03/1980 | Release | | | 13773.7 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1726 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1779 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1729 | |
| 10/10/1980 | Plat, County Miscellaneous Plat | | | 13783.1782 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1775 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1828 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1778 | |
| 10/14/1980 | Plat, County Miscellaneous Plat | | | 13787.1831 | |
| 10/17/1980 | Plat, County Miscellaneous Plat | | | 13793.949 | |
| 10/17/1980 | Plat, County Miscellaneous Plat | | | 13793.952 | |
| 07/06/1990 | Deed | Houser Bros | Houser Bros | 1990.357100 | |
| 07/06/1990 | Deed Of Trust | Houser Bros | Union Bank | 1990.357101 | 342851 |
| ^ 07/21/1997 | Amendment | Houser Bros | | 1997.342851 | |
| 10/06/1993 | Deed | Malmborg Jack N & | Malmborg Jack N & | 1993.678726 | |
| 10/08/1993 | Declaration Of Homestead | Sullivan John L | | 1993.686386 | |
| 01/27/1994 | Declaration Of Homestead | Gibbons Robert L | | 1994.66495 | |
| 07/13/1994 | Declaration Of Homestead | Hunn Nancy C | | 1994.451177 | |
| 01/28/1997 | Declaration Of Homestead | Rounds Royal E | | 1997.40615 | |
| 07/31/1998 | Reconveyance | | | 1998.499256 | |
| 06/19/2000 | Declaration Of Homestead | Newton Carol A | | 2000.321481 | |
| 08/23/2007 | Declaration Of Homestead | Moomau Linda Charl | | 2007.523219 | |
| 09/15/2014 | Declaration Of Homestead | Radzinski Linda M | | 2014.372099 | |
| 05/22/2017 | Declaration Of Homestead | Vanzyl Yvonne H | | 2017.208348 | |

## Liens, Filings & Judgments
16222 Monterey Ln, Huntington Beach, CA 92649-6214

Search Start Date:   01/01/1967       Name(s) Searched:   Houser Bros Co, Houser Bros Co Trust
Search End Date:    08/19/2020       Match:           Exact

| Date | Type | Subject Name | Document # | Doc Ref. |
|---|---|---|---|---|



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.          PAGE 2 OF 3

| Date | Document | Party | Number | Number2 |
|---|---|---|---|---|
| 06/10/1971 | Certificate Of Partnership | Houser | 9672.175 | |
| 07/31/1972 | Certificate Of Partnership | Houser Bros | 10251.992 | |
| 08/17/1976 | Amendment | Houser | 11854.900 | |
| 09/23/1980 | Plat, County Miscellaneous Plat | Houser Bros | 13754.281 | |
| 09/23/1980 | Plat, County Miscellaneous Plat | Houser Bros | 13754.291 | |
| 11/04/1983 | Lien | Houser Bros | 1983.499211 | 282543 |
| ⌃ 07/31/1985 | Release | Houser Bros | 1985.282543 | |
| 05/02/1989 | Amendment | Houser | 1989.232116 | |
| 07/06/1990 | Deed Of Trust | Houser Bros | 1990.357101 | 342851 |
| ⌃ 07/21/1997 | Amendment | | 1997.342851 | |
| 07/09/1990 | Certificate Of Partnership | Houser Bros | 1990.361236 | |
| 07/31/1998 | Reconveyance | | 1998.499256 | |
| 11/09/2004 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros CX | 2004.1008431 | |
| 11/09/2004 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros CX | 2004.1008432 | |
| 04/03/2006 | State Tax Lien | Houser Brothers | 2006.219506 | 409646 |
| ⌃ 07/30/2009 | Release | Houser Brothers | 2009.409646 | |
| 12/03/2008 | State Tax Lien | Houser Brothers | 2008.557266 | 409647 |
| ⌃ 07/30/2009 | Release | Houser Brothers | 2009.409647 | |
| 07/01/2009 | Release | Houser Brothers | 2009.347624 | |
| 12/03/2010 | State Tax Lien | Houser Brothers | 2010.652383 | 157636 |
| ⌃ 03/28/2011 | Release | Houser Brothers | 2011.157636 | |
| 06/14/2011 | Release | Houser | 2011.290442 | |
| 12/06/2011 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros | 2011.636007 | |
| 12/06/2011 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros | 2011.636008 | |
| 11/07/2014 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2014.469087 | |
| 11/07/2014 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2014.469088 | |
| 11/08/2016 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2016.564698 | |
| 11/19/2019 | Certificate Of Delinquency Of Personal Property Tax | Houser Bros Co | 2019.480966 | 8699 |
| ⌃ 01/08/2020 | Release | Houser Bros Co | 2020.8699 | |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.

Tax Map - myFirstAm                                                    https://www.myfirstam.com/Polygon/MapSearch



 **Tax Map**                    **4476 Alderport Dr #53, Huntington Beach, CA 92649**



000058

Tax Map - myFirstAm                                                        https://www.myfirstam.com/Polygon/MapSearch





PROJECT  937-63
LOCATED ON  A.P. 178-771-03

1"=200'

| CONDOMINIUM INDEX, TRACT NO. 10542 | | | |
|---|---|---|---|
| PROJECT NO. 937-63   TRACT NO. 10542   NO. LOTS 2   A.P. NO. 178-771-03 | | | |
| Billing No. | Located on Lot | Unit No. | Common Area |
| 937-63-001 | Lot 2 | 1 | Und 1/80 Int in Lots 1 & 2 |
| 937-63-002 | " | 2 | " |
| 937-63-003 | " | 3 | " |
| 937-63-004 | " | 4 | " |
| 937-63-005 | " | 5 | " |
| 937-63-006 | " | 6 | " |
| 937-63-007 | " | 7 | " |
| 937-63-008 | " | 8 | " |
| 937-63-009 | " | 9 | " |
| 937-63-010 | " | 10 | " |
| 937-63-011 | " | 11 | " |
| 937-63-012 | " | 12 | " |
| 937-63-013 | " | 13 | " |
| 937-63-014 | " | 14 | " |
| 937-63-015 | " | 15 | " |
| 937-63-016 | " | 16 | " |
| 937-63-017 | " | 17 | " |
| 937-63-018 | " | 18 | " |
| 937-63-019 | " | 19 | " |
| 937-63-020 | " | 20 | " |
| 937-63-021 | " | 21 | " |
| 937-63-022 | " | 22 | " |
| 937-63-023 | " | 23 | " |
| 937-63-024 | " | 24 | " |
| 937-63-025 | " | 25 | " |
| 937-63-026 | " | 26 | " |
| 937-63-027 | " | 27 | " |
| 937-63-028 | " | 28 | " |
| 937-63-029 | " | 29 | " |
| 937-63-030 | " | 30 | " |
| 937-63-031 | " | 31 | " |
| 937-63-032 | " | 32 | " |
| 937-63-033 | " | 33 | " |
| 937-63-034 | " | 34 | " |
| 937-63-035 | " | 35 | " |
| 937-63-036 | " | 36 | " |
| 937-63-037 | " | 37 | " |
| 937-63-038 | " | 38 | " |
| 937-63-039 | " | 39 | " |
| 937-63-040 | " | 40 | " |

Page 2 of 2

178-77

| CONDOMINIUM INDEX, TRACT NO. 10542 | | | |
|---|---|---|---|
| PROJECT NO. 937-63   TRACT NO. 10542   NO. LOTS 2   A.P. NO. 178-771-03 | | | |
| Billing No. | Located on Lot | Unit No. | Common Area |
| 937-63-041 | Lot 1 | 41 | Und 1/80 Int in Lots 1 & 2 |
| 937-63-042 | " | 42 | " |
| 937-63-043 | " | 43 | " |
| 937-63-044 | " | 44 | " |
| 937-63-045 | " | 45 | " |
| 937-63-046 | " | 46 | " |
| 937-63-047 | " | 47 | " |
| 937-63-048 | " | 48 | " |
| 937-63-049 | " | 49 | " |
| 937-63-050 | " | 50 | " |
| 937-63-051 | " | 51 | " |
| 937-63-052 | " | 52 | " |
| 937-63-053 | " | 53 | " |
| 937-63-054 | " | 54 | " |
| 937-63-055 | " | 55 | " |
| 937-63-056 | " | 56 | " |
| 937-63-057 | " | 57 | " |
| 937-63-058 | " | 58 | " |
| 937-63-059 | " | 59 | " |
| 937-63-060 | " | 60 | " |
| 937-63-061 | " | 61 | " |
| 937-63-062 | " | 62 | " |
| 937-63-063 | " | 63 | " |
| 937-63-064 | " | 64 | " |
| 937-63-065 | " | 65 | " |
| 937-63-066 | " | 66 | " |
| 937-63-067 | " | 67 | " |
| 937-63-068 | " | 68 | " |
| 937-63-069 | " | 69 | " |
| 937-63-070 | " | 70 | " |
| 937-63-071 | " | 71 | " |
| 937-63-072 | " | 72 | " |
| 937-63-073 | " | 73 | " |
| 937-63-074 | " | 74 | " |
| 937-63-075 | " | 75 | " |
| 937-63-076 | " | 76 | " |
| 937-63-077 | " | 77 | " |
| 937-63-078 | " | 78 | " |
| 937-63-079 | " | 79 | " |
| 937-63-080 | " | 80 | " |



<u>GROUND LEASE</u>

THIS GROUND LEASE (herein termed the "Lease"), is made as of
this 19th day of October ___, 199_, by and between HOUSER
BROS. CO., a limited partnership organized and existing
under the laws of the State of California in which Clifford
C. Houser and Vernon F. Houser constitute the sole general
partners (herein termed the "Landlord"), whose address is
Suite 204, 610 East Seventeenth Street, Santa Ana, Califor-
nia 92701 and ROBERT P. WARMINGTON, a married man (herein
termed the "Tenant"), whose address is 16592 Hale Avenue,
Irvine, California  92714 upon the following terms and
conditions:

### ARTICLE I
### THE LEASED LAND

For and in consideration of the payment of the rentals,
taxes and other charges covenanted to be paid by Tenant and
of the performance of all the covenants and conditions
hereinafter covenanted and provided to be observed and
performed by Tenant, the Landlord hereby leases to Tenant
and Tenant hereby hires from Landlord that certain parcel of
real property (herein termed the "leased land"; the term
"leased land" and "leased premises" may be used interchange-
ably), situated in the County of Orange, State of Califor-
nia, described on Exhibit A attached hereto and by this
reference made a part hereof for the term, at the rental,
for the uses and purposes, and upon and subject to the
covenants, conditions and restrictions hereinafter set
forth.  The demise of the leased land is made subject to
taxes and assessments for the current fiscal year, not yet
delinquent and subject to covenants, conditions, reserva-
tions, restrictions, easements, rights and rights-of-way of
record.

### ARTICLE II
### TERM

The term of this Lease shall be for a period of eighty
(80) years commencing on the date first above written and
continuing until the anniversary of the eightieth (80th)
year thereafter, unless sooner terminated, as hereinafter
provided.  Tenant shall have no option to extend the term of
this Lease.  This Lease shall terminate as to any portion of
the leased land which is Sold and Conveyed as hereinafter
provided.  As hereinafter provided, this Lease shall ter-
minate as to any portion of the leased land which is Sold
and Conveyed unless Tenant elects to enter into an Affili-
ate Sublease or a Consumer Sublease.

### ARTICLE III
### USE AND DEVELOPMENT

3.01  Use.

At all times during the term of this Lease, Tenant
shall be entitled to use the leased land, buildings and

HOU 000746

other improvements constructed thereon for single family
residential use and for other purposes incidental thereto,
including, without limitation, recreational facilities and
sales offices, and Tenant may subdivide the leased land in
connection with such single family residental use and
development. Tenant covenants and agrees that it will not
use or suffer or permit the leased land, buildings and other
improvements constructed thereon to be used in a manner
which would constitute waste or which would constitute a
public or private nuisance. It is expressly understood and
agreed that Tenant's construction activities upon the leased
land shall not be deemed to constitute waste. As used in
the foregoing, "single family residential use" includes
condominiums, planned unit developments and other multiple
unit developments of a similar nature.

3.02  Compliance with Laws.

    Tenant covenants that during the lease term, Tenant
will comply, at no cost or expense to Landlord, with all
laws, ordinances, orders, rules, regulations and require-
ments of all federal, state and municipal governments and
appropriate departments, commissions, boards and officers
thereof, which may be applicable to the leased land, build-
ings and other improvements constructed thereon, or the
use or manner of use of the leased land. Tenant accepts the
leased land in the actual condition of the same as of the
date of this Lease.

3.03  Contest.

    Tenant shall have the right, after notice to Landlord,
to contest by appropriate legal proceedings, without cost or
expense to Landlord, the validity of any law, ordinance,
order, rule, regulation or requirement of the nature herein
referred to and to postpone compliance with the same,
provided such contest shall be promptly and diligently
prosecuted by and at the expense of Tenant and so long
as Landlord shall not thereby suffer any civil, or be
subject to any criminal penalties or sanctions, and Tenant
shall properly protect and save harmless Landlord against
any liability and claims for any such noncompliance or
postponement of compliance.

3.04  Development of the Leased Land; Dedications.

    3.04.01  Lessor's Cooperation: Power of Attorney.

        (a)  Landlord and Tenant (at no expense to
Landlord other than Landlord's time) shall take such actions
and shall execute such instruments, documents, applications
and/or certificates as Tenant may deem reasonably necessary
or desirable to obtain requisite governmental approvals for
the proposed development of the leased land or any portion
thereof and/or to facilitate use and development of all or
any portion of the leased land for the use permitted in
Section 3.01 above, including, but not limited to, execution
and delivery of the following:

-2-

HOU 000747

(i)   Instruments of dedication conforming with the provisions of this Section 3.04;

(ii)   Public utility conveyances;

(iii)   Applications to federal, state and local governmental agencies, together with all other instruments and documents reasonably necessary in order to obtain permits, reports, public reports, zoning, conditional use permits, variances and similar type items necessary for the proposed use and development; and

(iv)   Certificates to be affixed to subdivision maps, parcel maps, condominium plans and plans pertaining to the residential development.

(b)   Without limiting the foregoing, Landlord agrees to cooperate with Tenant in the development of the leased land in the manner of development set forth in Section 3.01 above, including, without limitation, attending a reasonable number of meetings with Tenant and/or jurisdictional government agencies.

(c)   In furtherance of paragraph (a) above, Landlord will, within three (3) days of a request from Tenant, execute, by one of its general partners who are named as signatories to this Lease, all of the documents or instruments described in paragraph (a).   If one of said named individuals has not executed such documents on behalf of Landlord within said period of time because of their unavailability or otherwise, Landlord, as provided in the Ground Lease (Short Form - Memorandum) executed by the parties concurrently herewith, hereby appoints Tenant as Landlord's attorney-in-fact to sign any and all of such documents.   Notwithstanding the execution of any of such documents by Tenant as Landlord's attorney-in-fact, Landlord agrees to execute any and all of such documents upon request therefor by Tenant.   In any event, Tenant shall promptly supply Landlord with copies of any document signed by Tenant as Landlord's attorney-in-fact.

3.04.02   Dedications.   In connection with the subdivision and development of the leased land, Tenant may cause subdivision tract maps to be filed of record which will show streets within the subdivision intended for use of the "Buyers of Lora", as such terms are defined herein, and their licensees, invitees, tenants, and servants; and, with respect to such streets, and all utility easements and rights-of-way, Tenant may, at its option, offer for dedication for public use thereof only its respective leasehold interest therein, in which event Landlord shall be required to offer for dedication for public use its respective leasehold interest therein; provided, however, that the reversionary interest of Landlord in the fee simple estate of the real property comprising the leased land therein will not be offered for dedication for public use upon the recording of any such subdivision tract maps or public

-3-

HOU 000748

utility conveyances unless required by the utility or the
City of Huntington Beach; or, provided further, Landlord
shall complete the dedications of the property of Landlord
pursuant to proceedings for Tentative Parcel Map No. 77-7
dated June 8, 1977 (subject to the undertakings of Tenant,
at no cost to Landlord to improve such areas within Edinger
Avenue required pursuant to the proceedings for Tentative
Parcel Map 77-7).

3.05  Construction.

Except as to offsite improvements which Tenant shall
construct pursuant to the proceedings under Tentative Parcel
Map No. 77-7, during the term of this Lease Tenant shall
have the right, but not the duty, to construct buildings and
improvements upon the leased land.  All buildings and
improvements now or hereafter constructed or located on the
leased premises by Tenant shall be the property of Tenant.

Landlord shall have the right to approve, for architec-
tural treatment, color and external appearance of materials
and the elevation design of the improvements which Tenant
intends to construct on the leased land prior to the com-
mencement of the construction of such improvements.  Land-
lord shall not unreasonably withhold such approval and
Landlord's sole consideration for granting or withholding
such approval shall be the preservation of the esthetics of
the leased land in reasonable harmony with the improvements
to Landlord's adjoining mobile home park.  Within thirty
(30) days of delivery to Landlord of plans showing the
foregoing, Landlord shall either approve such plans in
writing or give written notice to Tenant of Landlord's
disapproval, specifying the reasons therefor.  Failure to so
disapprove such plans within such time period shall be
deemed approval thereof.  In the event of such disapproval,
Tenant shall submit revised plans for Landlord's approval as
aforesaid, except that Landlord's time for approving or
disapproving said plans shall be shortened to ten (10)
days.  If Landlord disapproves the revised plans, all rental
payments hereunder shall abate until the revised plans are
either approved or deemed approved pursuant to the aforesaid
procedure for revised plans.  If such plans are not approved
or deemed approved within ninety (90) days of their original
submission to Landlord, Tenant may, at its option, terminate
this Lease by written notice to Landlord.  After such plans
are approved or deemed approved as aforesaid, Tenant shall
have the right, without the necessity of obtaining Land-
lord's consent, to make minor changes to such plans which
do not substantially affect the esthetic harmony of the
improvements to be built on the leased land with Landlord's
adjacent mobile home park.  However, Tenant shall promptly
deliver to Landlord copies of all such changes as they are
made.

Construction of improvements to the leased premises
shall be made in all cases subject to the following condi-
tions which Tenant covenants and agrees to observe and
perform:  (a) no construction shall be undertaken until
Tenant shall have procured and paid for, so far as the same

-4-

HOU 000749

may be required from time to time, all municipal and other
governmental permits and any authorizations of the various
municipal departments and government subdivisions having
jurisdiction, and the Landlord agrees to join, at the
expense of the Tenant, in the application for any such
permits or authorizations whenever such action is necessary;
and (b) all work done in connection with such construction
shall be done promptly using quality materials and in a
good and workmanlike manner at no cost or expense to Land-
lord and in compliance with the applicable municipal build-
ing and zoning laws and with all other laws, ordinances,
orders, rules, regulations and requirements of federal,
state and municipal governments and appropriate departments,
commissions, boards and officers thereof; the cost of all
construction shall be paid in cash or its equivalent, so
that the leased land shall at all times be free of liens for
labor and materials supplied to the leased land.

Tenant agrees to (i) indemnify Landlord against and
to hold Landlord harmless from any and all damages of any
nature suffered by owners of adjacent property (including
Landlord) by reason of the acts or negligence of Tenant
on the leased land; and (ii) protect the land and improve-
ments of adjoining owners (including Landlord) against
damage caused by said construction and improvements of the
leased land as required by law.

Landlord shall have the right at any time and from time
to time to post and maintain on the leased land such
notices as may be necessary to protect the leased land
and Landlord from mechanic's liens, materialmen's liens or
liens of a similar nature. On or before ten (10) days
prior to the commencement of any work of improvement by
Tenant on the leased land, Tenant shall give notice thereof
to Landlord and with the date expected by Tenant for the
commencement of such construction.

Tenant may at any time alter, improve or remodel any
building, structure or other improvement constructed or
placed by Tenant on the leased land.

3.06  Residential Leases.

3.06.01  Definitions.

(a)  The term "Placed under Development" for
purposes of this Lease shall mean all those portions of the
leased land which shall, subsequent to the date hereof, be
made the subject of a recorded subdivision map or parcel map
(including all streets, easements and rights-of-way within
the areas covered by any such subdivision map or parcel
map), together with those portions of the leased land
hereafter conveyed or dedicated by Tenant for public utility
purposes.

(b)  The term "Lot" shall mean any lot into
which the leased land or any portion thereof has been
subdivided, and as used herein, shall include, without
limitation, any condominium into which the leased land or

-5-

HOU 000750

any portion thereof has been divided pursuant to the provisions of Section 1350, et seq., of the California Civil Code.

(c)  The term "Buyer" is defined to mean any person, firm or corporation who is a purchaser of any structure located or to be located upon any Lot and who executes a Residential Lease or a Consumer Sublease as lessee.

(d)  The term "Sold and Conveyed", as used herein, is defined to mean the execution and delivery of a Residential Lease or a Consumer Sublease, the term of which shall (i) commence concurrently with delivery; (ii) in the case of a Residential Lease be equivalent with the then remaining term of this Lease; and (iii) in the case of a Consumer Sublease be equivalent to the then remaining term of this Lease less one (1) day.

(e)  The term "Residential Lease", as used herein, shall mean a lease between Landlord and any Buyer (and the homeowners association in the case of common facilities with appropriate modifications) in the form attached hereto as Exhibit "B", and by this reference incorporated herein and made a part hereof as if set forth in full herein, with appropriate modification if the improvements are sold as condominiums.

(f)  The term "Consumer Sublease" shall be defined in Section 3.08(b) below.

3.06.02    Execution of Residential Leases.

(a)  After Tenant shall have first obtained the appropriate governmental approvals, Tenant may offer the Lots be Sold and Conveyed to the general public together with, at the election of Tenant, an appurtenant membership in any homeowners association organized and incorporated to be the lessee of a Residential Lease of the common facilities, hereafter provided and/or to administer subdivision servitudes.  It is the intention of the parties that Tenant shall sell the building and other improvements it constructs on the Lots to Buyers.  All amounts received by Tenant upon the sale of improvements shall be the sole property of Tenant, and the Landlord shall not be entitled to any portion thereof.

(b)  When each Lot is Sold and Conveyed Landlord will execute, within fifteen (15) days following the request of Tenant, individual Residential Leases with the Buyers.  Each Residential Lease shall be subject to no monetary encumbrances other than current taxes; however each Lot shall, at the election of Tenant, be subject to subdivision servitudes (if such be the case, such servitudes shall be mutually approved in writing by Landlord, who agrees not to unreasonably withhold its consent, and by Tenant) and each Buyer's estate shall be subject to appropriate assessments for upkeep and replacement of common

-6-

HOU 000751

facilities. This Lease shall, upon the commencement of
the lease term of each Residential Lease, terminate as to
the real property covered by the Residential Lease. The
improvements on any Lot shall remain the sole property of
the Buyer. This Lease shall also terminate upon the con-
veyance or dedication of any portion of the leased land to a
public entity or public utility.

(c) At all times the total of the basic
rental remaining payable under this Lease and the basic
rental payable under the aggregate of the Residential Leases
shall be equal to the rental payable under Article IV of
this Lease as if no Lots had been Sold and Conveyed. For
the purposes of the foregoing, each Residential Lease, which
may be terminated by Landlord, as lessor, by reason of an
event of default by the Buyer under a Residential Lease,
shall nevertheless for the purposes of this provision be
deemed to still be in effect and the rental which would have
been paid thereunder shall be accounted for with respect to
the foregoing determinations. It is anticipated by the
parties that the basic rental as provided for herein shall
be uniformly divided among the Lots. Tenant shall be
discharged and exonerated under this Lease as to each
Lot Sold and Conveyed; however, Tenant shall nevertheless
remain obligated with respect to all covenants made by
Tenant with Buyers and for all warranties and representa-
tions, express or implied, in favor of the Buyers; Tenant
shall indemnify and hold Landlord free and harmless from all
liability with respect to such covenants, warranties and
representations in favor of Buyer whether or not disclosed
to Landlord.

<u>3.07 Common Facilities.</u>

Tenant may choose to construct within portions of the
leased land Placed under Development recreational or other
common facilities (which shall include streets) for the use
and enjoyment of Buyers and convey such facilities to an
association organized and incorporated to acquire the same.
Upon such conveyance and upon request of Tenant, Landlord
shall execute a Residential Lease or Consumer Sublease, as
lessor, with such association, as lessee, for a term equiva-
lent to the unexpired period of this Lease, at basic rental
of ONE ($1) DOLLAR per year. The land area of such recrea-
tional or common facilities (exclusive of streets) shall not
exceed twenty-six thousand eight hundred (26,800) square
feet without Landlord's prior written approval if a multi-
phase development is elected. No Lot or Lots of the common
facilities shall be Sold and Conveyed unless and until the
following conditions shall have occurred:

(a) Tenant shall have first obtained the govern-
mental approvals necessary to permit all Lots (or in the
case of a multi-phase development, the Lots within the
initial phase) benefited by such common facilities to be
Sold and Conveyed to Buyers.

(b) No less than forty (40%) percent of all
buildings and other improvements to the Lots (or in the case

-7-

HQU 000752

000067

of a multi-phase development, no less than forty (40%) percent of the lots within the initial phase) benefited by such common facilities shall have been substantially completed, or, in the event a condominium development is elected, completion assured by surety arrangements approved by the California Department of Real Estate).

(c)   The mortgagee, as that term is hereafter defined, shall have executed and delivered a reconveyance of any lien on the Lot or Lots of the common facilities so conveyed to such association.

(d)   The construction of the common facilities shall have been fully completed or completion assured by surety arrangements approved by the California Department of Real Estate.

3.08   Tenant's Right to New Leases; Consumer Subleases.

(a)   Tenant, at any time and from time to time may at its election designate certain parcels of the leased land to be subject to separate leases between Tenant and Landlord.  Without limiting the generality of the foregoing, Tenant may obtain hereunder separate leases for some or all of the Lots into which the leased land is divided.  These parcels shall comply with all requirements of the Subdivision Map Act and all other applicable laws.  Upon written request by Tenant, Landlord shall execute new leases to parcels of the leased land as designated by Tenant and shall amend this Lease to reflect that such parcels are no longer subject to this Lease.  The terms and conditions of the new leases and this Lease, as amended, shall be the same as the terms and conditions of this Lease with the exception that the annual rent shall be divided among the leases based on the proportion which the square footage of the parcel governed by any such lease bears to the total square footage of the leased land.  Notwithstanding the foregoing, in the event that Tenant designates a Lot for a separate lease hereunder, the annual rent payable under the lease for such Lot shall be equal to the annual rent payable under this Lease multiplied by a fraction, the numerator of which is one and the denominator of which is the total number of Lots into which the leased land is divided.

(b)   As to such Lots for which Tenant has obtained separate leases, and notwithstanding any other provision of this Article III, Tenant may elect to enter into a sublease with the Buyer of any such Lot in the form attached hereto as Exhibit D with appropriate amendments if the Lots are Sold and Conveyed as condominiums (referred to in this Lease as a "Consumer Sublease") instead of causing such Lot to be Sold and Conveyed pursuant to a Residential Lease.  This Lease shall not terminate when any such Lot is Sold and Conveyed pursuant to a Consumer Sublease.  Tenant, or its permitted development subleasee, as provided in Section 6.01.03 below, may offer Lots to be Sold and Conveyed to the public as provided in Section 1.06.02(a), but reading "Consumer Sublease" for "Residential Lease" therein.  Tenant may sublease common facilities Lots to a homeowners associa-

-8-

HOU 000753

tion formed from among Buyers under Consumer Subleases as appropriately modified, but subject to the restrictions of Section 3.07 above. The use of Consumer Subleases shall not affect, among other things, Landlord's obligation under Section 3.04.02 or Tenant's ability to impose subdivision servitudes providing for assessments against Buyers as provided in Section 3.06.02(b).

(c)   Tenant shall be solely liable with respect to all covenants made by Tenant with Buyers and for all warranties and representations, express or implied, in favor of the Buyers under the Consumer Subleases. Tenant shall indemnify and hold Landlord free and harmless from all liability with respect to such covenants, warranties and representations in favor of Buyer whether or not disclosed to Landlord.

(d)   Landlord hereby agrees with Tenant for the benefit of all Buyers under Consumer Subleases that:

(i)   So long as such Buyer is not in default in the payment of rental or other charges due under the Consumer Sublease or in the performance of any of the other terms, covenants or conditions of the Consumer Sublease on such Buyer's part to be performed, such Buyer's possession of the Lot subject to such Consumer Sublease and such Buyer's other rights and privileges under the Consumer Sublease shall not be interfered with by the Landlord, its successors or assigns.

(ii)   Should this Lease be terminated prior to the expiration of the term hereof or any extensions of said term for any reason whatsoever, including without limitation, as a result of Tenant's breach thereof or default thereunder, the Consumer Sublease shall continue in full force and effect as a direct lease between Landlord and the Buyer under the Consumer Sublease, upon and subject to all of the terms, covenants and conditions of the Consumer Sublease for the balance of the term thereof remaining, provided that such Buyer attorns to Landlord in writing. Notwithstanding the foregoing, Landlord shall not be bound by any act or omission of Tenant as the prior sublessor under the Consumer Sublease. Landlord shall not be bound by any prepayment of rent (other than through the Payment Agreement referred to in subparagraph 3.08(d)(iv)) or other charges which such Buyer might have paid for more than three (3) months in advance to Tenant as the prior sublessor, and Landlord shall not be bound by any amendment to or modification of any Consumer Sublease or by any waiver or forbearance on the part of Tenant as the prior sublessor thereunder made or given without the written consent of Landlord.

(iii)   If, the provisions of the foregoing notwithstanding, a Consumer Sublease is terminated by reason of any termination of this Lease, it is hereby agreed that the Buyer under such Consumer Sublease and

-9-

HOU 000754

May-01-02  04:18pm  From-RUTAN & TUCKER LLP,                     714-546-9035                T-234  P.11/28  F-670

Landlord shall enter into a new lease upon the terms
and conditions of the Consumer Sublease for the then
remaining balance of the term of the Consumer Sublease.

(iv)  In the event that such Consumer Sub-
leases shall call for the payment of rent less fre-
quently than quarter annually, the provisions of
subparagraph 3.08(d)(ii) shall only be applicable if
Landlord and Tenant enter into a Payment Agreement
under the terms of which all rental to be paid by
Buyers under the terms of the Consumer Sublease will be
paid to a neutral depository, such as a bank, savings
and loan, trust company or escrow company.  Such
neutral depository shall be instructed to remit
to lessor from such sum collected the amount due under
this Lease attributable to the Lot subject to the
Consumer Sublease and to remit the balance to the
Tenant.

ARTICLE IV
RENTAL

4.01   Basic Rental.

Tenant agrees to pay to Landlord as basic rental for
the use and occupancy of the leased land, an annual sum of
SEVENTY-TWO THOUSAND TWO HUNDRED TWENTY ($72,220.00) DOLLARS
calculated at TEN THOUSAND ($10,000.00) DOLLARS per acre,
multiplied by 7.222 acres, being the number of acres within
Parcel 1 of Parcel Map recorded in Book 108, pages 47 and
48, inclusive, Official Records of Orange County, Cali-
fornia, subject to adjustment as provided in Section 4.03
below.  Basic rental shall be payable in twelve (12)
equal monthly installments of SIX THOUSAND EIGHTEEN DOLLARS
AND THIRTY-THREE CENTS ($6,018.33) each, due and payable in
advance on the first day of each calendar month during the
term hereof, without deduction or offset, in lawful money of
the United States of America at such place as Landlord from
time to time shall direct in writing to Tenant.

4.02   Commencement of Rentals.

Rental payments shall commence on the first day of
the calendar month next following the date first above
written if such date be a date other than the first day of a
calendar month.  In addition to the first full month's rent,
Tenant shall pay at such time an additional pro rata rent
representing the period between the term commencement date
and the first day of the next succeeding calendar month,
based on a thirty (30) day month and a three hundred sixty
(360) day year.

4.03   Adjusted Rental.

(a)  When a Residential Lease, but not a Consumer
Sublease, is Sold and Conveyed, the basic rental payable by
Tenant shall be reduced by the amount of rental payable to
Landlord under such Residential Lease.

-10-

HOU 000755

May-01-02  04:18pm  From-KUTAK & TUCKER LLP,                    714-546-9035              T-234  P.12/28  F-670

(b)   Upon the expiration of the twentieth (20th), fortieth (40th) and sixtieth (60th) year of the term of this Lease, the rental payable hereunder shall be adjusted to a sum equal to eight (8%) percent of the unimproved fair market value of the leased land, or any portion then remaining subject to this Lease, at the end of said twentieth (20th), fortieth (40th) or sixtieth (60th) year, as the case may be.  After any such adjustment of rental, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner provided in Section 4.01 above; provided, however, in no event shall the rental as so adjusted be less than an annual rental at least equal to TEN THOUSAND ($10,000.00) DOLLARS per acre for the portion of the leased land then subject to this Lease (calculated to exclude the area of the reserved easement described in Exhibit A).  If, upon the expiration of the twentieth (20th), fortieth (40th) or sixtieth (60th) year, as the case may be, the parties hereto shall have failed to agree upon such adjusted rental, the fair market value of the leased land (or portion thereof then subject to this Lease), as unimproved, and the adjusted rental, shall be determined by arbitration pursuant to subparagraph (c) of this Section.

(c)   Within ten (10) days of the expiration of the twentieth (20th), fortieth (40th) or sixtieth (60th) year of the term of this Lease, as the case may be, each of the parties hereto shall appoint in writing an arbitrator and give written notice thereof to the other party; or, in case of the failure of either party so to do, the other party may apply to the Superior Court of Orange County, California, to appoint an arbitrator to represent the defaulting party in the manner prescribed in the then existing statutes of the State of California, applicable to arbitration, the provisions of which statutes shall apply to and govern the arbitration herein provided for with the same effect as though incorporated herein.  Within ten (10) days after the appointment of said two (2) arbitrators (in either manner), they shall appoint, in writing, a third arbitrator and give written notice thereto to Landlord and Tenant and, if they shall fail to do so, then either party hereto may make application to said Superior Court to appoint such third arbitrator in the manner prescribed in said arbitration statutes.

The three (3) arbitrators so appointed (in either manner) shall promptly fix a convenient time and place in the County of Orange for hearing the matter to be arbitrated and shall give reasonable written notice thereof to each of the parties hereto and with reasonable diligence shall hear and determine the matter in accordance with the provisions hereof and of said arbitration statutes, and shall execute and acknowledge their award thereon in writing and cause a copy thereof to be delivered to each of the parties hereto, and the award of a majority of said arbitrators shall determine the question arbitrated, and a judgment may be rendered by said Superior Court confirming said award, or the same may be vacated, modified or corrected by said Court

-11-

HOU 000756

May-01-02  04:19pm   From-RUTAN & TUCKER LLP,                714-546-8055              T-234  P.13/28  F-870

at the instance of either of the parties hereto, in accor-
dance with said arbitration statutes, and said judgment
shall have the force and effect as provided in said
statutes.

Each of the parties hereto shall pay for the services
of its appointee, attorneys and witnesses and one-half (1/2)
of all other proper costs of arbitration.  Pending the final
decision of such adjusted rental, Tenant shall pay to
Landlord the amount of rent previously payable under Section
4.01 above as adjusted pursuant to Section 4.03(a) above.
If such adjusted rental, as finally determined, shall exceed
the amount of the previous rental, the excess amount ac-
cruing during the interim period shall be paid by Tenant to
Landlord within thirty (30) days after the final determina-
tion of said adjusted rental.  If such adjusted rental, as
finally determined, shall be less than such previous rental,
the amount of any excess paid by Tenant during said interim
period shall be credited against the first rentals there-
after payable hereunder.

<div align="center">

ARTICLE V
TAXES AND ASSESSMENTS
</div>

5.01    Tenant to Pay Taxes and Assessments.

In addition to the basic rental, Tenant shall
pay and discharge all taxes and general and special assess-
ments which may be levied upon or assessed against the
leased land (or the portion thereof being subject to this
Lease at the time such taxes become payable), and all
interest therein and all improvements and other property
thereon, and upon all rentals payable on this Lease (in the
event that county secured real property taxes be assessed in
whole or in part either on an ad valorem basis upon the
leased land or upon rentals payable under the terms of the
Lease thereof) as such taxes and assessments become due and
payable during the term of this Lease.  Taxes and assess-
ments for the current fiscal year shall be prorated between
Landlord and Tenant to the term commencement date.  Tenant
shall pay each installment of said taxes and assessments not
later than the delinquency date thereof.  Notwithstanding
the foregoing, if Tenant shall, in good faith, contest the
validity of said taxes and assessments, then Tenant, upon
furnishing a sufficient surety bond to Landlord, may with-
hold payment pending settlement of its claim or may pay the
same under protest and, in either case and at Tenant's
expense, shall defend itself and Landlord against the same
and shall pay and satisfy any adverse judgment that may be
rendered thereon before the enforcement thereof against
Landlord or the leased land.  Landlord shall remain re-
sponsible for its income tax payable on revenue derived from
this Lease and all estate, inheritance, gift taxes and taxes
of a similar nature.

5.02    Tenant's Indemnity Re Taxes and Assessments.

Tenant agrees to protect and hold harmless Landlord
and the leased land and all improvements in, on and about

<div align="center">

-12-
</div>

HOU 000757

the leased land from all liability for any taxes and as-
sessments for which Tenant is obligated pursuant to Section
5.01 above, together with any interest, penalties or other
charges imposed and from any sale or other proceeding to
enforce payment thereof.

5.03  Lack of Separate Assessment.

Tenant's obligations pursuant to Section 5.01 presume
that the county tax assessor will separately assess the
leased land and will send the tax bill therefor directly to
Tenant.  If the assessor sends the tax bill to Landlord,
Tenant agrees to make the payments required under Section
5.01 within ten (10) days after Tenant's receipt from
Landlord of a copy of any tax bill received by Landlord.

5.04  Tenant Entitled to Refund.

It is agreed that any refund made in any taxes or as-
sessments paid by Tenant pursuant to this Article shall be
the sole property of Tenant, and if any such refund is mis-
takenly paid to Landlord, Landlord agrees to immediately,
and in no event later than three (3) days, pay the same
over to Tenant.

5.05  Installment Election for Assessments.

Notwithstanding any other provision of this Article,
Tenant may elect, as to any assessment levied against the
leased land during the term of this Lease, to take advan-
tage of the ability to cause such assessments to be payable
in installments instead of in a lump sum.  In such event,
Tenant shall only be responsible to pay the installments
which come due and payable during the term hereof.

ARTICLE VI
ASSIGNMENT AND ENCUMBRANCE

6.01  When Landlord's Consent Required.

6.01.01   Landlord's Consent Required.  Except as
provided in Article III and in this Article VI, Tenant shall
not encumber, assign or otherwise transfer this Lease, or
sublet the whole or any part of the leased land without the
prior written consent and approval of Landlord, which
consent shall not be unreasonably withheld.  Except as
otherwise so permitted in this Lease, no assignment or other
transfer, whether voluntary or involuntary, by operation of
law, under legal process, by receivership, in bankruptcy, or
otherwise, shall be valid or effective without the express
prior written consent and approval of Landlord.

6.01.02  Assignments For Which Landlord's Consent
Not Required.

(a)(1)  If the Tenant be Robert P. Warming-
ton, Tenant shall have the right, without obtaining Land-

-13-

HOU 000758

May-01-02  04:18pm  From-RUTAN & TUCKER LLP,                   +714-546-9035                    T-234  P.15/28  F-870

lord's consent, to assign its interest under this Lease
to The Robert P. Warmington Co., a California corporation
(as used herein The Robert P. Warmington Co. includes any
corporation which succeeds to the assets of such corporation
by merger, consolidation or purchase), to any other corpora-
tion in which Tenant (or The Robert P. Warmington Co.) has
greater than a fifty (50%) percent proprietary interest, to
any partnership or joint venture in which Tenant (or The
Robert P. Warmington Co.) or any such other corporation or
entity is the managing partner and to the heirs, devisees
and personal representatives of Optionee.

(a)(2)  If the Tenant be The Robert P.
Warmington Co., a California corporation (or successor as
provided in subsection (a)(1) above), Tenant shall have the
right, without obtaining Landlord's consent, to assign its
interest under this Lease to Robert P. Warmington, an
individual, to any corporation in which Tenant or said
individual has greater than a fifty (50%) percent proprie-
tary interest, to any partnership or joint venture in which
Tenant or said individual or any such corporation or
entity is the managing partner, and to any corporation
or other entity which succeeds to Tenant's interest by
merger, consolidation or by sale of all or substantially all
of Tenant's assets.

(b)  Tenant shall further have the right to
assign its interest under this Lease to any individual,
corporation or entity which, at the time of the assignment,
has a net worth of not less than THREE MILLION ($3,000,000)
DOLLARS and has experience substantially equal to that of
Tenant in building and marketing single-family residences of
the type to be built on the leased land.  Robert P. Warming-
ton and The Robert P. Warmington Co. shall each be consider-
ed as having identical experience.

(c)  In the event of any assignment which
complies with the foregoing, the assignor shall be released
of any and all liability arising under this Lease from and
after the effective date of the assignment.

(d)  Notwithstanding the foregoing, within ten
(10) days of a request therefor, Landlord shall execute an
instrument in recordable form consenting to any assignment
or other transfer made without its consent pursuant hereto.

6.02  Hypothecation.

Landlord agrees and consents that Tenant may, without
Landlord's prior consent, at any time and from time to time,
mortgage, encumber, assign and hypothecate by mortgage
or deed of trust (either of which is herein termed a "mort-
gage") all right, title and interest of Tenant in the
leasehold estate created by this Lease to a lender (herein
called "mortgagee").  Notwithstanding the foregoing, within
ten (10) days of a request therefor from Tenant, Landlord
agrees to execute an instrument in recordable form consent-
ing to any such mortgage, encumbrance, assignment or hypo-

-14-

HOU 000759

May-01-02  04:20pm   From-RUTAN & TUCKER LLP,              714-546-9035              T-234  P.16/28  F-670

thecation. If, notwithstanding the foregoing, Tenant's leasehold interest hereunder terminates under such foreclosure, assignment in lieu of foreclosure, the mortgagee shall be entitled to a new lease upon the same terms as this Lease and subject only to those things caused, created or consented to by Landlord to which Tenant's leasehold estate hereunder is subject as of the date of the recordation of the mortgage.

Except as hereinafter otherwise provided, the mortgage and all rights thereunder shall be subject to each and every of the covenants, conditions and restrictions of this Lease, and the same shall be subject to all rights and interest of Landlord, none of which shall be deemed waived by the foregoing consent. Tenant agrees to furnish to Landlord copies of all instruments, indentures or agreements executed by Tenant, and to be recorded, to perfect the hypothecation of the leasehold estate to a mortgagee.

Any mortgagee shall have the right at any time during the term hereof while this Lease is in full force and effect:

(a)  To do any act required of Tenant hereunder, and all such acts done or performed shall be effective to prevent a forfeiture of Tenant's rights hereunder as if the same had been done or performed by Tenant; and

(b)  To rely on the security afforded by the leasehold estate and to acquire and to succeed to the interest of Tenant hereunder by foreclosure, whether by judicial sale, by power of sale contained in any security instrument, or by assignment given in lieu of foreclosure, and thereafter convey or assign title to the leasehold estate so acquired to any other person, firm or corporation without the consent of Landlord as to the such initial transfer.

Landlord shall give written notice to mortgagee of any default by Tenant. Landlord shall not terminate this Lease by reason of such default of Tenant if the mortgagee shall:

(i)  Cure such default within sixty (60) days after service on mortgagee of written notice from Landlord of Landlord's intention to terminate this Lease, except, however, (if the same cannot be cured by payment of rent, taxes, assessments and insurance premiums and other cash charges payable by Tenant hereunder within sixty (60) days) mortgagee shall have a reasonable time after sixty (60) days within which to cure such default so long as mortgagee is proceeding to cure such default with reasonable diligence, or

(ii)  Undertake on or before the expiration of said sixty (60) days or said reasonable time, in writing to perform all covenants of this Lease capable

-15-

HOU 000760

May-01-02  04:20pm   From-RUTAN & TUCKER LLP,                  714-546-9035           T-234  P.17/28  F-670

of performance by mortgagee.  In the event of such undertaking, or in the event such default is not susceptible of being cured by mortgagee, such default shall be deemed cured if mortgagee shall proceed in a timely and diligent manner to accomplish the foreclosure of Tenant's interest; provided, however, that if said foreclosure proceedings shall be subject to leave of any court (as in the case of a bankruptcy proceeding) and such leave shall have been applied for but not obtained by mortgagee, such default shall be deemed cured nevertheless, if mortgagee shall have attempted to obtain such leave in a timely and diligent manner. The obligation of mortgagee for the performance of the terms of this Lease shall terminate upon the sale, transfer or assignment of the right, title and interest of mortgagee in the leasehold estate to any other person, firm or corporation.

Any provisions contained in this Lease to the contrary notwithstanding, any mortgagee or its assignee may enforce such mortgage and acquire title to the leasehold estate in any lawful manner and, pending foreclosure of any such mortgage, may take possession of and rent the leased land and upon foreclosure of such mortgage may, without further consent of Landlord, sell, transfer or assign the leasehold estate or sublet the leased land.  Any purchase money, mortgage or deed of trust delivered in connection with any such assignment or transfer shall be entitled to the benefit of all of the provisions of this Lease regarding the rights of a mortgagee.  Any person acquiring the leasehold estate from mortgagee shall, as a condition precedent to the enjoyment of the leasehold estate, assume in writing the liability for the performance of the obligations imposed upon Tenant by the terms of this Lease.  Mortgagee shall furnish Landlord with an executed copy of the instrument of assignment or transfer and a copy of the undertaking made in accordance with the foregoing provisions. Upon said assumption the assignor shall be released from all obligations for performance of the terms of this Lease.

The foregoing provisions do not give any person the right to mortgage, hypothecate or otherwise encumber or to cause any liens to be placed upon the freehold estate of Landlord, nor shall the foregoing provisions in any event be construed as resulting in a subordination in whole or in part of the freehold estate of Landlord to any indebtedness of Tenant.

Notwithstanding the foregoing provisions, until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this Lease, consent to any modification hereof or consent to the assignment hereof, or of any part or portion, of the term created thereby or of any interest therein; provided, however, at the time a Lot is Sold and Conveyed by a Residential Lease, there shall be recorded a reconveyance of the lien of the mortgagee covering such Lot Sold and Conveyed by a Residential Lease.

-16-

HOU 000761

May-01-02  04:21pm   From-RUTAN & TUCKER LLP,                   714-546-9035          T-234   P.18/28   F-870

6.03  Subleases For Which Landlord's Consent Not Required.

    (a)   Landlord's consent shall not be required for
any Consumer Subleases or for any subsequent transfer of the
subleasehold estate thereunder.

    (b)   Tenant shall have the right, without Land-
lord's prior consent, to sublease its leasehold estate
hereunder to any person or entity described in Section
6.01.02(a)(1).   Said sublease is herein referred to as an
"Affiliate Sublease".

## ARTICLE VII
## LIENS

    Tenant shall not suffer or permit to be enforced
against the leased land, or any part thereof, any
mechanics', laborers', materialmen's, contractors', subcon-
tractors', or any other liens arising from or any claim for
damages growing out of any work of construction or improve-
ment, or any other claim or demand howsoever the same may
arise, but Tenant shall pay or cause to be paid all of said
liens, claims and demands before any action is brought to
enforce the same against the leased land, and Tenant hereby
indemnifies and agrees to hold Landlord and the leased land
free and harmless from all liability for any and all such
liens, claims and demands, together with all costs and
expenses, including, but not limited to, attorneys' fees and
court costs incurred by Landlord in connection therewith,
and Landlord shall have the right, at any time and from time
to time, to post and maintain on the leased land, or any
part thereof, such notices of nonresponsibility as desired
by Landlord or as may be provided by law.   Notwithstanding
anything to the contrary contained in this paragraph, if
Tenant shall, in good faith, contest the validity of any
such lien, claim or demand, then Tenant shall, at its
expense, defend itself and Landlord against the same and
shall pay and satisfy any adverse judgment that may be
rendered thereon before the enforcement thereof against
Landlord or the leased land, and if Landlord shall require,
Tenant shall furnish to Landlord a surety bond satisfactory
to Landlord in an amount equal to such contested lien, claim
or demand indemnifying Landlord against liability for same;
or, if Landlord shall request, Tenant shall procure and
record the bond provided for in the Civil Code of the State
of California, or any comparable statute hereafter enacted
providing for a bond freeing the leased land from the effect
of such lien or claim or action thereon.

## ARTICLE VIII
## INDEMNIFICATION AND INSURANCE

8.01  Indemnity.

    Landlord shall not be liable for any loss, damage,
injury or claim of any kind or character to any person
(including a Buyer) or property arising from or caused by

-17-                  HOU 000762

May-01-02  04:21pm  From-RUTAN & TUCKER LLP,                714-546-9035              T-234  P.19/28  F-670

the use or development of the leased land and the construc-
tion of improvements thereon, including, without limitation,
any such loss, damage, injury or claim arising from or
caused by (i) any use of the leased land, or any part
thereof; (ii) any defect in the design, construction of or
material in any structure or other improvement upon the
leased land or in any other facility therein; (iii) any
defect in soils or in the preparation of soils or in the
design and accomplishment of grading; (iv) any act or
omission of Tenant or any of its agents, employees,
licensees, invitees or contractors; (v) any accident on the
leased land or other casualty thereon; (vi) any represen-
tations by Tenant or any of its agents or employees; (vii) a
violation or alleged violation by Tenant, its employees or
agents, of any law now or hereafter enacted; (viii) any
other cause whatsoever in connection with Tenant's use of
the leased land; or (ix) the application of the principles
of strict liability with respect to any act or omission
during the term of this Lease of Tenant or its agents,
employees, licensees, invitees or contractors in connection
with the leased land, and Tenant, as a material part of the
consideration of this Lease, except to the extent occasioned
by the sole act or negligence or willful misconduct of
Landlord or its employees, hereby waives on its behalf all
claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby indemnifies and
agrees to hold Landlord entirely free and harmless from all
liability for any such loss, damage, injury or claim with
respect to any person or property made by other persons, and
with respect to any such violations or charges arising
therefrom, including, without limitation, attorneys' fees
and court costs incurred by Landlord in connection there-
with.

8.02  Insurance.

        Tenant shall maintain at all times during the term
of the Lease, at its expense and in companies acceptable to
Landlord:

        (a)   Workmen's compensation insurance and employ-
er's liability insurance.

        (b)   Comprehensive liability insurance, with limits
of not less than FIVE HUNDRED THOUSAND ($500,000) DOLLARS
for any one person; ONE MILLION ($1,000,000) DOLLARS for any
one occurrence as to bodily injury or death; and ONE HUNDRED
THOUSAND ($100,000) DOLLARS per occurrence as to property
damage.

        Each policy of insurance shall be issued by insurers of
recognized responsibility, qualified to do business in
California, acceptable to Landlord and which has, at the
execution hereof, a rating at least equal to AXV by Best's
Insurance Guide (or other equivalent rating if such Guide be
discontinued) and shall name Landlord as an additional
insured.  Prior to the time of commencement of this Lease,
Tenant shall deliver certificates of insurance carriers of

-18-                    HOU 000763

000078

May-01-02 04:21pm   From-RUTAN & TUCKER LLP,                          714-546-9035         T-234   P.20/28   F-670

each policy of insurance as evidence of compliance with the above requirements and stating that not less than ten (10) days' written notice will be given to Landlord prior to cancellation or reduction in coverage or amount.

8.03  Landlord's Indemnity.

The parties agree that Tenant shall have no liability by reason of the fact that a portion of Monterey Lane lies within an easement on the leased land as described on Exhibit A.  Landlord hereby agrees to indemnify and hold Tenant and any community association formed by Tenant to service the residents of the leased land absolutely free and harmless from any loss, damage, injury, claim or cause of action of any kind arising out of the use, improvement or maintenance of said Monterey Lane, including, without limitation, attorneys' fees and court costs.

ARTICLE IX
REMOVAL

Upon the expiration of the term of this Lease, Tenant shall quit and surrender possession of the leased land to Landlord.  Upon the expiration of the term of this Lease, Tenant shall have the right to remove from the leased land any improvements erected on the leased land by Tenant and which, at the time of such expiration, remain the property of Tenant.  Tenant shall promptly repair any damage to the leased land caused by such removal.  If Tenant has not completed such removal within sixty (60) days of the expiration of the term hereof, all of such improvements shall automatically become the property of Landlord without the payment of any consideration therefor.  In addition, before surrendering possession of the leased land as aforesaid, Tenant shall, without expense to Landlord, remove or cause to be removed from said leased land all movable signs, furnishings, equipment, trade fixtures, merchandise and other movable personal property installed or placed therein, and all debris and rubbish, and Tenant shall repair all damage to the leased land resulting from such removal.  Upon such expiration, and if requested by Landlord, Tenant shall, within five (5) days of a request therefor, execute, acknowledge and deliver to Landlord an instrument in writing releasing and quitclaiming to Landlord all right, title and interest of Tenant in and to said leased land by reason of this Lease or otherwise.  If Tenant fails to remove any of its signs, furnishings, equipment, trade fixtures, merchandise or other personal property within thirty (30) days after the expiration or earlier termination of this Lease, then Landlord may, at its sole option, (i) deem any or all of such items abandoned as the sole property of Landlord; or (ii) remove any or all of such items and dispose of same in any manner or store same for Tenant, in which event the expense of such disposition or storage shall be borne by Tenant and shall be immediately due and payable.

-19-

HOU 000764

May-01-02  04:22pm   From-RUTAN & TUCKER LLP                  914-646-8639          T-234   P.21/28   F-670

## ARTICLE X
### CONDEMNATION

The words "condemnation" or "condemned", as used
in this paragraph, shall mean the exercise of, or intent to
exercise, the power of eminent domain expressed in writing,
as well as the filing of any action or proceeding for such
purpose, by any person, entity, body, agency or authority
having the right or power of eminent domain (the "condemning
authority" herein), and shall include a voluntary sale to
any such condemning authority, either under the threat of
condemnation or while condemnation proceedings are pending,
and the condemnation shall be deemed to occur in point of
time upon the actual physical taking of possession pursuant
to the exercise of said power of eminent domain. All award
or compensation paid upon condemnation shall be allocated as
follows: (1) Prior to the time the leased land or any
portion is Placed under Development, the entire award shall
be allocated, paid to and be the sole property of Landlord,
except for Tenant's hard costs which shall be paid out of
said award to Tenant, and (2) after the time the leased land
or any portion thereof has been Placed under Development the
entire award shall be allocated as follows: (a) to Tenant,
a sum equal to the total of (i) the then fair market value
of the buildings and other improvements constructed or
installed by Tenant on the leased land; and (ii) the then
fair market value of Tenant's leasehold interest in the
leased land representing the present value of the aggre-
gate of the difference, if any, between (a) the economic
rental and (b) the basic rental, for the unexpired period
prior to a basic rental adjustment as provided in Article
IV; and (b) to Landlord, the remainder. Landlord may,
with Tenant's written consent, agree to sell and/or convey
the leased land or portion thereof to the condemning author-
ity without first requiring that action or proceeding shall
be instituted or, if any such action or proceeding shall be
instituted, without requiring any trial or hearing thereof.
All amounts paid by the condemning authority upon such
voluntary sale or conveyance shall be allocated as provided
above.

In determining the portion of a condemnation award
or a payment for voluntary sale or conveyance under threat
of condemnation, any appraisal performed by the condemning
authority in connection with such award or conveyance shall
be controlling. In the absence of such appraisal or agree-
ment between Landlord and Tenant as to such amounts, each
shall appoint an appraiser and the two shall select a third
appraiser, and all three shall appraise the property for the
purpose of such allocation of compensation for a condem-
nation with the average of the two appraisals which are the
closest controlling.

If only a portion of the leased land is condemned, this
Lease shall terminate if the mortgagee shall consent thereto
in writing and if Tenant shall notify Landlord, within sixty
(60) days of the condemnation, that the portion of the
leased land remaining after the condemnation cannot be
developed in the manner chosen by Tenant. If Tenant fails

-20-

HOU 000765

May-01-02  04:22pm   From-RUTAN & TUCKER LLP,                        714-546-8035              T-234   P.22/28   F-670

to timely give such notice, this Lease shall remain in full force and effect as to the remaining portion of the leased land, except that (a) the basic rental payable by Tenant shall be reduced in the proportion that the area of the portion taken bears to the area of the entire leased land, and (b) Tenant shall be entitled to use the award payable on such partial condemnation to repair any damage to the remaining portion of the leased land and improvements thereon.

As used in the foregoing, "Tenant's hard costs" shall mean all of Tenant's direct out-of-pocket expenses incurred with regard to the development or intended development of the leased land and shall include, without limitation, the following but shall not include any charge for overhead or other administrative expenses: engineering, architectural, environmental, legal, accounting and other consultants, development fees paid to governmental authorities, the cost of preparing and/or reproducing plans and specifications for such development, and the contract cost of improving the leased land (or Tenant's direct costs if such improvement is done by Tenant's employees).

ARTICLE XI
DEFAULT AND REMEDIES IN EVENT OF DEFAULT

11.01  Events of Default.

Tenant shall be deemed in default under the terms of this Lease should Tenant:

(a)  Use the leased land or suffer the same to be used for any purpose other than as authorized in this Lease for more than thirty (30) days after notice from Landlord specifying the unauthorized use; provided, however, if such unauthorized use is not capable of being cured within said thirty (30) day period, Tenant shall not be deemed in default hereunder so long as it commences to cure such unauthorized use within said period and thereafter diligently and continuously prosecutes the same to completion; or

(b)  Default in the payment of any basic rental payment and such default shall continue for ten (10) days after notice thereof is given to Tenant; or

(c)  Fail to pay or cause to be paid any tax, assessment, insurance premium, lien, claim, demand, judgment or other charge provided in this Lease to be paid or caused to be paid by Tenant at the times and in the manner hereinabove provided and such breach or default shall continue for thirty (30) days after notice thereof is given to Tenant; provided, however, the foregoing shall not prejudice Tenant's right to contest any claim or lien pursuant to Article VII above; or

(d)  File a voluntary petition in bankruptcy or be adjudicated a bankrupt or insolvent or shall file

-21-                   HOU 000766

any petition or answer seeking or acquiescing in any reorganization, dissolution or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or shall seek or consent to or acquiesce on the appointment of any trustee, receiver or liquidator or shall make a general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due; or

(e)   A court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against Tenant seeking any reorganization, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, and such order, judgment or decree shall remain unvacated and unstayed for an aggregate of ninety (90) days (whether or not consecutive) from the first day of entry thereof; or any trustee, receiver, or liquidator of Tenant shall be appointed without the consent or acquiescense of Tenant and if such appointment shall remain unvacated and unstayed for an aggregate of ninety (90) days (whether or not consecutive; or

(f)   Default in the performance of or breach of any other covenant, undertaking, duty, condition or restriction provided in this Lease to be kept and performed by Tenant thirty (30) days after written notice from Landlord specifying the nature of such default or breach; provided, however, if the nature of such default or breach is such that it is incapable of being cured within said thirty (30) day period, then Tenant shall not be deemed in default under this Lease if Tenant commences to cure the same within said thirty (30) day period and thereafter diligently and continuously (taking into account the nature of the default or breach) prosecutes such cure to completion.

11.02  Remedies.

In the event of Tenant's default, Landlord may, at Landlord's option:

(a)   Continue this Lease in effect without terminating Tenant's right to possession, even though Tenant has breached this Lease and abandoned the leased land; and to enforce all of Landlord's rights and remedies under this Lease, including the right to recover, by suit or otherwise, all sums and installments required to be paid in accordance with the provisions of Article IV above, or other monetary performance as it becomes due hereunder, or to enforce, by suit or otherwise, any other term or provision hereof on the part of Tenant required to be performed, it being specifically agreed that the aggregate unpaid installment indebtedness shall bear simple interest at the rate of ten (10%) percent per annum from the date thereof until paid, provided, however, that Landlord may, at any time thereafter, elect to terminate this Lease for such previous breach by notifying Tenant in writing that Tenant's right to possession of the leased land has been terminated; or

-22-

HOU 000767

May-01-02  04:23pm  From-RUTAN & TUCKER LLP,                     714-546-8035        T-234  P.24/28  F-670

(b)   By written notice to Tenant, Landlord may declare this Lease at an end, re-enter the leased land by process of the law, eject all parties in possession thereof therefrom and repossess said leased land, in which event, Landlord shall have the right to recover from Tenant:

(i)   The worth at the time of award of the unpaid rent which has been earned at the time of termination;

(ii)   The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the Tenant proves could have been reasonably avoided;

(iii)   The worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss for the same period that the Tenant proves could be reasonably avoided;

(iv)   All other amounts necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations hereunder or which in the ordinary course of things are likely to result therefrom; and

(v)   In computing "worth at the time of award" Landlord shall be allowed interest at the rate of ten (10%) percent per annum.

The remedies of Landlord, as hereinabove provided, are cumulative and in addition to and not exclusive of any other remedy of Landlord herein given or which may be permitted by law.  The remedies of Landlord are subject to the provisions of Section 6.02.

<u>11.03   Termination on Default.</u>

Upon such termination, Tenant, if required by Landlord so to do by written notice to Tenant, shall within sixty (60) days, cause all improvements, structures and appurtenances thereto belonging to Tenant or those claiming under Tenant, to be removed from the leased land (or the portion of the leased land being then the subject of this Lease) and Tenant shall cause any excavations to be filled and all foundations, debris and other parts to be removed and the premises thereof surrendered in a clean and orderly condition.  In the event any such improvements shall not be removed within the time period as provided in this Section 11.03, the same shall, at the option of the Landlord, become the property of Landlord, without any requirement for the payment of consideration therefor; provided, however, that any such termination of this Lease shall not relieve the Tenant or its successors and assigns, if any, from liability for damages which Landlord may incur by reason of Tenant's

-23-

HOU 000763

May-01-02  04:23pm   From-RUTAN & TUCKER LLP,                      714-546-8035          T-234  P.25/28  F-670

default in failing to remove all structures, improvements
and appurtenances (excluding the aforementioned type of
improvements and installations) and to remove all debris
within said time period.

11.04  Quitclaim.

Upon such termination of this Lease, Tenant, following
Landlord's request, shall execute, acknowledge and deliver
to Landlord a quitclaim deed quitclaiming all right, title
and interest of Tenant in and to the leased land.

ARTICLE XII
MISCELLANEOUS

12.01   Short Form.

This Lease shall not be recorded, but the Ground
Lease (Short Form-Memorandum), in the form attached hereto
as Exhibit C and by this reference made a part hereof, shall
be executed and recorded by the parties hereto upon the
execution of this Lease.

12.02   Landlord's Cooperation.

Landlord agrees to cooperate with Tenant in de-
veloping the leased land in the manner chosen by Tenant,
including, without limitation, attending a reasonable number
of meetings with Tenant and/or jurisdictional government
agencies.

12.03  Construction of Lease.

The language in all parts of this Lease shall, in all
cases, be construed as a whole and in accordance with its
fair meaning and not restricted for or against either
Landlord or Tenant.  The captions of the paragraphs and
subparagraphs of this Lease are for convenience only and
shall not be considered or referred to in resolving ques-
tions or construction.

12.04  Severability.

If any provision of this Lease shall be adjudged to be
invalid, void or illegal, it shall in no way affect, impair
or invalidate any other provision hereof, the parties hereby
agreeing that they would have entered into the remaining
portion of this Lease notwithstanding the omission of the
portion or portions adjudged invalid, void or illegal.

12.05  Relationship of the Parties.

The relationship of the parties hereto is that of
Landlord and Tenant, and it is expressly understood and
agreed that Landlord does not in any way nor for any purpose
become a partner of Tenant or a joint venturer with Tenant
in the conduct of Tenant's business or otherwise, and that

-24-

HOU 000769

the provisions of any agreement between Landlord and Tenant
relating to rent are made solely for the purpose of pro-
viding a method whereby rental and purchase payments
are to be measured and ascertained.

### 12.06  Notices.

Any notice to be given or other document to be deliver-
ed by either party, or all payments of rental, may be
delivered in person to either party or may be deposited in
the United States mail in the State of California, duly
certified, return receipt requested, with postage prepaid,
and addressed to the party for whom intended at the address
appearing at the head of this Lease.  In the event that
Landlord has received notice of the hypothecation by Tenant
of his leasehold estate with a mortgage, all notices to be
sent by Landlord to Tenant hereunder shall be effective only
if a copy thereof is sent to the Mortgagee at the address
supplied to Landlord by Tenant or such Mortgagee.

Either party hereto may from time to time by written
notice to the other party designate a different address
which shall be substituted for the one above specified.  If
any notice or other document is sent by registered or
certified mail, as aforesaid, the same shall be deemed
served or delivered forty-eight (48) hours after the mailing
in the County of Orange, as above provided.

### 12.07  Attorneys' Fees.

In the event of any dispute between the parties hereto
involving the covenants or conditions contained in this
Lease or arising out of the subject matter of this Lease,
the prevailing party shall be entitled to recover reasonable
expenses, attorneys' fees and costs.

In the event Landlord is made a party to litigation
arising out of acts or negligence by Tenant regarding
the subject matter of this Lease, Landlord shall be entitled
to recover from Tenant its reasonable expenses, attorneys'
fees and costs incurred in such litigation.  Tenant hereby
indemnifies and agrees to hold Landlord harmless of and
from all liabilities, costs and expenses arising from any
such litigation.

### 12.08  Waiver.

No delay or omission by either party hereto in exercis-
ing any right or power accruing upon the noncompliance or
failure to perform by the other party hereto under the
provisions of this Lease shall impair any such right or
power or be construed to be a waiver thereof.  A waiver by
either party hereto of any of the covenants, conditions or
agreements hereof to be performed by the other party shall
not be construed as a waiver of any succeeding breach of
the same or other covenants, agreements, restrictions and
conditions hereof.

-25-

HOU 000770

May-01-02  04:24pm  From-RUTAN & TUCKER LLP,                    714-546-8035           T-234  P.27/28  F-070

## 12.09  Inspection.

Landlord reserves the right for Landlord and Landlord's agents and representatives to enter upon the leased land at any reasonable time following reasonable notice for the purpose of attending to Landlord's interest hereunder, and to inspect the leased premises.

## 12.10  Covenants and Conditions.

Each of the covenants in this Lease shall be deemed and construed as conditions and each and every covenant shall be deemed covenants running with the land.

## 12.11  Entire Agreement.

This Lease contains the entire agreement of the parties hereto with respect to the matters covered hereby, and no other previous agreement, statement or promise made by any party hereto which is not contained herein shall be binding or valid.

## 12.12  Non-disturbance.

No mortgage or deed of trust placed on the leased land by Landlord shall be superior to the interest of Tenant herein, unless Landlord and Tenant execute an agreement in recordable form satisfactory to the Tenant that in the event of judicial or private foreclosure, or deed in lieu of foreclosure, or any other action taken by such mortgagee or beneficiary, this Lease and the rights of Tenant hereunder shall not be disturbed by reason of any such foreclosure or other action, but shall continue in full force and effect so long as this Lease shall remain in full force and effect and that in the event of any conflict between the terms of this Lease and any such mortgage or deed of trust with regard to insurance or condemnation proceeds or any other provisions of the Lease or the mortgage or the deed of trust, the terms and provisions of this Lease shall prevail.

## 12.13  Estoppel Certificates.

Landlord and Tenant shall at any time and from time to time, upon not less than ten (10) days prior written request by the other party or parties to this Lease, execute, acknowledge and deliver to such party or parties a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there has been any modification thereof that the same is in full force and effect as modified and stating the modification or modifications) and that there are no defaults existing (or if there is any claimed default stating the nature and extent thereof); and stating the dates to which the rent and other charges have been paid in advance. It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by any prospective assignee or sublessee of the leasehold estate, or estates

-26-                    HOU 000771

May-01-02  04:24pm   From-RUTAN & TUCKER LLP,              714-546-9035        T-234   P.29/29   F-670

of Tenant, or any prospective purchaser of the estate of
Landlord, or any lender or prospective assignee of any
lender on the security of the leased land or the fee estate
or any part thereof, or upon the leasehold estate of Tenant
or any part thereof, and any third person.

<u>12.14  Signs</u>.

     Tenant shall be entitled to place on the leased land
such advertising signs as it deems necessary or proper for
the development and marketing of the leased land.

<u>12.15  Merger</u>.

     There shall be no merger of this Lease or the lease-
hold estate hereunder with the fee estate in the leased land
by reason of the fact that the Lease or any interest here-
under may be held for the account of a person or entity who
is the owner of the fee estate in the leased land or any
portion thereof, unless a written instrument effectuating
such merger is recorded.


     IN WITNESS WHEREOF, each of the parties hereto has
caused this Lease to be executed as of the day and year
first above written.

                           HOUSER BROS. CO.
                           A California Limited Partnership


                           By _____
                              CLIFFORD C. HOUSER,
                              General Partner

                           By _____
                              VERNON F. HOUSER,
                              General Partner

                                         "Landlord"




                           _____
                              ROBERT P. WARMINGTON

                                         "Tenant"




                     -27-              HOU 000772

Case 8:23-cv-00001-DSF   Document 16-1   Filed 05/24/23   Page 82 of 333   Page ID #:2513

Branch :AT4,User :2004        Case 8:21-bk-11710-SC    Doc 157    Filed 07/26/22    Entered 07/26/22 16:39:25    Desc
                                          Comment:
                              Main Document    Page 81 of 150                         Station Id :M3Y7

BK 13362 PG 317

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:                    32442

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California  92714          $5.00

RECORDED AT REQUEST OR
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:01 A.M. OCT 22 1979

LEE A. BRANCH, County Recorder

————————————————— Space Above This Line for Recorder's Use Only —————————————————

GROUND SUBLEASE
(SHORT FORM-MEMORANDUM)

THIS GROUND SUBLEASE (SHORT FORM-MEMORANDUM) is made this
19th day of      October      , 1979, by and between ROBERT P.
WARMINGTON (hereinafter "Landlord") and THE ROBERT P. WARMINGTON CO.,
a California Corporation (hereinafter "Tenant"), upon the following
terms and conditions:

W I T N E S S E T H:

1.  Landlord leases to Tenant that certain real property
(the "leased land") located in the City of Huntington Beach, County of
Orange, State of California, which leased land is described on
Exhibit "A" attached hereto and made a part hereof, at the rental and
upon all of the terms and conditions set forth in that certain unrecorded
Ground Sublease of even date between Landlord and Tenant which is
incorporated herein by this reference.

2.  The Property is leased for a term of eighty (80) years,
commencing as of      October 19      , 19 79 and ending
October 18   , 2059 .  The aforementioned incorporated Ground Sublease
provides, among other things, that it shall terminate as to the real
property covered by a Consumer Sublease (as defined in said incorporated
Ground Sublease) upon the commencement of the term of such Consumer
Sublease.

3.  The aforementioned incorporated Ground Sublease provides,
among other things, that the Tenant shall pay all taxes, general and
special assessments and other charges which, during the term of this
lease, may be levied upon or assessed against the leased land and all
interests therein.

4.  The aforementioned incorporated Ground Sublease also
provides, among other things, that Tenant shall not encumber, assign or
otherwise transfer said Sublease, or sublet the whole or any part of
the leased land without the prior written consent and approval of
Landlord, except as otherwise expressly permitted in said incorporated
Ground Sublease.

5.  Landlord hereby irrevocably makes, constitutes and
appoints Tenant as Landlord's true and lawful attorney for him and
in his name, place and stead and for his use and benefit to exercise
any or all of the following powers as to the leased land, any interest
therein and/or any building or other improvement thereon: To undertake
any and all construction activities on or in connection with the leased
land and to execute on behalf of Landlord if Landlord has not executed
the same, as provided and within the time period set forth in said
incorporated Ground Sublease, any map, permit, application, survey,
report, approval, easement deed or other documents as are necessary or
convenient to obtain the required approvals, permits or other action of
the City of Huntington Beach, the County of Orange, California, and

000088

BK 13362 PG 318

other governmental and quasi governmental authorities, including public utilities, for the development of the leased land in the manner contemplated by said incorporated Ground Sublease, giving and granting unto his said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as he might or could do if personally present, hereby ratifying all that his said attorney shall lawfully do or cause to be done by virtue of these presents.  It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6.  Should there be any inconsistency between the terms of this instrument and the Ground Sublease incorporated herein, the terms of said incorporated Ground Sublease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form-Memorandum of Ground Sublease to be duly executed as of the day and year first above written.

LANDLORD:

_____
Robert P. Warmington

TENANT:

The Robert P. Warmington Co.,
a California Corporation

By _____
Roger D. Darnell
Vice President

STATE OF CALIFORNIA) ss:
COUNTY OF ORANGE  )
On __October 19__, 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared ROBERT P. WARMINGTON, known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same.
WITNESS my hand and official seal.

_____
Pearl L. Hunt

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires May 25, 1983

STATE OF CALIFORNIA) ss:
COUNTY OF ORANGE  )
On __October 19__, 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared ROGER D. DARNELL, known to me to be the Vice President of the Corporation that executed the within instrument, and known to me to be the person who executed the within instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.
WITNESS my hand and official seal.

_____
Pearl L. Hunt

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires May 25, 1983

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires May 25, 1983

-2-



BK 13362 PG 319

EXHIBIT "A"

PARCEL A:    Parcel 1 as per Parcel Map recorded in
             Book 108, Pages 47 and 48, inclusive,
             Official Records of Orange County,
             California.

             EXCEPTING and reserving a non-exclusive
             easement for ingress and egress within
             and upon the Westerly 30.00 feet there-
             of appurtenant to Parcel 2 as Per Map
             recorded in Book 108, Pages 47 and 48,
             inclusive, Official Records of Orange
             County, California within the private
             street known as "Monterey Lane".

PARCEL B:    A non-exclusive easement for ingress
             and egress within and upon an area 30.00
             feet in width within the private street
             known as "Monterey Lane", within Parcel
             2 as per Map recorded in Book 108, Pages
             47 and 48, inclusive, Official Records of
             Orange County, California the Easterly
             boundary of which shall be Co-Terminus
             with the Westerly boundary of said Parcel
             1.

EXHIBIT "A"

RECORDED L

ORANGE,CA
Document: LS 13362.317

Page 3 of 3

Branch :AT4,User :2004                    Comment:                    Station Id :M3Y7



RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

BK 13362 PG. 320

The Robert P. Warmington Co. 32443
1659 Hale Avenue
Irvine, California 92714
Attention: Roger D. Darnell          $6.00

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:01 A.M. OCT 22 1979
LEE A. BRANCH, County Recorder

(Space above line for Recorder's use only)

GROUND LEASE

(SHORT FORM - MEMORANDUM)

THIS GROUND LEASE (SHORT FORM - MEMORANDUM) is made this 19th day of October , 1979, by and between HOUSER BROS. CO., a limited partnership, organized and existing under the laws of the State of California (hereinafter "Landlord"), and ROBERT P. WARMINGTON, a married man (hereinafter "Tenant"), upon the following terms and conditions:

W I T N E S S E T H:

1. Landlord leases to Tenant that certain real property (the "leased land") located in the City of Huntington Beach, County of Orange, State of California, which leased land is described in Exhibit A attached hereto and made a part hereof, at the rental and upon all the terms and conditions set forth in that certain unrecorded ground lease of even date between Landlord and Tenant which is incorporated herein by this reference.

2. The property is leased for a term of eighty (80) years, commencing as of the date first above written and continuing until the anniversary of the eightieth (80th) year thereafter. The aforementioned incorporated ground lease provides, among other things, that it shall terminate as to the real property covered by a Residential Lease (as defined in said incorporated ground lease) upon the commencement of the term of such Residential Lease, but not as to the real property covered by a Consumer Sublease or Affiliate Sublease (as defined in said incorporated ground lease).

3. The aforementioned incorporated ground lease provides, among other things, that the Tenant shall pay all taxes, general and special assessments and other charges which, during the term of this lease, may be levied upon or assessed against the leased land and all interests therein.

4. The aforementioned incorporated ground lease also provides, among other things, that Tenant shall not encumber, assign or otherwise transfer said lease, or sublet the whole or any part of the leased land without the prior written consent and approval of Landlord, except as otherwise expressly permitted in said incorporated ground lease.

-1-

ORANGE,CA                    Page 1 of 4                    Printed on 10/31/2019 3:21:22 PM
Document: LS 13362.320

Case 8:23-cv-00001-DSF   Document 16-1   Filed 05/24/23   Page 86 of 333   Page ID #:2517

Case 8:21-bk-11710-SC   Doc 157   Filed 07/26/22   Entered 07/26/22 16:39:25   Desc
Branch :AT4,User :2004                                    Comment:                                    Station Id :M3Y7
Main Document   Page 85 of 150

BK 13362 PG 321

5.    Landlord hereby irrevocably makes, constitutes and appoints Tenant as Landlord's true and lawful attorney for it and in its name, place and stead and for its use and benefit to exercise any/or all of the following powers as to the leased land, any interest therein and/or any building or other improvement thereon: To undertake any and all construction activities on or line connection with, the leased land and to execute on behalf of Landlord if Landlord has not executed the same, as provided and within the time period set forth in said incorporated ground lease, any map, permit, application, survey, report, approval, easement deed or other documents as are necessary or convenient to obtain the required approvals, permits or other action of the City of Huntington Beach, the County of Orange, California, and other governmental and quasi governmental authorities, including public utilities, for the development of the leased land in the manner contemplated by said incorporated ground lease, giving and granting unto its said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as it might or could do if personally present, hereby ratifying all that its said attorney shall lawfully do or cause to be done by virtue of these presents.  It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6.    Should there be any inconsistency between the terms of this instrument and the ground lease incorporated herein, the terms of said incorporated ground lease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form - Memorandum of Lease to be duly executed as of the day and year first above written.

HOUSER BROS. CO., a California
limited partnership by its
general partners

By _____
Clifford C. Houser,
General Partner

By _____
Vernon F. Houser,
General Partner

                                    "Landlord"

_____
Robert P. Warmington
                                    "Tenant"

-2-

000092



BK 13362 PG 322

EXHIBIT "A"

PARCEL A:     Parcel 1 as per Parcel Map recorded in
Book 108, Pages 47 and 48, inclusive,
Official Records of Orange County,
California.

EXCEPTING and reserving a non-exclusive
easement for ingress and egress within
and upon the Westerly 30.00 feet there-
of appurtenant to Parcel 2 as Per Map
recorded in Book 108, Pages 47 and 48,
inclusive, Official Records of Orange
County, California within the private
street known as "Monterey Lane".

PARCEL B:     A non-exclusive easement for ingress
and egress within and upon an area 30.00
feet in width within the private street
known as "Monterey Lane", within Parcel
2 as per Map recorded in Book 108, Pages
47 and 48, inclusive, Official Records of
Orange County, California the Easterly
boundary of which shall be Co-Terminus
with the Westerly boundary of said Parcel
1.

EXHIBIT "A"

ORANGE,CA
Document: LS 13362.320

Page 3 of 4

Printed on 10/31/2019 3:21:23 PM

000093



BK 13362 PG  323

STATE OF CALIFORNIA      )
                          ) ss.
COUNTY OF  *ORANGE*       )

On this *19TH* day of *OCTOBER*, 1979, before me, a Notary Public, personally appeared Clifford C. Houser and Vernon P. Houser, known to be be the general partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same.

WITNESS my hand and official seal.

[OFFICIAL SEAL
CHRISTINE A. BELMONTE
Notary Public-California
ORANGE COUNTY
My Commission Expires March 14, 1981]

*Christine Anne Belmonte*
Notary Public in and for said
County and State

STATE OF CALIFORNIA  )
                      ) ss.
COUNTY OF  ORANGE     )

On this 19th day of  October , 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared Robert P. Warmington, known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

WITNESS my hand and official seal.

[OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires May 28, 1983]

*Pearl L. Hunt*
Notary Public in and for said
County and State

-3-

RECORDED IN

ORANGE,CA
Document: LS 13362.320

Page 4 of 4

Printed on 10/31/2019 3:21:23 PM

# EXHIBIT B

# EXHIBIT B

# EXHIBIT B

Branch :AT4,User :2004                                    Comment:                                                    Station Id :M3Y7

RECORDING REQUESTED BY                          BK 13383 PG 1868
AND WHEN RECORDED MAIL TO:

ROBERT P. WARMINGTON
16592 Hale Avenue
Irvine, California 92714

$5.00

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:01 A.M.  NOV 6 1979
LEE A. BRANCH, County Recorder

---

(Space above line for Recorder's use only)

### COVENANT RUNNING WITH THE LAND

THIS INSTRUMENT is made this *19th* day of *October*, 1979, by HOUSER BROS. CO., a California limited partnership ("Houser") whose sole general partners are Clifford C. Houser and Vernon F. Houser.

### RECITALS

A.   Houser is the owner of certain real property in the City of Huntington Beach, County of Orange, State of California, described as Parcels 1 and 2 as shown on a Parcel Map recorded in Book 108, Pages 47 and 48, inclusive, of Parcel Maps in the Office of the County Recorder of said County (hereinafter "Parcel 1" and "Parcel 2" respectively).

B.   Concurrently herewith, Houser is leasing Parcel 1 to ROBERT P. WARMINGTON, a married man ("Warmington") by a Ground Lease of even date herewith (the "Ground Lease"), a memorandum of which is being recorded concurrently or substantially concurrently with this instrument.

C.   Pursuant to the Ground Lease, Warmington may use Parcel 1 to develop thereon single-family residences or condominiums.  The Ground Lease further provides that access to Parcel 1 from Edinger Avenue (the abutting public street) is to be had over a portion of Monterey Lane, a private street located on right-of-way easements on either side of the southerly boundary of Parcel 1 with Parcel 2.  The maintenance of the portion of Monterey Lane as to which Warmington (and the residents of homes or condominiums to be built by Warmington on Parcel 1) has easement rights is the responsibility of Houser as Landlord under the Ground Lease as provided therein.

D.   It is the intention of Houser and Warmington that Houser's obligations under the Ground Lease also run with and bind a portion of Parcel 2 and the successive owners thereof as described in this instrument.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt of which is hereby acknowledged, including without limitation, Warmington's execution of the Ground Lease, Houser hereby covenants, declares and agrees that Houser's obligations as

-1-

Case 8:23-cv-00001-DSF   Document 16-1   Filed 05/24/23   Page 91 of 333   Page ID #:2522

Branch :AT4,User :2004            Case 8:21-bk-11710-SC   Doc 157   Filed 07/26/22   Entered 07/26/22 16:39:25   Desc
Comment:
                                  Main Document   Page 90 of 150                           Station Id :M3Y7

BK 13383 PG 1869

Landlord concerning Monterey Lane as set forth in Section 7.9 of the unrecorded Option Agreement between Landlord and Tenant, as optionor and optionee respectively, which preceded the execution of the Ground Lease, hereby incorporated herein by reference, are also covenants running with the portion of Parcel 2 described by extending the southerly boundary of Parcel 1 parallel to Edinger Avenue to the westerly boundary of Parcel 2, and every portion of the area so described (the "Covenant Area"), and shall bind the Covenant Area, Houser and Houser's heirs, assigns, representatives and successors in interest for the benefit of Warmington and the leasehold estate in Parcel 1 under the Ground Lease and any portions into which it may be divided, by Residential Leases (as defined in the Ground Lease) or otherwise. In the event of a breach of the foregoing covenants, or any of them, Warmington may seek any remedy available at law or in equity, including without limitation an action seeking damages, to seek specific enforcement thereof, or to enjoin the breach or continued breach thereof. It is specifically understood that any of the foregoing remedies may be employed at the option of Warmington, and the failure to do so upon any one or more of any such breach shall not be a waiver of the right to employ any of such remedies upon the continuance of such breach or any subsequent breach. As used in the foregoing, "Warmington" shall include any of Warmington's heirs, successors or representatives as well as any assignee or sublessee of Warmington's leasehold estate under the Ground Lease in Parcel 1 or any portion into which it may be divided and any leasee under a Residential Lease, Consumer Sublease or Affiliate Sublease (as defined in the Ground Lease); provided, however, lessees under such Residential Leases and sublessees under such Consumer Subleases shall not have the right to enforce such covenant except on the majority vote of the association of such lessees or sublessees formed by Warmington to manage Parcel 1. If Warmington or such lessees under such Residential Leases acquire the fee interest in all or a portion of Parcel 1, the benefit of the covenant described above shall run in favor of such fee interests and their successors therein, but subject to the same restriction concerning enforceability by residents of Parcel 1 set forth above. Nothing herein shall relieve Warmington or lessees under such Residential Leases or sublessees under such Consumer Subleases from their obligations to pay for a share in the maintenance of the portion of Monterey Lane used to gain access to Parcel 1.

IN WITNESS WHEREOF, Houser has executed this instrument on the day and year first above written.

HOUSER BROS. CO., a California limited partnership by its general partners

By _Clifford C. Houser_
    Clifford C. Houser

By _Vernon F. Houser_
    Vernon F. Houser

000097

BK 13383 PG 1870

STATE OF CALIFORNIA  )
                     )  ss.
COUNTY OF ORANGE     )

    On this 19th day of October, 1979,
before me, a Notary Public, personally appeared Clifford C.
Houser and Vernon F. Houser, known to me to be the general
partners of the partnership that executed the within instru-
ment, and acknowledged to me that such partnership executed
the same.

    WITNESS my hand and official seal.

    OFFICIAL SEAL
    CHRISTINE A. BELMONTE
    Notary Public-California
    ORANGE COUNTY
    My Commission Expires March 14, 1981

Christine A. Belmonte
Notary Public in and for said
County and State

- 3 -

ORANGE,CA
Document: CA 13383.1868

Page 3 of 3

Printed on 5/8/2020 11:37:33 AM

# EXHIBIT C

# EXHIBIT C

# EXHIBIT C



Branch :AT4,User :2004                     Comment:                          Station Id :M3Y7

BK 13362 PG 321
BK 13424 PG 500

5.    Landlord hereby irrevocably makes, constitutes
and appoints Tenant as Landlord's true and lawful attorney
for it and in its name, place and stead and for its use and
benefit to exercise any or all of the following powers as
to the leased land, any interest therein and/or any building
or other improvement thereon.  To undertake any and all con-
struction activities on or in connection with the leased
land and to execute on behalf of Landlord if Landlord has
not executed the same, as provided and within the time
period set forth in said incorporated ground lease, any map,
permit, application, survey, report, approval, easement deed
or other documents as are necessary or convenient to obtain
the required approvals, permits or other action of the City
of Huntington Beach, the County of Orange, California, and
other governmental and quasi governmental authorities, in-
cluding public utilities, for the development of the leased
land in the manner contemplated by said incorporated ground
lease, giving and granting unto its said attorney full power
and authority to do and perform all and every act and thing
whatsoever requisite, necessary or appropriate to be done in
and about the leased land as fully to all intents and pur-
poses as it might or could do if personally present, hereby
ratifying all that its said attorney shall lawfully do or
cause to be done by virtue of these presents.  It is ex-
pressly agreed and understood that the foregoing power of
attorney is coupled with an interest.

6.    Should there be any inconsistency between the
terms of this instrument and the ground lease incorporated
herein, the terms of said incorporated ground lease shall
prevail.

IN WITNESS WHEREOF, each of the parties hereto has
caused this Short Form - Memorandum of Lease to be duly ex-
ecuted as of the day and year first above written.

HOUSER BROS. CO., a California
limited partnership by its
general partners

By _____
Clifford C. Houser,
General Partner

By _____
Vernon F. Houser,
General Partner

                                        "Landlord"

_____
Robert P. Warmington

                                        "Tenant"

-2-

Branch :ATF,User :2004                                  Comment:                                  Station Id :M3Y7



BK 13362 PG 322
BK 13424 PG 501

EXHIBIT "A"

PARCEL A:   Tract No. 10542, as shown on a Map recorded
in book 456, pages 49 and 50 of Miscellaneous
Maps, records of Orange County, California.

EXCEPTING and reserving a non-exclusive
easement for ingress and egress within
and upon the Westerly 30.00 feet there-
of appurtenent to Parcel 2 as Per Map
recorded in Book 108, Pages 47 and 48,
inclusive, Official Records of Orange
County, California within the private
street known as "Monterey Lane".

PARCEL B:   A non-exclusive easement for ingress
and egress within and upon an area 30.00
feet in width within the private street
known as "Monterey Lane", within Parcel
2 as per Map recorded in Book 108, Pages
47 and 48, inclusive, Official Records of
Orange County, California the Easterly
boundary of which shall be Co-Terminus
with the Westerly boundary of said Parcel
1.

**THIS DOCUMENT IS RE-RECORDED TO CORRECT THE LEGAL DESCRIPTION
OF PARCEL A.

EXHIBIT "A"

ORANGE,CA
Document: LS 13424.499

Page 3 of 5

000102

Branch :AT4,User :2004                              Comment:                              Station Id :M3Y7



Branch :AT4,User :2004                    Comment:                              Station Id :M3Y7



ORANGE,CA
Document: LS 13424.499

Page 5 of 5

000104





BK 13362 PG 314
BK 13424 PG 505

other governmental and quasi governmental authorities, including public utilities, for the development of the leased land in the manner contemplated by said incorporated Ground Sublease, giving and granting unto his said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the leased land as fully to all intents and purposes as he might or could do if personally present, hereby ratifying all that his said attorney shall lawfully do or cause to be done by virtue of these presents. It is expressly agreed and understood that the foregoing power of attorney is coupled with an interest.

6. Should there be any inconsistency between the terms of this instrument and the Ground Sublease incorporated herein, the terms of said incorporated Ground Sublease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has caused this Short Form Memorandum of Ground Sublease to be duly executed as of the day and year first above written.

LANDLORD:

Robert P. Warmington

TENANT:

The Robert P. Warmington Co.,
a California Corporation

By Roger D. Darnell
Roger D. Darnell
Vice President

STATE OF CALIFORNIA) ss:
COUNTY OF ORANGE )
On October 19____, 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared ROBERT P. WARMINGTON known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same.
WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

Pearl L. Hunt

STATE OF CALIFORNIA) ss:
COUNTY OF ORANGE )
On October 19____, 1979, before me, the undersigned, a Notary Public in and for said State, personally appeared ROGER D. DARNELL known to me to be the Vice President of the Corporation that executed the within instrument, and known to me to be the person who executed the within instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.
WITNESS my hand and official seal.

Pearl L. Hunt

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

-2-

Branch :AT4,User :2004                         Comment:                         Station Id :M3Y7

STATE OF CALIFORNIA
COUNTY OF Orange                                          BK 13424 PG 506

On December 6, 1979, before me, the undersigned, a Notary Public in and for
said State, personally appeared

Robert P. Warmington

known to me to be the person__ whose name__ is
subscribed to the within instrument and acknowledged to me
that he executed the same.

WITNESS my hand and official seal.

Signature Pearl L. Hunt

PEARL L. HUNT
Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

---

STATE OF CALIFORNIA
COUNTY OF Orange

On December 6, 1979, before me, the undersigned, a Notary Public in and for
said State, personally appeared Roger D. Darnell

known to me to be the Vice President, XX
of the corporation that executed the within instrument,
and known to me to be the persons who executed the within
instrument on behalf of the corporation therein named, and ac-
knowledged to me that such corporation executed the within
instrument pursuant to its by-laws or a resolution of its board of
directors.

WITNESS my hand and official seal.

Signature Pearl L. Hunt

PEARL L. HUNT
Name (Typed or Printed)

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

ORANGE,CA
Document: LS 13424.504

Page 3 of 4

000107

Branch :AT4,User :2004                                    Comment:                                    Station Id :M3Y7



BK 13424 PG 507

BK 13362 PG 319

EXHIBIT "A"

PARCEL A:    Tract No. 10542, as shown on a Map recorded
             in book 456, pages 49 and 50 of Miscellaneous
             Maps, records of Orange County, California.

             EXCEPTING and reserving a non-exclusive
             easement for ingress and egress within
             and upon the Westerly 30.00 feet there-
             of appurtenant to Parcel 2 as Per Map
             recorded in Book 108, Pages 47 and 48,
             inclusive, Official Records of Orange
             County, California within the private
             street known as "Monterey Lane".

PARCEL B:    A non-exclusive easement for ingress
             and egress within and upon an area 30.00
             feet in width within the private street
             known as "Monterey Lane", within Parcel
             2 as per Map recorded in Book 108, Pages
             47 and 48, inclusive, Official Records of
             Orange County, California the Easterly
             boundary of which shall be Co-Terminus
             with the Westerly boundary of said Parcel
             1.

**THIS DOCUMENT IS RE-RECORDED TO CORRECT THE LEGAL DESCRIPTION
OF PARCEL A.

EXHIBIT "A"

# EXHIBIT D

# EXHIBIT D

# EXHIBIT D

# TRACT NO. 10542

IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA.

BEING A SUBDIVISION OF PARCEL 1 AS SHOWN ON A MAP RECORDED
IN BOOK 108 PAGE 9 OF PARCEL MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

MADOLE / ASSOCIATES, INC.
J.M. MADOLE R.C.E. 14614
NOVEMBER 1976



000110



36466          BK 13803 PG  640

RECORDED AT REQUEST OR
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OR
ORANGE COUNTY, CALIFORNIA
8:00 A.M OCT 24 1980
LEE A. BRANCH, County Recorder

Recorded at the Request of and $
When Recorded Mail To:

Robert P. Warmington
16592 Hale Avenue
Irvine, CA 92714

AP-178-011-01

No Consideration
Lease Is For a Definite Term

## GROUND LEASE

THIS GROUND LEASE is made this 1st day of August, 1980, by
and between HOUSER BROS. CO., a limited partnership
organized and existing under the laws of the State of
California in which Clifford C. Houser and Vernon F.
Houser constitute the sole general partners whose address
is Suite 204, 610 East Seventeenth Street, Santa Ana,
California 92701 (herein termed the "Landlord"), and
Robert P. Warmington whose address is 16592 Hale Avenue,
Irvine, CA, 92714.

### W I T N E S S E T H:

1.  PROPERTY LEASED.  For and in consideration of the
payment of the rents and taxes and other charges and for
the performance of all of the covenants and conditions of
this Lease by Tenant, Landlord hereby leases to Tenant
those portions of Lots 1 and 2 of Tract 10542 in the City
of Huntington Beach, County of Orange, State of
California, as shown on a map recorded in Book 456, Pages
49 and 50 of Miscellaneous Maps, in the Office of the
County Recorder of Orange County, California, described as
follows:

  Parcel 1

    Unit 67, as shown and defined on a Condominium
  Plan (the "Condominium Plan") recorded in Book 13358,
  Pages 1193, et seq., Official Records of Orange
  County, California, excepting that portion consisting
  of buildings and other improvements.

  Parcel 2

    An undivided one-eightieth (1/80) interest in the
  Common Area as shown and defined on the Condominium
  Plan, excepting that portion consisting of buildings
  and other improvements.

  Parcel 3

    An easement for the exclusive use and occupancy
  of those portions of the Restricted Common Area as
  defined on said Condominium Plan for entry and
  staircases and attic space relating to said Unit,
  excepting that portion consisting of buildings and
  other improvements.

WPN: 4077A

BK 13803PG 641

<u>Parcel 4</u>

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements,

(hereinafter referred to as the "leased land").

<u>SUBJECT TO</u>:

(a) Current taxes and assessments.

(b) Covenants, conditions, restrictions, reservations, rights, rights-of-way and easements of record.

2. <u>TERM OF LEASE</u>. The leased land is leased for a basic term commencing on the date this Ground Lease is recorded in the Office of the County Recorder of Orange County, California and ending on December 31, 2059, subject, however, to earlier termination as hereinafter provided.

3. <u>RENTAL</u>. Tenant agrees to pay to Landlord, as rental for the use and occupancy of said leased land during the term of this lease, the annual sum of Nine Hundred DOLLARS ($900) in monthly installments of $75.00 each, in advance, on the first day of calendar month of said term; provided, however, if said term commences on other than the first day of a calendar month the first installment shall be paid on such commencement date in an appropriately reduced amount. Said rent is subject to adjustment at the time and in the manner as herein provided for in Article 21 entitled "Rental Adjustment". All rentals hereunder and charges with respect thereto shall be paid in lawful money of the United States of America.

4. <u>TAXES AND ASSESSMENTS</u>. In addition to the rents above provided, Tenant shall pay, prior to the delinquency date thereof, all taxes and general and special assessments of every description which, during the term of this Lease, may be levied upon or assessed against the leased land and all interest therein and improvements and other property thereon, whether belonging to Landlord or Tenant, and Tenant agrees to protect and hold harmless the Landlord and the leased land and all interest therein and improvements thereon from any and all such taxes and assessments, including any interest, penalties and other expenses which may be thereby imposed and from any lien therefor or sale or other proceedings to enforce payment thereof.

5. <u>USE OF LEASED LAND</u>. Tenant shall use the leased land for any purposes permitted under the zoning and other land use laws and regulations applicable thereto. Tenant shall not use or permit any person to so use the leased land and the improvements thereon, or any portion thereof, as to disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto.

WPN: 4077A                 2

000113

BK 13003PG 642

6. **IMPROVEMENTS.** When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of landlord whatsoever.

7. **MAINTENANCE OF LEASED LAND.** Landlord shall not be obligated to make any repairs, alterations, additions or improvements in or to or upon or adjoining the leased land or any structure of other improvement that may be constructed or installed thereon, but Tenant shall, at all times during the full term of this Lease and at its sole cost and expense, keep and maintain all buildings, structures and other improvements on the leased land, if any, in good order and repair, and the whole of the leased land and all improvements thereto free of weeds and rubbish and in a clean, sanitary and neat condition, and Tenant shall construct, maintain and repair all facilities and other improvements which may be required at any time by law upon or adjoining or in connection with or for the use of the leased land or any part thereof, and Tenant shall make any and all additions to or alterations in any buildings and structures on said premises which may be required and shall otherwise observe and comply with any and all public laws, ordinances and regulations for the time being, applicable to the leased land, and Tenant agrees to indemnify and save harmless the Landlord against all actions, claims and damages by reason of Tenant's failure to keep and maintain said premises and any buildings and improvements thereon as hereinabove provided, or by reason of its nonobservance or nonperformance of any law, ordinance and regulation applicable thereto.

8. **RESTORATION OF IMPROVEMENTS.** If, during the term hereof, the dwelling, structures or other improvements, if any, constructed by or for Tenant on the leased land, or any part thereof, shall be damaged or destroyed by fire or other casualty, Tenant may, at its cost and expense, either (a) repair or restore said dwelling and improvements; or (b) subject to the consent of any encumbrancer, if any, tear down and remove the same from the leased land.

9. **LIENS AND CLAIMS.** Tenant shall not suffer or permit to be enforced against Landlord's title to the leased land, or any part thereof, any lien, claim or demand arising from any work of construction, repair, restoration, maintenance or removal as herein provided or otherwise arising, except liens, claims or demands suffered by or arising from the actions of Landlord, and Tenant shall pay all such liens, claims and demands before any action is brought to enforce the same against said land. Tenant agrees to hold Landlord and the leased land free and harmless from all liability for any and all such liens, claims or demands, together with all costs and expenses, including, but not limited to, reasonable attorneys' fees and court costs incurred by Landlord in connection therewith. Landlord shall have the right at

WPN: 4077A                    3

000114

BK 13303 PG   643

any time to post and maintain on the leased land such notices as may be necessary to protect landlord against liability for all such liens or otherwise. Notwithstanding anything to the contrary contained in this Article, if Tenant shall, in good faith, contest the validity of any such lien, claim or demand, the Tenant shall, at its expense, defend itself and landlord against the same and shall pay and satisfy any adverse judgment that may be rendered thereon before the enforcement thereof against Landlord or the leased land, and if Landlord shall require, Tenant shall furnish to Landlord a surety bond satisfactory to Landlord in an amount equal to such contested lien, claim or demand, indemnifying Landlord against liability for same, or if Landlord shall request, Tenant shall procure and record the bond provided for in Section 3143 of the California Code of Civil Procedure, or any comparable statute hereafter enacted providing for a bond freeing the leased land from the effect of such lien or claim or action thereon.

10.   **LIABILITIES.**   Landlord shall not be liable for any loss, damage or injury of any kind whatsoever to the person or property of Tenant, or any of Tenant's employees, guests or invitees or of any other person whomsoever, caused by any use of the leased land or by any defect in any building, structure or other improvement constructed thereon, or arising from any accident on the leased land or any fire or other casualty thereon, or occasioned by the failure on the part of Tenant to maintain said premises in safe condition, or by any nuisance made or suffered on the leased land, or any improvements thereto, or by any act or omission of Tenant, or of any member of Tenant's family or of Tenant's employees, guests or invitees, or arising from any other cause whatsoever, and Tenant hereby waives on its behalf all claims and demands against Landlord for any such loss, damage or injury of Tenant, and hereby agrees to indemnify and save Landlord free and harmless from liability for any such loss, damage or injury of other persons, and from all costs, expenses and other charges arising therefrom and in connection therewith.

11.   **LANDLORD PAYING CLAIMS.**   Should Tenant fail or refuse to pay any tax, assessment or other charge upon the leased land when due and payable as provided herein, or any lien or claim arising out of the construction, repair, restoration, maintenance and use of the leased land and the buildings and improvements thereon, or any other claim, charge or demand which Tenant has agreed to pay under the covenants of this Lease, and if after thirty (30) days written notice from landlord to Tenant and to its authorized encumbrancer, if any, Tenant or its said encumbrancer shall fail or refuse to pay and discharge the same, then Landlord may, at its option, pay such tax, assessment, lien, claim, charge or demand, or settle or discharge any action therefor or judgment thereon, and all costs, expenses and other sums incurred or paid by Landlord in connection therewith shall be repaid to Landlord by Tenant upon written demand, together with interest thereon at the rate of ten (10%) percent per annum from the date of payment until repaid, and any

WPN: 4077A                         4

BK 13803PG 644

default in such repayment shall constitute a breach of the
covenants and conditions of this Lease. Notwithstanding
the forgoing, if Tenant shall in good faith contest the
validity of any tax or assessment levied against the
leased land, then Tenant may withhold payment thereof
pending settlement of its claim or pay the same under
protest; and, in either case, at Tenant's expense, shall
defend itself and landlord against the same and shall pay
and satisfy any adverse judgment that may be rendered
thereon before the enforcement thereof against Landlord or
the leased land.

12. ASSIGNMENT. Tenant shall have the right to assign,
sublet or otherwise transfer its interest under this Lease
without the prior written consent of Landlord.
Notwithstanding the foregoing, this Lease or any right
hereunder shall in no case be assigned separate and apart
from the Tenants interest in the improvements located on
the leased land. Also notwithstanding the foregoing,
Landlord shall accept Tenant's assignee in writing
following a request therefor.

13. ENCUMBRANCES. Tenant shall have the right to assign
Tenant's interest in this Lease and the leased land to a
trustee under a deed of trust (herein called "trust
deed"), for the benefit of a lender (herein called
"encumbrancer") upon and subject to the following
covenants and conditions. Landlord's consent shall not be
required for such assignment, but Landlord shall execute
its written consent to such assignment by trust deed
following a request therefor from Tenant:

A. Said trust deed and said assignment and all rights
acquired thereunder shall be subject to each and all of
the covenants, conditions and restrictions set forth in
this Lease and to all rights and interests of the Landlord
hereunder; and, in the event of any conflict between the
provisions of this Lease and the provisions of any such
trust deed or assignment, the provisions of this Lease
shall control.

B. Any encumbrancer as a transferee under the
provisions of this Article shall be liable to perform the
obligations of the Tenant under this Lease only so long as
such encumbrancer holds title to the leasehold.

C. Upon and immediately after the recording of the
trust deed covering the leased land, Tenant, at Tenant's
expense, shall cause to be recorded in the office of the
Recorder of Orange County, California, a written request
for a copy, to the Landlord, of any notice of default and
of any notice of sale under the trust deed as provided by
the statutes of the State of California relating thereto.
Tenant shall furnish to landlord a complete copy of the
trust deed and note secured thereby, together with the
name and address of the holder thereof.

D. Landlord agrees that it will not terminate this
Lease because of any default or breach hereunder on the
part of the Tenant if the encumbrancer or the trustee
under such deed of trust, within ninety (90) days after
service of written notice on the encumbrancer by Landlord

WPN: 4077A                    5

BK 13803PG 645

of its intention to terminate this Lease for such default
or breach, shall:

(a) Cure such default or breach if the same can
be cured by the payment or expenditure of money
provided to be paid under the terms of this Lease, or
if such default or breach is not so curable, cause the
trustee under the trust deed to commence and
thereafter to diligently pursue to completion steps
and proceedings for the foreclosure by sale or by
exercise of a power of sale under and pursuant to the
trust deed in the manner provided by law; and

(b) Keep and perform all of the covenants and
conditions of this Lease requiring the payment or
expenditure of money by Tenant until such time as said
leasehold shall be sold upon foreclosure, or by
exercise of a power of sale, pursuant to the trust
deed or shall be released or reconveyed thereunder;
provided, however, that if the beneficiary under such
trust deed shall fail or refuse to comply with any and
all of the conditions of this Article with respect to
a breach or default as to which notice of intention to
terminate this Lease has been given to the
encumbrancer, then and thereupon Landlord shall be
released from the covenants of forebearance herein
contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this
Article may be given concurrently with or after Landlord's
notice of default to Tenant as herein provided for in the
Article entitled "Termination".

14. TERMINATION. Should Tenant fail to pay any
installment of rent or any other sum provided in this
Lease to be paid by Tenant at the times herein specified
and should such default continue uncured for a period of
thirty (30) days after written notice from Landlord, or
should Tenant default in the performance of or breach any
other covenant, condition or restriction of this Lease
herein provided to be kept or performed by Tenant, and
should such default or breach continue uncured for a
period of sixty (60) days from and after written notice
thereof by Landlord to Tenant, then and in any such event,
Landlord may declare this Lease to be in default and
Landlord shall have all of the remedies available at law
or stated in the Article entitled "Remedies" or elsewhere
provided in this Lease.

15. REMOVAL. Upon the expiration of the term of this
Lease, and on condition that Tenant shall not then be in
default under any of the covenants and conditions hereof,
and not otherwise, Tenant shall have the right during the
last ninety (90) days of said term, at its sole expense,
to remove from the leased land all buildings and other
improvements thereon, and Tenant shall fill all
excavations and remove all parts of said buildings
remaining after the same are removed and surrender
possession of the leased land to Landlord in a clean and
orderly condition. In the event any of said buildings and
other improvements shall not be removed from the leased

WPN: 4077A                    6

000117

BK 13803PG 646

land within the time hereinabove provided, the same shall
become and thereafter remain a part of the leased land and
shall belong to Landlord without the payment of any
consideration therefor.  Upon the expiration of the term
hereof, or any sooner termination of this Lease, Tenant
shall execute, acknowledge and deliver to Landlord a
proper instrument in writing releasing and quitclaiming to
Landlord all right, title and interest of Tenant in and to
the leased land and any and all improvements thereon, if
not removed by virtue of this Lease or otherwise.

16.   PLACE OF PAYMENTS AND NOTICES.  All rents and other
sums payable by Tenant to Landlord hereunder shall be paid
to the Landlord at the address set forth after Landlord's
name above.  Whenever either party hereto desires to give
written notice to the other respecting this Lease, such
notice, if not personally delivered to Landlord or to
Tenant, shall be sent by certified or registered mail,
with postage prepaid, and directed to either party at the
address hereinabove specified, or at such other address as
either party may hereafter designate in writing.  The
service of any such written notice shall be deemed
complete at the time of such personal delivery or within
two (2) days after the mailing thereof in Orange County,
California, as herein provided.  Should Landlord or Tenant
consist of more than one person, the personal delivery or
mailing of such notice to any one of such persons shall
constitute complete service upon all such persons.  Any
notice provided in the Article hereof entitled
"Encumbrances" to be given by Landlord to any encumbrancer
of Tenant shall be served in the same manner as herein
provided in this Article and shall be delivered to the
encumbrancer or directed to its address as last shown on
the records of Landlord.

17.   REMEDIES.  Should Tenant at any time be in default
hereunder pursuant to the provisions of the Article hereof
entitled "Termination", then notwithstanding Tenant's
breach of this Lease and abandonment of the leased land,
this Lease shall continue in effect so long as Landlord
does not terminate Tenant's right to possession and
Landlord may enforce all of its rights and remedies
hereunder, including, at the option of Landlord:

     A.  The right to declare the term hereof ended and
with process of law to reenter the leased land and take
possession thereof and remove all persons therefrom, and
Tenant shall have no further claim thereon or hereunder; or

     B.  The right to collect rent and other charges as the
same may from time to time become due and to bring actions
for such collections without terminating this Lease, and
to thereafter at any time elect to terminate this Lease
and all of the rights of Tenant in or to the leased land.

Should Landlord elect to terminate the Lease, Landlord
shall be entitled to recover the worth at the time of the
award of the amount by which the unpaid rent for the
balance of the term, after the time of the award, exceeds
the amount of the rental loss for the same period that
Tenant proves could be reasonably avoided, together with

WPI : 4077A                    7

BK 13803PG 647

the rent then unpaid, if any, together with any other remedy permitted under Califonia Civil Code Section 1951.2 or any other similar statute hereafter enacted.

If Landlord shall elect to reenter the leased land under the provisions of A or B above, Landlord shall not be liable for damages by reason of such reentry.

Notwithstanding any other provision of this Lease, Landlord agrees that if the default complained of, other than for the payment of monies, is of such nature that the same cannot be cured within the period specified above, then such default shall be deemed to be cured if Tenant, within such period, shall have commenced the curing thereof and shall continue thereafter with all due diligence to cause such curing and does so complete the same with the use of such diligence.

Each of the terms, covenants, conditions and provisions of Tenant under this Lease is a material consideration for this Lease, the breach of which shall be deemed a default hereunder. All rights, options and remedies of Landlord contained in this Lease shall be construed and held to be cumulative, and no one of them shall be exclusive of the other, and Landlord shall have the right to pursue any one or all of such remedies or any other remedy or relief which may be provided by law, whether or not stated in this Lease. No waiver by Landlord of a breach of any of the terms, covenants or conditions of this Lease by Tenant shall be construed or held to be a waiver of any succeeding or preceding breach of the same or any other term, covenant or condition herein contained. No waiver of any default of Tenant hereunder shall be implied from any omission by Landlord to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect default other than as specified in said waiver. The consent or approval by Landlord to or of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent or approval to or of any subsequent similar acts by Tenant.

In the event any action shall be instituted between Landlord and Tenant in connection with this Lease, the party prevailing in such action shall be entitled to recover from the other party all of its costs, including reasonable attorneys' fees, as fixed by the court therein.

18. REPRESENTATIONS. Tenant covenants and agrees that it has examined the leased land and that the same is delivered to it in good order and condition and that no representations as to said land have been made by Landlord or by any person or agent acting for Landlord, and it is agreed that this document contains the entire agreement between the parties hereto and that there are no verbal agreements, representations, warranties or other understandings affecting the same.

19. HOLDING OVER. This Lease shall terminate and become null and void without further notice upon the expiration of said term. Any holding over shall not constitute a

WPN: 4077A                    8

BK 13803 PG  648

renewal hereof, but the tenancy shall thereafter be on a
month-to-month basis and otherwise on the same terms and
conditions as herein set forth.

20. **EMINENT DOMAIN**.

A. **Definition of Terms**.  The term "total taking", as
used in this Article, means the taking of the entire
leased land under the power of eminent domain or the
taking of so much of said land as to prevent or
substantially impair the use thereof by Tenant for the
uses and purposes hereinabove provided.

The term "partial taking" means the taking of a
portion only of the leased land which does not constitute
a total taking as defined above.

The term "taking" shall include a voluntary conveyance
by Landlord to an agency, authority or public utility
under threat of a taking under the power of eminent domain
in lieu of formal proceedings.

The term "date of taking" shall be the date upon which
title to the leased land or portion thereof passes to and
vests in the condemnor.

The term "leased land" means the real property
belonging to Landlord, together with any and all
improvements placed thereon by Landlord or to which
Landlord has gained title.

B. **Effect of Taking**.  If, during the term hereof,
there shall be a total taking or partial taking under the
power of eminent domain, then the leasehold estate of
Tenant in and to the leased land or the portion thereof
taken shall cease and terminate as of the date of taking
of the said land.  If this Lease is so terminated, in
whole or in part, all rentals and other charges payable by
Tenant to Landlord hereunder and attributable to the
leased land or portion thereof taken shall be paid by
Tenant up to the date of taking by the condemnor and the
parties shall thereupon be released from all further
liaility in relation thereto.

C. **Allocation of Award - Total Taking**.  All
compensation and damages awarded for the total taking of
the leased land and Tenant's leasehold interest therein
shall be allocated a follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The then fair market value of all of
the improvements located on the leased land; and

(ii)  The then fair market value of the
Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

WPN: 4077A                    9

BK 13803PG 649

D.  Allocation of Award - Partial Taking.  All compensation and damages awarded for the taking of a portion of the leased land shall be allocated and divided as follows:

(a)  Tenant shall be entitled to an amount equal to the sum of the following:

(i)  The proportionate reduction of the fair market value of the improvements located on the leased land; and

(ii)  The proportionate reduction of the fair market value of Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount remaining of the total award after deducting therefrom the sums to be paid to Tenant as hereinabove provided.

E.  Reduction of Rent on Partial Taking.  In the event of a partial taking, the rent payable by Tenant hereunder shall be adjusted from the date of taking to the next rental adjustment date or to the date or the expiration of the term of this Lease, whichever date is sooner.  Such rental adjustment will be made by reducing the basic rental payable by the Tenant in the ratio that the fair market value of the leased land at the date of taking bears to the fair market value of the leased and immediately thereafter.

F.  Determination of Fair Market Value.  Whenever fair market value must be determined for the purposes of this Article, and the parties fail to agree in writing on such fair market value within ten (10) days of a request for such agreement from either party, then fair market value shall be determined by the arbitration procedure set forth in the Article entitled "Rental Adjustment".

21.  RENTAL ADJUSTMENT.  Effective January 1, 2000, January 1, 2020 and January 1, 2040, the annual rental payer hereunder shall be adjusted to a sum equal to 8% of the unimproved fair market value of the Leased Land. After any such adjustment of rent, Tenant shall pay to Landlord such rent as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the rental, as so adjusted, be less than the initial rental in the Article of this Lease entitled "Rental".

If, by January 1, 2000, January 1, 2020 or January 1, 2040 (as the case may be), the parties hereto shall have failed to agree upon such adjusted rental, then and thereupon the fair market value of the leased land and the amount of rental to be adjusted in relation thereto, as hereinafter provided, shall be determined by arbitration as follows: within ten (10) days after the date set for determining fair market value, each of the parties hereto shall appoint in writing an arbitrator and give written

WPN: 4077A                    10

000121

BK 13803PG 650

notice thereof to the other party; or, in case of the
failure of either party so to do, the other party may
apply to the Superior Court of Orange County, California,
to appoint an arbitrator to represent the defaulting party
in the manner prescribed in the then existing statutes of
the State of California applicable to arbitration, the
provisions of which statutes shall apply to and govern the
arbitration herein provided for with the same effect as
though incorporated herein.  Within ten (10) days after
the appointment of said two (2) arbitrators (in either
manner) they shall appoint in writing a third arbitrator
and give written notice thereof to Landlord and Tenant,
and if they shall fail to do so, then either party hereto
may make application to said Superior Court to appoint
such third arbitrator in the manner prescribed in said
arbitration statutes.  The three (3) arbitrators so
appointed (in either manner) shall promptly fix a
convenient time and place in the County of Orange for
hearing the matter to be arbitrated and shall give
reasonable written notice thereof to each of the parties
hereto and with reasonable diligence shall hear and
determine the matter in accordance with the provisions
hereof and of said arbitration statutes, and shall execute
and acknowledge their award thereon in writing and cause a
copy thereof to be delivered to each of the parties hereto
and the award of a majority of said arbitrators shall
determine the questions arbitrated, and a judgment may be
rendered by said Superior Court confirming said award or
the same may be vacated, modified or corrected by said
Court at the instance of either of the parties hereto in
accordance with said arbitration statutes, and said
judgment shall have the force and effect as provided in
said statutes.

Each of the parties hereto shall pay for the services of
its appointee, attorneys and witnesses and one-half (1/2)
of all other proper costs of arbitration.  Pending the
final decision of such adjusted rental, Tenant shall pay
to Landlord the amount of rent previously payable under
the Article of this Lease entitled "Rental".  If such
adjusted rental, as finally determined, shall exceed the
amount of the previous rental, the excess amount accruing
during the interim period shall be paid by Tenant to
Landlord within thirty (30) days after the final
determination of said adjusted rental.  If such adjusted
rental, as finally determined, shall be less than such
previous rental, the amount of any excess paid by Tenant
during said interim period shall be credited against the
first rentals thereafter payable hereunder.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage
of water from the leased land and improvements thereon to
drain or flow into adjacent streets and not upon adjoining
property, and Tenant shall so maintain all slopes or
terraces on the leased land as to prevent any erosion
thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on
the leased land, the wall or walls of which adjoin the
wall or walls of a dwelling constructed on a contiguous
lot, any such wall shall be considered to adjoin and abut
the wall of the contiguous lot against the surface from
the bottom of the foundation over the full length and

WPN: 4077A                    11

000122

BK 13503PG 651

height of any building so erected for residential purposes. Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so erected. Such rights of use shall be as not to interfere with the use and enjoyment of the lessees of adjoining lots; and, in the event that any such party wall or fence is damaged or injured from any cause other than the act or negligence of one of the lessees, the same shall be repaired or rebuilt at their joint expense.

24. CONSTRUCTION AND EFFECT. Time is of the essence of this Lease. The article headings herein are used only for the purpose of convenience and shall not be deemed to limit the subject to the articles hereof or to be considered in the construction thereof. Each and all of the obligations, covenants, conditions and restrictions of this Lease shall be deemed as running with the land and shall inure to the benefit of and be binding upon and enforceable against, as the case may require, the successors and assigns of Landlord and the heirs, executors, legal representatives, encumbrancers, assignees, successors and subtenants of Tenant. If Tenant consists of more than one person, the covenants and obligations of Tenant hereunder shall be the joint and several covenants and obligations of such persons. In this Lease, the masculine gender includes the feminine and the neuter, and the singular number includes the plural, whenever the context so requires.

25. NON-DISTURBANCE. No mortgage or deed of trust placed on the leased land by Landlord shall be superior to the interest of Tenant herein, unless Landlord and Tenant execute an agreement in recordable form satisfactory to the Tenant that in the event of judicial or private foreclosure, or deed in lieu of foreclosure, or any other action taken by such mortgagee or beneficiary, this Lease and the rights of Tenant hereunder shall not be disturbed by reason of any such foreclosure or other action but shall continue in full force and effect so long as this Lease shall remain in full force and effect and that in the event of any conflict between the terms of this Lease and any such mortgage or deed of trust with regard to insurance or condemnation proceeds or any other provisions of the Lease or the mortgage or the deed of trust, the terms and provisions of this Lease shall prevail.

WPN: 4077A                    12

BK 13803 PG 652

26. **ESTOPPEL CERTIFICATES.** Landlord and Tenant shall at
any time and from time to time, upon not less than ten
(10) days prior written request by the other party or
parties to this Lease, execute, acknowledge and deliver to
such party or parties a statement in writing certifying
that this Lease is unmodified and in full force and effect
(or if there has been any modification thereof that the
same is in full force and effect as modified and stating
the modification or modifications) and that there are no
defaults existing (or if there is any claimed default
stating the nature and extent thereof); and stating the
dates to which the rent and other charges have been paid
in advance. It is expressly understood and agreed that
any such statement delivered pursuant to this section may
be relied upon by any prospective assignee or sublessee of
the leasehold estate, or estates of Tenant, or any
prospective purchaser of the estate of Landlord, or any
lender or prospective assignee of any lender on the
security of the leased land or the fee estate or any part
thereof, or upon the leasehold estate of Tenant or any
part thereof, and any third person.

27. CONDOMINIUM SUBLEASE.

    (a)   Landlord hereby agrees with Tenant for the
benefit of the Condominium Owner/Subtenant under
any Condominium Subleases that:

       (i)  So long as such Condominium
Owner/Subtenant is not in default in the payment
of rental or other charges due under the
Condominium Sublease or in the performance of any
of the other terms, covenants or conditions of
the Condominium Sublease on such Condominium
Owner/Subtenant's part to be performed, such
Condominium Owner/Subtenant's possession of the
Lot subject to such Condominium Sublease and
Condominium Owner/Subtenant's other rights and
privileges under the Condominium Sublease shall
not be interfered with by the Landlord, its
successors or assigns.

       (ii)  Should this Lease be terminated prior
to the expiration of the term hereof or any
extensions of said term for any reason
whatsoever, including without limitation, as a
result of Tenant's breach thereof or default
thereunder, the Condominium Sublease shall
continue in full force and effect as a direct
lease between Landlord and the Condominium
Owner/Subtenant under the Condominium Sublease,
upon and subject to all of the terms, covenants
and conditions of the Condominium Sublease for
the balance of the term thereof remaining,
provided that such Condominium Owner/Subtenant
attorns to Landlord in writing. Notwithstanding
the foregoing, Landlord shall not be bound by any
act or omission of Tenant as the prior sublessor
under the Condominium Sublease. Landlord shall
not be bound by any prepayment of rent (other
than through the Payment Agreement referred to in
subparagraph 27(c) hereof or other charges which
such Condominium Owner/Subtenant might have paid

WPN: 4077A                    18

BK 13803PG 653

for more than three (3) months in advance to
Tenant as the prior sublessor, and Landlord shall
not be bound by any amendment to or modification
of any Condominium Sublease or by any waiver or
forbearance on the part of Tenant as the prior
sublessor thereunder made or given without the
written consent of Landlord.

(b)  If, the provisions of the foregoing
     notwithstanding, a Condominium Sublease is
     terminated by reason of any termination of this
     Lease, it is hereby agreed that the Condominium
     Owner/Subtenant under such Condominium Sublease
     and Landlord shall enter into a new lease upon
     the terms and conditions of the Condominium
     Sublease for the then remaining balance of the
     term of the Condominium Sublease.

(c)  In the event that such Condominium Subleases
     shall call for the payment of rent less
     frequently than quarter annually, the provisions
     of subparagraph 27(a) shall only be applicable if
     Landlord and Tenant enter into a Payment
     Agreement under the terms of which all rental to
     be paid by Condominium Owner/Subtenant under the
     terms of the Condominium Sublease will be paid to
     a neutral depository, such as a bank, savings and
     loan, trust company or escrow company.  Such
     neutral depository shall be instructed to remit
     to lessor from such sum collected the amount due
     under this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this
Lease as of the day and year first above written.

                          HOUSER BROS. CO., a limited
                          partnership

                          By _____
                             General Partner

                          By _____
                             General Partner

                                    "Landlord"


                          _____
                          Robert P. Warmington

                                    "Tenant"


WPN: 4077A            14

BK 13803PG 654

STATE OF   CALIFORNIA      )
                          ) ss.
COUNTY OF   ORANGE         )

On _August 13_, 1980, before me the
undersigned, a Notary Public in and for said State,
personally appeared Vernon and Clifford Houser , known
to me to be       two            of the partners
of the partnership that executed the within Instrument,
and acknowledged to me that such partnership executed the
same.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_____
Notary Public

[Seal]

STATE OF   CALIFORNIA      )
                          ) ss.
COUNTY OF   ORANGE         )

On   August 1   , 1980, before me the
undersigned, a Notary Public in and for said State,
personally appeared             ROBERT P. WARMINGTON      ,
known to me to be the person whose name is subscribed to
the within Instrument, and acknowledged to me that _he_
executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires May 25, 1983

_____
Notary Public

[Seal]

F NI 4977A                    15

RECORDED IN

000126

Property Profile - myFirstAm                                                    https://www.myfirstam.com/Polygon/MapSearch

 **First American**

*my* **FirstAm**®   Property Profile                                                                  , , CA

## Property Information

| | | | |
|---|---|---|---|
| Owner(s): | Hold , Parcel | Mailing Address: | , , |
| Owner Phone: | Unknown | Property Address: | , , CA |
| Vesting Type: | N/A | Alt. APN: | |
| County: | Orange | APN: | 178-771-03 |
| Map Coord: | | Census Tract: | |
| Lot#: | | Block: | |
| Subdivision: | | Tract: | 10542 |
| Legal: | N Tr 10542 Blk Lot 2 Un Hold | | |

## Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Use: | | Year Built / Eff. : | / | Sq. Ft. : | |
| Zoning: | | Lot Size Ac / Sq Ft: | / | # of Units: | |
| Stories: | | Improvements: | | Parking / #: | / |
| Gross Area: | | Garage Area : | | Basement Area: | |

## Sale and Loan Information

| | | | | | |
|---|---|---|---|---|---|
| Sale / Rec Date: | | *$/Sq. Ft.: | | 2nd Mtg.: | |
| Sale Price: | | 1st Loan: | | Prior Sale Amt: | |
| Doc No.: | | Loan Type: | | Prior Sale Date: | |
| Doc Type: | | Transfer Date: | | Prior Doc No.: | |
| Seller: | | Lender: | | Prior Doc Type: | |

*$/Sq. Ft. is a calculation of Sale Price divided by Sq. Feet.

## Tax Information

| | | | |
|---|---|---|---|
| Imp Value: | | Exemption Type: | |
| Land Value: | | Tax Year / Area: | 2019 / 04-007 |
| Total Value: | | Tax Value: | |
| Total Tax Amt: | | Improved: | |

**Property Profile**                  , , CA                                          **11/15/2019**

All information contained herein is subject to the Limitation of Liability for Informational Report set forth on the last page hereof.

This report is only for the myFirstAm user who applied for it. No one else can rely on it. As a myFirstAm user, you already agreed to our disclaimer regarding third party property information accuracy. You can view it here: www.myfirstam.com/Security/ShowEULA. ©2005-2019 First American Financial Corporation and/or its affiliates. All rights reserved.

000127

**RECORDING REQUESTED BY:**

**Mr. Randy Nickel**
**4476 Alderport Drive**
**Huntington Beach, CA 92649**

**MAIL TAX STATEMENTS TO:**

**Mr. Randy Nickel**
**4476 Alderport Drive.**
**Huntington Beach, CA 92649**

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

96.00

* $ R 0 0 1 0 4 4 6 0 2 6 $ *
2018000395579 2:35 pm 10/31/18
227 415 A34   5
0.00 0.00 0.00 0.00 12.00 0.00 0.000.0075.00 3.00

Lease from Present to 2059

**TITLE OF DOCUMENT:**   **ASSIGNMENT OF CONDOMINIUM SUBLEASE**

WHEN RECORDED MAIL TO:
(Assignee's Name & Address)
MR. RANDALL L. NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

Mail tax statements to:
MR. RANDALL L NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

_____
(Space Above this Line for Recorder's Use)

## ASSIGNMENT OF GROUND LEASE & CONDOMINIUM SUBLEASE
No Consideration.  Term of Lease Less Than 99 years.

WHEREAS
HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant, entered into that certain **GROUND LEASE** also known as the **MASTER LEASE dated October 19, 1979**, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 499 inclusive.

WHEREAS
HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant, entered into a **PARTIAL CANCELLATION OF MASTER LEASE dated November 7, 1980** for that certain **MASTER LEASE dated October 19, 1979**; recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Pg(s) 1253-1255, **Instrument No. 8691.**

WHEREAS
HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant, entered into that certain **SUBLEASE dated October 19, 1979**, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 504, inclusive, with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California as shown on Miscellaneous Map(s) recorded in Book 456, Page(s) 49 and 50, in the Office of the Orange County, California Clerk Recorder.

WHEREAS
HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant, entered into a **PARTIAL CANCELLATION OF SUBLEASE dated October 19, 1979**; for that certain SUBLEASE dated November 7, 1980, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1256-1258, with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Maps, in the Office of the Orange County, California Clerk Recorder, **Instrument No. 8692;**

WHEREAS
For valuable consideration, receipt of which is hereby acknowledged, the undersigned JAMIEL GALLIAN, hereby transfers and assigns to RANDALL L NICKEL, a married man, as his sole and separate property all right, title and interest of the undersigned, as Tenant, in and under that certain **MASTER LEASE/ Ground Lease, dated November 7, 1980**, recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1259-1273, **Instrument No. 8693;**

1

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property,** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE, dated August 1, 1980,** by and between ROBERT P. WARMINGTON, as Landlord, and **JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANT,** recorded on November 7, 1980, Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1274-1290, **Instrument No. 8694;**

As amended by the **FIRST AMENDMENT TO CONDOMINIUM SUBLEASE** effective January 1, 2003, recorded in the Office of the Orange County, California Clerk Recorder as Document No. 2003-001044770 on August 28, 2003.

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONVEYANCE OF REMAINDER INTEREST, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1291-1293, **Instrument No. 8695;**

**JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property,** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE (SHORT FORM – MEMORANDUM AND GRANT DEED, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1294-1298, **Instrument No. 8696.**

DATED: __10/31/18__

ASSIGNOR JAMIE L GALLIAN

STATE OF CALIFORNIA            )
                                              ) ss.
COUNTY OF ORANGE
A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On __10/31/2018_____, before me, __Paul Dyer, Notary Public__

Personally appeared __Jamie L Gallian__,

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

PAUL DYER
Notary Public - California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021

(This space for Notary Seal)

_____
Signature of Notary Public

2

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

### ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment hereby Accepts said Assignment and hereby agrees with for the benefit of the Master Lessor, Sublessor/Landlord, Tenant and under the Original Condominium Sublease commonly referred to throughout this document as "Condominium Sublease", described in said Assignment, to keep, perform and be bound by all the terms, covenants and conditions contained in said Condominium Sublease and as amended by the First Amendment to Condominium Sublease on the part of the Master Lessor, Sublessor/Landlord and Condominium Sublease Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the Original Condominium Sublease Tenant there under.

Assignee agrees to pay Sublessor/Landlord a late fee equal to 6% of any rent or other payment due under the Condominium Sublease, which is not received by Sublessor/Landlord within ten (10) days of its due date.  Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease.  The undersigned Assignee agrees to pay attorneys fees and costs incurred by Landlord to collect rent or other payment under the Condominium Sublease or to otherwise enforce Sublessor/Landlord rights under the Condominium Sublease.

DATED: _10·31·18_       _(signature)_

ASSIGNEE RANDALL L. NICKEL

STATE OF CALIFORNIA     )
                             ) ss.

COUNTY OF ORANGE

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _10/31/2018_ before me, _Paul Dyer, Notary Public_,

Personally appeared _Randall L. Nickel_,

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_(signature)_                 (This space for Notary Seal)

PAUL DYER
Notary Public – California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021

Signature of Notary Public

3

000131

## EXHIBIT A (LEGAL)

The estate or interest in the land described:

A Ground leasehold and Condominium Sublease hold estate as to Parcels 1 and 2, said estate being more particularly described as the Lessees' interest under that certain Ground Lease set forth in subparagraph (A) herein below:

(A)   That certain Ground Lease dated August 1, 1980, executed by Houser Bros. Co, A Limited Partnership organized under the Laws of the State of California, in which Clifford C. Houser and Vernon F. Houser constitute the sole General Partners, as Landlord, and by Robert P. Warmington, as Tenant, for the term ending December 31, 2059.  Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County:   **Book 13824 Page 1259-1273**
**APN: 937-63-053, Unit 53.**

(B)   That certain Condominium Sublease dated August 1, 1980, executed by Robert P. Warmington, as Sublessor and John F. Turner and Virginia H. Turner (Original Sublessee) for the term ending December 31, 2059.  Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County: **Book 13824 Page 1274-1290**
**APN: 937-63-053, Unit 53.**

All that certain land interest situated in the State of California, County of Orange and is described as follows:

Parcel   1:
Unit 53 as shown and defined on a Condominium Plan (the **"Condominium Plan"**) recorded in Book 13358 Page(s) 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements;

Parcel   2:
An undivided one-eightieth (1/80th) interest as Tenants in Common in the Common Area of Lots 1 and 2 Tract No. 10542, in the City of Huntington Beach, County of Orange, State of California as shown on a map recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Map, records of Orange County, California, as shown on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

Except there from all minerals, oil, gas and other hydrocarbon substances lying below a depth of 500 feet below the surface of said Land without the right of surface entry above the depth of 500 feet from the surface, as reserved in deeds of record.

Parcel   3:
Those portions of Unit 53, building 14, inclusive, as shown and defined on the Condominium Plan, Consisting of buildings and other improvements.

Parcel   4:
An undivided one-eightieth (1/80th) interest as Tenants in Common, in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings or other improvements.

Parcel   5:
An easement for the exclusive use and occupancy of those portions of the restricted Common Area, as defined on said Condominium Plan for ground level entry, courtyard entry, staircases, garages, and attic space relating to said units.

Parcel   6:
A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the restricted Common Area(s).

4



The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1253 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION OF THE CONDITION OF TITLE TO REAL PROPERTY. IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY. THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON. THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S PRIOR WRITTEN CONSENT. FIRST AMERICAN DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS. AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT. RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

8691                    BK 13824 PG 1253

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

Houser Bros. Co.
17610 Beach Boulevard
Suite 32
Huntington Beach, California

> RECORDED AT REQUEST OF
> FIRST AMER. TITLE INS. CO.
> IN OFFICIAL RECORDS OF
> ORANGE COUNTY, CALIFORNIA
>
> 8:00 A.M. NOV 7 1980
>
> LEE A. BRANCH, County Recorder

## PARTIAL CANCELLATION OF MASTER LEASE

HOUSER BROS. CO., a limited partnership, as Landlord,
and ROBERT P. WARMINGTON, as Tenant, hereby cancel, effective
when this instrument is recorded in the Office of the County
Recorder of Orange County, California, that certain Ground
Lease dated October 19, 1979, a Short Form-Memorandum of
which was recorded in Book 13424, Page 499, Official Records
of Orange County, California, with respect to those portions
of Lots 1 and 2 of Tract 10542 in the City of Huntington
Beach, County of Orange, State of California, as shown on a
Map recorded in Book 456, Pages 49 and 50 of Miscellaneous
Maps, in the Office of the County Recorder of Orange County,
California, described on Exhibit A attached hereto.

IN WITNESS WHEREOF, HOUSER BROS. CO. and ROBERT P.
WARMINGTON have executed this instrument as of August 1,
1980.

HOUSER BROS. CO.

By _____

By _____

_____
ROBERT P. WARMINGTON

BK 13824 PG 1254

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF ORANGE     )

On _____ Aug 12 , 1980, before me, the undersigned,
a Notary Public in and for said County and State, personally
appeared ____ VERNON F. HOUSER _____ and
____ CLIFFORD C. HOUSER _____ , known to me to be
_____ two _____ of the partners of the limited
partnership that executed the within instrument, and
acknowledged to me that such limited partnership executed
the same.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1982

_Pearl L. Hunt_
Notary Public in and for
said County

[SEAL]

STATE OF CALIFONRIA  )
                     ) ss.
COUNTY OF ORANGE     )

On _ August 1 ___ , 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1982

_Pearl L. Hunt_
Notary Public in and for
said County

[SEAL]

2

BK 13824 PG 1255

## EXHIBIT A

### Parcel 1

Unit 53, as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

### Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

### Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

RECORDED D



**Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1256 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION OF THE CONDITION OF TITLE TO REAL PROPERTY. IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY. THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON. THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S PRIOR WRITTEN CONSENT. FIRST AMERICAN DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS. AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT. RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

8692

$5.00

BK 13824 PG 1256

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California  92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

## PARTIAL CANCELLATION OF SUBLEASE

ROBERT P. WARMINGTON, as Landlord, and THE ROBERT P.
WARMINGTON CO., a California corporation, as Tenant, hereby
cancel, effective when this instrument is recorded in the
Office of the County Recorder of Orange County, California,
that certain Sublease dated October 19, 1979, a Short Form-
Memorandum of which was recorded in Book 13424, Page 504,
Official Records of Orange County, California, with respect
to those portions of Lots 1 and 2 of Tract 10542, in the City
of Huntington Beach, County of Orange, State of California,
as shown on a map recorded in Book 456, Pages 49 and 50 of
Miscellaneous Maps, in the Office of the County Recorder of
Orange County, California, described on Exhibit A attached
hereto.

IN WITNESS WHEREOF, ROBERT P. WARMINGTON and THE
ROBERT P. WARMINGTON CO. have executed this instrument as
of August 1, 1980.

_____
Robert P. Warmington

THE ROBERT P. WARMINGTON CO.

By _____

By _____

BK 13824 PG 1257

STATE OF CALIFORNIA   )
                      ) ss.
COUNTY OF ORANGE      )

On <u>August 1</u>, 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.



Notary Public in and for
said County

[SEAL]

STATE OF CALIFORNIA   )
                      ) ss.
COUNTY OF ORANGE      )

On <u>August 1</u>, 1960, before me, the undersigned, a
Notary Public in and for said State, personally appeared
<u>OLIVER N. CRARY</u>, known to me to be
the <u>Vice President</u>, and <u>WILLIAM J. PITTMAN</u>,
known to me to be the <u>Secretary</u> of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.



Notary Public in and for said
County

[SEAL]

2

BK 13824 PG 1258

## EXHIBIT A

### Parcel 1

Unit _63_ , as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

### Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

### Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

RECORDED I



**Recorded Document**

---

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1259 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

---

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.



8693

$ 17.00

BK 13824 PG 1259

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8.00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

Recorded at the Request of and
When Recorded Mail To:

Robert P. Warmington
16592 Hale Avenue
Irvine, CA 92714

No Consideration
Lease Is For a Definite Term

AP 178-011-01

### GROUND LEASE

THIS GROUND LEASE is made this 1st day of August, 1980, by
and between HOUSER BROS. CO., a limited partnership
organized and existing under the laws of the State of
California in which Clifford C. Houser and Vernon F.
Houser constitute the sole general partners whose address
is Suite 204, 610 East Seventeenth Street, Santa Ana,
California 92701 (herein termed the "Landlord"), and
Robert P. Warmington whose address is 16592 Hale Avenue,
Irvine, CA 92714.

### W I T N E S S E T H:

1. **PROPERTY LEASED.** For and in consideration of the
payment of the rents and taxes and other charges and for
the performance of all of the covenants and conditions of
this Lease by Tenant, Landlord hereby leases to Tenant
those portions of Lots 1 and 2 of Tract 10542 in the City
of Huntington Beach, County of Orange, State of
California, as shown on a map recorded in Book 456, Pages
49 and 50 of Miscellaneous Maps, in the Office of the
County Recorder of Orange County, California, described as
follows:

Parcel 1

Unit 53, as shown and defined on a Condominium
Plan (the "Condominium Plan") recorded in Book 13358,
Pages 1193, et seq., Official Records of Orange
County, California, excepting that portion consisting
of buildings and other improvements.

Parcel 2

An undivided one-eightieth (1/80) interest in the
Common Area as shown and defined on the Condominium
Plan, excepting that portion consisting of buildings
and other improvements.

Parcel 3

An easement for the exclusive use and occupancy
of those portions of the Restricted Common Area as
defined on said Condominium Plan for entry and
staircases and attic space relating to said Unit,
excepting that portion consisting of buildings and
other improvements.

WPN:4077A

000143

BK 13824 PG 1260

<u>Parcel 4</u>

A non-exclusive easement and right to use the
Common Area as defined on said Condominium Plan,
except the Restricted Common Area, excepting that
portion consisting of buildings and other improvements,

(hereinafter referred to as the "leased land").

<u>SUBJECT TO</u>:

(a)  Current taxes and assessments.

(b)  Covenants, conditions, restrictions,
reservations, rights, rights-of-way and easements of
record.

2.  <u>TERM OF LEASE</u>.  The leased land is leased for a basic
term commencing on the date this Ground Lease is recorded
in the Office of the County Recorder of Orange County,
California and ending on December 31, 2059, subject,
however, to earlier termination as hereinafter provided.

3.  <u>RENTAL</u>.  Tenant agrees to pay to Landlord, as rental
for the use and occupancy of said leased land during the
term of this lease, the annual sum of Nine Hundred DOLLARS
($900) in monthly installments of $75.00 each, in advance,
on the first day of calendar month of said term; provided,
however, if said term commences on other than the first
day of a calendar month the first installment shall be
paid on such commencement date in an appropriately reduced
amount.  Said rent is subject to adjustment at the time
and in the manner as herein provided for in Article 21
entitled "Rental Adjustment".  All rentals hereunder and
charges with respect thereto shall be paid in lawful money
of the United States of America.

4.  <u>TAXES AND ASSESSMENTS</u>.  In addition to the rents above
provided, Tenant shall pay, prior to the delinquency date
thereof, all taxes and general and special assessments of
every description which, during the term of this Lease,
may be levied upon or assessed against the leased land and
all interest therein and improvements and other property
thereon, whether belonging to Landlord or Tenant, and
Tenant agrees to protect and hold harmless the Landlord
and the leased land and all interest therein and
improvements thereon from any and all such taxes and
assessments, including any interest, penalties and other
expenses which may be thereby imposed and from any lien
therefor or sale or other proceedings to enforce payment
thereof.

5.  <u>USE OF LEASED LAND</u>.  Tenant shall use the leased land
for any purposes permitted under the zoning and other land
use laws and regulations applicable thereto.  Tenant shall
not use or permit any person to so use the leased land and
the improvements thereon, or any portion thereof, as to
disturb the neighborhood or occupants of adjoining
property, or to constitute a nuisance, or to violate any
public law, ordinance or regulation from time to time
applicable thereto.

WPN: 4077A                    2

000144

BK 13824 P3 1261

6. **IMPROVEMENTS**. When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of landlord whatsoever.

7. **MAINTENANCE OF LEASED LAND**. Landlord shall not be obligated to make any repairs, alterations, additions or improvements in or to or upon or adjoining the leased land or any structure of other improvement that may be constructed or installed thereon, but Tenant shall, at all times during the full term of this Lease and at its sole cost and expense, keep and maintain all buildings, structures and other improvements on the leased land, if any, in good order and repair, and the whole of the leazed land and all improvements thereto free of weeds and rubbish and in a clean, sanitary and neat condition, and Tenant shall construct, maintain and repair all facilities and other improvements which may be required at any time by law upon or adjoining or in connection with or for the use of the leased land or any part thereof, and Tenant shall make any and all additions to or alterations in any buildings and structures on said premises which may be required and shall otherwise observe and comply with any and all public laws, ordinances and regulations for the time being, applicable to the leased land, and Tenant agrees to indemnify and save harmless the Landlord against all actions, claims and damages by reason of Tenant's failure to keep and maintain said premises and any buildings and improvements thereon as hereinabove provided, or by reason of its nonobservance or nonperformance of any law, ordinance and regulation applicable thereto.

8. **RESTORATION OF IMPROVEMENTS**. If, during the term hereof, the dwelling, structures or other improvements, if any, constructed by or for Tenant on the leased land, or any part thereof, shall be damaged or destroyed by fire or other casualty, Tenant may, at its cost and expense, either (a) repair or restore said dwelling and improvements; or (b) subject to the consent of any encumbrancer, if any, tear down and remove the same from the leased land.

9. **LIENS AND CLAIMS**. Tenant shall not suffer or permit to be enforced against Landlord's title to the leased land, or any part thereof, any lien, claim or demand arising from any work of construction, repair, restoration, maintenance or removal as herein provided or otherwise arising, except liens, claims or demands suffered by or arising from the actions of Landlord, and Tenant shall pay all such liens, claims and demands before any action is brought to enforce the same against said land. Tenant agrees to hold Landlord and the leased land free and harmless from all liability for any and all such liens, claims or demands, together with all costs and expenses, including, but not limited to, reasonable attorneys' fees and court costs incurred by Landlord in connection therewith. Landlord shall have the right at

WPN: 4077A                                    3

BK 13824 PG 1262

any time to post and maintain on the leased land such
notices as may be necessary to protect landlord against
liability for all such liens or otherwise.
Notwithstanding anything to the contrary contained in this
Article, if Tenant shall, in good faith, contest the
validity of any such lien, claim or demand, the Tenant
shall, at its expense, defend itself and landlord against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against Landlord or the leased land, and if
Landlord shall require, Tenant shall furnish to Landlord a
surety bond satisfactory to Landlord in an amount equal to
such contested lien, claim or demand, indemnifying
Landlord aainst liability for same, or if Landlord shall
request, Tenant shall procure and record the bond provided
for in Section 3143 of the California Code of Civil
Procedure, or any comparable statute hereafter enacted
providing for a bond freeing the leased land from the
effect of such lien or claim or action thereon.

10.   LIABILITIES.  Landlord shall not be liable for any
loss, damage or injury of any kind whatsoever to the
person or property of Tenant, or any of Tenant's
employees, guests or invitees or of any other person
whomsoever, caused by any use of the leased land or by any
defect in any building, structure or other improvement
constructed thereon, or arising from any accident on the
leased land or any fire or other casualty thereon, or
occasioned by the failure on the part of Tenant to
maintain said premises in safe condition, or by any
nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11.   LANDLORD PAYING CLAIMS.  Should Tenant fail or refuse
to pay any tax, assessment or other charge upon the leased
land when due and payable as provided herein, or any lien
or claim arising out of the construction, repair,
restoration, maintenance and use of the leased land and
the buildings and improvements thereon, or any other
claim, charge or demand which Tenant has agreed to pay
under the covenants of this Lease, and if after thirty
(30) days written notice from landlord to Tenant and to
its authorized encumbrancer, if any, Tenant or its said
encumbrancer shall fail or refuse to pay and discharge the
same, then Landlord may, at its option, pay such tax,
assessment, lien, claim, charge or demand, or settle or
discharge any action therefor or judgment thereon, and all
costs, expenses and other sums incurred or paid by
Landlord in connection therewith shall be repaid to
Landlord by Tenant upon written demand, together with
interest thereon at the rate of ten (10%) percent per
annum from the date of payment until repaid, and any

WFN: 4077A                         4

BK 13824 PG 1263

default in such repayment shall constitute a breach of the
covenants and conditions of this Lease. Notwithstanding
the forgoing, if Tenant shall in good faith contest the
validity of any tax or assessment levied against the
leased land, then Tenant may withhold payment thereof
pending settlement of its claim or pay the same under
protest; and, in either case, at Tenant's expense, shall
defend itself and landlord against the same and shall pay
and satisfy any adverse judgment that may be rendered
thereon before the enforcement thereof against Landlord or
the leased land.

12. ASSIGNMENT. Tenant shall have the right to assign,
sublet or otherwise transfer its interest under this Lease
without the prior written consent of Landlord.
Notwithstanding the foregoing, this Lease or any right
hereunder shall in no case be assigned separate and apart
from the Tenants interest in the improvements located on
the leased land. Also notwithstanding the foregoing,
Landlord shall accept Tenant's assignee in writing
following a request therefor.

13. ENCUMBRANCES. Tenant shall have the right to assign
Tenant's interest in this Lease and the leased land to a
trustee under a deed of trust (herein called "trust
deed"), for the benefit of a lender (herein called
"encumbrancer") upon and subject to the following
covenants and conditions. Landlord's consent shall not be
required for such assignment, but Landlord shall execute
its written consent to such assignment by trust deed
following a request therefor from Tenant:

A. Said trust deed and said assignment and all rights
acquired thereunder shall be subject to each and all of
the covenants, conditions and restrictions set forth in
this Lease and to all rights and interests of the Landlord
hereunder; and, in the event of any conflict between the
provisions of this Lease and the provisions of any such
trust deed or assignment, the provisions of this Lease
shall control.

B. Any encumbrancer as a transferee under the
provisions of this Article shall be liable to perform the
obligations of the Tenant under this Lease only so long as
such encumbrancer holds title to the leasehold.

C. Upon and immediately after the recording of the
trust deed covering the leased land, Tenant, at Tenant's
expense, shall cause to be recorded in the office of the
Recorder of Orange County, California, a written request
for a copy, to the Landlord, of any notice of default and
of any notice of sale under the trust deed as provided by
the statutes of the State of California relating thereto.
Tenant shall furnish to landlord a complete copy of the
trust deed and note secured thereby, together with the
name and address of the holder thereof.

D. Landlord agrees that it will not terminate this
Lease because of any default or breach hereunder on the
part of the Tenant if the encumbrancer or the trustee
under such deed of trust, within ninety (90) days after
service of written notice on the encumbrancer by Landlord

WPN: 4077A                    5

BK 13824 PG 1264

of its intention to terminate this Lease for such default
or breach, shall:

    (a)  Cure such default or breach if the same can
be cured by the payment or expenditure of money
provided to be paid under the terms of this Lease, or
if such default or breach is not so curable, cause the
trustee under the trust deed to commence and
thereafter to diligently pursue to completion steps
and proceedings for the foreclosure by sale or by
exercise of a power of sale under and pursuant to the
trust deed in the manner provided by law; and

    (b)  Keep and perform all of the covenants and
conditions of this Lease requiring the payment or
expenditure of money by Tenant until such time as said
leasehold shall be sold upon foreclosure, or by
exercise of a power of sale, pursuant to the trust
deed or shall be released or reconveyed thereunder;
provided, however, that if the beneficiary under such
trust deed shall fail or refuse to comply with any and
all of the conditions of this Article with respect to
a breach or default as to which notice of intention to
terminate this Lease has been given to the
encumbrancer, then and thereupon Landlord shall be
released from the covenants of forebearance herein
contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this
Article may be given concurrently with or after Landlord's
notice of default to Tenant as herein provided for in the
Article entitled "Termination".

14.  TERMINATION.  Should Tenant fail to pay any
installment of rent or any other sum provided in this
Lease to be paid by Tenant at the times herein specified
and should such default continue uncured for a period of
thirty (30) days after written notice from Landlord, or
should Tenant default in the performance of or breach any
other covenant, condition or restriction of this Lease
herein provided to be kept or performed by Tenant, and
should such default or breach continue uncured for a
period of sixty (60) days from and after written notice
thereof by Landlord to Tenant, then and in any such event,
Landlord may declare this Lease to be in default and
Landlord shall have all of the remedies available at law
or stated in the Article entitled "Remedies" or elsewhere
provided in this Lease.

15.  REMOVAL.  Upon the expiration of the term of this
Lease, and on condition that Tenant shall not then be in
default under any of the covenants and conditions hereof,
and not otherwise, Tenant shall have the right during the
last ninety (90) days of said term, at its sole expense,
to remove from the leased land all buildings and other
improvements thereon, and Tenant shall fill all
excavations and remove all parts of said buildings
remaining after the same are removed and surrender
possession of the leased land to Landlord in a clean and
orderly condition.  In the event any of said buildings and
other improvements shall not be removed from the leased

WPN: 4077A         6




BK 1 ' ' 6 1265

land within the time hereinabove provided, the same shall
become and thereafter remain a part of the leased land and
shall belong to Landlord without the payment of any
consideration therefor.  Upon the expiration of the term
hereof, or any sooner termination of this Lease, Tenant
shall execute, acknowledge and deliver to Landlord a
proper instrument in writing releasing and quitclaiming to
Landlord all right, title and interest of Tenant in and to
the leased land and any and all improvements thereon, if
not removed by virtue of this Lease or otherwise.

16.   PLACE OF PAYMENTS AND NOTICES.  All rents and other
sums payable by Tenant to Landlord hereunder shall be paid
to the Landlord at the address set forth after Landlord's
name above.  Whenever either party hereto desires to give
written notice to the other respecting this Lease, such
notice, if not personally delivered to Landlord or to
Tenant, shall be sent by certified or registered mail,
with postage prepaid, and directed to either party at the
address hereinabove specified, or at such other address as
either party may hereafter designate in writing.  The
service of any such written notice shall be deemed
complete at the time of such personal delivery or within
two (2) days after the mailing thereof in Orange County,
California, as herein provided.  Should Landlord or Tenant
consist of more than one person, the personal delivery or
mailing of such notice to any one of such persons shall
constitute complete service upon all such persons.  Any
notice provided in the Article hereof entitled
"Encumbrances" to be given by Landlord to any encumbrancer
of Tenant shall be served in the same manner as herein
provided in this Article and shall be delivered to the
encumbrancer or directed to its address as last shown on
the records of Landlord.

17.   REMEDIES.  Should Tenant at any time be in default
hereunder pursuant to the provisions of the Article hereof
entitled "Termination", then notwithstanding Tenant's
breach of this Lease and abandonment of the leased land,
this Lease shall continue in effect so long as Landlord
does not terminate Tenant's right to possession and
Landlord may enforce all of its rights and remedies
hereunder, including, at the option of Landlord:

     A.  The right to declare the term hereof ended and
with process of law to reenter the leased land and take
possession thereof and remove all persons therefrom, and
Tenant shall have no further claim thereon or hereunder; or

     B.  The right to collect rent and other charges as the
same may from time to time become due and to bring actions
for such collections without terminating this Lease, and
to thereafter at any time elect to terminate this Lease
and all of the rights of Tenant in or to the leased land.

Should Landlord elect to terminate the Lease, Landlord
shall be entitled to recover the worth at the time of the
award of the amount by which the unpaid rent for the
balance of the term, at the time of the award, exceeds
the amount of the rental loss for the same period that
Tenant proves could be reasonably avoided, together with

WPi: 4077A                    7

BK 13824 PG 1268

the rent then unpaid, if any, together with any other
remedy permitted under Califonia Civil Code Section 1951.2
or any other similar statute hereafter enacted.

If Landlord shall elect to reenter the leased land under
the provisions of A or B above, Landlord shall not be
liable for damages by reason of such reentry.

Notwithstanding any other provision of this Lease,
Landlord agrees that if the default complained of, other
than for the payment of monies, is of such nature that the
same cannot be cured within the period specified above,
then such default shall be deemed to be cured if Tenant,
within such period, shall have commenced the curing
thereof and shall continue thereafter with all due
diligence to cause such curing and does so complete the
same with the use of such diligence.

Each of the terms, covenants, conditions and provisions of
Tenant under this Lease is a material consideration for
this Lease, the breach of which shall be deemed a default
hereunder. All rights, options and remedies of Landlord
contained in this Lease shall be construed and held to be
cumulative, and no one of them shall be exclusive of the
other, and Landlord shall have the right to pursue any one
or all of such remedies or any other remedy or relief
which may be provided by law, whether or not stated in
this Lease. No waiver by Landlord of a breach of any of
the terms, covenants or conditions of this Lease by Tenant
shall be construed or held to be a waiver of any
succeeding or preceding breach of the same or any other
term, covenant or condition herein contained. No waiver
of any default of Tenant hereunder shall be implied from
any omission by Landlord to take any action on account of
such default if such default persists or is repeated, and
no express waiver shall affect default other than as
specified in said waiver. The consent or approval by
Landlord to or of any act by Tenant requiring Landlord's
consent or approval shall not be deemed to waive or render
unnecessary Landlord's consent or approval to or of any
subsequent similar acts by Tenant.

In the event any action shall be instituted between
Landlord and Tenant in connection with this Lease, the
party prevailing in such action shall be entitled to
recover from the other party all of its costs, including
reasonable attorneys' fees, as fixed by the court therein.

18.  REPRESENTATIONS.  Tenant covenants and agrees that it
has examined the leased land and that the same is
delivered to it in good order and condition and that no
representations as to said land have been made by Landlord
or by any person or agent acting for Landlord, and it is
agreed that this document contains the entire agreement
between the parties hereto and that there are no verbal
agreements, representations, warranties or other
understandings affecting the same.

19.  HOLDING OVER.  This Lease shall terminate and become
null and void without further notice upon the expiration
of said term. Any holding over shall not constitute a

WPN: 4077A                    8

BK 13824PG 1267

renewal hereof, but the tenancy shall thereafter be on a
month-to-month basis and otherwise on the same terms and
conditions as herein set forth.

26. EMINENT DOMAIN.

A. Definition of Terms. The term "total taking", as
used in this Article, means the taking of the entire
leased land under the power of eminent domain or the
taking of so much of said land as to prevent or
substantially impair the use thereof by Tenant for the
uses and purposes herei above provided.

The term "partial taking" means the taking of a
portion only of the leased land which does not constitute
a total taking as defined above.

The term "taking" shall include a voluntary conveyance
by Landlord to an agency, authority or public utility
under threat of a taking under the power of eminent domain
in lieu of formal proceedings.

The term "date of taking" shall be the date upon which
title to the leased land or portion thereof passes to and
vests in the condemnor.

The term "leased land" means the real property
belonging to Landlord, together with any and all
improvements placed thereon by Landlord or to which
Landlord has gained title.

B. Effect of Taking. If, during the term hereof,
there shall be a total taking or partial taking under the
power of eminent domain, then the leasehold estate of
Tenant in and to the leased land or the portion thereof
taken shall cease and terminate as of the date of taking
of the said land. If this Lease is so terminated, in
whole or in part, all rentals and other charges payable by
Tenant to Landlord hereunder and attributable to the
leased land or portion thereof taken shall be paid by
Tenant up to the date of taking by the condemnor and the
parties shall thereupon be released from all further
liability in relation thereto.

C. Allocation of Award - Total Taking. All
compensation and damages awarded for the total taking of
the leased land and Tenant's leasehold interest therein
shall be allocated a follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The then fair market value of all of
the improvements located on the leased land; and

(ii)  The then fair market value of the
Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

WPN: 4077A              9

BK 13824 PG 1268

D.  Allocation of Award - Partial Taking.  All compensation and damages awarded for the taking of a portion of the leased land shall be allocated and divided as follows:

(a)  Tenant shall be entitled to an amount equal to the sum of the following:

(i)  The proportionate reduction of the fair market value of the improvements located on the leased land; and

(ii)  The proportionate reduction of the fair market value of Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount remaining of the total award after deducting therefrom the sums to be paid to Tenant as hereinabove provided.

E.  Reduction of Rent on Partial Taking.  In the event of a partial taking, the rent payable by Tenant hereunder shall be adjusted from the date of taking to the next rental adjustment date or to the date of the expiration of the term of this Lease, whichever date is sooner.  Such rental adjustment will be made by reducing the basic rental payable by the Tenant in the ratio that the fair market value of the leased land at the date of taking bears to the fair market value of the leased and immediately thereafter.

F.  Determination of Fair Market Value.  Whenever fair market value must be determined  for the purposes of this Article, and the parties fail to agree in writing on such fair market value within ten (10) days of a request for such agreement from either party, then fair market value shall be determined by the arbitration procedure set forth in the Article entitled "Rental Adjustment".

21.  RENTAL ADJUSTMENT.  Effective January 1, 2000, January 1, 2020 and January 1, 2040, the annual rental payer hereunder shall be adjusted to a sum equal to 8% of the unimproved fair market value of the Leased Land. After any such adjustment of rent, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the rental, as so adjusted, be less than the initial rental in the Article of this Lease entitled "Rental".

If, by January 1, 2000, January 1, 2020 or January 1, 2040 (as the case may be), the parties hereto shall have failed to agree upon such adjusted rental, then and thereupon the fair market value of the leased land and the amount of rental to be adjusted in relation thereto, as hereinafter provided, shall be determined by arbitration as follows: within ten (10) days after the date set for determining fair market value, each of the parties hereto shall appoint in writing an arbitrator and give written

WFN: 4077A                    10

BK 13824 PG 1269

notice thereof to the other party; or, in case of the
failure of either party so to do, the other party may
apply to the Superior Court of Orange County, California,
to appoint an arbitrator to represent the defaulting party
in the manner prescribed in the then existing statutes of
the State of California applicable to arbitration, the
provisions of which statutes shall apply to and govern the
arbitration herein provided for with the same effect as
though incorporated herein. Within ten (10) days after
the appointment of said two (2) arbitrators (in either
manner) they shall appoint in writing a third arbitrator
and give written notice thereof to Landlord and Tenant,
and if they shall fail to do so, then either party hereto
may make application to said Superior Court to appoint
such third arbitrator in the manner prescribed in said
arbitration statutes. The three (3) arbitrators so
appointed (in either manner) shall promptly fix a
convenient time and place in the County of Orange for
hearing the matter to be arbitrated and shall give
reasonable written notice thereof to each of the parties
hereto and with reasonable diligence shall hear and
determine the matter in accordance with the provisions
hereof and of said arbitration statutes, and shall execute
and acknowledge their award thereon in writing and cause a
copy thereof to be delivered to each of the parties hereto
and the award of a majority of said arbitrators shall
determine the questions arbitrated, and a judgment may be
rendered by said Superior Court confirming said award or
the same may be vacated, modified or corrected by said
Court at the instance of either of the parties hereto in
accordance with said arbitration statutes, and said
judgment shall have the force and effect as provided in
said statutes.

Each of the parties hereto shall pay for the services of
its appointee, attorneys and witnesses and one-half (1/2)
of all other proper costs of arbitration. Pending the
final decision of such adjusted rental, Tenant shall pay
to Landlord the amount of rent previously payable under
the Article of this Lease entitled "Rental". If such
adjusted rental, as finally determined, shall exceed the
amount of the previous rental, the excess amount accruing
during the interim period shall be paid by Tenant to
Landlord within thirty (30) days after the final
determination of said adjusted rental. If such adjusted
rental, as finally determined, shall be less than such
previous rental, the amount of any excess paid by Tenant
during said interim period shall be credited against the
first rentals thereafter payable hereunder.

22. DRAINAGE AND FILL. Tenant shall cause all drainage
of water from the leased land and improvements thereon to
drain or flow into adjacent streets and not upon adjoining
property, and Tenant shall so maintain all slopes or
terraces on the leased land as to prevent any erosion
thereof upon such streets or adjoining property.

23. ENCROACHMENTS. If a dwelling house is constructed on
the leased land, the wall or walls of which adjoin the
wall or walls of a dwelling constructed on a contiguous
lot, any such wall shall be considered to adjoin and abut
the wall of the contiguous lot against the surface from
the bottom of the foundation over the full length and

WPN: 4077A                    11

000153

BK 13824PG 1270

height of any building so erected for residential
purposes.  Both Tenant and lessees of contiguous lots
shall have a reciprocal easement appurtenant to each of
said lots over said contiguous lots fo. the purpose of
accommodating any encroachment of any wall of any dwelling
house.

Tenant and the lessees of contiguous lots shall have a
reciprocal easement appurtenant to each of said lots over
said contiguous lots for the purpose of accommodating any
natural settlement of any structures located on any of
said lots.

Should there be found to exist any party wall or party
fence, the agreement between Tenant and the lessee of a
contiguous lot or lots shall be that the lessees of the
contiguous lots who have a party wall or party fence shall
equally have the right to the use of such wall or fence,
and such wall shall be considered to adjoin and abut
against the surface from the bottom of the foundation over
the full length and height of any building so erected.
Such rights of use shall be as not to interfere with the
use and enjoyment of the lessees of adjoining lots; and,
in the event that any such party wall or fence is damaged
or injured from any cause other than the act or negligence
of one of the lessees, the same shall be repaired or
rebuilt at their joint expense.

24.  CONSTRUCTION AND EFFECT.  Time is of the essence of
this Lease.  The article headings herein are used only for
the purpose of convenience and shall not be deemed to
limit the subject to the articles hereof or to be
considered in the construction thereof.  Each and all of
the obligations, covenants, conditions and restrictions of
this Lease shall be deemed as running with the land and
shall inure to the benefit of and be binding upon and
enforceable against, as the case may require, the
successors and assigns of Landlord and the heirs,
executors, legal representatives, encumbrancers,
assignees, successors and subtenants of Tenant.  If Tenant
consists of more than one person, the covenants and
obligations of Tenant hereunder shall be the joint and
several covenants and obligations of such persons.  In
this Lease, the masculine gender includes the feminine and
the neuter, and the singular number includes the plural,
whenever the context so requires.

25.  NON-DISTURBANCE.  No mortgage or deed of trust placed
on the leased land by Landlord shall be superior to the
interest of Tenant herein, unless Landlord and Tenant
execute an agreement in recordable form satisfactory to
the Tenant that in the event of judicial or private
foreclosure, or deed in lieu of foreclosure, or any other
action taken by such mortgagee or beneficiary, this Lease
and the rights of Tenant hereunder shall not be disturbed
by reaso. of any such foreclosure or other action but
shall continue in full force and effect so long as this
Lease shall remain in full force and effect and that in
the event of any conflict between the terms of this Lease
and any such mortgage or deed of trust with regard to
insurance or condemnation proceeds or any other provisions
of the Lease or the mortgage or the deed of trust, the
terms and provisions of this Lease shall prevail.

WPN: 4077A            12

000154

BK 13824 PG 1271

26. **ESTOPPEL CERTIFICATES.** Landlord and Tenant shall at any time and from time to time, upon not less than ten (10) days prior written request by the other party or parties to this Lease, execute, acknowledge and deliver to such party or parties a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there has been any modification thereof that the same is in full force and effect as modified and stating the modification or modifications) and that there are no defaults existing (or if there is any claimed default stating the nature and extent thereof); and stating the dates to which the rent and other charges have been paid in advance. It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by any prospective assignee or sublessee of the leasehold estate, or estates of Tenant, or any prospective purchaser of the estate of Landlord, or any lender or prospective assignee of any lender on the security of the leased land or the fee estate or any part thereof, or upon the leasehold estate of Tenant or any part thereof, and any third person.

27. CONDOMINIUM SUBLEASE.

(a) Landlord hereby agrees with Tenant for the benefit of the Condominium Owner/Subtenant under any Condominium Subleases that:

(i) So long as such Condominium Owner/Subtenant is not in default in the payment of rental or other charges due under the Condominium Sublease or in the performance of any of the other terms, covenants or conditions of the Condominium Sublease on such Condominium Owner/Subtenant's part to be performed, such Condominium Owner/Subtenant's possession of the lot subject to such Condominium Sublease and Condominium Owner/Subtenant's other rights and privileges under the Condominium Sublease shall not be interfered with by the Landlord, its successors or assigns.

(ii) Should this Lease be terminated prior to the expiration of the term hereof or any extensions of said term for any reason whatsoever, including without limitation, as a result of Tenant's breach thereof or default thereunder, the Condominium Sublease shall continue in full force and effect as a direct lease between Landlord and the Condominium Owner/Subtenant under the Condominium Sublease, upon and subject to all of the terms, covenants and conditions of the Condominium Sublease for the balance of the term thereof remaining, provided that such Condominium Owner/Subtenant attorns to Landlord in writing. Notwithstanding the foregoing, Landlord shall not be bound by any act or omission of Tenant as the prior sublessor under the Condominium Sublease. Landlord shall not be bound by any prepayment of rent (other than through the Payment Agreement referred to in subparagraph 27(c) hereof or other charges which such Condominium Owner/Subtenant might have paid

WPN: 4077A                     11

000155

BK 13824 PG 1272

for more than three (3) months in advance to
Tenant as the prior sublessor, and Landlord shall
not be bound by any amendment to or modification
of any Condominium Sublease or by any waiver or
forbearance on the part of Tenant as the prior
sublessor thereunder made or given without the
written consent of Landlord.

(b)  If, the provisions of the foregoing
notwithstanding, a Condominium Sublease is
terminated by reason of any termination of this
Lease, it is hereby agreed that the Condominium
Owner/Subtenant under such Condominium Sublease
and Landlord shall enter into a new lease upon
the terms and conditions of the Condominium
Sublease for the then remaining balance of the
term of the Condominium Sublease.

(c)  In the event that such Condominium Subleases
shall call for the payment of rent less
frequently than quarter annually, the provisions
of subparagraph 27(a) shall only be applicable if
Landlord and Tenant enter into a Payment
Agreement under the terms of which all rental to
be paid by Condominium Owner/Subtenant under the
terms of the Condominium Sublease will be paid to
a neutral depository, such as a bank, savings and
loan, trust company or escrow company.  Such
neutral depository shall be instructed to remit
to lessor from such sum collected the amount due
under this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this
Lease as of the day and year first above written.

HOUSER BROS. CO., a limited
partnership

By _____
General Partner

By _____
General Partner

"Landlord"

_____
Robert P. Warmington

"Tenant"

WPN: 4077A                    14

000156

BK 13824 PG 1273

STATE OF   <u>CALIFORNIA</u>   )
                        ) ss.
COUNTY OF   <u>ORANGE</u>   )

On <u>Aug. 13</u>, 19<sup>80</sup> before me the undersigned, a Notary Public in and for said State, personally appeared Vernon F. & Clifford C. Houser, known to me to be    two    of the partners of the partnership that executed the within Instrument, and acknowledged to me that such partnership executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

[Seal]

_Pearl L. Hunt_
Notary Public

STATE OF   <u>CALIFORNIA</u>   )
                        ) ss.
COUNTY OF   <u>ORANGE</u>   )

On <u>August 1</u>, 19<sup>80</sup>, before me the undersigned, a Notary Public in and for said State, personally appeared   ROBERT P. WARMINGTON   , known to me to be the person whose name is subscribed to the within Instrument, and acknowledged to me that   HE   executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

[Seal]

_Pearl L. Hunt_
Notary Public

WPN: 4077A                    15

RECORDED L



<ins>my</ins> FirstAm®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1274 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

000158

8694

BK 13824 PG 1274

$ 19⁰⁰

Recorded at the Request of
and When Recorded Return To:

Robert P. Warmington
16592 Hale Avenue
Irvine, California   92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:00 A.M  NOV  7 1980

LEE A. BRANCH, County Recorder

AP 178-06-01

## CONDOMINIUM SUBLEASE

THIS SUBLEASE (hereinafter "lease") is made
this 1st day of   August   , 1980, by and between
ROBERT P. WARMINGTON, an individual whose address is 16592
Hale Avenue, Irvine, California 92714 (herein termed the
"Landlord"), and
JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants

Whose address is
4476 Al_port, Huntington Beach, Ca. 92647
(herein termed the "Tenant").

W I T N E S S E T H:

That whereas Tenant is concurrently acquiring
certain interest in Condominium Unit  53  on Lots 1 and 2
of Tract 10542 as shown on a map recorded in Book 456
Pages 49 and 50 Official Records of Orange County
California consisting of buildings and other improvements
located on Lots 1 and 2 of Tract 10542, which buildings
and other improvements are and shall remain real property.

1.   PROPERTY LEASED.  For and in consideration
of the payment of the rents and taxes and other charges
and for the performance of all of the covenants and
conditions of this lease by Tenant, Landlord hereby
subleases to Tenant

(i)  Unit  53 , (the "Unit") as shown and
defined on that certain Condominium Plan
recorded in Book 13358 Pages 1193 et seq.,
Official Records of Orange County,
California (the "Condominium Plan"),
excepting therefrom all buildings and other
improvements;

(ii)  An undivided one-eightieth (1/80)
interest in the Common Areas (as defined in
the Condominium Plan, excepting therefrom
all buildings and other improvements;

(iii)  An easement for the exclusive use and
occupancy of those portions of the
Restricted Common Area (as defined on said
Condominium Plan) for entry and staircases
and attic space relating to said Unit,
excepting therefrom all buildings and other
improvements;

WPN:2004A

000159

BK 13824 PG 1275

(iv)  A non-exclusive easement and right to use the Common Area (as defined on said Condominium Plan), except the Restricted Common Area, excepting therefrom all buildings and other improvements.

It is understood that "Houser Bros. Co., a California limited partnership (hereinafter the "Master Lessor") and Landlord have entered into a Ground Lease dated as of August 1, 1980 which is being recorded concurrently herewith (the "Master Lease") as lessor and lessee, respectively.  This lease shall be subject and subordinate to the Master Lease, provided that, pursuant to the Master Lease, Master Lessor has agreed not to disturb the subleasehold estate of Tenant in the event of a default under the Master Lease.  Tenant acknowledges receipt of a copy of the Master Lease prior to Tenant's execution of this lease.  The Unit is one unit in a Condominium Project (the "Project") constructed on the leased land and governed by a Declaration of Covenants, Conditions and Restrictions (the "Declaration") recorded in Book 13618, Page 982, Official Records of Orange County, California as amended.

SUBJECT TO:

(a)  Current taxes and assessments.

(b)  Covenants, conditions, restrictions, reservations, rights, rights-of-way and easements of record.

2.  TERM OF LEASE.  The leased land is leased for a basic term commencing on the date this Condominium Sublease is recorded in the Office of the County Recorder of Orange County, California and ending on December 31, 2059, subject, however, to earlier termination as hereinafter provided.

3.  RENTAL.  Tenant agrees to pay to Landlord, as rental for the use and occupancy of said leased land during the term of this lease, the sum of One Thousand Five Hundred DOLLARS ($1,500) per year, in quarterly installments of $375 each in advance, on the first day of the quarter of each calendar year of said term (Provided, however, if the term of this lease commences on a date other than the first day of a calendar quarter, Tenant shall pay an appropriately pro rated amount of such quarterly installments upon the commencement of such term); subject, however, to adjustment at the time and in the manner as herein provided for in Article 21 entitled "Rental Adjustment".  All rentals hereunder and charges with respect thereto shall be paid in lawful money of the United States of America.

4.  TAXES AND ASSESSMENTS.  In addition to the rents above provided, Tenant shall pay and discharge all taxes and general and special assessments of every description which may be levied upon or assessed against the leased land and all interest therein and improvements and other property thereon, (including its Unit) and upon all rentals payable with respect to the leased land, whether belonging to Landlord, Tenant or the Master

WPN:2004A                     2

000160

BK 13524 0 1276

Lessor, as such taxes and assessments become due and
payable during the term of this lease.  Tenant agrees to
protect and hold harmless the Landlord, the Master Lessor
and the leased land and all interest therein and
improvements thereon from any and all such taxes and
assessments, including any interest, penalties and other
charges which may be thereby imposed and from any lien
therefor or sale or other proceedings to enforce payment
thereof.

5.   USE OF LEASED LAND.   Tenant shall use the
leased land and its Unit for single family residential use
and purpos s incidental thereto.  Tenant shall not use or
permit any person to so use the leased land and the
improvements thereon, or any portion thereof, or its Unit
as to disturb the neighborhood or occupants of adjoining
property, or to constitute a nuisance, or to violate any
public law, ordinance or regulation from time to time
applicable thereto.

6.   IMPROVEMENTS.   When any construction is
commenced on the leased land, the same shall be prosecuted
with reasonable diligence until completed and shall
conform to all public laws, ordinances and regulations
applicable thereto and shall be constructed and completed
at the sole cost and expense of Tenant and without any
cost, expense or liability of Landlord whatsoever.
Further, Tenant shall comply with all of the terms,
covenants and conditions of the Master Lease pertaining to
such construction, including, without limitation, the
obligation to obtain the approval of the Master Lessor
when, and to the extent required by the Master Lease.

7.   MAINTENANCE.   Landlord shall not be
obligated to make any repairs, alterations, additions or
improvements in, to, upon, or adjoining the leased land or
any improvements that may be constructed or installed on
the leased land.  As part of the consideration for
Landlord entering this Lease, Tenant shall, at all times
during the full term of this lease and at his sole cost
and expense, keep, repair and maintain its Unit and those
other portions of the leased land and buildings and
improvements therein which are the responsibility of
Tenant to maintain and repair under the provisions of the
Declaration, in clean and sanitary condition and in good
order and repair.  Tenant shall pay for all water, gas,
heat, light, power, telephone and all other utilities and
services furnished to its Unit.  Tenant shall make payment
directly to the utility involved for all separately
metered services and shall pay to the management body for
the Project the proportionate share of all centrally
metered utilities, such proportion to be determined by
said management body.

Tenant shall at all times fully comply with and
abide by the terms, covenants, restrictions, provisions
and conditions of the Declaration and any amendments
thereof, and any rules, regulations, agreements, decisions
and determinations duly made by the management body for
the Project established pursuant to the Declaration
respecting the maintenance, use and occupation of its Unit

WPN:2004A                     3

000161

BK 13824PG 1277

and the leased land and any building or improvements
constructed thereon and the payment of all assessments and
charges of every type levied by the management body of the
Project in connection therewith.  In addition to the
foregoing, Tenant hereby covenants and agrees to promptly
pay at all times during the term hereof, before the same
shall become delinquent, Tenant's share of the common
expenses of the Project and any and all assessments,
charges, and duties of every description, levied under the
provisions of the Declaration, without cost, expense or
liability to Landlord.  Tenant shall further, during the
whole term of this Lease, by paying his proportionate
share of the common expenses of the Project make, build,
maintain and repair all fences, sewers, drains, curbs,
roads, sidewalks, parking areas, and other improvements
which may be required by law to be made, built, maintained
and repaired upon or adjoining or in connection with or
for the use of the leased land.

     8.   RESTORATION OF IMPROVEMENTS.  If, during the
term hereof, the dwelling, structures or other
improvements, if any, constructed by or for Tenant on the
leased land, or any part thereof, shall be damaged or
destroyed by fire or other casualty, Tenant may, at its
cost and expense, either (a) repair or restore said
dwelling and improvements; or (b) subject to the consent
of any encumbrancer, if any, tear down and remove the same
from the leased land.

     9.   LIENS AND CLAIMS.  Tenant shall not suffer
or permit to be enforced against the leased land or its
Unit, or any part thereof, any mechanics', laborers',
materialmen's, contractors', subcontractors', or any other
liens arising from or any claim for damages growing out of
any work of construction or improvement, or any other
claim or demand howsoever the same may arise, but Tenant
shall pay or cause to be paid all of said liens, claims
and demands before any action is brought to enforce the
same against the leased land and its Unit, and Tenant
hereby indemnifies and agrees to hold Landlord, and its
Unit free and harmless from all liability for any and all
such liens, claims and demands, together with all costs
and expenses, including, but not limited to, attorneys'
fees and court costs incurred by Landlord or Master Lessor
in connection therewith, and Landlord and Master Lessor
shall have the right, at any time and from time to time,
to post and maintain on the leased land, or any part
thereof, such notices of nonresponsibility as desired by
Landlord or as may be provided by law.  Notwithstanding
anything to the contrary contained in this paragraph, if
Tenant shall, in good faith, contest the validity of any
such lien, claim or demand, then Tenant shall, at its
expense, defend itself, Landlord and Master Lessor against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against landlord the leased land or its Unit, and
if Landlord shall require, Tenant shall furnish to
Landlord a surety bond satisfactory to Landlord in an
amount equal to such contested lien, claim or demand
indemnifying Landlord and Master Lessor against liability
for same; or, if Landlord shall request, Tenant shall

WPN:2004A                    4

BK 13824 PG 1278

procure and record the bond provided for in the Civil Code
of the State of California, or any comparable statute
hereafter enacted providing for a bond freeing the leased
land and the Unit from the effect of such lien or claim or
action thereon.

10.  **LIABILITIES.**  Landlord shall not be liable
for any loss, damage, injury or claim of any kind
whatsoever to any person or property of Tenant, or any of
Tenant's employees, guests or invitees or of any other
person whomsoever, caused by any use of the leased land or
by any defect in any building, structure or other
improvement constructed thereon, or arising from any
accident on the leased land or any fire or other casualty
thereon, or occasioned by the failure on the part of
Tenant to maintain said premises in safe condition, or by
any nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11.  **LANDLORD PAYING CLAIMS.**  Neither Landlord
nor the Master Lessor shall be liable for any loss,
damage, injury or claim of any kind or character to any
person or property arising from or caused by the use or
development of the leased land and the construction of
improvements thereon, including, without limitation, any
such loss, damage, injury or claim arising from or caused
by (i) any use of the leased land, or any part thereof;
(ii) any defect in the design, construction of or material
in any structure or improvement upon the leased land
or in any other thereon; (iii) any defect in
soils or in the soils or in the design and
accompli d; (iv) any act or omission of
Tenant ents, employees, licensees,
invitee cont s; (v) any accident on the leased
land or other casualty thereon; (vi) any representations
by Tenant or any of its agents or employees; (vii) a
violation or alleged violation by Tenant, its employees or
agent, of any law now or hereafter enacted; (viii) any
other cause whatsoever in connection with Tenant's use of
the leased land; or (ix) the application of the principles
of strict liability with respect to any act or omission
during the term of this Lease of Tenant or its agents,
employees, licensees, invitees or contractors in
connection with the leased land; and Tenant, as a material
part of the consideration of this Lease, hereby waives on
its behalf all claims and demands against Landlord or the
Master Lessor for any such loss, damage or injury of
Tenant, and hereby indemnifies and agrees to hold Landlord
and the Master Lessor entirely free and harmless from all
liability for any such loss, damage, injury or claim with
respect to any person or property made by other persons,
and with respect to any such violations or charges arising

WPN:2004A                    5

BK 13824 PG 1279

therefrom, including, without limitation, attorneys' fees
and court costs incurred by Landlord and the Master Lessor
in connection therewith.

Tenant either individually, or in conjunction
with the Tenants of the remaining undivided interests in
the leased land or through the management body for Project
shall maintain at all times during the term of the Lease,
at its expense and in companies aceptable to Landlord:

(a)  Worker's compensation insurance and
employer's liability insurance.

(b)  Comprehensive liability insurance, with
limits of not less than FIVE HUNDRED THOUSAND
($500,000) DOLLARS for any one person; ONE MILLION
($1,000,000) DOLLARS for any one occurrence as to
bodily injury or death; and ONE HUNDRED THOUSAND
($100,000) DOLLARS per occurrence as to property
damage.

Each policy of insurance shall be issued by
insurers of recognized responsibility, qualified to do
business in California, acceptable to Landlord and the
Master Lessor and which has, at the execution hereof, a
rating at least equal to AXV by Best's Insurance Guide (or
other equivalent rating if such Guide be discontinued) and
shall name Landlord and the Master Lessor as an additional
insured.  Prior to the time of commencement of this Lease,
Tenant shall deliver certificates of insurance carriers of
each policy of insurance as evidence of compliance with
the above requirements and stating that not less than ten
(10) days' written notice will be given to Landlord and
the Master Lessor prior to cancellation or reduction in
coverage or amount.

12.  ASSIGNMENT.  Tenant shall have the right to
assign, sublet or otherwise transfer its interest under
this lease without the prior written consent of Landlord.
Notwithstanding the foregoing, this lease or any right
hereunder shall in no case be assigned separate and apart
from Tenant's Unit located on the leased land.  Also
notwithstnding the foregoing, Landlord shall accept
Tenant's assignee in writing following a request therefor.

13.  ENCUMBRANCES.  Tenant shall have the right
to assign Tenant's interest in this Lease and the leased
land to a trustee under a deed of trust (herein called
"trust deed"), for the benefit of a lender (herein called
"encumbrancer") upon and subject to the following
covenants and conditions.  Landlord's consent shall not be
required for such assignment, but Landlord shall execute
its written consent to such assignment by trust deed
following a request therefor from Tenant:

A.  Said trust deed and said assignment and all
rights acquired thereunder shall be subject to each and
all of the covenants, conditions and restrictions set
forth in this Lease and to all rights and interests of the
Landlord hereunder; and, in the event of any conflict
between the provisions of this Lease and the provisions of

WPN:2004A

BK 13824 PG 1280

any such trust deed or assignment, the provisions of this Lease shall control.

B.   Any encumbrancer as a transferee under the provisions of this Article shall be liable to perform the obligations of the Tenant under this Lease only so long as such encumbrancer holds title to the leasehold.

C.   Upon and immediately after the recording of the trust deed covering the leased land, Tenant, at Tenant's expense, shall cause to be recorded in the office of the Recorder of Orange County, California, a written request for a copy, to the Landlord, of any notice of default and of any notice of sale under the trust deed as provided by the statutes of the State of California relating thereto.  Tenant shall furnish to landlord a complete copy of the trust deed and note secured thereby, together with the name and address of the holder thereof.

D.   Landlord agrees that it will not terminate this Lease because of any default or breach hereunder on the part of the Tenant if the encumbrancer or the trustee under such deed of trust, within sixty (60) days after service of written notice on the encumbrancer by Landlord of its intention to terminate this Lease for such default or breach, shall:

(a)  Cure such default or breach if the same can be cured by the payment or expenditure of money provided to be paid under the terms of this Lease, or if such default or breach is not so curable, cause the trustee under the trust        to commence and thereafter to diligently pursue to completion steps and proceedings for the foreclosure by sale or by exercise of a power of sale under and pursuant to the trust deed in the manner provided by law; and

(b)  Keep and perform all of the covenants and conditions of this Lease requiring the payment or expenditure of money by Tenant until such time as said leasehold shall be sold upon foreclosure, or by exercise of a power of sale, pursuant to the trust deed or shall be released or reconveyed thereunder; provided, however, that if the beneficiary under such trust deed shall fail or refuse to comply with any and all of the conditions of this Article with respect to a breach or default as to which notice of intention to terminate this Lease has been given to the encumbrancer, then and thereupon Landlord shall be released from the covenants of forebearance herein contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this Article may be given concurrently with or after Landlord's notice of default to Tenant as herein provided for in the Article entitled "Default."

Any mortgagee shall have the right at any time during the term hereof while this lease is in full force and effect:

WPN:2004A                      7

000165

BK 13824 PG 1281

(a)   To do any act required of Tenant hereunder, and all such acts done or performed shall be effective to prevent a forfeiture of Tenant's rights hereunder as if the same had been done or performed by Tenant; and

(b)   To rely on the security afforded by the leasehold estate and to acquire and to succeed to the interest of Tenant hereunder by foreclosure, whether by judicial sale, by power of sale contained in any security instrument, or by assignment given in lieu of foreclosure, and thereafter convey or assign title to the leasehold estate so acquired to any other person firm or corporation without the consent of Landlord as to such initial transfer, and such obligations shall not commence as to any obligation which cannot be satisfied by the payment of money prior to mortgagee's acquisition of the leasehold estate hereunder by reason of the exercise of its rights as aforesaid.

Until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this lease, consent to any modification hereof or consent to the assignment hereof, or of any part or portion, of the term created thereby or of any interest therein.

14.   DEFAULT.   Should Tenant fail to pay any installment of rent or any other sum provided in this lease to be paid by Tenant at the times herein specified and should such default continue uncured for a period of ten (10) days after written notice from Landlord, or should Tenant default in the performance of or breach any other covenant, condition or restriction of this lease herein provided to be kept or performed by Tenant, and should such default or breach continue uncured for a period of thirty (30) days from and after written notice thereof by Landlord to Tenant, then and in any such event, Landlord may declare this lease to be in default and Landlord shall have all of the remedies available at law or stated in the Article entitled "Remedies" or elsewhere provided in this lease.

15.   REMOVAL.   Upon the expiration of the term of this Lease, and on condition that Tenant shall not then be in default under any of the covenants and conditions hereof, and not otherwise, Tenant shall have the right during the last ninety (90) days of said term, at its sole expense, to remove from the leased land all buildings and other improvements thereon, and Tenant shall fill all excavations and remove all parts of said buildings remaining after the same are removed and surrender possession of the leased land to Landlord in a clean and orderly condition.   In the event any of said buildings and other improvements shall not be removed from the leased land within the time hereinabove provided, the same shall become and thereafter remain a part of the leased land and shall belong to Landlord without the payment of any consideration therefor.   Upon the expiration of the term hereof, or any sooner termination of this Lease, Tenant

WPN:2004A                              8

BK 13824 PG 1282

shall execute, acknowledge and deliver to Landlord a proper instrument in writing releasing and quitclaiming to Landlord all right, title and interest of Tenant in and to the leased land and any and all improvements thereon, if not removed by virtue of this Lease or otherwise.

16. **PLACE OF PAYMENTS AND NOTICES.** All rents and other sums payable by Tenant to Landlord hereunder shall be paid to the Landlord at the address set forth after Landlord's name above. Whenever either party hereto desires to give written notice to the other respecting this Lease, such notice, if not personally delivered to Landlord or to Tenant, shall be sent by certified or registered mail, with postage prepaid, and directed to either party at the address hereinabove specified, or at such other address as either party may hereafter designate in writing. The service of any such written notice shall be deemed complete at the time of such personal delivery or within two (2) days after the mailing thereof in Orange County, California, as herein provided. Should Landlord or Tenant consist of more than one person, the personal delivery or mailing of such notice to any one of such persons shall constitute complete service upon all such persons. Any notice provided in the Article hereof entitled "Encumbrances" to be given by Landlord to any encumbrancer of Tenant shall be served in the same manner as herein provided in this Article and shall be delivered to the encumbrancer or directed to its address as last shown on the records of Landlord.

17. **REMEDIES.** Should Tenant at any time be in default hereunder pursuant to the provisions of the Article hereof entitled "Default", then notwithstanding Tenant's breach of this lease and abandonment of the leased land, this lease shall continue in effect so long as Landlord does not terminate Tenant's right to possession and Landlord may enforce all of its rights and remedies hereunder, including, at the option of Landlord:

A. Continue this Lease in effect without terminating Tenant's right to possession, even though Tenant has breached this Lease and abandoned the leased land; and to enforce all of Landlord's rights and remedies under this Lease, including the right to recover, by suit or otherwise, all sums and installments required to be paid in accordance with the provisions of Article 3 above, or other monetary performance as it becomes due hereunder, or to enforce, by suit or otherwise, any other term or provision hereof on the part of Tenant required to be performed, it being specifically agreed that the aggregate unpaid installment indebtedness shall bear simple interest at the rate of ten percent (10%) per annum from the date thereof until paid, provided, however, that Landlord may, at any time thereafter, elect to terminate this Lease for such previous breach by notifying Tenant in writing that Tenant's right to possession of the leased land has been terminated; or

B. By written notice to Tenant, Landlord may declare this Lease at an end, re-enter the leased land by process of the law, eject all parties in possession

WPN:2004A

9

BK 13824 PG 1283

thereof therefrom and repossess said leased land, in which
event, Landlord shall have the right to recover from
Tenant:

(i)   The worth at the time of award of the
unpaid rent which has been earned at the time of
termination;

(ii)  The worth at the time of award of the
amount by which the unpaid rent which would have been
earned after termination until the time of award
exceeds the amount of such rental loss that the Tenant
proves could have been reasonably avoided;

(iii) The worth at the time of award of the
amount by which the unpaid rent for the balance of the
term after the time of award exceeds the amount of
such rental loss for the same period that the Tenant
proves could be reasonably avoided;

(iv)  All other amounts necessary to compensate
Landlord for all the detriment proximately caused by
Tenant's failure to perform its obligations hereunder
or which in the ordinary course of things are likely
to result therefrom; and

(v)   In computing "worth at the time of award"
Landlord shall be allowed interest at the rate of ten
percent (10%) per annum.

Each of the terms, covenants, conditions and
provisions of Tenant under this lease is a material
consideration for this lease, the breach of which shall be
deemed a default hereunder.  All rights, options and
remedies of Landlord contained in this lease shall be
construed and held to be cumulative, and no one of them
shall be exclusive of the other, and Landlord shall have
the right to pursue any one or all of such remedies or any
other remedy or relief which may be provided by law,
whether or not stated in this lease.  No waiver by
Landlord of a breach of any of the terms, covenants or
conditions of this lease by Tenant shall be construed or
held to be a waiver of any succeeding or preceding breach
of the same or any other term, covenant or condition
herein contained.  No waiver of any default of Tenant
hereunder shall be implied from any omission by Landlord
to take any action on account of such default if such
default persists or is repeated, and no express waiver
shall affect default other than as specified in said
waiver.  The consent or approval by Landlord to or of any
act by Tenant requiring Landlord's consent or approval
shall not be deemed to waive or render unnecessary
Landlord's consent or approval to or of any subsequent
similar acts by Tenant.

In the event any action shall be instituted
between Landlord and Tenant in connection with this lease,
the party prevailing in such action shall be entitled to
recover from the other party all of its costs, including
reasonable attorneys' fees, as fixed by the court therein.

WPN:2004A                          10

000168

BK 13824 PG 1284

18.  **REPRESENTATIONS.**  Tenant covenants and
agrees that it has examined the leased land and that the
same is delivered to it in good order and condition and
that no representations as to said land have been made by
Landlord or by any person or agent acting for Landlord,
and it is agreed that this document contains the entire
agreement between the parties hereto and that there are no
verbal agreements, representations, warranties or other
understandings affecting the same.

19.  **HOLDING OVER.**  This lease shall terminate and
become null and void without further notice upon the
expiration of said term.  Any holding over shall not
consitute a renewal hereof, but the tenancy shall
thereafter be on a month-to-month basis and otherwise on
the same terms and conditions as herein set forth.

20.  **EMINENT DOMAIN.**

A.  **Definition of Terms.**  The term "total
taking", as used in this Article, means the taking of the
entire leased land under the power of eminent domain or
the taking of so much of said land as to prevent or
substantially impair the use thereof by Tenant for the
uses and purposes hereinabove provided.

The term "partial taking" means the taking of a
portion only of the leased land which does not constitute
a total taking as defined above.

The term "taking" shall include a voluntary
conveyance by Landlord to an agency, authority or public
utility under threat of a taking under the power of
eminent domain in lieu of formal proceedings.

The term "date of taking" shall be the date upon
which title to the leased land or portion thereof passes
to and vests in the condemnor.

The term "leased land" means the real property
belonging to Landlord, together with any and all
improvements placed thereon by Landlord or to which
Landlord has gained title.

B.  **Effect of Taking.**  If, during the term
hereof, there shall be a total taking or partial taking
under the power of eminent domain, then the leasehold
estate of Tenant in and to the leased land or the portion
thereof taken shall cease and terminate as of the date of
taking of the said land.  If this lease is so terminated,
in whole or in part, all rentals and other charges payable
by Tenant to Landlord hereunder and attributable to the
leased land or portion thereof taken shall be paid by
Tenant up to the date of taking by the condemnor and the
parties shall thereupon be released from all further
liability in relation thereto.

C.  **Allocation of Award - Total Taking.**  All
compensation and damages awarded for the total taking of

WPN:2004A                    11

the leased land allocated to Landlord under the terms of the Master Lease shall be allocated as follows:

(a) Tenant shall be entitled to an amount equal to the sum of the following:

(i) The fair market value of all of the improvements located on the leased land; and

(ii) The then fair market value of the Tenant's leasehold interest in the leased land.

(b) Landlord shall be entitled to the amount remaining of the total award after deducting therefrom the sums to be paid to Tenant as hereinabove provided.

D. Allocation of Award - Partial Taking. All compensation and damages awarded for the taking of a portion of the leased land allocated to Landlord under the terms of the Master Lease shall be allocated and divided as follows:

(a) Tenant shall be entitled to an amount equal to the sum of the following:

(i) The proportionate reduction of the fair market value of the improvements located on the leased land; and

(ii) The proportionate reduction of the fair market value of Tenant's leasehold interest in the leased land.

(b) Landlord shall be entitled to the amount remaining of the total award after deducting therefrom the sums to be paid to Tenant as hereinabove provided.

E. Reduction of Rent on Partial Taking. In the event of a partial taking, the rent payable by Tenant hereunder shall be adjusted from the date of taking to the next rental adjustment date or to the date of the expiration of the term of this lease, whichever date is sooner. Such rental adjustment will be made by reducing the basic rental payable by the Tenant in the ratio that the fair market value of the leased land at the date of taking bears to the fair market value of the leased land immediately thereafter.

F. Determination of Fair Market Value. Whenever fair market value must be determined for the purposes of this Article, and the parties fail to agree in writing on such fair market value within ten (10) days of a request for such agreement from either party, then fair market value shall be determined by appraisers appointed pursuant to the Article in the Master Lease entitled "Condemnation" or if no such appraiser have been or are to be appointed, by agreement of Landlord and Tenant or, in the absence of such an agreement by appraisers appointed by Landlord and Tenant in the same manner as set forth in such Article.

BK 13824 PG 1286

21.  RENTAL ADJUSTMENT.

A.  Effective January 1, 2000, January 1, 2020,
and January 1, 2010, the annual rental payable hereunder
shall be adjusted to a sum equal to ten percent (10%) of
the unimproved fair market value of the leased land, or
any portion then remaining subject to this Lease, as of
such dates.  The said "unimproved fair market value" of
the leased land shall be such value as determined by the
Master Lessor and the Landlord in accordance with the
terms and provisions of Article 21 of the Master Lease.
After any such adjustment of rent, Tenant shall pay to
Landlord such rental as so adjusted during the period
applicable thereto at the times and in the manner herein
provided for in the Article entitled "Rental"; provided,
however, in no event shall the annual rental, as so
adjusted, be less than the annual rental in the
immediately preceding period.

Pending the final determination of such adjusted
rental, Tenant shall pay to Landlord the amount of rent
previously payable under the Article of this lease
entitled "Rental".  If such adjusted rental, as finally
determined, shall exceed the amount of the previous
rental, the excess amount accruing during the interim
period shall be paid by Tenant to Landlord within thirty
(30) days after the final determination of said adjusted
rental.

B.  Effective January 1, 1990, January 1, 2010,
January 1, 2030, and January 1, 2050, the annual rental
shall be adjusted upwards as follows:  As promptly as
practical after such dates, Landlord shall compute the
increase, if any, in the cost of living during the period
just ended, based upon the Consumers Price Index – Los
Angeles/Long Beach/Anaheim Metropolitan Area (1967=100),
"All items of goods and services purchased by urban wage
and clerical worker families" (hereinafter called the
"Index"), published by the Bureau of Labor Statistics of
the United States Department of Labor.  The Index Number
for the latest month prior to commencement of the term of
this Lease, with respect to which such a Number is
published, shall be the "Base Index Number" and the
corresponding Index Number for the month which immediately
preceeds the effecti'e date of the adjustment shall be the
"Current Index Number".

The annual rent shall be adjusted by multiplying
the rental payable during the immediately preceding year
of the term of this lease by a fraction, the numerator of
which is the Current Index Number and the denominator of
which is the Base Index Number; provided, however, that
the annual rent shall never be reduced below the rental
payable in the immediately preceding twelve-month period.

Tenant shall continue payment of rent
installments in effect for the expiring rental period
until notified by Landlord of the new rent.  Such
notification shall include a memorandum showing the
calculations used by Landlord in determining the new
rent.  Immediately upon receipt of such notice, Tenant

WPN:2004A                    13

BK 13824 PG 1287

shall commence payment of the adjusted rent, and shall also pay to Landlord with respect to any period already expired within thirty (30) days after receipt of such notice, the excess of the new annual rent over the rent actually paid by Tenant.

If publication of the Index shall be discontinued, the most comparable Index when published by any branch or department of the United States Government shall be substituted, or if there is none, the parties shall agree on another source of information, and such adjustments in the method of computation shall be made as may be necessary to carry out the intent of this cost-of-living provision.  Appropriate adjustments shall also be made in the event that the base period, or other aspects of the Index are changed.  If the parties are unable to agree on a source of information, such source of information shall be determined by arbitration, pursuant to the provisions of the California Code of Civil Procedure.

Notwithstanding the foregoing, the annual rental shall not be adjusted pursuant to the above higher than a sum equal to one hundred seventy percent (170%) of the rent payable in the immediately preceding twelve-month period.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage of water from the leased land and improvements thereon to drain or flow into adjacent streets and not upon adjoining property, and Tenant shall so maintain all slopes or terraces on the leased land so to prevent any erosion thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on the leased land, the wall or walls of which adjoin the wall or walls of a dwelling constructed on a contiguous lot, any such wall shall be considered to adjoin and abut the wall of the contiguous lot against the surface from the bottom of the foundation over the full length and height of any building so erected for residential purposes.  Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so

WPN:2004A                 14

BK 13824 PG 1288

erected.  Such rights of use shall be as not to interfere
with the use and enjoyment of the lessees of adjoining
lots; and, in the event that any such party wall or fence
is damaged or injured from any cause other than the act or
negligence of one of the lessees, the same shall be
repaired or rebuilt at their joint expense.

24.  **COMPLIANCE WITH LAWS.**  Tenant covenants that
during the lease term, Tenant will comply, at no cost or
expense to Landlord, with all laws, ordinances, orders,
rules, regulations and requirements of all federal, state
and municipal governments and appropriate departments,
commissions, boards and officers thereof, which may be
applicable to the leased land or its Unit, buildings and
other improvements constructed thereon, or the use or
manner of use of the leased land or its Unit.  Tenant
accepts the leased land and its Unit in the actual
condition of the same as of the date of this lease.

25.  **ACCEPTANCE OF PERFORMANCE BY OTHERS.**
Landlord agrees to accept performance of any of the
covenants or agreements of Tenant contained herein from
(a) any group of ten or more tenants holding subleases of
individual interests in the leased land or (b) the
management body for the Project.

26.  **CONSTRUCTION AND EFFECT.**  Time is of the
essence of this lease.  The article headings herein are
used only for the purpose of convenience and shall not be
deemed to limit the subject to the articles hereof or to
be considered in the construction thereof.  Each and all
of the obligations, covenants, conditions and restrictions
of this lease shall be deemed as running with the land and
shall inure to the benefit of and be binding upon and
enforceable against, as the case may require, the
successors and assigns of Landlord and the heirs,
executors, legal representatives, encumbrancers,
assignees, successors and subtenants of Tenant.  If Tenant
consists of more than one person, the covenants and
obligations of Tenant hereunder shall be the joint and
several covenants and obligations of such persons.  In
this lease, the masculine gender includes the feminine and
the neuter, and the singular number includes the plural,
whenever the context so requires.

27.  **NON-DISTURBANCE.**  No mortgage or deed of
trust placed on the leased land , Landlord shall be
superior to the interest of Tenant herein unless the
mortgagee or beneficiary thereunder executes an agreement
in recordable form covenanting in a form satisfactory to
the Tenant that in the event of judicial or private
foreclosure, or deed in lieu of foreclosure, or any other
action taken by such mortgagee or beneficiary this Lease
and the rights of Tenant hereunder shall not be disturbed
by reason of any such foreclosure or other action but
shall continue in full force and effect so long as this
Lease shall remain in full force and effect.

28.  **ESTOPPEL CERTIFICATES.**  Landlord and Tenant
shall at any time and from time to time, upon not less
than ten (10) days prior written request by the other

WPN:2004A                    15

BK 13824 PG 1289

party or parties to this lease, execute, acknowledge and
deliver to such party or parties a statement in writing
certifying that this lease is unmodified and in full force
and effect (or if there has been any modification thereof
that the same is in full force and effect as modified and
stating the modification or modifications) and that there
are no defaults existing (or if there is any claimed
default stating the nature and extent thereof); and
stating the dates to which the rent and other charges have
been paid in advance.  It is expressly understood and
agreed that any such statement delivered pursuant to this
section may be relied upon by any prospective assignee or
sublessee of the leasehold estate, or estates of Tenant,
or any prospective purchaser of the estate of Landlord, or
any lender or prospective assignee of any lender on the
security of the leased land or the fee estate or any part
thereof, or upon the leasehold estate of Tenant or any
part thereof, and any third person.

          IN WITNESS WHEREOF, the parties hereto have
executed this Sublease as of the day and year first above
written.

                              By _____
                                 Robert P. Warmington
                                 "Landlord"

                              By _____
                                 "Tenant"

                              By _____
                                 "Tenant"

WPN:2004A                          16

000174

BK 13824 PG 1290

STATE OF ___CALIFORNIA___        )
                                 ) ss.
COUNTY OF ___ORANGE___           )

On ___August 1___, 19 80, before me the
undersigned, a Notary Public in and for said State,
personally appeared Robert P. Warmington, known to me to
be the person whose name is subscribed to the within
Instrument, and acknowledged to me that he executed the
same.

WITNESS my hand and official seal.

                                      _____
                                      Notary Public

[Seal]   

OFFICIAL SEAL
GAIL L. KING
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires Nov. 5 1982

[Attach acknowledgment form for Tenant]

STATE OF CALIFORNIA            )
                               ) ss.
COUNTY OF ____Orange____       )

On ___November 5, 1980___, before me, the undersigned, a Notary Public in and for
said State, personally appeared ___John E. Turner and Virginia H. Turner___

known to me to be the person __S__ whose name __are__
subscribed to the within instrument and acknowledged to me
that ___they___ executed the same

WITNESS my hand and official seal.

Signature ___Bonnie Quenneville___

Bonnie Quenneville
Name (Typed or Printed)

OFFICIAL SEAL
BONNIE QUENNEVILLE
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Jan. 13, 1984

(This area for official notarial seal)

WPN:2004A                          17

RECORDED

000175



**my FirstAm®**    **Recorded Document**

---

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1291 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

---

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

000176

8695                    BK 13824 PG 1291

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California   92714

> RECORDED AT REQUEST OB
> FIRST AMER. TITLE INS. CO.
> IN OFFICIAL RECORDS OF
> ORANGE COUNTY, CALIFORNIA
> 8:00 A.M. NOV 7 1990
> LEE A. BRANCH, County Recorder

Conveyance connected with leaseholder
interest not to exceed 99 years.

AP 178-011-01                                          13/4

## CONVEYANCE OF REMAINDER INTEREST

FOR VALUABLE CONSIDERATION, receipt of which is hereby
acknowledged, THE ROBERT P. WARMINGTON CO., a California
corporation, hereby grants to ROBERT P. WARMINGTON, an
individual, the remainder interest in that portion of Lots 1
and 2 of Tract 10542 in the City of Huntington Beach, County
of Orange, State of California, as shown on a Map recorded in
Book 456, Pages 49 and 50 of Miscellaenous Maps, in the
Office of the County Recorder of Orange County, California,
described on Exhibit I attached hereto, after the term of
years expiring upon expiration or early termination of that
certain Condominium Sublease of even date herewith, made
by Robert P. Warmington, an individual, to _____

____John F. Turner and Virginia H. Turner, husband and wife, as Joint Tenants

_____

_____

_____,

a short form of which is being recorded concurrently herewith,
subject, however, to all matters whether or not of record.

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By _Olive N Gray_____

By _William F. Pitt_____

BK 13824 PG 1292

STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF ORANGE     )

On ___August 1___, 1980, before me, the undersigned,
a Notary Public in and for said State, personally appeared
_____OLIVER N. CRARY_____, known to me to be the
_Vice President_, and _____WILLIAM J. PITTMAN_____,
known to me to be the _____Secretary_____ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

Notary Public in and for
said County

[SEAL]

2

000178

BK 13824 PG 1293

EXHIBIT I

**Parcel 1**

Those portions of Unit 53, as shown and defined on a Condominium Plan ("the Condominium Plan"), recorded in Book 13358, Page 1193, et seq., consisting of buildings and other improvements.

**Parcel 2**

An undivided one-eightieth (1/80) interest in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

**Parcel 3**

An exclusive easement for the use and occupancy of those portions of Restricted Common Area as defined on the Condominium Plan for entry and staircases and attic space relating to said Unit, consisting of buildings and other improvements.

**Parcel 4**

Non-exclusive easement and right to use those portions of the Common Area as defined on the Condominium Plan, except Restricted Common Area, consisting of buildings and other improvements.

SUBJECT TO:

(a)   general and special taxes and assessments for the current fiscal year;

(b)   the Declaration of Restrictions recorded in Book 13618, Page 982, Official Records of Orange County, California, as amended, (the "Declaration");

(c)   all other covenants, conditions, restrictions, rights, reservation of rights of way and easements whether or not of record.

RECORDED I



my FirstAm®    **Recorded Document**

---

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Book Page (1/1/50 - 12/31/60) |
| Book: | 13824 |
| Page: | 1294 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

---

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

· 8696             BK 13824 PG 1294

RECORDING AT THE REQUEST OF:

WHEN RECORDED MAIL TO:
Mr. and Mrs. John F. Turner
4476 Aldenport
Huntington Beach, Ca. 92647

$10.00
C3

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

PAID
DOC TRANSFER TAX
LEE A. BRANCH
ORANGE CO. RECORDER

Mail Tax Statements to
Address Shown Above

The undersigned Grantor Declares The
Documentary Transfer Tax is $126.50
Computed On Full Value of Property
Conveyed in Huntington Beach, Ca.

**CONDOMINIUM SUBLEASE**
**(SHORT FORM-MEMORANDUM)**
**AND GRANT DEED**

For the purpose of establishing and vesting in
JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants

_____

_____

_____

(the "Condominium Owner"), a Condominium as defined in the
Condominium Plan (the "Condominium Plan"), recorded in Book
13358, Pages 1193, et seq., Official Records of Orange County,
California, located on Lots 1 and 2 of Tract 10542 in the
City of Huntington Beach, County of Orange, State of
California, as shown on a Map recorded in Book 456, Pages 49
and 50 of Miscellaneous Maps, in the Office of the County
Recorded or Orange County, California:

I.   DEMISING CLAUSE:

ROBERT P. WARMINGTON, an individual, ("Sublessor"), who
is the lessee under that certain Ground Lease dated as of
August 1, 1980, from HOUSER BROS. CO., a limited partnership,
as lessor, which Ground Lease is being recorded concurrently
herewith, hereby subleases to Condominium Owner, the follow-
ing real property:

Parcel 1
Unit  53 , as shown and defined on the
Condominium Plan, excepting that portion con-
sisting of buildings and other improvements.

MAIL TAX STATEMENTS AS DIRECTED ABOVE



000181

BK 13824 PG 1295

Parcel 2

An undivided one-eightieth (1/80) interest
in the Common Area as shown and defined on the
Condominium Plan, excepting that portion con-
sisting of buildings and other improvements.

Parcel 3

An easement for the exclusive use and
occupancy of those portions of the Restricted
Common Area as defined on said Condominium
Plan for entry and staircases and attic space
relating to said Unit, excepting that portion
consisting of buildings and other improvements.

Parcel 4

A non-exclusive easement and right to use
the Common Area as defined on said Condominium
Plan, except the Restricted Common Area, except-
ing that portion consisting of buildings and
other improvements,

for a term commencing on the date this instrument is recorded
in the Office of the County Recorder of Orange County,
California, and ending December 31, 2059, and for the rental
and upon all the terms and conditions contained in that
certain Condominium Sublease (the "Sublease") of even date
herewith and recorded concurrently herewith, between
Robert P. Warmington and the Condominium Owner.

II.  GRANTING CLAUSE:

THE ROBERT P. WARMINGTON CO., a California corporation
("Grantor"), hereby grants to the Condominium Owner for a
term expiring upon expiration or an earlier termination of
the Sublease the following real property:

2

BK 13824 PG 1296

Parcel 1

    Those portions of Unit __53__ , as shown
and defined on the Condominium Plan, con-
sisting of buildings and other improvements.

Parcel 2

    An undivided one-eightieth (1/80) interest
in and to those portions of the Common Area
as shown and defined on the Condominium Plan,
consisting of buildings and other improvements.

Parcel 3

    An exclusive easement for the use and
occupancy of those portions of Restricted
Common Area as defined on the Condominium
Plan for entry and staircases and attic space
relating to said Unit, consisting of buildings
and other improvements.

Parcel 4

    Non-exclusive easement and right to use
those portions of the Common Area as defined
on the Condominium Plan, except Restricted
Common Area, consisting of buildings and other
improvements.

SUBJECT TO:

(a)  general and special taxes and assessments
     for the current fiscal year;

(b)  the Declaration of Restrictions recorded
     in Book 13618, Page 982, Official Records
     of Orange County, California, as amended,
     (the "Declaration");

3

BK 13824PG 1237

(c)   all other covenants, conditions, restric-
       tions, rights, reservation of rights of way
       and easements whether or not of record.

The buildings and other improvements referred to above
are the buildings and other improvements located on Lots 1
and 2 of Tract 10542, which are and shall remain real property,
as more specifically set forth in the Declaration.  The real
property demised and granted hereby which together constitute
a condominium must at all times be held by the same person
and may not be separately conveyed, assigned, transfered,
encumbered or otherwise alienated, voluntarily, involuntarily
or by operation of Law.

Dated:   _____August 1,_____ , 1980.

SUBLESSOR:

_____
Robert P. Warmington

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By _____

By _____

4

000184

BK 13824 PG 1298

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On __August 1__, 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public in and for
said County

[SEAL]

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On __August 1__, 1980, before me, the undersigned, a
Notary Public in and for said State, personally appeared
__OLIVER N. CRARY__, known to me to be
the __Vice President__, and __WILLIAM J. PITTMAN__,
known to me to be the __Secretary__ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public in and for said
County

[SEAL]

5

RECORDED D

000185



**my FirstAm®**   **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

|  |  |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1986 |
| DocID: | 456266 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

000186



86=456266

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INS. CO.

IRELL & MANELLA
840 Newport Center Drive, Suite 500
Newport Beach, California 92660
Attention: Patrick J. Evans, Esq.

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

•8:15 PM   SEP 30 '86

MAIL TAX STATEMENTS TO:

G/HB INVESTORS,
c/o AP Development Company
17911 Mitchell Avenue
Irvine, California 92714
Attn: Hugh Saddington

144086 MT

(Space Above for Recorder's Use)

The undersigned grantor declares:
The real property conveyed hereunder
is located in the City of Huntington
Beach, County of Orange.  The
Documentary Transfer Tax is
$ 247.50 based on full value of
the real property conveyed here-
under, but not on the leasehold
conveyed hereunder, which leasehold
is for a term less than ninety-nine
(99) years.

ASSIGNMENT AND ASSUMPTION
OF
GROUND LEASES
AND
CONDOMINIUM SUBLEASES
AND
GRANT DEED

THIS ASSIGNMENT AND ASSUMPTION OF GROUND LEASES AND
CONDOMINIUM SUBLEASES AND GRANT DEED ("Assignment") is made
and entered into this 30th day of September, 1986 by and
between Robert P. Warmington, a married man, as assignor and
grantor ("Assignor") and G/HB Investors, a California limited
partnership as assignee and grantee ("Assignee").

-1-

2PE01SL

**86-456266**

R E C I T A L S

A.    Houser Bros. Co., a limited partnership ("Houser")
is the fee owner of that certain real property (the "Houser
Property") located in the City of Huntington Beach and more
particularly described in Exhibit "A" attached hereto;

B.    Located on the Houser Property is a condominium
project (the "Condominium Project") created by that certain
Condominium Plan (the "Condominium Plan") recorded in Book
13358, Pages 1193, et. seq., official Records of Orange
County, California;

C.    The Condominium Plan shows and defines and there
are eighty (80) condominiums (the "Condominiums") in the
Condominium Project;

D.    Houser leased the Condominiums, except for the
Condominium Project buildings and improvements, to Assignor
under those certain Ground Leases (the "Ground Leases") dated
August 1, 1980 and described in Exhibit "B" attached hereto;

E.    Assignor subleased the Condominiums, except for the
Condominium Project buildings and improvements, to individual
condominium tenants (the "Tenants" or a "Tenant") under those
certain Condominium Subleases, (the "Subleases") dated August

-2-

2PE01SL

000188

86-456266

1, 1980 more particularly described in Exhibit "B" attached
hereto;

    F.   The property leased under the Ground Leases and the
Subleases is more particularly described as Parcels 1, 2, 5
and 6 of Exhibit "B" attached hereto;

    G.   The Robert P. Warmington Company ("Company") owned
the Condominium Project buildings and improvements and
conveyed the Condominium Project buildings and improvements
to the Tenants, for a term, with respect to each Tenant,
ending on the expiration or earlier termination of the
Tenant's Sublease, thereby retaining a remainder interest in
a determinable fee estate with respect to the Condominium
Project buildings and improvements (the "Remainder
Interest"), which Remainder Interest is more particularly
described as parcels 3 and 4 of Exhibit "B" attached hereto;

    H.   Company conveyed the Remainder Interest to
Assignor; and

    I.   Assignor now desires to assign, transfer and convey
all of his right, title and interest in and to the Ground
Leases and Subleases (collectively the "Leases") and the
Remainder Interest to Assignee and Assignee desires to assume
all of Assignor's obligations under the Leases.

-3-

2PE01SL

86-455266

NOW, THEREFORE, for valuable consideration, receipt of which is hereby acknowledged, Assignor and Assignee agree as follows:

### A G R E E M E N T

1.   <u>Assignment</u>.  Assignor hereby assigns, transfers, conveys and sets over to Assignee all of his right, title and interest in and to the Leases.

2.   <u>Grant of Remainder Interest</u>.  Assignor hereby grants, assigns, transfers and sets over to Assignee all of its right, title and interest in and to the Remainder Interest.

3.   <u>Quitclaim Grant</u>.  Assignor hereby remises, releases and forever quitclaims to Assignee all of his right, title and interest in and to the Houser Property, the Condominium Project, and any property or other rights defined in the Condominium Plan.

4.   <u>Assumption</u>.  Assignee hereby assumes and agrees to keep and perform all of Assignor's obligations under the Leases.

2PEO1SL                              -4-

86-456266

5.   Indemnification.  Assignor agrees to indemnify and hold Assignee harmless from all claims, damages, lawsuits, and liabilities which arise out of or relate to Assignor's obligations under the Leases.

6.   Effective Date.  This Assignment shall be effective on the date it is recorded.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment on the date first written above.

"ASSIGNOR"

_____
Robert P. Warmington

I am the spouse of Robert P. Warmington.  I hereby consent and agree to the terms of the foregoing Assignment.

_____
Loring P. Warmington

"ASSIGNEE"

G/HB Investors,
   a California limited partnership

By:  AP Development Company,
     a California corporation,
     general partner

     By: _____
         John E. Wertin, Chairman

-5-



OC-456266

E X H I B I T   "A"

The Houser Property

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach,
County of Orange, State of California, as shown on a map
recorded in Book 456, Pages 49 to 50 of Maps, in the office of
the County Recorder of Said County.



86-456266

E X H I B I T   "B", Page 1

The Leases, the property leased pursuant to the Leases, and the
property comprising the Remainder Interest are described as
follows:

GROUND LEASEHOLD AND SUBLEASEHOLD ESTATES  AS TO PARCELS 1 AND
2, SAID ESTATES  BEING  MORE  PARTICULARLY  DESCRIBED  AS  THE
LESSEES' INTERESTS UNDER THOSE CERTAIN GROUND LEASES SET  FORTH
IN SUB-PARAGRAPH (A)  HEREIN BELOW,  AND SUBLESSORS'  INTERESTS
UNDER THOSE CERTAIN  SUBLEASES SET FORTH  IN SUB-PARAGRAPH  (B)
BELOW;

A REMAINDER INTEREST IN A DETERMINABLE FEE ESTATE AS TO PARCELS
3 AND 4;

AN EASEMENT AS TO PARCELS 5 AND 6;

(A)   THOSE  CERTAIN  GROUND  LEASES,  DATED  AUGUST  1,  1980,
EXECUTED BY HOUSER BROS.   CO., A LIMITED PARTNERSHIP  ORGANIZED
UNDER THE LAWS OF THE STATE OF CALIFORNIA, IN WHICH CLIFFORD C.
HOUSER AND VERNON F. HOUSER CONSTITUTE THE SOLE GENERAL

(continued)



B6-456266

EXHIBIT "B" Page 2



ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444084
AMENDMENT NO. 1

PARTNERS, AS LANDLORD, AND BY ROBERT P. WARMINGTON, AS
TENANT, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE
TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED
AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT |
|------|------|------|------------|
| 1 | 13754 | 263 | |
| 2 | 14091 | 1031 | |
| 3 | 14045 | 118 | |
| 4 | 13733 | 199 | |
| 5 | 13760 | 942 | |
| 6 | 13982 | 417 | |
| 7 | 13754 | 297 | |
| 8 | 13726 | 1238 | |
| 9 | 13822 | 1546 | |
| 10 | 13773 | 10 | |
| 11 | | | 82-128057 |
| 12 | 13807 | 1569 | |
| 13 | 13780 | 354 | |
| 14 | 13797 | 1088 | |
| 15 | 13780 | 462 | |
| 16 | 13726 | 1310 | |
| 17 | 13763 | 259 | |
| 18 | 13915 | 190 | |
| 19 | 13997 | 346 | |
| 20 | 13807 | 1669 | |
| 21 | 13733 | 278 | |
| 22 | 13775 | 235 | |
| 23 | 13803 | 587 | |
| 24 | 14038 | 692 | |
| 25 | 13793 | 955 | |
| 26 | 13814 | 607 | |
| 27 | 13789 | 1600 | |
| 28 | 13787 | 1834 | |
| 29 | 13778 | 173 | |
| 30 | 13896 | 1090 | |
| 31 | 14091 | 1139 | |
| 32 | 13726 | 1346 | |
| 33 | 14005 | 1903 | |
| 34 | 14048 | 1460 | |
| 35 | 13861 | 723 | |
| 36 | 13814 | 666 | |
| 37 | 13768 | 1032 | |
| 38 | 13793 | 1179 | |
| 39 | 13810 | 1665 | |
| 40 | 13783 | 875 | |

PAGE 3



BC=456266

EXHIBIT "B" Page 3

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

| | | |
|---|---|---|
| 41 | 13824 | 1312 |
| 42 | 13867 | 798 |
| 43 | 13726 | 1102 |
| 44 | 14072 | 1910 |
| 45 | 13789 | 1547 |
| 46 | 14066 | 756 |
| 47 | 14038 | 637 |
| 48 | 13933 | 1529 |
| 49 | 13825 | 1973 |
| 50 | 13783 | 1732 |
| 51 | 13916 | 1672 |
| 52 | 14074 | 1929 |
| 53 | 13824 | 1259 |
| 54 | 13780 | 407 |
| 55 | 13780 | 514 |
| 56 | 14094 | 1874 |
| 57 | 13726 | 1208 |
| 58 | 14091 | 1084 |
| 59 | 13787 | 1781 |
| 60 | 13795 | 966 |
| 61 | 13803 | 335 |
| 62 | 13831 | 117 |
| 63 | 14250 | 1197 |
| 64 | 14191 | 1652 |
| 65 | 13726 | 1136 |
| 66 | 13765 | 1665 |
| 67 | 13803 | 640 |
| 68 | 14031 | 1108 |
| 69 | 13797 | 1038 |
| 70 | 14091 | 977 |
| 71 | 14034 | 1806 |
| 72 | 14130 | 1508 |
| 73 | 13785 | 1959 |
| 74 | 13977 | 569 |
| 75 | 14091 | 923 |
| 76 | 14064 | 1068 |
| 77 | 13726 | 1274 |
| 78 | 13726 | 1172 |
| 79 | 14091 | 869 |
| 80 | 13780 | 599 |

(B)  THOSE  CERTAIN  SUBLEASES  DATED AUGUST 1, 1980, EXECUTED BY
ROBERT P. WARMINGTON, AS SUBLESSOR, AND BY VARIOUS PARTIES, AS
SUBLESSEES, FOR THE TERM ENDING DECEMBER 31, 2059,  UPON THE
TERMS,  COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED
AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

UNIT          BOOK          PAGE          INSTRUMENT        ORIGINAL

PAGE 4



EXHIBIT "B" Page 4          B6-456266

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

SUBLESSEE

| | | | |
|---|---|---|---|
| 1 | 13754 | 243 | |
| 2 | 14091 | 1066 | |
| 3 | 14045 | 133 | |
| 4 | 13733 | 216 | AND |
| | 13754 | 52 | |
| 5 | 13760 | 917 | |
| 6 | 13982 | 432 | |
| 7 | 13754 | 312 | |
| 8 | 13726 | 1256 | AND |
| | 13754 | 69 | |
| 9 | 13822 | 1561 | |
| 10 | 13773 | 25 | |
| 11 | | | 82-128058 |
| 12 | 13807 | 1584 | |
| 13 | 13780 | 369 | |
| 14 | 13797 | 1103 | |
| 15 | 13780 | 477 | |
| 16 | 13726 | 1328 | AND |
| | 13754 | 86 | |
| 17 | 13763 | 234 | |
| 18 | 13915 | 205 | |
| 19 | 13997 | 361 | |
| 20 | 13807 | 1684 | |
| 21 | 13733 | 296 | |
| 22 | 13775 | 250 | |
| 23 | 13803 | 602 | |
| 24 | 14038 | 707 | |
| 25 | 13793 | 970 | |
| 26 | 13814 | 622 | |
| 27 | 13789 | 1615 | |
| 28 | 13787 | 1849 | |
| 29 | 13778 | 188 | |
| 30 | 13896 | 1125 | |
| 31 | 14091 | 1154 | |
| 32 | 13726 | 1364 | AND |
| | 13754 | 120 | |
| 33 | 14005 | 1919 | |
| 34 | 14048 | 1475 | |
| 35 | 13861 | 738 | |
| 36 | 13814 | 681 | |
| 37 | 13765 | 1047 | |
| 38 | 13793 | 1194 | |
| 39 | 13818 | 1680 | |
| 40 | 13783 | 1800 | |
| 41 | 13824 | 1327 | |
| 42 | 13867 | 813 | |

PAGE 5



EXHIBIT "B" Page 5

86-456266

ALTA PLAIN
LANGUAGE COMMITMENT

OR-1444086
AMENDMENT NO. 1

| | | |
|---|---|---|
| 43 | 13726 | 1120 |
| 44 | 14072 | 1925 |
| 45 | 13789 | 1562 |
| 46 | 14066 | 771 |
| 47 | 14038 | 652 |
| 48 | 13933 | 1544 |
| 49 | 13826 | 1 |
| 50 | 13783 | 1747 |
| 51 | 13916 | 1687 |
| 52 | 14094 | 1944 |
| 53 | 13824 | 1274 |
| 54 | 13780 | 422 |
| 55 | 13780 | 529 |
| 56 | 14094 | 1889 |
| 57 | 13726 | 1226 |
| 58 | 14091 | 1099 |
| 59 | 13787 | 1796 |
| 60 | 13795 | 981 |
| 61 | 13803 | 350 |
| 62 | 13831 | 132 |
| 63 | 14250 | 1212 |
| 64 | 14191 | 1667 |
| 65 | 13726 | 1154 |
| 66 | 13765 | 1660 |
| 67 | 13803 | 655 |
| 68 | 14031 | 1123 |
| 69 | 13797 | 1053 |
| 70 | 14091 | 992 |
| 71 | 14034 | 1821 |
| 72 | 14180 | 1523 |
| 73 | 13785 | 1974 |
| 74 | 13977 | 584 |
| 75 | 14091 | 938 |
| 76 | 14064 | 1083 |
| 77 | 13726 | 1292 |
| 78 | 13726 | 1190 |
| 79 | 14091 | 884 |
| 80 | 13780 | 614 |

4.   THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, CITY OF HUNTINGTON BEACH, DESCRIBED AS FOLLOWS:

PARCEL 1:

PAGE 6



EXHIBIT "B" Page 6

86=456266

ALTA PLAIN                                          OR-1444086
LANGUAGE COMMITMENT                                 AMENDMENT NO. 1

UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON A CONDOMINIUM
PLAN (THE "CONDOMINIUM PLAN") RECORDED IN BOOK 13358, PAGES 1193 AND
FOLLOWING OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, EXCEPTING
THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 2:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, EXCEPTING
THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 3:

THOSE PORTIONS OF UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND
DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

PARCEL 4:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN AND TO THOSE
PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM
PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 5:

AN EASEMENT FOR THE EXCLUSIVE USE AND OCCUPANCY OF THOSE PORTIONS
OF THE RESTRICTED COMMON AREA, AS DEFINED ON SAID CONDOMINIUM
PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID
UNITS.

PARCEL 6:

A NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THE COMMON AREA AS
DEFINED ON SAID CONDOMINIUM PLAN, EXCEPT THE RESTRICTED COMMON
AREA.

PAGE 7



86-456266

STATE OF CALIFORNIA )
) SS.
COUNTY OF ORANGE )

On this 24th day of September, in the year 1986, before me, the undersigned, a Notary Public in and for said State, personally appeared Robert P. Warmington, personally known to me or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed it.

WITNESS my hand and official seal.



*Pearl L. Hunt*

STATE OF CALIFORNIA )
) SS.
COUNTY OF ORANGE )

On this 24th day of September, in the year 1986, before me, the undersigned, a Notary Public in and for said State, personally appeared Loring P. Warmington, personally known to me or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed it.

WITNESS my hand and official seal.

*Pearl L. Hunt*

2PE01SL



86-456266

STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF ORANGE     )

On September 23, 1986, before me, the undersigned, a
Notary Public in and for said State, personally appeared John
E. Wertin, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person who executed the
within instrument as the Chairman on behalf of AP Development
Company, the corporation therein named, and acknowledged to me
that said corporation executed the within instrument pursuant
to its bylaws or a resolution of its board of directors, said
corporation being known to me to be the general partner of G/HB
Investors, the limited partnership that executed the within
instrument, and acknowledged to me that such corporation
executed the same as such partner and that such partnership
executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
SHIRLEY A. GERBASI
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Exp. Apr. 23, 1990

2PE01SL

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder

6.00

19980020299 11:26am 01/14/98
005 28006503 28 49
A32 1 6.00 0.00 0.00 0.00 0.00 0.00

**PREPARED BY AND**
**RECORDING REQUESTED BY:**
Mical Mortgage, Inc.

and when recorded  MAIL to:
**MICAL MORTGAGE, INC.**
**PO BOX 81427**
**San Diego, CA 92138-9891**
LN #928362

space  above this line  for recorder's  use

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED,  the undersigned hereby grants, assigns and transfers to
**COUNTRYWIDE HOME LOANS, INC., and/or its assigns**
**155 NO. LAKE AVE., PASADENA, CA 91101**
all beneficial interest under that certain Deed of Trust dated      NOVEMBER 20,      1997
executed by  TERRI K. LAMBERTH, AN UNMARRIED WOMAN

Trustor(s);

to  UNITED TITLE COMPANY,
A CALIFORNIA CORPORATION                                                      Trustee;
and recorded as Instrument No. 97-610303 on  NOV. 26,      1997 in Book        Page
of Official Records in the County Recorder's office of      ORANGE                County, State of
**CALIFORNIA** , **describing land  therein  as per recorded Deed of Trust referred to herein.**

TOGETHER with the note or notes therein described  or referred to, the money due and to become thereon with
interest, and all rights accrued under said Deed of Trust.
DATED this 11  **day of**    DEC.      1997

**MICAL MORTGAGE INC.**
**A CALIFORNIA CORPORATION**

**ELIZABETH BORGMEIER, VICE PRESIDENT**

(ACKNOWLEDGMENT FOR CORPORATION)
STATE OF **CALIFORNIA**              County  of **San Diego**
On this  11   **day of**      DEC.      1997 , before me,  **FRAN KIMBER,** Notary Public, personally
appeared  **ELIZABETH BORGMEIER**,  personally known to me to be the person whose name is subscribed to
the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by
her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the
instrument.
WITNESS my hand and official seal

**FRAN KIMBER**    (com. exp. 2 Oct. 1999)

FRAN KIMBER
COMM. #1072157
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
OCTOBER 2, 1999



*my* FirstAm®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644004 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

000202

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

SMITH, SILBAR, PARKER
& WOFFINDEN, LLP
19100 Von Karman
Suite 400
IRVINE CA 92612
Attn: LISA SILBAR

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

9820299-AS

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

**12.00**

19980644004  4:03pm 09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California

## Bill Jones

### Secretary of State

SACRAMENTO



I, BILL JONES, *Secretary of State of California, hereby certify:*

That the annexed transcript of _____|_____ page(s) was prepared by
and in this office from the record on file, of which it purports to be a copy,
and that it is full, true and correct.



IN WITNESS WHEREOF, I execute
this certificate and affix the Great
Seal of the State of California

AUG 26 1998

*Bill Jones*

*Secretary of State*

SEC STATE FORM LP 222A  (Rev. 8/96)



# State of California
## Secretary of State



Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read Instructions on back before completing this form.**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) 8622400032 | 2. NAME OF LIMITED PARTNERSHIP G/HB Investors, a California limited partnership |
|---|---|

THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUB-SECTION(S). CONTINUE ON SECOND PAGE, IF NECESSARY.

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE: | E. GENERAL PARTNER NAME CHANGE |
|---|---|
| ADDRESS: | OLD NAME: |
| CITY:         STATE:         ZIP CODE: | NEW NAME: |
| C. CALIFORNIA OFFICE ADDRESS CHANGE: | F. GENERAL PARTNER(S) WITHDRAWN: |
| ADDRESS: | NAME: Barbara D. Wertin Separate Property Trust Established pursuant to Trust Instrument dated April 21, 1995 |
| CITY:         STATE: CA        ZIP CODE: | |
| D. GENERAL PARTNER ADDRESS CHANGE: | G. GENERAL PARTNER ADDED: |
| NAME: | NAME: LPL Asset Management Corporation, a California corporation |
| ADDRESS: | ADDRESS: 19100 Von Karman Avenue, Suite 370 |
| CITY:         STATE:         ZIP CODE: | Irvine          CA     92612 |
| H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP: | I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO: |
| NAME: | NAME: |
| ADDRESS: | ADDRESS: |
| CITY:         STATE:         ZIP CODE: | CITY:         STATE:         ZIP CODE: |
| J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO: ☐ (PLEASE INDICATE NUMBER ONLY) | K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S). NUMBER OF PAGES ATTACHED: ☐ |

L. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

| | |
|---|---|
| *Barbara D. Wertin* | LPL Asset Management Corporation a California Corporation |
| SIGNATURE Barbara D. Wertin as Trustee of the Barbara D. Wertin Separate Property Trust | By: |
| Established pursuant to Trust Instrument dated April 21, 1995 | Hugh M. Saddington    8/12/98 |
| SIGNATURE | POSITION OR TITLE President   DATE |
| 8/12/98 | |
| POSITION OR TITLE    DATE | POSITION OR TITLE    DATE |

THIS SPACE FOR FILING OFFICER USE

8622400032

**FILED**
In the office of the Secretary of State
of the State of California

**AUG 18 1998**

*Bill Jones*
BILL JONES, Secretary of State

RETURN ACKNOWLEDGEMENT TO:

| NAME | SMITH, SILBAR, PARKER & WOFFINDEN, LLP |
|---|---|
| ADDRESS | 19100 Von Karman Avenue, Suite 400 |
| CITY | Irvine, California 92612 |
| STATE | |
| ZIP CODE | |

SEC/STATE REV. 1/96

FORM LP-2 – FILING FEE: $30.00
Approved by Secretary of State

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

FORM; PARTNERSHIP; FORM

PLACE OF EXECUTION: SANTA ANA, CA

DATED:  September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY: _____



**Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644005 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

SMITH, SILBAR, PARKER
& WOFFINDEN, LLP
19100 Von Karman
Suite 400
Irvine CA 92612
Attn: Lisa Silber

**RECORDING REQUESTED BY**
**FIRST AMERICAN TITLE INSURANCE COMPANY**

9820299-AS

Recorded in the county of Orange, California
Gary L. Granville, Clerk/Recorder

**12.00**

19980644005  4:03pm  09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California

## Bill Jones
### Secretary of State
SACRAMENTO

OFFICE OF THE
SECRETARY OF STATE

I, BILL JONES, Secretary of State of California, hereby certify:

That the annexed transcript of _____1_____ page(s) was prepared by
and in this office from the record on file, of which it purports to be a copy,
and that it is full, true and correct.



IN WITNESS WHEREOF, I execute
this certificate and affix the Great
Seal of the State of California

AUG 2 6 1998

*Bill Jones*

Secretary of State

SEC STATE FORM LP 222A  (Rev. 8/96)



# State of California
## Secretary of State

**Form LP-2**

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read instructions on back before completing this form.**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1)<br>8622400032 | 2. NAME OF LIMITED PARTNERSHIP<br>G/HB Investors, a California limited partnership |
|---|---|

THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUB-SECTION(S), CONTINUE ON SECOND PAGE, IF NECESSARY.
A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE:<br>ADDRESS:<br>CITY:   STATE:   ZIP CODE: | E. GENERAL PARTNER NAME CHANGE<br>OLD NAME:<br>NEW NAME: |
|---|---|
| C. CALIFORNIA OFFICE ADDRESS CHANGE:<br>ADDRESS:<br>CITY:   STATE: **CA**   ZIP CODE: | F. GENERAL PARTNER(S) WITHDRAWN:<br>NAME: Barbara Wertin<br>NAME: |
| D. GENERAL PARTNER ADDRESS CHANGE:<br>NAME:<br>ADDRESS:<br>CITY:   STATE:   ZIP CODE: | G. GENERAL PARTNER ADDED: Barbara D. Wertin Separate<br>NAME: Property Trust Established Pursuant to Trust Instrument dated April 21, 1995<br>ADDRESS: 1048 Irvine Avenue, Suite 485<br>CITY: Irvine   STATE: CA   ZIP CODE: 92660 |
| H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP:<br>NAME:<br>ADDRESS:<br>CITY:   STATE:   ZIP CODE: | I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:<br>NAME:<br>ADDRESS:<br>CITY:   STATE:   ZIP CODE: |
| J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO: ☐<br>(PLEASE INDICATE NUMBER ONLY) | K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).<br>NUMBER OF PAGES ATTACHED: ☐ |

L. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

*Barbara Wertin*   *Barbara D. Wertin*
SIGNATURE   SIGNATURE Barbara D. Wertin Trustee
Barbara Wertin   4/21/95   of the Barbara D. Wertin Separate
POSITION OR TITLE   DATE   Property Trust Established
SIGNATURE   Pursuant to Trust Instrument dated
   SIGNATURE   April 21, 1995
POSITION OR TITLE   DATE   POSITION OR TITLE   4/21/95

THIS SPACE FOR FILING OFFICER USE
96 22400032

**FILED**
In the office of the Secretary of State
of the State of California

**AUG 1 8 1998**

*Bill Jones*
BILL JONES, Secretary of State

RETURN ACKNOWLEDGEMENT TO:
NAME: SMITH, SILBAR, PARKER & WOFFINDEN, LLP
ADDRESS: 19100 Von Karman Avenue, Suite 400
CITY: Irvine, California 92612
STATE:
ZIP CODE:

SEC/STATE REV. 1/96   FORM LP-2 – FILING FEE: $30.00
Approved by Secretary of State

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

PARTNERSHIP; COMPLETING THIS FORM; CODE.

PLACE OF EXECUTION:  SANTA ANA, CA

DATED:  September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY: _____



my FirstAm®   **Recorded Document**

---

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644006 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION  OF TITLE  TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE.  FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

---

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

SmiTH, SiLBAR, PARKER
& WOFFINDEN, LLP
19100 Von Karman
Suite 400
IRVINE CA 92612
Attn: LISA SILBAR

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

9820299-AS

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

**12.00**

19980644006  4:03pm 09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California

## Bill Jones

### Secretary of State

SACRAMENTO



I, BILL JONES, Secretary of State of California, hereby certify:

That the annexed transcript of _____|_____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.

IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California

AUG 2 6 1998

*Bill Jones*

Secretary of State



SEC STATE FORM LP 222A  (Rev. 8/96)



# State of California
# Secretary of State



Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read instructions on back before completing this form.**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) 8622400032 | 2. NAME OF LIMITED PARTNERSHIP G/HB Investors, a California limited partnership |
|---|---|

3. THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUBSECTION(S) CONTINUE ON SECOND PAGE IF NECESSARY.
A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| | |
|---|---|
| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE:<br><br>ADDRESS:<br><br>CITY:          STATE:          ZIP CODE: | E. GENERAL PARTNER NAME CHANGE<br><br>OLD NAME:<br><br>NEW NAME: |
| C. CALIFORNIA OFFICE ADDRESS CHANGE:<br><br>ADDRESS:<br><br>CITY:          STATE: CA          ZIP CODE: | F. GENERAL PARTNER(S) WITHDRAWN:<br>NAME: J and B Wertin Revocable Trust Established<br>pursuant to Trust Instrument dated<br>NAME: October 30, 1989 |
| D. GENERAL PARTNER ADDRESS CHANGE:<br><br>NAME:<br><br>ADDRESS:<br><br>CITY:          STATE:          ZIP CODE: | G. GENERAL PARTNER ADDED:<br><br>NAME: Barbara Wertin<br><br>ADDRESS: 1048 Irvine Avenue, Suite 485<br><br>CITY: Newport Beach STATE: CA ZIP CODE: 92660 |
| H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP:<br><br>NAME:<br><br>ADDRESS:<br><br>CITY:          STATE:          ZIP CODE: | I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:<br><br>NAME:<br><br>ADDRESS:<br><br>CITY:          STATE:          ZIP CODE: |
| J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO:<br><br>☐<br>(PLEASE INDICATE NUMBER ONLY) | K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).<br><br><br>NUMBER OF PAGES ATTACHED ☐ |

4. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

| | |
|---|---|
| SIGNATURE *John E. Wertin Trustee*<br>of the J and B Wertin Revocable<br>POSITION OR TITLE Trust Established pursuant to DATE<br>Trust Instrument dated<br>SIGNATURE October 30, 1989<br>POSITION OR TITLE                6/28/93          DATE | SIGNATURE *Barbara Wertin*<br>Barbara Wertin          6/28/93<br>POSITION OR TITLE          DATE<br><br>SIGNATURE<br><br>POSITION OR TITLE          DATE |

THIS SPACE FOR FILING OFFICER USE

8622400032

**FILED**
In the office of the Secretary of State
of the State of California

**AUG 1 8 1998**

*Bill Jones*

BILL JONES, Secretary of State

| 5. RETURN ACKNOWLEDGEMENT TO: | |
|---|---|
| NAME | SMITH, SILBAR, PARKER & WOFFINDEN, LLP<br>19100 Von Karman Avenue, Suite 400<br>Irvine, California 92612 |
| ADDRESS | |
| CITY | |
| STATE | |
| ZIP CODE | |

SEC/STATE REV. 1/96

FORM LP-2 – FILING FEE: $30.00
Approved by Secretary of State

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

PARTNERSHIP; COMPLETING THIS FORM; CODE.

PLACE OF EXECUTION: SANTA ANA, CA

DATED:  September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY: _____



<sub>my</sub>FirstAm®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644007 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

**Recorded Document**                                                                                                        **10/04/2021**
©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

000214

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

SMITH, SILBAR, PARKER
& WOFFINDEN, LLP
19100 Von Karman
Suite 400
IRVINE, CA 92612
ATTN: LISA SILBAR

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

98 20299-AJ

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

**12.00**

19980644007  4:03pm 09/24/98
005 11009904 11 28
C15 3 6.00 6.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California

## Bill Jones

### Secretary of State

SACRAMENTO



I, *BILL JONES*, Secretary of State of California, hereby certify:

That the annexed transcript of _____|_____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.

IN WITNESS WHEREOF, I execute
this certificate and affix the Great
Seal of the State of California



AUG 2 6 1998
_____

*Bill Jones*

Secretary of State

SEC STATE FORM LP 222A  (Rev. 8/96)



# State of California
## Secretary of State



Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

**IMPORTANT-- Read instructions on back before completing this form.**

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—FORM LP-1) 8622400032 | 2. NAME OF LIMITED PARTNERSHIP G/HB Investors, a California limited partnership |
|---|---|

3. THIS CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: COMPLETE APPROPRIATE SUBSECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY.

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE:  ADDRESS:  CITY:   STATE:   ZIP CODE: | E. GENERAL PARTNER NAME CHANGE  OLD NAME:  NEW NAME: |
|---|---|
| C. CALIFORNIA OFFICE ADDRESS CHANGE:  ADDRESS:  CITY:   STATE: CA   ZIP CODE: | F. GENERAL PARTNER(S) WITHDRAWN:  NAME: M.V. Villas Associates, a California  NAME: limited partnership |
| D. GENERAL PARTNER ADDRESS CHANGE:  NAME:  ADDRESS:  CITY:   STATE:   ZIP CODE: | G. GENERAL PARTNER ADDED:  NAME: J and B Wertin Revocable Trust Established  pursuant to Trust Instrument dated 10/30/8  ADDRESS: 1048 Irvine Avenue, Suite 485  CITY: Newport Beach   STATE: CA   ZIP CODE: 92660 |
| H. PERSON(S) WINDING UP AFFAIRS OF LIMITED PARTNERSHIP:  NAME:  ADDRESS:  CITY:   STATE:   ZIP CODE: | I. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:  NAME:  ADDRESS:  CITY:   STATE:   ZIP CODE: |
| J. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, RESTATEMENT, DISSOLUTION, CONTINUATION, CANCELLATION AND MERGER IS CHANGED TO:  (PLEASE INDICATE NUMBER ONLY) | K. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).  NUMBER OF PAGES ATTACHED: |

L. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

M.V. Villas Associates, a California limited partnership

SIGNATURE

By: M.V. Villas, Inc., a California corporation

POSITION OR TITLE      DATE

By:
SIGNATURE John E. Wertin
President      6/28/93
POSITION OR TITLE      DATE

SIGNATURE John E. Wertin Trustee
of the J and B Wertin Revocable Trust
POSITION OR TITLE      DATE
Established pursuant to
Trust Instrument Dated 10/30/89

SIGNATURE

POSITION OR TITLE      6/28/93
                        DATE

THIS SPACE FOR FILING OFFICER USE

8622400032

**FILED**
In the office of the Secretary of State
of the State of California

AUG 18 1998

BILL JONES, Secretary of State

M. RETURN ACKNOWLEDGEMENT TO:

NAME    SMITH, SILBAR, PARKER & WOFFINDEN, LLP
ADDRESS    19100 Von Karman Avenue, Suite 400
CITY    Irvine, California 92612
STATE
ZIP CODE

SEC/STATE REV. 1/96

FORM LP-2 – FILING FEE: $30.00
Approved by Secretary of State



*my* FirstAm®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644008 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.  IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

SMITH, SILBAR, PARKER
& WOLFFINDEN
19100 Von Karman
IRVINE CA 92612
Attn: LISA SILBAR

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

9820299-AS

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder

21.00

19980644008 4:03pm 09/24/98
005 11009904 11 28
C15 6 6.00 15.00 0.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# State of California

## Bill Jones

### Secretary of State

SACRAMENTO



I, BILL JONES, Secretary of State of California, hereby certify:

That the annexed transcript of ___5___ page(s) was prepared by
and in this office from the record on file, of which it purports to be a copy,
and that it is full, true and correct.

IN WITNESS WHEREOF, I execute
this certificate and affix the Great
Seal of the State of California

SEP 0 2 1998

*Bill Jones*

Secretary of State



SEC STATE FORM LP 222A (Rev. 8/96)

STATE OF CALIFORNIA
CERTIFICATE OF LIMITED PARTNERSHIP—FORM LP-1
**IMPORTANT—Read instructions on back before completing this form**

This Certificate is presented for filing pursuant to Chapter 3, Article 2, Section 15621, California Corporations Code.

**1. NAME OF LIMITED PARTNERSHIP**

G/HB Investors, a California limited partnership

| 2. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | 3. CITY AND STATE | 4. ZIP CODE |
|---|---|---|
| 1911 Mitchell Avenue | Irvine, California | 92714 |

| 5. STREET ADDRESS OF CALIFORNIA OFFICE IF EXECUTIVE OFFICE IN ANOTHER STATE | 6. CITY | 7. ZIP CODE |
|---|---|---|
| | CALIF. | |

**8.** COMPLETE IF LIMITED PARTNERSHIP WAS FORMED PRIOR TO JULY 1, 1984 AND IS IN EXISTENCE ON DATE THIS CERTIFICATE IS EXECUTED.

THE ORIGINAL LIMITED PARTNERSHIP CERTIFICATE WAS RECORDED ON _____ 19_____ WITH THE

RECORDER OF _____ COUNTY.     FILE OR RECORDATION NUMBER _____

**9. NAMES AND ADDRESSES OF ALL GENERAL PARTNERS** (CONTINUE ON SECOND PAGE IF NECESSARY)

NAME: Woodcrest Development, Inc., a California corporation, John E. Wertin, Chairman
ADDRESS: 1911 Mitchell Avenue
CITY: Irvine     STATE California     ZIP CODE 92714

**9A.**
NAME:
ADDRESS:
CITY:     STATE     ZIP CODE

**9B.**
NAME:
ADDRESS:
CITY:     STATE     ZIP CODE

**10. NAME AND ADDRESS OF AGENT FOR SERVICE OF PROCESS**
NAME: John E. Wertin
ADDRESS: 1911 Mitchell Avenue
CITY: Irvine     STATE California     ZIP CODE 92714

**11.** TERM FOR WHICH THIS PARTNERSHIP IS TO EXIST dissolution upon the first to occur of general partner adjudged a bankrupt, dissolution by law or vote of partners owning 80% or more of partnership assets.

**12.** FOR THE PURPOSE OF FILING AMENDMENTS, DISSOLUTION AND CANCELLATION CERTIFICATES PERTAINING TO THIS CERTIFICATE, THE

ACKNOWLEDGMENT OF [ 1 ] GENERAL PARTNERS IS REQUIRED.

**13.** ANY OTHER MATTERS THE GENERAL PARTNERS DESIRE TO INCLUDE IN THIS CERTIFICATE MAY BE NOTED ON SEPARATE PAGES AND BY

REFERENCE HEREIN IS A PART OF THIS CERTIFICATE. NUMBER OF PAGES ATTACHED [ 0 ]

**14.** IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED (SEE INSTRUCTIONS).

| SIGNATURE OF GENERAL PARTNER   DATE | SIGNATURE OF GENERAL PARTNER   DATE | **15.** THIS SPACE FOR FILING OFFICER USE (FILE NUMBER, DATE OF FILING) |
|---|---|---|
| Woodcrest Development, Inc., a California corporation, John E. Wertin, Chairman | | 8622400032 |
| SIGNATURE OF GENERAL PARTNER   DATE | SIGNATURE OF GENERAL PARTNER   DATE | **FILED** |
| SIGNATURE OF OTHER THAN GENERAL PARTNER   DATE | TITLE OR DESIGNATION   DATE | In the office of the Secretary of State of the State of California |

AUG 1 1 1986

March Fong Eu

MARCH FONG EU
SECRETARY OF STATE

**16. RETURN ACKNOWLEDGMENT TO:**
NAME
ADDRESS     Hugh M. Saddington, CPA
CITY AND     1911 Mitchell Ave.
STATE        Irvine, CA  92714
ZIP CODE

FORM LP-1—FILING FEE $70
Approved by the Secretary of State

000219

**STATE OF CALIFORNIA**

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP—FORM LP-2
**IMPORTANT—Read instructions on back before completing this form**

This Amendment is presented for filing pursuant to Chapter 3, Article 2, Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE) | 2. SECRETARY OF STATE FILE DATE (ORIGINAL CERTIFICATE) |
|---|---|
| 8622400032 | August 11, 1986 |

**3. NAME OF LIMITED PARTNERSHIP**

G/HB Investors, a California limited partnership

**4. THE CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: (COMPLETE APPROPRIATE SUB-SECTION(S)**

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

_____, a California Limited Partnership

B. THE PRINCIPAL EXECUTIVE OFFICE ADDRESS ☐ OR THE OFFICE ADDRESS IN CALIFORNIA, IF THE PRINCIPAL EXECUTIVE OFFICE IS
LOCATED OUTSIDE CALIFORNIA ☐ IS CHANGED TO:

_____
(STREET)                      (CITY)            (STATE)           (ZIP)

C. THE ADDRESS OF THE FOLLOWING GENERAL PARTNER(S) IS CHANGED TO: (CONTINUE ON SEPARATE PAGE IF NECESSARY)

_____
(NAME)              (STREET)            (CITY)            (STATE)           (ZIP)

D. THE FOLLOWING GENERAL PARTNER(S) HAS (HAVE) WITHDRAWN: (CONTINUE ON SEPARATE PAGE IF NECESSARY)

Woodcroft Development, Inc., a California corporation
John E. Wertin, Chairman, 17911 Mitchell Avenue, Irvine, California 92714
(NAME)              (STREET)            (CITY)            (STATE)           (ZIP)

E. THE FOLLOWING GENERAL PARTNER(S) HAS (HAVE) BEEN ADDED: (CONTINUE ON SEPARATE PAGE IF NECESSARY)

AP Development Company, a California corporation
John E. Wertin, Chairman, 17911 Mitchell Avenue, Irvine, California 92714
(NAME)              (STREET)            (CITY)            (STATE)           (ZIP)

F. THE ADDRESS OF THE CURRENT AGENT FOR SERVICE OF PROCESS IS CHANGED TO:

_____
(STREET)                      (CITY)            (STATE)           (ZIP)

G. THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:

_____
(NAME)              (STREET)            (CITY)            (STATE)           (ZIP)

H. THE TERM FOR WHICH THE LIMITED PARTNERSHIP IS TO EXIST HAS BEEN CHANGED TO: _____

I. OTHER MATTERS INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGE(S).

NUMBER OF PAGES ATTACHED: | 0 |

**5. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)**

| Woodcrest Development, Inc., | AP Development Company, | 6. THIS SPACE FOR FILING OFFICER USE (DATE OF FILING) |
|---|---|---|
| a California corporation, | a California corporation, | 8622400032 |
| John E. Wertin, Chairman | John E. Wertin, Chairman | |
| (Withdrawn) | (Added) | FILED |
| _____ 9-23-86 | _____ 9-23-86 | In the office of the Secretary of State |
| SIGNATURE OF GENERAL PARTNER  X DATE | SIGNATURE OF GENERAL PARTNER  X DATE | of the State of California |
| | | SEP 2 4 1986 |
| _____ | _____ | March Fong Eu |
| SIGNATURE OF OTHER THAN GENERAL PARTNER | TITLE OR DESIGNATION  DATE | MARCH FONG EU, Secretary of State |

**7. RETURN ACKNOWLEDGMENT TO:**

NAME ⌐
ADDRESS     Hugh M. Saddington, CPA
CITY        17911 Mitchell Avenue
STATE       Irvine, California 92714
ZIP CODE ⌐

*FORM LP-2—FILING FEE $15*
*Approved by the Secretary of State*



## State of California

### March Fong Eu
Secretary of State

Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP

IMPORTANT—Read instructions on back before completing this form

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—Form LP-1) | 2. NAME OF LIMITED PARTNERSHIP |
|---|---|
| 8622400032 | G/HB Investors, a California limited partnership |

3. THE CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: (COMPLETE APPROPRIATE SUB-SECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY.)

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE: | E. GENERAL PARTNER NAME CHANGE: |
|---|---|
| ADDRESS: | OLD NAME: |
| CITY:        STATE:       ZIP CODE: | NEW NAME: |
| C. CALIFORNIA OFFICE ADDRESS CHANGE: | F. GENERAL PARTNER(S) WITHDRAWN: |
| ADDRESS: | NAME: AP Development Company, a California corporation |
| CITY:        STATE: CA       ZIP CODE: | NAME: |
| D. GENERAL PARTNER ADDRESS CHANGE: | G. GENERAL PARTNER ADDED: |
| NAME: | NAME: TNPC, Inc. |
| ADDRESS: | ADDRESS: 17911 Mitchell Ave |
| CITY:        STATE:       ZIP CODE: | CITY: Irvine      STATE: CA   ZIP CODE: 92714 |

H. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:

NAME:

ADDRESS:                        CITY:          STATE: CA   ZIP CODE:

| I. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, DISSOLUTION, CONTINUATION AND CANCELLATION IS CHANGED TO: | J. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGES. |
|---|---|
| ☐ PLEASE INDICATE NUMBER ONLY | NUMBER OF PAGES ATTACHED ☐ |

4. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

AP DEVELOPMENT COMPANY        TNPC, Inc.        (added)

SIGNATURE                        SIGNATURE

President        8/26/89    President        8/26/89
POSITION OR TITLE   DATE    POSITION OR TITLE   DATE

SIGNATURE                        SIGNATURE

POSITION OR TITLE   DATE    POSITION OR TITLE   DATE

THIS SPACE FOR FILING OFFICER USE

86 22400032

**FILED**
In the office of the Secretary of State
of the State of California

SEP 13 1993

March Fong Eu
MARCH FONG EU
SECRETARY OF STATE

5. RETURN ACKNOWLEDGEMENT TO:

| NAME | TNPC, Inc. |
|---|---|
| ADDRESS | John E. Wertin |
| CITY | 17911 Mitchell Ave |
| STATE | Irvine, CA  92714 |
| ZIP CODE | |

SEC/STATE REV. 1/88

FORM LP-2—FILING FEE: $10
Approved by Secretary of State



# State of California
## March Fong Eu
### Secretary of State

Form LP-2

## AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP
IMPORTANT—Read Instructions on back before completing this form

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—Form LP-1) | 2. NAME OF LIMITED PARTNERSHIP |
|---|---|
| 8622400032 | G/HB Investors, a California limited partnership |

**3. THE CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: (COMPLETE APPROPRIATE SUB-SECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY).**

**A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:**

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE: | E. GENERAL PARTNER NAME CHANGE: |
|---|---|
| ADDRESS: | OLD NAME: TNPC, Inc. a California corporation |
| CITY:        STATE:        ZIP CODE: | NEW NAME: The Pacific Company |
| **C. CALIFORNIA OFFICE ADDRESS CHANGE:** | **F. GENERAL PARTNER(S) WITHDRAWN:** |
| ADDRESS: | NAME: |
| CITY:        STATE: CA        ZIP CODE: | NAME: |
| **D. GENERAL PARTNER ADDRESS CHANGE:** | **G. GENERAL PARTNER ADDED:** |
| NAME: | NAME: |
| ADDRESS: | ADDRESS: |
| CITY:        STATE:        ZIP CODE: | CITY:        STATE:        ZIP CODE: |

**H. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:**

NAME:

ADDRESS:        CITY:        STATE: CA        ZIP CODE:

| I. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, DISSOLUTION, CONTINUATION AND CANCELLATION IS CHANGED TO: | J. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGES. |
|---|---|
| (PLEASE INDICATE NUMBER ONLY) | NUMBER OF PAGES ATTACHED: |

**4. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)**

| TNPC, Inc. | The Pacific Company | THIS SPACE FOR FILING OFFICER USE |
|---|---|---|
| SIGNATURE | SIGNATURE | 86 22400032 |
| President        11/1/89 | President        11/1/89 | |
| POSITION OR TITLE        DATE | POSITION OR TITLE        DATE | **FILED** |
| SIGNATURE | SIGNATURE | In the office of the Secretary of State of the State of California |
| POSITION OR TITLE        DATE | POSITION OR TITLE        DATE | OCT 01 1993 |

**5. RETURN ACKNOWLEDGEMENT TO:**

| NAME | The Pacific Company |
|---|---|
| ADDRESS | John E. Wertin |
| CITY | 17911 Mitchell Avenue |
| STATE | Irvine, CA 92714 |
| ZIP CODE | |

March Fong Eu
MARCH FONG EU
SECRETARY OF STATE

SEC/STATE REV. 1/88

FORM LP-2—FILING FEE: $15
Approved by Secretary of State

000222



## State of California
### March Fong Eu
#### Secretary of State

Form LP-2

# AMENDMENT TO CERTIFICATE OF LIMITED PARTNERSHIP
### IMPORTANT—Read instructions on back before completing this form

This Certificate is presented for filing pursuant to Section 15622, California Corporations Code.

| 1. SECRETARY OF STATE FILE NO. (ORIGINAL CERTIFICATE—Form LP-1) | 2. NAME OF LIMITED PARTNERSHIP |
|---|---|
| 8622400032 | G/HB Investors, a California limited partnership |

3. THE CERTIFICATE OF LIMITED PARTNERSHIP IS AMENDED AS FOLLOWS: (COMPLETE APPROPRIATE SUB-SECTION(S) CONTINUE ON SECOND PAGE, IF NECESSARY.)

A. THE LIMITED PARTNERSHIP NAME IS CHANGED TO:

| B. PRINCIPAL EXECUTIVE OFFICE ADDRESS CHANGE: | E. GENERAL PARTNER NAME CHANGE: |
|---|---|
| ADDRESS: | OLD NAME: |
| CITY:   STATE:   ZIP CODE: | NEW NAME: |

| C. CALIFORNIA OFFICE ADDRESS CHANGE: | F. GENERAL PARTNER WITHDRAWN: |
|---|---|
| ADDRESS: | NAME: The Pacific Company, |
| CITY:   STATE: CA   ZIP CODE: | NAME: |

| D. GENERAL PARTNER ADDRESS CHANGE: | G. GENERAL PARTNER ADDED: |
|---|---|
| NAME: | NAME: M.V. Villas Associates, a California limited partnership |
| ADDRESS: | ADDRESS: 17911 Mitchell Avenue |
| CITY:   STATE:   ZIP CODE: | CITY: Irvine   STATE: CA   ZIP CODE: 92714 |

H. INFORMATION CONCERNING THE AGENT FOR SERVICE OF PROCESS HAS BEEN CHANGED TO:

NAME:

ADDRESS:   CITY:   STATE: CA   ZIP CODE:

| I. THE NUMBER OF GENERAL PARTNERS REQUIRED TO ACKNOWLEDGE AND FILE CERTIFICATES OF AMENDMENT, DISSOLUTION, CONTINUATION AND CANCELLATION IS CHANGED TO: | J. OTHER MATTERS TO BE INCLUDED IN THE CERTIFICATE OF LIMITED PARTNERSHIP ARE AMENDED AS INDICATED ON THE ATTACHED PAGES. |
|---|---|
| PLEASE INDICATE NUMBER ONLY. | NUMBER OF PAGES ATTACHED: |

4. IT IS HEREBY DECLARED THAT I AM (WE ARE) THE PERSON(S) WHO EXECUTED THIS AMENDMENT TO THE IDENTIFIED CERTIFICATE OF LIMITED PARTNERSHIP, WHICH EXECUTION IS MY (OUR) ACT AND DEED. (SEE INSTRUCTIONS)

THIS SPACE FOR FILING OFFICER USE

The Pacific Company
SIGNATURE
President                10/20/92
POSITION OR TITLE          DATE

SIGNATURE

POSITION OR TITLE          DATE

M.V. Villas Associates, a California limited partnership
SIGNATURE
By: M.V. Villas, Inc., a California corporation, G.P.
By: John E. Wertin
President of G.P. 10/20/92
POSITION OR TITLE          DATE

86 22400032

**FILED**
In the office of the Secretary of State
of the State of California
NOV - 1 1993
March Fong Eu
MARCH FONG EU
SECRETARY OF STATE

5. RETURN ACKNOWLEDGEMENT TO:

| NAME | M.V. Villas Associates |
|---|---|
| ADDRESS | John E. Wertin |
| CITY | 17911 Mitchell Avenue |
| STATE | Irvine, CA  92714 |
| ZIP CODE | |

SEC/STATE REV. 1/86

FORM LP-2—FILING FEE: $15
Approved by Secretary of State

000223

GOVERNMENT CODE 27361.7

I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION
OF THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

PARTNERSHIP; COMPLETING THIS FORM; CODE.

PLACE OF EXECUTION:  SANTA ANA, CA

DATED:  September 4, 1998

FIRST AMERICAN TITLE INSURANCE COMPANY

BY: _____



<u>my FirstAm®</u>    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Document - Year.DocID |
| Year: | 1998 |
| DocID: | 0644009 |

<u>Limitation of Liability for Informational Report</u>

**IMPORTANT – READ CAREFULLY:**  THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION   OF THE CONDITION OF TITLE TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2021 First American Financial Corporation and/or its affiliates. All rights reserved.

000225

Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

30.00

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

19980644009 4:03pm 09/24/98

RECORDING REQUESTED BY               005 11009904 11 28
AND WHEN RECORDED RETURN TO:   A34 9 6.00 24.00 0.00 0.00 0.00 0.00

BARBARA D. WERTIN, TRUSTEE
1048 Irvine Avenue
Suite 485
Newport Beach, California  92660

9820299 -AS

_____
SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN #_____

Documentary Transfer Tax:___$0___   NO TRANSFER TAX
DUE - Term of lease less than
99 years

**MEMORANDUM OF ASSIGNMENT OF GROUND LEASE AND SUBLEASES**

   1.   This Memorandum of Assignment of Ground Lease and
Subleases ("Memorandum") is made and entered into by and between
G/HB INVESTORS, a California limited partnership ("Assignor"),
and BARBARA D. WERTIN SEPARATE PROPERTY TRUST DATED APRIL 21,
1995, a revocable intervivos trust ("Assignee").

   2.   Assignor has assigned to Assignee an undivided
78.34% interest in a certain ground lease and subleases covering
real property located in the City of Huntington Beach, County of
Orange, State of California, as more particularly described on
attached Exhibit "A", which is incorporated herein by this
reference, pursuant to the terms and conditions of that certain unrecorded
Second Amendment to Partnership Agreement of G/HB Investors dated
as of August 1, 1998, by and between Assignor, Assignee and LPL
Asset Management Corporation, a California corporation (the
"Amendment").   The terms and conditions of the Amendment are
incorporated herein by this reference.

            Executed on  September 9, 1998 at Irvine_____,
California.


     "ASSIGNEE"                    "ASSIGNOR"

     BARBARA D. WERTIN SEPARATE    G/HB INVESTORS, a California
     PROPERTY TRUST DATED APRIL    limited partnership
     21, 1995
                                   By:  LPL Asset Management
     By: Barbara D. Wertin              Corporation, a
         Barbara D. Wertin             California corporation
     Its:  Trustee                 By: _____
                                       Hugh M. Saddington
                                       President

000226

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )


On _September 9, 1998_, before me,
_____, Notary Public, personally
appeared BARBARA D. WERTIN, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
authorized signature(s) on the instrument the person(s), or the
entity on behalf of which the person(s) acted, executed the
instrument.

_____
NOTARY PUBLIC

(seal)

CHRISTINE JAMESON
Comm. # 1180752
NOTARY PUBLIC · CALIFORNIA
Orange County
My Comm. Expires Aug. 7, 2002


STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )


On _9-10-98_, before me,
_W.S. BETTINI_, Notary Public, personally
appeared HUGH M. SADDINGTON, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person whose
name is subscribed to the within instrument and acknowledged to
me that he executed the same in his authorized capacity, and that
by his authorized signature on the instrument the person, or the
entity on behalf of which the person acted, executed the
instrument.

_____
NOTARY PUBLIC

(seal)

W. S. BETTINI
Commission # 1127124
Notary Public — California
Orange County
My Comm. Expires Feb 15, 2001

2

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON
THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS
AS FOLLOWS:

NAME OF NOTARY:                    **CHRISTINE JAMESON**

COUNTY WHERE BOND IS FILED:        **ORANGE**

DATE COMMISSION EXPIRES:           **AUG 7, 2002**

COMMISSION NO.:                    **1189752**

MANUFACTURERS/VENDOR NO.           **VSI1**


PLACE OF EXECUTION:   SANTA ANA, CALIFORNIA
DATE:     September 24, 1998


BY: _____
    FIRST AMERICAN TITLE INSURANCE COMPANY

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, **COUNTY OF ORANGE, CITY OF HUNTINGTON BEACH,** DESCRIBED AS FOLLOWS:

PARCEL 1:

UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON A CONDOMINIUM PLAN (THE "CONDOMINIUM PLAN") RECORDED IN BOOK 13358, PAGES 1193 AND FOLLOWING OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 2:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN THE COMMON AREA OF LOTS 1 AND 2 OF TRACT NO. 10542, AS SHOWN ON A MAP RECORDED IN BOOK 456, PAGES 49 AND 50 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 3:

THOSE PORTIONS OF UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 4:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN AND TO THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 5:

AN EASEMENT FOR THE EXCLUSIVE USE AND OCCUPANCY OF THOSE PORTIONS OF THE RESTRICTED COMMON AREA, AS DEFINED ON SAID CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNITS.

PARCEL 6:

A NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THE COMMON AREA AS DEFINED ON SAID CONDOMINIUM PLAN, EXCEPT THE RESTRICTED COMMON AREA.

PAGE 4

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

THE ESTATE OR INTEREST IN THE LAND DESCRIBED IN THIS COMMITMENT IS:

GROUND LEASEHOLD AND SUBLEASEHOLD ESTATES AS TO PARCELS 1 AND 2, SAID ESTATES BEING MORE PARTICULARLY DESCRIBED AS THE LESSEES' INTERESTS UNDER THOSE CERTAIN GROUND LEASES SET FORTH IN SUBPARAGRAPH (A) HEREIN BELOW, AND SUBLESSORS' INTERESTS UNDER THOSE CERTAIN SUBLEASES SET FORTH IN SUB-PARAGRAPH (B) BELOW;

A REMAINDER INTEREST IN A DETERMINABLE FEE ESTATE AS TO PARCELS 3 AND 4;

AN EASEMENT AS TO PARCELS 5 AND 6;

(A)     THOSE CERTAIN GROUND LEASES, DATED AUGUST 1, 1980, EXECUTED BY HOUSER BROS. CO., A LIMITED PARTNERSHIP ORGANIZED UNDER THE LAWS OF THE STATE OF CALIFORNIA, IN WHICH CLIFFORD C. HOUSER AND VERNON F. HOUSER CONSTITUTE THE SOLE GENERAL PARTNERS, AS LANDLORD, AND BY ROBERT P. WARMINGTON, AS TENANT, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT |
|---|---|---|---|
| 1 | 13754 | 263 | |
| 2 | 14091 | 1031 | |
| 3 | 14045 | 118 | |
| 4 | 13733 | 198 | |
| 5 | 13760 | 942 | |
| 6 | 13982 | 417 | |
| 7 | 13754 | 297 | |
| 8 | 13726 | 1238 | |
| 9 | 13822 | 1546 | |
| 10 | 13773 | 10 | |
| 11 | | | 82-128057 |
| 12 | 13807 | 1569 | |
| 13 | 13780 | 354 | |
| 14 | 13797 | 1088 | |
| 15 | 13780 | 462 | |
| 16 | 13726 | 1310 | |
| 17 | 13763 | 259 | |
| 18 | 13915 | 190 | |
| 19 | 13997 | 346 | |
| 20 | 13807 | 1669 | |
| 21 | 13733 | 278 | |
| 22 | 13775 | 235 | |
| 23 | 13803 | 587 | |
| 24 | 14038 | 692 | |
| 25 | 13793 | 955 | |
| 26 | 13814 | 607 | |

PAGE 6

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 27 | 13789 | 1600 |
| 28 | 13787 | 1834 |
| 29 | 13778 | 173 |
| 30 | 13896 | 1090 |
| 31 | 14091 | 1139 |
| 32 | 13726 | 1346 |
| 33 | 14005 | 1903 |
| 34 | 14048 | 1460 |
| 35 | 13861 | 723 |
| 36 | 13814 | 666 |
| 37 | 13768 | 1032 |
| 38 | 13793 | 1179 |
| 39 | 13818 | 1665 |
| 40 | 13783 | 1875 |
| 41 | 13824 | 1312 |
| 42 | 13867 | 798 |
| 43 | 13726 | 1102 |
| 44 | 14072 | 1910 |
| 45 | 13789 | 1547 |
| 46 | 14066 | 756 |
| 47 | 14038 | 637 |
| 48 | 13933 | 1529 |
| 49 | 13825 | 1973 |
| 50 | 13783 | 1732 |
| 51 | 13916 | 1672 |
| 52 | 14094 | 1929 |
| 53 | 13824 | 1259 |
| 54 | 13780 | 407 |
| 55 | 13780 | 514 |
| 56 | 14094 | 1874 |
| 57 | 13726 | 1208 |
| 58 | 14091 | 1084 |
| 59 | 13787 | 1781 |
| 60 | 13795 | 966 |
| 61 | 13803 | 335 |
| 62 | 13831 | 117 |
| 63 | 14250 | 1197 |
| 64 | 14191 | 1652 |
| 65 | 13726 | 1136 |
| 66 | 13765 | 1665 |
| 67 | 13803 | 640 |
| 68 | 14031 | 1108 |
| 69 | 13797 | 1038 |
| 70 | 14091 | 977 |
| 71 | 14034 | 1806 |
| 72 | 14130 | 1508 |
| 73 | 13785 | 1959 |
| 74 | 13977 | 569 |
| 75 | 14091 | 923 |
| 76 | 14064 | 1068 |
| 77 | 13726 | 1274 |

PAGE 7

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 78 | 13726 | 1172 |
| 79 | 14091 | 869 |
| 80 | 13780 | 599 |

(B)    THOSE CERTAIN SUBLEASES DATED AUGUST 1, 1980, EXECUTED BY ROBERT P. WARMINGTON, AS SUBLESSOR, AND BY VARIOUS PARTIES, AS SUBLESSEES, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT ORIGINAL |
|---|---|---|---|
| SUBLESSEE | | | |
| 1 | 13754 | 243 | |
| 2 | 14091 | 1066 | |
| 3 | 14045 | 133 | |
| 4 | 13733 | 216 | AND |
| | 13754 | 52 | |
| 5 | 13760 | 917 | |
| 6 | 13982 | 432 | |
| 7 | 13754 | 312 | |
| 8 | 13726 | 1256 | AND |
| | 13754 | 69 | |
| 9 | 13822 | 1561 | |
| 10 | 13773 | 25 | |
| 11 | | | 82-128058 |
| 12 | 13807 | 1584 | |
| 13 | 13780 | 369 | |
| 14 | 13797 | 1103 | |
| 15 | 13780 | 477 | |
| 16 | 13726 | 1328 | AND |
| | 13754 | 86 | |
| 17 | 13763 | 234 | |
| 18 | 13915 | 205 | |
| 19 | 13997 | 361 | |
| 20 | 13807 | 1684 | |
| 21 | 13733 | 296 | |
| 22 | 13775 | 250 | |
| 23 | 13803 | 602 | |
| 24 | 14038 | 707 | |
| 25 | 13793 | 970 | |
| 26 | 13814 | 622 | |
| 27 | 13789 | 1615 | |
| 28 | 13787 | 1849 | |
| 29 | 13778 | 188 | |
| 30 | 13896 | 1125 | |
| 31 | 14091 | 1154 | |
| 32 | 13726 | 1364 | AND |
| | 13754 | 120 | |
| 33 | 14005 | 1919 | |

PAGE 8

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 34 | 14048 | 1475 |
| 35 | 13861 | 738 |
| 36 | 13814 | 681 |
| 37 | 13768 | 1047 |
| 38 | 13793 | 1194 |
| 39 | 13818 | 1680 |
| 40 | 13783 | 1800 |
| 41 | 13824 | 1327 |
| 42 | 13867 | 813 |
| 43 | 13726 | 1120 |
| 44 | 14072 | 1925 |
| 45 | 13789 | 1562 |
| 46 | 14066 | 771 |
| 47 | 14038 | 652 |
| 48 | 13933 | 1544 |
| 49 | 13826 | 1 |
| 50 | 13783 | 1747 |
| 51 | 13916 | 1687 |
| 52 | 14094 | 1944 |
| 53 | 13824 | 1274 |
| 54 | 13780 | 422 |
| 55 | 13780 | 529 |
| 56 | 14094 | 1889 |
| 57 | 13726 | 1226 |
| 58 | 14091 | 1099 |
| 59 | 13787 | 1796 |
| 60 | 13795 | 981 |
| 61 | 13803 | 350 |
| 62 | 13831 | 132 |
| 63 | 14250 | 1212 |
| 64 | 14191 | 1667 |
| 65 | 13726 | 1154 |
| 66 | 13765 | 1660 |
| 67 | 13803 | 655 |
| 68 | 14031 | 1123 |
| 69 | 13797 | 1053 |
| 70 | 14091 | 992 |
| 71 | 14034 | 1821 |
| 72 | 14180 | 1523 |
| 73 | 13785 | 1974 |
| 74 | 13977 | 584 |
| 75 | 14091 | 938 |
| 76 | 14064 | 1083 |
| 77 | 13726 | 1292 |
| 78 | 13726 | 1190 |
| 79 | 14091 | 884 |
| 80 | 13780 | 614 |

PAGE 9

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

NOTE:  THE LESSEE'S INTEREST UNDER SAID LEASES AND THE SUB-LESSOR'S INTEREST
UNDER SAID SUBLEASE HAS BEEN ASSIGNED TO G/HB INVESTORS, A CALIFORNIA LIMITED
PARTNERSHIP BY ASSIGNMENT WHICH RECORDED SEPTEMBER 30, 1986 AS INSTRUMENT
NO. 86-456266 OF OFFICIAL RECORDS, REFERENCE BEING HEREBY MADE TO THE RECORD
THEREOF FOR FULL PARTICULARS.

PAGE 10



Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

**30.00**

19980644010 4:03pm 09/24/98

005 11009904 11 28
A34 9 6.00 24.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

BARRY BRIEF, Trustee
c/o Laguna Monarch Group, Inc.
10 Monarch Bay Plaza, Suite B
Monarch Beach, CA 92629

9820299-AS

_____
SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN #_____

Documentary Transfer Tax: $0     NO TRANSFER TAX DUE
                                 Term of Lease less than
                                 99 years

### MEMORANDUM OF ASSIGNMENT OF GROUND LEASE AND SUBLEASES

1.     This Memorandum of Assignment of Ground Lease
("Memorandum") is made and entered into by and between BARBARA D.
WERTIN SEPARATE PROPERTY TRUST DATED APRIL 21, 1995 ("Assignor"),
and the BARRY BRIEF FAMILY TRUST DATED MAY 11, 1993 ("Assignee").

2.     Assignor has assigned to Assignee all of its
right, title and interest in and to an undivided 78.34% interest
in a certain ground lease and subleases covering real property
located in the City of Huntington Beach, County of Orange, State
of California, as more particularly described on attached
Exhibit "A", which is incorporated herein by this reference, [ unrecorded
pursuant to the terms and conditions of that certain Assignment
and Assumption of Interest in Ground Lease and Subleases dated
effective September 24, 1998, by and between Assignor and
Assignee (the "Assignment"). The terms and conditions of the
Assignment are incorporated herein by this reference.

          Executed on _October 9_, 1998 at _Irvine_,
California.

"ASSIGNOR"                          "ASSIGNEE"

BARBARA D. WERTIN SEPARATE          BARRY BRIEF FAMILY TRUST
PROPERTY TRUST DATED APRIL          DATED MAY 11, 1992
21, 1995

By: _Barbara D Wertin_              By: _____
    Barbara D. Wertin                   Barry Brief
Its: Trustee                        Its: Trustee

STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF ORANGE     )


On *September 9, 1998*_____, before me,
_____, Notary Public, personally
appeared BARBARA D. WERTIN, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
authorized signature(s) on the instrument the person(s), or the
entity on behalf of which the person(s) acted, executed the
instrument.

_____
                                     NOTARY PUBLIC

(seal)


STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF ORANGE     )


On _____*9-10-98*_____, before me,
*W.S. BETTINI*_____, Notary Public, personally
appeared BARRY BRIEF, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person whose name
is subscribed to the within instrument and acknowledged to me
that he executed the same in his authorized capacity, and that by
his authorized signature on the instrument the person, or the
entity on behalf of which the person acted, executed the
instrument.

_____
                                     NOTARY PUBLIC

(seal)

2

000236

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON
THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS
AS FOLLOWS:

NAME OF NOTARY:                        **CHRISTINE JAMESON**

COUNTY WHERE BOND IS FILED:     **ORANGE**

DATE COMMISSION EXPIRES:          **AUG 7, 2002**

COMMISSION NO.:                        **1189752**

MANUFACTURERS/VENDOR NO.      **VSI1**


PLACE OF EXECUTION:   SANTA ANA, CALIFORNIA
DATE:      September 24, 1998


BY: _____

FIRST AMERICAN TITLE INSURANCE COMPANY

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, **COUNTY OF ORANGE, CITY OF HUNTINGTON BEACH,** DESCRIBED AS FOLLOWS:

PARCEL 1:

UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON A CONDOMINIUM PLAN (THE "CONDOMINIUM PLAN") RECORDED IN BOOK 13358, PAGES 1193 AND FOLLOWING OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 2:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN THE COMMON AREA OF LOTS 1 AND 2 OF TRACT NO. 10542, AS SHOWN ON A MAP RECORDED IN BOOK 456, PAGES 49 AND 50 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 3:

THOSE PORTIONS OF UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 4:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN AND TO THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 5:

AN EASEMENT FOR THE EXCLUSIVE USE AND OCCUPANCY OF THOSE PORTIONS OF THE RESTRICTED COMMON AREA, AS DEFINED ON SAID CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNITS.

PARCEL 6:

A NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THE COMMON AREA AS DEFINED ON SAID CONDOMINIUM PLAN, EXCEPT THE RESTRICTED COMMON AREA.

PAGE 4

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

THE ESTATE OR INTEREST IN THE LAND DESCRIBED IN THIS COMMITMENT IS:

GROUND LEASEHOLD AND SUBLEASEHOLD ESTATES AS TO PARCELS 1 AND 2, SAID ESTATES BEING MORE PARTICULARLY DESCRIBED AS THE LESSEES' INTERESTS UNDER THOSE CERTAIN GROUND LEASES SET FORTH IN SUBPARAGRAPH (A) HEREIN BELOW, AND SUBLESSORS' INTERESTS UNDER THOSE CERTAIN SUBLEASES SET FORTH IN SUB-PARAGRAPH (B) BELOW;

A REMAINDER INTEREST IN A DETERMINABLE FEE ESTATE AS TO PARCELS 3 AND 4;

AN EASEMENT AS TO PARCELS 5 AND 6;

(A)     THOSE CERTAIN GROUND LEASES, DATED AUGUST 1, 1980, EXECUTED BY HOUSER BROS. CO., A LIMITED PARTNERSHIP ORGANIZED UNDER THE LAWS OF THE STATE OF CALIFORNIA, IN WHICH CLIFFORD C. HOUSER AND VERNON F. HOUSER CONSTITUTE THE SOLE GENERAL PARTNERS, AS LANDLORD, AND BY ROBERT P. WARMINGTON, AS TENANT, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT |
|------|------|------|------------|
| 1 | 13754 | 263 | |
| 2 | 14091 | 1031 | |
| 3 | 14045 | 118 | |
| 4 | 13733 | 198 | |
| 5 | 13760 | 942 | |
| 6 | 13982 | 417 | |
| 7 | 13754 | 297 | |
| 8 | 13726 | 1238 | |
| 9 | 13822 | 1546 | |
| 10 | 13773 | 10 | |
| 11 | | | 82-128057 |
| 12 | 13807 | 1569 | |
| 13 | 13780 | 354 | |
| 14 | 13797 | 1088 | |
| 15 | 13780 | 462 | |
| 16 | 13726 | 1310 | |
| 17 | 13763 | 259 | |
| 18 | 13915 | 190 | |
| 19 | 13997 | 346 | |
| 20 | 13807 | 1669 | |
| 21 | 13733 | 278 | |
| 22 | 13775 | 235 | |
| 23 | 13803 | 587 | |
| 24 | 14038 | 692 | |
| 25 | 13793 | 955 | |
| 26 | 13814 | 607 | |

PAGE 6

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 27 | 13789 | 1600 |
| 28 | 13787 | 1834 |
| 29 | 13778 | 173 |
| 30 | 13896 | 1090 |
| 31 | 14091 | 1139 |
| 32 | 13726 | 1346 |
| 33 | 14005 | 1903 |
| 34 | 14048 | 1460 |
| 35 | 13861 | 723 |
| 36 | 13814 | 666 |
| 37 | 13768 | 1032 |
| 38 | 13793 | 1179 |
| 39 | 13818 | 1665 |
| 40 | 13783 | 1875 |
| 41 | 13824 | 1312 |
| 42 | 13867 | 798 |
| 43 | 13726 | 1102 |
| 44 | 14072 | 1910 |
| 45 | 13789 | 1547 |
| 46 | 14066 | 756 |
| 47 | 14038 | 637 |
| 48 | 13933 | 1529 |
| 49 | 13825 | 1973 |
| 50 | 13783 | 1732 |
| 51 | 13916 | 1672 |
| 52 | 14094 | 1929 |
| 53 | 13824 | 1259 |
| 54 | 13780 | 407 |
| 55 | 13780 | 514 |
| 56 | 14094 | 1874 |
| 57 | 13726 | 1208 |
| 58 | 14091 | 1084 |
| 59 | 13787 | 1781 |
| 60 | 13795 | 966 |
| 61 | 13803 | 335 |
| 62 | 13831 | 117 |
| 63 | 14250 | 1197 |
| 64 | 14191 | 1652 |
| 65 | 13726 | 1136 |
| 66 | 13765 | 1665 |
| 67 | 13803 | 640 |
| 68 | 14031 | 1108 |
| 69 | 13797 | 1038 |
| 70 | 14091 | 977 |
| 71 | 14034 | 1806 |
| 72 | 14130 | 1508 |
| 73 | 13785 | 1959 |
| 74 | 13977 | 569 |
| 75 | 14091 | 923 |
| 76 | 14064 | 1068 |
| 77 | 13726 | 1274 |

PAGE 7

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 78 | 13726 | 1172 |
| 79 | 14091 | 869 |
| 80 | 13780 | 599 |

(B)   THOSE CERTAIN SUBLEASES DATED AUGUST 1, 1980, EXECUTED BY ROBERT
P. WARMINGTON, AS SUBLESSOR, AND BY VARIOUS PARTIES, AS SUBLESSEES, FOR
THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND
CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL
RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT ORIGINAL |
|---|---|---|---|
| SUBLESSEE | | | |
| 1 | 13754 | 243 | |
| 2 | 14091 | 1066 | |
| 3 | 14045 | 133 | |
| 4 | 13733 | 216 | AND |
| | 13754 | 52 | |
| 5 | 13760 | 917 | |
| 6 | 13982 | 432 | |
| 7 | 13754 | 312 | |
| 8 | 13726 | 1256 | AND |
| | 13754 | 69 | |
| 9 | 13822 | 1561 | |
| 10 | 13773 | 25 | |
| 11 | | | 82-128058 |
| 12 | 13807 | 1584 | |
| 13 | 13780 | 369 | |
| 14 | 13797 | 1103 | |
| 15 | 13780 | 477 | |
| 16 | 13726 | 1328 | AND |
| | 13754 | 86 | |
| 17 | 13763 | 234 | |
| 18 | 13915 | 205 | |
| 19 | 13997 | 361 | |
| 20 | 13807 | 1684 | |
| 21 | 13733 | 296 | |
| 22 | 13775 | 250 | |
| 23 | 13803 | 602 | |
| 24 | 14038 | 707 | |
| 25 | 13793 | 970 | |
| 26 | 13814 | 622 | |
| 27 | 13789 | 1615 | |
| 28 | 13787 | 1849 | |
| 29 | 13778 | 188 | |
| 30 | 13896 | 1125 | |
| 31 | 14091 | 1154 | |
| 32 | 13726 | 1364 | AND |
| | 13754 | 120 | |
| 33 | 14005 | 1919 | |

PAGE 8

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 34 | 14048 | 1475 |
| 35 | 13861 | 738 |
| 36 | 13814 | 681 |
| 37 | 13768 | 1047 |
| 38 | 13793 | 1194 |
| 39 | 13818 | 1680 |
| 40 | 13783 | 1800 |
| 41 | 13824 | 1327 |
| 42 | 13867 | 813 |
| 43 | 13726 | 1120 |
| 44 | 14072 | 1925 |
| 45 | 13789 | 1562 |
| 46 | 14066 | 771 |
| 47 | 14038 | 652 |
| 48 | 13933 | 1544 |
| 49 | 13826 | 1 |
| 50 | 13783 | 1747 |
| 51 | 13916 | 1687 |
| 52 | 14094 | 1944 |
| 53 | 13824 | 1274 |
| 54 | 13780 | 422 |
| 55 | 13780 | 529 |
| 56 | 14094 | 1889 |
| 57 | 13726 | 1226 |
| 58 | 14091 | 1099 |
| 59 | 13787 | 1796 |
| 60 | 13795 | 981 |
| 61 | 13803 | 350 |
| 62 | 13831 | 132 |
| 63 | 14250 | 1212 |
| 64 | 14191 | 1667 |
| 65 | 13726 | 1154 |
| 66 | 13765 | 1660 |
| 67 | 13803 | 655 |
| 68 | 14031 | 1123 |
| 69 | 13797 | 1053 |
| 70 | 14091 | 992 |
| 71 | 14034 | 1821 |
| 72 | 14180 | 1523 |
| 73 | 13785 | 1974 |
| 74 | 13977 | 584 |
| 75 | 14091 | 938 |
| 76 | 14064 | 1083 |
| 77 | 13726 | 1292 |
| 78 | 13726 | 1190 |
| 79 | 14091 | 884 |
| 80 | 13780 | 614 |

PAGE 9

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

NOTE:  THE LESSEE'S INTEREST UNDER SAID LEASES AND THE SUB-LESSOR'S INTEREST
UNDER SAID SUBLEASE HAS BEEN ASSIGNED TO G/HB INVESTORS, A CALIFORNIA LIMITED
PARTNERSHIP BY ASSIGNMENT WHICH RECORDED SEPTEMBER 30, 1986 AS INSTRUMENT
NO. 86-456266 OF OFFICIAL RECORDS. REFERENCE BEING HEREBY MADE TO THE RECORD
THEREOF FOR FULL PARTICULARS.

PAGE 10

# 2003

# FIRST AMENDMENT TO
# GROUND LEASE

# 2003

# FIRST AMENDMENT TO
# GROUND LEASE

Case 8:23-cv-00001-DSF   Document 16-1   Filed 05/24/23   Page 239 of 333   Page ID #:2670

Branch :AT4,User :2004        Case 8:21-bk-11710-SC   Doc 157-1   Filed 07/26/22   Entered 07/26/22 16:39:25   Desc
Comment:                            Part 2   Page 88 of 182                                    Station Id :M3Y7

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Recorded in Official Records, County of Orange
Tom Daly, Clerk-Recorder

28.00
2003001013605 11:13am 08/21/03
214  110  A17  12
0.00  0.00  0.00  0.00  22.00  0.00  0.00  0.00

Houser Bros., Co.
17610-17612 Beach Blvd., Suite 32
Huntington Beach, CA 92647
Attn: Clifford Houser

(Space Above For Recorder's Use)



# FIRST AMENDMENT TO GROUND LEASE
## (Unit 53)

THIS FIRST AMENDMENT TO GROUND LEASE ("First Amendment"), effective as of January 1, 2003 (the "Effective Date"), is made and entered into by and between HOUSER BROS., CO., a California limited partnership ("Landlord") and BS INVESTORS, LLC, a California limited liability company ("Tenant").

## RECITALS

A.      Landlord is the fee owner of that certain real property (the "Houser Property") located in the City of Huntington Beach and more particularly described in Exhibit "A" attached hereto.

B.      On October 18, 1979, a Condominium Plan was recorded for the Houser Property in Book 13358, Pages 1193, et. seq., in the official records of Orange County, California (the "Condominium Plan"). After the Condominium Plan was recorded, a condominium project consisting of eighty (80) condominium units was constructed on the Houser Property in accordance with the Condominium Plan (the "Condominium Project").

C.      By a document entitled "Ground Lease", dated August 1, 1980, entered into by and between Landlord, as landlord, and Robert P. Warmington ("Warmington") as tenant, (the "Ground Lease"), Landlord leased to Warmington that certain real property described in Exhibit "B" attached hereto. The Ground Lease was recorded on November 7, 1980 in the Official Records of Orange County, California in Book 13824 at page 1259, et. seq.

D.      The property leased under the Ground Lease, described in Exhibit "B", is referred to in this First Amendment as the "Leased Land". The condominium unit that is identified in the legal description of the Leased Land is one unit in the Condominium Project pursuant to the Condominium Plan. Eighty (80) separate Ground Leases were entered into for the Condominium Project, one for each of the eighty (80) units located on the Houser Property.

E.      By a document entitled "Condominium Sublease", dated August 1, 1980, entered into by and between Warmington, as landlord, and John F. Turner and Virginia H. Turner (the

2060/003708-0019
414778.02 a07/11/03

ORANGE,CA                          Page 1 of 12                    Printed on 5/8/2020 11:51:39 AM
Document: AM 2003.1013605

"Original Subtenant"), as Subtenant, Warmington subleased the Leased Land to the Original Subtenant (the "Condominium Sublease"). The Condominium Sublease was recorded on November 7, 1980 in the Official Records of Orange County, California in Book 13824 at page 1274, et. seq.

F.      The term of the Ground Lease and the term of the Condominium Sublease commenced on the date of the recording of the Condominium Sublease. The term ends on December 31, 2059.

G.      By a document entitled "Assignment and Assumption of Interest in Ground Lease and Subleases", Tenant acquired the tenant's (ground lessee's) interest in the Ground Lease to the Leased Land and the landlord's (sublessor's) interest in the Condominium Sublease. By such assignment document, Tenant also assumed and agreed to be bound by all the terms and conditions of the Ground Lease and the Condominium Sublease. The Assignment and Assumption of Interest in Ground Lease and Subleases was recorded on July 23, 1999 in the official records of Orange County, California as Instrument No. 19990542301.

H.      Article 3 of the Ground Lease provides that the tenant agreed to pay as the initial rental for the use and occupancy of the Leased Land during the term of the Ground Lease the sum of $900 per year. Article 3 of the Ground Lease further provides that the rental for the Leased Land is subject to adjustment at the time and in the manner provided for in Article 21 of the Ground Lease.

I.      In or around February 2000, a dispute arose among the parties to the Ground Lease and Condominium Sublease concerning the interpretation, application and enforceability of the provisions in paragraph 21(A) of the Condominium Sublease with respect to scheduled rental adjustments effective January 1, 2000, January 1, 2020 and January 1, 2040. As a result of such dispute, Landlord and Tenant, as co-plaintiffs, filed a Complaint for Declaratory Relief in the Superior Court of the State of California, for the County of Orange, case number 00CC09649 (the "Action"). In the Complaint, Landlord and Tenant requested that the Court determine the rights, duties and obligations of the Landlord, Tenant and Subtenant under the Condominium Sublease with respect to the rental adjustments under Article 21 of the Condominium Sublease. The determination of the Action also affected the rental obligations under the Ground Lease.

J.      Landlord, Tenant and Subtenant have settled the Action pursuant to the terms of a written settlement agreement among them. Landlord and Tenant hereby agree to replace Article 21 of the Ground Lease to set forth the agreed amount of rental that shall be paid by Tenant for use and occupancy of the Leased Land from and after January 1, 2000 through the end of the Ground Lease term.

K.      Tenant has assigned its interest in the Condominium Sublease and the Leased Land to a trustee under a deed of trust for the benefit of a lender referred to herein as "Tenant's Mortgagee". Tenant's Mortgagee and the deed of trust encumbering Tenant's interest in the Leased Land are identified on Exhibit "C", attached hereto and made a part hereof.

2060/003708-0019
414778.02 a07/11/03

-2-

Case 8:23-cv-00001-DSF   Document 16-1   Filed 05/24/23   Page 241 of 333   Page ID #:2672

Branch :AT4,User :2004                Case 8:21-bk-11710-SC    Doc 157-1   Filed 07/26/22    Entered 07/26/22 16:39:25    Desc
Comment:                                           Part 2    Page 90 of 182                                 Station Id :M3Y7

NOW, THEREFORE, in consideration of the above-referenced Recitals and for other valuable consideration, receipt of which is hereby acknowledged, Landlord and Tenant hereby agree as follows:

## AMENDMENT

1.  AGREED RENTAL FOR PERIOD FROM JANUARY 1, 2000 TO DECEMBER 31, 2002

    1.1    Agreed Rental Amount

    The parties hereby agree that Tenant shall pay Landlord, and Landlord shall accept from Tenant, in full satisfaction of Tenant's rental obligation for use and occupancy of the Leased Land for the three-year period from January 1, 2000 through and including December 31, 2002 the aggregate sum of SEVEN THOUSAND NINE HUNDRED SEVENTY DOLLARS AND SIXTY-THREE CENTS ($7,970.63).

    1.2    Agreed Balance Due

    Landlord hereby acknowledges its receipt from Tenant of rent paid prior to the effective date of this Amendment for the three-year period from January 1, 2000 to December 31, 2002.  Landlord and Tenant agree that the remaining rent balance that Tenant shall pay Landlord for the three-year period from January 1, 2000 to December 31, 2002 (as determined pursuant to an unrecorded agreement between the parties) shall be paid by Tenant concurrently with Tenant's execution of this First Amendment.

2.  AGREED RENTAL EFFECTIVE JANUARY 1, 2003

    2.1    Agreed Rental Amount Effective January 1, 2003

    The parties hereto agree that effective January 1, 2003, Tenant shall pay Landlord as the annual rental for the use and occupancy of the Leased Land for each of calendar year 2003 and calendar year 2004, the sum of THREE THOUSAND SEVEN HUNDRED NINETY-TWO DOLLARS ($3,792.00).  The annual rental shall be subject to adjustment on January 1, 2005 and every other subsequent January 1st of the remaining Ground Lease term as provided in Section 3 of this First Amendment.

    2.2    Payment of Agreed 2003 and 2004 Rental

    The 2003 and 2004 annual rental shall be paid in twelve (12) monthly installments per year of $316.00 each.  If Tenant has paid less than $316.00 per month for the months in 2003 prior to Tenant's execution of this First Amendment, Tenant shall pay the balance of such 2003 rent remaining due concurrently with Tenant's execution of this First Amendment and thereafter pay to Landlord the monthly rental payments as and when due.

2060/003708-0019
414778.02 a07/11/03

-3-

3.     <u>ADJUSTMENTS TO ANNUAL RENTAL COMMENCING JANUARY 1, 2005</u>

    3.1     <u>Periodic Cost of Living Adjustments</u>

        On January 1, 2005, and on every other subsequent January 1st (i.e., commencing January 1, 2007) of the remaining Ground Lease term (each, an "Adjustment Date"), the annual rental payable by Tenant to Landlord for use and occupancy of the Leased Land shall be subject to a cost of living adjustment as follows:  On each Adjustment Date, the annual rental payable during the calendar year immediately preceding the applicable Adjustment Date shall be increased by an amount equal to Eighty Percent (80%) of the lesser of the following amounts:

            (a)     An amount equal to seven percent (7%) of the annual rental payable in the calendar year immediately preceding the applicable Adjustment Date; or

            (b)     An amount equal to that percent of the annual rental payable in the calendar year immediately preceding the applicable Adjustment Date that equals the percent increase, if any, in the Consumer Price Index of the Bureau of Labor Statistics of the U.S. Department of Labor for All Urban Consumers -- Los Angeles -- Riverside -- Orange County, All Items (Base Year 1982-1984 = 100) (the "Index") for the twelve-month period between October of the calendar year that is fifteen (15) calendar months before the applicable Adjustment Date and October of the calendar year that is three (3) months before the applicable Adjustment Date.  In no event, however, shall the annual rental be less than the annual rental payable in the calendar year immediately preceding the applicable Adjustment Date.

        For example, if the applicable Adjustment Date is January 1, 2007, and the Index has increased by five percent (5%) between October 2005 and October 2006, the annual rental for the calendar year 2007 shall be increased effective January 1, 2007 by four percent (4%) (80% of 5%) of the annual rental payable in the year 2006.  If the Index has increased by seven percent (7%) or more between October 2005 and October 2006, the annual rental shall be increased effective January 2007 by five and six-tenths percent (5.6%) (80% of 7%) of the annual rental payable in the year 2006, which is the maximum increase on any Adjustment Date.  If the Index has declined or not increased between October 2005 and October 2006, there would be no adjustment to the annual rental effective January 1, 2007.

        If the Index is changed so that the base year differs from the base years 1982-1984, the Index shall be converted in accordance with the conversion factor published by the United States Department of Labor, Bureau of Labor Statistics.  If the Index is discontinued or revised during the Lease Term or if its publication schedule is changed, the government index or computation with which it is replaced shall be used to obtain substantially the same result as if the Index had not been discontinued or revised.  If the Index is discontinued and not replaced, the parties shall jointly select a replacement index that will obtain substantially the same result as the discontinued Index would have obtained if it had not been discontinued.

    3.2     <u>Additional Agreed Annual Rental Increases</u>

        The parties agree that the annual rental payable by Tenant for use and occupancy of the Leased Land shall also be increased by the sum of TWO HUNDRED EIGHTY-EIGHT

Branch :AT4,User :2004                       Comment:                              Station Id :M3Y7

DOLLARS ($288) per year on each of the following Adjustment Dates: January 1, 2005, January 1, 2007, January 1, 2009, January 1, 2011 and January 1, 2013. Such agreed increases shall be in addition to the cost of living increases described in Section 3.1.

3.3   Notice of Rental Adjustment

Tenant shall calculate the amount of the new annual rental effective on the Adjustment Date (and provide the CPI Index information for such Adjustment Date) determined in accordance with the provisions of Section 3.1 and Section 3.2 above and shall send such proposed rent invoices to Landlord for Landlord's approval at least twenty (20) days before each applicable Adjustment Date.

3.4   Payment of Annual Rental

Tenant shall pay the annual rental for each year of the lease term from January 1, 2004 through the end of the term in twelve (12) equal monthly installments in advance on the first day of the month of each calendar year. The amount of each installment shall be the amount of the annual rental due for the applicable calendar year divided by twelve.

4.   EFFECT OF AMENDMENT; CONFIRMATION OF GROUND LEASE AS AMENDED

4.1   Effect of Amendment

The provisions of this First Amendment shall replace and supersede the provisions of Article 21 of the Ground Lease with respect to all rental adjustments effective on or after January 1, 2000. If there is any inconsistency between any provisions in this First Amendment and in the Ground Lease, or any other agreement or instrument entered into on or before this First Amendment, the provisions of this First Amendment shall prevail.

4.2   Confirmation of Consistent Terms of Ground Lease

Except to the extent expressly modified by this First Amendment, the terms of the Ground Lease are hereby confirmed and shall remain in full force and effect. The Ground Lease and this First Amendment contain and set forth all of the terms, covenants and conditions of the Ground Lease between the parties as of the Effective Date.

4.3   Entire Agreement

This First Amendment is the complete, final and exclusive statement between the parties with respect to the modifications and amendments to the Ground Lease. This First Amendment supersedes all prior and contemporaneous agreements and understandings among the parties relating to such modifications and amendments. This First Amendment may only be amended or modified by a written instrument signed by the parties hereto (or their respective successors and assigns).

5.      FURTHER ASSURANCES

        Each party to this First Amendment will at its own cost and expense execute and deliver such further documents or instruments and will take such other actions as may be reasonably required or appropriate to evidence or carry out the intent and purposes of this First Amendment.

6.      SUCCESSORS AND ASSIGNS

        The provisions of this First Amendment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, heirs, executors, administrators and assigns.

7.      NOTICES

        Any notice that may or must be given by either party under this First Amendment shall be delivered: (i) personally; (ii) by certified mail, return receipt requested; or (iii) by a nationally recognized overnight courier, addressed to the party to whom it is intended. Any notice given shall be sent to the respective address of the party set forth on the signature page below, or to such other address as that party may designate for service of notice by a notice given in accordance with the provisions of this Section 7. A notice sent pursuant to the terms of this Section 7, shall be deemed delivered: (a) when delivery is completed, if delivered personally; (b) two (2) days after deposit into the United States mail; or (c) the business day following deposit with a nationally recognized overnight courier.

        IN WITNESS WHEREOF, the parties have executed this First Amendment on the date specified below.

                                        "LANDLORD"


Dated:   _Aug 4 - 2003_                  HOUSER BROS., CO.,
                                         a California limited partnership


                                         By: _____
                                         Clifford Houser,
                                         Its general partner



                        [Signatures continued on next page.]

Branch :AT4,User :2004                          Comment:                          Station Id :M3Y7

"TENANT"

Dated: _____        BS INVESTORS, LLC,
                                  a California Limited Liability Company

                                  By:   G/HB Investors,
                                        a California Limited Partnership
                                        Its:    Member

                                  By:   LPL Asset Management
                                        Corporation,
                                        a California corporation
                                        Its:    General Partner

                                  By: _____
                                        Hugh M. Saddington,
                                        Its:  President

ORANGE,CA                     Page 7 of 12               Printed on 5/8/2020 11:51:39 AM
Document: AM 2003.1013605

000251

Case 8:23-cv-00001-DSF   Document 16-1   Filed 05/24/23   Page 246 of 333   Page ID #:2677

Branch :AF4,User :2004                Case 8:21-bk-11710-SC   Doc 157-1   Comment:Filed 07/26/22   Entered 07/26/22 16:39:25   Desc   Station Id :M3Y7
Part 2   Page 95 of 182

STATE OF CALIFORNIA          )
                             )
COUNTY OF ORANGE             ) ss.
                             )

    On $8\cdot4\cdot03$ , before me, Virginia Langham, Notary Public,
personally appeared, Clifford Houser, personally known to me, to
be the person whose name is subscribed to the within instrument and
acknowledged to me that he executed the same in his authorized
capacity, and that by his signature on the instrument the person
or the entity upon behalf of which the person acted, executed the
instrument.

    Witness my hand and official seal



VIRGINIA LANGHAM
Comm. # 1289473
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Expires Jan. 31, 2005

Signature of Notary Public

-8-

Case 8:23-cv-00001-DSF   Document 16-1   Filed 05/24/23   Page 247 of 333   Page ID #:2678

Branch :AT4,User :2004   Case 8:21-bk-11710-SC   Doc 157-1   Filed 07/26/22   Entered 07/26/22 16:39:25   Desc
Comment:   Part 2   Page 96 of 182   Station Id :M3Y7

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF ORANGE             )

    On August 6, 2003, before me, Judith D. Collins, Notary Public, personally appeared, Hugh M. Saddington, personally known to me, to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

    Witness my hand and official seal.

_____
Signature of Notary Public

JUDITH D. COLLINS
Commission # 1265596
Notary Public - California
Orange County
My Comm. Expires May 28, 2004

-9-

Branch :AT4,User :2004                              Comment:                              Station Id :M3Y7

## EXHIBIT "A"

### THE HOUSER PROPERTY

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Maps, in the office of the County Recorder of said County.

2060/003708-0019
414778.02 a07/11/03

### EXHIBIT "A"
### TO FIRST AMENDMENT TO GROUND LEASE

ORANGE,CA                              Page 10 of 12                              Printed on 5/8/2020 11:51:39 AM
Document: AM 2003.1013605

Branch :AT4,User :2004                                    Comment:                                        Station Id :M3Y7

### EXHIBIT "B"

<u>LEASED LAND</u>

Those portions of Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California, described as follows:

PARCEL 1

Unit 53, as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et. seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

PARCEL 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

PARCEL 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

PARCEL 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

2060/003708-0019
414778.02 a07/11/03

### EXHIBIT "B"
TO FIRST AMENDMENT TO GROUND LEASE

Case 8:23-cv-00001-DSF    Document 16-1    Filed 05/24/23    Page 250 of 333    Page ID #:2681

Branch :AT4,User :2004    Case 8:21-bk-11710-SC    Doc 157-1    Filed 07/26/22    Entered 07/26/22 16:39:25    Desc
Comment:    Part 2    Page 99 of 182    Station Id :M3Y7

## EXHIBIT "C"

### CONSENT OF LANDLORD'S MORTGAGEE

The undersigned, Fullerton Community Bank, F.S.B., with an address of 200 West Commonwealth Avenue, Fullerton, CA 92832, is the beneficiary under that certain Deed of Trust dated July 12, 1999, and recorded on July 23, 1999 in the Official Records of Orange County, California as Instrument No. 19990542302 (the "Deed of Trust"), and hereby consents to Landlord entering into this First Amendment, but such consent shall not be deemed a waiver of the undersigned's right to consent to or approve of any other modification or amendment to the Ground Lease so long as the indebtedness evidenced by the Deed of Trust remains outstanding.

FULLERTON    COMMUNITY    BANK, F.S.B

By: _____
C. W. Gregory

Its:    President

STATE OF CALIFORNIA     )
                         ) ss.

COUNTY OF ORANGE       )

On August 7, 2003, before me, Rebecca Nissen, Notary Public, personally appeared, C. W. Gregory, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
Signature of Notary Public

REBECCA NISSE
COMM # 1281396
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Nov. 10, 2004

[SEAL]

### EXHIBIT "C"
### TO FIRST AMENDMENT TO GROUND LEASE

06/29/2005
INSTRUMENT NO. 2005000504166

# CORRECTIVE AMENDEMENT TO GROUND LEASE
# (UNITS 1-80)

# FIRST AMENDMENT TO GROUND LEASE

000257

C.      The Ground Leases were amended pursuant to that certain First Amendment to
Ground Lease entered into for each of the eighty (80) Ground Leases which instruments were
recorded against the Houser Property in the Official Records of Orange County, California on
August 21, 2003 as Instrument Nos. 2003-001013553, 2003-001013554, 2003-001013555, 2003-
001013556, 2003-001013557, 2003-001013558, 2003-001013559, 2003-001013560, 2003-
001013561, 2003-001013562, 2003-001013563, 2003-001013564, 2003-001013565, 2003-
001013566, 2003-001013567, 2003-001013568, 2003-001013569, 2003-001013570, 2003-
001013571, 2003-001013572, 2003-001013573, 2003-001013574, 2003-001013575, 2003-
001013576, 2003-001013577, 2003-001013578, 2003-001013579, 2003-001013580, 2003-
001013581, 2003-001013582, 2003-001013583, 2003-001013584, 2003-001013585, 2003-
001013586, 2003-001013587, 2003-001013588, 2003-001013589, 2003-001013590, 2003-
001013591, 2003-001013592, 2003-001013593, 2003-001013594, 2003-001013595, 2003-

267/003708-0019
584537.03 a06/08/05

001013596, 2003-001013597, 2003-001013598, 2003-001013599, 2003-001013600, 2003-001013601, 2003-001013602, 2003-001013603, 2003-001013604, 2003-001013605, 2003-001013606, 2003-001013607, 2003-001013608, 2003-001013609, 2003-001013610, 2003-001013611, 2003-001013612, 2003-001013613, 2003-001013614, 2003-001013615, 2003-001013616, 2003-001013617, 2003-001013618, 2003-001013619, 2003-001013620, 2003-001013621, 2003-001013622, 2003-001013623, 2003-001013624, 2003-001013625, 2003-001013626, 2003-001013627, 2003-001013628, 2003-001013629, 2003-001013630, 2003-001013631, and 2003-001013632 (collectively, the "First Amendments").

D.     The First Amendments incorrectly stated the methodology for adjustments to annual rental commencing January 1, 2005, and the parties desire to enter into this Corrective Amendment to Ground Lease to correctly set forth the agreement of the parties with respect to rental increases under the First Amendments.

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Houser Bros., Co.
17610-17612 Beach Blvd., Suite 32
Huntington Beach, CA 92647
Attn: Craig E. Houser

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖27.00
2005000504166 02:56pm 06/29/05
116 33 A17 8
0.00 0.00 0.00 0.00 21.00 0.00 0.00 0.00

(Space Above For Recorder's Use)

## CORRECTIVE AMENDMENT TO GROUND LEASE
### (Units 1 – 80)

THIS   CORRECTIVE   AMENDMENT   TO   GROUND   LEASE   ("Corrective
Amendment"), effective as of January 1, 2003 (the "Effective Date"), is made and entered into
by and between HOUSER BROS., CO., a California limited partnership ("Landlord") and BS
INVESTORS, LLC, a California limited liability company ("Tenant").

### RECITALS

A.      Landlord is the fee owner of that certain real property (the "Houser Property")
located in the City of Huntington Beach and more particularly described in <u>Exhibit "A"</u> attached
hereto.

B.      On October 18, 1979, a Condominium Plan was recorded for the Houser Property
in Book 13358, Pages 1193, et. seq., in the official records of Orange County, California (the
"Condominium Plan").  After the Condominium Plan was recorded, a condominium project
consisting of eighty (80) condominium units was constructed on the Houser Property in
accordance with the Condominium Plan (the "Condominium Project").  Eighty (80) separate
ground leases were entered into for the Condominium Project (the "Ground Leases").

C.      The Ground Leases were amended pursuant to that certain First Amendment to
Ground Lease entered into for each of the eighty (80) Ground Leases which instruments were
recorded against the Houser Property in the Official Records of Orange County, California on
August 21, 2003 as Instrument Nos. 2003-001013553, 2003-001013554, 2003-001013555, 2003-
001013556, 2003-001013557, 2003-001013558, 2003-001013559, 2003-001013560, 2003-
001013561, 2003-001013562, 2003-001013563, 2003-001013564, 2003-001013565, 2003-
001013566, 2003-001013567, 2003-001013568, 2003-001013569, 2003-001013570, 2003-
001013571, 2003-001013572, 2003-001013573, 2003-001013574, 2003-001013575, 2003-
001013576, 2003-001013577, 2003-001013578, 2003-001013579, 2003-001013580, 2003-
001013581, 2003-001013582, 2003-001013583, 2003-001013584, 2003-001013585, 2003-
001013586, 2003-001013587, 2003-001013588, 2003-001013589, 2003-001013590, 2003-
001013591, 2003-001013592, 2003-001013593, 2003-001013594, 2003-001013595, 2003-

267/003708-0019
584537.03 a06/08/05

Document Number: 2005000504166 Page: 1 of 8

001013596, 2003-001013597, 2003-001013598, 2003-001013599, 2003-001013600, 2003-001013601, 2003-001013602, 2003-001013603, 2003-001013604, 2003-001013605, 2003-001013606, 2003-001013607, 2003-001013608, 2003-001013609, 2003-001013610, 2003-001013611, 2003-001013612, 2003-001013613, 2003-001013614, 2003-001013615, 2003-001013616, 2003-001013617, 2003-001013618, 2003-001013619, 2003-001013620, 2003-001013621, 2003-001013622, 2003-001013623, 2003-001013624, 2003-001013625, 2003-001013626, 2003-001013627, 2003-001013628, 2003-001013629, 2003-001013630, 2003-001013631, and 2003-001013632 (collectively, the "First Amendments").

D.      The First Amendments incorrectly stated the methodology for adjustments to annual rental commencing January 1, 2005, and the parties desire to enter into this Corrective Amendment to Ground Lease to correctly set forth the agreement of the parties with respect to rental increases under the First Amendments.

NOW, THEREFORE, in consideration of the above-referenced Recitals and for other valuable consideration, receipt of which is hereby acknowledged, Landlord and Tenant hereby agree as follows:

<div align="center">AMENDMENT</div>

1.      <u>Ground Lease Rental</u>.   Section 3 of each of the First Amendments is hereby deleted in its entirety and replaced with the following:

"3.      <u>ADJUSTMENTS TO ANNUAL RENTAL COMMENCING JANUARY 1, 2005</u>

3.1      <u>Periodic Cost of Living Adjustments</u>

On January 1, 2005, and on every other subsequent January 1st (i.e., January 1, 2007, January 1, 2009, etc.) of the remaining Ground Lease term (each, an "Adjustment Date"), the annual rental payable by Tenant to Landlord for use and occupancy of the Leased Land shall be subject to a cost of living adjustment determined on the basis of the "CPI Index" increases for the prior two "Comparison Periods." The annual rental for each subsequent even-numbered calendar year (i.e. 2006, 2008, etc.) of the remaining Ground Lease Term shall be the annual rental payable for the prior calendar year.   The cost of living adjustment on each Adjustment Date shall be calculated as follows:

A sum equal to the annual rental payable during the calendar year immediately preceding the applicable Adjustment Date multiplied by the product of (a) the percentage increase of the CPI index for the "Current Comparison Period"; and (b) the percentage increase of the CPI Index for the "Prior Comparison Period"; provided, however, that during each Comparison Period, the percentage increase shall never be greater than seven percent (7%) nor less than zero notwithstanding the actual increase or decrease in the CPI Index.

Document Number: 2005000504166 Page: 2 of 8

000261

The term "CPI Index" shall mean and refer to the Consumer Price Index of the Bureau of Labor Statistics of the U.S. Department of Labor for All Urban Consumers -- Los Angeles -- Riverside -- Orange County, All Items (Base Year 1982-1984 = 100).

The term "Comparison Period" shall mean and refer to the twelve-month period between October and the prior October.

The term "Current Comparison Period" shall mean and refer to the Comparison Period between October of the calendar year that is fifteen (15) calendar months before the applicable Adjustment Date and October of the calendar year that is three (3) months before the applicable Adjustment Date.

The term "Prior Comparison Period" shall mean and refer to the Comparison Period immediately prior to the Current Comparison Period.

The parties acknowledge that the percentage change in the CPI Index was 2.2319% for the October, 2002 through October, 2003 Comparison Period and 4.5261% for the October, 2003 through October, 2004 Comparison Period. Accordingly, the annual rental payable in calendar years 2005 and 2006 is Four Thousand Three Hundred Forty and 10/100 Dollars ($4,340.10), calculated as follows:

(($3,792 x 102.2319%) x 104.5261%) + $288

where $3,792 is the annual rental for calendar years 2003 and calendar year 2004 multiplied by the CPI Index increases for the Current Comparison Period and the Prior Comparison Period preceding the Adjustment Date of January 1, 2005, plus $288.00 as the additional rental increase payable pursuant to Section 3.2 below.

To further illustrate the rental increase calculation (inclusive of the additional rent increase pursuant to Section 3.2 below), if the CPI Index were to adjust for the next four (4) Comparison Periods (starting with the October, 2004 through October, 2005 Comparison Period) by 6%, 8%, 3%, and -1%, respectively, the annual rental payable by Tenant hereunder would be as follows:

| | |
|---|---|
| Calendar Year 2007 | $5,210.55 |
| Calendar Year 2008 | $5,210.55 |
| Calendar Year 2009 | $5,654.87 |
| Calendar Year 2010 | $5,654.87 |

In the above example, in the Comparison Period where the CPI Index increased by 8%, the adjustment for such year would be limited to 7%, and in the

Comparison Period where the CPI Index decreased by 1%, there would be no adjustment, in accordance with the proscribed limitations on CPI Index adjustments.

If the CPI Index is changed so that the base year differs from the base years 1982-1984, the CPI Index shall be converted in accordance with the conversion factor published by the United States Department of Labor, Bureau of Labor Statistics. If the CPI Index is discontinued or revised during the Lease Term or if its publication schedule is changed, the government index or computation with which it is replaced shall be used to obtain substantially the same result as if the CPI Index had not been discontinued or revised. If the CPI Index is discontinued and not replaced, the parties shall jointly select a replacement index that will obtain substantially the same result as the discontinued Index would have obtained if it had not been discontinued.

    3.2    <u>Additional Agreed Annual Rental Increases</u>

        The parties agree that the annual rental payable by Tenant for use and occupancy of the Leased Land shall also be increased by the sum of Two Hundred Eighty-Eight Dollars ($288) per year on each of the following Adjustment Dates: January 1, 2005, January 1, 2007, January 1, 2009, January 1, 2011 and January 1, 2013. Such agreed increases shall be in addition to the cost of living increases described in Section 3.1.

    3.3    <u>Notice of Rental Adjustment</u>

        Tenant shall calculate the amount of the new annual rental effective on the Adjustment Date (and provide the CPI Index information for the Current Comparison Period and the Prior Comparison Period) determined in accordance with the provisions of Section 3.1 and Section 3.2 above and shall send such proposed rent invoices to Landlord for Landlord's approval at least twenty (20) days before each applicable Adjustment Date.

    3.4    <u>Payment of Annual Rental</u>

        Tenant shall pay the annual rental for each year of the lease term from January 1, 2004 through the end of the term in twelve (12) equal monthly installments in advance on the first day of the month of each calendar year. The amount of each installment shall be the amount of the annual rental due for the applicable calendar year divided by twelve."

        Accordingly, the rental to be paid to Landlord by Tenant for calendar years 2005 and 2006 under the eighty (80) Ground Leases totals Three Hundred Forty-Seven Thousand Two Hundred Eight Dollars ($347,208) per annum payable in equal monthly installments of Twenty-Eight Thousand Nine Hundred Thirty-Four Dollars ($28,934).

2.    <u>Lender Consent</u>.  Tenant's mortgagee hereby consents to Tenant entering into this Corrective Amendment as provided in <u>Exhibit "B"</u>, attached hereto and made a part hereof.

3.    <u>Full Force and Effect</u>.    Except as otherwise set forth in this Corrective Amendment to Ground Lease, the Ground Leases, as modified by the First Amendments, shall remain unmodified and in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Corrective Amendment to Ground Lease on the date specified below.

"LANDLORD"

Dated: _6/27/05_

HOUSER BROS., CO.,
a California limited partnership

By: _____
     Craig E. Houser,
     Its general partner


"TENANT"

Dated: _6-8-05_

BS INVESTORS, LLC,
a California Limited Liability Company


By:    G/HB Investors,
       a California Limited Partnership
Its:        Member

       By:    LPL Asset Management
              Corporation,
              a California corporation
       Its:      General Partner

              By: _____
                   Hugh M. Saddington,
                   Its:   President

STATE OF CALIFORNIA )
) ss.
COUNTY OF __ORANGE__ )

On __JUN 27 2005__, before me, **THOMAS G. KNAACK**, Notary Public, personally appeared ___C̶R̶A̶I̶G̶ E̶ H̶o̶u̶s̶e̶r̶___ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

[SEAL]

Notary Public

[SEAL]

STATE OF CALIFORNIA )
) ss.
COUNTY OF Orange )

On June 8, 2005, before me, Judith D. Collins, Notary Public, personally appeared Hugh M. Saddington personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public

[SEAL]

267/003708-0019
584537.03 a06/08/05

-6-

## EXHIBIT "A"

### THE HOUSER PROPERTY

Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a map recorded in Book 456, Pages 49 to 50 of Maps, in the office of the County Recorder of said County.

## EXHIBIT "B"

### CONSENT OF TENANT'S MORTGAGEE

The undersigned, Fullerton Community Bank, F.S.B., with an address of 200 West Commonwealth Avenue, Fullerton, CA 92832, is the beneficiary under that certain Deed of Trust dated July 12, 1999, and recorded on July 23, 1999 in the Official Records of Orange County, California as Instrument No. 19990542302 (the "Deed of Trust"), and hereby consents to Tenant entering into this Corrective Amendment, but such consent shall not be deemed a waiver of the undersigned's right to consent to or approve of any other modification or amendment to the Ground Lease so long as the indebtedness evidenced by the Deed of Trust remains outstanding.

FULLERTON COMMUNITY BANK, F.S.B

By: _____

Its _____

STATE OF CALIFORNIA        )
                                                  ) ss.
COUNTY OF __ORANGE_____ )

On __JUNE 21, 2005____, before me, ___MARIA FRANCO_____, Notary Public, personally appeared ___CARL GREGORY**_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public

[SEAL]



EXHIBIT "B"
TO CORRECTIVE AMENDMENT TO GROUND LEASE

Document Number: 2005000504166 Page: 8 of 8

000267

**RECORDING REQUESTED BY:**

**Mr. Randy Nickel**
**4476 Alderport Drive**
**Huntington Beach, CA 92649**

**MAIL TAX STATEMENTS TO:**

**Mr. Randy Nickel**
**4476 Alderport Drive.**
**Huntington Beach, CA 92649**

Lease from Present to 2059

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

96.00

* $ R 0 0 1 0 4 4 6 0 2 6 $ *

2018000395579 2:35 pm 10/31/18
227 415 A34   5
0.00 0.00 0.00 0.00 12.00 0.00 0.000.0075.00 3.00

**TITLE OF DOCUMENT:       ASSIGNMENT OF CONDOMINIUM SUBLEASE**

WHEN RECORDED MAIL TO:
(Assignee's Name & Address)
MR. RANDALL L. NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

Mail tax statements to:
MR. RANDALL L NICKEL
4476 ALDERPORT DRIVE
HUNTINGTON BEACH, CA 92649

_____

(Space Above this Line for Recorder's Use)

## ASSIGNMENT OF GROUND LEASE & CONDOMINIUM SUBLEASE

No Consideration.  Term of Lease Less Than 99 years.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant,** entered into that certain **GROUND LEASE** also known as the **MASTER LEASE dated October 19, 1979,** a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 499 inclusive.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant,** entered into a **PARTIAL CANCELLATION OF MASTER LEASE dated November 7, 1980** for that certain **MASTER LEASE dated October 19, 1979**; recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Pg(s) 1253-1255, **\*\*Instrument No. 8691**.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant,** entered into that certain **SUBLEASE dated October 19, 1979,** a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13424, Page 504, inclusive, with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California as shown on Miscellaneous Map(s) recorded in Book 456, Page(s) 49 and 50, in the Office of the Orange County, California Clerk Recorder.

**WHEREAS**
**HOUSER BROS. CO., a limited partnership, as Landlord and ROBERT P. WARMINGTON, as Tenant,** entered into a **PARTIAL CANCELLATION OF SUBLEASE dated October 19, 1979**; for that certain SUBLEASE dated November 7, 1980, a Short Form Memorandum recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1256-1258, with respect to those portions of Lots 1 and 2 of Tract No. 10542 in the City of Huntington Beach, California recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Maps, in the Office of the Orange County, California Clerk Recorder, **\*\*Instrument No. 8692;**

**WHEREAS**
        For valuable consideration, receipt of which is hereby acknowledged, the undersigned **JAMIEL GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property** all right, title and interest of the undersigned, as Tenant, in and under that certain **MASTER LEASE/ Ground Lease, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1259-1273, **\*\*Instrument No. 8693;**

1

     **JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property,** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE, dated August 1, 1980,** by and between ROBERT P. WARMINGTON, as Landlord, and **JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANT, recorded on November 7, 1980,** Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1274-1290, **\*\*Instrument No. 8694;**

As amended by the **FIRST AMENDMENT TO CONDOMINIUM SUBLEASE** effective January 1, 2003, recorded in the Office of the Orange County, California Clerk Recorder as Document No. 2003-001044770 on August 28, 2003.

     **JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONVEYANCE OF REMAINDER INTEREST, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1291-1293, **\*\*Instrument No. 8695;**

     **JAMIE L GALLIAN,** hereby transfers and assigns to **RANDALL L NICKEL, a married man, as his sole and separate property,** all right, title and interest of the undersigned, as Tenant, in and under that certain **CONDOMINIUM SUBLEASE (SHORT FORM – MEMORANDUM AND GRANT DEED, dated November 7, 1980,** recorded in the Office of the Orange County, California Clerk Recorder in Book 13824, Pg(s) 1294-1298, **\*\*Instrument No. 8696.**

**DATED:** _10/31/18_

                                  ASSIGNOR JAMIE L GALLIAN

**STATE OF CALIFORNIA**        )
                           ) ss.
**COUNTY OF ORANGE**
A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _10/31/2018_____, before me, _Paul Dyer, Notary Public_
Personally appeared _Jamie L Gallian_____,

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

PAUL DYER
Notary Public - California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021

**(This space for Notary Seal)**

_____
**Signature of Notary Public**

2

## ASSIGNMENT OF CONDOMINIUM SUBLEASE
### ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment hereby Accepts said Assignment and hereby agrees with for the benefit of the Master Lessor, Sublessor/Landlord, Tenant and under the Original Condominium Sublease commonly referred to throughout this document as "Condominium Sublease", described in said Assignment, to keep, perform and be bound by all the terms, covenants and conditions contained in said Condominium Sublease and as amended by the First Amendment to Condominium Sublease on the part of the Master Lessor, Sublessor/Landlord and Condominium Sublease Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the Original Condominium Sublease Tenant there under.

Assignee agrees to pay Sublessor/Landlord a late fee equal to 6% of any rent or other payment due under the Condominium Sublease, which is not received by Sublessor/Landlord within ten (10) days of its due date.  Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease.  The undersigned Assignee agrees to pay attorneys fees and costs incurred by Landlord to collect rent or other payment under the Condominium Sublease or to otherwise enforce Sublessor/Landlord rights under the Condominium Sublease.

DATED: _10· 31· 18_ _____  _____

**ASSIGNEE RANDALL L NICKEL**

**STATE OF CALIFORNIA**        )
                              ) ss.
**COUNTY OF ORANGE**
A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _10/31/2018_ before me, _Paul Dyer, Notary Public_ _____,
Personally appeared _Randall L Nickel_ _____,

Who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

_____          (This space for Notary Seal)
**Signature of Notary Public**

PAUL DYER
Notary Public – California
Riverside County
Commission # 2211938
My Comm. Expires Aug 28, 2021

3

# EXHIBIT A (LEGAL)

The estate or interest in the land described:

A Ground leasehold and Condominium Sublease hold estate as to Parcels 1 and 2, said estate being more particularly described as the Lessees' interest under that certain <u>Ground Lease</u> set forth in subparagraph (A) herein below:

(A)    That certain <u>Ground Lease dated August 1, 1980</u>, executed by Houser Bros. Co, A Limited Partnership organized under the Laws of the State of California, in which Clifford C. Houser and Vernon F. Houser constitute the sole General Partners, as Landlord, and by Robert P. Warmington, as Tenant, for the term ending December 31, 2059. Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County:    **Book 13824 Page 1259-1273**
**APN: 937-63-053, Unit 53.**

(B)    That certain <u>Condominium Sublease dated August 1, 1980</u>, executed by Robert P. Warmington, as Sub-lessor and John F. Turner and Virginia H. Turner (Original Sublessee) for the term ending December 31, 2059. Upon the Terms, Covenants and Conditions therein contained, recorded as follows in Official Records of said Orange County: **Book 13824 Page 1274-1290**
**APN: 937-63-053, Unit 53.**

All that certain land interest situated in the State of California, County of Orange and is described as follows:

Parcel   1:
Unit 53 as shown and defined on a Condominium Plan (the **"Condominium Plan"**) recorded in Book 13358 Page(s) 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements;

Parcel   2:
An undivided one-eightieth (1/80th) interest as Tenants in Common in the Common Area of Lots 1 and 2 Tract No. 10542, in the City of Huntington Beach, County of Orange, State of California as shown on a map recorded in Book 456, Page(s) 49 and 50 of Miscellaneous Map, records of Orange County, California, as shown on the <u>Condominium Plan</u>, excepting that portion consisting of buildings and other improvements.

Except there from all minerals, oil, gas and other hydrocarbon substances lying below a depth of 500 feet below the surface of said Land without the right of surface entry above the depth of 500 feet from the surface, as reserved in deeds of record.

Parcel   3:
Those portions of Unit 53, building 14, inclusive, as shown and defined on the <u>Condominium Plan</u>, Consisting of buildings and other improvements.

Parcel   4:
An undivided one-eightieth (1/80th) interest as Tenants in Common, in and to those portions of the Common Area as shown and defined on the <u>Condominium Plan</u>, consisting of buildings or other improvements.

Parcel   5:
An easement for the exclusive use and occupancy of those portions of the restricted Common Area, as defined on said <u>Condominium Plan</u> for ground level entry, courtyard entry, staircases, garages, and attic space relating to said units.

Parcel   6:
A non-exclusive easement and right to use the Common Area as defined on said <u>Condominium Plan</u>, except the restricted Common Area(s).

4

## BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

Account:       ghb - 053 - 053gal

Date:          09/14/17

Jamie Gallian
**4476 Alderport Drive**
**Huntington Beach, CA  92649**

Payment:       _____

· 4th QTR - Oct-Dec 2017
DELINQUENT IF NOT RECEIVED BY 10/10/2017

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| | Balance Forward | | | 0.00 |
| 10/01/17 | Ground Rent (10/2017) | 2,144.73 | | 2,144.73 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter. Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:        **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---------|---------|--|---------|---------|------------|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,144.73 |

## BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

| | |
|---|---|
| Account: | ghb - 053 - 053gal |
| Date: | 12/18/17 |
| Payment: | _____ |

**Jamie Gallian**
**4476 Alderport Drive**
**Huntington Beach, CA  92649**

, 1st QTR Jan-Mar 2018
Delinquent if not received by January 10, 2018

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 0.00 |
| 01/01/18 | Ground Rent (01/2018) | 2,211.22 | | 2,211.22 |

1ST QUARTER 2018 GROUND RENT ($2,144.73 + $66.49 CPI INCREASE)
**TOTAL = $2,211.22**

ENCLOSURES:

(1)  Schedule entitled "Calculation of Rent Increase 1/1/2018" (see reverse side)
(2)  U.S. Department of Labor, Bureau of Labor Statistics Consumer Price Index
(3)  Excerpt from First Amendment to Condominium Sublease

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter.  Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:      **BS INVESTORS-GABLES HB**

Thank you and Happy Holidays from
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,211.22 |

## BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

| | |
|---|---|
| Account: | ghb - 053 - 053gal |
| Date: | 03/15/18 |

**Jamie Gallian**
**4476 Alderport Drive**
**Huntington Beach, CA  92649**

Payment: _____

2nd QTR Apr-Jun 2018
Delinquent if not received by April 10, 2018

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 0.00 |
| 04/01/18 | Ground Rent (04/2018) | 2,211.22 | | 2,211.22 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter.  Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:       **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,211.22 |

# BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

| | |
|---|---|
| Account: | ghb - 053 - 053gal |
| Date: | 06/15/18 |
| Payment: | _____ |

**Jamie Gallian**
**4476 Alderport Drive**
**Huntington Beach, CA  92649**

Jul-Sep 2018 Quarterly Ground Rent
Delinquent if not received by July 10, 2018

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | -0.78 |
| 07/01/18 | Ground Rent (07/2018) | 2,211.22 | | 2,210.44 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter.  Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:        **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | 0.00 | 0.00 | 2,210.44 |



**Shari L. Freidenrich, CPA**
Orange County Treasurer - Tax Collector

## 2017-18 SECURED PROPERTY TAX BILL

For Fiscal Year Beginning July 1, 2017 and Ending June 30, 2018

#BWNLBHV **********AUTO**5-DIGIT 92649
#9376 3053 2017 4#

HOUSER BROS CO
GALLIAN JAMIE L
4476 ALDERPORT DR UNIT 53
HUNTINGTON BEACH CA 92649-2288

OWNER OF RECORD AS OF 12:01 AM, JANUARY 1, 2017

HOUSER BROS CO
GALLIAN, JAMIE L



### DID YOU KNOW?

Don't wait in line, pay online at ocgov.com/octaxbill, receive same day credit and an emailed receipt. There is no cost to pay by eCheck! Also, due to construction, parking at the Civic Center is not close to our office.

Mailed payments must have a USPS postmark on or before the delinquent date. If you wait until the last day to mail your payment, get your envelope hand-stamped with a postmark to ensure it is timely.

Sign up to receive a due date reminder email at ocgov.com/taxreminder.

**PROPERTY LOCATION**

4476 ALDERPORT 53 HUNTINGTON BEACH

| DESCRIPTION | FULL VALUE | COMPUTED TAX |
|---|---|---|
| LAND | 193,858 | |
| IMPROVEMENTS - BUILDING | 115,559 | |
| TOTAL VALUES: | 309,417 | 3,752.48 |
| TOTAL NET TAXABLE VALUE: | 309,417 | 3,752.48 |

| PARCEL NO (APN) | TAX RATE (TRA) | 1ST INSTALLMENT (DUE 11/1/17) | 2ND INSTALLMENT (DUE 2/1/18) | TO PAY BOTH INSTALLMENTS BY 12/11/17 |
|---|---|---|---|---|
| 937-630-53 | 04-007 | $1,876.24 | + $1,876.24 | = $3,752.48 |

### IMPORTANT INFORMATION

If you sold this property or no longer own it, you can disregard this bill. Property taxes are the responsibility of the new owner. Contact the Office of the Assessor at (714) 834-2727 regarding ownership changes.

LOCATED ON AP 178-771-03

| DISTRIBUTION OF TAXES AND OTHER CHARGES | RATE | VALUE | TAXES |
|---|---|---|---|
| BASIC LEVY RATE | 1.00000 | 309,417 | 3,094.16 |
| COAST COMM COLLEGE DIST | .03145 | 309,417 | 97.31 |
| OCEAN VIEW SD 2016, SR 2017A | .02703 | 309,417 | 83.63 |
| HUNTINGTON BCH UNION HS | .02403 | 309,417 | 74.35 |
| HUNTINGTON BEACH EMPLOYEE RETIREME | .01500 | 309,417 | 46.42 |
| METRO WATER D-MWDOC | .00350 | 309,417 | 10.83 |
| SPECIAL ASSESSMENT CHARGES | | PHONE NO. | |
| MOSQ,FIRE ANT ASSMT | | (800)273-5167 | 4.03 |
| VECTOR CONTROL CHG | | (800)273-5167 | 0.67 |
| MWD WATER STDBY CHG | | (866)807-6864 | 10.08 |
| OCSD SEWER USER FEE | | (714)593-7281 | 331.00 |
| TOTAL CHARGED | 1.10101 | | 3,752.48 |

FOR DETAILS OF TAX TYPES, VISIT OUR WEBSITE AT OCGOV.COM/OCTAXBILL

THERE WILL BE A $26.00 FEE FOR EACH PAYMENT RETURNED UNPAID BY YOUR BANK FOR ANY REASON
RETAIN THIS PORTION FOR YOUR RECORDS - IF PAYING BY CHECK, YOUR CANCELLED CHECK IS YOUR RECEIPT OR PAY ONLINE AND RECEIVE AN EMAILED RECEIPT

ORANGE COUNTY
CLAUDE PARRISH

2018 JUL 10 AM 9:58 CONDOMINIUM

INDEX, TRACT NO. 10542

PROJECT NO. 937-63    TRACT NO. 10542    NO. LOTS 2    A.P. NO. 178-771-03

| BILLING NO. | LOCATED ON LOT | UNIT NO. | COMMON AREA |
|---|---|---|---|
| 937-63-001 | Lot 2 | 1 | Und. 1/80 Int in Lots 1 & 2 |
| 937-63-002 | " | 2 | " |
| 937-63-003 | " | 3 | " |
| 937-63-004 | " | 4 | " |
| 937-63-005 | " | 5 | " |
| 937-63-006 | " | 6 | " |
| 937-63-007 | " | 7 | " |
| 937-63-008 | " | 8 | " |
| 937-63-009 | " | 9 | " |
| 937-63-010 | " | 10 | " |
| 937-63-011 | " | 11 | " |
| 937-63-012 | " | 12 | " |
| 937-63-013 | " | 13 | " |
| 937-63-014 | " | 14 | " |
| 937-63-015 | " | 15 | " |
| 937-63-016 | " | 16 | " |
| 937-63-017 | " | 17 | " |
| 937-63-018 | " | 18 | " |
| 937-63-019 | " | 19 | " |
| 937-63-020 | " | 20 | " |
| 937-63-021 | " | 21 | " |
| 937-63-022 | " | 22 | " |
| 937-63-023 | " | 23 | " |
| 937-63-024 | " | 24 | " |
| 937-63-025 | " | 25 | " |
| 937-63-026 | " | 26 | " |
| 937-63-027 | " | 27 | " |
| 937-63-028 | " | 28 | " |
| 937-63-029 | " | 29 | " |
| 937-63-030 | " | 30 | " |
| 937-63-031 | " | 31 | " |
| 937-63-032 | " | 32 | " |
| 937-63-033 | " | 33 | " |
| 937-63-034 | " | 34 | " |
| 937-63-035 | " | 35 | " |
| 937-63-036 | " | 36 | " |
| 937-63-037 | " | 37 | " |
| 937-63-038 | " | 38 | " |
| 937-63-039 | " | 39 | " |
| 937-63-040 | " | 40 | " |
| 937-63-041 | Lot 1 | 41 | " |
| 937-63-042 | " | 42 | " |
| 937-63-043 | " | 43 | " |
| 937-63-044 | " | 44 | " |

10

ORANGE COUNTY ASSESSOR
CLAUDE PARRISH

Page 2 of 2

2016 JUL 10 AM 9:58

CONDOMINIUM

INDEX, TRACT NO. 10542

PROJECT NO. 937-63    TRACT NO. 10542    NO. LOTS 2    A.P. NO. 178-771-03

| BILLING NO. | LOCATED ON LOT | UNIT NO. | COMMON AREA |
|---|---|---|---|
| 937-63-045 | Lot 1 | 45 | Und. 1/80 Int in Lots 1 & 2 |
| 937-63-046 | " | 46 | " |
| 937-63-047 | " | 47 | " |
| 937-63-048 | " | 48 | " |
| 937-63-049 | " | 49 | " |
| 937-63-050 | " | 50 | " |
| 937-63-051 | " | 51 | " |
| 937-63-052 | " | 52 | " |
| 937-63-053 | " | 53 | " |
| 937-63-054 | " | 54 | " |
| 937-63-055 | " | 55 | " |
| 937-63-056 | " | 56 | " |
| 937-63-057 | " | 57 | " |
| 937-63-058 | " | 58 | " |
| 937-63-059 | " | 59 | " |
| 937-63-060 | " | 60 | " |
| 937-63-061 | " | 61 | " |
| 937-63-062 | " | 62 | " |
| 937-63-063 | " | 63 | " |
| 937-63-064 | " | 64 | " |
| 937-63-065 | " | 65 | " |
| 937-63-066 | " | 66 | " |
| 937-63-067 | " | 67 | " |
| 937-63-068 | " | 68 | " |
| 937-63-069 | " | 69 | " |
| 937-63-070 | " | 70 | " |
| 937-63-071 | " | 71 | " |
| 937-63-072 | " | 72 | " |
| 937-63-073 | " | 73 | " |
| 937-63-074 | " | 74 | " |
| 937-63-075 | " | 75 | " |
| 937-63-076 | " | 76 | " |
| 937-63-077 | " | 77 | " |
| 937-63-078 | " | 78 | " |
| 937-63-079 | " | 79 | " |
| 937-63-080 | " | 80 | " |

11

RECEIVED
Headquarters
Subdivisions
JUL 18 1980
Department of Real Estate

DEPARTMENT OF REAL ESTATE
OF THE
STATE OF CALIFORNIA

(213) 620-2700

RECEIVED

JUL 1 1 1980

Dept. of Real Estate
Los Angeles Subdivisions

CONDOMINIUMS

In the matter of the application of

ROBERT P. WARMINGTON COMPANY,
A California Corporation

for a Final Subdivision Public Report on

TRACT NUMBER 10542
THE GABLES-HUNTINGTON BEACH

ORANGE COUNTY, CALIFORNIA

FINAL SUBDIVISION
PUBLIC REPORT

FILE NO.        46,370 LA

ISSUED          JUNE 19, 1980

EXPIRES         JUNE 18, 1985

**This Report Is Not a Recommendation or Endorsement of the Subdivision
But Is Informative Only.**

Buyer or Lessee Must Sign That He Has Received and Read This Report.

This Report Expires on Date Shown Above. If There Has Been a Material Change in the Offering,  an
Amended Public Report Must Be Obtained and Used in Lieu of This Report.

Section 35700 of the California Health and Safety Code provides that the practice of discrimination
because of race, color, religion, sex, marital status, national origin or ancestry in housing accommodations is
against public policy.

Under Section 125.6 of the California Business and Professions Code, California real estate licensees are
subject to disciplinary action by the Real Estate Commissioner if they make any discrimination, distinction
or restriction in negotiating a sale or lease of real property because of the race, color, sex, religion, ancestry
or national origin of the prospective buyer. If any prospective buyer or lessee believes that a licensee is
guilty of such conduct, he or she should contact the Department of Real Estate.

Information Regarding Schools can be found on Page        8 and 9 of this report.

READ THE ENTIRE REPORT on the following pages before contracting to purchase a lot in this
SUBDIVISION.

SPECIAL NOTES

1.  THE UNIFORM BUILDING CODE, CHAPTER 70, PROVIDES FOR LOCAL BUILD-
    ING OFFICIALS TO EXERCISE PREVENTIVE MEASURES DURING GRADING TO
    ELIMINATE OR MINIMIZE DAMAGE FROM GEOLOGIC HAZARDS SUCH AS LAND-
    SLIDES, FAULT MOVEMENTS, EARTHQUAKE SHAKING, RAPID EROSION OR
    SUBSIDENCE.   THIS SUBDIVISION IS LOCATED IN AN AREA WHERE SOME
    OF THESE HAZARDS MAY EXIST.   SOME CALIFORNIA COUNTIES AND CITIES
    HAVE ADOPTED ORDINANCES THAT MAY OR MAY NOT BE AS EFFECTIVE IN
    THE CONTROL OF GRADING AND SITE PREPARATION.

    PURCHASERS MAY DISCUSS WITH THE DEVELOPER, THE DEVELOPER'S ENGI-
    NEER, THE ENGINEERING GEOLOGIST AND THE LOCAL BUILDING OFFICIALS
    TO DETERMINE IF THE ABOVE-MENTIONED HAZARDS HAVE BEEN CONSIDERED
    AND IF THERE HAS BEEN ADEQUATE COMPLIANCE WITH CHAPTER 70 OR AN
    EQUIVALENT OR MORE STRINGENT GRADING ORDINANCE DURING THE CON-
    STRUCTION OF THIS SUBDIVISION.

2.  NO ESCROWS FOR THE SALE OF UNITS WILL CLOSE UNTIL ALL SOILS AND
    FILL WORK HAS BEEN PERFORMED IN ACCORDANCE WITH THE RECOMMENDA-
    TIONS OF THE SOILS ENGINEER AND A NOTICE OF COMPLETION COVERING
    THE COMMON AREA IMPROVEMENTS HAS BEEN FILED OF RECORD.

3.  THIS PROJECT IS A COMMON-INTEREST SUBDIVISION OF THE TYPE RE-
    FERRED TO AS A "CONDOMINIUM".   IT WILL BE OPERATED BY AN INCOR-
    PORATED OWNERS ASSOCIATION.

4.  SINCE THE COMMON PROPERTY AND FACILITIES WILL BE MAINTAINED BY
    AN ASSOCIATION OF HOMEOWNERS, AND IT'S ESSENTIAL THAT THIS ASSO-
    CIATION BE FORMED EARLY AND PROPERLY, THE DEVELOPER MUST:

    a.  COMPLETE ALL COMMON FACILITIES BY APPROXIMATELY JUNE, 1980.
        (SECTION 11018.5 OF THE BUSINESS AND PROFESSIONS CODE.); AND

    b.  PAY ALL THE MONTHLY ASSESSMENTS WHICH HE OWES TO THE HOME-
        OWNERS ASSOCIATION FOR UNSOLD UNITS.   THE PAYMENTS MUST COM-
        MENCE ON THE FIRST DAY OF THE MONTH AFTER SUBDIVIDER CLOSES
        FIRST SALE.   (REGULATIONS 2792.9 AND 2792.16).

THE HOMEOWNER ASSOCIATION MUST:

    c.  CAUSE THE FIRST ELECTION OF THE ASSOCIATION'S GOVERNING BODY
        TO BE HELD WITHIN 45 DAYS AFTER 51% SELL-OUT, OR IN ANY
        EVENT, NO LATER THAN SIX MONTHS AFTER CLOSING THE FIRST
        SALE.   (REGULATIONS 2792.17 AND 2792.19); AND

    d.  PREPARE AND DISTRIBUTE TO ALL HOMEOWNERS A BALANCE SHEET AND
        INCOME STATEMENT.   (REGULATION 2792.22).

# COMMON INTEREST SUBDIVISION GENERAL INFORMATION

The project described in the attached Subdivision Public Report is known as a common-interest subdivision. Read the Public Report carefully for more information about the type of subdivision. The subdivision includes common areas and facilities which will be owned and/or operated by an owners' association. Purchase of a lot or unit automatically entitles and obligates you as a member of the association and, in most cases, includes a beneficial interest in the areas and facilities. Since membership in the association is mandatory, you should be aware of the following information before you purchase:

Your ownership in this development and your rights and remedies as a member of its association will be controlled by governing instruments which generally include a Declaration of Restrictions (also known as CC&R's), Articles of Incorporation (or association) and Bylaws. The provisions of these documents are intended to be, and in most cases are, enforceable in a court of law. Study these documents carefully before entering into a contract to purchase a subdivision interest.

In order to provide funds for operation and maintenance of the common facilities, the association will levy assessments against your lot/unit. If you are delinquent in the payment of assessments, the association may enforce payment through court proceedings or your lot/unit may be liened and sold through the exercise of a power of sale. The anticipated income and expenses of the association, including the amount that you may expect to pay through assessments, are outlined in the proposed budget. Ask to see a copy of the budget if the subdivider has not already made it available for your examination.

A homeowner association provides a vehicle for the ownership and use of recreational and other common facilities which were designed to attract you to buy in this subdivision. The association also provides a means to accomplish architectural control and to provide a base for homeowner interaction on a variety of issues. The purchaser of an interest in a common-interest subdivision should contemplate active participation in the affairs of the association. He or she should be willing to serve on the board of directors or on committees created by the

board. In short, "they" in a common-interest subdivision is "you". Unless you serve as a member of the governing board or on a committee appointed by the board, your control of the operation of the common areas and facilities is limited to your vote as a member of the association. There are actions that can be taken by the governing body without a vote of the members of the association which can have a significant impact upon the quality of life for association members.

Until there is a sufficient number of purchasers of lots or units in a common-interest subdivision to elect a majority of the governing body, it is likely that the subdivider will effectively control the affairs of the association. It is frequently necessary and equitable that the subdivider do so during the early stages of development. It is vitally important to the owners of individual subdivision interests that the transition from subdivider to resident-owner control be accomplished in an orderly manner and in a spirit of cooperation.

When contemplating the purchase of a dwelling in a common-interest subdivision, you should consider factors beyond the attractiveness of the dwelling units themselves. Study the governing instruments and give careful thought to whether you will be able to exist happily in an atmosphere of cooperative living where the interests of the group must be taken into account as well as the interests of the individual. Remember that managing a common-interest subdivision is very much like governing a small community . . . the management can serve you well, but you will have to work for its success.



SPECIAL NOTES   (Continued)

5. THE SUBDIVIDER HAS STATED THAT HE WILL PROVIDE YOU WITH A COPY
   OF THE ARTICLES OF INCORPORATION, RESTRICTIONS AND BYLAWS, ONLY
   BY POSTING THEM IN A PROMINENT LOCATION IN THE SALES OFFICE.
   THESE DOCUMENTS CONTAIN NUMEROUS MATERIAL PROVISIONS THAT SUB-
   STANTIALLY AFFECT AND CONTROL YOUR RIGHTS, PRIVILEGES, USE, OB-
   LIGATIONS AND COSTS OF MAINTENANCE AND OPERATION.   YOU SHOULD
   READ AND UNDERSTAND THESE DOCUMENTS BEFORE YOU OBLIGATE YOURSELF
   TO PURCHASE A UNIT.

6. THE SUBDIVIDER STATED HE WILL NOT FURNISH THE CURRENT BOARD OF
   OFFICERS OF THE HOMEOWNERS ASSOCIATION THE BUILDING PLANS TO IN-
   CLUDE DIAGRAMS OF LOCATION OF MAJOR COMPONENTS, UTILITIES, AND
   RELATED DATA.

   THESE ITEMS WILL BE IMPORTANT TO THE BOARD OF OFFICERS OR THOSE
   WHO WILL MANAGE OR REPAIR COMMON FACILITIES IN THIS SUBDIVISION.

7. SINCE THE SUBDIVIDER STATES HE WILL NOT FURNISH THE SAID PLANS
   AND DIAGRAMS, THE BOARD OF OFFICERS OF THE HOMEOWNER ASSOCIATION
   SHOULD TRY TO OBTAIN THEM FROM THE CONTRACTORS WHO WORKED ON THE
   PROJECT OR FROM THE COUNTY/CITY BUILDING DEPARTMENT.

8. THE SUBDIVIDER HAS AN INTEREST IN THE ESCROW COMPANY WHICH IS TO
   BE USED IN CONNECTION WITH THE SALE OR LEASE OF UNITS IN THIS
   SUBDIVISION.   THE NATURE OF THE SUBDIVIDER'S INTEREST IS SET
   FORTH IN THE ESCROW INSTRUCTIONS WHICH ARE TO BE USED.

9. IF YOU ACQUIRE TWO OR MORE UNITS YOU MAY BE REQUIRED TO OBTAIN
   AN AMENDED PUBLIC REPORT BEFORE OFFERING TWO OR MORE OF THE
   UNITS FOR SALE TO OTHERS.   IF YOU INTEND TO SELL TWO OR MORE
   UNITS OR LEASE THEM FOR MORE THAN ONE YEAR, YOU ARE REQUIRED TO
   OBTAIN AN AMENDED SUBDIVISION PUBLIC REPORT BEFORE YOU CAN OFFER
   THE UNITS FOR SALE OR LEASE.

10. WARNING:   WHEN YOU SELL YOUR LEASEHOLD INTEREST IN A CONDOMINIUM
    UNIT TO SOMEONE ELSE, YOU MUST GIVE THAT PERSON A COPY OF THE
    DECLARATION OF RESTRICTIONS, THE ARTICLES OF INCORPORATION AND
    OF THE BYLAWS.   IF YOU FORGET TO DO THIS, IT MAY COST YOU A PEN-
    ALTY OF $500.00 -- PLUS ATTORNEY'S FEES PLUS DAMAGES.   (SEE
    CIVIL CODE SECTION 1360.)

INTERESTS TO BE CONVEYED:  You will receive a lease to a specified
unit, together with an undivided fractional leasehold interest as a
tenant in common in the common area together with a membership in
"The Gables-Huntington Beach Homeowners Association" and rights to
use the common area.

LOCATION AND SIZE:  This subdivision is located at Edinger Avenue
and Monterey Street within the city limits of Huntington Beach and
is serviced by the usual city amenities.

This is a single phase project which consists of approximately 7.605
acres on which twenty buildings containing 80 units and 100 garage
spaces, 100 driveway spaces, 59 on-street guest spaces and 53 off-
street guest space will be constructed, together with common facili-
ties consisting of a swimming pool, jacuzzi, cabana, volley ball
court, landscaped areas and private drives which will be constructed

MANAGEMENT AND OPERATION:  The Gables-Huntington Beach Homeowners
Association, which you must join, manages and operates the common
areas in accordance with the Restrictions, Articles of Incorporation
and the Bylaws.

MAINTENANCE AND OPERATIONAL EXPENSES:  The subdivider has submitted
a budget for the maintenance and operation of the common areas and
for long-term reserves.  This budget was reviewed by the Department
of Real Estate.  You should obtain a copy of this budget from the
subdivider.  Under this budget, the monthly assessment against each
subdivision unit is $65.74 of which $13.84 is a monthly contribution
to long-term reserves and is not to be used to pay for current oper-
ating expenses.

> IF THE BUDGET FURNISHED TO YOU BY THE DEVELOPER
> SHOWS A MONTHLY ASSESSMENT FIGURE WHICH VARIES
> 10% OF MORE FROM THE ASSESSMENT AMOUNT SHOWN IN
> THIS PUBLIC REPORT, YOU SHOULD CONTACT THE DE-
> PARTMENT OF REAL ESTATE BEFORE ENTERING INTO AN
> AGREEMENT TO PURCHASE.

The association may increase or decrease assessments at any time in
accordance with the procedure prescribed in the CC&R's or Bylaws.
In considering the advisability of a decrease (or a smaller in-
crease) in assessments, care should be taken not to eliminate
amounts attributable to reserves for replacement or major mainte-
nance.

> EXPENSES OF OPERATION ARE DIFFICULT TO PREDICT
> ACCURATELY AND EVEN IF ACCURATELY ESTIMATED
> INITIALLY, MOST EXPENSES INCREASE WITH THE AGE
> OF FACILITIES AND WITH INCREASES IN THE COST OF
> LIVING.

Monthly assessments will commence on all units during the month fol-
lowing the closing of the first sale of a unit.  From that time, the
subdivider is required to pay the association a monthly assessment
for each unit which he owns, which has not been leased.

The remedies available to the association against owners who are de-
linquent in the payment of assessments are set forth in the CC&R's.
These remedies are available against the subdivider as well as
against other owners.

MAINTENANCE AND OPERATIONAL EXPENSES:   (Continued)

The subdivider has posted a bond as partial security for his obliga-
tion to pay these assessments.  The governing body of the associa-
tion should assure itself that the subdivider has satisfied his ob-
ligations to the association with respect to the payment of assess-
ments before agreeing to a release or exoneration of the security.

EASEMENTS:  Easements for utilities and other purposes are shown on
the Title Report and Subdivision Map recorded in the Office of the
Orange County Recorder, Book 456 of Miscellaneous Maps, Pages 48
thru 49 and Condominium Plan recorded in Book 13358, Page 1193.

TITLE:  Title is vested in Houser Bros. Co., a limited partnership,
subject to:

A Ground Lease dated October 19, 1979, executed by Houser Bros. Co.,
a limited partnership, as Lessor, and Robert P. Warmington, a
married man, as Lessee, a memorandum of which was recorded October
22, 1979 in Book 13362, Page 320 of Official Records and re-recorded
December 6, 1979 in Book 13424, Page 499 of Official Records.
Robert P. Warmington in turn has sublet the Ground Lease to Robert
P. Warmington Co., a California corporation, the applicant.

RESTRICTIONS:  This subdivision is subject to Restrictions recorded
in the Office of the Orange County Recorder, Book 13618, Page 982.

> FOR INFORMATION AS TO YOUR OBLIGATIONS AND RIGHTS,
> YOU SHOULD READ THE RESTRICTIONS.  THE SUBDIVIDER
> SHOULD MAKE THEM AVAILABLE TO YOU.

WATER RIGHTS:  You will not own the water rights under your land be-
low a depth of 500 feet.  These have been dedicated to the City of
Huntington Beach.  The right to surface entry has been waived.

USES AND ZONING:  Property to the south is zoned MH (Mobilehome).

TAXES:  The maximum amount of any tax on real property that can be
collected annually by counties is 1% of the full cash value of the
property.  With the addition of interest and redemption charges on
any indebtedness, approved by voters prior to July 1, 1978, the to-
tal property tax rate in most counties is approximately 1.25% of the
full cash value.

For the purchaser of a lot or unit in this subdivision, the "full
cash value" of the lot or unit will be the valuation, as reflected
on the tax roll, determined by the county assessor as of the date of
purchase of the lot or unit or as of the date of completion of an
improvement on the lot if that occurs after the date of purchase.

CONDITIONS OF SALE:  If your purchase involves financing, a form of deed of trust and note will be used.  These documents may contain the following provisions:

An Acceleration Clause.  This means that if you sell the property or default in your payment, the lender may declare the entire unpaid loan balance immediately due and payable.

A Late Charge.  This means that if you are late in making your monthly payment you may have to pay an additional amount as a penalty.

A Prepayment Penalty.  This means that if you wish to pay off your loan in whole or in part before it is due, you may be required to pay an additional amount as a penalty in accordance with the terms of the loan.

Transfer of the interest to the purchaser may be by a lease.  Your rights and responsibilities are governed by the specific terms of such lease.  You should read the entire lease.

The lease includes the following provision:

If you do not pay your installment on time, you may lose your property and all money you have paid in.

BEFORE SIGNING, YOU SHOULD READ AND THOROUGHLY UNDERSTAND ALL LOAN DOCUMENTS.

PURCHASE MONEY HANDLING:  The subdivider must impound all funds received from you in an escrow depository until legal title is delivered to you.  (Refer to Sections 11013 and 11013.2(a) of the Business and Professions Code.)

If the escrow has not closed on your unit within one (1) year of the date of your deposit receipt, you may request return of your deposit.

FILLED GROUND:  The common area contains filled ground varying to a maximum depth of 3.6 feet.  These soils are to be properly compacted for the intended use under the supervision of a State licensed engineer.

FLOOD AND DRAINAGE:  Orange County advises as follows:

The land lies within the historic floodplain of the Santa Ana River where the risk of floodng has been substantially reduced since the completion of Prado Dam and Reservoir by the U. S. Corps of Engineers in 1941.  The largest flood-producing storm since completion of the dam occurred in 1969, an event which to the best information now available can be expected to recur on an average of 25 to 30 years over a long period of time.  Peak discharges in 1969 seriously damaged the Santa Ana River levees within Orange County, but no outbreak occurred and the levees have now been repaired.

<u>FLOOD AND DRAINAGE</u>:  (Continued)

In a report entitled "Flood Insurance Study Huntington Beach, California" prepared by the U. S. Army Corps of Engineers for the Federal Insurance Administration, the Corps of Engineers indicates that the occurrence of a storm with a recurrence interval approximating 50 years or greater will generate flows exceeding the present capacity of the Santa Ana River Channel.  Such flows will cause breaching of the river levee at indeterminable locations followed by widespread flooding of the Talbert Valley.  It is believed impossible to predict in advance where such break-out might occur or what particular area would subsequently be inundated.

The Corps of Engineers recently completed a study proposing modification to the Santa Ana River in the County of Orange, to Prado Dam, and the construction of an additional dam in the Mentone area of San Bernardino County.  However, it is impossible to predict when project authorization will be made by Congress, the appropriation approved, and the actual construction accomplished.

It is the opinion of this office that upon completion of the construction in accordance with the proposed grading, storm drain and street plans, the improvements on the building pads will be protected from flooding from storms occurring on an average of once every 50 years or less.

<u>PUBLIC TRANSPORTATION</u>:  Bus service is available adjacent to the site on Edinger Avenue.

<u>SCHOOLS</u>:  The Ocean View School District provides the following information:

| School | Distance |
|---|---|
| Haven View School<br>16081 Waikiki Lane<br>Huntington Beach, California | 1/4 mile |

The projected enrollment from the proposed tract is twenty K-8 grade students.  The capacity of Haven View School is 510 and enrollment is 447.

The District shall provide free transportation to and from school for pupils who live beyond the minimum distances, as measured by the shortest route.  Where hazardous conditions exist, transportation may be provided for students who live less than the minimum distances.  Handicapped children will be provided transportation as needed.

The Huntington Beach Union High School District provides the following information:

| School | Distance |
|---|---|
| Marina High School<br>15871 Springdale | 1.7 miles |

SCHOOLS:  (Continued)

Transportation is furnished at District expense to students living a
distance fo more than three miles from their schools.

Huntington Beach Union High School District has six comprehensive
high schools with a total capacity of 16,367 and a current enroll-
ment of 21,346.  This student overload is being accommodated by tem-
porary structures and extended day schedule.  The impact of con-
tinued enrollment growth will accelerate the extension of the school
day and the continued implementation of other housing alternatives
until a new high school is constructed.  Any new housing must be
considered carefully based on the availability of schools in
Huntington Beach Union High School District.

   NOTE:   This school information was correct as of the
           date of this report.  Purchasers may contact
           the local school district for current infor-
           mation on school assignments, facilities and
           bus service.

For further information in regard to this subdivision, you may call
(213) 620-2700 or examine the documents at the Department of Real
Estate, 107 South Broadway, Suite 7001, Los Angeles, CA  90012.

Branch :ORI,User :DDEL                    Comment:                              Station Id :DMCL

RECOR...
REQUESTED BY

5002                          BK 13690PG 1091

WHEN RECORDED RETURN TO:

$6.00
C1

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

MESERVE, MUMPER & HUGHES
5190 Campus Drive
Newport Beach, CA  92660

-3 00 P.M.   AUG  5 '80

Attn:  Frank D. Stiefel

LEE A. BRANCH, County Recorder

FIRST AMENDMENT TO
DECLARATION OF COVENANTS, CONDITIONS & RESTRICTIONS
FOR THE HUNTINGTON BEACH GABLES

Tract 10542
City of Huntington Beach
Orange County, California

This First Amendment to Declaration of Covenants,
Conditions and Restrictions is made this 3₀ day of
JULY     , 1980, by THE ROBERT P. WARMINGTON CO., a
California corporation ("RPW Co."), HOUSER BROS. CO., a
California limited partnership ("Houser") and ROBERT P.
WARMINGTON, an individual ("Warmington").

WHEREAS, Houser is the owner of the fee interest in the
following described property (the "Property"):

Lots 1 and 2 of Tract No. 10542 as per map recorded in
Book 456, Pages 49 and 50, inclusive, of Miscellaneous
Maps, in the Office of the County Recorder of Orange
County, California; and

WHEREAS, Warmington is the lessee of the Property; and

WHEREAS, RPW Co. is the sublessee and the developer of
the improvements constructed on the Property, and is also the
Declarant as that term is defined in that certain Declaration
of Covenants, Conditions and Restrictions recorded May 28,
1980, in Book 13618, pages 982 through 1030, inclusive,
Official Records of Orange County, California (the
"Declaration"); and

WHEREAS, Warmington and RPW Co. intend to assign, convey
and set over to ultimate consumers, various leasehold and fee
interests in the Condominium Units, as defined in the
Declaration, which collectively shall constitute the
Condominium to be acquired by said consumer; and

WHEREAS, Warmington, Houser and RPW Co. desire to clarify
the Declaration to insure that the interests so conveyed are
inseparable and constitute the entire interest to be conveyed,
which clarification requires an amendment to the Declaration.

1

Branch :ORI,User :DDEL                    Comment:                    Station Id :DMCL



BK 13690 PG 1092

**NOW THEREFORE**, Warmington, Houser and RPW Co., do hereby declare as follows:

1.   That collectively they are the sole owners of the Property as their interests may appear.

2.   That they retain the exclusive and sole right to amend the Declaration.

3.   That, in furtherance of the foregoing, the following amendments are hereby made to the Declaration:

     (a)  Section 1.13 of the Declaration is hereby amended to read as follows:

"**Section 1.13**.  **Owner/Ownership**: "Owner" shall mean and refer to the record assignee of the rights of Declarant and/or a lessee or sublessee to a Unit, but excluding those having such interest merely as security for the performance of an obligation.  Such term shall also mean and refer to the Lessee or Lessor if either succeeds to the rights of said assignee through termination of any lease or sublease or by any other means.  All references herein to "ownership" shall mean and refer to the ownership of a leasehold or subleasehold interest."

     (b)  Section 2.2 of the Declaration is hereby amended to read as follows:

"**Section 2.2**.  **Elements of Condominium**:  Each Condominium shall be comprised of the following elements:

     (a)  A leasehold or sub-leasehold estate in a Unit as shown and defined on the Condominium Plan, excepting that portion of a Unit consisting of buildings and other improvements;

     (b)  An undivided one-eightieth (1/80) interest in a leasehold or subleasehold interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion of the Common Area consisting of building and other improvements;

     (c)  An exclusive easement on the leasehold or sub-leasehold estate referred to in item (b) above, which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit, excepting that portion consisting of buildings and other improvements;

2

000290

Branch :ORI,User :DDEL                    Comment:                                   Station Id :DMCL



BK 13690PG 1093

(d)  A non-exclusive easement and right to use the leasehold or sub-leasehold estate referred to in item (b) above except the Restricted Common Area, excepting that portion consisting of buildings and other improvements;

(e)  A fee interest in that portion of a Unit, as shown and defined on the Condominium Plan, which consists of buildings and other improvements;

(f)  An undivided one eightieth (1/80) fee interest in and to those portions of the Common Area, as shown and defined on the Condominium Plan which consist of buildings and other improvements;

(g)  An exclusive easement on the fee estate referred to in item (f) above which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit which consist of buildings and other improvements;

(h)  A non-exclusive easement and right to use the fee estate referred to in item (f) above except the Restricted Common Area, which consist of buildings and improvements; and

(i)  A membership in the Association."

4.  All other terms and conditions of the Declaration shall reamin in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment as of the day first above written, its effective date.

THE ROBERT P. WARMINGTON CO., a California corporation

By _____

HOUSER BROS., CO., a California Limited Partnership
By _____
By _____

_____
Robert P. Warmington

3

Branch :ORI,User :DDEL                    Comment:                              Station Id :DMCL

**.44S CA (8-74)**
(Corporation)

**TITLE INSURANCE AND TRUST**
A TICOR COMPANY

**BK 13690 PG 1094**

STATE OF CALIFORNIA
COUNTY OF _Orange_ } SS.
On _July 31, 1980_ before me, the undersigned, a Notary Public in and for said
State, personally appeared _Roger L. Carroll_
known to me to be the _Vice_ President, and
~~known to me to be~~ _____ Secretary
of the corporation that executed the within Instrument,
known to me to be the persons who executed the within
Instrument on behalf of the corporation therein named, and
acknowledged to me that such corporation executed the
within instrument pursuant to its by-laws or a resolution of
its board of directors.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

---

**TO 1944 CA (8-74)**
(Partnership)

**TITLE INSURANCE AND TRUST**
A TICOR COMPANY

STATE OF CALIFORNIA
COUNTY OF _ORANGE_ } SS.
On _AUGUST 4 1980_
before me, the undersigned, a Notary Public in and for said State, personally appeared
_CLIFFORD C. HOUSER AND VERNON F. HOUSER_
_____, known to me
to be _BOTH_ of the partners of the partnership
that executed the within instrument, and acknowledged to me
that such partnership executed the same.

WITNESS my hand and official seal.

Signature _G. McDonald_

OFFICIAL SEAL
G. McDONALD
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires June 15, 1984

(This area for official notarial seal)

---

**TO 1944 CA (8-74)**
(Individual)

**TITLE INSURANCE AND TRUST**
A TICOR COMPANY

STATE OF CALIFORNIA
COUNTY OF _Orange_ } SS.
On _July 31, 1980_ before me, the undersigned, a Notary Public in and for said
State, personally appeared _Robert F. Warmington_
_____, known to me
to be the person____ whose name _is_ subscribed
to the within instrument and acknowledged that _he_
executed the same.

WITNESS my hand and official seal.

Signature _Pearl L. Hunt_

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

### RANCHO DEL REY OVER 55 MANUFACTURED HOME PARK
*Qualifying and Occupancy Requirements 2018*
*16222 Monterey Lane*
*Huntington Beach 92649*
*THANYA*
*5 STAR HOMES SP#1231425*
*714 308-7735*

## General Information:

•   *EACH, Prospective Resident must submit a park application with attached proof of income prior to opening escrow*

•   *Person/s to occupy the home must verify income of $3786 per month, renting of property or sub-letting is not allowed*

•   *Park may ONLY use income of owner/occupant 55 or over, registered on Title and sign Lease Agreement*

•   *Income verification MUST be in the form of COPIES; direct deposit, bank statements showing SOURCE, social security, retirement, pay stubs, etc. Funds/savings in an account is NOT income*

•   *Applicants MAY submit Income Tax Statement for alternate verification of income if more convenient*

•   *One owner 55 or over, others over 18, residents MUST park cars in driveway, guest parking for guests only. Extra resident's cars may park on Monterey Lane*

•   *Park allows two small indoor pets, dogs 22 lbs OR 15 in" at shoulder*

•   *Dogs must be on leash at all times, no solid fencing, privacy screens are allowed. May have doggie gate if home has a porch, with owner present. Dogs are not allowed to be left in any enclosed area, not allowed on common area or in the park office. Dogs may be walked thru the park on leash*

•   *Monthly space rent $1325 for 2018, plus utilities. Space rent increases each year between 2%-4%. Lease is for one year*

•   *Mandatory meeting with manager with ALL occupants for Rules and Regulations for final park approval, week day appointments only*

•   *Obtaining a loan or paying cash for a home is separate from qualifying for park income requirement. If obtaining a loan, the amount of the mortgage payment will be added to the park's income requirement * 5 Star Home Lending Richard Herr/714 891-6383 *Request a park and loan application* Thanya 714 308-7735*

RANCHO DEL REY MOBILE HOME ESTATES
16222 MONTEREY LANE
HUNTINGTON BEACH, CALIFORNIA

MOBILEHOME RENTAL AGREEMENT

INFORMATION SUMMARY

The following information from the Agreement is summarized for the convenience of both of us.  Please see the applicable paragraphs in this Agreement for the complete information which controls if there is a difference between it and the following:

A.   Space Number:  *376*

B.   Resident(s):  *Laura Ryan, Lisa T. Ryan, Patricia C. Ryan*

C.   Date this Agreement Begins and Length/Term of this Agreement:

   (1)   On a month-to-month basis beginning _____, 20___.

   _____
   (Resident's Initials)

   (2)   For a period of *12* months beginning _____*1-1-*, 20*06*   *LJR*
         (not to exceed 12 months).
   _____
   (Resident's Initials)

D.   Monthly Rent:  Your beginning monthly rent will be $*696.00*_____.  The amount of your rent may be increased at any time on ninety (90) days' notice.  The increase in rent may be made because of such things as new or increased operating expenses we may incur, increases in what we believe to be a fair market rent for your mobilehome space or any other reason we believe, in our sole discretion, to be appropriate so long as the rent increase is not otherwise specifically prohibited by law.   *LJR*
   _____
   (Resident's Initials)

E.   Utilities:

   (1)   Utilities You Pay to Park:

         Electricity, Water and Natural Gas on submetered basis.

         Sewer and Trash at an initial charge of $*10.27*_____ /month for Sewer and
         $*12.33*_____ /month for Trash.

   (2)   Utilities Included in Your Rent:  None.

   (3)   Utilities you purchase from Others:  Telephone and cable TV.

   Utilities may be increased or changed as allowed by this Agreement.

J:\001510\003\RENTAGE\Rental Agreement revised for 2006.doc     Rancho Del Rey                                          Page 1
© 2006 Alston & Giezer, LLP   All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

000294

F.    Other Charges:

    (1)    Late Payment:        $20.00

    (2)    Returned Checks: $20.00

    (3)    Security Deposit: $ _0_

    (4)    RV/Extra Vehicles:    $ 60 00         per month per vehicle

    (5)    Government Fees:    As charged to Park

    (6)    Extra Persons Charge:    $ _0_         per day per person

    (7)    Guest Cottage Charge:    $ 50 00         per day.

    (8)    Other: _____

These above charges may be increased or changed as allowed by this Agreement.

G.    Facilities to be provided by the Park for Residents during the term of this Agreement, unless changed: The streets, R.V. storage area (subject to separate agreement and charge), 2 clubhouses, 2 swimming pools and spas, 4 saunas, 3 laundry rooms and 2 guest cottages which are available for residents to rent to house their short-term guests.

H.    Services to be provided by the Park for Residents during the term of this Agreement, unless changed: Park Manager, electricity, natural gas, water, sewer, and trash.

Facilities and services may be decreased or changed as allowed by this Agreement. The cost of providing and maintaining facilities and services may increase your rent per the provisions of this Agreement.

## DISCLOSURES AND IMPORTANT ACKNOWLEDGMENTS

OUR MOBILEHOME PARK IS AN OLDER PARK; THEREFORE, THE UTILITY SYSTEMS (ELECTRIC, NATURAL GAS, SEWER AND WATER) DO NOT WORK AS WELL AS NEWER SYSTEMS AND DO PERIODICALLY BREAK DOWN OR PROVIDE LESS-THAN-ADEQUATE SERVICE.

YOU ACKNOWLEDGE THAT WE HAVE OFFERED YOU THE OPTION OF HAVING THIS AGREEMENT HAVE A TERM OF 12 MONTHS OR LESS, INCLUDING A MONTH-TO-MONTH TENANCY. YOU ALSO ACKNOWLEDGE THAT YOU HAVE VOLUNTARILY SELECTED THE TERM LISTED AT PARAGRAPH C ON PAGE 1 OF THIS AGREEMENT.

RESOLUTION OF DISPUTES: YOU AGREE THAT THOSE DISPUTES WHICH ARE SPECIFIED IN PARAGRAPH 6 OF THIS AGREEMENT, WHICH IS ENTITLED "RESOLUTION OF DISPUTES," WILL BE DETERMINED BY SUBMISSION TO WHAT IS KNOWN AS A REFERENCE AND NOT BY WHAT MOST PEOPLE CONSIDER THE NORMAL LAWSUIT OR BY RESORTING TO NORMAL COURT PROCESSES. BY SIGNING THIS AGREEMENT, BOTH YOU AND WE ARE GIVING UP OUR CONSTITUTIONAL RIGHT TO HAVE THOSE DISPUTES DECIDED IN A COURT OF LAW BEFORE A JURY AND, INSTEAD, ARE ACCEPTING THE USE OF THE REFERENCE PROCEDURES.

J:\00161\003\RENTAGE\Rental Agreement revised for 2006.doc.    Rancho Del Rey        Page 2
© 2006 Alston & Gieser, LLP    All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

I AGREE I HAVE READ AND UNDERSTOOD THE ABOVE DISCLOSURES AND ACKNOWL-
EDGMENTS.
SIGNATURE: _____    DATE: 1/10/2006

SIGNATURE: _____    DATE: 1/20/2006

SIGNATURE: _____    DATE: _____

1.      **TERM:**  You are renting the Space listed at paragraph A on page 1 of this Agreement in Rancho Del Rey Mobile Home Estates located in Huntington Beach, California (the Park).  This Agreement is for the term and begins on the date listed at paragraph C on page 1 of this Agreement unless it terminates earlier per the termination paragraphs of this Agreement.

2.      **RENT:**  Your rent will be the amount listed at paragraph D on page 1 of this Agreement and it may be increased as permitted by that paragraph.

3.      **UTILITIES:**

        3.1      You are responsible for making sure that your mobilehome and all appliances and equipment in your mobilehome are compatible with the electric service and capacity now available, and we shall have no liability or responsibility to you if the available electrical supply is incompatible.  You agree not to install electrical appliances which will use energy in excess of the electrical service and capacity available to your Space.  You also agree that you will not attempt to increase the electrical service and capacity of your Space by installing any device or doing anything else unless you have received our prior written permission.  If your electrical demands exceed the capability of the Park, or are otherwise inconsistent with the capabilities of the Park, you will be deemed to be in default under your rental or lease agreement and you will, in addition to all of the remedies available to us, reimburse us within ten (10) working days for any costs and expense we incur in remedying the situation created by your use of excessive or inconsistent electrical demands.  You also agree to indemnify and hold us harmless against any loss, cost, damage, expense (including attorneys' fees and costs) or other liability incurred or imposed by reason of any injury to persons or property which occurs as a result of your electrical demands.  As the amount of such electrical service and capacity will affect your ability to have electrical appliances, you must determine in advance from us in writing the amount of electrical service and capacity available to your Space and insure that your mobilehome and all appliances and equipment in it are compatible with that service and capacity.

        3.2      We will provide, submeter and separately charge you monthly for gas, water, and electricity.  Any increases in the cost of utilities submetered will be immediately passed-through and paid by you.  We will initially charge you monthly the amount indicated in paragraph B(1) on page 1 of this Agreement for trash and sewer.  Any increase in the cost of utilities separately charged will be immediately passed-through and paid by you, at such prevailing rates regulated and authorized by the utility companies.  You will contract with and pay directly for all other utilities you require.

4.      **RENT AND OTHER CHARGES:**

        4.1      If you do not maintain your mobilehome or Space as required by this Agreement and the Rules and Regulations, we may give you a notice requiring you to comply in fourteen (14) days.  If you do not, we may charge you a reasonable fee for having this work done.  In accordance with Civil Code §798.36 Management may after providing you with 14 days notice charge you with the reasonable costs for removal personal property and storage thereof for a period of sixty-day period prior to the ultimate disposal of unclaimed property.

        4.2      If you store or park a vehicle, trailer or something else in the recreational vehicle storage lot or other extra vehicle parking area, you will be charged the amount indicated in paragraph F(4) on page 2 of this Agreement.  This charge may be increased at any time on sixty (60) days' written notice.  This storage or parking will be per the terms

J:\00\1510\MGT\RENTAGR\Rental Agreement revised for 2006.doc         Rancho Del Rey                                         Page 3
© 2006 Aitken & Giesen, LLP   All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

REGARDING A REFERENCE ALSO APPLIES TO MEDIATION.

6.5    WE MAY, AT OUR OPTION, ELECT TO HAVE ANY OF THE FOLLOWING DISPUTES SUBMITTED TO A REFERENCE OR TO BE TRIED IN THE COURTS UNDER NORMAL PROCEDURES TO A JUDGE SITTING ALONE WITHOUT A JURY: (a) TERMINATION OF TENANCY DUE TO A FAILURE TO PAY RENT OR OTHER CHARGES OR FOR ANY OF THE OTHER REASONS TENANCY MAY BE TERMINATED PER CIVIL CODE §798.56(a) THROUGH (e), INCLUSIVE; (b) FORCIBLE DETAINER; (c) INJUNCTIVE RELIEF PER [i] CODE OF CIVIL PROCEDURE §527.6, [ii] CIVIL CODE §798.87(b), OR [iii] CIVIL CODE §798.88; (d) PAYMENT OF THE MAINTENANCE FEE PROVIDED FOR IN CIVIL CODE §798.36; (e) CONDEMNATION OR A CHANGE OF THE USE OF THE PARK AS PROVIDED IN CIVIL CODE §798.56(f) AND (g); AND (f) TO PRESERVE ANY EQUITABLE RIGHTS RELATING TO ANY DISPUTE.    MEDIATION WILL NOT OCCUR FOR THE DISPUTES IN THIS PARAGRAPH 6.5.

6.6    "DISPUTE" INCLUDES NOT ONLY DISPUTES YOU MAY HAVE WITH US BUT ALSO DISPUTES AGAINST ANY OF OUR EMPLOYEES, CONTRACTORS, AGENTS OR ANY OTHER PERSON WHO YOU CONTEND HAS INJURED YOU WHEN YOU ALSO CONTEND THAT WE ARE RESPONSIBLE FOR THAT OTHER PERSON'S ACTS OR FAILURE TO ACT.

6.7    BEFORE THE LAWSUIT REQUIRED TO BEGIN A REFERENCE MAY BE FILED, MEDIATION MUST BE ATTEMPTED.  THIS IS DONE BY YOU SERVING US AND THE JUDICIAL ARBITRATION AND MEDIATION SERVICE, INC. ("JAMS") WITH A WRITTEN DEMAND OR NOTICE OF INTENTION TO REQUIRE A REFERENCE.

6.8    YOU MUST GIVE US THIS NOTICE NOT LATER THAN ONE (1) YEAR FROM THE DATE YOU OR ANY MEMBER OF YOUR HOUSEHOLD FIRST BECAME AWARE OF (OR REASONABLY SHOULD HAVE BEEN AWARE OF) THE DISPUTE. IF YOU DO NOT GIVE US NOTICE WITHIN THE ONE (1) YEAR TIME PERIOD, YOU AGREE WE WILL NOT BE LIABLE TO YOU FOR ANY INJURY OR DAMAGE YOU OR OTHERS IN YOUR HOUSEHOLD MAY EXPERIENCE AND, THEREFORE, THAT DISPUTE WILL NOT BE SUBJECT TO A REFERENCE OR ANY PROCEEDING IN THE COURTS.    THIS ONE (1) YEAR TIME LIMITATION APPLIES TO BEING ENTITLED TO BOTH MEDIATION AND A REFERENCE.  FOR EXAMPLE, IF THE DATE WHEN YOU FIRST BECAME AWARE OF THE DISPUTE WAS JANUARY 1, 1995, NOTICE OF THE DISPUTE MUST BE GIVEN BY YOU TO US BY DECEMBER 31, 1995 IN ORDER TO HAVE THE DISPUTE MEDIATED AND HAVE A REFERENCE, AND IF NOTICE WAS GIVEN AFTER DECEMBER 31, 1995, NEITHER MEDIATION OR A REFERENCE WOULD OCCUR.

6.9    THE NOTICE REFERRED TO IN PARAGRAPH 6.8 MUST PROVIDE: (i) A DESCRIPTION OF THE DISPUTE, AND (ii) FACTS FROM WHICH THE DISPUTE ARISES INCLUDING WITNESSES, DATES, TIMES AND CIRCUMSTANCES.  IF THE DISPUTE IS NOT RESOLVED IN NINETY (90) DAYS BY MEDIATION, THE DISPUTE

DETERMINED TO BE NECESSARY BY THE MEDIATOR OR REFEREE, THE FAILURE OF ONE OF US TO PAY WILL <u>NOT</u>, HOWEVER, ABATE, STAY, OR SUSPEND THE MEDIATION OR REFERENCE AND THE MEDIATOR OR REFERENCE.

6.14   YOU ACKNOWLEDGE HAVING READ THIS PARAGRAPH 6.   YOU ALSO AGREE THAT THESE PROVISIONS WILL APPLY TO YOU AT ALL TIMES IN THE FUTURE (EVEN THOUGH THAT MAY BE BEYOND THE TERM OF THIS AGREEMENT OR AFTER YOUR TENANCY OR THIS AGREEMENT HAS BEEN TERMINATED OR YOU MOVE FROM THE PARK) UNLESS THESE PROVISIONS ARE ELIMINATED AFTER THE TERM OF THIS AGREEMENT ENDS BY A WRITTEN 60-DAY NOTICE FROM US TO YOU.

6.15   NOTICE: BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING TO HAVE YOUR DISPUTES WITH US DECIDED BY A NEUTRAL REFEREE AS PROVIDED BY CALIFORNIA LAW, AND YOU ARE GIVING UP ALL RIGHTS YOU HAVE TO HAVE THE DISPUTES LITIGATED IN A COURT OR BY A JURY TRIAL. IF YOU REFUSE TO SUBMIT TO A REFERENCE AFTER AGREEING TO THESE PROVISIONS, YOU MAY BE COMPELLED TO A REFERENCE UNDER CALIFORNIA LAW. YOUR AGREEMENT TO THESE PROVISIONS IS VOLUNTARY. YOU HAVE READ AND UNDERSTAND THIS PARAGRAPH 6 AND AGREE TO SUBMIT YOUR DISPUTES TO A "REFERENCE" AS PROVIDED IN THIS PARAGRAPH 6.

BY INITIALING BELOW, YOU ACKNOWLEDGE THE PROVISIONS AND AGREEMENTS IN PARAGRAPH 6 ABOVE.

Initials of Homeowner(s): _____

7.   SALE OF MOBILEHOME: You may sell/transfer your mobilehome per your and our rights and obligations under this Agreement.  You must, however, give us sixty (60) days' written notice of your intent to sell/transfer your mobilehome.  You must also give us written notice at least ten (10) days prior to your execution of any escrow, sale, exchange, transfer or other agreement.  The requirements of this Agreement and this paragraph will apply even if you sell or transfer only a portion of your interest in your mobilehome.

8.   REMOVAL OF MOBILEHOMES UPON SALE TO THIRD PARTIES:

We may, in order to upgrade the quality of the Park, require the removal of mobilehomes from the Spaces upon their sale or transfer to a third party, in accordance with the provisions of the Mobilehome Residency Law and other applicable law.  Any such rights granted us due to amendments, deletions, or modifications of the Mobilehome Residency Law and other applicable law may be enforced by us at our option.

9.   APPROVAL OF PURCHASER AND SUBSEQUENT RESIDENTS:

9.1   If your prospective buyer/transferee intends for the mobilehome to remain in the Park, or the buyer/transferee intends to reside in the Park, the buyer/transferee must do the following before occupying the mobilehome or Space: complete an application for residency, sign the Park's current rental or lease agreement which may be different than this Agreement and be accepted by us.  The rent we are then charging may be increased to any amount we believe appropriate.  We may request a financial statement, credit report, references and other reasonable information we need from any prospective buyer/ transferee. If the buyer/transferee is not approved by us or does not

J:\001510\003\RENTAGR\Rental Agreement revised for 2000.doc      Rancho Del Rey      Page 7
© 2000, Hann & Gieser, LLP   All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

in effect after your breach and abandonment and recover rent as it becomes due, if you have the right to sublet or assign, subject only to reasonable limitations).

14.3   You agree that the amount of our damages against you per the terms of this paragraph 13 may, at our sole option, be determined by paragraph 6 of this Agreement and that the mediation portions of such provisions shall not be applicable.

15.   **INDEMNIFICATION:**  To the fullest extent the law allows, we have no liability to you or anyone else for anything which is not caused by our active negligence or willful acts and you agree to completely release, discharge, indemnify, and hold us free and harmless from all claims for which we are not liable, including providing a defense and the payment of attorneys' fees and costs of an attorney we choose.  You agree to indemnify and hold us harmless from all claims, including providing a defense and the payment of attorneys' fees, and costs of an attorney we choose, which occur because of the negligent or willful conduct of you or others who you invite to be in the Park.  You also agree to indemnify and hold us harmless from all claims you may have of economic loss, diminution in market value, or depreciation of your mobilehome, and other improvements.

16.   **INCORPORATED DOCUMENTS:**  You agree you have received, read and understood a copy of:  This Agreement; the Mobilehome Residency Law which is effective as of January 1st of the year in which you signed this Agreement or signed a document accepting an assignment of this Agreement (which you agree was attached to this Agreement at the time you received it); the Rules and Regulations (including signs posted in the common areas) which you agree are effective immediately; R.V. Storage Agreement; and other: _____
You understand that by signing this Agreement, you are bound by all of the terms and conditions of these documents and signs as they may be revised per this Agreement.

17.   **COMPLIANCE WITH LAW AND RULES AND REGULATIONS:**  You agree to comply with all applicable laws, ordinances, regulations and all terms of this Agreement, the Rules and Regulations, and all terms contained in any document referred to in this Agreement, as they may be changed.

18.   **ZONING, USE PERMIT AND OWNER INFORMATION:**  The zoning under which the Park operates is MHP - Mobilehome Park.  The permits under which the Park operates are not subject to expiration or renewal.  The Park is not located on land which we lease from someone else, but we do have the option to enter into such a lease at any time in the future.  If we exercise this option, we will notify you of the expiration date of the lease.

19.   **TRANSFER OF PARK'S INTEREST:**  If we sell or transfer our interest in the Park to anyone else, we will be automatically relieved of our obligations under this Agreement which occur after the date of the sale/transfer.

20.   **NOTICES:**  All notices required or allowed by this Agreement must be in writing.  Except for notices terminating your tenancy, the service of any other notice on you will be valid if it is personally served on you or mailed to you at your address in the Park by First Class United States Mail, postage prepaid.

21.   **WAIVER:**

21.1   If you fail to meet any of your obligations under this Agreement, a delay or omission by us in exercising any right or remedy we have because of your default will not impair any of our rights or remedies against you, nor will it be considered a waiver by us of any right or remedy.  No waiver by us of our right to enforce any provision of this Agreement after any default on your part will be effective unless it is made in writing and signed by us, nor will it be considered a waiver of our rights to enforce each and every provision of this Agreement upon any further or other default on your part.  Our acceptance of rent will also not be a waiver of any breach by you of any term or provision of this Agreement, including any rule, regulation or other term or provision contained in any document referred to in this Agreement.

21.2   Any delay, omission, or mistake by us in exercising any right to make any of the increases allowed by paragraph 2 of this Agreement or other provisions of this Agreement will not impair any of our rights or be considered to be a waiver by us.  Instead, we may, at any time, correct our delay, omission, or mistake and collect from you the full

28.    **HOLDOVER TENANCY:**  If you continue to live in the Park after the term of this Agreement has expired or it has been terminated (including any extension of the initial term we agree to), and you have not signed a new rental or lease agreement with us, you shall be on a month-to-month tenancy.  During that month-to-month tenancy, you will pay all rent and other charges required by this Agreement and all the terms and provisions of this Agreement, including the "Resolution of Disputes" provisions will continue to apply to you.  We may, however, increase the rent or charges you pay or change any other terms of this Agreement upon ninety (90) days' written notice to you.

29.    **COUNTERPARTS:**  This Agreement may be signed in duplicate copies, each of which shall be considered an original, but all of which taken together will be one and the same document.

30.    **EXHIBITS:**  Each exhibit or other document referred to in this Agreement is attached or enclosed and incorporated in this Agreement by this reference.

31.    **OWNER'S APPROVAL AND OPTIONS:**  All references in this Agreement and documents it refers to that our approval is required or other similar terms indicating our approval must be obtained by you means you must obtain our prior written approval by submitting a written request to us which describes what you want to do.  References in this Agreement that we may, at our option, adjust or increase rents up to or by a certain amount or do anything else at our option, means we have the right, if we wish, to do so.

32.    **STATUTE OF LIMITATION:**  ANY LAWSUIT OR OTHER ACTION AGAINST US MUST BE FILED BY YOU WITH THE COURT NOT LATER THAN ONE (1) YEAR FROM THE DATE YOU OR ANY MEMBER OF YOUR HOUSEHOLD FIRST BECAME AWARE OF (OR REASONABLY SHOULD HAVE BEEN AWARE OF) THE DISPUTE OR CLAIM.  IF YOU DO NOT FILE THE LAWSUIT OR OTHER ACTION AGAINST US WITH THE COURTS WITHIN THIS ONE (1) YEAR TIME PERIOD, YOU WILL HAVE NO RIGHT TO PROSECUTE OR PURSUE THE LAWSUIT OR OTHER ACTION AND YOU AGREE WE WILL NOT BE LIABLE TO YOU FOR ANY OF THE CLAIMS, DAMAGES, OR OTHER ALLEGATIONS AND RELIEF ASSERTED IN THE LAWSUIT OR OTHER ACTION.  IF THE RESOLUTION OF DISPUTES PROVISIONS OF THIS AGREEMENT ARE APPLICABLE TO YOUR DISPUTE OR CLAIM, THEY, TOO, WILL BE SUBJECT TO THE LIMITATIONS OF THIS PARAGRAPH.

33.    **USE AND OCCUPANCY:**  Unless otherwise specifically allowed by this Agreement or other documents it incorporates, at all times one of the persons listed on the last page of this Agreement, or on the document assigning this Agreement, must be the "registered" owner of the mobilehome, and that person must regularly occupy the mobilehome, and it must also be their primary residence.  When title to the Mobilehome is held in a trust which has been established for the purpose of estate planning one of the person(s) who established the trust must reside in the home on full time basis.  You agree that the information you have provided to us regarding you, other members of your household and your mobilehome is true and correct.  You also agree to promptly notify us, in writing, of any change in this information.  Please refer to the Rules and Regulations for further clarification of your use and occupancy of the mobilehome and Space.  We, or someone we designate, may conduct a mobilehome sales or rental business in the Park.

34.    **INSPECTION:**  By signing this Agreement, or accepting an assignment of it, you agree you have carefully inspected the Space you are renting and all of our services, improvements and facilities and you have found them to be safe and as represented by us to you, either orally or in writing, and you accept them as they are.  To the extent that you have found such services, improvements and facilities not to be safe or not to be as represented by us to you, either orally or in writing, you nonetheless agree to accept them as they are.

35.    **ENFORCEMENT OF CONDITIONS OF TENANCY:**  You agree that the enforcement of this Agreement, the Rules and Regulations and the provisions of other documents and conditions of tenancy are a private matter between us and each resident on an individual basis and the enforcement or the lack thereof by us with regard to any resident shall not result in any damage or injury to, or claim by you.  You also agree that you are not a third party beneficiary of any agreement between us and any other residents or person(s)

36.    **MAINTENANCE OF IMPROVEMENTS:**  You are financially responsible to maintain, repair and replace as reasonably necessary your mobilehome and all equipment, structures and other improvements to your mobilehome

J:\00161\DOCS\RENTAGR\Rental Agreement revised for 2006.doc                    Rancho Del Rey
© 2006  Hhart & Glaser, LLP   All rights reserved.  Reproduction is illegal.  (May be reproduced by Park named above.)

Page 13

and Space in good and safe condition and repair and in an aesthetically pleasing condition at all times. This includes, without limitation, the following: the mobilehome, accessory equipment and structures, fences, driveways (except park installed driveways), trees (except trees which present a specific health and safety violation or hazard), banks, and landscaping. Regardless of whether you are the original homeowner/occupant of the Space or of your mobilehome or purchased your mobilehome from a former homeowner who previously lived at your Space, this paragraph applies to you and you are responsible even for those things which were installed by a former owner or resident of the mobilehome or Space, us, or any prior or future owner of the Park. You are financially responsible for insuring at all times that the mobilehome, Space, and their improvements complies with all local, state and federal laws and regulations. (The only exception is any of the Park's utility systems on your Space which are owned by us or a utility company so we or they are responsible for them and park installed driveways.) The preceding includes without limitation such things as: insuring that the drainage is sufficient to prevent water from accumulating on your Space or under your mobilehome or running off so it adversely affects other Spaces or our property; that all required setbacks and lot line requirements are met and there are no encroachments on other property; that all building code and other similar requirements are met; and that all building and other permits have been obtained.

37.     **CONDEMNATION:** If any portion of the Park is taken under the power of eminent domain, or is sold to any authority having the power of eminent domain, either under threat of condemnation or while condemnation proceedings are pending or the utility systems or other portions of the Park are or will be affected by the condemnation to the point where, in our sole opinion, it is not economically desirable to continue operations, we will have the right to terminate this Agreement as of the date the condemning authority takes possession. The entire amount of any award for taking of all or any part of a space or the Park or for any other reason under the power of eminent domain shall be our property whether such award shall be made as compensation for diminution in value of the leasehold or for taking the fee or the taking of any interest you may have because of this Agreement or any other lease or rental agreement you have with us or your tenancy in the Park. Nothing contained in this paragraph, however, will preclude you from obtaining any award from the condemning authority to you for the loss of or damage to your mobilehome or other removable personal property.

38.     **TIME OF ESSENCE:** Time is of the essence in this Agreement and each and every provision thereof.

39.     **MODIFICATION FOR LENDER:** If, in connection with our obtaining financing where we use the Park as security, a lender requests reasonable changes in this Agreement as a condition to such financing, you agree to promptly consent to those changes if they do not increase your obligations under this Agreement or materially adversely affect you.

40.     **ESTOPPEL CERTIFICATE:** You shall, on our request, sign and deliver to us a written statement certifying that (a) this Agreement is unmodified and in full force and effect (or if there have been modifications that they are in full force and effect as modified; (b) the dates to which the rent and other charges have been paid; (c) the term of this Agreement; (d) the amount of any security deposit; (e) we are not in default nor have we been in the past under any provision of this Agreement or any laws or regulations affecting our obligations; and (f) any other matters as may be reasonably requested by us. Any such statement may be relied on by us or any person we give it to. You will be in default of this Agreement if you fail to do the above within 10 days of your receipt of a written request for such statement. We may, at our option, treat your failure to sign and deliver this document to us as your agreement to the information we've requested and that we are not in default nor have we been in the past under any provision of this Agreement or any laws, or regulations affecting our obligations to you.

41.     **LIMITATION OF OUR LIABILITY:** In consideration of this Agreement, you agree that, in the event of any actual or alleged failure, breach or default by us under this Agreement or otherwise, your sole and exclusive remedy shall be against the value of our mobilehome park which is identified in this Agreement as the Park (including any insurance policies of us or the Park), not other property or assets which we may own.

42.     **MEGAN'S LAW:** The California Department of Justice, sheriff's departments, other local law enforcement authorities maintain for public access a database of the locations of persons required to register as an identified sex offender. The database is updated on a quarterly basis and a source of information about the presence of these individuals is any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line

J:\001510\003\RENTAGR\Rental Agreement revised for 2006.doc          Rancho Del Rey

© 2006 Alston & Grissom, LLP   All rights reserved.   Reproduction is illegal.  (May be reproduced by Park named above.)

Page 14

through which inquires about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. There is a charge for "900" calls information regarding neighborhoods is not available through the "900" telephone service.

**The phone numbers to call for information:  (714) 960-8843**

Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.Meganslaw.ca.gov . Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. *Executed, Huntington Bch, 1:22pm, on 11-16-18*

43.    EXECUTION:  The Agreement is signed by you at _1:22_ o'clock _p_.m., on _1-16-_ 2006 This Agreement is signed by us on _____ 1-16_, 20_06_

**NOTE TO NEW RESIDENTS:  THIS AGREEMENT WILL NOT BE EFFECTIVE UNLESS YOU COMPLETE THE PURCHASE OF THE MOBILEHOME AND IF YOU DO NOT, YOU WILL HAVE NO RIGHTS OF TENANCY IN THE PARK.**

**PLEASE READ CAREFULLY BEFORE SIGNING THIS AGREEMENT AND ALL OF THE OTHER DOCUMENTS REFERRED TO IN THIS AGREEMENT.**

**I/WE AGREE THAT WE HAVE READ, UNDERSTOOD AND VOLUNTARILY AGREED TO ALL OF THE PROVISIONS OF THIS AGREEMENT WHICH CONSIST OF THIS MOBILEHOME RENTAL AGREEMENT AND THE OTHER DOCUMENTS REFERRED TO IN IT.**

**I/WE HAVE BEEN ADVISED BY REPRESENTATIVES OF THE PARK THAT I/WE HAVE THE RIGHT TO CONSULT A LAWYER AND GET THE LAWYER'S ADVICE BEFORE SIGNING THIS AGREEMENT.**

[ ]    RESIDENT(S)' INITIALS:  _____  I/WE HAVE TAKEN THIS AGREEMENT TO A LAWYER BEFORE SIGNING IT.  THE LAWYER IS:

Name:    _____

Address:    _____

Telephone:    _____

[ ]    RESIDENT(S)' INITIALS: _CR_  I/WE HAVE DECLINED TO SEEK LEGAL COUNSEL BEFORE SIGNING THIS AGREEMENT.

NOTICE:  BY SIGNING THIS AGREEMENT, YOU ARE AGREEING THAT THOSE DISPUTES WHICH ARE SPECIFIED IN PARAGRAPH 6 OF THIS AGREEMENT, WHICH IS ENTITLED "RESOLUTION OF DISPUTES" WILL BE DECIDED BY A NEUTRAL REFEREE AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE PARAGRAPH 6 OF THIS AGREEMENT.

HOMEOWNER(s) SIGNATURE(s)            RANCHO DEL REY MOBILE HOME ESTATES

                                                                        By: _Wilda mashihishi_

                                                                        _J Sandcastle Co LLC_   11/16/18

C:\904510\-003\RENTAGR\Rental Agreement revised for 2006.doc        Rancho Del Rey                              Page 15
© 2006 Allison & Glover, LLP   All rights reserved. Reproduction is illegal. (May be reproduced by Park named above.)

_11/16/2018_

11/18/18

Person(s) in addition to the above who
will reside in the above Space for whom
applications for residency were submitted
and approved.

_Sandcastle Co. LLC_

_Jeanne L. Callan_

_John L. Callan, Member_

_John L. Callan_

000303

## HUNTINGTON BEACH CITY ORDINANCE

### 17.38.020 Temporary Rental of Mobile Home

**D.** Hereafter, "renter" refers to the person or persons who pay rent to the mobile home owner in exchange for the temporary right to reside within the subject mobile home (and the related right to occupy the space upon which the mobile home is located), but not as a co-occupant with the owner. Any renter of a mobile home must meet all the rules of occupancy of the mobile home park in which the mobile home is located with the exception of any rule which directly or indirectly prohibits, in conflict with this section, the temporary rental of a mobile home for up to one year

Prior to the mobile home renter's taking occupancy, that renter and the mobile home owner shall provide the park owner with:

1. A copy of the mobile home rental agreement;
2. The true names of all intended occupants and their residential phone number;
3. Business phone numbers for all adult occupants who have such numbers; and
4. An agreement signed by all adult occupants, which reads as follows:

**E.** Such temporary rentals authorized by this chapter may not exceed 12 months in any two-year period subject to renewal because of continued hardship. **(3277-5/95)**

I have received copies of the lease between the park owner and the homeowner for Space # **376** and current park rules.

I have read those documents with care. I believe I understand them. I believe that I qualify for occupancy under those rules and the master lease (except for provisions prohibiting subleasing). I agree to abide by those Park Rules and to meet all obligations of that master lease which are relevant to an occupant. I understand that the park owner may directly enforce the within agreement against me without giving up any rights against the mobile home owner.

Sincerely,

*Jamie L Gallian* 11/16/18

Jamie L Gallian

*RANCHO DEL REY OVER 55 MANUFACTURED HOME PARK*
*Qualifying and Occupancy Requirements 2018*
*16222 Monterey Lane*
*Huntington Beach 92649*
*THANYA*
*5 STAR HOMES SP#1231425*
*714 308-7735*

## General Information:

• **EACH, Prospective Resident must submit a park application with attached proof of income prior to opening escrow**

• **Person/s to occupy the home must verify income of $3786 per month, renting of property or sub-letting is not allowed**

• *Park may ONLY use income of owner/occupant 55 or over, registered on* **Title** *and sign Lease Agreement*

• *Income verification MUST be in the form of COPIES; direct deposit, bank statements showing SOURCE, social security, retirement, pay stubs, etc. Funds/savings in an account is NOT income*

• *Applicants MAY submit Income Tax Statement for alternate verification of income if more convenient*

• *One owner 55 or over, others over 18, residents MUST park cars in driveway, guest parking for guests only. Extra resident's cars may park on Monterey Lane*

• *Park allows two small indoor pets, dogs 22 lbs OR 15 in" at shoulder*

• *Dogs must be on leash at all times, no solid fencing, privacy screens are allowed. May have doggie gate if home has a porch, with owner present. Dogs are not allowed to be left in any enclosed area, not allowed on common area or in the park office. Dogs may be walked thru the park on leash*

• *Monthly space rent $1325 for 2018, plus utilities. Space rent increases each year between 2%-4%. Lease is for one year*

• *Mandatory meeting with manager with ALL occupants for Rules and Regulations for final park approval, week day appointments only*

• *Obtaining a loan or paying cash for a home is separate from qualifying for* **park** *income requirement. If obtaining a loan, the amount of the mortgage payment* **will** *be added to the park's income requirement * 5 Star Home Lending Richard Herr/714 891-6383 *Request a park and loan application* Thanya 714 308-7735*

EJ-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 170746 | FOR COURT USE ONLY |
|---|---|---|

NAME: VIVIENNE J ALSTON
FIRM NAME: ALSTON ALSTON & DIEBOLD
STREET ADDRESS: 27201 PUERTA REAL, STE 300
CITY: MISSION VIEJO    STATE: CA    ZIP CODE: 92691
TELEPHONE NO.: 714 556 9400    FAX NO: 714 556 9500
E-MAIL ADDRESS: valston@aadlawyers.com
ATTORNEY FOR (name): HOUSER BROS. CO.

[x] ORIGINAL JUDGMENT CREDITOR    [ ] ASSIGNEE OF RECORD

Pursuant to California Government Code § 68150d), the Clerk of the Court hereby certifies this document accurately reflects the official court record. The electronic signature and seal on this document have the same validity and legal force and effect as an original clerk's signature and court seal. California Government Code § 68150(g).

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA ANA CA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

Plaintiff: HOUSER BROS. CO.
Defendant: LISA RYAN

CASE NUMBER: 30 2018 01013582 CLUDCJC

|  | EXECUTION (Money Judgment) | | [x] | Limited Civil Case (including Small Claims) |
|---|---|---|---|---|
| WRIT OF | [x] POSSESSION OF | [ ] Personal Property | | |
|  | [ ] SALE | [x] Real Property | [ ] | Unlimited Civil Case (including Family and Probate) |

1. **To the Sheriff or Marshal of the County of:** ORANGE COUNTY
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.
2. **To any registered process server:** You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.040.
3. (Name): HOUSER BROS. CO., a California general partnership dba RANCHO DEL REY MOBILE HOME ESTATES
   is the [x] original judgment creditor [ ] assignee of record  whose address is shown on this form above the court's name.
4. Judgment debtor (name, type of legal entity if not a natural person, and last known address):

   ┌─────────────────────────────┐
   │ LISA RYAN                   │
   │ 16222 Monterey Lane, Space 376 │
   │ Huntington Beach, California 92649 │
   │                             │
   │                             │
   │ [ ] Additional judgment debtors on next page │
   └─────────────────────────────┘

5. Judgment entered on (date): 10- 18 -2018  ꙗ
6. [ ] Judgment renewed on (dates):

7. Notice of sale under this writ
   a. [x] has not been requested.
   b. [ ] has been requested (see next page).
8. [ ] Joint debtor information on next page.

[SEAL]

9. [x] See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale.
10. [ ] This writ is issued on a sister-state judgment.
    For items 11–17, see form MC-012 and form MC-013-INFO

| 11. Total judgment (as entered or renewed) | $ |
| 12. Costs after judgment (CCP 685.090) | $ |
| 13. Subtotal (add 11 and 12) | $ |
| 14. Credits to principal (after credit to interest) | $ |
| 15. Principal remaining due (subtract 14 from 13) | $ |
| 16. Accrued interest remaining due per CCP 685.050(b) (not on GC 6103.5 fees) | $ |
| 17. Fee for issuance of writ | $25.00 |
| 18. Total (add 15, 16, and 17) | $25.00 |

19. Levying officer:
    a. Add daily interest from date of writ (at the legal rate on 15) (not on GC 6103.5 fees) . . . . . . . . . . . . . . . . $
    b. Pay directly to court costs included in 11 and 17 (GC 6103.5, 68637; CCP 699.520(i)) . . . . . . . . . . . . . . . . $
20. [ ] The amounts called for in items 11–19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

David H. Yamasaki, Clerk of the Court
Issued on (date): 11/14/2018    Clerk, by _____ , Deputy

D.Cuevas

NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
EJ-130 [Rev. January 1, 2010]

**WRIT OF EXECUTION**

Code of Civil Procedure, §§ 699.520, 712.010, 715.010
Government Code, § 6103.5
www.courts.ca.gov

EJ-130

| Plaintiff: HOUSER BROS. CO. | CASE NUMBER: |
|---|---|
| Defendant: LISA RYAN | 30 2018 01013582 CLUDCJC |

21. ☐ Additional judgment debtor (name, type of legal entity
    if not a natural person, and last known address):

22. ☐ Notice of sale has been requested by (name and address):

23. ☐ Joint debtor was declared bound by the judgment (CCP 989–994)
    a. on (date):                                          a. on (date):
    b. name, type of legal entity if not a natural person, and    b. name, type of legal entity if not a natural person, and
       last known address of joint debtor:                    last known address of joint debtor:

    c. ☐ Additional costs against certain joint debtors are itemized:   ☐ Below   ☐ On Attachment 23c

24. ☒ (Writ of Possession or Writ of Sale) Judgment was entered for the following:
    a. ☒ Possession of real property: The complaint was filed on (date): 8-21-2018
       (Check (1) or (2). Check (3) if applicable. Complete (4) if (2) or (3) have been checked.)

       (1) ☒ The Prejudgment Claim of Right to Possession was served in compliance with CCP 415.46. The judgment includes
              all tenants, subtenants, named claimants, and other occupants of the premises.

       (2) ☐ The Prejudgment Claim of Right to Possession was NOT served in compliance with CCP 415.46.

       (3) ☐ The unlawful detainer resulted from a foreclosure sale of a rental housing unit. (An occupant not named in the
              judgment may file a Claim of Right to Possession at any time up to and including the time the levying officer returns
              to effect eviction, regardless of whether a Prejudgment Claim of Right to Possession was served.) (See CCP 415.46
              and 1174.3(a)(2).)

       (4) If the unlawful detainer resulted from a foreclosure (item 24a(3)), or if the Prejudgment Claim of Right to Possession was
           not served in compliance with CCP 415.46 (item 24a(2)), answer the following:

           (a) The daily rental value on the date the complaint was filed was  $36.20

           (b) The court will hear objections to enforcement of the judgment under CCP 1174.3 on the following dates (specify):

    b. ☐ Possession of personal property.
          ☐ If delivery cannot be had, then for the value (itemize in 24e) specified in the judgment or supplemental order.
    c. ☐ Sale of personal property.
    d. ☐ Sale of real property.
    e. The property is described:   ☒ Below   ☐ On Attachment 24e

       16222 Monterey Lane, Space 376, Huntington Beach, California 92649

EJ-130 [Rev. January 1, 2016]                    **WRIT OF EXECUTION**                    Page 2 of 3

000307

EJ-130

| Plaintiff: HOUSER BROS. CO. | CASE NUMBER: |
|---|---|
| Defendant: LISA RYAN | 30 2018 01013582 CLUDCJC |

**NOTICE TO PERSON SERVED**

WRIT OF EXECUTION OR SALE. Your rights and duties are indicated on the accompanying *Notice of Levy* (form EJ-150).

WRIT OF POSSESSION OF PERSONAL PROPERTY. If the levying officer is not able to take custody of the property, the levying officer will demand that you turn over the property. If custody is not obtained following demand, the judgment may be enforced as a money judgment for the value of the property specified in the judgment or in a supplemental order.

WRIT OF POSSESSION OF REAL PROPERTY. If the premises are not vacated within five days after the date of service on the occupant or, if service is by posting, within five days after service on you, the levying officer will remove the occupants from the real property and place the judgment creditor in possession of the property. Except for a mobile home, personal property remaining on the premises will be sold or otherwise disposed of in accordance with CCP 1174 unless you or the owner of the property pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the premises.

EXCEPTION IF RENTAL HOUSING UNIT WAS FORECLOSED. If the residential property that you are renting was sold in a foreclosure, you have additional time before you must vacate the premises. If you have a lease for a fixed term, such as for a year, you may remain in the property until the term is up. If you have a periodic lease or tenancy, such as from month-to-month, you may remain in the property for 90 days after receiving a notice to quit. A blank form *Claim of Right to Possession and Notice of Hearing* (form CP10) accompanies this writ. You may claim your right to remain on the property by filling it out and giving it to the sheriff or levying officer.

EXCEPTION IF YOU WERE NOT SERVED WITH A FORM CALLED PREJUDGMENT CLAIM OF RIGHT TO POSSESSION. If you were not named in the judgment for possession and you occupied the premises on the date on which the unlawful detainer case was filed, you may object to the enforcement of the judgment against you. You must complete the form *Claim of Right to Possession and Notice of Hearing* (form CP10) and give it to the sheriff or levying officer. A blank form accompanies this writ. You have this right whether or not the property you are renting was sold in a foreclosure.

EJ-130 [Rev. January 1, 2016]          **WRIT OF EXECUTION**                    Page 3 of 3

*Rancho Del Rey*

**MOBILE HOME ESTATES**
16222 MONTEREY LANE
HUNTINGTON BEACH, CA 92649
PHONE: (714) 846-1429

11/20/2018

**TO:**
Gallian, Jamie
5782 Pinon Drive
Huntington Beach, CA 92649

*Rancho Del Rey*

**MOBILE HOME ESTATES**
16222 MONTEREY LANE
HUNTINGTON BEACH, CA 92649
PHONE: (714) 846-1429

11/20/2018

**TO:**
Gallian, Jamie
5782 Pinon Drive
Huntington Beach, CA 92649





# PROSPECTIVE PURCHASER EVALUATION — NOTICE TO PROSPECTIVE PURCHASER

**Western Manufactured Housing Communities Association**

### Rancho Del Rey Mobile Home Estates
(Park Name)

TO:  Prospective Homeowner:  _____ Jamie Gallian _____
(Prospective Homeowner Name)

On 11/19/2018 _____, management received all of the information necessary to determine if you will be
(Date)

acceptable as a homeowner in the park, located at 16222 Monterey Ln. SPC 376 Huntington Beach, CA 92649 _____.
(space and address)

This is to advise prospective homeowner that the prospective homeowner is:

_____**APPROVED FOR RESIDENCY IN THE PARK, provided that the prospective homeowner complies with the requirements of Section 798.75 of the California Civil Code and executes a rental agreement with management.** In the event the prospective homeowner fails to execute the rental agreement, that person shall have no rights of tenancy. The prospective homeowner should contact management immediately to sign a rental agreement. You are also advised that any escrow, sale or transfer agreement for the mobilehome must contain a copy of either a fully executed rental agreement or a statement signed by both the management and you that the parties have agreed to the terms and conditions of the rental agreement.

_X_ **DISAPPROVED**, because:

_____You have not demonstrated that you have the financial ability to pay the rent and charges of the park.

_____Management has determined that, based on your prior tenancies, you will not comply with the rules and regulations of the park.

_____Management has determined that you cannot comply with the requirements of the park's rules and regulations limiting residency to housing for older persons.

_X_ This disapproval includes the following reason(s):

_X_ Consumer Credit Report (check appropriate box below):

_X_ Information contained in a consumer credit report obtained from the consumer credit reporting agency named in the paragraph on page two of this form.

_____A consumer credit report containing insufficient information obtained from the consumer credit reporting agency named in the paragraph on page two of this form.

You have a right to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report from the reporting agency if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to the consumer reporting agency.



Printed Using formsRus.com On-Line Forms Software

Copyright © 2014. WMA.

**From:** **Jamie Gallian** jamiegallian@gmail.com
**Subject:** Notice of Exparte hearing Tuesday December 4, 2018, 8:30am, C-61
**Date:** December 3, 2018 at 10:56 AM
**To:** valston@aadlawyers.com, Gordon G. May (ggm@ggb-law.com) ggm@ggb-Law.com
**Cc:** Steve Fink sfink@stevefinklaw.com, Jamie Gallian jamiegallian@gmail.com

Please take notice Jamie Gallian will appear exparte on December 4, 2018, C-61, 8:30a. 700 Civic Center Drive West
Santa Ana, CA 92701.

1. Ms. Gallian will ask the court to Order the Notice to Vacate mute. Ms. Gallian's attorney Mr. Steven Fink has contacted
Attorney Vivienne Alston mutiple times to recall the Notice of Vacate
with no response to attorney Fink or Ms. Gallian.

Ms. Gallian contacted the Sheriff apartment at 9.50am and was told to contact the Court for an Order.

2. Ms. Gallian will ask this same court to dismiss Mr. Gordon UD action of October 17, 2018.
Ms. Gallian has asked Mr. Gordon May multiple times to withdraw and dismiss the fraudulent UD filed in this same court.
Ms. Gallian moved out of The Gables complying with the the landlord BS Investors LP, first Notice of Cure or Quit posted
on August 29, 2018.  Ms. Gallian new tenancy outside The Gables began on September 11, 2018.  Mr. May's UD action is
frivolous and its only purpose was to harass Ms. Gallian, unlawfully attempt eviction against a protected party under
temporary restraining order Gallian v Jasso, C-66, and delay the civil trial set on calendar 12-10-18.

Pleading papers will be served under separate cover.

Sincerely,

Jamie Gallian

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Gordon G. May (SBN 167112)<br>GRANT, GENOVESE & BARATTA, LLP<br>2030 Main Street, Suite 1600<br>Irvine, CA 92614 | |

TELEPHONE NO. (949) 660-1600     FAX NO. (Optional) (949) 660-6060
E-MAIL ADDRESS (Optional): ggm@ggb-law.com
ATTORNEY FOR (Name): Plaintiff BS INVESTORS, LP

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/03/2018** at 12:09:00 PM

Clerk of the Superior Court
By Anh Dang, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS 700 Civic Center Drive West
MAILING ADDRESS
CITY AND ZIP CODE Santa Ana, CA 92701
BRANCH NAME CENTRAL JUSTICE CENTER

PLAINTIFF/PETITIONER: BS INVESTORS, LP, a California limited partnership

DEFENDANT/RESPONDENT: JAMIE L GALLIAN, an individual

| REQUEST FOR DISMISSAL | CASE NUMBER<br>30-2018-01024401-CU-UD-CJC |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1 TO THE CLERK: Please dismiss this action as follows:
 a (1) ☐ With prejudice   (2) ☒ Without prejudice
 b (1) ☒ Complaint   (2) ☐ Petition
    (3) ☐ Cross-complaint filed by (name):                    on (date):
    (4) ☐ Cross-complaint filed by (name):                    on (date):
    (5) ☐ Entire action of all parties and all causes of action
    (6) ☐ Other (specify):*

2. (Complete in all cases except family law cases.)
 The court ☐ did ☒ did not waive court fees and costs for a party in this case   (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed.)

Date: December 3, 2018

Gordon G. May
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
▶ _____ (SIGNATURE)
Attorney or party without attorney for

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

☒ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given **
 Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
▶ _____ (SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j)

☐ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-Complainant

(To be completed by clerk)
 4 ☒ Dismissal entered as requested on (date): 12/03/2018
 5 ☐ Dismissal entered on (date):                    as to only (name):
 6 ☐ Dismissal not entered as requested for the following reasons (specify):

 7 a. ☐ Attorney or party without attorney notified on (date):
    b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
       ☐ a copy to be conformed   ☐ means to return conformed copy

Date: 12/03/2018   Clerk, by _____ , Deputy
DAVID H. YAMASAKI, Clerk of the Court                    A. DANG

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 (Rev. Jan. 1, 2013)

**REQUEST FOR DISMISSAL**

Legal
Solutions
Plus

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c), Cal. Rules of Court, rule 3.1390
Page 1 of 2

CIV-110

| PLAINTIFF/PETITIONER: BS INVESTORS, LP, a California limited partnership | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: JAMIE L GALLIAN, an individual | 30-2018-01024401-CU-UD-CJC |

## COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name)*:

2. The person named in item 1 is *(check one below)*:
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one)*: ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____                    ▶ _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)         (SIGNATURE)

CIV-110 [Rev. January 1, 2013]                    **REQUEST FOR DISMISSAL**                    Page 2 of 2

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2030 Main Street, Suite 1600, Irvine CA 92614.

On December 3, 2018, I served the foregoing document described as **REQUEST FOR DISMISSAL** on the following person(s) in the manner indicated:

Jamie L. Gallian, an individual                    Defendant
5782 Pinon Drive
Huntington Beach, CA 92649
Telephone No. : (714) 321-3449

[ X ]   (BY MAIL) I am familiar with the practice of Grant, Genovese & Baratta, LLP for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Grant, Genovese & Baratta, LLP, Irvine, California, following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on December 3, 2018, at Irvine, California.

_____
Helena Coyle

| TO (Name and Address):<br>Lisa Ryan<br><br>16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 | LEVYING OFFICER (Name and Address):<br>Orange County Sheriff's Office<br>Sheriff's Civil Division<br>Suite 2<br>909 N. Main Street<br>Santa Ana, CA 92701 |
|---|---|
| NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:<br>Orange County Superior Court<br>700 Civic Center Drive West<br>Santa Ana, CA 92701<br>Central Justice Center | (714) 569-3700<br>Fax: (714) 569-2368<br><br>California Relay Service Number<br>(800) 735-2929 TDD or 711 |
| PLAINTIFF:<br>Houser Bros Co<br>DEFENDANT:<br>Lisa Ryan | COURT CASE NO.:<br>30 2018 01013582 CLUDCJC |
| **Notice to Vacate** | LEVYING OFFICER FILE NO.:<br>2018517508 |

By virtue of the Writ of Execution for Possession/Real Property (eviction), issued out of the above court, you are hereby ordered to vacate the premises described on the writ.

| **Eviction Address:** | **16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649** |
|---|---|

Final notice is hereby given that possession of the property must be turned over to the landlord on or before:

| Final notice is hereby given that possession of the property must be turned over to the landlord on or before: | **Monday, December 03, 2018 6:01 AM** |
|---|---|

Should you fail to vacate the premises within the allotted time, I will immediately enforce the writ by removing you from the premises. All personal property upon the premises at the time will be turned over to the landlord, who must return said personal property to you upon your payment of the reasonable cost incurred by the landlord in storing the property from the date of eviction to the date of payment. If the property is stored on the landlord's premises, the reasonable cost of storage is the fair rental value of the space necessary for the time of storage. If you do not pay the reasonable storage costs and take possession within fifteen (15) days, the landlord may either sell your property at a public sale and keep from the proceeds of the sale the costs of storage and of the sale (1988 CCC), or, if the property is valued at less than $700.00, the landlord may dispose of your property or retain it for his own use. (715.010(b)(3), 1174 CCP)

If you claim a right of possession of the premises that accrued prior to the commencement of this action, or if you were in possession of the premises on the date of the filing of the action and you are not named on the writ, complete and file the attached Claim of Right of Possession form with this office. No claim of right to possession can be filed if box 24a(1) located on the back of the writ is checked.



Sandra Hutchens
Sheriff-Coroner

By: _____
        Sheriff's Authorized Agent

CPM Form 8.32
11/30/2009 (Revised)

Original

926549-225876

Jaine Gallia
16222 Monterey In. Space 376
Huntington Beach, CA 92649

SANTA ANA CA 926
12 DEC 2018 PM 3 L

Happy Holidays

USA FIRST CLASS FOREVER

ELAINE B. ALSTON
VIVIENNE J. ALSTON
DONALD A. DIEBOLD

ALSTON, ALSTON & DIEBOLD

TELEPHONE (714) 556-9400
FACSIMILE (714) 556-9500

27201 PUERTA REAL
SUITE 300
MISSION VIEJO, CALIFORNIA 92691

OUR FILE NO: ___1510._____

December 10, 2018

## FIVE (5) DAY DEMAND
## FOR SURRENDER OF POSSESSION OF SITE

To:    Jamie Gallian and All Unlawful Occupants and Persons in Possession Without a Signed Rental
Agreement ("Occupants"):

NOTICE IS HEREBY GIVEN that management of the mobilehome park commonly known as:

Rancho Del Rey
16222 Monterey Lane
Huntington Beach, CA 92649
(referred to as "Park" herein)

HEREBY DEMANDS that the Occupants named above, and each of them, quit the premises in the Park and
surrender possession thereof commonly described as:

Space 376
(referred to as "site" herein)

WITHIN FIVE (5) DAYS FROM AND AFTER SERVICE OF THIS NOTICE, and that said surrender of the
mobilehome site be made to the park manager(s), who is authorized to receive the same on behalf of the
management.

Civil Code Section 798.75 authorizes forcible detainer proceedings against any occupant of a mobilehome park
who does not have rights of tenancy and is not otherwise entitled to occupy the premises, upon failure of the
occupants to quit the premises within five (5) days after service of a demand for surrender of the site.

This notice is served with reference to the following facts, inter alia, upon which said demand is now hereby made:

That you have actual and physical possession of the site, without permission from park management, and without
right or authority under a rental agreement or otherwise. Based upon the foregoing facts, management is authorized
to pursue its legal remedies to obtain possession of the site from all such Occupants having no right of tenancy or
possession.

J Gallian
and All Unlawful Occupants
December 10, 2018
Page 2

THIS NOTICE IS INTENDED AS A FIVE (5) DAY DEMAND TO SURRENDER POSSESSION AND NOTICE TO QUIT AS PER <u>CIVIL CODE</u> SECTION 798.75.  SHOULD YOU FAIL TO QUIT AND SURRENDER POSSESSION AS HEREBY DEMANDED, LEGAL PROCEEDINGS SHALL BE INSTITUTED FOR RESTITUTION OF POSSESSION OF THE PREMISES, REASONABLE RENTAL VALUE, DAMAGES INCIDENTAL TO OCCUPANTS WRONGFUL UNLAWFUL OCCUPATION OF THE SITE, AND ATTORNEYS' FEES AND COSTS, AND STATUTORY DAMAGES.

ALSTON, ALSTON & DIEBOLD

Dated:  December 10, 2018

By: _____
VIVIENNE J. ALSTON
Authorized Agent for Owner

cc:     Client
        Park Manager



STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY             GAVIN NEWSOM, Governor
**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
DIVISION OF CODES AND STANDARDS



# Title Search

Date Printed:  Aug 11, 2021

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |
| Manufactured Date: | 05/29/2014 | Last ILT  Amount: | |
| Registration Exp: | | Date ILT Fees Paid: | |
| First Sold On: | 07/28/2014 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Registered Owner:

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

| | |
|---|---|
| **Last Title Date:** | 08/03/2021 |
| **Last Reg Card:** | 08/03/2021 |
| **Sale/Transfer Info:** | Price $.00 Transferred on 02/25/2021 |

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649
Situs County:  ORANGE

Legal Owner:

J-PAD LLC
21742 ANZA AVE
TORRANCE, CA 90503

| | |
|---|---|
| **Lien Perfected On:** | 01/14/19 15:22:00 |

Title Searches:

JANINE JASSO
PO BOX 370161
EL PASO, TX 79937

| | |
|---|---|
| **Title File No:** | LBM1081 |

JAMIE GALLIAN
16222 MONTEREY LANE SPACE 376
HUNTINGTN BCH, CA 92649

| | |
|---|---|
| **Title File No:** | LBM1081 |

JAMIE GALLIAN
16222 MONTEREY LANE SPACE 376
HUNTINGTN BCH, CA 92649

| | |
|---|---|
| **Title File No:** | LBM1081 |

Tax Map - myFirstAm                                                    https://www.myfirstam.com/Polygon/MapSearch



## my FirstAm®   **Tax Map**              **16222 Monterey Ln #376, Huntington Beach, CA 92649**



**Tax Map**                  **16222 Monterey Ln #376, Huntington Beach, CA 92649**

This report is only for the myFirstAm user who applied for it. No one else can rely on it. As a myFirstAm user, you already agreed to our disclaimer regarding third party property information accuracy. You can view it here: www.myfirstam.com/Security/ShowEULA. ©2005-2019 First American Financial Corporation and/or its affiliates. All rights reserved.

1 of 1                                                                                    , 1:14 PM

000322

From: **Cruz, Sylvia@HCD** Sylvia.Cruz@hcd.ca.gov
Subject: Title Search - LBM1081
Date: January 18, 2019 at 8:17 AM
To: Jamie Gallian jamiegallian@gmail.com

Hello Ms. Gallian,

Here is the transfer information you can use to show the unit has been transferred until the original Title goes out from our Sacramento District Office.

Sylvia

STATE OF CALIFORNIA - BUSINESS. CONSUMER SERVICES. AND HOUSING                    GAVIN NEWSOM. Governor

From: **Cruz, Sylvia@HCD** Sylvia.Cruz@hcd.ca.gov 📎
Subject: Title Search - LBM1081
Date: January 18, 2019 at 8:17 AM
To: Jamie Gallian jamiegallian@gmail.com



Hello Ms. Gallian,

Here is the transfer information you can use to show the unit has been transferred until the original Title goes out from our Sacramento District Office.

Sylvia

STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES, AND HOUSING                    GAVIN NEWSOM, Governor
**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
DIVISION OF CODES AND STANDARDS



### Title Search

Date Printed:  Jan 18, 2019

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |
| Manufactured Date: | 05/29/2014 | Last ILT  Amount: | |
| Registration Exp: | | Date ILT Fees Paid: | |
| First Sold On: | 07/28/2014 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Registered Owner:

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

| Last Title Date: | 09/10/2014 |
|---|---|
| Last Reg Card: | Pending Reg Card |
| Sale/Transfer Info: | Price $175,000.00 Transferred on 11/01/2018 |

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649
Situs County:  ORANGE

**\*\*\*END OF TITLE SEARCH\*\*\***

STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES, AND HOUSING                    GAVIN NEWSOM, Governor

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
DIVISION OF CODES AND STANDARDS



## Title Search

Date Printed:  Jan 18, 2019

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |
| Manufactured Date: | 05/29/2014 | Last ILT Amount: | |
| Registration Exp: | | Date ILT Fees Paid: | |
| First Sold On: | 07/28/2014 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Registered Owner:

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

| | |
|---|---|
| **Last Title Date:** | 09/10/2014 |
| **Last Reg Card:** | Pending Reg Card |
| **Sale/Transfer Info:** | Price $175,000.00 Transferred on 11/01/2018 |

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649
Situs County:  ORANGE

***END OF TITLE SEARCH***

| TO (Name and Address): | LEVYING OFFICER (Name and Address): |
|---|---|
| Lisa Ryan<br><br>16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 | Orange County Sheriff's Office<br>Sheriff's Civil Division<br>Suite 2<br>909 N. Main Street<br>Santa Ana, CA 92701 |
| NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:<br>Orange County Superior Court<br>700 Civic Center Drive West<br>Santa Ana, CA 92701<br>Central Justice Center | (714) 569-3700<br>Fax: (714) 569-2368<br><br>California Relay Service Number<br>(800) 735-2929 TDD or 711 |
| PLAINTIFF:<br>Houser Bros Co<br>DEFENDANT:<br>Lisa Ryan | COURT CASE NO.:<br><br>30 2018 01013582 CLUDCJC |
| **Notice to Vacate** | LEVYING OFFICER FILE NO.:<br><br>2018517508 |

By virtue of the Writ of Execution for Possession/Real Property (eviction), issued out of the above court, you are hereby ordered to vacate the premises described on the writ.

| **Eviction Address:** | 16222 Monterey Lane Space 376<br>Huntington Beach, CA 92649 |
|---|---|

Final notice is hereby given that possession of the property must be turned over to the landlord on or before:

| Final notice is hereby given that possession of the property must be turned over to the landlord on or before: | **Sunday, January 20, 2019 6:01 AM** |
|---|---|

Should you fail to vacate the premises within the allotted time, I will immediately enforce the writ by removing you from the premises. All personal property upon the premises at the time will be turned over to the landlord, who must return said personal property to you upon your payment of the reasonable cost incurred by the landlord in storing the property from the date of eviction to the date of payment. If the property is stored on the landlord's premises, the reasonable cost of storage is the fair rental value of the space necessary for the time of storage. If you do not pay the reasonable storage costs and take possession within fifteen (15) days, the landlord may either sell your property at a public sale and keep from the proceeds of the sale the costs of storage and of the sale (1988 CCC), or, if the property is valued at less than $700.00, the landlord may dispose of your property or retain it for his own use. (715.010(b)(3), 1174 CCP)

If you claim a right of possession of the premises that accrued prior to the commencement of this action, or if you were in possession of the premises on the date of the filing of the action and are not named on the writ, complete and file the attached Claim of Right of Possession form with this office. No claim of right to possession can be filed if box 24a(1) located on the back of the writ is checked.



**Don Barnes**
**Sheriff-Coroner**

By: _Renee #6146_
         Sheriff Authorized Agent

CPM Form 8.32
11/30/2009 (Revised)

Original



From: nag-dl-mhonlinereports@jdpa.com
Subject: MH Online Value/Price Report Receipt
Date: July 27, 2021 at 8:55 AM
To: jamiegallian@gmail.com

# MH Online Receipt

**Order Information**

**Description:**            Basic Value Report

**Invoice Number:**      448119-VIR

**Billing Information**
Jamie Gallian
16222 Monterey Ln #376
Huntington Beach, CA 92649
jamiegallian@gmail.com
714-321-3449

**Basic Value Report:**      $30.00

**CC Surcharge @ 2%:**        0.60

**Total Amount Charged:**    $30.60(USD)

**Payment Information**

**Date/Time:**            2021-07-27 15:55:06

**Transaction ID:**       6274013055746473204275

**Payment Method:**       Visa XXXX7357

**Transaction Type:**     Purchase

**Merchant Contact Information**

NADAguides.com
Costa Mesa, CA 92626
United States
nag-dl-mhonlinereports@jdpa.com

000327



**J.D. POWER**

### Used Manufactured Home Value Report

Reference Number  448119                    Edition  July-Aug 2021                    Date  07/27/2021

| Year Mfg'd | Manufacturer | Trade Name | State | Region |
|---|---|---|---|---|
| 2014 | SKYLINE | CUSTOM VILLA | CA | PA |

Floor Areas: Triple-Wide

|  | Width | | Length | | Total Value |
|---|---|---|---|---|---|
| Main Floor Area: | 54 | x | 60 | | $171,168.00 |

| | | | |
|---|---|---|---:|
| **1.** | **Base Structure Value** | | **$171,168.00** |
| 2. | State Location Adjustment | x | 107 % |
| 3. | Total Guide Book Retail Value (in average condition) | | $183,149.76 |
| 4. | Condition Adjustment Selected: Good | x | 109 % |
| 5. | Condition Adjusted Value | | $199,633.24 |
| **6.** | **Total Adjusted Value of Home** | | **$199,633.24** |
| 7. | Total Additional Features | + | $10,363.32 |
| **8.** | **Total Adjusted (Retail) Value  of Home and Optional Equipment** | | **$209,996.56** |

Comments: This value report was produced by using NADAguides.com's Manufactured Housing Online Request Form. This is an automated valuation tool that generates value reports based on user-selected home criteria.

The value indication of this value report represents the depreciated replacement cost of the home and added features in retail dollars, and does not include adjustments for land, community "in place location value", or local market comparable sales.

This is not an appraisal form.

Disclaimer
All values and related content contained within this product are the opinions of our editorial staff and may vary from home to home. Valuations will vary depending on market conditions, home condition, specifications or other circumstances that may be particular to a home transaction or parties involved with the transaction. NADAguides values and products may not be copied or reproduced, nor distributed for reasons that may exploit the information content or the company. NADAguides, its subsidiaries and affiliated entities, make no warranty express or implied, including without limitation, any warranty of merchantability or fitness for a particular purpose and they assume no responsibility for the accuracy of the values or other information published herein. NADAguides, its subsidiaries and affiliated entities, will not be liable for any special, incidental or consequential damages resulting from any use of this value report, including, without limitation, lost profits. No part of this report may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording or otherwise without prior written permission of NADAguides.

© 2021 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.



**J.D. POWER**

## Used Manufactured Home Value Report

Reference Number 448119          Edition July-Aug 2021          Date 07/27/2021

| Year Mfg'd | Manufacturer | Trade Name | State | Region |
|---|---|---|---|---|
| 2014 | SKYLINE | CUSTOM VILLA | CA | PA |

## ADDITIONAL FEATURES

| Description | Quantity | Unit of Measure | Age | Unit Price | Total Value |
|---|---|---|---|---|---|
| **Components** | | | | | |
| BATH FIXTURES | | | | | |
| Fiberglass Shower Stall | 1 | ea. | 5+ Yrs | $136.00 | $136.00 |
| Garden Tub (Skirted) | 1 | ea. | 5+ Yrs | $226.00 | $226.00 |
| Fiberglass Tub - Combo | 1 | ea. | 5+ Yrs | $191.00 | $191.00 |
| Total BATH FIXTURES | | | | | $553.00 |
| DOORS | | | | | |
| Deluxe House Type Exterior Door | 2 | ea. | 5+ Yrs | $99.00 | $198.00 |
| Total DOORS | | | | | $198.00 |
| ELECTRICAL | | | | | |
| Electric Home - Total | 1 | ea. | 5+ Yrs | $363.00 | $363.00 |
| Total ELECTRICAL | | | | | $363.00 |
| FAN | | | | | |
| Ceiling Paddle Fan | 3 | ea. | 5+ Yrs | $67.00 | $201.00 |
| Total FAN | | | | | $201.00 |
| FLOORING | | | | | |
| T & G Plywood Sub-Flooring | 3240 | sq. ft. | 5+ Yrs | $0.25 | $810.00 |
| Total FLOORING | | | | | $810.00 |
| HOUSE TYPE ROOFING | | | | | |
| Multi-wide | 1 | home | 5+ Yrs | $431.00 | $431.00 |
| Third/Tag-A-Long Section | 1 | home | 5+ Yrs | $123.00 | $123.00 |
| Total HOUSE TYPE ROOFING | | | | | $554.00 |
| HOUSE TYPE SIDING | | | | | |
| Multi-wide | 1 | home | 5+ Yrs | $833.00 | $833.00 |
| Third/Tag-A-Long Section | 1 | home | 5+ Yrs | $343.00 | $343.00 |
| Total HOUSE TYPE SIDING | | | | | $1,176.00 |

© 2021 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.



# J.D. POWER

**Used Manufactured Home Value Report**

Reference Number __448119__        Edition __July-Aug 2021__        Date __07/27/2021__

| Year Mfg'd | Manufacturer | Trade Name | State | Region |
|---|---|---|---|---|
| 2014 | SKYLINE | CUSTOM VILLA | CA | PA |

**Components**

| | | | | | |
|---|---|---|---|---|---|
| INTERIOR | | | | | |
| Cathedral/Vaulted Ceiling Rooms | 6 | ea. | 5+ Yrs | $121.00 | $726.00 |
| Total INTERIOR | | | | | $726.00 |
| KITCHEN APPLIANCES | | | | | |
| 22 CF Refrigerator | 1 | ea. | 5+ Yrs | $485.00 | $485.00 |
| Dishwasher | 1 | ea. | 5+ Yrs | $177.00 | $177.00 |
| Garbage Disposal | 1 | ea. | 5+ Yrs | $80.00 | $80.00 |
| Total KITCHEN APPLIANCES | | | | | $742.00 |
| MISCELLANEOUS | | | | | |
| Clothes Washer | 1 | ea. | 5+ Yrs | $199.00 | $199.00 |
| Clothes Dryer | 1 | ea. | 5+ Yrs | $221.00 | $221.00 |
| Fireplace (Built-In/Permanent) | 1 | ea. | 5+ Yrs | $1,011.00 | $1,011.00 |
| Total MISCELLANEOUS | | | | | $1,431.00 |
| PLUMBING | | | | | |
| Stainless Steel Sink | 1 | ea. | 5+ Yrs | $92.00 | $92.00 |
| Total PLUMBING | | | | | $92.00 |
| WINDOWS | | | | | |
| Skylight | 2 | ea. | 5+ Yrs | $133.00 | $266.00 |
| Total WINDOWS | | | | | $266.00 |
| **Total Components** | | | | | **$7,112.00** |

**Accessories**

| | | | | | |
|---|---|---|---|---|---|
| PORCHES/DECKS (Measure Width x Length Including Carpet & Rails) | | | | | |
| Elevated - Wood w/Rails | 120 | sq. ft. | 5+ Yrs | $6.78 | $813.60 |
| Total PORCHES/DECKS (Measure Width x Length Including Carpet & Rails) | | | | | $813.60 |
| SKIRTING TO 30" HIGH (Measure Around Perimeter) | | | | | |
| Shiplap (Horizontal) | 228 | lin. ft. | 5+ Yrs | $6.24 | $1,422.72 |
| Total SKIRTING TO 30" HIGH (Measure Around Perimeter) | | | | | $1,422.72 |

© 2021 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.


**J.D. POWER**

**Used Manufactured Home Value Report**

Reference Number  448119                    Edition  July-Aug 2021                    Date  07/27/2021

| Year Mfg'd | Manufacturer | Trade Name | State | Region |
|---|---|---|---|---|
| 2014 | SKYLINE | CUSTOM VILLA | CA | PA |

**Accessories**

STEPS

| | | | | | |
|---|---|---|---|---|---|
| Wood - 3 Steps | 5 | ea. | 5+ Yrs | $203.00 | $1,015.00 |
| Total STEPS | | | | | $1,015.00 |

| | |
|---|---|
| **Total Accessories** | **$3,251.32** |

| | |
|---|---|
| **Total Additional Features** | **$10,363.32** |

© 2021 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.

| | | Park Name : | **RANCHO DEL REY MOBILE ESTATES** |
| | | Park Address : | 16222 MONTEREY L HUNTINGTON BEACH, CA 92649 |
| | | Spaces : | 379 |
| | | From : | 3/14/2020 to 3/14/2022 |
| | | Report date : | 3/14/2022 |

| Address City | Mfd Date MFG Trade | Original Current Sales Date | Decal Legal Dealer | Wd Lt | Total sq Ft Per Sq Ft |
|---|---|---|---|---|---|
| 16222 MONTEREY LN #315 HUNTINGTON BEACH | 03/29/2006 DELAWARE WESTERN HOMES CORP SILVERCREST | $365,000.00 **$325,000.00** 12/03/2021 | LBI5646 | 15.5 61 14.8333 61 | 1850.33 $175.64 |
| 16222 MONTEREY LN #105 HUNTINGTON BEACH | 11/20/2009 CMH MANUFACTURING WEST INC CHATEAU SERIES | $148,195.00 **$285,000.00** 10/15/2021 | LBK6772 5 STAR HOMES | 14.8333 54 14.8333 54 | 1602 $177.90 |
| 16222 MONTEREY LN #81 HUNTINGTON BEACH | 01/01/1965 MONTCLAIR MOBILE HOMES BONANZA | $3,300.00 **$149,000.00** 10/08/2021 | LBB4900 5 STAR HOMES | 10 48 10 48 | 960 $155.21 |
| 16222 MONTEREY LN #23 HUNTINGTON BEACH | 04/18/1997 FLEETWOOD HM CALIF INC SUNPOINTE VVS | $64,235.00 **$135,000.00** 10/01/2021 | LAX7136 5 STAR HOMES | 11.75 57.3333 11.75 56 | 1331.67 $101.38 |
| 16222 MONTEREY LN #310 HUNTINGTON BEACH | 12/04/2003 CHAMPION HOME BUILDERS COMPANY RESIDENTIAL | $153,325.00 **$319,500.00** 09/28/2021 | LBF6142 | 13.3333 58 13.3333 60 | 1573.33 $203.07 |
| 16222 MONTEREY LN #25 HUNTINGTON BEACH | 08/27/2004 SKYLINE HOMES INC OAKMANOR | $271,050.00 **$270,000.00** 09/15/2021 | LBG5840 5 STAR HOMES | 13.3333 59 13.3333 60.3333 | 1591.11 $169.69 |
| 16222 MONTEREY LN #150 HUNTINGTON BEACH | 11/03/2005 SKYLINE HOMES INC OAKMANOR | $289,637.00 **$280,000.00** 09/08/2021 | LBH7988 5 STAR HOMES | 13.3333 56 13.3333 56 | 1493.33 $187.50 |
| 16222 MONTEREY LN #159 HUNTINGTON BEACH | 01/01/1965 SKYLINE SKYLINE | $3,100.00 **$75,000.00** 07/29/2021 | LBO7483 5 STAR HOMES | 10 52 | 520 $144.23 |
| 16222 MONTEREY LN #316 HUNTINGTON BEACH | 02/01/2013 CMH MANUFACTURING WEST INC GOLDEN WEST | $148,572.00 **$100,000.00** 07/27/2021 | LBN2518 | 13.5 60 13.5 60 | 1620 $61.73 |
| 16222 MONTEREY LN #277 HUNTINGTON BEACH | 01/01/1968 ROLLAWAY | $18,999.00 **$162,000.00** 07/21/2021 | LBC7654 5 STAR HOMES | 12 57 12 57 | 1368 $118.42 |
| 16222 MONTEREY LN #70 HUNTINGTON BEACH | PTHSE | $9,300.00 **$48,000.00** 06/30/2021 | ABA2838 | 10 56 10 56 | 1120 $42.86 |

| Address | Date | Manufacturer / Model | Price / Date | ID / Lender | | |
|---|---|---|---|---|---|---|
| 16222 MONTEREY LN #128 HUNTINGTON BEACH | 07/24/2000 | DELAWARE WESTERN HOMES CORP SILVERCREST | $113,000.00 $215,000.00 06/30/2021 | LBC1704 5 STAR HOMES | 12 53.3333 12 53.3333 | 1280 $167.97 |
| 16222 MONTEREY LN #30 HUNTINGTON BEACH | 10/04/1999 | DELAWARE WESTERN HOMES CORP SILVERCREST | $102,199.00 $169,000.00 05/13/2021 | LBA2954 5 STAR HOMES | 13.5 56 12.8333 56 | 1474.67 $114.60 |
| 16222 MONTEREY LANE SP 22 HUNTINGTON BEACH | 11/11/2013 | CMH MANUFACTURING WEST INC GOLDEN WEST | $130,000.00 $212,000.00 05/10/2021 | LBL8405 5 STAR HOMES | 11.8333 58 11.8333 58 | 1372.67 $154.44 |
| 16222 MONTEREY LANE #282 HUNTINGTON BEACH | 11/07/2013 | CMH MANUFACTURING WEST INC CMH | $202,858.00 $330,000.00 05/07/2021 | LBL7735 5 STAR HOMES | 14.8333 60 14.8333 58 | 1750.33 $188.54 |
| 16222 MONTEREY LN #221 HUNTINGTON BEACH | 02/26/2010 | CMH MANUFACTURING WEST INC CASTLE LIMITED | $225,000.00 $319,500.00 04/29/2021 | LBK5051 EAGLE COMMUNITY CREDIT UNION J/R MOBILEHOME SALES | 11.8333 60 9.83333 56 11.8333 56 | 1923.33 $166.12 |
| 16222 MONTEREY LANE #10 HUNTINGTON BEACH | 08/14/2006 | DELAWARE WESTERN HOMES CORP SILVERCREST | $239,153.00 $330,000.00 04/23/2021 | LBI7633 5 STAR HOMES | 13.5 62.6667 13.5 61.3333 13.5 27 | 2038.5 $161.88 |
| 16222 MONTEREY LN #50 HUNTINGTON BEACH | 07/11/1991 | HALLMARK SOUTHWEST CORP WINCHESTER II | $55,000.00 $105,000.00 04/07/2021 | LAT2541 5 STAR HOMES | 12 56 12 56 | 1344 $78.12 |
| 16222 MONTEREY LN #274 HUNTINGTON BEACH | 01/01/1968 | VIKING EDGEWOOD | $15,700.00 $187,000.00 03/30/2021 | LBN5869 EAGLE COMMUNITY CREDIT UNION BLUE CARPET MANUFACTURED HOMES | 12 57 12 57 | 1368 $136.70 |
| 16222 MONTEREY LN #254 HUNTINGTON BEACH | 01/01/1968 | CORNELL CORNELL | $14,100.00 $109,000.00 03/17/2021 | LBO5799 5 STAR HOMES | 12 57 12 57 | 1368 $79.68 |
| 16222 MONTEREY LN #325 HUNTINGTON BEACH | 08/01/2008 | SKYLINE HOMES INC PALMSPRINGS | $199,600.00 $270,000.00 03/12/2021 | LBJ9095 5 STAR HOMES | 13.3333 60 13.3333 56 | 1573.33 $171.61 |
| 16222 MONTEREY LN #192 HUNTINGTON BEACH | 06/03/2003 | DELAWARE WESTERN HOMES CORP SILVERCREST | $205,000.00 $205,000.00 03/01/2021 | LBF4183 | 13.5 56 12.8333 56 | 1474.67 $139.01 |
| 16222 MONTEREY LN #265 HUNTINGTON BEACH | 11/10/2020 | CHAMPION HOME BUILDERS INC SKYLINE | $306,641.00 $306,641.00 01/08/2021 | LBO4991 J/R MOBILEHOME SALES | 13.3333 60 13.3333 60 | 1600 $191.65 |
| 16222 MONTEREY LN #109 HUNTINGTON BEACH | 03/27/2020 | CMH MANUFACTURING WEST INC CLAYTON | $212,000.00 $212,000.00 12/15/2020 | LBO4868 MACY HOMES INC | 11.6667 56 11.6667 56 | 1306.67 $162.24 |

| Address | Date / Sale | Manufacturer / Model / Sale Date | Price | Code | Dealer | | |
|---|---|---|---|---|---|---|---|
| 16222 MONTEREY LN #213 HUNTINGTON BEACH | 04/13/2004 | SKYLINE HOMES INC OAKMANOR 11/24/2020 | $274,000.00 $262,590.00 | | | 11.8333 52 11.8333 56 11.8333 56 | 1940.67 $135.26 |
| 16222 MONTEREY LN #119 HUNTINGTON BEACH | | SKYLINE SKYLINE 10/30/2020 | $17,899.00 $135,000.00 | LAZ5405 | | 12 56 12 56 | 1344 $100.45 |
| 16222 MONTEREY LN #343 HUNTINGTON BEACH | 01/21/2013 | CMH MANUFACTURING WEST INC GOLDEN WEST 10/29/2020 | $133,709.00 $205,000.00 | LBL4819 5 STAR HOMES | | 13.5 58 13.5 58 | 1566 $130.91 |
| 16222 MONTEREY LN #57 HUNTINGTON BEACH | 08/02/2011 | CMH MANUFACTURING WEST INC GOLDEN WEST 10/27/2020 | $105,500.00 $190,000.00 | LBK9621 5 STAR HOMES | | 11.8333 56 11.8333 56 | 1325.33 $143.36 |
| 16222 MONTEREY LN #157 HUNTINGTON BEACH | 09/27/2004 | CHAMPION HOME BUILDERS COMPANY WELLINGTON MANOR 10/02/2020 | $0.00 $137,000.00 | LBH5292 J/R MOBILEHOME SALES | | 11.6667 56 11.6667 56 | 1306.67 $104.85 |
| 16222 MONTEREY LN #296 HUNTINGTON BEACH | 01/29/2015 | SKYLINE HOMES INC SUNSET RIDGE 09/24/2020 | $206,587.00 $271,000.00 | LBM2824 5 STAR HOMES | | 13.3333 62.6667 13.3333 60 | 1635.56 $165.69 |
| 16222 MONTEREY LN #231 HUNTINGTON BEACH | 07/13/2004 | DELAWARE WESTERN HOMES CORP SILVERCREST 09/17/2020 | $269,000.00 $199,900.00 | LBI2401 | | 13.5 56 12.8333 56 | 1474.67 $135.56 |
| 16222 MONTEREY LANE #269 HUNTINGTON BEACH | 06/08/2000 | SKYLINE HOMES INC OAKMANOR 09/11/2020 | $98,681.00 $240,000.00 | LBB5766 5 STAR HOMES | | 11.8333 52 11.8333 56 11.8333 62 | 2011.67 $119.30 |
| 16222 MONTEREY LN #108 HUNTINGTON BEACH | 06/26/2007 | PALM HARBOR HOMES INC PALM HARBOR 08/12/2020 | $275,000.00 $265,000.00 | LBJ3986 EAGLE COMMUNITY CREDIT UNION 5 STAR HOMES | | 13.3333 56 13.3333 59 | 1533.33 $172.83 |
| 16222 MONTEREY LN #260 HUNTINGTON BEACH | 05/17/2006 | CMH MANUFACTURING WEST INC GOLDEN WEST 08/12/2020 | $298,000.00 $200,000.00 | LBJ1431 | | 11.8333 54 9.83333 53.3333 11.8333 46 | 1707.78 $117.11 |
| 16222 MONTEREY LN #311 HUNTINGTON BEACH | 11/18/2013 | SKYLINE HOMES INC SUNSET RIDGE 07/08/2020 | $157,911.00 $279,000.00 | LBL8007 5 STAR HOMES | | 13.3333 56 13.3333 58.6667 | 1528.89 $181.83 |
| 16222 MONTEREY LN SP 133 HUNTINGTON BEACH | 01/01/1973 | SILVERCREST SILVERCREST 06/23/2020 | $22,100.00 $107,000.00 | LBO3342 5 STAR HOMES | | 12 64 12 64 | 1536 $69.66 |
| 16222 MONTEREY LANE #82 HUNTINGTON BEACH | 12/14/1998 | SKYLINE HOMES INC GLENHAVEN 05/15/2020 | $92,000.00 $245,000.00 | LAZ2767 | | 11.8333 52 11.8333 52 11.8333 48 | 1798.67 $136.21 |
| 16222 MONTEREY LN #14 HUNTINGTON BEACH | 07/26/2011 | CMH MANUFACTURING WEST INC GOLDEN WEST 05/06/2020 | $109,647.00 $204,500.00 | LBK9624 | | 11.8333 56 11.8333 56 | 1325.33 $154.30 |
| 16222 MONTEREY LN #53 HUNTINGTON BEACH | 07/10/2019 | CHAMPION HOME BUILDERS INC SUNSET RIDGE 05/04/2020 | $230,000.00 $230,000.00 | LBO3276 T K M HOME SALES INC. | | 10 58 11.8333 54 | 1199 $191.83 |

000334

| | Original | Resale |
|---|---|---|
| Total | $5,738,487.00 | $8,288,541.00 |
| Average | $147,140.69 | $212,526.69 |
| Max | $365,000.00 | $330,000.00 |
| Min | $0.00 | $48,000.00 |
| Avg $SqFt | $93.81 | $141.27 |
| Avg SqFt | 1491 | 1491 |
| Number of records | 39 | |

Park Name : **SKANDIA MOBILE CC**

| Park Address : | 16444 BOLSA CHICA HUNTINGTON BEACH, CA 92649 |
| Spaces : | 167 |
| From : | 3/14/2020 to 3/14/2022 |
| Report date : | 3/14/2022 |

| Address City | Mfd Date MFG Trade | Original Current Sales Date | Decal Legal Dealer | Wd Lt | Total sq Ft Per Sq Ft |
|---|---|---|---|---|---|
| 16444 BOLSA CHICA #12 HUNTINGTON BEACH | 06/21/2021 CHAMPION HOME BUILDERS INC-COR SILVERCREST | $287,850.00 $287,850.00 09/24/2021 | LBO7177 BLUE CARPET MANUFACTURED HOMES | 11.8333 57.3333 11.8333 57.3333 | 1356.89 $212.14 |
| 16444 BOLSA CHICA ST #14 HUNTINGTON BEACH | 07/29/2011 SKYLINE HOMES INC PALMSPRINGS | $182,015.00 $268,555.00 08/20/2021 | LBK9472 | 13.3333 60 13.3333 60 | 1600 $167.85 |
| 16444 BOLSA CHICA RD #140 HUNTINGTON BEACH | 10/29/2004 SKYLINE HOMES INC OAKMANOR | $197,108.00 $185,000.00 08/03/2021 | LBG6541 | 13.3333 56 13.3333 56 | 1493.33 $123.88 |
| 16444 BOLSA CHICA RD #8 HUNTINGTON BEACH | 10/21/2003 SKYLINE HOMES INC OAKMANOR | $160,875.00 $274,500.00 07/06/2021 | LBF5590 | 13.3333 56 13.3333 56 | 1493.33 $183.82 |
| 16444 BOLSA CHICA #81 HUNTINGTON BEACH | 11/30/2004 DELAWARE WESTERN HOMES CORP SILVERCREST | $228,396.00 $189,900.00 03/12/2021 | LBG7635 J/R MOBILEHOME SALES | 12 60 12 60 | 1440 $131.88 |
| 16444 BOLSA CHICA ST SP 141 HUNTINGTON BEACH | 04/01/2005 DELAWARE WESTERN HOMES CORP SILVERCREST | $235,000.00 $189,000.00 12/22/2020 | LBH3077 EAGLE COMMUNITY CREDIT UNION | 13.5 55 12.8333 55 | 1448.33 $130.49 |
| 16444 BOLSA CHICA ST #125 HUNTINGTON BEACH | 01/23/2013 CMH MANUFACTURING WEST INC GOLDEN WEST | $136,000.00 $220,000.00 11/18/2020 | LBI5145 | 13.5 58 13.5 58 | 1566 $140.49 |
| 16444 BOLSA CHICA #34 HUNTINGTON BEACH | 02/13/2002 SKYLINE HOMES INC OAKMANOR | $130,705.00 $289,500.00 10/14/2020 | LBD6797 5 STAR HOMES | 13.3333 58.6667 13.3333 58.6667 | 1564.44 $185.05 |
| 16444 BOLSA CHICA ST #57 HUNTINGTON BEACH | 08/29/2007 SKYLINE HOMES INC OAKMANOR | $210,000.00 $195,000.00 10/08/2020 | LBJ5268 5 STAR HOMES | 11.8333 56 11.8333 45.6667 | 1203.06 $162.09 |
| 16444 BOLSA CHICA RD #7 HUNTINGTON BEACH | 01/28/2004 SKYLINE HOMES INC OAKMANOR | $159,900.00 $215,000.00 09/28/2020 | LBF7355 | 13.3333 56 13.3333 56 | 1493.33 $143.97 |
| 16444 BOLSA CHICA RD #149 HUNTINGTON BEACH | 07/17/2020 CHAMPION HOME BUILDERS INC SUNSET RIDGE | $239,000.00 $239,000.00 09/16/2020 | LBO5092 J/R MOBILEHOME SALES | 13.3333 56 13.3333 54 | 1466.67 $162.95 |

000336

| 16444 BOLSA CHICA ST #126 | 07/21/2020 | $268,353.00 | LBO3916 | | 13.3333 58 | 1520 |
| HUNTINGTON BEACH | CHAMPION HOME BUILDERS INC | **$268,353.00** | | | 13.3333 56 | $176.55 |
| | SILVERCREST | 08/07/2020 | BLUE CARPET MANUFACTURED HOMES | | | |
| | | | | | | |
| 16444 BOLSA CHICA #98 | 02/07/2020 | $289,000.00 | LBO3158 | | 13.3333 56 | 1466.67 |
| HUNTINGTON BEACH | CHAMPION HOME BUILDERS INC | **$289,000.00** | | | 13.3333 54 | $197.05 |
| | SUNSET RIDGE | 06/17/2020 | J/R MOBILEHOME SALES | | | |
| | | | | | | |
| 16444 BOLSA CHICA #122 | 08/14/2015 | $191,600.00 | LBM5043 | | 13.5 58 | 1566 |
| HUNTINGTON BEACH | CMH MANUFACTURING WEST INC | **$254,500.00** | | | 13.5 58 | $162.52 |
| | GOLDEN WEST | 04/03/2020 | BLUE CARPET MANUFACTURED HOMES | | | |

| | Original | Resale |
|---|---|---|
| **Total** | $2,915,802.00 | $3,365,158.00 |
| **Average** | $208,271.57 | $240,368.43 |
| **Max** | $289,000.00 | $289,500.00 |
| **Min** | $130,705.00 | $185,000.00 |
| **Avg $SqFt** | $142.67 | $162.91 |
| **Avg SqFt** | 1477 | 1477 |
| **Number of records** | **14** | |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

000338

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 5801 SKYLAB ROAD HUNTINTON BEACH, CA 92647

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS NT of MOT RECONSIDERATION TO HOUSER BROS. CO. dba RANCHO DEL REY MOBILE HOME ESTATES'OBJECTION TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION JOINDER OF GABLES HOA AND JANINE JASSO.**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) JULY 26, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Aaron E DE Leest**   adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Jeffrey I Golden (TR)**    lwerner@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com
- **D Edward Hays**    ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmend o za@ecf.courtdrive.com
- **Brandon J Iskander**    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **Eric P Israel**    eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Laila Masud**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Mark A Mellor**    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- **Valerie Smith**    claims@recoverycorp.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

**2.   SERVED BY UNITED STATES MAIL**:

On (*date*) JULY 26, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Janine Jasso, Esq.**
16025 Warmington Lane
Huntington Beach, CA 92649

**Michael D Poole**
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:

(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) JULY 26, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Erithe A. Smith, USBC, 411 West Fourth Street, Santa Ana, CA 92701
- Janine B. Jasso, Esq.. j9_jasso@yahoo.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| JULY 26, 2022 | Robert McLelland | *Robert McLelland* |
|---|---|---|
| Date | Printed Name | Signature |

3

000339