**EXHIBIT   5**

1               UNITED STATES BANKRUPTCY COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3                        --oOo--

4   In Re:                     ) Case No. 8:21-bk-11710-ES
                               )
5   JAMIE LYNN GALLIAN,        ) Chapter 7
                               )
6          Debtor.            ) Santa Ana, California
    _____) Thursday, September 22, 2022
7                                10:00 a.m.

8                               CONT'D HEARING RE: DEBTOR'S
                                MOTION FOR RECONSIDERATION OF
9                               7.21.22 ORDER SUSTAINING
                                HOUSER BROS. CO. DBA RANCHO
10                              DEL REY MOBILE HOME ESTATES
                                OBJECTION TO DEBTOR'S CLAIMED
11                              HOMESTEAD EXEMPTION AND
                                JOINDER PARTIES HUNTINGTON
12                              BEACH GABLES HOA; JANINE JASSO

13                  TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE ERITHE SMITH
14               UNITED STATES BANKRUPTCY JUDGE

15  APPEARANCES:

16  For the Moving Party:       JAMIE LYNN GALLIAN, IN PRO PER
                                16222 Monterey Lane
17                              Unit 376
                                Huntington Beach, California
18                               92649
                                (714) 321-3449
19

20  For the Creditor:          D. EDWARD HAYS, ESQ.
                                Marshack Hays, LLP
21                              870 Roosevelt
                                Irvine, California 92620
22                              (949) 333-7777

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

*Briggs Reporting Company, Inc.*

ii

1  APPEARANCES:  (cont'd.)

2  For the Chapter 7              AARON E. DE LEEST, ESQ.
     Trustee:                     Danning, Gill, Israel &
3                                   Krasnoff, LLP
                                  1901 Avenue of the Stars
4                                 Suite 450
                                  Los Angeles, California 90067
5                                 (310) 277-0077

6  For Huntington Beach           ROBERT P. GOE, ESQ.
     Gables Homeowners            Goe, Forsythe & Hodges, LLP
7    Association:                 18101 Von Karman Avenue
                                  Suite 1200
8                                 Irvine, California 92612
                                  (949) 798-2460
9

10 Court Recorder:                James Le
                                  United States Bankruptcy Court
11                                411 West Fourth Street
                                  Suite 2030
12                                Santa Ana, California 92701

13 Transcriber:                   Briggs Reporting Company, Inc.
                                  9711 Cactus Street
14                                Suite B
                                  Lakeside, California 92040
15                                (310) 410-4151

16

17

18

19

20

21

22

23

24

25

*Briggs Reporting Company, Inc.*

001462

1

1  SANTA ANA, CALIFORNIA  THURSDAY, SEPTEMBER 22, 2022 10:00 AM

2                        --oOo--

3      (Call to order of the Court.)

4          THE CLERK:  Please come to order.  This United

5  States Bankruptcy Court is now in session.  The Honorable

6  Erithe Smith presiding.

7          THE COURT:  Thank you.  Good morning.

8          All right.  In the matter of Jamie Lynn Gallian on

9  calendar for this morning, may I have the appearance of the

10  moving party?

11         Ms. Gallian, are you on the line?  Ms. Gallian?

12         MS. GALLIAN (telephonic):  Yes, ma'am.  I couldn't

13  find the screen.  I apologize.  Thank you.  Good morning,

14  your Honor.  Jamie Gallian, the Debtor for the moving party.

15         THE COURT:  All right.  Thank you.

16         And for Creditor, Houser Brothers.

17         MR. HAYS (telephonic):  Good morning, your Honor.

18  For Houser Brothers, this is Ed Hays of Marshack Hays.

19         THE COURT:  Thank you.

20         And for the Chapter 7 Trustee.

21         MR. DE LEEST (telephonic):  Good morning, your

22  Honor.  Aaron De Leest, Danning, Gill, Israel and Krasnoff,

23  for the trustee.

24         THE COURT:  All right.

25         And for the Huntington Beach Gables Homeowners

*Briggs Reporting Company, Inc.*

2

1  Association.

2          MR. GOE (telephonic):  Yeah, Rob Goe for

3  Huntington Beach Gables Homeowners Association.

4          THE COURT:  All right.  Are there any other

5  appearances?

6          All right.  Just in case you haven't had a chance

7  to read the tentative ruling sealed, I did not post a

8  tentative ruling.  I decided to hear oral argument and take

9  the matter under submission, and thereafter issue my written

10 ruling.

11          So, as indicated in the tentative ruling, the

12 moving party, Ms. Gallian, will have 20 minutes to summarize

13 her arguments in support of the motion.  And you should

14 assume that I have read the pleadings, and the point of the

15 oral argument is to highlight key arguments that you want

16 the Court to consider.  And after that, the Creditor, Houser

17 Brothers will have up to 20 minutes to respond.  The joining

18 parties, the trustee and the HOA, will each have five

19 minutes to present any argument.  And the Debtor will have

20 up to 10 minutes to present final argument as the moving

21 party.  All right.  And -- hold on just a minute.  Okay.

22          All right.  Ms. Gallian, you may begin.  And you

23 will have until 10:28 to make your opening arguments.  Go

24 ahead.

25          MS. GALLIAN:  Okay.  So I filed this motion for

*Briggs Reporting Company, Inc.*

3

1  reconsideration under 59(e).  And there are three basic

2  reasons for a motion to be reconsidered.  The legal

3  standards governing the motion for reconsideration is -- one

4  of them is there is -- number three, there is an intervening

5  change in the controlling law.  389 Orange Street Partners

6  vs. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).

7       I would like to bring to the Court's attention a

8  memorandum just published and filed on August 31st, 2022,

9  stating that the decision in the Schaefers case has been

10  vacated.  And so that was one of the first big items that I

11  wanted to bring to the attention of the Court.

12       THE COURT:  And was the -- what is -- is the

13  citation in your pleadings?  I can't remember.

14       MS. GALLIAN:  I understood the Court to say that

15  there were no more -- you know, you couldn't file any more

16  pleadings.  This -- my -- doc 185 was filed on August 11,

17  2022, and the memorandum from the Ninth District was

18  published on August 31st.  So -- and I did not want to break

19  the order of the Court by filing, you know, something after

20  the Court had already said don't file anything.

21       THE COURT:  Okay.  Hold on just a minute.

22       MS. GALLIAN:  Yes, ma'am.

23    (Pause.)

24       THE COURT:  All right.  Go ahead.

25       MS. GALLIAN:  Okay.  So I can also -- the

4

1   memorandum --

2          THE COURT:  That's okay.  If you can tell me what

3   court it is, we can look it up.

4          MS. GALLIAN:  Of course, ma'am.  United States

5   Court of Appeals for the Ninth Circuit.

6          THE COURT:  Okay.

7          MS. GALLIAN:  Number 20-60055.

8          THE COURT:  All right.  Thank you.

9          MS. GALLIAN:  Uh-huh.  And did you want me to

10  consider -- to continue or just wait?

11         THE COURT:  No, go ahead.

12         MS. GALLIAN:  Okay.  So that was one of the

13  biggest things.  I don't think there's any dispute between

14  any of the parties that this is my home.  I've resided in

15  the home since November of 2018.  I purchased the home with

16  funds that -- I sold my previous property.  And I think I

17  made it clear, and -- the movant in the first objection

18  filed made it clear that I purchased the home from Lisa

19  Ryan.

20         The home was registered in my LLC two-and-a-half

21  weeks after I purchased it.  It was registered personally by

22  me on November 16, 2018.  That did not negate the fact that

23  the certificate of title was surrendered to me and signed by

24  a releasing signature of Lisa Ryan on November 1st.

25         THE COURT:  I'm sorry.  When you say "registered,"

*Briggs Reporting Company, Inc.*

5

1  do you mean that it was titled in the LLC?

2          MS. GALLIAN:   It was registered -- I purchased the

3  home, and it was registered to the LLC two-and-a-half weeks

4  later in the name of my sole member LLC, J-Sandcastle.

5          THE COURT:   All right.   Thank you.

6          MS. GALLIAN:   Yes.   Let's see.   I want to go back

7  here.   I think the State of California has long recognized

8  that a person may not hold legal title to real property in

9  order to claim a homestead exemption, but that an equitable

10 interest is sufficient.   This motion for reconsideration

11 tests the extent of this liberal policy, where the Chapter 7

12 debtor has resided continuously in the home in question for

13 years prior to and during her bankruptcy case and has an

14 interest in the property established by her purchase on

15 November 1st, using the proceeds from the sale of her

16 California residence, APN 937-630-53, unit 53 on October

17 31st, 2018, reinvesting those proceeds the very next day in

18 her personal residence, a 2014 Skyline custom villa

19 manufactured home.   And to bring to the Court's attention, I

20 bought that home sold in place, in -- on lot 376, in track

21 10542, unit four, under an existing, unexpired 80-year

22 ground leasehold, the same leasehold that my previous home

23 is also recorded under in the Orange County Clerk/Recorder's

24 Office, from 1979.

25          On November 1st, Lisa Ryan executed a notice of

6

1  sale and transfer documents and signed it November 1st,

2  2018.  And on the left side of that document -- and it's

3  Houser's Motion Exhibit 13.  It clearly states, "Jamie Lynn

4  Gallian is the purchaser."

5          On the 14th of November, after Lisa Ryan notified

6  and signed the notice of sale and transfer, because that's

7  the responsibility of the seller, Houser Brothers filed a

8  writ of possession in the old owner's name, in Lisa Ryan's

9  name.  And that date is November 14th, 2018.  I met with

10 Lisa Ryan on November 15th.  I wanted out of the deal.  I

11 didn't know what -- any -- what was going on with any of

12 these people.  I didn't know any of these people.

13         Anyway, Lisa Ryan signed and acknowledged that she

14 had given me a copy of her January 1st, 2006 -- and I

15 believe I attached it as an exhibit -- 2006 -- and what it's

16 called -- it's called mobile home rental agreement.  And I

17 thought it was very strange, because I was purchasing a 2014

18 mobile home rental -- mobile home from Lisa Ryan.  And Lisa

19 Ryan and I are about the same age, so subsequent -- and I'm

20 kind of getting off track here, your Honor, but --

21         THE COURT:  Remember you only have about 13

22 minutes.

23         MS. GALLIAN:  Yes, yes, yes, yes, yes.  Okay.  So

24 anyway, let's see.  I mentioned that the surrendered

25 certificate of title releasing signature did not change from

7

1  November 1st.  "Surrendered to Jamie Gallian."  Jamie

2  Gallian is still the owner and purchaser of the 2014 Skyline

3  manufactured home.  I think that the moving party's motion

4  for reconsideration opposition spends little time in

5  analyzing the types of equitable interest in real property

6  that support a homestead exemption.  And as the Court is

7  aware, in doc 74 that prior to filing a -- this bankruptcy,

8  I did file a declared homestead prior to my bankruptcy.

9        Let's see.  We know that the Ninth Circuit

10  historically describes Section 704.710 to 704.810, stating

11  that the automatic exemption protects a debtor from a forced

12  sale and requires that the debtor reside in a homestead

13  property at the time of the forced sale.  Diaz 547 B.R. at

14  334.  See also In re Anderson, 824 F.2d 754, 756 (9th Cir.

15  1987).  The statutory provisions affecting homesteads are

16  primarily located on article four and article five, which no

17  -- which -- an automatic homestead for which no recording is

18  necessary.  Courts, I think, in the past had found that most

19  people were ignorant of the fact that they needed to file a

20  declared homestead.  And so -- and I think that's why the

21  change in the law came about that a debtor does receive the

22  automatic homestead.

23        Let's see.  704.710(c) requires only that the

24  debtor reside in the property as his or her own dwelling at

25  the time of the judgment creditor's lien attaches and

8

1  continuously thereafter until the court determines the

2  dwelling is a homestead.  In re Gilman, 887 F.3d 956, 965

3  (2018) quoting Tarlesson, 184 -- it does not require that

4  the debtor continuously own the property.  California law

5  rejects the argument that title to property is necessary to

6  claim a homestead exemption.  Citing Tarlesson, in 184

7  Cal.App.4th at 937.  Third party does not defeat a debtor's

8  right to an automatic exemption, because continuous

9  residency, rather than continuous ownership, controls the

10  analysis.  Citing Elliot, 523 B.R. at 196.  California still

11  has its common law history of applying liberal standard to

12  automatic homestead laws.  In re Reaves.  Exemption statutes

13  are to be liberally construed, for their manifest purpose is

14  that of having -- saving a debtor and their families from --

15  by way of reason of misfortune or improvidence.

16       The record clearly shows that I reside in the home

17  during and after I filed my bankruptcy.  I don't believe

18  that Houser Brothers have satisfied their burden.  I believe

19  that they provided the Court with a document off of the

20  internet.  And I believe that the attorneys that did this

21  are not new.  They are trustees.  They know exactly where to

22  get a copy of a certified copy of -- from the Tax Assessors'

23  Office.

24       And I have provided a certified copy of my tax

25  assessors' application in my filing here that -- the tax

*Briggs Reporting Company, Inc.*

9

1   assessor gets that date from HCD, effective in Orange County

2   since February 25th, 2021.  They take that date from HCD.

3   It's not provided by the debtor.  If you look at my

4   application of my homeowners' exemption, I state on there

5   that I have owned the home since November 1st, and this is

6   my homeowners' exemption against the property.  It says,

7   "When did you acquire the property?"  I acquired it on

8   November 1st.  "Date you occupied the property?"  November

9   1st.  "Do you own any other property that was your principal

10  residence?"  I answered, "yes."  And I also gave the tax

11  assessor my old address.  Nowhere on that form does it state

12  the date February 25th, 2021.  Again, that 2/25, 2021 is

13  something that HCD provides to the tax assessor.  The doc 74

14  is my homestead exemption.

15          Let's see -- and I would -- let's see.  I do want

16  to address 522(p)(2)(B), just my last few minutes here, of

17  stating that -- get to that part -- that the -- let's see.

18  Where is it?

19          THE COURT:  I'm sorry.  Can you give me the

20  statutory citation again?

21          MS. GALLIAN:  11 U.S. Code 522(p)(2)(B).

22          THE COURT:  Thank you.

23          MS. GALLIAN:  "For purposes of paragraph

24          (1), any amount of such interest does

25          not include any interest transferred

*Briggs Reporting Company, Inc.*

001471

10

1           from a debtor's previous principal

2           residence, which was acquired prior to

3           the beginning of such 1,215-day period,

4           into the debtor's current principal

5           residence, if the debtor's previous and

6           current residences are located in the

7           same state."

8   And I would ask the Court to consider that also (p)(2)(B)

9   does apply to this case.

10          Let's see.  What else.  I don't think I have

11  anything else, ma'am.

12          THE COURT:  All right.  Thank you very much.

13          Mr. Hays?

14          MR. HAYS:  Yes.  Thank you, your Honor.  There are

15  typically two types of interest in property.  There's legal

16  title to and a beneficial or equitable interest in.  Most of

17  the time the same person holds both interests, but sometimes

18  there is a difference.  For example, an elderly widow might

19  put legal title to her residence in the name of a child to

20  avoid probate while continuing to live in the home.  In such

21  an interest, the beneficial interest was always remaining

22  with the widow who was the occupant of the home.  It was her

23  home.  It would not be the child's home to sell.  The child

24  would have their name in the title.  The widow occupant

25  would still be the beneficial or equitable owner of the

*Briggs Reporting Company, Inc.*

11

1  home.   That is the type of argument that the Debtor is

2  making here, and that is the type of argument that the

3  California cases rely upon to say that the exemption is

4  dependent upon having a beneficial or equitable interest in

5  property.

6        But in this case, that's not what the record

7  before the Court establishes.  In this case, as the Debtor

8  mentioned in her comments, she sold her former residence and

9  purchased the subject property, but the subject property was

10 titled in the name of the LLC, because the Debtor had

11 pending litigation and creditor trouble.

12       The Debtor further engaged in the second layer of

13 fraud, which was to then put liens on the property in favor

14 of a second LLC.  And so, what we're looking at and what the

15 Court needs to consider is, is there any evidence in the

16 record that notwithstanding the legal title in the name of

17 one LLC and liens in favor of a second LLC, did the Debtor,

18 in fact, retain the equitable or beneficial interest in the

19 property?  And there is no doubt that that is not what

20 happened in this case.

21       As the evidence established and the Court noted at

22 the prior hearing, the Debtor was paying rent to the LLC

23 that was on title.  Nobody pays rent to themselves.  And so,

24 what the evidence establishes is that the Debtor transferred

25 not just the legal title but the beneficial and equitable

*Briggs Reporting Company, Inc.*

001473

12

1  interest in the property while she was paying -- as

2  evidenced by the fact that she was paying rent to the LLC.

3  Moreover, it was the LLC on title that continued tendering

4  rent payments to Houser Brothers all the way through the

5  petition date, as noted by the Court in its tentative ruling

6  at the last hearing.

7         So the Court also noted in its tentative ruling at

8  the last hearing that the Debtor, and several of her ten

9  sets of amended schedules, admitted that the LLC was the

10  owner of the property.

11         So in viewing all of the evidence, the evidence is

12  that the Debtor never retained an equitable or beneficial

13  interest in the property.  And that was for the obvious fact

14  of she was in a pending lawsuit at the time that she was

15  acquiring the subject property, and she was attempting to

16  put the property and the equity and value of the property

17  outside the reach of her creditors.  She never wanted to

18  retain the legal or equitable -- the beneficial or equitable

19  interest in the property, because all of the evidence

20  suggests that it was part of her fraudulent scheme to

21  hinder, delay and defraud creditors.

22         Let's talk for a moment about the standards for

23  reconsideration.  Whether you consider the motion under Rule

24  59 or Rule 60, the motion fails.  The Debtor's primary

25  argument in seeking reconsideration is that there was a tax

*Briggs Reporting Company, Inc.*

13

1  exemption registered with Orange County.  And that is not

2  newly discovered evidence that could not have been

3  discovered and presented to the Court prior to the original

4  hearing, because according to that tax exemption, it was

5  registered as of February of 2021, and here we are in the

6  middle and latter part of 2022.  So this is not newly

7  discovered evidence.  The Debtor never raised a request for

8  a continuance because she couldn't get the evidence in front

9  of the Court before the Court originally ruled.

10         And even if the Court considers this alleged newly

11  discovered evidence, its only relevance to the proceeding is

12  that it controls the burden of proof in terms of who carries

13  the burden on the exemption.  If there was no registered tax

14  exemption, then the burden of proof is on the Debtor to

15  establish that she had a legal or an equitable interest in

16  the property.  And if she did have the registered tax

17  exemption, then the burden of proof would be on the party

18  challenging the exemption.  But either way that you look at

19  it, the evidence in the record is uncontroverted that the

20  Debtor neither had legal title to nor a beneficial or

21  equitable interest in this property.

22         If the Court were to consider such newly

23  discovered evidence that very well could have been presented

24  prior to the original hearing, then the Court would have to

25  consider every motion twice.  Once in the original instance,

14

1  and then when somebody thinks of another argument and goes

2  out and gets evidence that could have been presented when

3  that motion for reconsideration gets filed.  And that is not

4  the standard, and that is not the way to preserve a judicial

5  economy.

6          The Debtor mentioned the Schaefers ruling by the

7  Ninth Circuit, which was very recent.  And I'd like to

8  address that quickly.  The Ninth Circuit vacated the B.A.P

9  ruling.  And the B.A.P ruling was that the debtor in

10 Schaefers was not allowed an exemption because title to that

11 subject, single-family residence, was in the name of an LLC.

12 But the order vacating the B.A.P ruling was based on the

13 fact that the case had become moot.

14         And what happened in Schaefers was the Chapter 7

15 trustee abandoned the bankruptcy estate's interest in the

16 LLC.  The debtor was the 100-percent owner of the LLC.  And

17 so the court said that the entire matter in dispute over

18 whether the exemption was proper or not had become moot.

19 And that order recognizing the mootness of the appeal does

20 not undermine the precedential value of the B.A.P's ruling

21 in analyzing that a debtor cannot claim an exemption in

22 property owned by an LLC.

23         And the -- Bill Rochelle writing for the ABI in

24 one of his daily wires did a story about the -- an article

25 about this, recognizing that the precedential value of the

15

1 B.A.P's ruling likely is still out there and can and should

2 be relied upon.

3        The U.S. Supreme Court in <u>Owens</u>, which was a case

4 we cited, recognizes that you can only exempt from property

5 in the estate that which is property in the estate.  And in

6 this case, both the legal title to and the beneficial

7 interest in the property was not owned by the Debtor and was

8 owned by the LLC.  And I think the most smoking gun reason

9 is that the Debtor was paying rent to the LLC.  And that's

10 not something that somebody would do if they were, in fact,

11 the equitable owner of the property.

12        And then, finally, as recognized by the Court in

13 the original ruling on this matter, if the Debtor did, in

14 fact, acquire some interest in the property prior to the

15 bankruptcy, then the Section 522(p) cap would apply and

16 would cap the amount of the exemption.

17        And unless the Court has any further questions of

18 me, I would submit on that argument.

19        THE COURT:  All right.  Thank you.

20        And with respect to the joining parties, do either

21 of you wish to present any arguments, starting with Mr. Goe?

22        MR. GOE:  Yeah.  Just briefly, your Honor.

23        I agree with everything that Mr. Hays has stated.

24 And nothing has changed since your original ruling.  The

25 fact is that the Debtor specifically put this property into

16

1  an LLC to avoid the multiple judgments that my client had

2  obtained against her and furthered that pattern of fraud by

3  then putting insider liens on the LLC property as well.

4         Finally, Judge, it's worth noting that under

5  California Corporations Code, Section 17300, a member, which

6  Ms. Gallian is, has no interest in specific limited

7  liability company property.  So she has no ability to claim

8  a homestead exemption.  I have nothing further.

9         THE COURT:  All right.

10         Mr. De Leest.

11         MR. DE LEEST:  Yes, your Honor.  Thank you.  I

12  think I agree with Mr. Hays and Mr. Goe.  I actually have

13  nothing further to add.  They covered all my points.

14         THE COURT:  All right.  Very well.

15         And, Ms. Gallian, you get the last word on this.

16  You may respond if you like.

17         MS. GALLIAN:  Yes.  So in regards to Mr. Goe's

18  comments regarding multiple judgments, when I bought this

19  home on November 1st, 2018, after selling the property at

20  the Gables on October 31st, I sold the home unencumbered.  I

21  provided the Court with a -- two copies of a preliminary

22  title report.  Mr. Goe's multiple judgments that he refers

23  to didn't occur until May of 2019.  It's not like I had a

24  crystal ball.  There were no judgments.  I sold the home

25  unencumbered.

*Briggs Reporting Company, Inc.*

17

1        It's my business whether I purchased a home after

2   I had already committed to a three-year lease.  When I moved

3   out of the Gables on September 11th, I still had the

4   three-year lease.  The purpose of the LLC was to -- in case

5   I had to put a renter in there, in case I needed to stay at

6   the three-year lease home on Kenyon Drive.

7        Let's see.  Some of the other notes that I had

8   were, Mr. -- it's addressing Mr. Hays' comments.  The

9   pending lawsuit.  He says pending lawsuit.  The pending

10  lawsuit he filed -- or not he filed, but the Houser Brothers

11  filed on January 2nd, 2019, was against Jamie Gallian.  If

12  they truly believed that the home was owned by J-Sandcastle,

13  well then why haven't they named J-Sandcastle in their

14  unlawful detainer case, or even added them as a party, or

15  even added them in their adversary.

16       I was able to get out of the three-year lease.  I

17  have lived in the property.  It is my property.  On January

18  14th, 2019, I recorded a UCC filing with California State

19  giving public notice that the home is encumbered with a

20  security agreement and a promissory note dated November

21  16th, 2018.  I think that the gentlemen on the phone are

22  forgetting that it is a perfected lien.  The perfected lien

23  is held by J-Pad.  I am a third owner of J-Pad with two

24  other members.  With transferring the property back in

25  February 2021 was after a mandatory settlement conference

*Briggs Reporting Company, Inc.*

18

1  with Houser Brothers, because Houser Brothers did not want

2  to enter into a lease agreement with J-Sandcastle.

3      J-Sandcastle is the entity that filled out the

4  residency application on November 19th, 2018.  However, the

5  application was denied -- was sent to Jamie Gallian.  It was

6  never even considered J-Sandcastle was the applicant.

7  Everything that has been filed by Houser has been in the

8  name of Jamie Gallian.  Nothing is ever in the name of

9  J-Sandcastle.  And it wasn't until February 25th, 2021, that

10 Jamie Gallian, as the member of J-Sandcastle, released the

11 title to Jamie Gallian so that she could end this almost

12 four-year pending unlawful detainer case that Houser

13 Brothers still keep saying that possession is still in

14 question.

15     Possession is not in question.  Possession has

16 never been in question because Lisa Ryan sold the property,

17 gave notice that she sold the property to a bona fide

18 purchaser.  Houser Brothers has never been in possession of

19 the home.  The home was lawfully sold, as anticipated, by a

20 10/18, 2018 stipulation signed by Ms. Ryan and Houser

21 Brothers in an unrelated case.  Jamie Gallian intervened in

22 that case.  And when Houser Brothers executed a writ of

23 possession in the name of Jamie Gallian, removed Jamie

24 Gallian unlawfully from the home she owns, changed the

25 locks, intervened in the Houser v. Ryan case, and the Court

*Briggs Reporting Company, Inc.*

19

1   ordered Houser to return possession to Jamie Gallian.

2           So there is nothing more that I can add, except

3   for there is a perfected lien holder on the certificate of

4   title.  There is a security agreement and a promissory note

5   on -- filed with the UCC secretary of state.  It is still

6   valid.  And Jamie Gallian did not have a crystal ball to

7   realize that the creditor, Houser -- not Houser but

8   Huntington Beach Gables was going to end up with a massive

9   attorney fee judgment.  That was almost eight months after

10  Jamie Gallian purchased this home.

11          So Jamie Gallian hasn't defrauded anybody.  Jamie

12  Gallian has been more than open in her petitions.  And

13  filing an amended petition before the 341 meeting has

14  concluded, I understand under Rule 1009 is allowed.  And

15  with that, I'll end.

16          THE COURT:  All right.  Thank you.

17          The matter will stand submitted, and the Court

18  will issue a written ruling after reviewing its notes from

19  today's hearing, as well as all of the pleadings and

20  exhibits that have been filed.  All right.

21          MS. GALLIAN:  Thank you, your Honor.

22          MR. HAYS:  Thank you, your Honor.

23          THE COURT:  I believe --

24          MR. GOE:  Thank you, your Honor.

25          THE COURT:  Thank you.

*Briggs Reporting Company, Inc.*

20

1        (Proceedings concluded.)

2

3        I certify that the foregoing is a correct

4  transcript from the electronic sound recording of the

5  proceedings in the above-entitled matter.

6

7  /s/ Holly Steinhauer_____     1-24-23_____
   Transcriber                      Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Briggs Reporting Company, Inc.*